**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LAMONTE MCINTYRE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:18-cv-02545-KHV-KGG** |
| | ) | |
| **UNIFIED GOVERNMENT OF** | ) | |
| **WYANDOTTE COUNTY AND** | ) | |
| **KANSAS CITY, KS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM DEFENDANT UNIFIED GOVERNMENT**

Plaintiffs Lamonte McIntyre and Rose McIntyre ("Plaintiffs"), by and through their

counsel, submit this Memorandum of Law in Support of their Motion to Compel Production of

Documents from Defendant Unified Government of Wyandotte County and Kansas City, Kansas

("Defendant"). Plaintiffs seek to compel production of certain Kansas City, Kansas Police

Department ("KCKPD") investigative files and other documents responsive to their Third Request

for Production of Documents and Things to All Defendants (the "Third Request").

Despite Plaintiffs' attempts to resolve this dispute,[1] Defendant has explicitly announced

that it will *not produce any of the requested documents* absent an order from this Court. Plaintiffs,

therefore, respectfully request that the Court grant this Motion and order Defendant to produce the

documents described in this memorandum. Because Defendant has refused to produce *any*

---

[1] Plaintiffs hereby certify that they have satisfied the requirements of District of Kansas Rule 37.2  On April 27, 2021, they sent a comprehensive letter to Defendant's counsel addressing all of the Unified Government's objections to Plaintiffs' Third Request for Production. On May 11, 2021, counsel for Plaintiffs and the UG participated in a meet and confer phone conference to address the UG's objections, but decided further discussion on the issues described herein would be futile.

requested documents and instead asserted identical, across-the-board objections to nearly all requests in dispute – Plaintiffs have no choice but to seek assistance from the Court.

## **FACTUAL BACKGROUND**

This lawsuit arises from former KCKPD detective Roger Golubski's decades of misconduct, corruption, and illegal acts casuing the 1994 wrongful conviction of Lamonte McIntyre ("McIntyre" or "Plaintiff") for two drug-related homicides he did not commit. Specifically, Plaintiffs Lamonte and Rose Lee McIntyre allege Golubski had a pattern and practice of taking payoffs, protecting powerful drug dealers from arrest, shaking down street-level dealers, sexually assaulting vulnerable women and using them as "informants," fabricating evidence, and framing innocent persons for crimes they did not commit, which Defendants either encouraged or deliberately turned a blind eye to. This lawsuit further alleges that Golubski, along with the other individual Defendants who aided, endorsed and approved his actions, framed McIntyre for a double homicide by manipulating and coercing witnesses, fabricating evidence, withholding evidence of McIntyre's innocence, and by deliberately failing to take basic investigative steps that would have exonerated Plaintiff.[2]

Plaintiffs also allege that the Defendant is responsible for policies, practices and customs that were substantially certain to result in constitutional violations, including the deliberate targeting, prosecution and conviction of innocent persons, as follows:

- The Unified Government, by and through its final policymakers at the KCKPD, had in force and effect in 1994 and in the years beforehand[3] a policy, practice, or custom of unconstitutional misconduct in serious felony investigations, including the encouragement and use of coerced and unreliable witness statements taken by Golubski

---

[2] During the post-conviction hearing where McIntyre presented evidence of his innocence, Wyandotte County District Attorney Mark Dupree determined the case against McIntyre was a "manifest injustice," and he moved for its immediate dismissal.  On October 13, 2017, the District Court of Wyandotte County dismissed all charges against McIntyre after 23 years of wrongful incarceration Additionally, on February 24, 2020, McIntyre was awarded a Certificate of Innocence by the State of Kansas.

[3] Donald Ewing and Doniel Quinn were murdered on April 15, 1994.

and other Defendants from vulnerable witnesses through the threat of arrest, physical violence, sexual domination, payment in drugs or money, or other consequences. (Doc. 74, ¶ 189).

- The UG also had in force and effect in 1994 and in the years beforehand, a policy, practice or custom of deliberately withholding exculpatory and impeachment evidence from the prosecution and criminal defendants such as McIntyre, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), specifically by failing to turn over evidence that would undermine the reliability of witnesses who had given false, coerced testimony under the threat of arrest, physical violence, sexual domination, payment in drugs or money, or other consequences. (Doc. 74, ¶ 190).

- The UG also had in force and effect during the relevant time period a policy, practice or custom of failing to adequately supervise, discipline and train officers investigating serious felonies, and, further, when receiving notice, failed to make any meaningful investigation into officers who committed misconduct; thereby enabling officers to commit misconduct without repercussions. (Doc. 74, ¶¶ 191-192).

- The UG also failed to adequately supervise, discipline and train officers with regard to the use of proper and legal investigative tactics through prohibiting the physical, psychological and sexual abuse of female informants, the coercion of informants to provide false evidence, the illegal protection of those involved in the drug trade, the failure to turn over exculpatory evidence and the wrongful targeting and framing of innocent individuals.  (Doc. 74, ¶ 193).

- The UG and its supervisors and commanders either approved of or deliberately ignored or turned a blind eye to the misconduct and illicit acts of Golubski and other officers, including defendants. (Doc. 74, ¶ 194).

- The UG and its final policymakers knew that the policies, customs and practices described above and the failure to adequately, discipline, supervise and train officers would be substantially certain to result in constitutional violations, including the use of false, fabricated or coerced testimony, witness perjury, false eyewitness reports, fabricated evidence, false identifications, wrongful arrests, malicious prosecutions and wrongful convictions.  (Doc. 74, ¶¶ 194, 195).  Such unconstitutional customs, practices and/or policies were the moving force behind McIntyre's wrongful arrest, prosecution and 23 years of  incarceration. (*Id*.).

In short, Plaintiffs allege that the longstanding and widespread investigatory misconduct that led to McIntyre's wrongful conviction was the result of well-settled KCKPD policies, practices, and customs that permitted unconstitutional misconduct in felony investigations, and further, that such policies, practices and customs existed for decades prior to McIntyre's conviction and continued for years afterward.

The evidence developed in discovery so far, including through two prior Requests for the Production of Documents, has already revealed facts and information that directly prove Plaintiffs' claims against each of the Defendants. On February 18, 2021, Plaintiffs served their Third Request, containing 87 requests, all of which were narrowly targeted and specifically described (with, for instance, complaint numbers or addresses) in order to streamline the discovery process.[4] For purposes of this motion, only requests from the following categories remain in dispute:

1. Investigative files relating to women allegedly sexually assaulted, threatened or exploited by Golubski and used as alleged informants.

2. Investigative files relating to women who were murdered after being used by Golubski as informants (in most cases, those murders received little or no investigation and remain unsolved, and, in some of the cases, Golubski himself was the investigator).

3. Investigative files relating to drug gang activity and dealers and informants who had connections with Golubski.

4. Documents relating to Golubski's pattern and practice of stalking and sexually harassing women.

5. Documents reflecting misconduct in other KCKPD cases, specifically involving sexual or investigative misconduct by Golubski and others.

6. Documents relating to the KCKPD's knowledge of alternate suspects in the case for which Lamonte McIntyre was wrongfully convicted.

7. Documents relating to KCKPD officer misconduct in the murder investigations for which Defendant W.K. Smith's immediate family members were the prime suspects or alleged perpetrators (but who were, in most cases, never prosecuted).

After an extension of time to serve its response, Defendant UG provided its objections and responses to Plaintiffs Third Request on April 5, 2021.[5] Despite the extension, the Defendant failed to provide a single document in response, instead asserting *identical, boilerplate relevance*

---

[4] A copy of Plaintiffs Third Request for the Production of Documents and Things to All Defendants is attached as **Exhibit 1**.
[5] A copy of the Defendant's Responses and Objections to Plaintiffs' Third Request for the Production of Documents and Things is attached as **Exhibit 2**.

*objections* to 82 of the 87 requests.  To date, Defendant has provided little to no basis,  reasoning, or explanation for its objections.

By letter dated April 27, 2021, Plaintiffs provided Defendant with a list of deficiencies in its responses,[6] including (1) the Defendant's failure to provide *any* documents, and (2) that the boilerplate objection Defendant copied and pasted to more than 80 requests lacked any factual or legal basis. Because of Defendant's unsupported and blanket objection to relevance, Plaintiffs' letter provided extensive details and citations to the record explaining how each request related to Plaintiffs' allegations. Notably, Defendant stonewalled so thoroughly that it even objected to requests directly connected to McIntyre's criminal case, including documents concerning Lamonte Drain, the alternate suspect initially referenced by eyewitness Ruby Mitchell, as well as Montee Woodberry, a witness endorsed by the prosecutor to testify at McIntyre's trial (but who ultimately did not appear).

Despite the letter's detailed discussion, the UG provided no written response. On May 11, 2021, counsel for both parties met via telephone conference to discuss the issues raised in Plaintiffs' April 27 letter. During that conference, Defendant's counsel orally represented that he was seeking additional information from the UG regarding Requests No. 94, 95, 96, and 97, but that the 82 remaining requests[7] were "facially irrelevant" as they supposedly involved post-incident (April 1994) conduct. To be clear, this oral reference to "post-incident" conduct was the first time Defendant had raised this issue with Plaintiffs, and, for the reasons stated below, this unwritten rationale is without merit.

Although Defendant's counsel did not specify which requests it believed fell in this category, counsel for Plaintiffs asserted that the KCKPD homicide files requested were highly

---

[6] A copy of Plaintiffs' April 27, 2021 Letter to Defendant's counsel, David Cooper, is attached as **Exhibit 3**.
[7] *See* **Exhibit 1**, Request Nos. 98-179.

likely to contain documents relevant to Golubski's relationships with the murdered individuals, and that such relationships existed *prior* to McIntyre's conviction in April 1994.[8] Additionally, although the files requested did not focus on post-incident conduct, any documents reflecting KCKPD policies, practices, or customs similar to those alleged in Plaintiffs' Complaint–whether prior to or after McIntyre's conviction–are still relevant (1) to show that the same policies likely existed at the time of McIntyre's conviction and (2) to show motive, intent, preparation, plan, knowledge, and absence of mistake, especially with respect to Defendant Golubski. *See* Fed. R. Evid. 404(b). Further, Plaintiffs asserted that the majority of their requests concerned pre-incident records regarding sexually exploited women, informants, and drug dealers with whom Golubski had longstanding relationships and that Defendant's failure to produce responsive documents to *any* request was unfounded.

The parties eventually agreed that further discussion on the remaining 82 requests in dispute would be unproductive and that Court intervention was required. As a result, Plaintiffs have brought the present motion.

## ARGUMENT

Despite Plaintiffs' thorough and detailed explanation of the relevance of the 82 disputed requests, Defendant has refused to produce *a single* responsive document unless this Court orders it to do so. Instead, Defendant resorts to stonewalling by asserting a boilerplate and unsupported objection to each of Plaintiffs' Requests. Defendant has also claimed, though only orally, that documents demonstrating police misconduct after Plaintiff Lamonte McIntyre was wrongfully

---

[8] A dozen or more of Golubski's female victims and/or informants have been murdered. With only a couple of exceptions, these murders remain unsolved. In some instances, Golubski was a primary investigator on the case, despite his past relationship with the informant.

convicted in 1994 are not relevant.[9]  For the reasons listed above and discussed more fully below, this argument is baseless.

The standard for relevance that governs discovery under the Federal Rules is broad, and liberal discovery is typically favored. Plaintiffs are entitled to probe Golubski's relationships with his unwilling "informants," including the women who were subjected to sexual abuse and assault. This is directly related to the issues in the Ewing-Quinn homicide (i.e., the sexual harassment of eyewitness Ruby Mitchell, the longstanding sexual exploitation of eyewitness Stacy Quinn, as well as the claim of unnamed "reliable sources" who supposedly pointed Golubski to Lamonte McIntyre). Moreover, to establish a claim under *Monell*, Plaintiffs must demonstrate – and are entitled to production of – documented instances of misconduct that demonstrate a permanent and well-settled custom within the KCKPD which was the moving force behind Plaintiff's wrongful conviction.

## A.  So-Called "Post-Incident Conduct" Is Discoverable on Multiple Grounds

To date, the Defendant has never specified which of Plaintiffs' 82 requests (in dispute) it believes involve "post-incident conduct."[10] Regardless, only 29 requests even arguably fall into this category, and only because Requests 99-126 and 131 seek homicide files of Golubski's female informants and drug dealing associates who were murdered after 1994.[11] As mentioned above, these requests are discoverable because: (1) they are relevant under the federal discovery standard; (2) documents responsive to any of the requests in this category would also contain information bearing on the pre-1994 period; and (3) the "permanence" of the KCKPD's custom of

---

[9] This argument is nowhere to be found in Defendants' Objections and Responses, or in any written response to date, but was instead made for the first time during the meet and confer call on May 15. *See generally* **Exhibit 2.**
[10] *See generally* **Exhibit 2**.
[11] *See* **Exhibit 1**.

unconstitutional misconduct that led to Plaintiff's wrongful conviction can be revealed by post-incident conduct.

### 1.   The Federal Rules Favor Liberal Discovery

The Federal Rules of Civil Procedure permit each party to serve opposing parties with document requests which relate to "any matter that may be inquired into under Rule 26(b)."  Fed. R. Civ. P. 34(a).  Additionally, under the Federal Rules, parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  "Relevancy is broadly construed during the discovery phase, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010); *EEOC v. Woodment of the World Life Ins. Soc'y*, 2007 U.S. Dist. LEXIS 18497 (D. Neb. Mar. 15, 2007) ("Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  Relevancy . . . encompass[es] any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (internal citations and quotations omitted).

Accordingly, whether Plaintiffs can admit into evidence the requested documents or information is not the issue. Instead, because relevance is interpreted broadly during discovery, Defendant's blanket assertion that all requests for KCKPD files wherein the homicide occurred post-1994 are "not relevant" is insufficient to refuse to provide a single responsive document to any of Plaintiffs' Requests. Defendant has a much narrower view, asserting that the only documents it is required to produce are those that relate to Lamonte McIntyre's wrongful conviction. This interpretation of "relevance" is absurdly (and incorrectly) narrow and completely ignores Plaintiffs' *Monell* claim and is plainly contrary to the standards applied under the Federal

Rules. Thus, the documents sought by Plaintiffs in their Third Request are clearly within the scope of discovery set forth in Fed. R. Civ. P. 26(b)(1).

Additionally, the murdered individuals Plaintiffs seek information about in Requests 99-126 and 131 were allegedly used as informants for Golubski *prior to their deaths, not after.* Simply because their files may show Golubski was involved in or led the investigation – a clear conflict of interest given allegations that Golubski engaged in and did not disclose his sexual relationships with female informants– does not mean the files on that individual *only contain post-1994 misconduct.* Instead, the requested files most likely contain all information the KCKPD had on the individuals at the time of their death, which could lead to relevant information regarding their relationships to Golubski *when they were alive* as well as Golubski's pattern and practice of investigating cases he had a personal connection to. Regardless, even if those 29 requests could only result in the identification of post-incident conduct, it is not a defensible basis to withhold documents responsive to the other (over 50) requests that do not seek documents or incidents post-1994, as Defendants have done here. Nonetheless, the majority of courts addressing this issue have found that post-incident conduct in § 1983 *Monell* claims is discoverable.

### 2. Post-Incident Conduct is Relevant to a § 1983 *Monell* Claim

Under *Monell*, a municipality can be held liable for "acts which the municipality has officially sanctioned or ordered." *See C.F.B. v. Hayden*, No. 16-2645-CM, 2019 WL 1299679, at *4 (D. Kan. Mar. 21, 2019). Plaintiffs can satisfy their burden to prove a municipality liability by showing, among other things, (1) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, ***is so permanent and well settled as to constitute a custom or usage with the force of law,*** or (2) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the

injuries that may be caused. *Id; Waller v. City & Cty. Of Denver,* 932 F.3d 1277, 1283 (10th Cir. 2019). Indeed, "[o]ne alleged unconstitutional act does not amount to a 'custom'; rather, '[t]here must be a "persistent and widespread practice."'" *C.F.B. v. Hayden,* No. 16-2645-CM, 2019 WL 1299679, at *6 (D. Kan. Mar. 21, 2019). (recognizing that "settled state practice…can establish what is state law," and "[d]eeply embedded traditional ways of carrying out state policy…are often tougher and truer law than the dead words of the written text."); *see also Willis v. Mullins*, Case No. CV-F-04-6542 AWI LJO, 4 (E.D. Cal. Feb. 8, 2006) (holding it is "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom.")

It is under this *Monell* framework that "post-incident" evidence is discoverable. In fact, federal courts who have addressed this issue – post-incident areas of inquiry in a § 1983 *Monell* claim – have found the information relevant. *Willis*, Case No. CV-F-04-6542 AWI LJO, at *5-6 (holding that "as a general proposition, [] post incident events may prove that a policy or custom existed pre-incident" and that "post-event conduct is 'highly probative' to proving the existence of a municipal policy or custom. For example, a '[p]olicy or custom may be inferred if . . . officials took no steps to reprimand or discharge the [officers involved], or if they otherwise failed to admit the [officers'] conduct was in error.") (quoting *Henry v. County of Shasta,* 132 F.3d 512, 519 (9th Cir. 1997)). The court in *Willis*, wherein plaintiffs alleged a § 1983 *Monell* claim, ultimately ruled:

> Thus, post-incident indemnification of punitive damages is probative of the existence that the policy existed pre-incident. ***From this post-incident evidence, which the jury may imply the existence of a pre-incident policy***, ***the evidence may also infer knowledge and moving force.*** Although tenuous, plaintiff would be able to argue from this evidence that the officers were aware of the pre-incident policy, and was therefore a moving factor in their conduct. To be the moving force, the 'identified deficiency' in the County's policies must be 'closely related to the ultimate injury.'... In other words, a plaintiff must show that his or her constitutional 'injury would have been avoided' had the governmental entity not indemnified officers ... ***Post-incident evidence is relevant to the existence of a custom or***

*policy, from which a plaintiff may argue it was the moving force in the alleged unconstitutional violation*.

*Id.* at *3-4 (emphasis added). Likewise, the majority of circuits have held that post-incident conduct is relevant in a § 1983 *Monell* case for various reasons. For example, the Fifth Circuit in *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) held:

> *The disposition of the policymaker may be inferred from his conduct after the events of that night*. Following this incompetent and catastrophic performance, there were no reprimands, no discharges, and no admissions of error. The officers testified at the trial that no changes had been made in their policies*. If that episode of such dangerous recklessness obtained so little attention and action by the City policymaker, the jury was entitled to conclude that it was accepted as the way things are done and have been done in the City of Borger.* If prior policy had been violated, we would expect to see a different reaction. If what the officers did and failed to do on [the date of the incident] was not acceptable to the police chief, changes would have been made.

*See also McRorie v. Shimoda,* 795 F.2d 780, 784 (9th Cir. 1986) ("Policy or custom may be inferred if, after the shakedown, the prison officials took no steps to reprimand or discharge the guards, or if they otherwise failed to admit the guards' conduct was in error."). Additionally, in *Bordanaro v. McLeod,* the First Circuit discussed the admission – not discoverability – of post-event evidence in a § 1983 *Monell* claim. 871 F.2d 1151, 1166 (1st Cir. 1989). There, the Defendants argued that because the events transpired *after* the date of the beatings, the probative value of these events was greatly outweighed by their unfair prejudicial effect under Fed. R. Evid. 403. The court disagreed, holding that the post-event evidence (lack of proper internal investigation and failure to discipline officers involved) for the purpose of establishing what customs were in effect in the City *before* the incident at issue was admissible into evidence. *Id.* at 1166. The court ultimately held that "[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right." *Id.* at 1167; *see generally Beck v. City of Pittsburgh*, 89 F.3d 966, 973 (3d Cir. 1996) (recognizing that a post-event incident "although it occurred after [Plaintiff's] experience, may have evidentiary value for

11

a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force.").

Further, in *Henry v. County of Shasta*, 132 F.3d 512, 518-20 (9th Cir. 1997), *amended on denial of rehearing*, 137 F.3d 1372 (9th Cir. 1998), the Ninth Circuit held that "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry…When a county continues to turn a blind eye to severe violations of inmates' constitutional rights—despite having received notice of such violations—a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference ...."

Similarly, the Third Circuit recently reversed as erroneous a district court's exclusion of post-incident evidence on the basis that it was irrelevant to establishing causation of the plaintiff's injuries in *Forrest v. Parry,* 930 F.3d 93 (3d Cir. 2019), *cert. denied sub nom. City of Camden, New Jersey v. Forrest,* 140 S. Ct. 902, 205 L. Ed. 2d 465 (2020). There, the Third Circuit noted that "causation is not the sine qua non of relevance," and instead concluded that although the failure to investigate complaints of similar misconduct post-incident "could not have caused [Plaintiff's] alleged injuries, they are highly relevant to whether [the City] was deliberately indifferent to a continued pattern of policy misconduct." *Id.* at 115. Specifically, the court held that the City's handling of complaints after plaintiff's injury is "highly relevant to demonstrating that it maintained the same practice [of inadequately investigating complaints] prior to and at the time of said arrest." *Id.* These courts ultimately ruled that "[t]his evidence clearly lends credence to the notion [the City] was aware of related, concerning conduct by its officers and had not responded. It was therefore an abuse of discretion to exclude this evidence merely because it was not causally related to the incident involving [the plaintiff]." *Id.* at 116.

Plaintiff could find no Tenth Circuit or District of Kansas[12] case directly addressing the discoverability of post-incident conduct. However, both courts have recently held that in § 1983 *Monell* cases, "[o]rdinarily, a single incident of unconstitutional behavior is insufficient to impose municipal liability," and that plaintiffs can "stack inference upon inference," to show a police department's unconstitutional custom or practice. *Calvo-Pino v. Weidl*, No. 20-2044-JAR-GEB, 2021 WL 243468, at *4 (D. Kan. Jan. 25, 2021); *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1290–91 (10th Cir. 2019). Accordingly, as discussed above, evidence that the custom, pattern, or practice of constitutional violations continued after such conviction indicate that the custom was permanent and well-settled, and that the KCKPD failed to address, and indeed permitted, the misconduct that directly led to Plaintiff's wrongful conviction.

Pursuant to the broad definition of relevance in discovery under the Federal Rules, it is more than "possible" the requests for homicide files for Golubski's informants (whom he also either had sex with or illegally protected from prosecution) are relevant to Plaintiffs' *Monell* claim against Defendant and are therefore discoverable. Moreover, Defendant cannot claim that it had no custom, policy, or practice of allowing officer misconduct, but refuse to produce the very documents that may support or contradict its claim. Accordingly, Plaintiffs' Motion to Compel Defendant to produce responsive documents to Requests No. 99-126 and 131 should be granted.

**B.  The Other 52 Requested Documents Are Relevant to Plaintiffs' Claims**

Separate from the 29 homicide file requests discussed above, Plaintiffs' other 52 requests seek documents relating to certain individual's criminal histories, arrests, lenient treatment,

---

[12] The lack of binding law relating to this issue is noted in *Dunn v. City of Newton, KS*, No. 02-1346-WEB, 2003 WL 22462519, at *8 (D. Kan. Oct. 23, 2003), an unreported case. On a motion for summary judgment, the court did not decide whether post-incident evidence was relevant or not, but instead found that "to the extent these incidents are relevant and can be considered, they actually refute rather than support plaintiff's claim that Newton city officials were deliberately indifferent to the use of excessive force by its officers," because the officer was reprimanded and subsequently terminated as a result.

cooperation or relationships to Defendant Roger Golubski. These individuals are known to be (1) women who were sexually assaulted by Golubski and used as informants in his cases, (2) women used as so-called informants in Golubski's cases and then murdered, and their murders were potentially investigated by Golubski, (3) drug-dealers or gang related associates and informants Golubski protected from prosecution, or (4) members of Defendant W.K. Smith's family who were the primary suspects in or connected to murders the KCKPD investigated, but where the cases (with one exception) were never prosecuted.

These requests clearly fall within the broad definition of relevance under the Federal Rules as the information sought bears directly on Plaintiffs' claims of misconduct against the individual officers and claims of a pattern and practice of allowing misconduct (specifically relating to sexual relationships with witnesses or informants and the protection of drug gangs) under *Monell*. A closer look at the evidence requested demonstrates that Defendant's blanket refusal to produce any information, especially those that have no relation to "post-incident conduct," is without merit.

1. **Investigative Documents Relating to (1) Women Sexually Assaulted by Golubski and Used as Informants and (2) Who Were Murdered and Used as Informants, Are Relevant to Plaintiff's *Monell* Claim**

The following requests seek KCKPD files for women who are known to have been sexually assaulted by Golubski during his tenure at the KCKPD and used as informants in his cases:

| | |
|---|---|
| Request No. 149 | N.F. |
| Request No. 151 | L.G. |
| Request No. 152 | E.G. |
| Request No. 153 | G.G. |
| Request No. 156 | Y.J. |
| Request No. 157 | J.L. |
| Request No. 160 | K.P. |
| Request No. 169 | B.R. |
| Request No. 170 | S.R. |
| Request No. 178 | T.W. |

All of these women are among those who were allegedly sexually exploited or assaulted by Golubski, used as Golubski's so-called "informants," or both. (To protect their privacy, they are referred to only by their initials).   Several had repeated contact with Golubski for years, and were provided with money, drugs or special favors, including protection from arrest in exchange for sex during his time at the KCKPD. Some of these women were drug users,  most worked as prostitutes, and all were sexually exploited or otherwise victimimized by Golubski and other KCKPD officers. Golubski used improper enticements, threats and the leverage of his badge to exploit these women for sex. He also used these women as so-called "informants," thereby placing them at risk on the streets. Accordingly, KCKPD reports and other documents concerning these women – like the other individuals Golubski used as informants – are relevant to the "leverage" police may have had based on the existence of warrants, arrests, pending cases etc., the exact misconduct Plaintiffs allege resulted in the wrongful conviction of Plaintiff.

Likewise, Plaintiffs' Third Request also seeks documents pertaining to the following women who were used as informants in Golubski's cases and then murdered, and whose deaths were potentially investigated by Golubski:[13]

| Request No. 109, 110, 133 | Monique Allen |
| --- | --- |

---

[13] Some of the below requests relate to the same women Plaintiffs seek homicide files for in Requests 98-116 (addressed in Section A relating to alleged "post-incident conduct"). However, the requests addressed in this Section do not seek homicide files, but instead request the following documents for each individul:

    a.    the complete criminal history or "rap sheet";

    b.    any documents referring to or reflecting criminal history;

    c.    all files regarding any arrest or any incident involving detention by KCKPD;

    d.    all files regarding the investigation or prosecution of any crime for which the individual was investigated or charged;

    e.    every statement given to any KCKPD employee or employee of the WCDAO;

    f.    all agreements, including cooperation agreements, with the KCKPD, the WCDAO or their agents;

    g.    a list of cases or incidents in which the individual was involved in any way, including without limitation as a complainant, victim, witness, informant, suspect, or person of interest;

    h.    all documentation, including but not limited to notes or transcripts, of any offer of leniency, benefit, reward, or favorable treatment received by or made to the individual in connection with any investigation or cooperation;

    i.    all documentation reflecting or referencing interactions or relationships the individual had with defendant Roger Golubski

| Request No. 105, 106, 135 | Pearl Davis Barnes (aka Sameemah Musawwir) |
|---|---|
| Request No. 144 | Vickie Hollinshed (aka Vickie Dew) |
| Request No. 147 | Diane Edwards |
| Request No. 115, 116, 148 | Barbara Finch |
| Request No. 107, 108, 150 | Sandra Glover |
| Request No. 119, 120, 154 | Trina Harris |
| Request No. 121, 122, 155 | Pearlina Henderson |
| Request No. 113, 114, 158 | Eliza (or Elza) Michie |
| Request No. 168 | Beatrice Russell |
| Request No. 177 | Rhonda Tribue |
| Request No. 136 | Connie Byas (aka Connie J. Wallace) |
| Request No. 98 | Theresa A. Davis |
| Request No. 99, 100 | Rosemary Baker-Powers |
| Request No. 103, 104 | Sandra J. Wilson |
| Request No. 140 | Rose M. Calvin |
| Request No. 111, 112 | Anita Webb |
| Request No. 101, 102 | Kia Vang |

These women were known to be impoverished, drug addicted and working on the streets of KCK. Each one of these women had regular contact with Roger Golubski and other KCKPD officers and/or were used as so-called "informants" by Golubski and/or other officers. Golubski sexually exploited and victimized these women, using threats, illegal enticements and the leverage of his badge to obtain sex, and thus, any information the KCKPD has on these women will confirm Golubski's misconduct and pattern of sexual exploitation of informants, which is clearly relevant to Plaintiffs' claims.[14] Further, the prior production from the Defendant (in response to earlier requests for production) of the homicide files for Rose Calvin, Diane Edwards, Vickie Hollinshed, Beatrice Russell, and Rhonda Tribue do not satisfy the requests as to those women made in Plaintiff's Third Request. Instead, Plaintiffs' Third Request specifically seek these women's contacts with police while still alive, as well as arrests, cooperation agreements, and documents reflecting their relationship with Defendant Golubski and the KCKPD.

---

[14] Doc. 74,  ¶¶ 33-40, 121; 107-125; 131-144

Accordingly, the above requests are relevant to this case and are directly connected to Defendant Golubski's use of informants who he (1) sexually exploited and (2) improperly leveraged to close cases – the same misconduct used to wrongfully convict Plaintiff.

### 2. Investigative Documents Relating to Drug-Related Gang Activity and Informants Connected to Golubski Are Relevant to Plaintiff's *Monell* Claim

Requests No. 117-118, 134, 139, 143, 165, 145, 159, 161, 162, 163, 165, 166, 167, 175, and 179 seek the KCKPD investigative files for drug dealers connected to Golubski either as informants in his cases or as suppliers of money, drugs, or other income in exchange for protection from prosecution. Mirroring the requests for documents in Section B(1) relating to female informants,[15] these requests seek information pertinent to notorious drug dealers or members of drug gangs at the time of the Ewing-Quinn murders. All had relationships with Golubski, ranging from the cooperative to the conflicted. Some of them ran gangs; others were participants who were recruited or conscripted by Golubski and followed his dictates. As alleged in the Complaint,[16] Golubski gave "protection" to certain drug-gangs, which allowed for open-and-shut acts of violence between gang members to go unpunished in return for money and drugs, which the requested documents may confirm, showing a pattern and practice of corruption similar to the misconduct resulting in Plaintiff's wrongful conviction (in which members of the Brooks-Robinson drug gang avoided responsibility for committing the Ewing-Quinn double homicide). Specifically, the requests seek information relating to the following individuals:

1. **Anthony Quinn** – a member of the drug gang operated by Antonio and Marcus Quinn, a gang with known ties to Golubski. Although Anthony was murdered in

---

[15] *See supra,* n. 13.
[16] Doc 74, ¶¶ 38, 113, 123-125.

front of witnesses, allegedly by a member of his own family, the case was never prosecuted.

2. **Wendell Anderson**, aka "Tank," – a member and enforcer in the Brooks-Robinson drug gang. Anderson was known to be engaged in violent acts to further the gang's drug conspiracy, a conspiracy that included protection from prosecution provided by Golubski. In May 1997, Anderson was identified as the primary suspect in the KCKPD homicide investigation of Beatrice Russell, a prostitute in frequent contact with Golubski. However, Anderson was never charged with Russell's murder and the other criminal charges against him in connection with her murder were later dismissed.

3. **B.B.** – the former girlfriend (and underage victim) of Aaron Robinson, a drug dealer and a leader of the Brooks-Robinson gang – a gang directly connected to Golubski. That gang, including Aaron Robinson, is directly responsible for the Ewing-Quinn double homicide for which Plaintiff was wrongfully convicted.   B.B. was frequently in the presence of Aaron Robinson and the actual shooter, Neil Edgar, Jr. ("Monster"), and has knowledge of Robinson's and Monster's reputation and use of violence as well as other relevant facts.[17]

4. **Jacqueline Dawson**– Jacqueline is a close friend of Golubski's long-time girlfriend, Lorene Stewart, has knowledge of Golubski's illegal and improper conduct over the past 25 years, and procured drugs for Golubski to give to Stewart in exchange for sex. Dawson's son, William Roark, was a drug dealer and leader

---

[17] Doc. 74, ¶¶ 113, 123-125.

of a gang in the 1990s who was investigated numerous times for violent criminal incidents, but who was never convicted.

5. **Joe Dodson** – an individual living at the 3005 Brown drug house operated by the Brooks-Robinson gang. Dodson was well acquainted with Roger Golubski, whom he allegedly resented for fathering a child with his girlfriend.

6. **Alonzo Mosley, Elvester Sowell IV, and Montee Woodberry** – were alleged to be so-called informants for Golubski or the KCKPD.   Just before Plaintiff's trial for the homicides of Ewing and Quinn, Woodberry was endorsed by the prosecutor as a witness in Plaintiff's trial, but never ended up testifying. Woodberry was killed in October 1998, and Elvester Sowell IV was murdered in October 2006.

7. **Ezekiel Payne, Antonio Quinn, and Marcus Quinn** – were powerful, high level drug dealers who ran several drug houses in the KCK area at the time of the Ewing-Quinn murders and who committed criminal acts without legal repercussions.  They all allegedly had close relationships with Golubski and the KCKPD.

8. **Lemark Roberson** – was employed by Brooks-Robinson drug gang to sell crack cocaine and purchase properties as a front for drug operations. Golubski knew of the illicit activity of these gangs and was known to demand a share of profits, a take of their drugs, or that they play a certain role on the streets.

9. **D.R. and L.R.** – were allegedly drug dealers conscripted by Golubski to sell his shake-down drugs and who knew that Golubski sexually exploited black women in the community.

Any information the KCKPD has on the above individuals, including their criminal histories, cooperation in criminal investigations, or relationships with Golubski is clearly relevant to Plaintiffs' claims in this lawsuit and Defendant should be required to produce them.

### 3. Documents Relating to Golubski's Pattern and Practice of Stalking and Harassing Women is Relevant to Plaintiff's Claims

Request No. 132 seeks documents, including case files, complaints, reports or other documents reflecting the stalking or harassing of E.A., Golubski's ex-wife, by Defendant Golubski. E.A. was married to Roger Golubski at the time of Plaintiff's wrongful conviction. Following the annulment of their marriage, E.A. was stalked and harassed by Golubski, just as Plaintiff Rose Lee McIntyre was.[18] E.A. also complained to the KCKPD about Golubski, after which he was allegedly ordered to stay away from her. Yet, when E.A.'s home was broken into, Golubski was involved in the investigation. This evidence is clearly relevant to Plaintiffs' claims here, and show a pattern and practice of Golubski's harassment and stalking of women, as well as his involvement in investigations where clear conflicts of interest exist for victims and witnesses.

### 4. Investigative Misconduct in Other KCKPD Cases, Involving Allegations of Sexual Misconduct or Golubski's Corruption Are Relevant to Plaintiffs' Claims

Requests No. 125-131, 138, 141-142, and 174 concern investigative misconduct by KCKPD officers – including Defendants in this case – and relate directly to the knowledge Defendant had of previous unconstitutional misconduct similar to the misconduct that caused Plaintiff's wrongful conviction. First, Plaintiffs request a February 1996 complaint of sexual assault against former KCKPD detective William Saunders made by N.H. Although N.H. provided a detailed statement and Internal Affairs investigated, Saunders was never prosecuted and never suffered any significant discipline. The handling of N.H.'s allegations is a prime example of how

---

[18] Doc. 74,  ¶¶ 3-4, 41-45, 108-125, 131-144.

the KCKPD failed to hold officers accountable for sexual assault, supporting Plaintiffs' *Monell* claim in this case.[19] To the extent Defendant argues any of these requests relates to post-incident misconduct, *see supra* Section A.

In addition, Plaintiffs seek documents concerning Golubski's investigative misconduct in other cases, such as the 1978 death of Kenneth Ernest Borg and the 1989 death of Kenneth W. Khan, both of which occurred prior to Plaintiff's wrongful conviction, and involved Golubski's investigative misconduct. Further, Plaintiffs seek documents relating to the homicide of Reginald Allen, where witness Lakeir Brown testified he was paid or otherwise covertly compensated by Golubski and Golubski's partner, Terry Zeigler, to testify. Also, Plaintiffs' request seeks documents concerning N. C. and R. C.   R.C. had a child (N.C.) allegedly fathered by Roger Golubski when she was a teenager. R.C. was one of the many drug-addicted women in the black community that Golubski targeted. N.C. is widely known in the community as the biological daughter of Roger Golubski, supporting Plaintiff's allegations of Golubski's improper sexual exploitation of impoverished and vulnerable women.[20] Additionally, N.C. has knowledge of Golubski's improper investigative practices as she has been a potential witness in at least one case that Golubski investigated. Any information illustrating that R.C. or N.C. were used as informants or as witnesses in Golubski's investigations is relevant to Plaintiffs' claims. Plaintiffs further request documents relating to K.S.   She is the daughter of Lorene Stewart, widely known as Golubski's longtime close associate (and even mentioned in his mother's obituary). K.S. has been arrested on a number of occasions and likely has been involved in illicit activity as directed by Golubski.

---

[19] Doc. 74, ¶¶ 107-125; 131-144.
[20] Doc. 74, ¶¶ 35, 136.

Documents relating to these incidents, Golubski's improper investigative practices, and his sexual relationships with drug-addicted, impoverished women in the community are directly relevant to Plaintiff's claims and should be compelled.

### 5. Documents Relating to Alternate Suspects in the Murders Lamonte McIntyre Was Wrongfully Convicted of Are Relevant to Plaintiffs' Claims

Request No. 146 seeks documents concerning Lamonte Drain, (aka, Uganda Drain, aka Anthony Lewis). It is beyond dispute that records and documents relating to Lamonte Drain are relevant in this case, as Ruby Mitchell – the only eyewitness to testify against Plaintiff at trial – initially named the shooter as a "Lamonte" who had a brief relationship with Ruby's niece, Keva Garcia (deceased). That "Lamonte" was Lamonte Drain. Likewise, the shooter was alleged to have "French braids," which both Lamonte Drain and Neil Edgar Jr (Monster) had at the time of the Ewing-Quinn homicide. Lamonte Drain had an extensive criminal record and was in jail shortly before the double homicide, resulting in a mugshot very near the time of the murders.

The records the KCKPD had in 1994 on this potential suspect for the murders Plaintiff was wrongfully convicted of are obviously relevant to Plaintiff's claims that the KCKPD investigation was reckless, intentionally conducted in an unconstitutional manner, and that officers deliberately withheld and/or failed to document critical exculpatory evidence. Defendant's blanket objection to "relevance" should be disregarded and any responsive documents should be produced.

### 6. Documents Relating to Misconduct in the Murder Investigations into Defendant WK Smith's Family Members Are Relevant to Plaintiffs' Claims

Requests No. 171 and 173 seek documents relating to Jeffrey D. Smith, the son of Defendant W.K. Smith who was the identified perpetrator in two homicides but who was never prosecuted, as well as documents concerning Jeffrey Smith, Jr., the grandson of W.K. Smith. Both W.K. Smith's son and grandson are known to have been involved in criminal activity, especially drug activity and related violent crimes. Yet, Jeffrey Smith, Jr., has been prosecuted for a serious

felony only once (a murder that was pled to a manslaughter charge), and Jeffrey Smith has not been prosecuted at all. Jeffrey Smith was investigated by Golubski and other detectives in two homicides and was the primary suspect during the time that WK Smith was working in the detective bureau.  Yet, neither homicide case apparently proceeded to criminal charges. This type of police protection for those with relationships to KCKPD officers, including Golubski and W.K. Smith, is one of many reasons Plaintiffs allege McIntyre was wrongfully convicted of the Ewing-Quinn homicides.  Accordingly, these documents are relevant to show the favored treatment or protection that certain drug dealers received if they were connected with or paid police, and should be produced by Defendant.

### C.  Defendant Should Be Compelled to Conduct a Full Search of Defendants' Records for Responsive Documents

Because the requested documents are relevant and will likely provide evidence of Defendant's long-standing pattern and practice of permitting, endorsing and/or turning a blind eye to conflicts of interest, corruption, misconduct in investigations, and outright illegal activity by its officers – and the KCKPD's knowledge of such – Defendant should be required to search for and provide the requested documents.  The searches should not be difficult, as nearly all requests contain information (such as complaint numbers) that make them readily searchable.  Plaintiffs have no other avenue to obtain these documents or to obtain the highly relevant information described above.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its motion to compel, and order Defendant to produce the documents responsive to Plaintiffs' Third Set of

Requests for the Production of Documents, specifically Requests No. 98-179.  Plaintiffs further request that this Court order Defendants to produce the documents by a date certain.

Respectfully submitted,

LATHROP GPM LLP

By:   /s/ *Alana McMullin*
       Michael J. Abrams #15407
       Alexander T. Brown #78891
       Alana McMullin #78948
       2345 Grand Boulevard, Suite 2200
       Kansas City, MO 64108
       (816) 292-2000
       (816) 292-2001 Facsimile
       michael.abrams@lathropgpm.com


       /s/ Cheryl A. Pilate
       Cheryl A. Pilate #14601
       Lindsay Runnels #78822
       Morgan Pilate, LLC
       926 Cherry Street
       Kansas City, MO 64106
       Telephone: (816) 471-6694
       Facsimile: (816) 472-3516
       cpilate@morganpilate.com

       Barry Scheck (admitted *pro hac vice*)
       Emma Freudenberger (admitted *pro hac vice*)
       Yasmin Dagne (admitted *pro hac vice*)
       Neufeld Scheck & Brustin, LLP
       99 Hudson Street, Eighth Floor
       New York, NY 10013
       Telephone: (212) 965-9081
       Facsimile: (212) 965-9084
       emma@nsbcivilrights.com

       *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Alana M. McMullin, hereby certify that on June 4, 2021, true and correct copies of the foregoing document was electronically filed and served via the Court's electronic filing system on the following counsel of record:

David R. Cooper
dcooper@fpsslaw.com

Charles E. Branson
cbranson@fpsslaw.com

Henry E. Couchman, Jr.
hcouchman@wycokck.org

Edward James Bain, III
jbain@wycokck.org

Morgan L. Roach
morgan@mccauleyroach.com

Sean P. McCauley
sean@mccauleyroach.com

Jeffrey S. Kratofil
jeff@mccauleyroach.com

Matthew J. Gist
mgist@enszjester.com

Christopher M. Napolitano
cnapolitano@enszjester.com

Sean M. Sturdivan
s.sturdivan@swrsllp.com

Tracy M. Hayes
t.hayes@swrsllp.com

Elizabeth Ann Evers Guerra
e.evers@swrsllp.com

 /s/ *Alana McMullin*
An Attorney for Plaintiffs