

Lathrop GPM LLP
lathropgpm.com

2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Main: 816.292.2000

**Alana M. McMullin**
Associate
alana.mcmullin@lathropgpm.com
816.460.5531

April 27, 2021

**CONFIDENTIAL**
**VIA EMAIL** AT DCOOPER@FPSSLAW.COM

David R. Cooper
Fisher, Patterson, Sayler & Smith, LLP
3550 S.W. 5th Street
Topeka, Kansas 66606

RE:   *McIntyre v. Unified Government, et al.* Case No. 2:18-cv-02545-KHV-KGG
      Deficiencies in Discovery Responses

Dear Mr. Cooper:

On April 5, 2021, we received Defendant Unified Government's ("UG") "Response to Plaintiffs'
Third Set of Requests for Production of Documents and Things to All Defendants." Please consider
this correspondence a good faith attempt to resolve discovery disputes as set forth below. The
issues we would like to address with you are as follows:

## I.   The UG's 83 Identical, Boilerplate Objections.

Incredibly, in response to *eighty-three* out of *eighty-seven* Requests for Production of Documents,
the UG simply copies and pastes one identical, boilerplate objection:

> **Objection. This request exceeds the scope discovery under F.R.Civ.P. 26(b), the
> requested documents are not relevant to any party's claim or defense nor is the
> request proportional to the needs of the case, considering the issues at stake, and the
> factors set forth in Rule 26(b). Pursuant to F.R.Civ.P. 34(b)(2)(C), defendant advises
> the defendant does not know if it possesses responsive documents as the request
> exceeds the scope of discovery—lacking relevance to a claim or defense by a party.**

To be clear, the UG's failure to respond to 95% of Plaintiffs' Requests is improper and completely
unacceptable. Likewise, your attempt to direct Plaintiffs to previously produced files that <u>do not
respond</u> to the actual requests is insufficient and unnecessarily extends an already lengthy
discovery process, costing both parties more time and money.[1]

Additionally, like most courts, the District of Kansas strongly disfavors conclusory and boilerplate
objections, such as those the UG applied here.[2] As the responding party, the UG has the burden

---

[1] *See* the UG's Responses to Requests No. 134, 139-140, 143-144, 147, 162-163, 168, 171, 176-177, and 179.
[2] *See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.,* No. 13-2150-CM-KGG, 2014 WL 2815515, at
*4 (D. Kan. June 23, 2014).

**EXHIBIT**
**3**

Mr. Cooper
April 27, 2021
Page 2

"to clarify and explain how each discovery request is irrelevant" and "not reasonably calculated to lead to the discovery of admissible evidence."[3] Accordingly, the UG "cannot rely on its boilerplate objections alone, but rather must provide specific support for these objections."[4] Instead of supporting its objections (in any way), the UG copied and pasted *eighty-three* identical objections to separate requests relating to dozens of different witnesses, victims, files, and records. Further, you failed to specify *how* any request – let alone *all* of them – exceeds the scope of discovery, is irrelevant, or what particular harm would accrue if the UG were required to respond.[5] Accordingly, your responses and objections are deficient and Plaintiffs request the UG produce all responsive documents within fourteen (14) days or confirm that the UG made a diligent search for such documents, but that they do not exist.

## II.   The Four (4) Requests Without the UG's Boilerplate Objection

The only four Requests for Production of Documents you did not copy and paste the above-mentioned boilerplate objection in response to are Nos. 93-96. However, your Reponses (or lack thereof) are nonetheless insufficient, necessitating Plaintiffs to address them in turn:

**Request No. 93 – KCKPD Policies**

There is no dispute that the KCKPD's internal affairs policies and practices at the time of the investigation into Lamonte McIntyre are relevant to Plaintiffs' supervisory liability and *Monell* claims. However, no Internal Affairs policy from 1993-1995 has been produced, despite Plaintiffs repeated requests. Please either produce such policies or confirm the UG has attempted to locate such policies but that they do not exist.

**Request Nos. 94 and 95 – Golubski Insurance, Dependents and Mailing Address**

The UG does not object to Requests No. 94 or 95. Your only response is that the Personnel Record for Roger Golubski was previously produced. However, Plaintiffs are not claiming that all documents relevant to Request No. 94 (such as insurance policies, dependents, offspring, or beneficiary information) or No. 95 (such as mailing addresses in Missouri) are contained in Golubski's personnel file. Please confirm whether the requested documents exist and whether they are maintained in any other file, database, record, email, correspondence, or physical location. If the documents exist, Plaintiffs request their immediate production.

**Request No. 96 – James Brown work for the KCKHA**

Similar to Requests No. 94 and 95, James Brown's work for the KCKHA may be in the custody and control of the UG, but not contained in Mr. Brown's personnel file.  Please confirm whether any other file, database, record, physical location, email, correspondence or memoranda between

---

[3] *Cont'l Ill. Nat'l Bank & Tr. Co. v. Caton,* 136 F.R.D. 682, 685 (D. Kan. 1991).
[4] *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 519 (D. Kan. 2010); *see also Emps. Com. Union Ins. Co. of Am. v. Browning-Ferris Indus. of Kansas City, Inc.,* No. CIV. A. 91-2161-JWL, 1993 WL 210012, at *2 (D. Kan. Apr. 5, 1993) ("The objecting party generally has the burden to substantiate its objections.")
[5] *See Gen. Elec. Cap. Corp. v. Lear Corp.,* 215 F.R.D. 637, 640 (D. Kan. 2003).

Mr. Cooper
April 27, 2021
Page 3

or among commanders relating to James Brown's work for the KCKHA exists and/or whether the
UG has made any effort to search for this information outside of Mr. Brown's personnel file. If
the documents exist, Plaintiffs request their immediate production.

### III.   Specific Requests for Production of Documents

Despite the UG's unilateral and unsupported assertion that *none* of Plaintiff's *eighty-three*
remaining Requests for the Production of Documents are relevant, "[r]elevancy is broadly
construed during the discovery phase, and a request for discovery should be considered relevant if
there is 'any possibility' that the information sought may be relevant to the claim or defense of any
party."[6] Likewise, Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding
any nonprivileged matter that is relevant to any party's claim or defense...." Although your
objections to the below requests are baseless and boilerplate – **with no distinction or explanation
as to how each request exceeds the scope of discovery, is not proportional to the needs of the
case, or is not relevant** – Plaintiffs nonetheless explain in detail below why each one of Plaintiff's
Third Set of Requests for Production of Documents are relevant to Plaintiffs' claims or are likely
to lead to the discovery of admissible evidence.

**Addresses Frequented by Golubski for Illegal Activity**

Your response to Request No. 97 repeats the boilerplate objection addressed in Section I above,
but additionally adds that "address is not a searchable field for calls for service and a response
would require a manual search of records for call for service for a 16-year period." This is
demonstrably *false.* Indeed, in November of 2020, the UG admitted in its 2nd Supplemental
Response to Plaintiff's Second Request for Production that "a means of searching by address was
found and defendant is undertaking a rolling production of calls for service for the listed
addresses."[7] Accordingly, it appears the UG simply copied and pasted its prior responses and
objections into this Response *without even attempting* to locate or search for the requested
documents.

Despite the UG's boilerplate objection, the requested documents are relevant. First, the business
located at 1233 Central (Jack Swall Auto) was frequented by both Golubski and women who
worked as prostitutes (and alleged "informants") during the 1980s and 1990s. Additionally, retired
KCKPD Major John Cosgrove – a close associate of Golubski's during his time at the KCKPD
and the focus of multiple investigations – co-owns a business operating at that location. The other
location, 3005 Brown, was a widely known drug house frequented by Golubski and operated by
the Cecil Brooks/Aaron Robinson drug gang. This address was also the site of at least one murder
that Golubski allegedly investigated. *See generally* Complaint, ¶ 113, 123-125.

**Women Sexually Assaulted by Golubski and/or Women Whose Murder Investigations Were
Botched or Buried by Golubski**

---

[6] *Design Basics,* 271 F.R.D. at 523.
[7] *See* The UG's 2nd Supplemental Response to Plaintiff's Second Request for Production of Documents.

Mr. Cooper
April 27, 2021
Page 4

Request No. 98 seeks photographs of 19 women who were known to be impoverished, drug addicted and working on the streets.  They had regular contact with Roger Golubski and other KCKPD officers and/or were used as so-called "informants" by Golubski. Golubski sexually exploited and victimized these women, using threats, illegal enticements and the leverage of his badge to obtain sex, and thus, any information the KCKPD has on these women is clearly relevant to Plaintiffs' claims. *See* Complaint, ¶¶ 33-40, 121; 107-125; 131-144. Additionally, most of these women were victims of homicide, and in almost every case, Golubski was involved in or led the investigation – a clear conflict of interest. In most cases, the investigations were very brief, and the cases remain unsolved. Similarly, Request Nos. 99-116 and 119-122 seek any KCKPD investigative files pertaining to some of these same women, as well as documents reflecting any allegations of misconduct in those investigations, as is relevant to Plaintiffs' *Monell* claim. *See* Complaint, ¶ 187-195.

**Women Sexually Assaulted by Golubski or Used as Golubski's "Informants"**

Requests No. 149, 151, 152, 153, 156, 157, 160, 169,170, 178 seek documents and information concerning Nakisha Freeman, Larisha Grant (aka Kreco Ellis), Elaine Green, Gwinn Green, Yolanda Jackson, Jackie Leapheart, Kimyonis (Kim) Palmer, Beatrice LaShun Russell, Sabrina Russell, and Tracy Walton.

All of the women listed above were sexually exploited or assaulted by Golubski, used as Golubski's "informants," or both.  Several had repeated contact with Golubski for years, and were provided with money, drugs or special favors, including protection from arrest in exchange for sex during his time at the KCKPD. Additionally, at least three of the women – Elaine Green, Gwinn Green and Kimyonis Palmer – are deceased. Kim Palmer died in an unsolved hit-and-run on Quindaro – just blocks from where the Ewing-Quinn homicide occurred.

**Murdered Women Whom Golubski Used as "Informants"**

Requests No. 133, 135, 140, 144, 147, 148, 150, 154, 155, 158, 168, 177 seek any police reports or other documents on the following women, who were homicide victims: Monique Allen, Pearl Davis Barnes (aka Sameemah Musawwir), Rose Marie Calvin, Vickie Hollinshed (aka Vickie Dew), Diane Edwards, Barbara Finch, Sandra Glover, Trina Harris, Pearlina Henderson, Eliza (or Elza) Michie, Beatrice Russell, and Rhonda Tribue.

These women were all drug addicted, most worked as prostitutes, and all were sexually exploited by or interacted with Golubski and other KCKPD officers. Golubski used improper enticements, threats and the leverage of his badge to exploit these women for sex. He also used these women as so-called "informants," thereby placing them at risk on the streets. Additionally, KCKPD reports and other documents concerning these women – like the other individuals Golubski used as informants – are relevant to the "leverage" police may have had based on the existence of warrants, arrests, pending cases etc.

Mr. Cooper
April 27, 2021
Page 5

Further, the prior production of the homicide files on Rose Calvin, Vickie Hollinshed, Beatrice Russell, and Rhonda Tribue does not satisfy the requests as to those women, as their contacts with police while still alive are just as relevant for the purpose of discovery as the facts and circumstances surrounding their deaths.

Request No. 136 seeks documents concerning Connie Byas (aka Connie J. Wallace). Ms. Byas was a known prostitute who worked in both Kansas and Missouri. She went missing in October 1996 and her body was pulled from the Missouri river (in Missouri) in April 1997. She had been shot three times. Ms. Byas' missing person's report, criminal history, and any relationships or interactions she had while alive with Golubski or other KCKPD officers is relevant to Plaintiffs' claims.

**Golubski's Pattern and Practice of Stalking and Harassing Women**

Request No. 132 seeks documents, including case files, complaints, reports or other documents reflecting the stalking or harassing of Ethel Abbott (Golubski's ex-wife) by Defendant Golubski. Ethel was married to Roger Golubski in the 1990s when Plaintiff was wrongfully convicted. Following the annulment of their marriage, Ethel was stalked and harassed by Golubski, just as Plaintiff Rose Lee McIntyre was. *See* Complaint, ¶¶ 3-4, 41-45, 108-125, 131-144.[8] Ethel also complained to the police department about Golubski, after which he was allegedly ordered to stay away from her. Yet, when Ethel's home was broken into, Golubski was involved in the investigation. This evidence is clearly relevant to Plaintiffs' claims in this lawsuit, and show a pattern and practice of Golubski's harassment and stalking of women, as well as his involvement in investigations where clear conflicts of interest exist.

**Drug-Related Gang Activity and "Informants" Connected to Golubski**

Requests No. 117-118 seek the KCKPD investigative files for the murder of Anthony Quinn, a member of the drug gang operated by Antonio and Marcus Quinn, a gang with known ties to Golubski. Although Anthony was murdered in front of witnesses by a member of his own family, the case was never prosecuted. As alleged in the Complaint, ¶¶ 38, 113, 123-125, Golubski gave "protection" to certain drug-gangs, which allowed for open-and-shut acts of violence between gang members to go unpunished in return for money and drugs. Thus, Anthony's Quinn's homicide file and any allegations of impropriety or misconduct in the investigation by KCKPD officers is clearly relevant to Plaintiffs' claims.

Request No. 134 seeks documents concerning Wendell Anderson, aka "Tank," a member and enforcer in the Brooks-Robinson drug gang. Anderson was engaged in violent acts to further the gang's drug conspiracy, a conspiracy that included protection from Golubski. In May 1997, Anderson was identified as the primary suspect in the KCKPD homicide investigation of Beatrice Russell, a prostitute in frequent contact with Golubski. However, Anderson was never charged with Russell's murder and the other criminal charges against him in connection with her murder

---

[8] *See* December 11, 2013 Affidavit of Ethel Abbott (LMKSDC_0004740-0004743).

Mr. Cooper
April 27, 2021
Page 6

were later dismissed. Thus, Anderson's criminal history, the KCKPD cases he was involved in, including those he was never charged with or which were dismissed, and his interactions with Golubski are clearly relevant to Plaintiffs' claims.

Request No. 139 seeks documents concerning Brandie Brownlee, the girlfriend of Aaron Robinson, a drug dealer and a leader of the Brooks-Robinson gang – a gang directly connected to Golubski – at the time of the Ewing-Quinn double homicide. Brownlee was frequently in the presence of Aaron Robinson and Neil Edgar, Jr. ("Monster") and has knowledge of Monster's reputation and use of violence as well as other relevant facts. Accordingly, Brownlee's criminal history, her interactions with gang members, and any interactions with Golubski documented by the KCKPD are clearly relevant. *See also* Complaint, ¶¶ 113, 123-125.

Requests No. 143 and 165 seek information and documents concerning Jacqueline Dawson and William ("Still Bill") Roark. Jacqueline is the best friend of Golubski's long-time girlfriend, Lorene Stewart, has knowledge of Golubski's illegal and improper conduct over the past 25 years, and procured drugs for Golubski to give to Stewart in exchange for sex.[9] William Roark is Dawson's son, a drug dealer and leader of a gang in the 1990s who was investigated numerous times for violent criminal incidents, but who was never convicted. Thus, Dawson and Roark's criminal histories, the criminal acts they were involved in but never charged with, and any documented interactions with Golubski are clearly relevant to Plaintiffs' claims.

Request No. 145 seeks documents concerning Joe Dodson, an individual living at the 3005 Brown drug house operated by the Brooks-Robinson gang (*see* discussion above re: 3005 Brown). Dodson was well acquainted with Roger Golubski, whom he resented for fathering a child with his girlfriend. Dodson's criminal history, cooperation with the KCKPD, and interactions with Golubski are relevant to Plaintiffs' claims or are likely to lead to admissible evidence.

Requests No. 159, 161, 162, 163, 165, 166, 167, 175, 179 seek documents concerning Alonzo Mosley, Ezekiel Payne, Antonio Quinn, Marcus Quinn, Lemark Roberson, Derek Rucker, Larry Rucker, Elvester Sowell IV, and Montee Woodberry.

All of the individuals listed above were either notorious drug dealers or members of drug gangs at the time of the Ewing-Quinn murders. All had relationships with Golubski, ranging from the cooperative to the conflicted. Some of them ran gangs; others were participants who were recruited or conscripted by Golubski and followed his dictates. Ezekiel Payne, Antonio Quinn, and Marcus Quinn were powerful, high level drug dealers who ran several drug houses in the area at the time and who committed criminal acts without legal repercussions. Lemark Roberson was employed by Brooks drug gang to sell crack cocaine and purchase properties as a front for drug operations. Golubski knew of the illicit activity of these gangs and demanded a share of profits, a take of their drugs, or that they play a certain role on the streets. Additionally, Montee Woodberry, Alonzo Mosley and Elvester Sowell IV were alleged to be informants for Golubski or the KCKPD. Just before Plaintiff's trial for the homicides of Ewing and Quinn, Woodberry was endorsed by the

---

[9] *See* March 4, 2013 Affidavit of K.D. (LMKSDC_0004685-0004688).

6

Mr. Cooper
April 27, 2021
Page 7

prosecutor as a witness, but never ended up testifying. Woodberry was killed in October 1998, and Elvester Sowell IV was murdered in October 2006. Further, Larry and Derek Rucker were drug-dealers conscripted by Golubski to sell his shake-down drugs and knew that Golubski sexually exploited black women in the community. These individuals, their criminal histories, and any information the KCKPD has on their cooperation in criminal investigations and relationship with Golubski is clearly relevant.

**Allegations of Sexual Misconduct of Other KCKPD Officers**

Requests No. 125-126 concern a February 1996 complaint of sexual assault against former KCKPD detective William Saunders by Natasha Hodge. Although Hodge provided a detailed statement and Internal Affairs investigated, Saunders was never prosecuted and never suffered any significant discipline. The handling of Hodge's allegations is a prime example of how the KCKPD failed to hold officers accountable for sexual assault, supporting Plaintiffs' *Monell* claim in this case. *See* Complaint, ¶¶ 107-125; 131-144.

**Golubski's Investigative Misconduct in Other KCKPD Cases and Other Relevant Acts**

Requests No. 127-128 seek documents concerning Golubski's investigative misconduct in other cases. Specifically, Golubski was disciplined under Rule 3.16 for submitting a false report in connection with the death of Kenneth Ernest Borg, and was disciplined with a three-day suspension. This case was the subject of a coroner's inquest, and Golubski was required to take a polygraph examination. This information is clearly relevant to Golubski's pattern of investigative misconduct.

Requests No. 129-130 seeks information regarding the investigation into the death of Kenneth W. Khan in September 1989, which was investigated by Golubski and others. Khan's death was ruled a suicide, but concerns were raised as to how the case was handled. Notably, the gun on the scene was found in Khan's right hand when he was left-handed. Documents relating to Golubski's misconduct in other cases, such as Khan's, are relevant to show Golubski and the KCKPD's pattern and practice of misconduct in investigations and insufficient investigation in order to close cases.

Request No. 131 seeks the complete investigative KCKPD file relating to the death of an unidentified woman, who the media reported was found on July 6, 1996 in the 500 block of Miami Street in the parking lot of a trucking company. The unidentified woman was found amidst a string of murders of women in 1996. The homicide files concerning these women were generally closed after very little, if any, investigation. Any documents reflecting misconduct or insufficient investigations by KCKPD officers, including Golubski, are relevant to Plaintiffs' claims in this lawsuit or are likely to lead to the discovery of admissible evidence.

Request No. 138 seeks documents concerning Lakeir Brown. Lakeir testified as the primary witness in the Reginald Allen homicide case, which was investigated by Golubski and Terry Zeigler. All charges were dismissed against defendant DeShannon Daniels during the preliminary hearing when Brown testified he was paid or otherwise compensated by Golubski and Zeigler to

7

Mr. Cooper
April 27, 2021
Page 8

testify against Daniels. These documents are clearly relevant to Golubski's pattern and practice of coercion or manipulation of witnesses and his use of secret incentives to obtain false testimony.

Requests No. 141-142 seek documents concerning Neosha Collier and Rose Collier. Rose Collier had a child (Neosha) fathered by Roger Golubski when she was a teenager. Rose was one of the many drug-addicted women in the black community that Golubski targeted. Neosha Collier is widely known in the community as the biological daughter of Roger Golubski, supporting Plaintiff's allegations of Golubski's improper sexual exploitation. *See* Complaint, ¶¶ 35, 136. Additionally, Neosha has knowledge of Golubski's improper investigative practices as she has been a potential witness in at least one case that Golubski investigated. In that case, involving the homicide of Robert Diaz, Golubski conducted a consent search of Neosha's dwelling – a clear conflict of interest. Documents relating to these incidents, Golubski's improper investigative practices, his sexual relationships with drug-addicted, impoverished women in the community, and the information the KCKPD has relating to these events are directly relevant to Plaintiff's claims.

**Birdell Richard West**

Requests No. 123-124 seek documents relating to Birdell Richard West, a health care worker, who was murdered in June 2002. His body was recovered from a vehicle that had been torched and left on railroad tracks, where a train then hit. Despite the nature of West's death, the case was apparently never investigated as a homicide. West was acquainted with Antonio and Marcus Quinn and other members of their gang. The case was not included in the KCKPD's internal homicide list. West's KCKPD file and any documents reflecting or alleging misconduct in the investigation or a failure to investigate are relevant to Plaintiff's claims and is likely to lead to the discovery of admissible evidence

**Alternate Suspect in Ewing-Quinn Murder Investigation**

Request No. 146 seeks documents concerning Lamonte Drain, (aka, Uganda Drain, aka Anthony Lewis). It is beyond dispute that records and documents relating to Lamonte Drain are relevant in this case, as Ruby Mitchell – the only eyewitness to testify against Lamonte at trial – initially named the shooter as a "Lamonte" who had a brief relationship with Ruby's niece, Keva Garcia (deceased). That "Lamonte" was Lamonte Drain. Likewise, the shooter was alleged to have "French braids," which both Lamonte Drain and Neil Edgar Jr (Monster) had at the time of the Ewing-Quinn homicide. Lamonte Drain had an extensive criminal record and was in jail shortly before the double homicide, resulting in a mugshot very near the time of the murders. The records the KCKPD had on this potential suspect are obviously relevant to Plaintiff's claims that the KCKPD investigation was reckless, intentionally conducted in a deficient and unconstitutional manner, and that officers deliberately withheld and/or failed to document critical exculpatory evidence.

**Family Members of Defendant W.K. Smith**

8

Mr. Cooper
April 27, 2021
Page 9

<u>Requests No. 171, 173</u> seeks documents relating to Jeffrey D. Smith, the son of Defendant W.K. Smith who was the identified perpetrator in two homicides but who was never prosecuted, as well as documents concerning Jeffrey Smith, Jr., the grandson of W.K. Smith. Both W.K. Smith's son and grandson have been heavily involved in criminal activity, especially drug activity and related violent crimes. Yet, Jeffrey Smith, Jr., has been prosecuted for a serious felony only once (a murder that was pled to a manslaughter charge), and Jeffrey Smith has not been prosecuted at all. Jeffrey Smith was investigated by Golubski and other detectives in two homicides and was the primary suspect. Yet, neither case apparently proceeded to criminal charges. These documents are relevant to show the favored treatment or protection that certain drug dealers received if they were connected with or paid police, including Golubski and W.K. Smith.

<u>Request Nos. 172 and 176</u>. These requests have been satisfied or are no longer necessary.

<u>Request No. 174</u> seeks documents relating Kayla Smith. She is the daughter of Lorene Stewart and therefore a close associate of Roger Golubski. She has been arrested on numerous occasions and is believed to have been directly involved in criminal, drug activity that also involved Lorene Stewart, Golubski's longtime close associate, as well as Golubski himself.

**IV.<u>Conclusion</u>**

For additional information on the above-mentioned individuals, please also review Plaintiffs' Third Amended Rule 26 Disclosures.

Please provide either the documents requested or your response to this correspondence before April 30, 2021, or let me know when you are available to meet and confer on the above issues. Should you fail to do so, we will be forced to file a motion to compel discovery with the court. Please contact me should you have any questions.


Best regards,
Lathrop GPM LLP



Alana M. McMullin
**Associate**