IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAMONTE MCINTYRE &,
ROSE LEE MCINTYRE,

                Plaintiffs,

v.                                         Case No. 2:18-cv-02545-KHV-KGG

UNIFIED GOVERNMENT OF WYANDOTTE
COUNTY AND KANSAS CITY, KS, et al.,

                Defendants.

**Response to Motion to Compel, ECF 308**

**Nature of the Case**

Plaintiffs bring an action under § 1983 and Kansas law against the Unified Government of Wyandotte County and Kansas City, Kansas (Unified Government) and eight individual defendants. Plaintiff Lamonte McIntyre claims he was wrongfully convicted of the double murder of Doniel Quinn and Donald Ewing in 1994. Lamonte McIntyre claims his conviction was caused by the unconstitutional conduct of the eight individual defendants and further asserts a *Monell* claim against the Unified Government. Plaintiff Rose McIntyre asserts a familial association claim under § 1983 against defendant Roger Golubski.

Plaintiffs claim Lamonte McIntyre's 1994 conviction for was caused by "longstanding and widespread investigatory misconduct that led to McIntyre's wrongful conviction was the result of well-settled KCKPD policies, practices, and customs." ECF 309, p. 3. Plaintiffs contend former Kansas City, Kansas Police Detectives caused Lamonte McIntyre's conviction and imprisonment for the April 1994 murders of Doniel Quinn and Donald Ewing. Second Amended Complaint, ECF

74. Plaintiffs claim the individual defendants (separately or in different combinations) (1) used unduly suggestive and/or coercive identification procedures to obtain a false identification from eyewitnesses, (2) fabricated evidence regarding an alibi defense, and (3) withheld and/or suppressed exculpatory evidence in violation of *Brady v. Maryland*.

This matter is before the court on Plaintiffs' motion to compel the production of documents pertaining to (1) photographs of persons unrelated to the Quinn/Ewing homicides, (2) unrelated homicide/death investigations and an unrelated assault investigation, and (3) "all documents" pertaining to 47 individuals unrelated to the Quinn/Ewing homicides. In sum, the Third Request for Production to the Unified Government (1) seeks documents which are not relevant to any party's claim or defense, and (2) is disproportional to the needs of this case. The requests exceed the scope of discovery permitted under Rule 26(b). As such, Plaintiff's Motion to Compel (ECF 308) should be denied. Plaintiff's arguments regarding relevance resort to speculation ~~and broad, unsupported assertions~~.

## Statement of Facts

Plaintiffs third request for production of documents seeks to discover:

(1) Photographs, mug shots, missing persons reports, and "any police report or investigative file pertaining to" 19 women unrelated to the Quinn/Ewing homicides (Request No. 98.a through 98.s);

(2) Complete investigative files and "documents reflecting allegations of misconduct" in the investigation of 16 unrelated homicides/deaths:

   1) Nos. 99 and 100 (02/03/1995 homicide of Rosemary Baker-Powers)
   2) Nos. 101 and 102 (07/24/2001 homicide of Kia Vang)
   3) Nos. 103 and 104 (05/19/1995 homicide of Sandra J. Wilson)
   4) Nos.105 and 106 (11/22/1996 homicide of Pearl Barnes, aka Pearl Davis, aka Sameemah Musawwir)
   5) Nos. 107 and 108 (03/09/1997 homicide of Sandra Glover)
   6) Nos. 109 and 110 (01/10/1998 homicide of Monique Allen)
   7) Nos. 111 and 112 (01/15/2000 homicide of Anita Webb)
   8) Nos. 113 and 114 (02/03/2004 homicide of Eliza (or Elza) Michie, aka Mitchie)
   9) Nos. 115 and 116 (05/08/2006 homicide of Barbara L. Finch)

10) Nos. 117 and 118 (05/25/2006 homicide of Anthony J. Quinn)
11) Nos. 119 and 120 (08/24/2006 homicide of Trina F. Harris)
12) Nos. 121 and 122 (11/25/2008 homicide of Pearlina D. Henderson)
13) Nos. 123 and 124 (06/04/2002 or 06/05/2002 homicide or death of Birdell Richard ("Rick") West)
14) Nos. 127 and 128 (03/05/1978 death of Kenneth Ernest Borg)
15) Nos. 129 and 130 (09/22/1989 homicide of Kenneth W. Khan)
16) No. 131 (07/06/1996 death unknown woman found in the 500 block of Miami Street)

(3) Documents related the investigation of and/or any complaints about the investigation of an alleged sexual assault in 1996 (Request Nos. 125 and 126 relate to the 02/06/1996 alleged sexual assault of Natasha Hodge);

(4) "All documents pertaining" to 47 people (including some of the homicide victims) Request Nos. 133-179

| | |
|---|---|
| 1) No. 133 Monique Allen | 22) No. 154 Trina Harris |
| 2) No. 134 Wendell Anderson, a suspect in the 1997 homicide of Beatrice Russell. | 23) No. 155 Pearlina Henderson |
| | 24) No. 156 Yolanda Jackson |
| 3) No. 135 Pearl Barnes, aka Pearl Davis, aka Sameemah Musawwir | 25) No. 157 Jackie Leapheart |
| | 26) No. 158 Eliza (Elza) Michie (or Mitchie) |
| 4) No. 136 Connie Byas aka Connie J. Wallace | 27) No. 159 Alonzo Mosley |
| | 28) No. 160 Kimyonis (Kim) Palmer |
| 5) No. 137 Gail Bowie aka Gail (or Gayle) Gardener | 29) No. 161 Ezekiel Payne |
| | 30) No. 162 Antonio Quinn |
| 6) No. 138 Lakeir Brown | 31) No. 163 Marcus Quinn |
| 7) No. 139 Brandie Brownlee | 32) No. 164 William Roark |
| 8) No. 140 Rose Calvin | 33) No. 165 Lemark Roberson |
| 9) No. 141 Neosha Collier | 34) No. 166 Derek Rucker |
| 10) No. 142 Rose Collier | 35) No. 167 Larry Rucker |
| 11) No. 143 Jacqueline Dawson | 36) No. 168 Beatrice Russell |
| 12) No. 144 Vickie Hollinshed, aka Vickie Dew | 37) No. 169 Beatrice LaShun Russell |
| | 38) No. 170 Sabrina Russell |
| 13) No. 145 Joe Dodson | 39) No. 171 Jeffrey D. Smith |
| 14) No. 146 Uganda L. Drain, aka Lamonte Drain, aka Anthony Lewis | 40) No. 172 Harold Smith |
| | 41) No. 173 Jeffrey Smith Jr. |
| 15) No. 147 Diane Edwards | 42) No. 174 Kayla Smith |
| 16) No. 148 Barbara Finch | 43) No. 175 Elvester Sowell IV |
| 17) No. 149 Nakisha Freeman | 44) No. 176 Lorene Stewart aka Lorene Smith |
| 18) No. 150 Sandra Glover | 45) No. 177 Rhonda Tribue |
| 19) No. 151 Larisha Grant, aka Kreco Ellis | 46) No. 178 Tracy Walton |
| 20) No. 152 Elaine Green | 47) No. 179 Montee Woodberry |
| 21) No. 153 Gwinn Green | |

**Argument and Authorities**

Defendant objects to a fishing expedition for records that do not bear on the claims made

by plaintiffs or the defenses by any defendant. That is, the records sought are not relevant to Lamonte McIntyre's 1994 conviction for the Quinn/Ewing murders. The production of the requested documents will force the parties to expend valuable time to review and analyze decades-old homicide and death investigations and other documentation (if any) of police contacts unrelated to the Quinn/Ewing homicides.

**Standards**

Rule 26 states:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b). The court also considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). While "[r]elevance is broadly construed at the discovery stage," discovery is not unlimited. *Helget v. City of Hays, Kans.*, 300 F.R.D. 496, 499 (D. Kan. 2014). To be discoverable, the "requested information must be nonprivileged, relevant, and proportional to the needs of the case." *Holick v. Burkhart*, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face. *Williams v. Bd. of County Comm'r*, 192, F.R.D. 698, 702-03 (D.Kan. 2000). Where discovery requests seek documents or information that is not facially relevant, the party seeking discovery has the burden to show the relevancy of the requested discovery. *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).

Plaintiffs repeatedly describe defendant's objections as "boilerplate." First, the object was not addressed to each of the 86 requests propounded. Rather, the objection—related to the scope

of discovery, relevance and proportionality was addressed only to the 80 requests which are not facially relevant. When discovery is facially overbroad or when the relevancy is not readily apparent, it is the propounding party's burden to show the relevancy of the request. *Johnson v. Kraft Foods North America, Inc.*, 238 F.R.D. 648, 653 (D. Kan. 2006). Plaintiff has not met this burden.

Plaintiffs requests are not facially relevant, they are not relevant even when considering plaintiffs' explanations for the requests and, further, the requests are not proportional. The motion to compel should be overruled.

**Plaintiffs' arguments of relevance do not pass muster.**

Plaintiffs offer two hooks to latch onto relevance. Plaintiffs posit the requested documents will "reflect[] KCKPD policies, practices, or customs similar to those alleged in Plaintiffs' Complaint–whether prior to or after McIntyre's conviction" which plaintiff claims are relevant to"(1) to show that the same policies likely existed at the time of McIntyre's conviction and (2) to show motive, intent, preparation, plan, knowledge, and absence of mistake, especially with respect to Defendant Golubski. See Fed. R. Evid. 404(b)." ECF 309, p. 6. Plaintiff should not be allowed to fish with either hook.

Plaintiff's requests fall into four broad buckets, or categories:

(1)   Photographs, mug shots, missing persons reports,

(2)   Homicide/death investigative files,

(3)   Files related to an alleged sexual assault in 1996; and

(4)   "All documents pertaining" to 47 people.

*Monell* **claim relevance.**

Plaintiffs' hook for relevance of the various requests is policies, procedures, and customs for purposes of the *Monell* claim against the Unified Government.

{T0471774}                                        5

The Unified Government has produced the General Orders of the KCKPD from 1990 to 2000 in its possession. It also produced the Memoranda of Understanding between Kansas City, Kansas and Fraternal Order of Police Lodge # 4 of Kansas City, Kansas for the years 1984 to 2000. These documents set forth the policies, procedures, rules and regulations, discipline and grievance procedures of the Kansas City, Kansas Police Department. The requests that are the subject of the motion to compel do not bear on the policies, practices, or customs of the KCKPD.

With respect to plaintiffs' allegations of wrongdoing by Golubski and the other individual defendants, the Unified Government has produced all documents in its possession pertaining to complaints to and/or investigations by Internal Affairs pertaining to the eight individually named defendants—including Roger Golubski. The Unified Government has also produced the entire personnel and training records for the eight individually named defendants—including Roger Golubski.

The documents plaintiffs' seek to compel do not bear on plaintiffs' *Monell* claims.

**404(b) relevance.**

Plaintiffs also rely on the potential for admissibility under Rule 404(b) as a hook for relevance. Thus, the discoverability analysis cannot be divorced from the Rule 404(b) admissibility requirements. For evidence of prior "bad acts" to be admissible under Rule 404 (b), (1) the evidence must be offered for a proper purpose; (2) it must be relevant; (3) its probative value must not be substantially outweighed by its potential for unfair prejudice under Rule 403. *United States v. Moran*, 503 F.3d 1135, 1143-44 (10th Cir. 2007). Any such evidence would be contested vigorously by the defendants. One of the hurdles to admissibility under Rule 404(b) is the disapproval of mini-trials within a trial to address the materiality (or lack) of the prior acts and the tangents that must be addressed to address juror confusion and unfair prejudice. *Id*.; *United States*

*v. Talamante*, 981 F.2d 1153, 1157 n.5 (10th Cir. 1992) (noting the propriety of excluding 404(b) evidence to avoid delay and collateral mini-trials).

This same issue was addressed in *Est. of Bryant v. Baltimore Police Dep't,* No. ELH-19-384, 2020 WL 6161708, at *8 (D. Md. Oct. 21, 2020), and the court denied a motion to compel responses to the same requests in that case. The court noted that proportionality not only weighed against discoverability for 404(b) purposes, but that the documents requested (historic or subsequent investigative files) were not relevant to the 404(b) issues of motive, intent, etc. with respect to the claims involving the homicide investigation at issue in the case. *Id*. Similarly, other investigative files have no bearing on the alleged intent, motive, or plan regarding the investigation of the Quinn/Ewing homicides and the prosecution of Lamonte McIntyre. "Whether [Golubski] acted with the requisite intent is an important issue that will be hotly contested, but the homicide files are not particularly important in resolving it." *Id*.

**(1)     Photographs, mug shots, missing persons reports.**

Request No. 98, with sub-parts a. through s., seeks photographs, mug shots, missing persons reports, and "any police report or investigative file pertaining to" 19 women unrelated to the Quinn/Ewing homicides. Plaintiff's motion claims these women to have been "impoverished, drug addicted and working on the streets of KCK. Each one of these women had regular contact with Roger Golubski and other KCKPD officers and/or were used as so-called 'informants' …." ECF 309, p. 16.

There is no connection or relevance to the claims or defenses in this case, which derive from the 1994 murders of Quinn and Ewing.

**(2)     Homicide/death investigative files.**

Requests related to the homicide/death investigations, Nos. 99-125 and 127-131, each involve a pair of requests (excepting No. 131) that take the following form:

> 99. Identify and produce true and correct copies, reproduced in their original form, of the complete investigative KCKPD file(s) regarding the investigation of the X homicide of **XX**, complaint XXX.
>
> 100. Identify and produce true and correct copies of any and all documents reflecting allegations of misconduct in the investigation of the X homicide of **XX**, complaint XXX, including without limitation documents pertaining to investigations of that misconduct and allegations made both internally in the KCKPD and to any external body or organization.

Request Nos. 99/100, 101/ 102 103/104, 105/106, 107/108, 109/110, 111/112, 113/114, 115/116, 117/118, 119/120, 121/122, 123/124, 127/128, and 131.

Plaintiffs allege in the Second Amended Complaint that the Unified Government caused Lamonte McIntyre's conviction through policies, practices and customs ***that were in force and effect in 1994 and the years beforehand***. ECF 74, ¶¶ 189 through 191. On their face, Plaintiffs' claims do not involve conduct or events occurring after Lamonte McIntyre's conviction in September 1994. ECF 74, ¶ 101.

Of the 16 homicide/death investigation files requested, 14 occurred after Lamonte McIntyre's conviction in 1994. Plaintiff's memorandum acknowledges no Tenth Circuit case holds this type of post-deprivation information is discoverable. ECF 309, p. 13. Nonetheless, basic principles of linear time preclude any suggestion that conduct occurring *after* the alleged violation (in 1994) could have somehow caused that violation (in 1994). *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009). *See also Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1289 (10th Cir. 2019) (conduct that occurs a year after the alleged violation is not relevant to causation of the alleged violation). Events occurring *after* the alleged constitutional violations could not cause the underlying constitutional violation. *M.C. Through Chudley v. Shawnee Mission Unified Sch. Dist. No. 512*, 363 F. Supp. 3d 1182, 1206 (D. Kan. 2019).

Of the two investigations occurring prior to 1994, one was in 1978 and the other in 1989. Plaintiffs make no effort to articulate or illustrate the relevance of the documents. Rather, plaintiffs simply repeat the phrase "investigative misconduct" without elaboration.

**(3)   Files related to an alleged sexual assault in 1996.**

Request Nos. 125 and 126 follow the same pattern as the requests for the homicide/death investigation files, seeking documents related to the investigation of and/or any complaints about the investigation of an alleged sexual assault of Natasha Hodge in February 1996.

As set forth above, principles of linear time preclude any suggestion that conduct occurring *after* 1994 is relevant to the causation of that violation in 1994. *Cordova*, 569 F.3d at 1194; and *Waller*, 932 F.3d at 1289.

**(4)   "All documents pertaining" to 47 people.**

This last bucket/category is broken down further by plaintiffs as follows:

(a)   Women who were used as informants,
(b)   Drug-related gang activity and informants,
(c)   Golubski's alleged stalking and/or harassment of women,
(d)   Alleged investigative misconduct in other KCKPD cases,
(e)   Alternate suspects in the Quinn/Ewing murders, and
(f)   Homicide investigations involving Defendant WK Smith's family.

The 47 requests do not ask for documents related to informants, allegations of stalking and/or harassment, or investigative misconduct. Rather, the requests each seek the following:

Identify and produce true and correct copies of all documents pertaining to **XXX** including without limitation:
a.   the complete criminal history or "rap sheet";
b.   any documents referring to or reflecting criminal history;
c.   all files regarding any arrest or any incident involving detention by KCKPD;
d.   all files regarding the investigation or prosecution of any crime for which the individual was investigated or charged;
e.   every statement given to any KCKPD employee or employee of the WCDAO;
f.   all agreements, including cooperation agreements, with the KCKPD, the WCDAO or their agents;
g.   a list of cases or incidents in which the individual was involved in any way,

    including without limitation as a complainant, victim, witness, informant, suspect, or person of interest;
h. all documentation, including but not limited to notes or transcripts, of any offer of leniency, benefit, reward, or favorable treatment received by or made to the individual in connection with any investigation or cooperation;
i. all documentation reflecting or referencing interactions or relationships the individual had with defendant Roger Golubski.

Request Nos. 133-179.

  **(a)** **Women who were used as informants,**
  **(b)** **Drug-related gang activity and informants,**
  **(c)** **Golubski's alleged stalking and/or harassment of women,**
  **(d)** **Alleged investigative misconduct in other KCKPD cases,**

Again, the Unified Government has already produced the personnel records, training records, and discipline records and files pertaining to all the individual defendants. The requests do no seek information pertaining to a claim or defense and are clearly not proportional.

  **(e)** **Alternate suspects in the Quinn/Ewing murders, and**

Plaintiffs contend Request No. 146, which seeks documents concerning Lamonte Drain, (aka, Uganda Drain, aka Anthony Lewis), is relevant seeking documents pertaining to an alternate suspect. The Second Amended Complaint belies the assertion as it alleges unambiguously that Neil Edgar, Jr. aka "Monster" shot Doniel Quinn and Donald Ewing. ECF 74, ¶¶ 5, 9-10, 13-14, 46-47.

The investigation file for the Quinn/Ewing murders has been produced. The investigative efforts actually made/taken have been provided in discovery. Plaintiff's request for "all documents" pertaining Lamonte Drain is neither relevant nor proportional.

  **(f)** **Homicide investigations involving Defendant WK Smith's family.**

Request nos. 171 to 174 seek "all documents pertaining" to family members of defendant W.K. Smith. Plaintiffs seek to justify request nos. 171 and 173, pertaining to W.K. Smith's son and grandson arguing the son was the identified perpetrator in two homicides and both were

"involved in criminal activity." Plaintiffs do not mention or attempt to justify request nos. 172 and 174 pertaining to Harold Smith and Kayla Smith.

Request no. 171, is directed to a Jeffrey D. Smith who was (1) the homeowner shooter in a November 1, 1994 shooting of Jelani Issa during a home invasion/burglary, and (2) identified as the a suspect in the June 2000 homicide of Kenney Cheffen. The investigation files for both the Issa and Cheffen homicides were previously produced in discovery.

Request No. 173, is directed to Jeffrey D. Smith, Jr., born in 1992. It is not possible for any criminal activity involving this person to have occurred prior to Lamonte's conviction in 1994. Nonetheless, a manslaughter charge involving Jeffrey D. Smith, Jr., resulted in a conviction and sentence in 2014. Wyandotte Case No. 14CR428, offense date, Jan 17, 2014, sentenced, Aug 08, 2014.[1]

The requests do no seek information pertaining to a claim or defense and are clearly not proportional.

## Conclusion

Plaintiff's motion to compel the responses to Request Nos. 98 through 179 should be denied. The requests are not facially relevant and plaintiff has not met their burden of demonstrating relevance to any claim or defense. Moreover, the requests are not proportional to the needs of the case.

---

[1] See, Kansas Adult Supervised Population Electronic Repository, Kansas Criminal Justice Information System, https://kdocrepository.doc.ks.gov/kasper/search/results, last visited on June 25, 2021.

Fisher, Patterson, Sayler & Smith, LLP
3550 S.W. 5th Street
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 286-6609
dcooper@fpsslaw.com | cbranson@fpsslaw.com

s/David R. Cooper
| David R. Cooper | #16690 |
| Charles E. Branson | #17376 |

*-and-*

Henry E. Couchman Jr., #12842
Edward James Bain, #26442
Unified Government of Wyandotte
County/Kansas City, Kansas
Legal Department
701 N. 7th Street, Suite 961
Kansas City, Kansas 66101
Tel: (913) 573-5060 | Fax: (913) 573-5243
hcouchman@wycokck.org
jbain@wycokck.org

Attorneys for Defendant Unified Government of Wyandotte County and Kansas City, Kansas

**Certificate of Service**

I hereby certify on the June 25, 2021, I caused the foregoing to be electronically filed with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record:

Michael J. Abrams – Michael.Abrams@LathropGPM.com
William G. Beck – William.Beck@LathropGPM.com
Alexander T. Brown – Alexander.Brown@LathropGPM.com
Cheryl A. Pilate – cpilate@morganpilate.com
Lindsay J. Runnels – lrunnels@morganpilate.com
Barry Scheck – barry@nsbcivilrights.com
Emma Freudenberger – emma@nsbcivilrights.com
Amelia Green – amelia@nsbcivilrights.com
Alana M. McMullin – Alana.McMullin@LathropGPM.com
Yasmin Dagne – yasmin@nsbcivilrights.com
**Attorneys for Plaintiffs**

Sean M. Sturdivan – s.sturdivan@swrsllp.com
Elizabeth A. Evers – e.evers@swrsllp.com
Tracy M. Hayes – t.hayes@swrsllp.com
**Attorneys for The Estate of Detective James Michael Krstolich, Detective Dennis Ware, Officer James L. Brown, The Estate of Lieutenant Dennis Otto Barber, Detective Clyde Blood, Detective W.K. Smith, and The Estate of Lieutenant Steve Culp**

Morgan L. Roach – morgan@mccauleyroach.com
Sean P. McCauley – sean@mccauleyroach.com
Jeffrey S. Kratofil – jeff@mccauleyroach.com
Matthew J. Gist – mgist@enszjester.com
**Attorneys for Defendant Roger Golubski**

                s/David R. Cooper