## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| LAMONTE MCINTYRE and | ) | |
| ROSE LEE MCINTYRE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-CV-02545-KHV-KGG |
| | ) | |
| UNIFIED GOVERNMENT OF | ) | |
| WYANDOTTE COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT ROGER GOLUBSKI'S RESPONSE TO "PLAINTIFFS OBJECTION TO NON-PARTY SUBPOENA"

COMES NOW Defendant Roger Golubski, by and through undersigned counsel, and in response to Plaintiff's Objection to Non-Party Subpoena to Centurion Ministries [Doc. No. 337], states as follows:

### I.    FACTUAL BACKGROUND AND REPRESENTATIONS BY PLAINTIFFS' COUNSEL

On Plaintiffs' Third Amended Rule 26 Disclosures, Plaintiffs identified two investigators associated with Centurion Ministries—Daniel Clark and James McCloskey—who would have *discoverable* information.  Fed. R. Civ. P. 26(a)(1)(A)(i) (Requiring parties to identify the name, address, telephone number of each individual "likely to have discoverable information …").  Further, during the deposition of Plaintiff Rose McIntyre, Plaintiffs' counsel made a record that clearly established the communications and interactions between Rose McIntyre and Centurion were *not* privileged and that Defendant Golubksi was "free to inquire" into those conversations and interactions because Plaintiff Rose McIntyre was not, at the time Centurion Ministries was investigating *her son's* conviction, represented.  (Exhibit 1: Deposition of Rose McIntyre tr. 144:2–145:18)  Which makes sense given that Centurion Ministries would not be involved in

representing a person who was not wrongly convicted as its self-described ministry is "dedicated to the vindication of the wrongly convicted." *Our Mission*, CENTURION.ORG, https://centurion.org/our-mission/ (last visited July 16, 2021).

Now, after Plaintiffs invited Defendant Golubski to inquire into Centurion Ministries' knowledge and interactions as it relates to this case, and specifically as it relates to Ms. McIntyre, they assert a blanket claim of Attorney-Client Privilege and protection by the Work Product Doctrine for *all* documents requested by the Centurion Subpoena, which included requests that are obviously *not* protected by either the Attorney-Client Privilege and/or Work Product Doctrines, including:

- A copy of all correspondence Centurion sent to or received from Rose McIntyre from April 15, 1994, to present.

- A copy of each "file" Centurion sent to or received from Rose McIntyre from April 15, 1994, to present.

- A copy of each witness statement, whether sworn or unsworn, provided to or obtained by Centurion relating to Lamonte McIntyre, Rose McIntyre, Roger Golubski, and/or the Unified Government of Wyandotte County.

- A copy of each "file," document, or any other item Centurion provided to any media outlet regarding Lamonte McIntyre, Rose McIntyre, Roger Golubski, the Unified Government of Wyandotte County, and/or the Kansas City Kansas Police Department.

- A copy of each "file," or any other item Centurion provided to any law enforcement agency that in any way relates to Roger Golubski.

Despite the subpoena calling for information that is not privileged, Plaintiffs assert a blanket claim of Attorney-Client Privilege and Work Product protection. And, in so doing, they use the Attorney-Client Privilege and Work Product Doctrine as both a sword and a shield because, as will be explained below, Plaintiffs have disclosed allegedly protected material to others and in

open court when it served their purposes—thereby waiving such privilege or protection that may have existed, if any.

## II.    ARGUMENTS AND AUTHORITIES

### a.    Plaintiffs have not met *their* burden to demonstrate that *all* documents responsive to the Centurion Subpoena are privileged or protected work product.

"It is well-established that a party seeking to assert the work product doctrine or attorney-client privilege 'as a bar to discovery has the burden of establishing that it applies.'" *Rittgers v. Hale*, No. 17-4019-SAC-KGG, 2018 WL 338218, at *4 (D. Kan. Jan. 9, 2018). Plaintiffs' burden can only be met "by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory assertions or blanket privilege." *Kannaday v. Ball*, 292 F.R.D. 640, 645 (D. Kan. 2013); *Moses v. Halstead*, 236 F.R.D. 667, 676 (D. Kan. 2006) ("A 'blanket claim' as to the applicability of the work product doctrine does not satisfy the burden of proof.").

Moreover, Rule 26(b)(5) requires that a party claiming privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed- - and do so in a manner that … will enable other parties to assess the claim." In other words, provide a privilege log. Here, Plaintiffs have not made any evidentiary showing, have not provided a privilege log, and, thus, have not met *their* burden to establish that the documents responsive to the Centurion Subpoena are not subject to discovery.

A privilege log is necessary for the Court's determination as to discoverability because the Attorney-Client privilege only "protects disclosure of substantive communication between attorney and client, **it does not protect disclosure of the underly facts within that communication**." *Rittgers v. Hale*, No. 17-4019-SAC-KGG, 2018 WL 338218, at *4 (D. Kan. Jan. 9, 2018) (cleaned up, emphasis in original). "The same is true for the work product doctrine."

*Id.* As a result, even if Centurion did have an attorney-client relationship with Mr. McIntyre—which there is no evidence of given that Centurion had to arrange for non-Centurion attorneys to represent him—not all aspects of their communication would be privileged. And, even if Centurion was an investigator working as an agent of Mr. McIntyre's attorneys from 2008 through the date of his exoneration, not all aspects of their communication are necessarily protected from disclosure. Defendant Golubski is still entitled to all *facts* conveyed to Centurion from others, and all *facts* Centurion conveyed to third parties—such as Rose McIntyre. Defendant Golubski is even entitled to know the *facts* Lamonte McIntyre *learned* from Centurion and his attorneys as "[i]t is well established that a party may not withhold relevant facts from disclosure simply because they were communicated to, *or learned from*, the party's attorney." *Kansas Wastewater, Inc., v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 528 (D. Kan. 2003) (emphasis added).

Plaintiffs ask this Court to do that which Courts repeatedly refuse to do, sustain a blanket objection based on Attorney-Client Privilege and the Work Product Doctrine without *any* evidence that the responsive documents are privileged or otherwise protected for disclosure. *Westport Ins. Corp., v. GuideOne Mutual Ins. Co.*, 2015 WL 13832532 at * 2 (D. Kan. 2015) ("The Court notes that the blanket claims of attorney-client privilege and work product protection were raised improperly … as no privilege log was provided."). It is improper and insufficient to simply object that a request "would include" protected documents without providing a privilege log. *Id.* Accordingly, the Court should overrule Plaintiffs' objections.

**b.**   **Mr. McIntyre's self-representation does not shield communications and information shared with Centurion from discovery.**

Mr. McIntyre alleges he was representing himself until around 2008 and, as a result, his communications and the actions of Centurion taken to benefit him are protected from discovery. However, a *pro se* litigant is not "entitled to the same confidential communications under the

attorney-client privilege to which a represented party would be." *Kilman v. Brown*, 2019 WL 8723240 at * 3 (D. Colo. 2019). "The attorney-client privilege only applies to, as the name suggests, an attorney-client relationship …. Thus, to the extent [McIntyre] may be asserting this privilege, it fails as a matter of law." *Id.*

As to the claim of work product, without knowing more—such as who was directing Centurion's work—it is impossible to determine if the work product doctrine would apply. However, even if it did, the work product doctrine would not shield all information communicated to or learned from Centurion from discovery. More importantly, as explained below, that protection has been waived through voluntary disclosure.

      **c.**    **Plaintiffs have waived any privilege or work product protection that may have attached to Centurion Ministries' investigation, whether directed by Mr. McIntyre or counsel.**

The Attorney-Client Privilege and the Work Product Doctrine are not absolute; they may be waived. *In re Qwest Communications Intern., Inc.*, 4150 F.3d 1179, 1186 (10th Cir. 2006). One such way in which those protections are waived is through disclosure to a third party, or production to an adverse party. *Id.* In this instance, the communications of Centurion's James McCloskey and others, and his and other Centurion investigators' testimony, formed the evidentiary basis for Mr. McIntyre's exoneration as Mr. McCloskey testified at length at the K.S.A. § 60-1507 hearing that resulted in Mr. McIntyre's exoneration. During that hearing, Mr. McCloskey testified about his investigation, his opinions, his impressions, his conclusions, and who he found to be credible and not credible.

By way of background, Mr. James McCloskey is the founder and Executive Director Emeritus of Centurion Ministries. He conducted many of the interviews during Centurion's investigation into Mr. McIntyre's conviction, making 19 trips to Kansas City to conduct the

investigation.  (Exhibit 2: Affidavit of James McCloskey, ¶ 11; Exhibit 3: J. McCloskey § 60-1507 Testimony tr. 103:19–25)  It was a six-and-a-half-year investigation, and was, in his words, "one of the most challenging investigations" because many of the witnesses did not want to cooperate.  (Exhibit 2 ¶ 23)  Mr. McCloskey, along with other investigators, obtained more than 40 affidavits but interviewed "probably over a hundred" people.  (Exhibit 2 ¶ 12, Exhibit 3 tr. 129:1–23, 189:22–190:3)  He noted that some of the affidavits were difficult to obtain, and that many witnesses wished to avoid involvement.  (Exhibit 2 ¶ 13).  Plaintiffs have produced 52 affidavits (including Mr. McCloskey's) and, in at least one instance—produced an unsigned draft affidavit that Mr. McCloskey prepared for a witness.  (Exhibit 4: Draft Affidavit of Cecil Brooks; Exhibit 3 tr. 141:9–144:19)

In Centurion's and Cheryl Pilate's successful effort to get Mr. McIntyre exonerated, Ms. Pilate elicited Mr. McCloskey's testimony, in the form of affidavit and live testimony.  (Exhibit 2 and Exhibit 3)  During his live testimony, he was shown and referenced documents Lamonte submitted to Centurion. (Exhibit 3 tr. 95:2–13, referencing a letter from Mr. McIntyre to Centurion, which was admitted into evidence)  In that document, Lamonte states that he is 100 percent innocent.  (Exhibit 3 tr. 96:14–19)  This constitutes a voluntary waiver of any privilege of attorney-client or work product protection by divulging in open Court the substance of conversation made in the course of that relationship.  Fed. R. Evid. 502(c) (indicating that disclosure in a state Court proceeding operates as a waiver if the disclosure would operate as a waiver if made in a federal court proceeding); *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) ("[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party").

As if that were not enough to constitute a waiver, Ms. Pilate elicited testimony from Mr. McCloskey of his mental impressions of Lamonte McIntyre's case.  By way of example, Ms. Pilate asked him, "Do you recall what your initial impression was of Lamonte McIntyre's case?" (Exhibit 3 tr. 101:19–103:18) Mr. McCloskey gave his impressions in open Court.  (*Id.*)  Mr. McCloskey then detailed his investigative efforts, and some of the conclusions he reached as a result—for example, that Ruby Mitchell, an eyewitness to the 1994 murders, "could not have recognized the face of the shooter from the distance and angle where she was."  (Exhibit 3 tr. 104:5–23; 113:19–114:4)  Mr. McCloskey also testified about his conversations with witnesses and, as it relates to Ruby Mitchell, how he had to correct her memory.  (Exhibit 3 tr. 104:25–106:13)

Mr. McCloskey also offered an opinion as to whether Mr. McIntyre's alibi witnesses were credible, stating "I found them to be very credible.  They didn't lie and make up a story . . . ." (Exhibit 3 tr. 106:20–23)  He also opined as to what the police could have and should have done differently during the investigation (Exhibit 3 tr. 118:2–119:6), and testified, without citing any actual witness testimony or evidence, that Defendant Golubski "had been having an illicit sexual affair" with a potential witness. (Exhibit 3 tr. 119:6–13)[1].  Mr. McCloskey states, without identifying them, that he interviewed "close to a hundred" witnesses who were "deathly afraid of Detective Golubski" and that the "Quindaro District" was Detective Golubski's "hunting ground." (Exhibit 3 tr. 129:1–23)  He even went so far as to give his impression and belief that "because of [his] personal investigation and the conversations with scores and scores and scores of African American residents … Detective Golubski was the dirtiest cop [he's] ever encountered …." (Exhibit 3 tr. 130: 6–20).

---

[1] It appears from the transcript that the attorneys for the State made a decision not to lodge any objections to testimony that was objection*able*.

Plaintiffs cannot now, after using these allegations, testimony, opinions, beliefs, and impressions to accomplish their ends—Mr. McIntyre's exoneration—selectively choose to shield aspects of Centurion's efforts in this subsequent litigation regarding the same subject matter.  *In re Qwest Communications Intern. Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006) ("Our review of the opinions of other circuits, however, indicates there is almost unanimous rejection of selective waiver.").  "[A] litigant cannot use the work product doctrine as both a sword and a shield by selectively using the privileged information to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion."  *Frontier Refining, Inc.,* 136 F.3d 695, 704 (10th Cir. 1998).

In *E.E.O.C v. Unit Drilling Co.*, Case No. 13-cv-147-TCK-PJC, 2014 WL 3548845 (N.D. Okla. July 17, 2014) (not reported), Unit Drilling hired a law firm to investigate (not represent it) and prepare a response to a charge of gender discrimination.  The attorney investigating spoke with Unit Drilling employees and sent a letter to the state agency investigating the charge explaining why the charge should be dismissed.  *Id.* at *4.  The letter contained a statement of facts based upon the attorney's interviews with Unit Drilling's employees, and some legal analysis.  *Id.* The Court determined that even if the attorney-client privilege or work product doctrine applied, such privileges were waived when Unit Drilling disclosed the letter to the state agency investigating the claim.  *Id.* at * 7.  The Court reasoned that Unit Drilling "purposefully disclosed … factual information it felt was beneficial to its position" and Unit Drilling could not then "slam the door on reasonable inquiry into the basis for those assertions" by "selectively assert[ing] privilege over communications that would give context and meaning to what the client has disclosed."  *Id.* (cleaned up).

8

The same is true here.  The basis for Mr. McIntyre's exoneration was that he was wrongfully convicted, at least part, based upon alleged inadequacies of, or wrongdoing by, Defendant Golubski, which was testified to by Centurion's investigator, Mr. McCloskey at the § 60-1507 hearing.  Defendant Golubski is entitled to challenge that testimony, and all information that formed the basis of that testimony which, by Mr. McCloskey's own  testimony was his "personal investigation and the conversations with scores and scores and scores of African American residents."

Further, Defendant Golubski believes that Plaintiffs have taken all or portions of Centurion's and Ms. Pilate's investigation and conclusions and given them to other governmental agencies or the media to have Mr. Golubski criminally prosecuted.  Defendant Golubski has requested the documents Plaintiff has produced to such governmental agencies, and even the media, but Plaintiffs have thus far refused to produce them instead, objecting in part, that they are "facially irrelevant"—an objection which is made meritless by Plaintiffs' current objection to the Centurion Subpoena.  Because, if Plaintiffs intentionally disclosed any work product or privileged documents to a governmental agency, that fact is directly relevant to Plaintiffs' waiver.  *Id.* (Declining to create a new privilege for "documents surrendered in a government investigation.").  Further, Fed R. Evid. 502(a) provides:

> When the disclosure is made in a federal proceeding or to a federal … agency and waives the attorney-client privilege or work-product protection*, the waiver extends to an undisclosed communication or information* in a federal or state proceeding only if (1) the waiver is intentional; (2) the disclosed and undisclosed communication or information concern the same subject matter; and (3) they ought in fairness to be considered together.

(emphasis added).  Here, there can be no genuine dispute that eliciting the facts, details, and conclusions of Mr. McCloskey's investigation, and thus Centurion's investigation, in open court was voluntary and intentional.  Further, the undisclosed information concerns the same subject

matter—what Centurion allegedly learned, knew, and disclosed to others, specifically Rose McIntyre (who was unrepresented by Centurion) about Detective Golubski.

While Plaintiffs have not lodged proper objections, only blanket privilege/work product objections without a privilege log, it is evident from Mr. McCloskey's testimony and affidavit that any such protections have been waived by voluntary disclosure, both in open court and in the course of discovery in this matter. Accordingly, the Court should overrule Plaintiffs' objections.

### d.     Defendants have a substantial need for Centurion's information.

It is well settled that the aspects of the work product doctrine are not absolute and, even if not waived, can be discoverable if the party seeking discovery can demonstrate a substantial need for the materials to prepare its case and could not obtain substantial equivalent by other means without undue hardship.  Fed. R. Civ. P. 26(b)(3)(A)(ii); *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 704 (10th Cir. 1998).  Here, there is certain information that only Centurion can provide.

For context, Ms. McIntyre—Lamonte McIntyre's mother—is alleging that Defendant Golubski "framed" her son for murder as an act of retaliation because, many years earlier, he allegedly sexually assaulted her, allegedly wanted to have an ongoing sexual relationship with her, and she refused.   Yet, Ms. McIntyre never informed anyone of this alleged interaction after Lamonte McIntyre was identified as the suspect in the 1994 murders, but before his conviction. (Exhibit 1 tr. 145:19–149:8) And, she did not tell anyone after his conviction until she told James McCloskey a decade later.  (Exhibit 1 tr. 148:13–149:8) Her purported justification for not telling anyone after Lamonte was identified as a suspect was because she did not know that Defendant Golubski was involved in her son's case—despite, among other things, being present during Mr. Golubski's testimony at the juvenile waiver hearing. (Exhibit 1 tr. 148:13–149:8, 152:9–17)

As this demonstrates, the timing of these allegations is suspicious. Defendant Golubski needs to know, and is entitled to know, the circumstances surrounding what Centurion, its representatives or agents, told or informed Rose McIntyre of regarding Defendant Golubski, how she was interviewed, how many times, when, by whom, and what, if any, precautions and safeguards were employed to ensure that information regarding Mr. Golubski, his alleged behavior, and alleged motives, was not leading or suggestive so as to unduly influence or affect Ms. McIntyre's memory.  This is especially true considering Plaintiffs have alleged Ms. McIntyre suffers from mental health issues and has a long history of trauma.  Importantly, Ms. McIntyre has testified during her deposition that the first time she learned that Defendant Golubski was involved, was from Mr. McCloskey.  (Exhibit 1 tr. 149:5–8).  Defendant Golubski needs to know, and is entitled to know, what all information Centurion—including information Mr. McCloskey provided to Ms. McIntyre—and when, exactly, she raised her allegations against him.

While Ms. McIntyre can provide *some* of this information, her knowledge is limited and only Centurion and/or Mr. McCloskey—Centurion's founder—would have the remaining information.  And, without it, Defendant Golubksi cannot adequately test the accuracy of Ms. McIntyre's memory and whether Centurion's conduct may have unduly influenced Ms. McIntyre's memory.

## III.   CONCLUSION

WHEREFORE, for the above and foregoing reasons, Defendant Golubski requests that the Court overrule Plaintiff's objections.  Alternatively, Defendant Golubski requests the Court order Plaintiffs to provide a detailed privilege log to support its claims so that the Court can, if necessary, review responsive documents *in camera* and make an appropriate ruling.

Respectfully submitted,

**ENSZ & JESTER, P.C.**


/s/ Chris Napolitano
_____

| | |
|---|---|
| MATTHEW J. GIST | KS #20829 |
| CHRISTOPHER M. NAPOLITANO | KS #25499 |

1100 Main Street, Suite 2121
Kansas City, Missouri  64105
Telephone:  816-474-8010
Facsimile:  816-471-7910
E-mails:     mgist@enszjester.com
                  cnapolitano@enszjester.com

**and**

| | |
|---|---|
| MORGAN L. ROACH | KS #23060 |
| SEAN P. McCAULEY | KS #20174 |
| NICHOLAS S. RUBLE | KS #25636 |
| JEFFREY S. KRATOFIL | KS #23983 |

McCAULEY & ROACH, LLC
527 W. 39th Street, Suite 200
Kansas City, Missouri  64111
Telephone:  816-523-1700
Facsimile:  816-523-1708
E-mails:     morgan@mccauleyroach.com
                  sean@mccauleyroach.com
                  nick@mccauleyroach.com
                  jeff@mccauleyroach.com
**ATTORNEYS FOR DEFENDANT
DETECTIVE ROGER GOLUBSKI**

## CERTIFICATE OF SERVICE

I hereby certify that, on July 21, 2021, the above and foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

MICHAEL J. ABRAMS          KS #15407
WILLIAM G. BECK            KS #77974
ALEXANDER T. BROWN         KS #78891
ALANA M. McMULLIN          KS #78948
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri  64108
Telephone:  816-292-2000
Facsimile:  816-292-2001
E-mail(s):   michael.abrams@lathropgpm.com
             william.beck@lathropgpm.com
             alexander.brown@lathropgpm.com
             alana.mcmullin@lathropgpm.com

**and**

CHERYL A. PILATE           KS #14601
LINDSAY RUNNELS            KS #78822
MORGAN PILATE, LLC
926 Cherry Street
Kansas City, Missouri  64106
Telephone:  816-471-6694
Facsimile:  816-472-3516
E-mail(s):   cpilate@morganpilate.com
             lrunnels@morganpilate.com

**and**

BARRY SCHECK               *Pro Hac Vice*
EMMA FREUDENBERGER         *Pro Hac Vice*
YASMIN DAGNE               *Pro Hac Vice*
AMELIA GREEN               *Pro Hac Vice*
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson Street, 8th Floor
New York, New York  10013
Telephone:  212-965-9081
Facsimile:  212-965-9084
E-mail(s):   barry@nsbcivilrights.com
             emma@nsbcivilrights.com
             yasmin@nsbcivilrights.com
             amelia@nsbcivilrights.com
**ATTORNEYS FOR PLAINTIFFS**

DAVID R. COOPER      KS #16690
CHARLES E. BRANSON     KS #17376
FISHER, PATTERSON, SAYLER & SMITH, LLP
3550 SW 5th Street
Topeka, Kansas  66606
Telephone:  785-232-7761
Facsimile:  785-286-6609
E-mail(s):  dcooper@fpsslaw.com
        cbranson@fpsslaw.com
**and**

HENRY E. COUCHMAN, JR.  KS #12842
EDWARD JAMES BAIN     KS #26442
UNIFIED GOVERNMENT OF WYANDOTTE
COUNTY
KANSAS CITY, KANSAS LEGAL DEPARTMENT
701 North 7th Street, Suite 961
Kansas City, Kansas  66101
Telephone:  913-573-5060
Facsimile:  913-573-5243
E-mail(s):  hcouchman@wycokck.org
        jbain@wycokck.org
**ATTORNEYS FOR DEFENDANT UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS**


SEAN M. STURDIVAN     KS #21286
ELIZABETH A. EVERS     KS #22580
TRACY M. HAYES       KS #23119
SANDERS WARREN RUSSELL & SCHEER LLP
11225 College Boulevard, Suite 450
Overland Park, Kansas  66210
Telephone:  913-234-6100
Facsimile:  913-234-6199
E-mail(s):  s.sturdivan@swrsllp.com
        e.evers@swrsllp.com
        t.hayes@swrsllp.com
**ATTORNEYS FOR THE ESTATE OF DETECTIVE JAMES MICHAEL KRSTOLICH, DETECTIVE DENNIS WARE, OFFICER JAMES L. BROWN, THE ESTATE OF LIEUTENANT DENNIS OTTO BARBER, DETECTIVE CYLDE BLOOD, DETECTIVE WK SMITH, AND**

**THE ESTATE OF LIEUTENANT STEVE CULP**

/s/ Chris Napolitano
_____
**ATTORNEYS FOR DEFENDANT
DETECTIVE ROGER GOLUBSKI**