# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAMONTE MCINTYRE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | Case No. 18-2545-KHV-KGG |
| ) | |
| UNIFIED GOVERNMENT OF ) | |
| WYANDOTTE COUNTY AND ) | |
| KANSAS CITY, KS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER GRANTING IN PART
## MOTION TO COMPEL

Now before the Court is Plaintiffs' Motion to Compel. (Doc. 308.) Having reviewed the submissions of the parties, Plaintiffs' motion is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

## BACKGROUND

### I. General Background.

Plaintiffs bring civil rights claims against Defendants Unified Government of Wyandotte County and Kansas City, Kansas, *et al*., resulting from Plaintiff Lamonte McIntyre allegedly being framed for a double homicide that he did not commit. (Doc. 309, at 2; *see generally* Doc. 74.) Plaintiffs allege that Defendant Unified Government is "responsible for policies, practices and customs that were

1

substantially certain to result in constitutional violations, including the deliberate targeting, prosecution, and conviction of innocent persons … ." (*Id.*)

The background of, and allegations in, this case were summarized in the District Court's Order granting in part and denying in part the various Motions to Dismiss filed by Defendants. (Doc. 190, at 2-10.) That summary of factual allegations is incorporated herein by reference.

For additional context relating to Plaintiffs' motion, the following allegations are specifically relevant. Defendant Golubski allegedly forced Plaintiff Rose McIntyre to submit to sexual acts by threatening to arrest her and her then-boyfriend if she refused. (Doc. 1, at 2.) Golubski is alleged to have harassed Plaintiff for weeks, calling her two or three times a day. (*Id.*) When she changed her phone number in an attempt to stop communication with him, he, along with the help of other Defendants, allegedly framed her son, Lamonte, for the double murder of Donald Ewing and Doniel Quinn in April 1994. (Doc. 190, at 4.)

Golubski and his partner, James Krstolich, are alleged to have used coercion to pressure Ruby Mitchell into identifying Plaintiff Lamonte McIntyre in a photographic lineup. (*Id.*, at 3.) These same tactics were allegedly used to pressure Mitchell into giving a false statement identifying Plaintiff' Lamonte McIntyre's photo. Plaintiffs allege that this is consistent with a long pattern of

conduct by Golubski – which was known to his superiors – involving the extortion of sex and favors and using threats to coerce false testimony.

**II.    Plaintiffs' Motion.**

The motion at issue seeks an Order compelling Defendant Unified Government's response to 82 document requests. Because the discovery requests at issue were submitted to Defendant Unified Government, any reference to a singular "Defendant" herein is to Defendant Unified Government unless otherwise specified. The following categories of Requests for Production are in dispute:

(i)   Investigative files relating to women allegedly sexually assaulted, threatened or exploited by Golubski and used as alleged informants.[1]
(ii)  Investigative files relating to women who were murdered after being used by Golubski as informants.[2]
(iii) Investigative files relating to drug gang activity and dealers and informants who had connections with Golubski.[3]
(iv)  Documents relating to Golubski's pattern and practice of stalking and sexually harassing women.[4]

---

[1] RFP Nos. 149, 151-153, 156-157, 160, 169-170, and 178.
[2] RFP Nos. 109, 110, 133 (Monique Allen); Nos. 105, 106, 135 (Pearl Davis Barnes); No. 144 (Vickie Hoslinshed); No. 147 (Diane Edwards); Nos. 115, 116, 148 (Barbara Finch); Nos. 107, 108, 150 (Sandra Glover); Nos. 119, 120, 154 (Trina Harris); Nos. 121, 122, 155 (Pearlina Henderson); Nos. 113, 114, 158 (Eliza Michie); No. 168 (Beatrice Russell); No. 177 (Rhonda Tribue); No. 136 (Connie Byas); No. 98 (Theresa A. Davis); No. 99, 100 (Rosemary Baker-Powers); Nos. 103, 104 (Sandra J. Wilson); No. 140 (Rose M. Calvin); Nos. 111, 112 (Anita Webb); and Nos. 101, 102 (Kia Vang).
[3] RFP Nos. 117-118, 134, 139, 143, 165, 145, 159, 161-167, 175, and 179.
[4] RFP No. 132.

 (v) Documents reflecting misconduct in other KCKPD cases, specifically involving sexual or investigative misconduct by Golubski and others.[5]

 (vi) Documents relating to the KCKPD's knowledge of alternate suspects in the case for which Lamonte McIntyre was wrongfully convicted.[6]

 (vii) Documents relating to KCKPD officer misconduct in the murder investigations for which Defendant W.K. Smith's immediate family members were the prime suspects or alleged perpetrators.[7]

(Doc. 309, at 4.) The various categories will be discussed, in turn, below.

## ANALYSIS

**I. Standards for Discovery.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v.***

---

[5] RFP Nos. 125-131, 138, 141-142, and 174.
[6] RFP No. 146.
[7] RFP Nos. 171 and 173.

*Burkhart*, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face. *Williams v. Board of Co. Comm'rs*, 192 F.R.D. 698, 705 (D. Kan. 2000). Relevance is to be "broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecomm. Corp.*, 137 F.R.D. 25, 27 (D. Kan. 1991).

Once this low burden of relevance has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections). Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

**II.    Motion at Issue.**

At issue are 82 of Plaintiffs' document requests. (*See* n.1-7.) Defendant contends that some of the requests are irrelevant because they seek post-incident conduct. (Doc. 309, at 7; Doc. 317, at 7-8.) Plaintiffs argue that the 29 Requests for Production seeking homicide files of Golubski's alleged female informants and drug dealing associates murdered after 1994 are discoverable and relevant because they contain information "bearing one pre-1994 period." (Doc. 309, at 7.) For instance, these individuals "were allegedly used as informants for Golubski *prior to their deaths, not after*." (*Id.*, at 9 (emphasis in original).)

Plaintiffs also argue that the information is relevant to KCKPD's custom of unconstitutional misconduct, which led to Plaintiff Lamonte McIntyre's conviction. (*Id.*, at 7-8.) Plaintiffs contend that post-incident conduct is relevant under *Monell*[8] because a municipality can be held liable for "acts which the municipality has officially sanctioned or ordered." (*Id.* (citing **C.F.B. v. Hayden**, No. 16-2645-CM, 2019 WL 1299679, at *4 (D. Kan. Mar. 21, 2019)).)

Plaintiffs maintain that the remaining 52 document requests are relevant because they "[s]eek documents relating to certain individual's criminal histories, arrests, lenient treatment, cooperation or relationships to Defendant Roger Golubski." (*Id.*, at 13-14.) Plaintiffs state that the requests fall within the broad

---

[8] *See* **Monell v. Department of Soc. Servs.**, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

6

definition of relevance under the Federal Rules because "the information sought bears directly on Plaintiffs' claims of misconduct against the individual officers and claims of a pattern and practice of allowing misconduct (specifically relating to sexual relationships with witnesses or informants and the protection of drug gangs) under *Monell*." (*Id.*)

Defendant generally responds that each category of the requested documents and files is not discoverable for two reasons: (1) the information sought is not relevant to any party's claims or defenses, and (2) the information sought is disproportionate to the needs of this case. (Doc. 317, at 2.) Because Defendant makes these objections as to each request at issue, the Court will consider – but not always repeat – them in its subsequent analysis herein. Defendant argues that the requests exceed the scope of discovery permitted under Fed.R.Civ.P. 26(b) and are merely a "fishing expedition" for records that do not bear on the claims made by Plaintiffs. (*Id.*, at 4.)

Plaintiffs reply that Defendant Unified Government fails to refute their assertion that post-incident misconduct "can establish the *existence* and *permanence* of the KCKPD's custom of unconstitutional misconduct … ." (Doc. 352, at 1 (emphasis in original).) Plaintiffs state that they seek information relevant to their *Monell* claim that Golubski and other Defendants

> took payoffs, protected powerful drug dealers from
> arrest, shook down street-level dealers, sexually assaulted

7

> vulnerable women and used them as 'informants,' fabricated evidence, and framed innocent persons for crimes they did not commit – the exact misconduct that resulted in [Plaintiff Lamonte McIntyre's] wrongful conviction.

(*Id.*, at 2.) With this general background, the Court will discuss the requests as categorized by Plaintiffs.

### A. Investigative files relating to women allegedly sexually assaulted, threatened or exploited by Golubski and used as alleged informants.[9]

These document requests seek files for women who were alleged to have been sexually assaulted by Golubski during his tenure at the KCKPD and used as informants. (Doc. 309, at 14.) Plaintiffs assert that several of Golubski's informants "were provided with money, drugs or special favors, including protection from arrest in exchange for sex during his time at the KCKPD." (*Id.*, at 15.) Plaintiffs contend that because Golubski used improper enticements, threats, and the leverage of his badge to exploit these women, this category of requests demonstrates "the 'leverage' police may have had based on the existence of warrants, arrests, pending cases, etc., the exact misconduct Plaintiffs allege resulted in the wrongful conviction of Plaintiff." (*Id.*) Plaintiffs continue that these requests are relevant because Golubski's illicit contact and relationships with

---

[9] *See* n.1.

these individuals spanned years – long before Plaintiff Lamonte McIntyre's arrest in 1994. (Doc. 352, at 3.)

The Court finds this category of requests is relevant and discoverable. Plaintiffs should be able to access files relating to women who were sexually assaulted and/or used informants because it may demonstrate the pattern of misconduct Plaintiffs allege in their Complaint. Plaintiffs' motion is **GRANTED** as to this category.

### B. Investigative files relating to women who were murdered after being used by Golubski as informants.[10]

These requests seek women who were allegedly used as informants in Golubski's cases and then subsequently murdered. (Doc. 309, at 15.) Plaintiffs contend that Golubski "sexually exploited and victimized these women, using threats, illegal enticements and the leverage of this badge to obtain sex." (*Id.*, at 16.) Plaintiffs argue that this category of document requests is relevant and discoverable because any information on these women will confirm a pattern of misconduct and sexual exploitation of informants. (*Id.*) Plaintiffs continue that Defendant failed to address their argument that post-incident misconduct can establish the existence and permanence of KCKPD's alleged custom of unconstitutional misconduct. (Doc. 352, at 1.)

---

[10] *See* n.2.

Although the files requested seek information on women who were used as informants after Plaintiff Lamonte McIntyre's conviction in 1994, the Court does find that they are relevant as they may lead to discoverable information regarding the existence of unconstitutional misconduct known to KCKPD. Plaintiffs' motion is **GRANTED** as to this category.

### C. Investigative files relating to drug gang activity and dealers and informants who had connections with Golubski.[11]

These requests seek files for drug dealers allegedly connected to Golubski "either as informants in his cases or as suppliers of money, drugs, or other income in exchange for protection from prosecution." (Doc. 309, at 17.) In other words, these requests seek information relevant to drug dealers or members of drug gangs at the time of the Ewing-Quinn double murder. (*Id.*) Plaintiffs contend that information on the individuals requested is relevant because Golubski allegedly "gave 'protection' to certain drug-gangs, which allowed for open-and-shut acts of violence between gang members to go unpunished in return for money and drugs, which . . . may show[] a pattern and practice of corruption similar to the misconduct resulting in Plaintiff's wrongful conviction." (*Id.*)

Plaintiffs continue that the court in *Estate of Bryant v. Baltimore Police Dep't*, No. ELH-19-384, 2020 WL 6161708, at **3-5 (D. Md. Oct. 21, 2020)[12]

---

[11] *See* n.3.
[12] Cited in Defendant's response (Doc. 317, at 7).

held that "'as a general matter . . . there is a strong public interest in §1983 cases, especially cases brought by individuals who were wrongfully convicted and imprisoned for many years.'"  (Doc. 352, at 4 (quoting ***Bryant***).)  Plaintiffs state that Defendant has already demonstrated its ability to produce the requested homicide files.  (*Id.*, at 5.)

This category of requests is relevant as it may result in evidence of a pattern and practice as well as provide evidence to support the Plaintiffs' *Monell* claims.  As Plaintiffs allege,

> Golubski gave 'protection' to certain drug-gangs, which allowed for open-and-shut acts of violence between gang members to go unpunished in return for money and drugs, which the requested documents may confirm, showing a pattern and practice of corruption similar to the misconduct resulting in Plaintiff's wrongful conviction (in which members of the Brooks-Robinson drug gang avoided responsibility for committing the Ewing-Quinn double homicide).

(Doc. 309, at 17.)  Plaintiffs allege that protection of the perpetrators of the murder for which Plaintiff Lamonte McIntyre was allegedly framed is a motive common to the requested evidence.  (*Id.*)  The Court agrees.  Plaintiffs' motion is **GRANTED** as to this category.

    **D.**    **Documents relating to Golubski's pattern and practice of stalking and sexually harassing women.[13]**

---

[13] *See* n.4.

This category relates to a single Request for Production seeking documents and files relating to stalking or harassment by Defendant Golubski of his ex-wife, "E.A." (Doc. 309, at 20.) Plaintiffs allege that after he and his wife annulled their marriage, Golubski began stalking her. (*Id.*) Plaintiffs contend that this information is relevant because it shows a pattern and practice of harassment and stalking of women. (*Id.*) Defendant Unified Government responds that the information requested is not relevant to a claim or defense and is disproportionate to the case. (Doc. 317, at 10.)

The Court finds this request is relevant and discoverable because it could lead to evidence of Defendant Golubski's alleged history of stalking or harassing women, just as the Complaint alleges he harassed Rose McIntyre. (Doc. 1, at 2.) Further, given the importance of the constitutional issues raised in Plaintiffs' Complaint, this category is proportional to the needs of the case. Plaintiffs' motion is **GRANTED** as to this category.

> E.   **Documents reflecting misconduct in other KCKPD cases, specifically involving sexual or investigative misconduct by Golubski and others.**[14]

These requests seek misconduct by KCKPD officers and relate to any knowledge Defendant Unified Government may have had about unconstitutional

---

[14] *See* n.5.

misconduct similar to the alleged misconduct that resulted in Plaintiff Lamonte McIntyre's wrongful conviction.  (Doc. 309, at 20.)  Specifically, Plaintiffs request

> a February 1996 complaint of sexual assault against former KCKPD detective William Saunders made by N.H. … .
>
> In addition, Plaintiffs seek documents concerning Golubski's investigative misconduct in other cases, such as the 1978 death of Kenneth Ernest Borg and the 1989 death of Kenneth W. Khan … .  Further, Plaintiffs seek documents relating to the homicide of Reginald Allen, where witness Lakeir Brown testified he was paid or otherwise covertly compensated by Golubski… .  Also, Plaintiffs' request seeks documents concerning N.C. and R.C. R.C. had a child allegedly fathered by Roger Golubski when she was a teenager. R.C. . . . N.C. is widely known in the community as the biological daughter of Roger Golubski … [and] additionally … has knowledge of Golubski's improper investigative practices … .

(*Id.*, at 20-21.)

Plaintiffs state that these requests are relevant and discoverable because they relate to their claims.  (*Id.*, at 22.)  They continue that Defendant's "hypocrisy" is illustrated by Defendant Golubski's recent contention interrogatories demanding Plaintiffs list, describe, and support their contentions that he:

> (1) 'engaged in non-consensual sexual act(s) with any individual,'
> (2) 'participated in or caused the intentional killing of another human being,'
> (3) 'sought to conceal the identity of any individual(s) who participated in or caused the death of another human being,'

13

> (4) 'participated in as a law enforcement officer, [any investigation] result[ing] in the wrongful conviction of an innocent person,'
> (5) 'was in control of, working for, or otherwise supporting the drug trade,'
> (6) 'engaged in extortion and/or transaction sexual acts,'
> (7) 'manipulated individuals into providing fabricated evidence,' and
> (8) 'threatened to harm or arrest a vulnerable woman's loved ones.'

(Doc. 352, at 6-7.) Plaintiffs argue Golubski's interrogatories establish that his alleged "informants, victims, and drug-dealing associates are a key issue," and therefore relevant and proportional to the needs of the case. (*Id*.)

The Court agrees that these requests are relevant to Plaintiffs' claims. Plaintiffs should be permitted to discover documents that demonstrate other investigative misconduct by Defendant Golubski, as it relates to the claims set forth in Plaintiffs' Complaint. Plaintiffs' motion is **GRANTED** as to this category.

### F. Documents relating to the KCKPD's knowledge of alternate suspects in the case for which Lamonte McIntyre was wrongfully convicted.[15]

This category relates to a single request, which seeks documents relating to Lamonte Drain. (Doc. 309, at 22.) Plaintiffs state that this request is relevant because the only eyewitness to testify against Plaintiff Lamonte McIntyre at trial

---

[15] *See* n.6.

was Ruby Mitchell, who named the shooter as "Lamonte," who turned out to be Lamonte Drain. (*Id.*) Plaintiffs further contend that this request is relevant because it demonstrates that the KCKPD's investigation was "reckless, intentionally conducted in an unconstitutional manner, and that officers deliberately withheld and/or failed to document critical exculpatory evidence." (*Id.*)

Defendant states that the file for the Quinn-Ewing double murder has been produced. (Doc. 317, at 10.) Defendant continues that a request for "all documents" relating to Lamonte Drain, however, is neither relevant nor proportional. (*Id.*)

The Court finds this request to be relevant and discoverable because it could provide information relating to Defendant Golubski's alleged custom of unconstitutional misconduct. Given the importance of the constitutional claims at issue, this category of information is proportional to the needs of the case. Plaintiffs' motion is **GRANTED** as to this category.

> **G.** **Documents relating to KCKPD officer misconduct in the murder investigations for which Defendant W.K. Smith's immediate family members were the prime suspects or alleged perpetrators.[16]**

---

[16] *See* Footnote 7.

These requests seek documents relating to Jeffrey D. Smith (the son of Defendant Detective W.K. Smith) and Jeffrey Smith, Jr. (his grandson). (Doc. 309, at 22.) Plaintiffs state that Defendant Smith's son and grandson are known to be involved in criminal activity. (*Id.*) Despite their various criminal activities, Plaintiffs contend that Jeffrey Smith, Jr. has only been prosecuted once and Jeffrey Smith has never been prosecuted. (*Id.*, at 23.)

Plaintiffs argue that these requests are relevant because Defendant Golubski was the detective assigned to investigate two homicides in which the primary suspect was Jeffrey Smith. (*Id.*) Plaintiffs assert that Smith was not criminally charged because his father, Defendant Smith, was working in the detective bureau at the time. (*Id.*) Plaintiffs argue that these requests highlight the preferential treatment and protection that certain people receive if they have connections with the police. (*Id.*)

Defendant points out that the investigative files at issue in Request No. 171 were produced in discovery. (Doc. 317, at 11.) As to Request No. 173, Defendant argues that it is not possible for Jeffrey Smith, Jr. to have been involved in any criminal activity prior to Plaintiff Lamonte McIntyre's conviction in 1994, as Smith, Jr. was born in 1992. (*Id.*)

The Court finds that this category of document requests is irrelevant to the claims and defenses in this case. Whether a suspect received preferential treatment

and protection based on his or her connection with the police is irrelevant to the claims set forth in Plaintiffs' Complaint. Plaintiffs' motion is **DENIED** as to this category.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel (Doc. 308) is **GRANTED in part** and **DENIED in part** as set forth herein.

**IT IS SO ORDERED.**

Dated this 28th day of July, 2021, at Wichita, Kansas.

       s/ KENNETH G. GALE
       KENNETH G. GALE
       United States Magistrate Judge