## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LAMONTE MCINTYRE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 2:18-cv-02545-KHV-KGG |
| | ) | |
| UNIFIED GOVERNMENT OF | ) | |
| WYANDOTTE COUNTY AND | ) | |
| KANSAS CITY, KANSAS,   *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANT GOLUBSKI'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS FROM DEFENDANT ROGER GOLUBSKI

Defendant Roger Golubski, by counsel, submits the following response to Plaintiffs' Motion To Compel Production of Documents and Answers From Defendant Roger Golubski (doc. 427).

## Introduction

Plaintiffs' Second Amended Complaint (doc. 74) alleges claims arising from the 1994 arrest, conviction, and subsequent twenty-three-year incarceration of Plaintiff Lamonte McIntyre in connection with a double homicide shooting. Defendant Roger Golubski is one of the individually named defendants, all of whom are current or former law enforcement officers of the Kansas City, Kansas Police Department. The Complaint alleges Golubski intentionally framed McIntyre for the 1994 crime.  More broadly, however, the

Complaint claims Golubski, for decades, engaged in widespread and wide-ranging criminal conduct as a detective.

## Procedure

Plaintiffs served the discovery at issue on February 18, 2021. Golubski provided responses on April 5, 2021. Plaintiffs sent Golubski a golden rule letter on April 23, 2021. On May 15 and June 22, 2021, counsel for both parties met and conferred. Golubski provided supplemental responses and documents on July 2, 2021, and July 8, 2021, respectively. The supplements solved many, but not all, of the disputed issues.

## Standards

Rule 26 states:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b).

The court also considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). While "[r]elevance is broadly construed at the discovery stage," discovery is not unlimited. *Helget v. City of Hays, Kans*., 300 F.R.D. 496, 499 (D. Kan. 2014). To be discoverable, the "requested information must be nonprivileged, relevant, and proportional to the needs of the case." *Holick v. Burkhart*, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face. *Williams v. Bd. of County Comm'r*, 192, F.R.D. 698, 702-03 (D.Kan. 2000). Where discovery requests seek documents or information that is not facially relevant, the party seeking discovery has the burden to show the relevancy of the requested discovery. *McBride v. Medicalodges, Inc*., 250 F.R.D. 581, 586 (D. Kan. 2008).

When discovery is facially overbroad or when the relevancy is not readily apparent, it is the propounding party's burden to show the relevancy of the request. *Johnson v. Kraft Foods North America, Inc*., 238 F.R.D. 648, 653 (D. Kan. 2006). Plaintiff has not met this burden. The motion to compel should be overruled.

### Requests For Production of Documents

A. <u>Request No. 132</u>

Document Request No. 132 sought:

132.    Identify and produce true and correct copies of all documents pertaining to **Ethel Abbott aka Ethel Spencer aka Ethel Golubski** (DOB: 02/07/1965), including without limitation:

    a.  list of cases or incidents in which the individual was involved in any way, including without limitation as a complainant, victim or witness, including a break-in at her home and any incidents involving harassment or stalking by Roger Golubski; and

    b.  all documentation reflecting or referencing interactions or relationships the individual had with defendant Roger Golubski, including any directives or orders by KCKPD supervisors/commanders to Golubski to refrain from stalking or harassing the individual or requiring him to maintain a certain distance from the individual.

Despite the request's broad language ("all documents pertaining to"), Plaintiffs indicated during meet-and-confer that they were primarily interested in obtaining any documents from Defendant Golubski associated with the alleged "break-in," "harassment or stalking," and any "directives or orders by KCKPD supervisors/commanders to Golubski to refrain from stalking or harassing the individual or requiring him to maintain a certain distance from the individual." They requested Golubski to clarify whether he had any such documents. Meanwhile, Plaintiffs did not mention, let alone request, any follow-up as to any documents which may be responsive to the broader parts of the request.[1]

---

[1] Plaintiffs' golden rule letter to Defendant Golubski (doc. 428-5 at 5) and their memorandum in support of their motion to compel against Defendant Unified Government (doc. 309 at 20), and, as such, confirm the main target of the request was documents related to alleged harassment or stalking.

As a result, on July 2, 2021, Defendant Golubski furnished a Second Supplement to Request No. 132 to Plaintiff, in which he maintained certain objections, withdrew a prior Fifth Amendment assertion, and as shown below, notified Plaintiffs that he does not possess documents responsive to the heart of the request:

> **Defendant Golubski does not have responsive documents in his possession, custody or control regarding a "list of cases or incidents in which the individual was involved in any way, including without limitation as a complainant, victim or witness, a break-in at her home and any incidents involving harassment or stalking by Roger Golubski." Defendant Golubski does not have responsive documents in his possession, custody or control regarding "any directives or orders by KCKPD supervisors/commanders to Golubski to refrain from stalking or harassing the individual or requiring him to maintain a certain distance from the individual." Based upon the objections, Defendant Golubski is withholding other potentially responsive materials depending on the scope and propriety of the request.**

After his Second Supplement, Plaintiffs did not inquire again about Request No. 132—including in the aftermath of the Court's memorandum of July 28, 2021, ordering Defendant Unified Government to produce documents applicable to the request (doc. 365). Accordingly, Golubski was surprised to see that Request No. 132 was within the scope of Plaintiffs' motion to compel.

Nonetheless, the requested documents are not relevant on their face and have no apparent connection to the claims or defenses in this matter. And despite Plaintiffs' attempts to meet their burden by making much of the Court's ruling, (doc. 365), the reality is that the Court treated the request—at Plaintiffs' invitation—as seeking only a category of documents summarized as

"documents related to Golubski's pattern and practice of stalking and sexually harassing women."   Consequently, it appears the Court was less concerned about the request's possible capture of broader documents ("all documents pertaining to…"), and, therefore, the Court's order does not speak to whether broader documents are subject to discovery in this matter.

Importantly, Plaintiffs' current motion and memorandum offer no reason for the Court to grant their motion as to broader topics because they simply say that the Court has already deemed the request "relevant and discoverable" and incorporate only their prior arguments demonstrating the relevance of documents reflecting stalking or harassing behavior. As such, they provide no argument showing that broader documents ("all documents pertaining to…") are relevant and, if so, to what extent.   Therefore, Plaintiffs' motion should be denied as to Request No. 132.

B. <u>Request No. 94</u>

Request No. 94 sought:

94. Identify and produce any and all documents, including any personnel documents, insurance applications, insurance policies, or documents of any kind, that list any beneficiaries, insureds, or dependent(s) of Roger Golubski, including any offspring and/or any spouses or domestic partners.

In his Second Supplement to Request No. 94, Defendant Golubski agreed to produce all responsive documents in his possession, custody, or control. He

subsequently produced responsive documentation. Plaintiffs did not contact or notify Golubski regarding any perceived deficiencies with his production. In fact, Golubski was not aware of Plaintiffs' concerns until the filing of the current motion and memorandum. With that said, counsel will confer with Defendant Golubski and will produce any additional responsive documents, if they exist, as soon as practicable.

**Interrogatories**

A. <u>The Fifth Amendment Privilege</u>

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The privilege afforded not only extends to answers that would in themselves support a conviction … but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a … crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). "Not much is required," to furnish a link in the chain, "as the privilege extends to admissions that may only tend to incriminate." *United States v. RivasMacias*, 537 F.3d 1271, 1278 (10th Cir. 2008).

Moreover, "one of the Fifth Amendment's basic functions is to protect innocent men who otherwise might be ensnared by ambiguous circumstances" because "truthful responses of an innocent witness, as well as those of a

wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth." *Ohio v. Reiner*, 532 U.S. 17, 21 (2001).

Incrimination broadly includes "any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-445 (1972); *Maness v. Meyers*, 419 U.S. 449, 461 (1975) ("The protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution").

The privilege is to be given a "liberal construction." *Hoffman*, 341 U.S. at 486.

B. <u>Golubski's Limited Burden</u>

Although a court, rather than the witness, has the final say as to whether silence is justified, a court will not compel answers unless it is "*perfectly clear*, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer(s) *cannot possibly* have such tendency to incriminate." *Id.* at 488 (emphasis added). To safeguard the privilege, a witness is not "required to prove the hazard in the sense in which a claim is usually required to be established in court" because that would force the witness "to surrender the very protection which the privilege is designed

to guarantee." *Id.* Therefore, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* In fact, the Court "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." *Id.* Using these standards, the *Hoffman* court upheld an assertion of the privilege based only upon a review of the case's circumstances. *Id.* at 487-490.

In other words, the "trial court is to evaluate the incriminatory potential of questions asked," *U.S. v. Jones*, 703 F.2d 473, 476 (10th Cir. 1983), and allow silence "where the circumstances supporting the privilege claim are already known to the court …." *U.S. v. Nunez*, 668 F.2d 1116, 1121 (10th Cir. 1982) (trial court did not err by upholding assertion without requiring evidence because the questions at issue concerned a known, pending, unrelated criminal matter, and the "potential" for incriminating answers was "evident"). In such circumstances, "the court does not need to inquire further as to the validity of the assertion of the privilege." *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983) (citing *Hoffman*). The Court inquires further only when the context of the case "sheds no light whatsoever on whether" the assertion is valid. *Id.* 167-168 (citing *Hoffman*).

In *Jones*, the Tenth Circuit upheld an assertion as to financial questions, based upon context alone, where the subject of the civil proceeding (failure to pay taxes) closely mirrored the possible crime at issue (attempted tax evasion). *Jones,* 703 F.2d at 477.  Similarly, in *United States v. Von Behren*, 822 F.3d 1139 (10th Cir. 2016), the Tenth Circuit upheld an assertion by simply evaluating the questions and the surrounding circumstances.

In *Lile v. McKune*, 24 F.Supp.2d 1152 (D. Kan. 1998), this district upheld as assertion based only upon the content of questions which "clearly [sought] information that could incriminate…." *Resolution Trust Corp. v. Greif*, 906 F.Supp.1457, 1469-1470 (D. Kan. 1995) is another example. There, this district court found "under the facts and circumstances of [the] case, that Grief's invocation of the Fifth Amendment is *on its face* legitimate…." *Id*. (emphasis added) (but separately ordering further exploration of whether the documents in question were personal rather than corporate documents to ensure the Fifth Amendment was applicable).

To be sure, this district, in *KCI Auto Auction, Inc. v. Ephrem*, 19-cv-1040-EFM-GEB (D. Kan. September 11, 2020), ultimately required a detailed showing.  But the Court did so after reviewing certain available evidence *sua sponte* and determining the assertion was not validated "on the face" of the claim by circumstances known to the Court. *Id*. at 6-7. To the contrary, the Court's preliminary review suggested the questions at issue were non-

incriminating. *Id*. Thus, *Ephrem*—which was cited by Plaintiffs—is another case demonstrating the applicability of the *Hoffman* step in this district.

## C. Golubski Has Met His Limited Burden

Based upon information already known to the Court, there is little doubt that Golubski's assertion is valid "on its face." For starters, Plaintiffs' 42 U.S.C. § 1983 claims accuse Golubski of multiple civil rights violations. *See* doc. 74 at 38-43 (malicious prosecution, denial of due process and fair trial, interference with family relationships, and civil rights conspiracy). Meanwhile, 18 U.S.C. § 242 criminalizes these same things.

In addition to alleged parallel crimes under § 242, the Court is also aware that Plaintiffs are trying to prove their claims by investigating and accusing Golubski of committing many other crimes, even going so far as suggesting he is culpable in connection with several unsolved murders. *See* doc. 309 at 4 (enumerating *only some* of the alleged criminal conduct being investigated by Plaintiffs). In the context of the case, the Court is also aware that Plaintiffs' theory is that Golubski's alleged criminal activities are tangled and interconnected—in other words, Plaintiffs believe that evidence relevant to one crime would (or at least could) provide links and inferences to another. Because the Court has allowed Plaintiffs' discovery into these broader matters, doc.365, Golubski is effectively being investigated for a wide variety of possible crimes—

up to and including murder—in addition to potential parallel crimes covered by 18 U.S.C. § 242.

Like *Jones*, Golubski is, therefore, "being prosecuted civilly" for alleged conduct that could bring about criminal liability. In such a case, the witness's "fear is equally real" as if he "were under criminal investigation or indictment." *Jones*, 703 F.2d at 477. Similarly, in *Reiner*, a criminal defendant sought to prove his innocence by blaming the crime on a witness. The lower courts held that the witness lost her Fifth Amendment right to remain silent arising from "the defense's theory of [her] guilt" because she maintained her innocence. *Reiner*, 532 U.S. at 20. The Supreme Court disagreed, holding that the witness had "reasonable cause to apprehend danger from her answers," despite her innocence, because the defendant was seeking to prove she was guilty of a crime. *Id*. at 20-22. Like *Reiner*, then, Golubski has "reasonable cause" to invoke because Plaintiffs are expressly seeking to prove he is guilty of criminal conduct.[2]

Where, as here, the substance of a civil action includes alleged conduct that can bring about criminal liability, the scope of the Fifth Amendment privilege is coextensive with the scope of relevance. *See Thomas v. Tyler*, 841

---

[2] The Fifth Amendment can be invoked, even as to alleged crimes or conduct beyond the statute of limitations, so long as the disclosure "might furnish a link in a chain of evidence sufficient to connect the [witness] with a [prosecutable] crime…" *Malloy v. Hogan*, 378 U.S. 1, 13-14 (1964).

F.Supp.1119, 1124 (D. Kan. 1993) (in parallel civil proceeding, the court must "jealously guard" the privilege "as though [it] was a criminal action").

> "To be sure, … answers to these questions have probative value…[b]ut that is why the answers could also incriminate…If testimony…is relevant…because it would bear on the alleged [civil] fraud…, then it would naturally be just as relevant to the government's criminal investigation of that same fraud. As a result, the legitimacy of [the] assertions…is directly proportional to the relevance they hold [in this civil matter]." *KST Data, Inc. v. DXC Tech Co.*, 344 F.Supp.3d 1132, 1135 (C.D. Cal. 2018).

Thus, Plaintiffs defeat their own motion by arguing the relevance of the interrogatories. Try as they might, Plaintiffs cannot have it both ways. If, as they assert, the discovery they seek is probative of their claims, then it also "could be used in a criminal prosecution or could lead to other evidence that might be so used" in a criminal case. *Kastigar v. United States*, 406 U.S. 441, 444-445 (1972).

### 1.   Interrogatories 1,5, 9, and 11

According to Plaintiffs, this group of interrogatories seek information relating to "Golubski's (1) proceeds from criminal activity, misconduct, or inappropriate relationships with informants or other individuals, or (2) connections to properties associated with the unconstitutional conduct alleged in the Complaint." Doc. 428 at 13. The interrogatories "directly relate" to allegations "that Golubski was corrupt, accepted bribes or payoffs in cash, shook down drug dealers, participated in cash for drug transactions, received

other gifts in exchange for favors or protection and then used those drugs, cash, and other gifts (among other things) to pay prostitutes for sex and engage in other transactions." *Id*. at 14. Finally, Plaintiffs tell us that "any information obtained is likely to lead to the discovery of admissible evidence if not directly relevant evidence supporting Plaintiffs' claims." *Id*. at 15.

As discussed above, the circumstances supporting Golubski's privilege claim are already known to the Court—Plaintiffs are accusing him of, and investigating him for, numerous alleged crimes, up to and including murder. As if that's not enough, though, Plaintiffs' explanation, quoted above, demonstrates the interrogatories are specifically designed to elicit incriminating answers. As such, Plaintiffs themselves have illustrated Golubski has "reasonable cause" because answering these interrogatories creates the potential for incriminating answers.

2.   Interrogatories 4 and 6

According to Plaintiffs, Interrogatories 4 and 6 "seek information relating to Defendant Golubski's current financial state" but also "have a direct correlation to the allegations made against Defendant Golubski in the current action and are [substantively] relevant to Plaintiff's claims." *Id*. at 12, 15. After all, Plaintiffs seek to show "that Golubski was corrupt, accepted bribes or payoffs in cash, shook down drug dealers, participated in cash for drug

transactions, received other gifts in exchange for favors or protection…" *Id*. at 14.

Again, the circumstances supporting Golubski's privilege claim are already known to the Court—Plaintiffs are accusing him of, and investigating him for, numerous alleged crimes, up to and including murder. Yet Plaintiffs also describe in detail a theory, quoted above, that gives Golubski "reasonable cause" to invoke because it is evident answering these interrogatories about his finances creates the potential for incriminating answers.

### 3.   Interrogatory 13

According to Plaintiffs, Interrogatory 13 "seeks information relating to financial support to any person other than spouses since 1976" and "is extremely relevant to showing his involvement with certain criminals, prostitutes, and informants, as well as his misconduct in investigations that involved the same individuals he was protecting exploiting or coercing for sex, or using for information."  Doc. 428 at 15-16.

As discussed above, the circumstances supporting Golubski's privilege claim are already known to the Court—Plaintiffs are accusing him of and investigating him for numerous alleged crimes, up to and including murder. And Plaintiffs' explanation, quoted above, demonstrates this interrogatory is designed to elicit incriminating answers. Indeed, there is "no doubt that the constitutional privilege against self-incrimination protects [a witness] from

being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence." *United States v. Hubbell*, 530 U.S. 27, 43 (2000). As such, Plaintiffs themselves have illustrated this interrogatory creates the potential for incriminating answers.

D. <u>In the alternative, the Court should conduct an ex parte review under seal</u>

For the above reasons, the Court should uphold each of Golubski's Fifth Amendment assertions.  However, if the Court remains unsatisfied, it should review Golubski's interrogatory answers and further briefing from Golubski ex parte and under seal to ensure that his Fifth Amendment rights are "jealously guarded" and to "avoid any risk that explaining why he cannot answer may incriminate him." *See Ephrem*, at 7-8 (after determining assertion was not "on its face" valid, ordering briefs which "may be filed ex parte and under seal"); *Thomas*, 841 F.Supp. at 1124 (ordering witness "to submit any allegedly privileged answers to the court in camera together with an in camera brief"). However, this step should not be taken lightly. *See Hoffman*, 341 U.S. at 486.

E. <u>Other Objections</u>

None of the interrogatories in question are facially relevant to the substantive claims and defenses in this matter, which arise from the 1994 double homicide. Plaintiffs claim that *any alleged criminal conduct,* however remote in time or circumstance, proves their claims. Put another way,

Plaintiffs try to do what the Rules of Evidence prohibit: use "[e]vidence of any other crime, wrong, or act … to show that on [this] particular occasion, [he] acted [accordingly]." Fed. R. Evid 404(b). Evidence of alleged other crimes or bad acts is not discoverable, unless it is sufficiently similar in circumstance to potentially prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Yet Plaintiffs fail to explain how these "other alleged crimes" bear any similarities to the specific 1994 investigation at issue. Therefore, the Court should deny Plaintiffs' motion as to each interrogatory based upon relevance.

Furthermore, Interrogatories 4, 5, 6, 9, 11 should be overruled for improperly seeking information about ability to pay a judgment prior to a judgment being entered. *Pipeline Prods., Inc. v. Madison Cos., LLC*, at *5-6 (D. Kan. March 22, 2019) ("discovery about a litigant's ability to pay a judgment is generally not permissible until a judgment is entered").

To the extent these requests are tied to Plaintiffs' punitive damages claim, rather than ability to pay a judgment, they seek overly broad information in scope and time range as they seek more information than needed. *Id.* at *8-10 ("only records of defendants' *present* financial state are within the scope of discovery, and all other records are facially overbroad") (emphasis added) ("Typically, discovery of financial information for punitive damages purposes is limited to the defendant's most recent annual reports and

current financial statements"). Indeed, all these interrogatories seek "information beyond what is reasonably necessary for plaintiffs to demonstrate [Golubski's] current net worth and financial condition." *Id*. at 9. Plaintiffs appear to agree as to Interrogatories 5, 9, and 11. *See* Doc. 428 at 15 (stating that only "Interrogatories 4 and 6 seek information relating to Golubski's current financial state"). At the same time, however, Interrogatories 4 and 6 both seek unnecessary information because they seek much more detail than an account's present value as reflected by a current financial statement. Additionally, Interrogatory 6 impermissibly asks for five years of account information, rather than current accounts.

Finally, the Court should stay enforcement of Plaintiffs' motion to compel regarding answers, if any, Golubski is required to provide about his financial condition until the resolution of dispositive motions. In addition to allowing Golubski the opportunity to challenge Plaintiffs' punitive damages claim at summary judgment, this will also result in more recent financial information being disclosed. *Id*. at 10-11.

## Conclusion

For all these reasons, the Court should deny Plaintiffs' Motion to Compel Production of Documents and Answers From Defendant Golubski (doc. 427).

Respectfully Submitted,

**MCCAULEY & ROACH, LLC**

By: /s/ *Morgan L. Roach*
Morgan L. Roach, #23060
Sean P. McCauley #20174
527 W. 39th St., Suite 200
Kansas City, MO 64111
Telephone: (816) 523-1700
Facsimile:  (816) 523-1708
morgan@mccauleyroach.com
sean@mccauleyroach.com

**ENSZ & JESTER, P.C.**

Matthew J. Gist, #20829
Christopher M. Napolitano, #25499
2121 City Center Square
1100 Main Street
Kansas City, MO  64105
Telephone:          816-474-8010
Facsimile:       816-471-7910
E-mails: mgist@enszjester.
com
cnapolitano@enszj
ester.com

**ATTORNEYS FOR DEFENDANT GOLUBSKI**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 12th day of October, 2021, the foregoing was electronically filed with the clerk of the court using the CM/ECF system which will provide notice and service to all counsel of record.

**/s/ Morgan L. Roach**