### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LAMONTE MCINTYRE, et al.,** )<br>)<br>  **Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**UNIFIED GOVERNMENT OF** )<br>**WYANDOTTE COUNTY AND** )<br>**KANSAS CITY, KS, et al.,** )<br>)<br>  **Defendants.** )<br>_____) | Case No. 2:18-cv-02545-KHV-KGG |

### **PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL**

Pursuant to Fed. R. Civ. P. 37(a)(2)(B), Plaintiffs Lamonte McIntyre and Rose McIntyre ("Plaintiffs"), by and through their counsel, submit the following Reply in support of Plaintiffs' Motion to Compel Defendant Roger Golubski, (Doc. 427) as follows:

### **INTRODUCTION**

Defendant Golubski wrongfully asserts that he is entitled to blanket invocations of the Fifth Amendment in order to escape his discovery obligations in this civil suit. Instead, case law requires Golubski to show a reasonable fear of incrimination if forced to answer *each interrogatory*, which he has failed to do. Further, Golubski has waived his privilege as to certain subjects (beneficiaries, children, employment, spouses, etc.) by voluntarily testifying and producing documents in response to these topics. Additionally, Golubski agrees to fully respond to Request No. 94, and the Court has previously ruled that documents responsive to Request No. 132 are discoverable. Finally, the Court should deny Golubski's requests to stay enforcement of this motion and for an *ex parte* proceeding, as they would only prejudice Plaintiffs and delay resolution of this six-month old discovery dispute. Accordingly, Plaintiffs' Motion to Compel Golubski should be granted.

### I. Documents Responsive to Request No. 132 Are Discoverable.

Defendant Golubski completely misinterprets this Court's July 28, 2021, Memorandum & Order Granting in Part Plaintiffs' Motion to Compel the UG (Doc 365), wherein the Court ruled that documents responsive to Request No. 132—*the exact same request at issue here*—are "relevant and discoverable." (Doc 365, p. 8-9). Golubski's incorrect assertion that the Court was not "concerned about the request's possible capture of broader documents" (other than Golubski's stalking and harassment of women), and therefore the Order "does not speak to whether broader documents are subject to discovery in this matter," (Response, p. 5-6), is quickly defeated by the clear language of the Request itself, which the Court undoubtedly evaluated in its ruling.

Even putting that aside, the Request is facially relevant to Plaintiffs' *Monell* claim, as it seeks documents that reference Golubski's relationship with his ex-wife, Ethel, who he was accused of stalking and harassing *after* the annulment of their marriage, in a similar fashion as the harassment of Plaintiff Rose McIntyre[1] and the stalking and harassment of numerous other women. Additionally, this information is directly relevant to the contention interrogatories Golubski propounded on Plaintiffs relating to Golubski's sexual relationships with women.[2] The Court should not permit Golubski to withhold documents that are directly relevant to his own discovery requests (resulting in an argument that Plaintiffs cannot support their claims).[3]

Golubski's purported "surprise[] to see that Request No. 132 was within the scope of Plaintiffs' motion to compel," (Response, p. 5) is unsubstantiated, given that Golubski's deficiencies in regard to Request No. 132 were detailed in Plaintiff's Golden Rule letter,[4]

---

[1] *See* Complaint, ¶¶ 3-4,41-45,108-125,131-144.
[2] *See* Defendant Golubski's Suggestions in Support of his Motion to Compel (Doc. 445).
[3] *Id.*
[4] Exhibit 5, p. 2.

Plaintiffs' Motion to Compel the UG, and in both meet and confer calls with Golubski's counsel.[5] Indeed, Golubski's convenient disregard of the portion of the request at issue[6] does not mean Plaintiffs abandoned the request. Regardless, it is Golubski's burden to show that "the requested documents are not relevant on their face and have no apparent connection to the claims or defenses in this matter." He fails to do so. Accordingly, Plaintiffs' motion to compel the production of documents responsive to Request No. 132 should be granted.

## II. Documents Responsive to Request No. 94 Are Discoverable.

Defendant Golubski agrees to produce all documents responsive to Request No. 94 and fails to raise any objections in response to Plaintiffs' Motion to Compel. On that ground alone, Plaintiffs' Motion to Compel documents responsive to Request No. 94 should be granted.[7]

Moreover, it bears noting that Golubski does not address *any* of Plaintiffs' arguments regarding the Fifth Amendment redactions contained in Golubski's already produced documents. (Motion, p. 8-11) Golubski also does not explain, justify, or even acknowledge the deficiencies with his production, including that responsive information from *the time of Plaintiff's wrongful conviction in 1994 or within the two decades since* were not produced. (Motion, p. 8-9; Exhibit 5, p. 3). That information is highly relevant to Plaintiffs' claims, including the allegation that

---

[5] Golubski's Response mischaracterizes the parties' meet and confer calls, as Plaintiffs' counsel never stated or inferred that they were not interested in the documents reflecting Golubski and Ethel's relationship – a critical component of the Request, and for which Defendant Golubski is the only party that can provide responsive documents.

[6] Specifically, he ignores the request for "all documentation reflecting or referencing interactions or relationships [Ethel] had with defendant Roger Golubski."

[7] *See Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D. Kan. 1999) ("When ruling upon a motion to compel, the court generally considers those objections which have been timely asserted and relied upon in response to the motion. It generally deems objections initially raised but not relied upon in response to the motion as abandoned. It deems objections not initially raised as waived."); *see also Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 521-22 (D. Kan. 2010).

Golubski engaged in sexual relationships with impoverished women in the community whom he called his "informants" and that those relationships sometimes led to financial entanglements.

Instead, like with his response to Request No. 132, Golubski alleges only that he was not contacted about "any perceived deficiencies with his production. In fact, Golubski was not aware of Plaintiffs' concerns until the filing of the current motion and memorandum." (Response, p. 7) Golubski's contention is baseless, given the numerous meet and confer calls on this issue, the written Golden Rule letter explaining Golubski's deficiencies,[8] Plaintiffs' continued requests for a privilege log,[9] Golubski's letter attempting to explain that the deficiencies could be cured with another supplemental production,[10] and Golubski's three supplemental productions themselves. Once Plaintiffs received Golubski's August 19 letter—in lieu of the privilege log Plaintiffs have requested since April—it was clear that further requests for the *exact same information* would be futile and would further delay resolution of this issue.

Golubski's repeated failure to produce the requested documents—despite his agreement to do so—and his duplicated disclosures of the *same* document three different times does not require supplemental meet and confer calls, nor does it justify his failure to address these issues in his Response. Accordingly, Plaintiffs' motion to compel documents listing Golubski's beneficiaries, insureds, dependent(s), offspring, spouses, or domestic partners from 1994 to 2018 should be granted, and Golubski should be compelled to provide an unredacted version of the 11-page beneficiary document described in Plaintiffs' Motion.

---

[8] *See* Exhibit 5, p. 3.
[9] *See* Exhibit 7, p. 1.
[10] *See* Exhibit 7, p. 2.

### III. Golubski Has Failed to Meet His Burden to Prove the Applicability of the Fifth Amendment to Any of Plaintiffs' Interrogatories, Let Alone All of Them.

Although the Fifth Amendment protects against disclosures the witness reasonably believes could be used in a criminal prosecution, the "Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence..."[11] In his Response, Golubski attempts to diminish his Fifth Amendment burden, but the law is clear:

> Before a witness ... is entitled to remain silent, there must be a valid assertion of the fifth amendment privilege. It is for the court to decide whether a witness' silence is justified and to require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity. A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. A witness must, however, show a 'real danger,' ***and not a mere imaginary, remote or speculative possibility of prosecution.*** While the privilege is to be accorded liberal application, the court may order a witness to answer if it clearly appears that he is mistaken as to the justification for the privilege in advancing his claim as a subterfuge. ***A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement*** and the privilege cannot be claimed in advance of the questions. ***The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify***.[12]

To meet his constitutional obligation, Golubski must assert that there is reasonable cause to apprehend a real danger of incrimination if he was compelled to answer *each particular interrogatory*. To sidestep his failure to do so, Golubski now argues that the nature of Plaintiffs' § 1983 claims against him *automatically* presumes the applicability of the privilege. (Response, p. 8-11). Not only is this position unsupported by any legal authority, but the commonsense result of such a sweeping notion—that the preeminent federal civil rights statue (42 U.S.C. § 1983) "on its face" subjects a defendant to criminal liability—is ludicrous. Golubski's argument would render irrelevant the Supreme Court and Tenth Circuit precedent requiring a case-by-case assessment of

---

[11] *Thomas v. Tyler*, 841 F. Supp. 1119, 1124 (D. Kan. 1993) (cleaned up).
[12] *In re Lindsey*, 229 B.R. 797, 801 (B.A.P. 10th Cir. 1999) (*citing Bank One v. Abbe*, 916 F.2d 1067, 1077 (6th Cir. 1990) (internal citations omitted)) (emphasis added); *see also Thomas v. Tyler*, 841 F. Supp. 1119, 1124 (D. Kan. 1993).

the facts, the specific questions asked, and the *actual threat* of criminal liability. Further, this argument is undermined by Golubski's own voluntary act of answering certain questions during his deposition, while invoking the Fifth Amendment in response to others.[13] The fact that Golubski unreasonably fears prosecution for other crimes he has apparently committed (for example, Golubski alleges he is being investigated for murder, but provides no citation to such an allegation or basis for this assertion) does not mean that Plaintiffs' interrogatories requesting information relating to finances, beneficiaries, and property involve such conduct or that his answers to such interrogatories would tend to incriminate him.

Additionally, Golubski's authority is factually distinguishable.[14] Although he expands upon four cases for the proposition that he has a "limited burden," two of those cases involve a quasi-criminal administrative proceeding *by a government entity*,[15] one case was clearly overturned,[16] and the remaining case involved a post-conviction sex offender treatment program which required a defendant to take a polygraph directly asking for admissions to past crimes.[17] None of these cases reflect the circumstances here.

---

[13] Golubski voluntarily answered deposition questions in this action relating to his children, his health, his previous and current employment, his living situation and address, and his spouses (past and present). *See e.g.* Nov. 19, 2020 Deposition of Roger Golubski, p. 1-39, an excerpt of which is attached as **Exhibit 8.**

[14] *See Hoffman v. United States*, 341 U.S. 479, 71 S. Ct. 814 (1951) (privilege invoked during criminal grand jury proceeding); *United States v. Rivas-Macias,* 537 F.3d 1271, 1274 (10th Cir. 2008) (criminal case); *Ohio v. Reiner*, 532 U.S. 17, 121 S. Ct. 1252 (2001) (criminal case); *Kastigar v. United States*, 406 U.S. 441, 462, 92 S. Ct. 1653, 1666 (1972) (privilege invoked during criminal grand jury proceeding).

[15] *See Resol. Tr. Corp. v. Greif,* 906 F. Supp. 1457, 1469 (D. Kan. 1995) (administrative proceeding under FIRREA by a congressionally enacted entity relating to conservatorship and receivership); *U.S. v. Jones*, 703 F.2d 473, 476 (10th Cir. 1983) (judgment debtor proceeding initiated by the IRS, under Federal Rule of Civil Procedure 69).

[16] Golubski cites to *Lile v. McKune*, 24 F. Supp. 2d 1152 (D. Kan. 1998) for the proposition that "this district upheld as [sic] assertion based only upon the content of questions which 'clearly [sought] information that could incriminate....'" (Response, p. 10) However, the *Lile* decision was affirmed in part and vacated in part by the 10th Circuit, *see Lile v. McKune*, 224 F.3d 1175 (10th Cir. 2000), and was then fully reversed by the Supreme Court, *see McKune v. Lile*, 536 U.S. 24, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002), which held – contrary to Golubski's assertion – **that the Fifth Amendment privilege did not apply**. *Id.*

[17] *U.S. v. Von Behren*, 822 F.3d 1139, 1141 (10th Cir. 2016)

Golubski also attempts to analogize this case to *U.S. v. Jones*, wherein the defendants were asked similar income and asset location questions by the IRS in a judgment debtor examination regarding potential tax deficiencies.[18] There the court held "[t]hat a witness actually fears incrimination from answering questions is not enough. The fear must be reasonable in light of the witness' specific circumstances, the content of the questions, and the setting in which the questions are asked."[19] The court also held that "[t]he claim of privilege cannot be sustained if the fear of self-incrimination rests on 'remote and speculative possibilities'; the privilege protects only against 'real dangers.'"[20] Unlike Golubski, the defendants in *Jones* were criminally investigated for tax fraud, found civilly liable as a result of the criminal investigation, and were the subject of another civil complaint for tax deficiencies filed by the IRS *before the questions in the judgment debtor proceeding were even asked*.[21] Further, the questions asked were about the exact subject matter of those investigations, and thus, the court held that "Jones had ample reason to believe that the IRS was particularly interested in his financial transactions."[22] Even so, the court noted:

> While we hold the circumstance of a civil prosecution in the context of the instant case is sufficient to justify the Joneses' claim of the Fifth Amendment privilege, we recognize the rule that a witness claiming the [Fifth Amendment] privilege **must establish that the questions call for potentially incriminating answers**. **When the circumstances surrounding the questions fail to indicate that the witness' answers would be incriminating, the claim can be disposed of easily on that basis…**[23]

In stark contrast to the *Jones* case, Golubski is not alleging fear of criminal prosecution for tax evasion, fraud, or other financially related crimes (and no reasonable basis for such fear exists). Thus, Plaintiffs' finance, beneficiary, property, and asset location questions do not call for

---

[18] *U.S. v. Jones*, 703 F.2d 473, 476 (10th Cir. 1983).
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 479, n.6 (emphasis added).

7

potentially incriminating responses. Indeed, the other cases cited by Golubski confirm his blanket assertion of the privilege is insufficient to meet his burden in this case.[24] Moreover, the District of Kansas cases cited by the parties have either held that the Fifth Amendment privilege does not apply,[25] that an *in camera* review of answers was required,[26] or that the invoking party must provide either the requested documents[27] or a privilege log that "adequately demonstrate[s] the applicability of the privilege against self-incrimination to each particular interrogatory and request for production."[28] Because Golubski fails to meet his burden regarding Fifth Amendment invocations, and because Interrogatories 1, 5, 9, 11 and 13 would not elicit an incriminating answer, the Court should overrule Golubski's objections and compel him to provide answers.

   a. **Interrogatory No. 1**

In addition to the above, Golubski wholly fails to address the actual content of Interrogatory No. 1, which seeks: "all other contracts, employment, or other means of income, including "'self-employment,'" proceeds from criminal activity, cash that is not income, gifts, money, non-taxable income or assets from your business or employment or any other source [besides the KCKPD and current employers] since 1976." (Exhibit 2). Even if the Court determines that Golubski has adequately supported his Fifth Amendment invocation in regard to Interrogatory No. 1 (he has not), it is "well established that in a civil case a district court may strike conclusory testimony if

---

[24] *Hoffman,* at 456 (holding an individual "is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination."); *United States v. Rivas Macias,* 537 F.3d 1271, 1277 (10th Cir. 2008) ("Of course, an individual cannot avoid his duty to testify merely by voicing his own fears of self-incrimination and reciting the Fifth Amendment's familiar terms."); *Ohio v. Reiner*, 532 U.S. 17, 21 (2001) ("the witness' assertion [of the Fifth Amendment] does not by itself establish the risk of incrimination…A danger of 'imaginary and unsubstantial character' will not suffice.").

[25] *See generally KCI Auto Auction, Inc. v. Ephrem,* 2020 WL 5503350, *3 (D. Kan. Sept. 11, 2020).

[26] *Thomas v. Tyler*, 841 F. Supp. 1119, 1125 (D. Kan. 1993) (holding that Tyler's "answer has no tendency to reveal that Tyler engaged in criminal activities with respect to the charges brought against him in Kiowa county or any other criminal prosecution that may conceivably be initiated against him.").

[27] *Resol. Tr. Corp. v. Greif*, 906 F. Supp. 1457 (D. Kan. 1995).

[28] *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 498 (D. Kan. 1998).

the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause."[29] "This doctrine exists to prevent a party from converting the Fifth Amendment privilege from its intended use as a shield against compulsory self-incrimination into an offensive sword."[30] Defendant Golubski answered a portion of Interrogatory No. 1, and although Golubski did not "waive" the privilege in doing so,[31] he should not be allowed to answer only those questions or parts of questions that benefit him, while withholding information in response to those that may not. Thus, Golubski should be compelled to fully answer Interrogatory No. 1.

### b. Interrogatory Nos. 4, 5, 6, 9, and 11.

Defendant Golubski relies upon identical responses in support of his Fifth Amendment invocation to Interrogatories No. 4, 5, 6, 9, and 11 – despite the differences of each request.[32] Instead, Golubski argues only that "the circumstances supporting Golubski's privilege claim are already known to the Court," (Response, p. 14) a proposition he fails to support with any legal authority. The repeated, bare conclusion that the privilege applies in the same manner to

---

[29] *See United States v. $148,840.00 in U.S. Currency,* 521 F.3d 1268, 1277 (10th Cir. 2008).

[30] *Id.*

[31] During a meet and confer conference between the parties' counsel, Plaintiffs agreed that by answering a portion of Interrogatory No. 1, Golubski did not "waive" his pending objection to the Fifth Amendment.

[32] Interrogatory No. 4 requests that Golubski identify if he participates "in any pension, profit sharing or other retirement plan, individual retirement accounts, employee stock option or ownership plans or deferred compensation plans, either personally or through a company." Interrogatory No. 5 requests information relating to Golubski's "property with a value of $100 or more, including without limitation, stocks, bonds, debentures, mutual fund, marketable or non-marketable securities, money market funds, collectibles, collections, rents, royalties, leases, or any other investment or similar items in the last ten (10) years." Interrogatory No. 6 requests Golubski's "interest in any bank account, including savings, checking, credit union, or money market management account with any bank or other financial institution," in the last five years. Interrogatory No. 9 requests "the amount and location of cash that you have on hand or if there are, or were during the last ten (10) year period, any safe deposit boxes, vaults, safes or other places of deposit and safe keeping in which you deposited or kept any money or other items of personal property exceeding $100…." Interrogatory No. 11 requests "all automobiles, boats, motors, trailers, or other vehicles owned by you or in which you claim an interest in since 1976…."

9

completely different interrogatories does not satisfy Golubski's burden to show that his compelled answers to *each specific interrogatory* would tend to incriminate him.

In any event, the questions "on their face" are not incriminating, but instead request information relating to retirement funds, cash and investments, automobiles, and property. The fact that the answers may reveal information relevant to Plaintiffs' claims in this action does not mean that Golubski's "compulsory response to individual questions…will pose a substantial and real hazard of subjecting [him] to criminal liability."[33] Golubski's voluntary answers to *some but not all* questions posed to him in his deposition and his answers to *some but not all* of Plaintiffs' Interrogatories only serve to further reinforce that principle.[34] Golubski must show that his compelled response to *each* interrogatory could be incriminating, not that the claims against him in general – if proven – could tend to incriminate him. Golubski has failed to meet his burden. Thus, Golubski's Fifth Amendment objections should be overruled, and he should be compelled to answer interrogatories No. 4, 5, 6, 9, and 11.

    **c. Interrogatory 13**

The above arguments relating to Golubski's insufficient invocation of the Fifth Amendment in response to Interrogatories 1, 4, 5, 6, 9, and 11 apply equally to Interrogatory No. 13.[35] Additionally, "[a] witness may waive the privilege against self-incrimination by…voluntarily testifying about the subject in question."[36] Because Golubski testified under oath in his deposition (and produced documents) relating to his financial beneficiaries, children, dependents, offspring,

---

[33] *KCI Auto Auction, Inc. v. Ephrem,* 2020 WL 5503350, *3 (D. Kan. Sept. 11, 2020); *In re Lindsey*, 229 B.R. 797, 801 (B.A.P. 10th Cir. 1999).
[34] *See e.g.* **Exhibit 8**.
[35] Interrogatory No. 13 states: Identify if you provide or have provided financial or in-kind support to any person other than yourself or your spouse, state the name of each person and the monthly support or expenses attributable to such person since 1976."
[36] *United States v. Oldman,* 979 F.3d 1234, 1253 (10th Cir. 2020)

and spouses[37] – the exact subject matter of Interrogatory No. 13 – he has waived any purported Fifth Amendment privilege to such subject matter. Thus, Golubski should be compelled to fully answer Interrogatory No. 13.

## IV. Golubski's "Other Objections" Are Insufficient and Should Be Overruled.

Golubski argues on pages 12-13 of his Response that the relevance of the interrogatories at issue supports his claim for Fifth Amendment privilege, while on page 16 he argues that "[n]one of the interrogatories in question are facially relevant to the substantive claims and defenses in this matter, which arise from the 1994 double homicide." Of course, Golubski cannot have it both ways. His contradictory arguments completely undermine his assertion that the requests are "not relevant," and such unsupported objections should be overruled.

Additionally, Golubski—for the first time in his Response—argues that the Federal Rules of Evidence, which govern the *admissibility* of evidence, not its *discoverability*, prohibit "other alleged crimes" information unless it is sufficiently similar to prove an exception to Rule 404(b). (Response, p. 17) However, Plaintiffs have clearly asserted that Golubski's other bad acts are part of a pattern and practice of similar misconduct in felony investigations through Plaintiffs' *Monell* claim, and have demonstrated that such acts are relevant to Golubski's intent, absence of mistake, knowledge, intent and opportunity to cause Plaintiffs' (and others') constitutional injuries.[38]

Golubski's Response also repeats the same conclusory statement from his initial objections that "Interrogatories 4, 5, 6, 9, 11 should be overruled for improperly seeking information about ability to pay a judgment prior to a judgment being entered. *Pipeline Prods., Inc. v. Madison Cos., LLC*, at *5-6 (D. Kan. March 22, 2019) ("discovery about a litigant's ability to pay a judgment is generally not permissible until a judgment is entered")." (Response, p. 17) However, Plaintiffs

---

[37] *See e.g.* **Exhibit 8**.
[38] *See* Doc. 309, p.6 and Doc. 352, p. 2, 4.

already refuted this inaccurate assertion, illustrated that Golubski misconstrued the *Pipeline* holding, and confirmed that the financial information requested is relevant to the claims at issue. (Motion, p. 12). Golubski fails to acknowledge, let alone respond to these arguments. Further, Golubski again admits that his current finances and account information *are discoverable,* but refuses to produce such documents on the ground that they request five years of information, but does not assert what timeframe would should apply. Thus, Golubski's objections should be overruled and Plaintiffs' Motion to Compel answers to Interrogatories 1, 4, 5, 6, 9, 11, and 13 should be granted.

## V. An *Ex Parte* Review Is Unnecessary in this Case and Would Only Serve to Prejudice Plaintiffs.

Golubski's assertion of the Fifth Amendment is insufficient because Golubski has waived his privilege over certain subjects, and because the disputed interrogatories do not request incriminating answers. However, if the Court requires further information on this issue, it should order Golubski to provide a privilege log as the *Starlight* court did,[39] or compel Golubski to answer the Interrogatories under seal so that only the parties and the Court can review them. Not only would Golubski's answers be sealed, but they would also be subject to the protective order in place in this action,[40] (which Golubski has already used to protect his Interrogatory answers and objections from the public). Such a result would sufficiently and adequately safeguard Golubski's interests in shielding such answers from anyone outside of the current litigation.

---

[39] *Starlight Int'l, Inc. v. Herlihy*, 181 F.R.D. 494, 498 (D. Kan. 1998) ("All or at least much of the requested discovery appears non-incriminating. The court will, nevertheless, direct defendants Herlihy and Bruce to produce a privilege log in accordance with Fed.R.Civ.P. 26(b)(5). It must adequately demonstrate the applicability of the privilege against self-incrimination to each particular interrogatory and request for production.")
[40] *See* Protective Order, Doc. 124.

Accordingly, an *ex parte* proceeding is unnecessary. The only case to hold such a remedy appropriate was *Ephrem,* wherein the court specifically found good cause to do so because the *Ephrem* defendants' "asserted Fifth Amendment privilege claim arises **not from the nature of the information requested in the initial interrogatory,** *but from the risk of giving evidence of his own perjury by providing a different answer than that provided at the November 6, 2019 hearing*…"[41] Those circumstances are not present here. An *ex parte* proceeding would exclude Plaintiffs' counsel and serve no purpose but to prevent them from alerting the Court to any discrepancies or inconsistencies in Golubski's answers. It would be especially inappropriate here as Plaintiffs are not the government or a judgment creditor like the plaintiffs in *Ephrem*.[42] A review of the relevant answers under seal, and pursuant to the protective order, would allow all parties to object and be involved in any further briefings on this critical issue that will have wide-ranging effects on the remainder of discovery. Such a just result is appropriate under the unique circumstances of the case.

## VI. The Court Should Deny Golubski's Request to Stay Enforcement of Plaintiffs' Motion to Compel.

Without citing a single fact or legal authority for support, Golubski asks this Court to stay enforcement of Plaintiffs' Motion to Compel "until the resolution of dispositive motions." (Response, p. 18). This request is extraordinary, and in light of Golubski's Fifth Amendment assertions, requests for further briefing, and failure to provide responsive documents throughout discovery, Plaintiffs fear the sole purpose of such a request is to delay this proceeding, extend the

---

[41] *KCI Auto Auction, Inc. v. Ephrem*, No. 6:19-CV-1040-EFM-GEB, 2020 WL 5503350, at *3, n.15 (D. Kan. Sept. 11, 2020)
[42] *See generally KCI Auto Auction, Inc. v. Ephrem*, No. 6:19-CV-1040-EFM-GEB, 2020 WL 5503350 (D. Kan. Sept. 11, 2020).

length and timing for discovery indefinitely, and further prevent Plaintiffs from obtaining a resolution to this three-year old action. Such a request should be denied.

## VII. Conclusion

For the reasons set out above and in Plaintiffs' Motion to Compel, Plaintiffs respectfully request that the Court grant Plaintiffs' motion, and order Golubski to conduct a full search of his records for responsive documents in regard to Requests No. 132 and 94, order that Golubski provide an unredacted copy of the document produced in response to No. 94, and order Golubski to fully answer Interrogatories 1, 4, 5, 6, 9, 11, and 13. In the alternative, if the Court requires further information from Golubski regarding his Fifth Amendment assertions, Plaintiffs request that the Court compel Golubski to provide his answers under seal for further review.

Date:  November 9, 2021

Respectfully submitted,

LATHROP GPM LLP

By: /s/ *Alana M. McMullin*
Michael J. Abrams #15407
Alexander T. Brown #78891
Alana M. McMullin #78948
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
(816) 292-2000 / (816) 292-2001 Facsimile
michael.abrams@lathropgpm.com
alana.mcmullin@lathropgpm.com

Cheryl A. Pilate #14601
Lindsay Runnels #78822
Morgan Pilate, LLC
926 Cherry Street
Kansas City, MO 64106
(816) 471-6694 / (816) 472-3516 Facsimile
cpilate@morganpilate.com

        Barry Scheck (*admitted pro hac vice*)
        Emma Freudenberger (*admitted pro hac vice*)
        Sona R. Shah (*admitted pro hac vice*)
        Grace Paras (*admitted pro hac vice*)
        Neufeld Scheck & Brustin, LLP
        99 Hudson Street, Eighth Floor
        New York, NY 10013
        (212) 965-9081 / (212) 965-9084 Facsimile
        emma@nsbcivilrights.com

        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

   The undersigned certifies that on the 9th day of November, 2021, the foregoing was electronically filed with the clerk of the court using the CM/ECF system which will provide notice and service to all counsel of record.

        By: /s/ *Alana M. McMullin*
        *An Attorney for Plaintiffs*

15