# EXHIBIT 8

```
 1          IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF KANSAS
 2
 3    LAMONTE McINTYRE, et al.,)
                               )
 4              Plaintiffs,    )
                               )
 5    vs.                      ) 2:18-cv-02545-KHV-KGG
                               )
 6    UNIFIED GOVERNMENT OF    )
      WYANDOTTE COUNTY AND     )
 7    KANSAS CITY, KANSAS,     )
      et al.,                  )
 8                             )
                Defendants.    )
 9
10
11         PORTIONS OF TRANSCRIPT CONFIDENTIAL
12
13
14            VIDEOTAPE DEPOSITION OF ROGER
15    GOLUBSKI, a Defendant, taken on behalf of the
16    Plaintiffs, before Alison A. Tracy, Missouri CCR
17    No. 554, Kansas CSR No. 1525, pursuant to Notice,
18    on the 19th day of November, 2020, at Lathrop GPM
19    LLP, 2345 Grand, Suite 2200, Kansas City,
20    Missouri.
21
22
23
24         Redacted Pursuant to Protective Order
25
```

Page 2

1    A P P E A R A N C E S
2
3  FOR THE PLAINTIFFS:
4    Mr. Michael J. Abrams
     Ms. Alana McMullin (Appearing via Zoom)
5    LATHROP GPM LLP
     2345 Grand, Suite 2200
6    Kansas City, Missouri 64108
     816.292.2000
7    michael.abrams@lathropgpm.com
     alana.mcmullin@lathropgpm.com
8
          and
9
     Ms. Cheryl A. Pilate (Appearing via Zoom)
10   Ms. Lindsay Runnels (Appearing via Zoom)
     MORGAN PILATE, LLC
11   926 Cherry Street
     Kansas City, Missouri  64106
12   816.471.6694
     cpilate@morganpilate.com
13
          and
14
     Ms. Emma Freudenberger (Appearing via Zoom)
15   Mr. Barry Scheck (Appearing via Zoom)
     Mr. Rick Sawyer (Appearing via Zoom)
16   Ms. Yasmin Dagne (Appearing via Zoom)
     NEUFELD, SCHECK & BRUSTIN, LLP
17   99 Hudson Street, Eighth Floor
     New York, New York  10013
18   212.965.9081
     emma@nsbcivilrights.com
19   barry@nsbcivilrights.com
     rick@nsbcivilrights.com
20   yasmin@nsbcivilrights.com
21
22
23
24
25

Page 3

1    A P P E A R A N C E S (Continued)
2  FOR THE DEFENDANT UNIFIED GOVERNMENT OF WYANDOTTE
   COUNTY AND KANSAS CITY, KANSAS:
3
     Mr. David R. Cooper (Appearing via Zoom)
4    FISHER PATTERSON SAYLER & SMITH, LLP
     3550 SW 5th Street
5    Topeka, Kansas  66606
     785.232.7761
6    dcooper@fpsslaw.com
7         and
8    Mr. Edward James Bain (Appearing Via Zoom)
     UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS
9    CITY, KANSAS
     Legal Department
10   701 N. 7th Street, Suite 961
     Kansas City, Kansas  66101
11   913.573.5060
     jbain@wycokck.org
12
   FOR THE DEFENDANT ROGER GOLUBSKI:
13
     Mr. Morgan L. Roach
14   Mr. Nicholas Ruble (Appearing via Zoom)
     Mr. Jeffrey S. Kratofil (Appearing via Zoom)
15   McCAULEY & ROACH, LLC
     527 W. 39th Street, Suite 200
16   Kansas City, Missouri  64111
     816.523.1700
17   morgan@mccauleyroach.com
     nick@mccauleyroach.com
18   jeff@mccauleyroach.com
19  FOR THE DEFENDANTS THE ESTATE OF DETECTIVE JAMES
    MICHAEL KRSTOLICH, DETECTIVE DENNIS WARE, OFFICER
20  JAMES L. BROWN, THE ESTATE OF LIEUTENANT DENNIS
    OTTO BARBER, DETECTIVE CLYDE BLOOD, DETECTIVE
21  W.K. SMITH, and ESTATE OF LIEUTENANT STEVE CULP:
22   Ms. Elizabeth Evers Guerra
     SANDERS WARREN RUSSELL & SCHEER, LLP
23   40 Corporate Woods, Suite 1250
     9401 Indian Creek Parkway
24   Overland Park, Kansas  66210
     913.234.6100
25   e.evers@swrsllp.com

Page 4

1    A P P E A R A N C E S (Continued)
2  ALSO PRESENT:
3     Lamonte McIntyre (Appearing via Zoom)
      Rose McIntyre (Appearing via Zoom)
4
5  VIDEOGRAPHER:
6     Mr. Rick Deasley
      Veritext
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1         I N D E X
2  WITNESS:                          PAGE:
3     Roger Golubski
4  EXAMINATION BY MS. Freudenberger        6
5
   CONFIDENTIAL PORTIONS OF TRANSCRIPT:
6
     Page 14, Line 9      Page 37, Line 14
7
8
9         E X H I B I T S
10  NO.:      DESCRIPTION:              PAGE:
11  Exhibit 4    Roger Golubski's Answer to
                 Plaintiffs' Complaint       9
12
     Exhibit 5    Police file              57
13
     Exhibit 6    Composite sketch        102
14
     Exhibit 7    Roger Golubski trial testimony  131
15
     Exhibit 8    James Krstolich trial testimony 132
16
     Exhibit 9    Screenshot photo of crime scene
17              video                184
18
19
20  Reporter's Note:  Original Exhibits returned to
    Michael Abrams.  Copies attached to copies of
21  transcript.
22
23
24
25

2 (Pages 2 - 5)

Page 6

1     THE VIDEOGRAPHER: Today is
2 Thursday, November 19, 2020. We will go on the
3 record at 9:36 a.m. We are here to take the
4 deposition of Roger Golubski in case number
5 2:18-cv-02545-KHV-KGG, in the U.S. District Court
6 for the District of Kansas. Appearances will
7 appear on the stenographic record. Will the
8 court reporter please swear the witness.
9     ROGER GOLUBSKI,
10 a Defendant, being first duly sworn, testified
11 under oath as follows:
12     MS. EVERS GUERRA: Emma, just real
13 quick before we get started. I just wanted to
14 place on the record again our agreement that an
15 objection for one is an objection all.
16     MS. FREUDENBERGER: Yes, agreed.
17     MS. EVERS GUERRA: Thank you.
18     EXAMINATION
19 BY MS. FREUDENBERGER:
20   Q.  Detective, my name is Emma
21 Freudenberger, I'm one of the lawyers
22 representing the plaintiffs in this case, Lamonte
23 McIntyre and Rosie McIntyre. Could you state
24 your full name for the record, please, sir?
25   A.  Roger Golubski.

Page 7

1   Q.  Redacted Pursuant to
2   A.  Protective Order
3   Q.  What is your height and weight, please,
4 sir?
5   A.  5'9", 250.
6   Q.  Detective Golubski, have you ever had
7 your deposition taken before in a civil case?
8   A.  Not that I recall.
9   Q.  You were just administered an oath,
10 correct?
11   A.  Yes, ma'am.
12   Q.  And you understand the oath you just
13 took is the same oath that you would take if you
14 were testifying in a criminal court, correct?
15   A.  Correct.
16   Q.  And you have testified in criminal court
17 hundreds of times over the course of your career,
18 correct?
19   A.  Correct.
20   Q.  All right. In other words, you
21 understand you are under a legal obligation to
22 tell the truth in this proceeding here today,
23 right?
24   A.  Correct.
25   Q.  Okay. And you are represented by

Page 8

1 counsel here today, correct?
2   A.  Yes, ma'am.
3   Q.  Now, I understand, Detective, that in
4 consultation with counsel you have decided to
5 invoke your Fifth Amendment Rights against
6 self-incrimination at this deposition here today,
7 correct?
8   A.  Yes, ma'am.
9   Q.  All right. That's fine, of course.
10 Before we get into any questions about the case
11 that you may choose to invoke on, I'm going to
12 ask you some background questions, including some
13 questions about what has transpired in the civil
14 case so far. Okay?
15     MR. ABRAMS: Emma, you broke up at
16 the end of your last sentence.
17     MS. FREUDENBERGER: Okay.
18     MR. ABRAMS: Emma, you are going to
19 need to repeat the end of that last sentence.
20   Q.  (By Ms. Freudenberger) Sure. Sir,
21 before we get into questions about this case, I'm
22 going to start by asking you some background
23 questions. All right? Let's start with some
24 questions about what has happened in this civil
25 case thus far. You understand that you are a

Page 9

1 defendant in a civil action brought by plaintiffs
2 Lamonte McIntyre and Rosie McIntyre, correct?
3   A.  Yes.
4   Q.  And back in 2019 you were served with a
5 copy of the Complaint in this case, right?
6   A.  Yes.
7   Q.  And I assume you read that Complaint
8 carefully?
9   A.  Yes.
10   Q.  You filed an Answer, a legal document
11 answering the allegations in that Complaint,
12 right?
13   A.  Yes, ma'am.
14   Q.  All right. Let's go ahead and mark that
15 document. Mike, this should be labeled Exhibit O
16 but I'm going to mark it differently.
17     MR. ABRAMS: We are going to mark
18 it as 4.
19     (Exhibit 4 was marked.)
20     MS. FREUDENBERGER: Let me know
21 when the witness has the document in front of
22 him, please.
23     MR. ABRAMS: Emma, the witness has
24 the document.
25     MS. FREUDENBERGER: Great.

Page 10

1   Q.  (By Ms. Freudenberger)  All right.
2  Detective, please take a look at the document
3  that has been marked Exhibit 4 in front of you.
4  Is this the Answer filed on your behalf in this
5  civil case?
6      A.  I would have to peruse the whole
7  document just to answer it correctly.
8      Q.  You can do that.  Just take a look and
9  let me know if you recognize it as the Answer
10 filed on your behalf in this case.
11         MR. ABRAMS:  Emma, do you want to
12 go off the record so it doesn't count against
13 deposition time?
14         MS. FREUDENBERGER:  Good idea.
15 Unless the Detective has seen enough to answer
16 the question.
17     A.  On page 3 number 11 there is a typo as
18 far as name goes.
19     Q.  (By Ms. Freudenberger)  Sir, my question
20 is just whether this is the Answer filed on your
21 behalf in this civil case?  Can you answer the
22 question or do you need more time?  It is okay if
23 you do.
24     A.  Since there is an error in here, I want
25 to make sure there is no more errors in the

Page 11

1  document, if that's okay with you.
2      Q.  That's not my question.
3      A.  Do you just want me to peruse the first
4  couple of pages or peruse the whole document or
5  testify to the first two pages?
6      Q.  I just need you to tell me whether this
7  is this document, is the Answer filed on your
8  behalf in this civil case.  I will represent to
9  you we printed it off the docket.
10     A.  That's fine.  I'm reviewing it at this
11 time.
12     Q.  All right.  So let's go off the record.
13 If you would be more comfortable reviewing the
14 whole document before you testify, that's fine,
15 we will just go off the record.
16     A.  If your answer is there are no more
17 errors in this document, then I'm okay with that.
18 You are telling me there this is error-free and
19 no mistakes, is that what I'm hearing you say?
20     Q.  No.  I'm just asking you --
21     A.  You just told me it is.
22         MR. ROACH:  Emma, we can go off the
23 record.  I think I can help speed this along.
24         MS. FREUDENBERGER:  Great.  Why
25 don't we do that.

Page 12

1         THE VIDEOGRAPHER:  We are going off
2  the record at 9:54 a.m.
3         (Short recess was taken.)
4         THE VIDEOGRAPHER:  We are on the
5  record at 9:57 a.m.
6      Q.  (By Ms. Freudenberger)  Detective, you
7  just took a break to consult with your lawyer,
8  right?
9      A.  Correct.
10     Q.  Are you able to tell me whether the
11 document in front of you marked Exhibit 4 is the
12 Answer filed on your behalf in this civil case?
13     A.  It is.
14     Q.  Turn to paragraph 39, please, and read
15 that to yourself.  Let me know when you are done.
16     A.  I'm done.
17     Q.  Now turn to paragraph 50, please, and
18 read that to yourself.
19     A.  Yes, ma'am.
20     Q.  Is paragraph 50 accurate?
21         MR. ROACH:  Object to form.
22 Instruct the witness to invoke.
23     Q.  (By Ms. Freudenberger)  Is paragraph 50
24 of your Answer accurate, Detective?
25         MR. ROACH:  Same objection and

Page 13

1  instruction.
2      A.  On the advice of my attorney, I invoke
3  my Fifth Amendment Constitutional Rights.
4      Q.  (By Ms. Freudenberger)  Sir, what's your
5  address?
6      A.  Edwardsville, Kansas.
7      Q.  Street address?
8         MR. ROACH:  Emma, can we get by
9  with just the city?
10        MS. FREUDENBERGER:  What is your
11 concern?
12        MR. ROACH:  Detective, do you have
13 a concern with providing your address on the
14 record?  The concern is confidentiality.
15        MS. FREUDENBERGER:  Okay.
16    Q.  (By Ms. Freudenberger)  What county do
17 you live in, sir?
18    A.  Wyandotte County.
19    Q.  How long have you lived in Wyandotte
20 County?
21    A.  My entire life.
22    Q.  Redacted Pursuant to
23        Protective Order
24
25

Page 14

1
2  A.  *Redacted Pursuant to*
3  Q.  *Protective Order*
4
5
6
7
8  A.
9  Q.
10
11
12
13
14
15
16
17
18  Q.
19
20
21  A.
22  Q.
23
24
25

Page 15

1
2
3  A.  *Redacted Pursuant to*
4       *Protective Order*
5  Q.
6  A.
7  Q.
8  A.
9
10  Q.
11  A.
12  Q.
13  A.
14  Q.  You are represented today by Morgan
15  Roach of McCauley & Roach?
16  A.  Yes, ma'am.
17  Q.  Sir, you are you currently represented
18  by any other lawyers for any other purpose at all
19  at this point in time?
20  A.  At this time, no.
21  Q.  You are not currently represented by any
22  criminal defense lawyers?
23  A.  At this time, no.
24  Q.  Are you currently working?
25  A.  No.

Page 16

1  Q.  What is the last job you held?
2      MR. ROACH:  Answer only the
3  question.
4  A.  For the City of Edwardsville.
5  Q.  (By Ms. Freudenberger)  What position
6  did you hold?
7      MR. ROACH:  You can answer.
8  A.  Law enforcement.
9  Q.  (By Ms. Freudenberger)  Please be more
10 specific.
11  A.  Detective.
12  Q.  Okay.  How long were you a Detective
13 with the Edwardsville Police Department?
14  A.  I'm not sure.  I think maybe five years,
15 maybe six.
16  Q.  When did you leave that position?
17      MR. ROACH:  You can answer.
18  A.  2016.
19  Q.  (By Ms. Freudenberger)  Any work
20 between -- withdrawn.  Any other formal
21 employment between your retirement from
22 Edwardsville Police Department in 2016 and today?
23  A.  I may have had a seasonal job for the
24 holidays at the Post Office.
25  Q.  Okay.  I notice, Detective, that it took

Page 17

1 you a few minutes to answer, took you a little
2 time to answer that question.  Do you have any
3 memory problems, to your knowledge?
4  A.  In regards to?
5  Q.  General memory problems?
6  A.  It is not as good as when I was in my
7 twenties.
8  Q.  Well, that's true for all of us, sir.
9 Has anybody indicated to you in any way they have
10 noticed problems with your memory in the past
11 five years?
12  A.  Not to sound argumentative, but what
13 type of people are you referring to?  People in
14 general, or professionals or?  Any particular
15 type you are referring to?  So I will answer you
16 correctly.
17  Q.  Nope.
18  A.  No, probably other than family, maybe.
19  Q.  Excuse me?
20  A.  I said possibly family.
21  Q.  All right.  But to your knowledge as you
22 sit here today you don't have any memory problems
23 other than the fact that when you were a much
24 younger man your memory was better, correct?
25  A.  That I recall at this time, yes.

5 (Pages 14 - 17)

Page 18

1  Q.  Other than possibly seasonal work at the
2  Post Office you have not held any other formal
3  employment positions since you retired from the
4  Edwardsville Police Department in 2016, is that
5  correct?
6  A.  I don't want to answer you incorrectly,
7  but not that I recall at this time, so.  If there
8  was something, then I do have a memory problem,
9  but something doesn't jump out at me at the
10 moment.
11 Q.  I'm asking you if you have had any jobs
12 in the past four years, sir.
13 A.  And I just answered you, ma'am.
14 Q.  Okay.  And the answer is no, right?
15 A.  That wasn't my answer, but that's the
16 answer you gave for me, so.
17 Q.  All right, Detective.  What year did you
18 retire from the Kansas City, Kansas Police
19 Department?
20 A.  2010.
21 Q.  Was your next job working at the
22 Edwardsville Police Department?
23         MR. ROACH:  Answer only the
24 question.
25 A.  Yes.

Page 19

1  Q.  (By Ms. Freudenberger)  Any other
2  employment you remember at all besides your
3  position with the Edwardsville Police Department,
4  your position with the Kansas City, Kansas Police
5  Department, and seasonal work at the Post Office
6  at any point in time in the last 30 years?
7  A.  Security job.
8  Q.  Where was that?
9  A.  Walgreens.
10 Q.  When did you do that work?
11 A.  During that time period.  I don't want
12 to answer incorrectly, so I don't remember the
13 exact dates.
14 Q.  Sure.  Anything other than security at
15 Walgreens, the Post Office, and the two police
16 departments?
17         MR. ROACH:  You can answer to the
18 best of your memory.
19 A.  Not that I recall at this time.
20 Q.  (By Ms. Freudenberger)  Okay.  What
21 about the Providence Medical Center?
22 A.  Okay.  Thank you for correcting me.  You
23 are right.
24 Q.  Okay.  When, approximately, I don't need
25 exact dates, when approximately did you work at

Page 20

1  the Providence Medical Center?
2         MR. ROACH:  You can answer to the
3  best you can.
4  Q.  (By Ms. Freudenberger)  To the best of
5  your recollection, sir.
6  A.  Maybe 2017, 2018.
7  Q.  So in the last couple of years, more or
8  less?
9  A.  That was actually a part-time job, yes.
10 Q.  Okay.  So when I asked you the question
11 about your employment, did you understand me only
12 to be referring to full-time employment?
13 A.  That's what I thought.  But if you meant
14 that, then that's my error then.
15 Q.  I see.  So that's why you didn't tell me
16 that you had worked at the Providence Medical
17 Center, you thought I was only about asking about
18 full-time positions, right?
19 A.  Yes, ma'am.
20 Q.  Was your job at Walgreens a full-time
21 position?
22 A.  It was -- I'm not sure if you consider
23 it a full-time or not.  It was steady employment
24 where you worked one day a week or four hours a
25 week.

Page 21

1  Q.  Okay.  So not full-time, right?
2  A.  Not 40 hours, correct.
3  Q.  Okay.  And what about your seasonal job
4  at the Post Office, was that full-time work?
5  A.  That was a seasonal position, but it was
6  40 hours a week.
7  Q.  Okay.  I will be fully transparent with
8  you, sir.  We subpoenaed and have gotten your
9  records from your position from Providence
10 Medical Center, your employment records.  Were
11 you transferred to a full-time position shortly
12 before you were terminated from Providence
13 Medical Center?
14         MR. ROACH:  Object to the form of
15 the question.  You can answer.
16 A.  I'm sorry, could you repeat the
17 question, please?
18 Q.  (By Ms. Freudenberger)  Sure.  Your
19 records from the Providence Medical Center
20 indicate that you did hold a full-time position
21 there for approximately a month.  Is that
22 incorrect?
23         MR. ROACH:  Object to the form.
24 You can answer, Roger.
25 A.  I think that was just -- I'm not sure

Veritext Legal Solutions
www.veritext.com                                          888-391-3376

| Page 22 | Page 24 |
|---|---|
| 1 that was even a month for full-time. As a matter<br>2 of fact, I don't even know if that was two weeks<br>3 for a full-time position.<br>4   Q. (By Ms. Freudenberger) Okay. But you<br>5 did hold a full-time position at the Providence<br>6 Medical Center at some point for some period of<br>7 time, correct?<br>8   A. If you consider two weeks.<br>9   Q. Okay. You were terminated from your job<br>10 at Providence, correct? You were fired?<br>11   A. Correct.<br>12   Q. For what? Tell me everything about the<br>13 circumstances of your termination from the<br>14 Providence Medical Center.<br>15        MR. ROACH: I advise the witness<br>16 not to answer.<br>17   A. With all due respect, on advice of my<br>18 attorney I invoke my Fifth Amendment<br>19 Constitutional Rights.<br>20   Q. Okay. Sir, you understand that if I ask<br>21 you a question and you remember the answer but<br>22 you tell me you don't, that's a lie, do you<br>23 understand that?<br>24   A. If I don't remember, I don't remember.<br>25 If you refresh my memory, then I admit my error | 1 to make me say I lied, when I didn't. So I'm<br>2 agreeing with you; but you are saying I'm not<br>3 agreeing with you. So I disagree with you<br>4 calling me a liar, so.<br>5   Q. Okay.<br>6   A. When you are kind enough to bring it to<br>7 my attention and you have respect for age and a<br>8 memory lapse, then I say yes, ma'am, thank you, I<br>9 appreciate what you did, I'm sorry I didn't<br>10 remember that. Because I'm sure you don't<br>11 remember everything in your life as I don't<br>12 remember everything in my life. I'm sure you<br>13 don't remember every legal job that you had. So<br>14 with all due respect, I'm not trying to be<br>15 confrontational, argumentative, you know, I'm<br>16 doing my best. So if I don't remember, I just<br>17 didn't remember. I wasn't trying to be -- I know<br>18 you have all of these things in front of you. It<br>19 would be behoove me to lie, because I know you<br>20 have it there.<br>21        MR. ROACH: Roger, wait for a<br>22 question.<br>23   Q. (By Ms. Freudenberger) How old are you?<br>24   A. Too old. 67.<br>25   Q. Let me ask you again. Any other work |

| Page 23 | Page 25 |
|---|---|
| 1 and say you are correct. So it could be an error<br>2 of omission, as opposed to a lie. Whatever label<br>3 you want to put on that. Once you bring it to my<br>4 attention and I still deny it, then I say that's<br>5 a lie. If you bring it to my attention, because<br>6 of my age and my medication and then I remember<br>7 then and I agree with you, I would call that<br>8 cooperation.<br>9   Q. Sir --<br>10   A. You asked for my answer. Thank you.<br>11   Q. Sir, my question is simple. You<br>12 understand --<br>13   A. So is my answer.<br>14        MR. ROACH: Let her finish.<br>15   Q. (By Ms. Freudenberger) Detective.<br>16   A. Yes, ma'am.<br>17   Q. You understand from your years and years<br>18 of testifying in criminal court that if you say<br>19 you don't remember something when you actually<br>20 do, that's a lie, right? You understand that?<br>21   A. If I do remember it, that would be<br>22 correct.<br>23        MR. ROACH: Object to the form.<br>24 You can answer.<br>25   A. But with all due respect, you are trying | 1 you remember doing besides your work with the<br>2 Kansas City, Kansas Police Department,<br>3 Edwardsville, Walgreens, the Post Office, and now<br>4 Providence?<br>5        MR. ROACH: You can answer.<br>6   A. Not that I recall.<br>7   Q. (By Ms. Freudenberger) Ever worked at<br>8 any restaurants?<br>9   A. It wasn't a restaurant per -- well, you<br>10 are referring to Dave & Buster's, so yes.<br>11   Q. I am indeed. When did you work at Dave<br>12 & Buster's?<br>13        MR. ROACH: You can answer to your<br>14 memory.<br>15   A. I don't remember the exact dates. I<br>16 know I started when the business first opened up.<br>17 I'm not sure what the end date was. I know it is<br>18 when they did away with the Reserve Unit, so<br>19 whenever that ended I no longer had any<br>20 jurisdiction there, so.<br>21   Q. (By Ms. Freudenberger) Can you give me<br>22 an approximate year or no?<br>23   A. No.<br>24   Q. Were you accused of any misconduct at<br>25 any point in time in connection with your |

Page 26

1 employment with Dave & Buster's?
2          MR. ROACH:  Advise the witness not
3 to answer.  I said not answer.
4     A.  On the advice of my attorney, I invoke
5 my Fifth Amendment Constitutional Rights.
6     Q.  (By Ms. Freudenberger)  Okay.  And
7 Detective Golubski, when I asked you a few
8 minutes ago about places you worked, you
9 intentionally omitted Providence Medical Center
10 and Dave & Buster's from the places, the list of
11 places you gave me, correct?
12         MR. ROACH:  Object to the form.
13    A.  Incorrect.
14         MR. ROACH:  Slow down a little bit.
15 Object to the form.
16    Q.  (By Ms. Freudenberger)  You can answer
17 the question.
18    A.  I did.  I didn't intentionally.  I just
19 didn't remember them.
20    Q.  Okay.  You just forgot to tell me the
21 two places where you have been accused of
22 misconduct similar to the allegations we are
23 making in this lawsuit, right?
24         MR. ROACH:  Object to the form.
25 Instruct the witness not to answer.

Page 27

1     A.  On the advice of my attorney, I invoke
2 my Fifth Amendment Constitutional Rights.
3     Q.  (By Ms. Freudenberger)  In fact, you
4 lied, sir, because you were hoping I didn't know
5 what happened at the Providence Medical Center
6 and Dave & Buster's, correct?
7          MS. EVERS GUERRA:  Object to form.
8          MR. ROACH:  Object to form.
9 Instruct the witness not to answer.  Roger, you
10 have to --
11    A.  On advice of my attorney, I invoke my
12 Fifth Amendment Constitutional Rights.
13    Q.  (By Ms. Freudenberger)  When you do
14 something wrong and you get caught, Detective
15 Golubski, you lie about it, correct?
16         MS. EVERS GUERRA:  Object to the
17 form.
18         MR. ROACH:  Object to the form.
19 Instruct the witness not to answer.  You still
20 have to assert, Roger.
21    A.  On the advice of my attorney, I invoke
22 my Fifth Amendment Constitutional Rights.
23    Q.  (By Ms. Freudenberger)  That is your
24 practice, correct?
25         MR. ROACH:  Same objection.  Same

Page 28

1 instruction.  You have to say it out loud.
2     Q.  (By Ms. Freudenberger)  You have to say
3 the words.
4     A.  On advice of my attorney, I invoke my
5 Fifth Amendment Constitutional Rights.
6     Q.  Tell me every one of your sources of
7 income at this point in time.
8          MR. ROACH:  Instruct the witness
9 not to answer.
10    A.  On the advice of my attorney, I invoke
11 my Constitutional Rights.
12         MR. FREUDENBERGER:  I think,
13 Morgan, it is your call, but you may want to have
14 him actually say Fifth Amendment.
15    Q.  (By Ms. Freudenberger)  Detective
16 Golubski, tell me every source of income you have
17 had of any type in the past five years.
18         MR. ROACH:  Same thing, Roger.
19    A.  On the advice of my attorney, I invoke
20 my Fifth Amendment Constitutional Rights.
21    Q.  (By Ms. Freudenberger)  Tell me every
22 source of income you had during your tenure with
23 the Kansas City, Kansas Police Department.
24         MR. ROACH:  Same instructions.
25    A.  On the advice of my attorney, I invoke

Page 29

1 my Fifth Amendment Constitutional Rights.
2     Q.  Did you voluntarily retire from the
3 Kansas City, Kansas Police Department or were you
4 fired?
5          MR. ROACH:  Object to form.  But
6 you can answer.
7     A.  Could you repeat the question?
8     Q.  (By Ms. Freudenberger)  Sure.  Was your
9 retirement from the Kansas City, Kansas Police
10 Department voluntary, or were you asked to leave?
11    A.  Voluntary.
12    Q.  Are you married, Detective Golubski?
13    A.  No, ma'am.
14    Q.  Have you ever been married in the past?
15         MR. ROACH:  You can answer.
16    A.  Yes.
17    Q.  (By Ms. Freudenberger)  How many times?
18    A.  Three.
19    Q.  Tell me in whatever order you would
20 like, the names of the women you have been
21 married to in the past.
22         MR. ROACH:  You can answer.
23    A.  A lady by the name of Patty, Cindy,
24 Donna.  If you count annulments, then it would be
25 four.  Ethel.

Page 30

1  Q. (By Ms. Freudenberger) What is Ethel
2 last name?
3  A. She has so many, I don't know what it is
4 now.
5  Q. Is one of them Abbott?
6  A. I don't know.
7  Q. Do you know what a common law marriage
8 is?
9     MR. ROACH: Object to the form of
10 the question. You can answer.
11  A. I think it varies from state to state.
12  Q. (By Ms. Freudenberger) Okay. It is a
13 term you have heard before, though, right?
14  A. Yes.
15  Q. Have you ever held anyone out as your
16 common law wife?
17  A. Can you be more specific, please?
18  Q. Sure. Have you ever considered any
19 woman you know, or man, to be your common law
20 wife?
21  A. Could you give me a name and be
22 specific, please?
23  Q. No, sir. I'm asking you. Have you ever
24 been in a relationship with someone you
25 considered your common law wife?

Page 31

1     MR. ROACH: Object to the form.
2  A. Probably a close relationship. I'm not
3 sure I ever referred to them as my wife.
4  Q. (By Ms. Freudenberger) Who are you
5 thinking of?
6  A. Who are you referring to?
7  Q. I'm asking you, sir.
8  A. I'm asking you. I don't know.
9  Q. All right.
10  A. I'm not trying to be argumentative. I
11 apologize if it comes across as such, but.
12  Q. Don't worry about it. Have you ever
13 represented to anyone that you were married to a
14 woman named Linda Malkins?
15  A. Okay. Please don't get upset. Could
16 you repeat that please?
17  Q. Sure. You know a woman named Linda
18 Malkins?
19  A. Right.
20  Q. You know who I'm talking about, right?
21  A. Yes, ma'am.
22  Q. Have you ever represented to anybody
23 that you were married to her?
24     MR. ROACH: Instruct the witness
25 not to answer.

Page 32

1  A. On the advice of my attorney, I invoke
2 my Fifth Amendment Constitutional Rights.
3  Q. (By Ms. Freudenberger) Did you have a
4 sexual relationship with Linda Malkins at any
5 point in time?
6     MR. ROACH: Same instruction.
7  A. On the advice of my attorney, I invoke
8 my Fifth Amendment Constitutional Rights.
9  Q. (By Ms. Freudenberger) Do you know, as
10 you sit here today, whether Linda Malkins has
11 ever represented that she was married to you?
12     MR. ROACH: Object to form.
13 Instruct the witness not to answer.
14  A. On the advice of my attorney, I invoke
15 my Fifth Amendment Constitutional Rights.
16  Q. (By Ms. Freudenberger) Do you know who
17 I'm referring to when I say Lorraine Stewart?
18  A. Yes.
19  Q. Is Lorraine Stewart somebody you have
20 had a sexual relationship with?
21     MR. ROACH: Instruct the witness
22 not to answer.
23  A. On the advice of my attorney, I invoke
24 my Fifth Amendment Constitutional Rights.
25  Q. (By Ms. Freudenberger) Have you ever

Page 33

1 represented to anybody that you were married to
2 Lorraine Stewart?
3     MR. ROACH: Same instruction.
4  A. On the advice of my attorney, I invoke
5 my Fifth Amendment Constitutional Rights.
6  Q. (By Ms. Freudenberger) Do you know if
7 Lorraine Stewart has ever represented to anybody
8 at all that she was married to you?
9     MR. ROACH: Object to form. Same
10 instruction.
11  A. On the advice of my attorney, I invoke
12 my Fifth Amendment Constitutional Rights.
13  Q. (By Ms. Freudenberger) Detective
14 Golubski, when you were employed by the Kansas
15 City, Kansas Police Department, did you ever
16 receive income from selling narcotics?
17     MR. ROACH: Object to form.
18 Instruct the witness not to answer.
19  A. On the advice of my attorney, I invoke
20 my Fifth Amendment Constitutional Rights.
21  Q. (By Ms. Freudenberger) While employed
22 by the Kansas City, Kansas Police Department did
23 you ever receive income from facilitating a sale
24 of narcotics?
25     MR. ROACH: Same instruction.

Page 34

```
 1    A.  On the advice of my attorney, I invoke
 2  my Fifth Amendment Constitutional Rights.
 3    Q.  (By Ms. Freudenberger)  While employed
 4  by the Kansas City, Kansas Police Department, did
 5  you ever receive income from facilitating
 6  prostitution?
 7        MR. ROACH:  Same instructions.
 8    A.  On the advice of my attorney, I invoke
 9  my Fifth Amendment Constitutional Rights.
10    Q.  (By Ms. Freudenberger)  While employed
11  by the Kansas City, Kansas Police Department, did
12  you ever pay women working as sex workers --
13  withdrawn.
14        While employed by the Kansas City,
15  Kansas Police Department, did you ever pay
16  prostitutes for sex yourself?
17        MR. ROACH:  Same instruction.
18    A.  On the advice of my attorney, I invoke
19  my Fifth Amendment Constitutional Rights.
20    Q.  (By Ms. Freudenberger)  While employed
21  by the Kansas City, Kansas Police Department, did
22  you ever hook up any of your fellow police
23  officers with prostitutes so that they could pay
24  for sex?
25        MR. ROACH:  Object to the form.
```

Page 35

```
 1  Same instruction.
 2    A.  On the advice of my attorney, I invoke
 3  my Fifth Amendment Constitutional Rights.
 4    Q.  (By Ms. Freudenberger)  Just to be
 5  specific about what I mean when I say pay.  While
 6  you were employed by the Kansas City, Kansas
 7  Police Department, did you ever fix charges for
 8  women -- withdrawn.
 9        While employed by the Kansas City,
10  Kansas Police Department did you ever use your
11  position as a Detective to ensure that women were
12  getting favorable treatment on charges in
13  exchange for having sex with you?
14        MR. ROACH:  Object to the form.
15  Same instruction.
16    A.  On the advice of my attorney, I invoke
17  my Fifth Amendment Constitutional Rights.
18    Q.  (By Ms. Freudenberger)  And I want to
19  make sure your understand what I'm asking.  While
20  you were employed by the Kansas City, Kansas
21  Police Department did you ever get women's
22  arrests dismissed in exchange for having sex with
23  you?
24        MR. ROACH:  Same instruction.
25    A.  On the advice of my attorney, I invoke
```

Page 36

```
 1  my Fifth Amendment Constitutional Rights.
 2    Q.  (By Ms. Freudenberger)  Okay.  And to be
 3  clear, sir, when I say sex, I want to make clear
 4  that that is referring to blow jobs too.  Okay?
 5  You understand that?
 6    A.  Fellatio.
 7    Q.  Sure.  Is that the term you are more
 8  comfortable with?  Would you rather I said
 9  fellatio than blow job for your comfort?
10    A.  I thought we were keeping it on legal
11  terms.  But so on advice of my attorney, I invoke
12  my Fifth Amendment Constitutional Rights.
13    Q.  Okay.  But do you understand, sir, what
14  the term blow job refers to?
15    A.  What is your definition?
16        MR. ROACH:  Roger, you can answer
17  the question.
18    A.  Could you repeat it, please?
19    Q.  (By Ms. Freudenberger)  Sure.  Do you
20  understand what I mean when I say blow job?
21    A.  I know what it means to me.  I'm not
22  sure what it means to you.
23    Q.  All right.  Tell me what it means to
24  you.
25    A.  Oral sex.
```

Page 37

```
 1    Q.  Okay.  While you were employed by the
 2  Kansas City, Kansas Police Department, did you
 3  ever obtain benefits for women's male relatives
 4  in exchange for women having sex with you?
 5        MR. ROACH:  Instruct the witness
 6  not to answer.  Object to form as well.  You have
 7  to say it.  You have to assert it out loud,
 8  Roger.
 9    A.  On the advice of my attorney, I invoke
10  my Fifth Amendment Constitutional Rights.
11    Q.  (By Ms. Freudenberger)  Sir, how many
12  children do you have?
13    A.  One.
14    Q.  Who is that?
15        MR. ROACH:  You can answer that.
16    A.  Who is it?
17        MR. ROACH:  We will designate it
18  confidential under the protective order.
19        MS. FREUDENBERGER:  No problem.
20    A.  I have a son.
21    Q.  Redacted Pursuant to
22        Protective Order
23    A.
24    Q.
25    A.
```

10 (Pages 34 - 37)

Page 38

1  Q.  Redacted Pursuant to
2  A.  Protective Order
3  Q.
4  A.
5
6
7  Q.  I appreciate you being precise.  If at
8  any point in time during this deposition whether
9  you are invoking or not -- I can't hear what's
10 going on in the room.
11      MR. ABRAMS:  Let me close the door.
12      MR. ROACH:  It is in the
13 background.
14  Q.  (By Ms. Freudenberger)  Sir, this is
15 important.  If at any point in time today you
16 don't understand one of my questions or you think
17 you might not understand one of my questions,
18 please let me know and I'm happy to rephrase it.
19 Okay?
20  A.  I appreciate that, ma'am.  I want to
21 answer you the best I can, so I want to cooperate
22 with you the best I can.
23  Q.  I appreciate it.  I appreciate that.  If
24 you do answer one of my questions, I'm going to
25 assume that you understood it.  Okay?

Page 39

1  A.  Yes, ma'am.
2  Q.  Redacted Pursuant to
3      Protective Order
4
5      MR. ROACH:  Instruct the witness
6  not to answer.
7  A.  On the advice of my attorney, I invoke
8  my Fifth Amendment Constitutional Rights.
9  Q.  (By Ms. Freudenberger)  How many
10 biological children have you fathered?
11     MR. ROACH:  Same instruction.
12  A.  On the advice of my attorney, I invoke
13 my Fifth Amendment Constitutional Rights.
14     MS. FREUDENBERGER:  All right.
15 Let's take a short break, maybe five, 10 minutes.
16 Can we go off the record.
17     THE VIDEOGRAPHER:  We are going off
18 the record at 10:38 a.m.
19     (Short recess was taken.)
20     THE VIDEOGRAPHER:  We are back on
21 the record at 10:52 a.m.
22  Q.  Redacted Pursuant to
23      Protective Order
24
25  A.

Page 40

1  Q.  Redacted Pursuant to
2      Protective Order
3
4  A.
5  Q.
6
7
8
9  A.
10
11  Q.  (By Ms. Freudenberger)  Do you have any
12 biological children who have lived in public
13 housing while they were minors at any point in
14 time?
15     MR. ROACH:  Instruct the witness
16 not to answer.
17  A.  On the advice of my attorney, I invoke
18 my Fifth Amendment Constitutional Rights.
19  Q.  (By Ms. Freudenberger)  Do you have any
20 biological children who lived in public housing
21 as minors?
22     MR. ROACH:  Same instruction.
23  A.  On the advice of my attorney, I invoke
24 my Fifth Amendment Constitutional Rights.
25  Q.  Redacted Pursuant to Protective Order

Page 41

1  Redacted Pursuant to
2  Protective Order
3
4      MR. ROACH:  Object to form.
5  Instruct the witness not to answer.
6  A.  On the advice of my attorney, I invoke
7  my Fifth Amendment Constitutional Rights.
8  Q.  (By Ms. Freudenberger)  Do you have a
9  daughter name Niasha Collier?
10     MR. ROACH:  Instruct the witness
11 not to answer.
12  A.  On the advice of my attorney, I invoke
13 my Fifth Amendment Constitutional Rights.
14  Q.  (By Ms. Freudenberger)  Have you ever
15 provided financial support to Niasha Collier?
16     MR. ROACH:  Same instruction.
17  A.  On the advice of my attorney, I invoke
18 my Fifth Amendment Constitutional Rights.
19  Q.  (By Ms. Freudenberger)  Detective, since
20 you turned 18 have you ever had sex with a minor?
21     MR. ROACH:  Instruct the witness
22 not to answer.
23  A.  On the advice of my attorney, I invoke
24 my Fifth Amendment Constitutional Rights.
25  Q.  (By Ms. Freudenberger)  While you were a

11 (Pages 38 - 41)