## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LAMONTE MCINTYRE, et al.,    )
    )
          Plaintiffs,    )
    vs.    )    Case No. 18-2545-KHV-KGG
    )
UNIFIED GOVERNMENT OF    )
WYANDOTTE COUNTY AND    )
KANSAS CITY, KS, et al.,    )
    )
          Defendants.    )
_____)

## MEMORANDUM & ORDER GRANTING IN PART
## MOTION TO COMPEL

Now before the Court is Plaintiffs' "Motion to Compel Production of Documents and Answers from Defendant Roger Golubski." (Doc. 428.) Having reviewed the submissions of the parties, Plaintiffs' motion is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

## BACKGROUND

**I.      General Background.**

Plaintiffs bring civil rights claims against Defendants Unified Government of Wyandotte County and Kansas City, Kansas, *et al*., resulting from Plaintiff Lamonte McIntyre allegedly being framed for a double homicide that he did not commit. (Doc. 309, at 2; *see generally* Doc. 74.) Plaintiffs allege that Defendant Unified Government is "responsible for policies, practices and customs that were

1

substantially certain to result in constitutional violations, including the deliberate targeting, prosecution, and conviction of innocent persons … ." (*Id.*)

The background of, and allegations in, this case were summarized in the District Court's Order granting in part and denying in part the various Motions to Dismiss filed by Defendants. (Doc. 190, at 2-10.) That summary of factual allegations is incorporated herein by reference.

For additional context relating to Plaintiffs' motion, the following allegations are specifically relevant. Defendant Golubski (hereinafter "Defendant") allegedly forced Plaintiff Rose McIntyre to submit to sexual acts by threatening to arrest her and her then-boyfriend if she refused. (Doc. 1, at 2.) Defendant is alleged to have harassed Plaintiff for weeks, calling her two or three times a day. (*Id.*) When she changed her phone number in an attempt to stop communication with him, he, along with the help of other Defendants, allegedly framed her son, Lamonte, for the double murder of Donald Ewing and Doniel Quinn in April 1994. (Doc. 190, at 4.)

Defendant and his partner, James Krstolich, are alleged to have used coercion to pressure Ruby Mitchell into identifying Plaintiff Lamonte McIntyre in a photographic lineup. (*Id.*, at 3.) These same tactics were allegedly used to pressure Mitchell into giving a false statement identifying Plaintiff Lamonte McIntyre's photo. Plaintiffs allege that this is consistent with a long pattern of

conduct by Defendant – which was known to his superiors – involving the extortion of sex and favors and using threats to coerce false testimony.

## II.     Plaintiffs' Motion.

Plaintiffs served their Third Requests and Second Interrogatories to Defendant on February 18, 2021.  (Doc. 255; Docs. 428-4, 428-6.)  The document requests are identical to those Plaintiffs served on Defendant Unified Government. These document requests were the subject of a prior motion to compel filed by Plaintiffs.  (*See* Docs. 308, 309.)  The undersigned Magistrate Judge granted that motion in part.  (Doc. 365.)

The motion at issue seeks an Order compelling Defendant Golubski to respond to Interrogatories No. 1, 4, 5, 6, 9, 11, and 13 of Plaintiffs' second interrogatories.  (Doc. 428.)  Plaintiffs also seek to compel Defendant to provide responsive documents and information as to Requests Nos. 94 and 132 of Plaintiffs' third document requests, which relate to Defendant's "beneficiaries, his proceeds from illegal activity and misconduct, his harassment and stalking of women, and his finances."  (*Id.*, at 5-6.)  Plaintiffs also ask the Court to overrule what they describe as Defendant's "boilerplate objections."  (Doc. 428, at 6.)  The various discovery requests and/or categories of requested information will be discussed, in turn, below.

## <u>ANALYSIS</u>

## I.      Standards for Discovery.

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim
> or defense and proportional to the needs of the case,
> considering the importance of the issues at state in the
> action, the amount in controversy, the parties' relative
> access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.  Information within this
> scope of discovery need not be admissible in evidence to
> be discoverable.

Fed.R.Civ.P. 26(b)(1).  As such, the requested information must be nonprivileged,

relevant, and proportional to the needs of the case to be discoverable.  ***Holick v.***

***Burkhart***, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11,

2018).

Discovery requests must be relevant on their face.  ***Williams v. Board of Co.***

***Comm'rs***, 192 F.R.D. 698, 705 (D. Kan. 2000).  Relevance is to be "broadly

construed at the discovery stage of the litigation and a request for discovery should

be considered relevant if there is any possibility the information sought may be

relevant to the subject matter of the action."  ***Smith v. MCI Telecomm. Corp.***, 137

F.R.D. 25, 27 (D. Kan. 1991).

Once this low burden of relevance has been established, the legal burden

regarding the defense of a motion to compel resides with the party opposing the

discovery request.  *See Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections).  Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable."  *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

"Unless a request is overly broad, irrelevant, or unduly burdensome on its face, the party asserting the objection has the duty to support its objections."  *Funk v. Pinnacle Health Facilities XXIII, LP*, No. 17-1099-JTM-KGG, 2018 WL 6042762, at *3 (D. Kan. Nov. 19, 2918) (quoting *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003)).  Further, once the "low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."  *Waters v. Union Pac. RR. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) (citing *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections)).

## II.     Motion at Issue.

### A.     Boilerplate Objections.

Plaintiffs complain that Defendant has cut and pasted a version of the

following response, which Plaintiffs describe as "boilerplate," to all but one of the

interrogatories:

> Objection.  Golubski's _____ if any, are not relevant to
> the substantive claims or defenses in this matter and are
> not proportional to the needs of the case as such
> information would have nothing to do with the 1994
> events in question.  Further, objecting, the request
> improperly seeks information about ability to pay a
> judgment prior to a judgment being entered.  ***Pipeline***
> ***Prods., Inc. v. Madison Cos., LLC***, at *5-6 (D. Kan.
> March 22, 2019) ('discovery about a litigant's ability to
> pay a judgment is generally not permissible until a
> judgment is entered').   The request seeks overly broad
> information in scope and time range about financial
> condition or net worth as it seeks more information than
> needed.  *Id*. at *8-10 ('only records of defendants'
> present financial state are within the scope of discovery,
> and all other records are facially overbroad).  Finally,
> Defendant Golubski will not answer on Fifth Amendment
> grounds.

(Doc. 428, at 3; Doc. 428-4, at 3, 6-8, 11-13.)  Plaintiffs contend that these

objections lack any factual or legal basis.  (Doc. 428, at 3-4.)  In other words,

according to Plaintiffs, Defendant has not met his burden to support the invocation

of the Fifth Amendment and his objections, explaining how the various discovery

requests are objectionable.  (*Id*., at 7.)

Rather issue a blanket ruling as to whether or not these objections are properly supported, the Court will address the various objections in the context of the discovery requests at issue.  Analysis thus turns to the specific discovery requests.

**B.     Defendant's Invocation of the Fifth Amendment.**

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  This privilege "not only extends to answers that would in themselves support a conviction … but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a … crime."  ***Hoffman v. United States***, 341 U.S. 479, 486 (1951).

This District has recently held that it may be appropriate for a party to invoke the Fifth Amendment in a civil action to protect "against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."  ***KCI Auto Auction v. Ephrem***, No. 19-1040-EFM-GEB, 2020 WL 5503350, at *3 (D. Kan. Sept. 11, 2020) (citing ***Kastigar v. United States***, 406 U.S. 441, 444–45 (1972) (citations omitted)).  That stated, the protection does not allow a witness to refuse answering "merely because he declares that in so doing he would incriminate himself – **his say-so does not of itself establish the hazard of incrimination**."  *Id.* (emphasis

7

added) (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1972)).  Instead, the

party relying on Fifth Amendment protection "must show that a compulsory

response to 'individual questions ... will pose a substantial and real hazard of

subjecting them to criminal liability'" after which the Court evaluates "'the

incriminatory potential of questions asked.'"  *Id*. (citations omitted).

At one point, Defendant has raised his Fifth Amendment right against self-

incrimination in response to all of the discovery requests addressed in Plaintiffs'

motion.  As discussed below, however, it appears he is still relying on this

objection only in regard to the Interrogatories at issue.  Regardless, the privilege

will be discussed as applicable in the Court's analysis of the various categories of

discovery requests at issue.

### C.   Document Requests.

#### 1.   Request No. 132.

This document request asks Defendant to produce all documents pertaining

to Ethel Abbott including a list of cases in which she was involved as

> a complainant, victim or witness, including a break-in at
> her home and any incidents involving harassment or
> stalking by Roger Golubski; and

> … all documentation reflecting or referencing
> interactions or relationships the individual had with
> defendant Roger Golubski, including any directives or
> orders by KCKPD supervisors/commanders to Golubski
> to refrain from stalking or harassing the individual or

> requiring him to maintain a certain distance from the
> individual.

(Doc. 428-6, at 18.)  Defendant's second supplemental response objects that the

information sought is irrelevant and not proportional to the needs of the case "as

any such documents would have nothing to do with the 1994 events in question."

(*Id*., at 19.)  He raised a vague and ambiguous objection alleging he is "unable to

determine the scope of the documents being sought because the opening sentence

and subparagraphs are inconsistent."  (*Id*.)  He objected the request is overbroad by

seeking "all" documents pertaining to Ethel Abbott.  (*Id*.)

Defendant initially refused to produce responsive documents on Fifth

Amendment grounds and indicated he would supplement his response "as soon as

practicable" because he was uncertain "whether he is withholding responsive

materials based on this objection."  (*Id*.)  Following consultation between the

parties, however, Defendant provided a second supplemental response on July 2,

2021.  (Doc. 428-6, at 19.)  Therein, he removed the Fifth Amendment objection

and indicated he had no responsive documents

> in his possession, custody or control regarding a 'list of
> cases or incidents in which the individual was involved in
> any way, including without limitation as a complainant,
> victim or witness, a break-in at her home and any
> incidents involving harassment or stalking by Roger
> Golubski.'  Defendant Golubski does not have responsive
> documents in his possession, custody or control

> regarding 'any directives or orders by KCKPD
> supervisors/commanders to Golubski to refrain from
> stalking or harassing the individual or requiring
> him to maintain a certain distance from the individual.'
> Based upon the objections, Defendant Golubski is
> withholding other potentially responsive materials
> depending on the scope and propriety of the request.

(*Id.*)[1]

Plaintiffs correctly point out that the undersigned Magistrate Judge

previously deemed this exact information "relevant and discoverable" in an Order

compelling production of documents from Defendant Unified Government.  (Doc.

428, at 7 (citing Doc. 365, at 8-9).[2])  Therein, the Court compelled Defendant

Unified Government to produce documents and files relating to stalking or

harassment by Defendant Golubski of his ex-wife, "E.A." (Doc. 365, at 12; Doc.

309-1, at 12.)

Defendant responds that "the requested documents are not relevant on their

face and have no apparent connection to the claims or defenses in this matter."

---

[1] Defendant contends that, following this supplemental response on July 2, 2021, Plaintiffs made no further inquiry about Request No. 132 until the present motion to compel was filed on September 13, 2021.  (Doc. 446, at 5.)  The Court notes, however, that the motion was timely filed because Plaintiffs requested two unopposed extensions of time to file the motion to compel.  (Docs. 386, 408.)  Further, Plaintiffs' briefing indicates that Request No. 132 was discussed during two meet and confer telephone calls between counsel for the parties.  (Doc. 478, at 3.)

[2] The Court notes that the correct portion of its prior Order discussing the analogous document request propounded to Defendant Unified Government appears to be found at Doc. 365, at 12.  (*Compare* RFP 132 to Defendant Unified Government (Doc. 309-1, at 12) *with* RFP 132 to Defendant Golubski (Doc. 428-1, at 13).)

(Doc. 446, at 5.)  Further, Defendant contends that the Court's prior Order does not apply to the "broader" category of information sought by the request at issue.

As in its prior Order compelling the exact discovery from Defendant Unified Government, the Court finds the information sought by this request to Defendant Golubski to be relevant and discoverable because it could lead to evidence of his alleged history of stalking or harassing women, just as the Complaint alleges he harassed Rose McIntyre.  (Doc. 1, at 2.)  Further, given the importance of the constitutional issues raised in Plaintiffs' Complaint, the Court again finds that this category is proportional to the needs of the case.  Plaintiffs' motion is **GRANTED** as to Request No. 132.  Defendant shall produce all responsive documents **within thirty (30) days** of the date of this Order.

## 2.    Request No. 94.

This document request seeks all documents "that list any beneficiaries, insureds, or dependent(s) of Roger Golubski, including any offspring and/or any spouses or domestic partners."  (Doc. 428-1, at 5.)  The request, as written, does not include temporal parameters.

Defendant's second supplement to his objections and responses to these document requests restates his initial objections to this document request:

> [t]he requested information is not relevant to the claims or defenses in this matter and is not proportional to the needs of the case as any such documents would have nothing to do with the 1994 events in question.  Further

> objecting, the request is overbroad as to time because it is
> not narrowed by a time limitation.  Finally, Defendant
> Golubski will not produce such documents on Fifth
> Amendment grounds. Defendant Golubski is withholding
> responsive materials based on this objection.

(Doc. 428-6, at 3.)  The second supplemental response continues, however, that

Defendant "will produce all responsive documents in his possession, custody or

control" without reference to any documents being withheld on the basis of

objection or the Fifth Amendment.  (*Id*.)

Plaintiffs indicate that through two responses, Defendant produced only 11

pages of highly redacted documents.  (Doc. 428, at 8.)  These documents

apparently included a homeowner's insurance policy, which does not indicate

beneficiaries, insureds, or dependents.  (*Id*.)  Also referenced were a life insurance

policy and a retirement account, which, according to Plaintiffs, only reflect

beneficiary changes Defendant made to his monetary funds after this lawsuit was

filed.  (*Id*.)  Plaintiffs complain Defendant has failed to provide "documents or

information relating to his beneficiaries, spouses, domestic partners, or offspring *at

or near the time of Plaintiffs' wrongful conviction in 1994* or within the two

decades since."  (*Id*. (emphasis in original).)

Defendant responds that his counsel was not contacted by Plaintiffs' counsel

to discuss "any perceived deficiencies with his production" and he "was not aware

of Plaintiffs' concerns until the filing of the current motion and memorandum."

(Doc. 446, at 7.)  That stated, Defendant agrees to "produce any additional

responsive documents, if they exist, as soon as practicable." (*Id*.)

Plaintiffs dispute Defendant's assertion that he was unaware of Plaintiffs'

concerns regarding the production.  Citing numerous supporting exhibits, Plaintiffs

argue that Defendant's

> contention is baseless, given the numerous meet and
> confer calls on this issue, the written Golden Rule letter
> explaining Golubski's deficiencies, Plaintiffs' continued
> requests for a privilege log, Golubski's letter attempting
> to explain that the deficiencies could be cured with
> another supplemental production, and Golubski's three
> supplemental productions themselves.

(Doc. 478, at 4 (citing Doc. 428-5, at 3 and 428-7, at 2-3).)

Plaintiffs further reply that Defendant's brief in opposition "does not address

any of Plaintiffs' arguments regarding the Fifth Amendment redactions contained

in [Defendant's] already produced documents" and also fails to "explain, justify, or

even acknowledge the deficiencies with his production, including that responsive

information from *the time of Plaintiff's wrongful conviction in 1994 or within the

two decades since* were not produced."  (Doc. 478, at 3 (emphasis in original).)

Plaintiffs have established that the information is, at a minimum, facially relevant

given that Defendant is alleged to have "engaged in sexual relationships with

impoverished women in the community whom he called his 'informants' and that

those relationships sometimes led to financial entanglements." (*Id*., at 4.)

Defendant made no effort to support his objections to the production of this information, including his invocation of the Fifth Amendment. Additionally, Defendant's second supplemental response indicates that he will produce all responsive documents in his possession, custody, or control, without reference to objections or Fifth Amendment protection. (Doc. 428-6, at 3.) As such, the objections, upon which Defendant appears to no longer rely, are unsupported and **overruled**. Plaintiffs' motion is **GRANTED** as to Request No. 94. Defendant shall produce all responsive documents **within thirty (30) days** of the date of this Order.

### D.   Interrogatories at Issue.

#### 1.   Interrogatories 1, 5, 9, and 11.

These interrogatories seek information that Plaintiffs describe as regarding Defendant's "(1) proceeds from criminal activity, misconduct, or inappropriate relationships with informants or other individuals, or (2) connections to properties associated with the unconstitutional conduct alleged in the Complaint." (Doc. 428, at 13; *see also* Doc. 428-4, at 2-3, 6-7, 10-11, 12.) Plaintiffs assert that the interrogatories "directly relate" to allegations that Defendant "was corrupt, accepted bribes or payoffs in cash, shook down drug dealers, participated in cash for drug transactions, received other gifts in exchange for favors or protection and then used those drugs, cash, and other gifts (among other things) to pay prostitutes

for sex and engage in other transactions." (Doc. 428, at 14.)  The Interrogatories

will be addressed in turn.

### a.      Interrogatory No. 1.

This discovery request seeks certain information regarding Defendant's

"other contracts, employment, or other means of income, including 'self-

employment,' **proceeds from criminal activity**, cash that is not income, gifts,

money, non-taxable income or assets from your business or employment or any

other source since 1976," excluding than certain listed employers, including

Defendant Unified Government.  (Doc. 428-4, at 1-2 (emphasis added).)

Defendant objects that information regarding this other means of income is

irrelevant and disproportionate to the needs of the case "as such information would

have nothing to do with the 1994 events in question."  (*Id*., at 2.)   He also objects

that the request is overly broad and unduly burdensome "as it purports to require

Defendant Golubski to disclose, for example, every gift he received over four-plus

decades."  (*Id*.)  Further, Defendant refused to answer on Fifth Amendment

grounds.  (*Id*.)  Plaintiffs argue that Defendant's invocation of the Fifth

Amendment is insufficient Defendant has not shown that responding to the

individual questions will "'pose a substantial and real hazard of subjecting them to

criminal liability.'"  (Doc. 428, at 14 (citing ***KCI Auto Auction***, 2020 WL

5503350, *3).)

It is undisputed that Plaintiffs have accused Defendant of numerous alleged crimes, including murder.  Defendant points out that Plaintiffs' explanation for the Interrogatories, quoted above, "demonstrates the interrogatories are specifically designed to elicit incriminating answers." (Doc. 446, at 14.)  Defendant thus asserts that "Plaintiffs themselves have illustrated [Defendant] has 'reasonable cause' because answering these interrogatories creates the potential for incriminating answers." (*Id*.)  The Court agrees that the interrogatory, <u>as worded and as described by Plaintiffs</u>, facially seeks self-incriminating information from Defendant.

Plaintiffs reply that Defendant "should not be allowed to answer only those questions or parts of questions that benefit him, while withholding information in response to those that may not." (Doc. 478, at 9.)  In reliance on this argument, Plaintiffs quote the case of ***United States v. $148,840.00 in U.S. Currency***, 521 F.3d 1268, 1277 (10th Cir. 2008).  That case did not, however, hold that Fifth Amendment protections should be *waived* in this situation.  Rather the Tenth Circuit held that "in a civil case a district court may strike conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid answering relevant questions, yet freely responds to questions that are advantageous to his cause." *Id*.

Plaintiffs contend that although Defendant "did not 'waive' the privilege" when he answered a portion of Interrogatory No. 1, "he should not be allowed to

answer only those questions or parts of questions that benefit him, while withholding information in response to those that may not." (Doc. 478, at 9.) Even assuming this to be true, the appropriate remedy – as discussed in the cited authority – would be to strike the conclusory, self-serving testimony rather than finding the protections of the Fifth Amendment have been waived and compelling a response to this facially objectionable interrogatory. This remedy is within the purview of the trial judge.

While certain portions of the information sought by this Interrogatory may not facially self-incriminating, it is not the province of the Court to re-write Plaintiffs' discovery requests to appropriately narrow them or make them non-objectionable. Plaintiffs' motion to compel is, therefore, **DENIED** as to Interrogatory No. 1.

### b.     Interrogatories 5, 9, and 11.

Interrogatory No. 5 asks Defendant for certain information regarding "any property with a value of $100 or more, including without limitation, stocks, bonds, debentures, mutual fund, marketable or non-marketable securities, money market funds, collectibles, collections, rents, royalties, leases, or any other investment or similar items in the last ten (10) years … ." (Doc. 428-4, at 6-7.) Interrogatory No. 9 seeks information as to "the amount and location of cash" Defendant has on hand as well as "any safe deposit boxes, vaults, safes or other places of deposit and

safe keeping in which you deposited or kept any money or other items of personal property exceeding $100" during the past ten years, the dates on which Defendant "accessed the box within the last five (5) years, and the present contents of each said place of deposit." (*Id.*, at 10-11.)  Interrogatory No. 11 asks Defendant to enumerate and describe "all automobiles, boats, motors, trailers, or other vehicles owned by you or in which you claim an interest in since 1976," and provide "the make, model and year, the purchase price and date of purchase, the present fair market value, where, by street or address, it is currently located, and all mortgages, liens, or encumbrances on such vehicles, the names of the owners of such vehicles." (*Id.*, at 12.)

Defendant objects that these Interrogatories are irrelevant and disproportionate to the needs of the case and are temporally unduly burdensome. (Doc. 428-4, at 7, 11, 12-13.)  Defendant also invokes his Fifth Amendment right against self-incrimination. (*Id.*)   As to Interrogatory No. 9, Defendant also objects that the request is compound, vague, and ambiguous.

Plaintiffs contend that the purpose behind Interrogatories Nos. 5 and 9 is to discover

> other potential methods by which Defendant … may have accepted, concealed, or invested **proceeds of his misconduct or illicit activity**, including monies, cash, investments, or assets held by another for Golubski's benefit within the last five to ten years.  These Interrogatories directly relate to the conduct alleged in

18

> Plaintiffs' Complaint … that [Defendant] **was corrupt, accepted bribes or payoffs in cash, shook down drug dealers, participated in cash for drug transactions, received other gifts in exchange for favors or protection and then used those drugs, cash, and other gifts (among other things) to pay prostitutes for sex** and engage in other transactions.

(Doc. 428, at 14 (citing Complaint, ¶¶ 113, 123-125) (emphasis added).)  Plaintiffs also indicate that the purpose behind Interrogatories Nos. 5, 9, and 11 is to track "**proceeds from criminal activity, misconduct**, or inappropriate relationships with informants or other individuals, or (2) connections to properties associated with the **unconstitutional conduct** alleged in the Complaint."  (*Id*., 13 (emphasis added).)

Inexplicably, Plaintiffs then proceed to argue that Defendant has improperly invoked the Fifth Amendment protection against self-incrimination.  Regardless of whether the information is sought is otherwise relevant and proportional to the case, the clearly stated purpose of the discovery is to require Defendant to incriminate himself.  The reason for Defendant's reliance on the Fifth Amendment is patently obvious and appropriate.  Plaintiffs' motion is thus **DENIED** as to Interrogatories 5, 9, and 11.

The Court again notes Plaintiffs' concern that Defendant has voluntarily responded to certain – but not all – deposition questions and Interrogatories when

doing so benefits him.[3]  (Doc. 478, at 10.)  Again, however, finding Defendant has

waived his Fifth Amendment rights and compelling him to provide incriminating

information is not the appropriate course of action.  *See **$148,840.00 in U.S.***

***Currency***, 521 F.3d at 1277 (holding that "in a civil case a district court may strike

conclusory testimony if the witness asserts the Fifth Amendment privilege to avoid

answering relevant questions, yet freely responds to questions that are

advantageous to his cause.").

### c.    Interrogatories Nos. 4 and 6.

These Interrogatories request information relating to Defendant's pension

and retirement benefits (No. 4) and current bank accounts (No. 6).  (Doc. 428-4, at

5-6, 8.)  Defendant objects that both Interrogatories seek information that is

irrelevant, disproportionate to the needs of the case, and temporally overly broad.

(*Id*.)  Defendant continues that the information improperly relates to his "ability to

pay a judgment prior to a judgment being entered."  (*Id*.)  Finally, he generically

invokes the protection against self-incrimination of the Fifth Amendment.  (*Id*.)

Plaintiffs argue that Defendant provides no legal authority or factual basis

for his Fifth Amendment or other objections to these Interrogatories.  (Doc. 428, at

15.)  According to Plaintiffs, Defendant's "current retirement benefits (he is

---

[3] Plaintiffs also apply this argument to Interrogatories 4 and 6 (discussed in subsection c., *infra*).

retired), and the amount of money in his bank account directly bear on the Defendant's present and past financial state and should be produced." (*Id*.)

Plaintiffs also argue, however, that "any financial information requested" by the Interrogatories at issue "is … relevant to the allegations that [Defendant] was involved in the **drug trade, prostitution, corruption, and bribery**, and thus Defendant … should be compelled to answer questions related to [his] sources of income and current financial status, as further detailed below." (*Id*., at 13 (emphasis added).)  Even assuming that Defendant did not provide a sufficient factual basis for invoking the Fifth Amendment, Plaintiffs have clearly done so *for* Defendant.  The reason for Defendant's reliance on the Fifth Amendment is patently obvious and appropriate based on Plaintiffs' stated reason for these inquiries.  Plaintiffs' motion is thus **DENIED** as to Interrogatories 4 and 6.

### d.    Interrogatory No. 13.

This Interrogatory asks for information as to any person other than Defendant or his spouse for whom he "provide[s] or have provided financial or in-kind … since 1976." (Doc. 428-4, at 13.)  Defendant objected that the information is irrelevant, not proportionate to the case, and temporally overbroad.  (*Id*.)  Defendant also invoked the protection of the Fifth Amendment.  (*Id*.)

Plaintiffs again argue that Defendant has not properly supported his reliance on the Fifth Amendment.  (Doc. 428, at 16.)  That stated, Plaintiffs again provide

the relevant factual support for invocation of the privilege by stating that "at its most basic level, Plaintiffs' Complaint alleges that Defendant's] … personal life (including his **sexual coercion and exploitation of poor, black, and often drug-addicted women** in the Kansas City, Kansas community) violated his oath and his responsibilities as a KCKPD officer and detective."  (*Id.*, at 15-16 (emphasis added).)  Plaintiffs continue that

> [w]hen it served his purposes, [Defendant] protected certain individuals during his time as a KCKPD officer, whether drug-dealers, prostitutes, or informants, while framing others for crimes they did not commit, including Lamonte McIntyre.  Defendant['s] … illicit relationships, the existence of undisclosed offspring, or his financial support of certain individuals during the time he worked for the KCKPD, is extremely relevant to showing his **involvement with certain criminals, prostitutes, and informants, as well as his misconduct in investigations that involved the same individuals he was protecting, exploiting or coercing for sex, or using for information**.

(*Id.*, at 16 (emphasis added).)

Even assuming the information is proportionate to the case and not temporally overbroad, the Court agrees with Defendant that "Plaintiffs themselves have illustrated this interrogatory creates the potential for incriminating answers." (Doc. 446, at 16.)  Plaintiffs' motion is thus **DENIED** as to Interrogatory 13.

### E.    Defendant's Requested Stay of Enforcement.

Defendant asks the court to "stay enforcement of Plaintiffs' motion to compel regarding answers, if any, [Defendant] is required to provide about his financial condition until the resolution of dispositive motions."  (Doc. 446, at 18.) According to Defendant, In addition to allowing him "the opportunity to challenge Plaintiffs' punitive damages claim at summary judgment, this will also result in more recent financial information being disclosed."  (*Id.*)

Plaintiffs reply that Defendant's request is "extraordinary" and without citation to "a single fact or legal authority for support … ."  (Doc. 478, at 13.) Plaintiffs point out that this action is three years old and Defendant's request would further postpone any resolution.  The Court agrees with Plaintiffs and **DENIES** Defendant's requested stay of the production ordered herein.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel (Doc. 427) is **GRANTED in part** and **DENIED in part** as set forth herein.

**IT IS SO ORDERED.**

Dated this 24th day of November, 2021, at Wichita, Kansas.


/s KENNETH G. GALE
KENNETH G. GALE
United States Magistrate Judge