## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LAMONTE MCINTYRE, et al.,**

      **Plaintiff,**

**v.**

**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KS, et al.,**

      **Defendants.**

Case No. 2:18-cv-02545-KHV-KGG

### Plaintiffs' Response to Defendant Unified Government's Motion to Quash and for Protective Order

### Background

In this civil rights action stemming from Plaintiff Lamonte McIntyre's wrongful conviction and imprisonment, Plaintiffs allege, among other things, that Defendants fabricated evidence in violation of Lamonte McIntyre's constitutional rights, and that individual supervisors and the Unified Government failed to adequately discipline and supervise its homicide unit officers, including Defendant Roger Golubski.

In connection with prosecuting these claims, Plaintiffs noticed a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), asking that the Unified Government provide a designee to testify regarding two topics: (1) the KCKPD's policies and procedures for conducting photo identifications with witnesses from 1990–2000[1]; and (2) the supervision of Defendant Golubski in his investigations of specific homicide cases, spanning from 1989–2001. Pls.' 2d. Am. Notice for Rule 30(b)(6) Dep. (Doc. No. 476).

---

[1] A deposition regarding eyewitness identifications from 1998–2000 took place on December 9, 2021.

The Unified Government's counsel seeks to limit any deposition regarding the second topic to only those cases pre-dating the Quinn and Ewing homicides in 1994. But there is no basis for that temporal limitation, especially because the Court has previously rejected Defendant's argument to limit discovery this way, when it granted Plaintiffs' motion to compel the production of homicide files for investigations conducted after 1994. *See* Mem. & Order Granting in Part Mot. to Compel (Doc. No. 365) ("MTC Order").

**Argument**

## I.   Post-1994 homicide investigations are relevant to Plaintiffs' claims.

For deposition topics proposed under Rule 30(b)(6), "relevancy is broadly construed." *CitiMortgage, Inc. v. Sanders*, No. 11–CV–2540–EFM–GLR, 2012 WL 6024641, at *3 (D. Kan. Dec. 4, 2012). "[C]ourts should consider requested discovery relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party or to the subject matter of the action." *Id.* (internal citations omitted). Here, the information Plaintiffs seek is clearly relevant to their claims against individual supervisors, to the conspiracy claims, and the *Monell* claims.

### A.   This Court has already held that post-1994 homicide investigations are relevant.

This Court previously determined that Defendants' conduct after the 1994 crime for which Plaintiff Lamonte McIntyre was wrongfully convicted is relevant to and discoverable in Plaintiffs' case. MTC Order at 9, 10, 14. Specifically, this Court held that investigative files relating to women who were murdered after being used as informants by Golubski were discoverable because "[a]lthough the files requested seek information on women who were used as informants after Plaintiff Lamonte McIntyre's conviction in 1994, … they are relevant as they

2

may lead to discoverable information regarding the existence of unconstitutional misconduct known to KCKPD." *Id.* at 10.

More broadly, this Court also held that post-1994 police files involving women who were allegedly sexually assaulted or exploited by Defendant Golubski were "relevant and discoverable." *Id.* at 9. "Plaintiff should be able to access files relating to women who were sexually assaulted and/or used as informants because it may demonstrate the pattern of misconduct Plaintiffs allege in their Complaint." *Id.*

Through a 30(b)(6) deposition, Plaintiffs again seek this type of information from the Unified Government—Golubski's misconduct and the KCKPD's supervision and knowledge of that misconduct during his tenure at the KCKPD—information the Court has already deemed relevant to Plaintiffs' claims.

### B. Supervision of Defendant Golubski's investigatory conduct in post-1994 homicides is relevant to Plaintiffs' claims.

Plaintiffs' supervisory liability claim under 42 U.S.C. § 1983, against Defendants Otto Barber and Steve Culp, alleges, among other things, that they allowed Defendant Golubski and the other Individual Defendants to act with impunity in an unsupervised environment. Pls.' 2d Am. Compl. (Doc. No. 74), at 44 ¶ 182. Plaintiffs additionally allege that Defendants Barber and Culp failed to provide adequate training, supervision and discipline to Golubski and the other Individual Defendants, resulting in violations of Lamonte McIntyre's civil rights. *Id.* at 44–45, ¶¶ 183–85. Plaintiffs also allege that the Individual Defendants—detectives and supervisors alike—engaged in a civil rights conspiracy, which resulted in violations of Lamonte McIntyre's constitutional rights. *Id.* at 43, ¶ 178. Thus, information regarding how—or if—Defendant Golubski was supervised goes to the heart of many of Plaintiffs' Section 1983 claims.

Plaintiffs further allege the KCKPD had a pattern, practice, or custom of unconstitutional misconduct in serious felony investigations. In particular, Plaintiffs claim that the KCKPD's misconduct included encouraging the use of coerced and unreliable witness statements taken by Defendant Golubski and other favored KCKPD officers. These statements were taken from vulnerable witnesses through the threat of arrest, physical violence, sexual domination, payment in drugs or money, or other consequences. *Id.* at 45–46, ¶ 189. Plaintiffs additionally allege that the KCKPD had a policy, practice, or custom of failing to adequately supervise, discipline, and train officers—specifically regarding the sexual, psychological, and physical coercion of female informants or witnesses—in the course of investigating serious felonies, despite adequate notice of this misconduct. *Id.* at 46–47, ¶¶ 191–95. Thus, information provided by a Unified Government designee is clearly relevant to Plaintiffs' substantial *Monell* claims.

The Unified Government's view of the relevancy of post-1994 homicide investigations is unjustifiably narrow. It argues that investigations that took place after the crime for which Lamonte McIntyre was falsely convicted could not have caused his conviction and could not have put the Unified Government on notice regarding any improper customs, policies and/or practices causing his conviction. Def.'s Mot. to Quash, at 6. This is the *exact* same argument the Unified Government made in response to Plaintiffs' previous Motion to Compel the post-1994 homicide files of women sexually exploited by Golubski, women used as informants for Golubski, or homicides wherein Golubski committed misconduct in some manner. Such objections were overruled because the information sought is relevant and discoverable in this case. MTC Order at 9, 10, 14. Having been ordered to produce the files, Defendants cannot now evade questioning about them by re-raising the same failed arguments.

Further, Plaintiffs allege, among other things, that supervisor Defendants are liable under Section 1983, and that both detective and supervisor Defendants conspired to deprive Plaintiff Lamonte McIntyre of constitutional rights, in part, through the coercion of witnesses. Pls.' 2d Am. Compl., at 43–46, ¶¶ 177–86. It is obvious that homicide investigations taking place after 1994 would provide Plaintiffs with relevant information regarding Golubski's cultivated network of informants. Many of these relationships were formed long before the informants' deaths, including before 1994. An understanding of how Golubski was supervised while investigating the deaths of his long-term informants is certainly relevant to how he was supervised in creating and maintaining this network of informants.

This District Court allows for post-event information to be the subject of a Rule 30(b)(6) deposition. One example is *McBride v. Medicalodges*, 250 F.R.D. 581, 586 (D. Kan. 2008), which Defendant cites as establishing the appropriate scope of a Rule 30(b)(6) topic. *See* Def.'s Mot. to Quash (Doc. No. 501), at 7. In that case, this Court held that an eight-year period, three years pre-incident and five years post-incident, is a "reasonable and appropriate temporal scope" and "consistent with cases in this District discussing temporal limits on discovery." *McBride*, 250 F.R.D. at 586. And this District Court recently held that evidence of "Defendant's conduct following the accident" at issue "could be probative of the [Defendant's] state of mind at the time of the accident," and that such "information related to Defendant's subsequent conduct meets the minimal standard for relevancy at the discovery stage." *Gray v. Conner Indus., Inc.*, No. 20-1037-TC-GEB, 2021 WL 5298667, at *4 (D. Kan. Nov. 15, 2021); *see also Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212 (D. Kan. 2002) (holding that in the employment discrimination context, "information both before and after the liability period may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence;

thus, courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period").

### 1. Discovery on Plaintiff's *Monell* claims is not limited to pre-1994 information.

The Unified Government fails to recognize that "causation is not the *sine qua non* of relevance" for *Monell* claims. *Forrest v. Parry*, 930 F.3d 93, 115 (3d Cir. 2019), *cert. denied sub nom. City of Camden v. Forrest*, 140 S. Ct. 902 (2020) (concluding that though the failure to investigate complaints of similar misconduct post-incident "could not have caused [Plaintiff's] alleged injuries, they are highly relevant to whether [the City] was deliberately indifferent to a continued pattern of policy misconduct").

Under the *Monell* doctrine, a municipality can be held liable for "acts which the municipality has officially sanctioned or ordered." See *C.F.B. v. Hayden*, No. 16-2645-CM, 2019 WL 1299679, at *4 (D. Kan. Mar. 21, 2019) (internal citation omitted). Plaintiffs can satisfy their burden to prove a municipality's liability by showing, among other things, an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law. *Id.* To illustrate a municipality's custom, plaintiffs must show more than "[o]ne alleged unconstitutional act," but rather a "[d]eeply embedded traditional way[] of carrying out state policy." *Id.* at *6. [2]

---

[2] The Unified Government's authority is in accord. In *Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009), the court dealt with the appeal of a summary judgment decision in an excessive force case, not a discovery dispute regarding relevance. The court held "[i]f the city promulgates a constitutional policy but trains its officers to violate that policy … a causal connection could be established." *Id.; see also Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."). And *Waller v. City & Cty. of*

The examination of post-event conduct is "highly relevant to demonstrating that [the City] maintained the same practice prior to and at the time of said arrest," which "clearly lends credence to the notion [the City] was aware of related, concerning conduct by its officers and had not responded." *Forrest v. Parry*, 930 F.3d 93, 115–16 (3d Cir. 2019), *cert. denied sub nom. City of Camden v. Forrest*, 140 S. Ct. 902 (2020).[3] Therefore, information on how Golubski was supervised by KCKPD supervisors over the course of his homicide cases, including those following the Quinn/Ewing murder is indicative of how supervision functioned at the time of the crime. *See, e.g.*, *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996) (recognizing that a post-event incident "although it occurred after [Plaintiff's] experience, may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern" of conduct); *Bordanaro v. McLeod*, 871 F.2d 1151, 1167 (1st Cir. 1989) (holding "[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right"); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985) ("The disposition of the policymaker may be inferred from his conduct after the events of that night."); *Willis v. Mullins*, No. CV-F-04-6542 AWI LJO, 4 (E.D. Cal. Feb. 8, 2006) (holding "post incident events may prove that a policy or custom existed pre-incident" and that "post-event

---

*Denver*, 932 F.3d 1277, 1289 (10th Cir. 2019) is inapposite. In that case, the court addressed an appeal of a motion to dismiss in an excessive force case. The court held that in connection with a failure to investigate claim, citations to a report were too general and insufficient to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.*

[3] While Plaintiffs could find no Tenth Circuit or District of Kansas cases directly addressing the discoverability of post-incident conduct, this Court recently held that in § 1983 *Monell* cases, "[o]rdinarily, a single incident of unconstitutional behavior is insufficient to impose municipal liability," and that plaintiffs can "stack inference upon inference," to show a police department's unconstitutional custom or practice. *Calvo-Pino v. Weidl*, 514 F. Supp. 1321, 1 327 (D. Kan. 2021); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019).

conduct is highly probative to proving the existence of a municipal policy or custom") (internal citations omitted).

Accordingly, as discussed above, evidence that the custom, pattern, or practice of constitutional violations continued after Plaintiff Lamonte McIntyre's conviction indicate that the custom was permanent and well-settled, and that the KCKPD failed to address, and indeed permitted, the misconduct that directly led to Plaintiff's wrongful conviction. For all these reasons, the Unified Government's specious assertion that "basic principles of linear time illustrate the request are outside the scope of discovery" is wholly without merit, especially in light of the Court's prior ruling. Def.'s Mot to. Quash, at 7; MTC Order at 9, 10, 14.

### C. Defendant has already produced documents concerning post-1994 investigations, and Plaintiffs are entitled to question a designee about these documents.

Defendant acknowledges that it has already produced files corresponding to the homicide investigations listed in the Rule 30(b)(6) notice, but then argues that questioning its designee on such files would be irrelevant. Def.'s Mot. to Quash, at 7–8. When an organization's documents are produced in discovery, Plaintiffs are entitled to question a representative about those documents. *D.M.* ex rel *Morgan v. Wesley Med. Ctr. LLC*, No. 18-2158-KHV-KaGG, 2019 WL 632369, at *6 (D. Kan. Feb. 14, 2019) (stating that, where "underlying contracts have been produced in discovery," "Plaintiff is entitled to question a representative of Defendant about the stated topics related to those contracts."). Accordingly, Plaintiffs should be allowed to explore the Unified Government's knowledge of the information contained in its own case files, including information directly relating to supervision of Golubski's misconduct and investigative practices—the heart of Plaintiff's *Monell* and supervisory liability claims.

Further, the Unified Government recently propounded eleven contention interrogatories upon Plaintiffs specifically seeking the "principal and material facts" which support Plaintiffs' allegations that, among many other things, the Unified Government had a policy, practice, or custom of (1) failing to adequately supervise, discipline, and train officers investigating serious felonies; (2) failing to adequately supervise, discipline, and train officers for failing to use proper and legal investigative tactics by not physically, psychologically, and sexually abusing female informants, coercing those informants to provide false evidence, illegally protecting individuals involved in the illegal drug trade, failing to turn over exculpatory evidence to the prosecution and criminal defendants, and wrongfully pursuing, prosecuting, or convicting innocent individuals to close cases; and (3) deliberately ignoring the egregious acts of Golubski and other officers. Further, the Unified Government propounded additional contention interrogatories seeking the information supporting Plaintiffs' allegations that the Unified Government had actual or constructive notice of, but repeatedly failed to make any meaningful investigation into (1) charges that KCKPD officers used the misconduct described above to close cases and (2) widespread failures to supervise or discipline officers for misconduct committed during the course of serious felony investigations (which enabled officers to engage in misconduct without repercussion). These interrogatories seek the exact same information Plaintiffs are attempting to obtain via deposition of the Unified Government's representative and are unquestionably relevant to Plaintiffs' claims in this lawsuit. Accordingly, the Unified Government, the only party with knowledge of this topic, should not be able to argue Plaintiffs' have no evidence to support their claims while simultaneously refusing to provide the relevant information.

**II. The notice defines the topic of the deposition with reasonable particularity.**

   **A. The notice requests a deponent prepared to testify regarding KCKPD's supervision of a specific officer, for a specific list of investigations, on specific supervisory topics.**

Rule 30(b)(6) "requires the topics of the deposition be identified with 'reasonable particularity.'" *See, e.g.*, *Espy v. Mformation Techs., Inc.*, No. 08–2211–EFM–DWB, 2010 WL 1488555, at *2 (D. Kan. Apr. 13, 2010); Fed. R. Civ. P. 30(b)(6). This District Court has clarified that even though the District of Kansas has used "language" stating that "the designation be made with 'painstaking specificity,'" it does not "require[] a greater degree of particularity" than the "reasonable particularity" standard encompassed in the text of the Rule. *Id.* Plaintiffs have noticed the topic of "KCKPD supervision and/or oversight received by Roger Golubski with respect to his roles and investigative activities in" a list of cases. Pls.' 2d Am. Notice of Rule 30(b)(6) Dep. (Doc. No. 476), at 2–4.

Given that the deposition notice detailed a very specific topic—supervision of one officer regarding a specific list of investigations—and that Plaintiffs' counsel further clarified its areas of interest regarding that supervision during a meet and confer, Def.'s Mot. to Quash, at 2, 8. Plaintiffs have easily met their burden to define the topic with "reasonable particularity." In light of Plaintiffs' detailed notice and subsequent clarification, the Unified Government's assertion that it cannot define "the outer limits of the areas of inquiry" is not credible and should be overruled. Def.'s Mot. to Quash, at 8.[4]

---

[4] Defendant cites *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000) for the proposition that when a defendant cannot determine the "outer limits" of the plaintiff's topic of inquiry, it is unable to comply with the Rule 30(b)(6) notice. Def.'s Mot. to Quash (Doc. No. 501), at 7. However, in *Reed*, the court held that "outer limits" were undiscernible because "Plaintiff broadens the scope of the designated topics by indicating that the areas of inquiry will 'includ[e], but not [be] limited to' the areas specifically enumerated"—which is not an issue here. *Id.*

**B. Prior depositions have not previously addressed the topic at issue.**

The Unified Government asserts that Plaintiffs' Rule 30(b)(6) deposition of Ricky Armstrong already addressed supervisors' obligations to respond to misconduct and how such misconduct should have been addressed if it were known. Def.'s Mot. to Quash, at 8. However, Plaintiffs' First Amended Notice for Rule 30(b)(6) Deposition focused on the KCKPD's general internal disciplinary system and the practices of Internal Affairs in investigating complaints. (Doc. No. 310). Mr. Armstrong's deposition did not cover the specific supervision (or lack thereof) of Detective Golubski in homicide investigations, nor did it cover KCKPD's policy, custom, or practice of allowing Golubski to commit misconduct without repercussion despite any general disciplinary police in place at the time. Therefore, the requested deposition is distinct from Plaintiffs' prior 30(b)(6) deposition.

## <u>Conclusion</u>

Plaintiffs respectfully request that the Court deny the Unified Government's motion to quash and motion for a protective order, and direct the Unified Government to provide a designee to testify regarding the supervision and oversight of Defendant Golubski in specific homicide investigations.

---

In the event this Court finds the topic noticed unclear, instead of quashing the deposition all together, it can order that the deposition proceed with restraints on the topic. *See D.M. ex rel Morgan v. Wesley Med. Ctr. LLC*, No. 18-2158-KHV-KGG, 2019 WL 632369, at *4 (D. Kan. Feb. 14, 2019) (declining to quash the deposition topic, and instead ordering "the clarifications stated by Plaintiff in her response brief … to serve as a limitation as to the extent, meaning, and scope of the deposition testimony sought from the Rule 30(b)(6) deponent").

Dated: December 20, 2021                    Respectfully submitted,


                                            /s/ *Alana M. McMullin*
                                            Barry Scheck (admitted *pro hac vice*)
                                            Emma Freudenberger (admitted *pro hac vice*)
                                            Sona R. Shah (admitted *pro hac vice*)
                                            Grace Paras (admitted *pro hac vice*)
                                            Neufeld Scheck & Brustin, LLP
                                            99 Hudson Street, Eighth Floor
                                            New York, NY 10013
                                            Telephone: (212) 965-9081
                                            Facsimile: (212) 965-9084
                                            emma@nsbcivilrights.com

                                            Michael J. Abrams #15407
                                            Alexander T. Brown #78891
                                            Alana M. McMullin #78948
                                            Lathrop GPM LLP
                                            2345 Grand Boulevard, Suite 2200
                                            Kansas City, MO 64108
                                            Telephone: (816) 292-2000
                                            Facsimile: (816) 292-2001
                                            michael.abrams@lathropgpm.com
                                            alana.mcmullin@lathropgpm.com

                                            Cheryl A. Pilate #14601
                                            Lindsay Runnels #78822
                                            Morgan Pilate, LLC
                                            926 Cherry Street
                                            Kansas City, MO 64106
                                            Telephone: (816) 471-6694
                                            Facsimile: (816) 472-3516
                                            cpilate@morganpilate.com

                                            *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned certifies that on the 20th day of December, 2021, the foregoing was electronically filed with the clerk of the court using the CM/ECF system which will provide notice and service to all counsel of record.

                            /s/ *Alana M. McMullin*
                            One of the Attorneys for Plaintiffs