KANSAS CITY KANSAS POLICE DEPARTMENT

## ** INVESTIGATIVE ADDENDUM / CLEARANCE **

April 15, 1994

FILE # 04154006081

OFFENSE            : Double Homicide
REPORT TYPE        : Investigative Addendum
INVESTIGATOR       : Det. J. Krstolich, #1383
UNIT               : C. A. Persons
# OF ARREST        : 1
CLEARED BY         : Cleared by Arrest
STATUS             : Active
# OF PAGES         : 2
SUPERVISOR SIGNATURE:

---

VICTIM'S NAME : #1-QUINN, DON, B/M, 23 YOA, DOB 10-12-72, Unknown Address
#2-EWING, DONALD E., B/M, DOB 10-20-59, 3038 N. 20th St., KCK

---

SUSPECT(S): McINTYRE, LAMONTE, B/M, DOB 7-28-76, 1929 N. 6th St., KCK, 342-4147

---

### NARRATIVE

On 4-15-94, reporting detective was ordered to respond to the 3000 block of Hutchings on a possible double homicide by the Crimes Against Persons Commander, Lt. Steven Culp. Reporting detective did as ordered, responded in vehicle #219 to the scene and proceeded up where I met with Detectives Blood and Maskil. Asked if anything was needed. At this time they said "No, stand by", that anything was needed, they would advise.

At that time reporting detective was shown a black female who identified herself as Ms. Ruby Mitchell. She stated that she lived in the area and that she was standing at the door and witnessed the entire crime. Reporting detective interviewed Ms. Mitchell and took her inside her residence and took a complete taped statement. She stated that she was standing at her front door and she saw a black male party run down the hill towards a blue Cadillac, which was the homicide vehicle. On the way down the party seemed to drop something. He stooped, bent to the ground and picked something up. She saw a shotgun in his hand. He walked to the passenger's side of the vehicle that was sitting Hutchings, facing northbound. She stated that he said something to the passenger. It was nothing more than a few words and then fired the shotgun four (4) times into the vehicle. When asked what type of shotgun it was, she though it was a pump shotgun, relating that he had to manipulate something before each round was fired into the vehicle. Ms. Mitchell stated then that the party ran back up the hill. She left the door and telephoned the police. Ms. Mitchell stated the party was about 5'6" to 5'7", 15 to 20 YOA, a dark black male, having short hair on the sides and

P0051
LMKSDC_0003441

INVESTIGATIVE ADDENDUM
FILE #04154006081
PAGE #2

long hair on top, wearing a black t-shirt with white lettering and black khaki pants. Reporting detective asked if she could ID the party and she stated "Yes". Ms. Mitchell had to retrieve her children from the school and brought them home. At this time reporting detective requested Ms. Mitchell to come to the KCK Police Department Detective Bureau and try to do a composite of the face she saw. Ms. Mitchell did make a composite of E65, H134, N21, C19, F12, C7. She stated that this looked like the face of the party the best she could remember. And it was also brought to light that she thought she recognized the party by the name of "Lamonte". At this time, reporting detective did have her look through the mug books and pictures of different Lamontes were shown to her in a picture interview of five (5) separate black individuals. The picture of Lamonte McIntyre was placed in position number three (3). Ms. Mitchell did pick this party out as the party she saw shoot the individuals in the Cadillac outside of her residence.

Reporting detectives then took Ms. Mitchell back to her residence and proceeded to 13th and Quindaro where other units of the KCK Police Department were met for an all-out canvass of the area in an attempt to locate Lamonte McIntyre. Mr. McIntyre was located at his mother's place of employment, FiFi's Restaurant, located at 5th and Parallel. He was brought into the KCK Police Department for an interview. Mr. McIntyre read his rights, understood his rights, read the Waiver and understood the Waiver, but stated that he would talk to reporting detectives, but would sign nothing. This was heard by Officer J.E. Brown, Detective Golubski and Detective Krstolich.

During the interview, Mr. McIntyre stated he was at his auntie's house in the vicinity of 16th and Wood all day long and that some dude came by and told them that Little Quinn's brother had been shot and that he was there with his auntie, his cousin, and his cousin's girlfriend. Later int the day his brother, James, did come by. Mr. McIntyre was taken to the KCK Identification Unit and was booked on the charge of Double Homicide. He was taken to the Wyandotte County Jail and booked on the charges.

END OF INVESTIGATIVE

321

Supvr. Initial

P0052
LMKSDC_0003442

KANSAS CITY KANSAS POLICE DEPARTMENT.

** INVESTIGATIVE ADDENDUM / CLEARANCE **

APRIL 15, 1994

**FILE #** 04154006081

OFFENSE           : HOMICIDE
REPORT TYPE       : INVESTIGATIVE
INVESTIGATOR      : SGT. BLOOD
UNIT              : HOMICIDE
# OF ARREST       :
CLEARED BY        :
STATUS            : ACTIVE
# OF PAGES        :
SUPERVISOR SIGNATURE :

---

VICTIM'S NAME : #1 - QUINN, DON, B2/M, APPROXIMATELY 23 YEARS OF AGE, DATE OF BIRTH AND
                 ADDRESS AT THIS TIME ARE UNKNOWN

---

SUSPECT(S):

---

### NARRATIVE

On 4-15-94 the reporting officers were advised of a double shooting with one
subject deceased at 3032 Hutchings.

Reporting officer and Det. Maskil proceeded to that location.  Upon our
arrival at 1430 hours we made contact with Off. Burdette Ambler of the Kansas
City, Kansas Police Dept.  Off. Ambler indicated that both subjects had been shot
apparently with shotguns by two (2) black male suspect who had fled the scene.
Both victims were removed from the scene by KARE.  One subject was transported to
Bethany Medical Center and the other one to K.U. Medical Center.

On the scene reporting officers observed a blue Cadillac, four (4) door,
Sedan, with Wyandotte County license ITL-176.  The vehicle was parked northbound
on Hutchings opposite of 3032 Hutchings.  The drivers door and left rear passenger
door windows were broken out and in the drivers side front seat the reporting
officers observed what appeared to be shotgun wads, plastic wads, and pellet
damage to the upper portion of the drivers front seat.  The right front passenger
door window was also broken out and on that door was a large substantial of blood
and tissue, apparently from the victim, who was a passenger on that side of the
car.  Det. Maskil, in searching the area, immediately north of the victims

---

P0053
LMKSDC_0003443

INVESTIGATIVE
FILE #04154006081
PAGE #2

vehicle, found four (4) spent shotgun shell casings, appeared to be .12 gauge.
The were pointed out to I.D. Officer, Bill Howard, who was processing the scene
and Off. Howard indicated that he would photograph them in place and collect them
as evidence.

Officers on the scene, Det. W.K. Smith and Roger Golubski, and Det. James
Krstolich, were in the process of interviewing witnesses at that time. Reporting
officer and Det. Maskil were advised by Lt. Culp to proceed to Bethany Medical
Center to see what information we could obtain regarding the victim at that
location.

Upon our arrival at Bethany Medical Center at 1444 hours we went to the
Emergency Room and Emergency Room Personnel at that time were working on a black
male subject who had suffered gunshot wounds. Reporting officers weren't able to
interview the subject or get a close look at him.

Det. Maskil and Sgt. Blood examined the victims clothing in an attempt to
locate any identification. There was none in his clothing at that point.
Emergency Room Personnel further advised reporting officers that there was
additional clothing underneath the victim at the time they were working on him but
they were unable to remove that clothing at that time. There is possibly
identification in the victims clothing, but we were not able to gain access to it.

Trooper, Larry Roland, of the Kansas Highway Patrol, was on the scene at the
Emergency Room and was able to get a look at the victims face and identified him
as Donald Ewing. He said he knew the subject through previous contacts.

Reporting officer then made contact with KARE Technician, Randy Smith. He
indicated that the victim had suffered two (2) gunshot wounds to the back. One (10
on each side of the shoulder blade areas. He indicated they appeared to be
shotgun wounds but he couldn't be positive at this time. He also indicated that
there were bullet wounds to the right arm. There appeared to be two (2) wounds,
they could be shotgun or possibly bullet wounds. Again, he wasn't sure. There
was also what appeared to be an entry wound. KARE Technician said he couldn't
tell for sure if they were bullet wounds or possible wounds caused by fragmented
glass that came from the door of the vehicle in which the victim was sitting at
the time the KARE Technicians attempted to treat him.

At this time the identification of Donald Ewing is tentative based on
information from Kansas State Trooper, Larry Roland.

Reporting officers ran a license registration check on the vehicle. It came
back to a 1987 Cadillac registered to a Donald Ewing of 2208 N. 26th. That being
license number Wyandotte ITL-176.

On running the address of 2208 N. 26th, Det. Maskil was able to obtain a date

Supvr. Initial                                                    PAGE      2

P0054
LMKSDC_0003444

INVESTIGATIVE
FILE #04154006081
PAGE #3

of birth on Donald Ewing of 10-20-59. He also has a Police Department jacket
#31204, that being with the Kansas City, Kansas Police Identification Unit.

While at the Bethany Medical Center, reporting officer and Det. Maskil were
alerted by a nurse that she had a telephone call from a relative of Donald Ewing.
Det. Maskil handled that call and talked to a young lady by the name of Sharon
Bennett, who indicated that she was a relative of Donald Ewing.

Det. Maskil was unable to obtain any useful information from Mrs. Bennett.
She was in fact asking questions if or not Donald Ewing had been positively
identified.  She stated that she would have family members enroute to Bethany
Medical Center to make contact with police officers at that location.

From Bethany Medical Center the reporting officer and Det. Maskil proceeded
to K.U. Medical Center.  Upon our arrival at K.U. Medical Center at 1535 hours the
reporting officers made contact with KARE Technician, Steve Gallager, of the
Kansas City, Kansas Fire Dept.  Mr. Gallager advised reporting officers that the
subject that they had recovered and brought to K.U. was recovered from the
passenger side of the motor vehicle. He indicated that Doctor Jeter of the K.U.
Emergency Room Staff pronounced that victim dead at 1455 hours.

Reporting officers were able to make contact with a relative at that
location, a Mr. Andrew Quinn, who is a black male, DOB: 4-29-59, 2718 Lathrop,
K.C.K., 621-3631.  Mr. Quinn advised that he is a cousin of the victim and he
identified the victim as Don Quinn and said he was approximately twenty-three (23)
years of age.  Mr. Andrew Quinn advised reporting officer that he did not know the
date of birth or the address or telephone number of the victim, Don Quinn.  He
advised reporting officer to make contact with a Mrs. Cinderella Quinn, 321-5316.
She apparently is the grandmother of the victim, Don Quinn, and she can offer some
information as to Don's date of birth and address.

Reporting officers then entered the Emergency Room where the victim was
being held and with the assistance of Dr. Rodriguez of the Emergency Room Staff,
observed injuries to the victims face.  There was an extreme destruction of the
victims face and skull and indications of a very close range gunshot wound and all
indications from Dr. Rodriguez were that those gunshot wounds were caused by most
likely a shotgun.

Again, there was no personnel property in the possession of this victim that
would relate to a positive identification as to date of birth or address. The only
information we have at this time is that received from Andrew Quinn, his cousin.
Mr. Quinn advised reporting officers that he was at the scene at the time the
victim was removed from the blue Cadillac and he is positive that he is his
cousin, Don Quinn.

At approximately 1635 hours Det. Maskil made contact with Mrs. Cinderella
Quinn, the grandmother of victim, Don Quinn. Mrs. Quinn was unable to offer any

Supvr. Initial _____                                          PAGE   3

INVESTIGATIVE
FILE #04154006081
PAGE #4

information as to Don's address or date of birth.  She indicated that none of the
family was available at this time and she had no idea where they were at but she
would have them make contact with either Det. Maskil or Sgt. Blood for additional
information.

At the present time reporting officers have been unable to obtain a date or
birth or address information regarding the victim, Don Quinn.

There is nothing additional to add to this report at this time.

At the orders of Lt. Culp the case has been turned to Det.'s W.K. Smith and
Roger Golubski for further investigation.

END OF INVESTIGATIVE

142

Super. Initial

PAGE   4

P0056
LMKSDC_0003446

# FIELD INVESTIGATION REPORT
## IDENTIFICATION UNIT
### KANSAS CITY KANSAS POLICE DEPARTMENT

| CALL OUT: 0800   COMPLETED: 1300 | OFFENSE: Post | COMPLAINT NUMBER: 04154006081 | DATE: 04-16-94 |
|---|---|---|---|
| LOCATION: KU Morgue | SCENE/REPORTING OFFICER: Det. Shomin | SUSPECT(S): | |

**DETAILS OF INVESTIGATION:**

WERE PHOTOGRAPHS TAKEN . . . YES [xx]  NO [ ]
A-332

LATENT PRINTS TAKEN . . . . . YES [xx]  NO [ ]

FOOT PRINTS TAKEN . . . . . . YES [ ]  NO [xx]

PHYSICAL EVIDENCE COLLECTED . YES [xx]  NO [ ]

ADDITIONAL INFO ON BACK . . . YES [ ]  NO [xx]

AUTOMOBILE PROCESSED. . . . . YES [ ]  NO [xx]

LATENTS. . . . . . . YES [ ]  NO [xx]

| FILM: | TOTAL |
|---|---|
| B&W ROLLS | |
| COLOR | |
| POLAROID SHOTS | |

| LATENTS: | |
| NUMBER TAKEN | |

| EVIDENCE: | |
| # OF ITEMS TAGGED | |

**FOR I.D. USE**

| FILM: | NUMBERS |
|---|---|
| B&W | |
| COLOR | |
| POLAROID SHOTS | |

| LATENTS: | |
| WORKABLE | |
| NOT WORKABLE | |

**DETAILS OF REPORT:** On 04-16-94 at 1300 hours the I/O was dispatched to the K.U. Morgue for the autopsy of Daniel Quinn at the request of Det. Shomin. Upon the I/O's arrival he was met by Det. Shomin and Dr. Mitchell and they advised the I/O the details of the offense. The I/O photographed the autopsy with the 8mm VCR camera and with the Mamiya 645 camera. The I/O then recovered the physical evidence listed on the property report from Dr. Mitchell who removed it from the victim.

| INVESTIGATING OFFICER(S): J. Stubler 1390 | IDENTIFICATION COMMANDER: | DATE: 4/18/94 |
|---|---|---|

P0057
LMKSDC_0003447

KANSAS CITY, KANSAS
POLICE DEPARTMENT

# PROPERTY REPORT

04154006081

COMPLAINT/TAX NUMBER

| RECOVERED BY OFFICER | SERIAL NO. | ARRESTEE | | ADULT | STATUS | EVIDENCE | | STOLEN | YES |
|---|---|---|---|---|---|---|---|---|---|
| J. Stabler | 1390 | | | JUVENILE | | SAFEKEEPING | XX | | NO |
| LOCATION | | ADDRESS | | | | FOUND PROP. | | | UNKNOWN |
| KU Morgue | | | | | | RECOVERED BY Property Officer | | | |
| DATE | TIME | ARRESTEE | | ADULT | | | | | |
| 04-16-94 | 0900 | | | JUVENILE | | | | | |
| RECOVERED FROM | | ADDRESS | | | | | | | |
| Daniel Quinn | | | | | | | | | |
| ADDRESS | | CHARGE(S) | | | | | | | |
| Homicide Victim | | | | | | | | | |
| TELEPHONE | OWNER | FINDER | | | | | | | |
| | VICTIM | OTHER | XX | | | | | | |

| QUANTITY | COMPLETE - DETAILED DESCRIPTION OF PROPERTY (Brand, Make, Model, Type, Color, Caliber, Marks, Serial Number, etc.) | VALUE |
|---|---|---|
| ✓ 1 | Hair Sample recovered form the victim's head | |
| ✓ 1 | Blood Sample (2 tubes) recovered from the victim's body | |
| ✓ 1 | Blood Sample recovered from the victim's body (2 swabs) | |
| ✓ 1 | Shotgun Shot (small) & Wadding Sample recovered from the victim's head | |
| ✓ 1 | Blue cigarette Lighter recovered from the clothing of the victim | |
| X 1 | Red & White Shirt with blood on it recovered from the victim's property | |
| X 1 | Pullover Shirt (white) with blood on it recovered from the victim's property | |
| X 1pr | Yellow Pants with blood on them recovered from the victim's property | |
| X 1pr | Black Shoes recovered from the victim's property | |
| X 1pr | White underpants with blood on them recovered from the victim's property | |
| X 2pr | White Socks recovered from the victim's property | |
| | Note: The victim's property was sent to the Morgue from the Emergency room. It is unknown who removed it from the victim. | |

NARRATIVE

The above physical evidence was recovered by Dr. Anderson and given to the R/O at the request of Det. Shomin.

X-ROOM 4/Shelf #17/Row #3

✓ Ref. fig. #2

PROPERTY INVENTORY NUMBER

# 71401

| PROPERTY OWNER | | PROPERTY RELEASED TO | | PROPERTY RELEASED BY | | |
|---|---|---|---|---|---|---|
| NAME | | SIGNATURE | | SIGNATURE | | |
| ADDRESS | | ADDRESS | | DATE | TIME | SERIAL NO. |

| REPORTED BY | SERIAL NO. | DATE | TIME | REVIEWED BY | |
|---|---|---|---|---|---|
| J. Stabler | 1390 | 04-16-94 | 1600 | | |

KANSAS CITY, KANSAS
POLICE DEPARTMENT

# PROPERTY REPORT

04154006081

COMPLAINT NUMBER

| RECOVERED BY OFFICER | SERIAL NO. | ARRESTEE | | ADULT | | STATUS | EVIDENCE | KK | STOLEN | YES | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| J. Stubler | 1390 | | | JUVENILE | | | SAFEKEEPING | | | NO | XX |
| LOCATION | | ADDRESS | | | | | FOUND PROP. | | | UNKNOWN | |
| Bethany Morgue | | | | | | RECEIVED BY Property Clerk | | | | | |
| DATE | TIME | ARRESTEE | | ADULT | | | H. SMITH #1102 | | | | |
| 04-15-94 | 2300 | | | JUVENILE | | DATE 4-18-94 | | | TIME 0125 | | |
| RECOVERED FROM | | ADDRESS | | | | RECEIVED FROM | | | | | |
| Donald Ewing | | | | | | J. Stubler | | | | | |
| ADDRESS | | CHARGE(S) | | | | | | | | | |
| Homicide Victim | | | | | | | | | | | |
| TELEPHONE | OWNER | FINDER | | | | | | | | | |
| | VICTIM | OTHER | XX | | | | | | | | |

| QUANTITY | COMPLETE DETAILED DESCRIPTION OF PROPERTY (Brand, Make, Model, Type, Color, Caliber, Marks, Serial Number, etc.) | VALUE |
|---|---|---|
| 1 | Hair Sample recovered from the Head of the victim | |
| 1 | Blood Sample recovered from the body of the victim (2 tubes) | |
| 1 | Blood Sample recovered from the body of the victim (2 swabs) | |
| 1 | Sample of Shotgun Shot (small) and wadding recovered from the victim's Left Upper Shoulder | |
| 1 | Sample of Shotgun Shot (small) recovered from the victim's middle back on the inside | |
| 1 | Large Shotgun Shot recovered from the victim's right Arm | |
| 1 | Large Shotgun Shot recovered from the victim's Pericardial Sack | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

NARRATIVE

The above physical evidence was recovered from the body of Donald Ewing (Homicide victim) by Dr. Mitchell at the request of Det. Gobulskii Dr. Mitchell then gave it to the R/O as the evidence of the case.

*Ref. #2*

PROPERTY INVENTORY NUMBER

**71401**

| PROPERTY OWNER | | PROPERTY RELEASED TO | | PROPERTY RELEASED BY | |
|---|---|---|---|---|---|
| NAME | | SIGNATURE | | SIGNATURE | |
| ADDRESS | | ADDRESS | | DATE | TIME |
| REPORTED BY | SERIAL NO. | DATE | TIME | REVIEWED BY | SERIAL NO. |
| J. Stubler | 1390 | 04-16-94 | 0800 | | |

KANSAS CITY KANSAS POLICE DEPARTMENT

**\*\* INVESTIGATIVE ADDENDUM / CLEARANCE \*\***

April 16, 1994

FILE # 04154006081

OFFENSE : Double Homicide
REPORT TYPE : Investigative Addendum
INVESTIGATOR : Det. M. Shomin, #1301
UNIT : C. A. Persons/Homicide
# OF ARREST : 1
CLEARED BY : Cleared by Arrest
STATUS : Active
# OF PAGES : 1
SUPERVISOR SIGNATURE :

VICTIM'S NAME : #1-QUINN, DONIEL, B/M, DOB 10-12-72, Address & Telephone Unknown
#2-EWING, DONALD E., B/M, DOB 10-20-59, 3038 N. 20th St., KCK

SUSPECT(S): McINTYRE, LAMONTE, B/M, DOB 7-28-76, 15 YOA, 1929 N. 6th St., KCK, 342-4147

## NARRATIVE

On 4-16-94 at approximately 0830 hours, this reporting detective proceeded to the K.U. Medical Center Morgue for the purpose of attending the post mortem on the above-listed victim, Doniel Quinn. Also in attendance besides this reporting detective was Identification Officer Joseph Stubler, Staff Pathologist Dr. Anderson, Resident Pathologist Dr. Balarezo and Mortician Robert Waters.

Upon arrival at the morgue the victim was already lying on a gurney, wrapped in numerous sheets. Upon removal of the sheets by mortician Robert Waters, the victim was then placed on the examination table. Upon preliminary examination, the victim sustained numerous shotgun blasts to the head and the face, resulting in massive damage to the point that the victim was not recognizable. The right eye was not visible, as it was the area where the blast had hit, as well as several other blasts to the head. Upon x-rays being ordered by Dr. Anderson, it was apparent the victim had sustained numerous blasts to the right side of the face with numerous shotgun pellets being visible in x-ray film on the left side of the victim's head. Also, the victim sustained a shotgun blast to the right hand, which was a through and through wound, entering on the back of the area approximately above the ring finger and exiting at the palm level at the thumb. It was at this point the examination proceeded by Pathologist, advising that it was apparent that the victim had sustained massive head injury, resulting in brain damage, resulting in the victim's death. The procedure was photographed and vide-taped by Identification Officer Stubler, as well as, specimens of blood, urine and vitrious fluid taken for purposes of toxology for traces of alcohol and drugs at a later date and time. The Pathologist advised that the cause of death to the above-listed victim was numerous gunshot wounds

P0060
LMKSDC_0003450

INVESTIGATIVE ADDEND.
FILE #04154006081
PAGE #2

to the head, resulting in massive damage, resulting in his death.

END OF INVESTIGATIVE

321

Supvr. Initial

PAGE    2

P0061
LMKSDC_0003451

KANSAS CITY KANSAS POLICE DEPARTMENT

## ** INVESTIGATIVE ADDENDUM / CLEARANCE **

April 16, 1994

FILE # 04154006081

OFFENSE            : Double Homicide
REPORT TYPE        : Investigative Addendum
INVESTIGATOR       : Det. R. Golubksi, #1376
UNIT               : C. A. Persons
# OF ARREST        : 1
CLEARED BY         : Cleared by Arrest
STATUS             : Active
# OF PAGES         : 3
SUPERVISOR SIGNATURE :

---

VICTIM'S NAME : #1-EWING, DONALD E., B/M, DOB 10-20-59, 3038 N. 20th St., KCK, 621-6903
                #2-QUINN, DONIEL, B/M, DOB 10-12-72, Unknown Address

---

SUSPECT(S): McINTYRE, LAMONTE, B/M, DOB 7-28-76, 1929 N. 6th St., KCK, 342-4147

---

### NARRATIVE

On 4-15-94 at approximately 1400 hours, an individual walked through a vacant lot toward a parked light blue Cadillac bearing Kansas "ITL 176", parking northbound on Hutchings, directly across the street from 3032 Hutchings. The suspect approached the vehicle, he had a shotgun in his possession, he approached the passenger's side of the car, discharged approximately three (3) to four (4) rounds directly into the vehicle, striking both occupants and causing the passenger, Mr. Quinn, to immediately expire. Mr. Ewing managed to survive temporarily, was transported to Bethany and underwent surgery and later expired at the hospital.

Detective Golubski arrived at the scene, the victim had been removed at this point. Present on the scene was the ID Unit, in addition to Detectives W.K. Smith and Krstolich. Detective W.K. Smith there interviewed two (2) witnesses, a Josephine Quinn of 3032 Hutchings and a Niko Quinn of 3018 Hutchings. Ms. Quinn stated that she heard three to four shots and her daughter went to the vehicle. She later went to the vehicle and noticed that the passenger, who is known to them, had been expired, suffering severe massive head injury.

Also, Detective Smith, in interviewing a Niko Quinn, Ms. Quinn indicated to him that she also heard approximately three shots and saw and could possibly identify the suspect.

Detective Krstolich located a witness by the name of Ruby Mitchell. He took a statement from

---

P0062
LMKSDC_0003452

INVESTIGATIVE ADDEND. 1
FILE #04154006081
PAGE #2

Ms. Mitchell. Ms. Mitchell reiterated basically the same narrative. The suspect walking through the vacant lot, directly up to the vehicle and discharging several rounds and then going back through the same means. Ms. Mitchell was brought into the Bureau. Detective Krstolich did an initial composite drawing. Ms. Mitchell stated that she knew the suspect because she used to date his cousin. She came up with a first name of "Lamonte". Detective Maskil also ascertained some information that the suspect's name was "Lamonte". With the assistance of Victoria Meyers of the District Attorney's Office, a picture was produced of a Lamonte McIntyre. A photo line-up was comprised and was shown to Ms. Mitchell and Ms. Mitchell immediately identified the photo of Lamonte McIntyre as being the perpetrator.

Also on the scene, it was mentioned that a John Quinn was on the scene and that he, thinking that the victims were still alive, took a bottle and broke out the driver side windows in an attempt to remove the victims, since somehow maybe the door was jammed in some manner. Mr. John Quinn was not present on the scene while we were there.

Officers Bill Howard, Frank Clair and Lt. Stan Harrington conducted the evidence collection. Underneath the drivers side of the car was one $10 bill and a one $1 bill. Also, there was some plastic substance. There was also an unknown plastic item in the drivers side window of the car. On the passenger's side of the car was one crack pipe and a lighter. The car was processed, photographed and printed on the scene by the ID Unit.

Apparently the vehicle was initially next to a telephone pole facing northbound on Hutchings. Slightly north of the residence of 3032 Hutchings, but on the east side of the street. After the shots were fired, the car rolled back approximately 36.4 feet to it's termination point. The front wheels were approximately 1.6 feet from the curb. The back wheels were approximately 1.7 feet to the curb. The width of the street was 25 feet.

Having made a positive ID of the suspect, through Ms. Mitchell's assistance, Detectives Golubski and Krstolich, with the assistance of Lt. Barber and uniform personnel, initially went to 2908 Parkwood, the last listed address of Lamonte McIntyre. Therein, Lt. Barber spoke with the grandmother. She stated she would try to make contact with Rose McIntyre, the suspect's mother. She stated that Rose McIntyre worked at FiFi's, a restaurant at approximately 5th and Parallel. Officers then converged and did a parallel canvass of the area. Lt. Barber was requested to respond to the restaurant to speak to the mother and grandmother. While there he stated that he was engaged in a conversation with Ms. Rose McIntyre, who made unsolicited remarks about if a person was mentioned as a suspect in a homicide, would they automatically be booked into the jail. Lt. Barber stated that these were unsolicited remarks by the mother. Also, she stated to him that her son, Lamonte, had worked from 11:00 to 2:45 with her at the restaurant.

After speaking to the mother, Lt. Barber observed the suspect in a van next to the restaurant. The mother requested that he come out, at which point, Lt. Barber also stated that Lamonte McIntyre made remarks that he had been with his brother all day long.

Lamonte McIntyre was taken into custody without incident. He was brought into the Bureau. In the Bureau he was advised of his rights by Detective Golubski. This was witnessed by Detective Krstolich and Officer Brown. Lamont stated that he would refuse to sign anything, but that he would talk to us. This, once again I stressed this, after he was advised of his rights. He proceeded to give us his date of birth of 7-28-76. He stated he lived at 1929 N. 6th St., KCK, 342-4147. He

Supvr. Initial _____                                                          PAGE   2

P0063
LMKSDC_0003453

INVESTIGATIVE ADDEND,
FILE #04154006081
PAGE #3

stated that throughout the day he had been with an aunt, Yolanda Johnson, at 1515 Wood, 321-3567. At this address he was with a cousin, Montray Johnson and his girlfriend, Tasha. He stated that at no time did he leave until his brother arrived at about 4:00. Then he still did not leave until he was contacted by his grandmother and mother and then was taken to the area of 5th and Parallel by his mother. He stated that while at the address of 1515 Wood, that neither Montray or Tasha left either. That later in the afternoon Tasha stated she heard several ambulances and knew (this was Lamonte's statement in his interview) that they were going toward the shooting involving Chris Quinn's brother. He also stated some unknown "dude" walked by and informed Tasha and Montray that Chris Quinn's brother had just been shot. Lamonte stated that he did not know the guy. He did not speak to him personally. After this Lamonte refused to give a formal statement. He was then taken and booked into the Juvenile Detention Center.

Later, the autopsy which was suppose to begin at 2100 hours, did not commence until almost 2230 hours. The pathologist stating that the official cause of death was multiple gunshot wounds to the victim. Any of which would have been fatal. Officer Stubler from the ID Unit was present and video-taped the autopsy. At that point, Detective Golubski returned to the Bureau and the investigation is still on-going at this time. At this point, this is the information up to this point.

END OF INVESTIGATIVE

321

Supvr. Initial

PAGE  3

P0064
LMKSDC_0003454

KA   S CITY KANSAS POLICE DEPARTMEN

**\*\* INVESTIGATIVE ADDENDUM / CLEARANCE \*\***

April 16, 1994

FILE # 04154006081

OFFENSE          : Double Homicide
REPORT TYPE      : Investigative Addendum
INVESTIGATOR     : Detective Golubski
UNIT             : Crimes Against Persons
# OF ARREST      : One
CLEARED BY       : Arrest
STATUS           : Active
# OF PAGES       : 2
SUPERVISOR SIGNATURE :

---

VICTIM'S NAME : #1) Donald E. Ewing, B/M, 10-20-59, 3038 N. 20th, KCK, 621-6903
               #2) Daniel Quinn, B/M, 10-12-72, Unknown address

---

SUSPECT(S): Lamonte McIntyre, B/M, 7-28-76, 1929 N. 6th, KCK, 342-4147

---

## NARRATIVE

On 4-16-94 Detective Golubski went to the area of 1515 Wood, in an attempt to locate a suspect vehicle.    At this location there was a vehicle that was described as being driven very often by Lamonte and James McIntyre.    The vehicle that was described was located directly across from this residence, bearing Kansas GIG007.    Numerous photos of the car were taken and were later shown to people in the neighborhood canvas and to other witnesses.

From this location, Detective Golubski responded with Detective Dennis Ware to 3018 Hutchings, at this location we spoke to a Niko Quinn.  Ms. Quinn was still visibly traumatized by what had happened, in as both victims were cousins of hers. She viewed a photo line up of five individuals, she repeatedly and for a prolonged period of time, viewed photo number three, began shaking, became teary eyed, and was very hesitant in making any statements.    I then asked her numerous times if she was fearful of picking the individual, if she in fact thought there was some type of difference in any of the photos; she would not let go of photo number three.    After four or five minutes of this, I then took the pictures from her, asked her very directly if this was the individual; she put her head down and stated that she thought that this was the individual but was not sure at this time positively.  But thought this might be him.   The subject Niko then appeared to be even more traumatized and shaken and excused herself and we concluded that

*31.*

INVESTIGATIVE ADDENDUM
FILE # 04154006081
PAGE 2

interview and the photo session with her.

Previous to this we had spoken to her mother, Josephine Quinn, at 3032 Hutchings. Josephine stated she did not get a good look at the individual. She also viewed the five photos and cannot identify anyone. She stated it was her brother, John Quinn, who resides at 2743 Cleveland, that was the individual that broke the windows. She stated she had been in a verbal confrontation with him prior to the shooting and that her brother had driven around the block at the time of the shooting, heard the shots, and returned, and it was he that had broken the windows out of the victim's Cadillac.

Detective Ware and Golubski went to 2743 Cleveland, left a business card for Mr. Quinn to call us. This is the third card we left with relatives for him to contact us and he has not done such. Also, Josephine stated as per Detective W.K. Smith's statement with her that was not identified by Detective Smith through that statement by Josephine, that there was another daughter by the name of Stacy who stated she knew who the suspect was but on this particular date of the photo line up, Stacy was not available. Josephine was cooperative and stated that she would make ever effort to contact her daughter and have her get in contact with us.

Finally Detective Ware and Golubski recanvassed the 3000 block of Hiawatha. In the Officer's report there was a Breon Shelton of 3025 Hiawatha, who stated she observed the suspect vehicle. In speaking to Breon's mother, she stated we had just missed her and she was at a Beauty Salon at 18th and Washington. We proceeded to this location, located her in the beauty shop. Breon was extremely cooperative. She viewed the photos of the car taken at 1515 Wood, she stated that this was the wrong vehicle. She stated it was definitely a blue Chevy Caprice Classic, 4-door, with dark tinted windows, with Kansas tags. She said the photo of the car that we were showing her was the same color as the suspect vehicle. She also stated that the car that she saw was plain and did not have Daytons and had not been seen by herself in the area previous to this. Also one other note of interest is that Breon also viewed the photos of the five individuals, and she stated that she cannot identify the suspects that got into the car. She also reiterated that it was the one suspect that remained in the car, the other suspect did the shooting and appeared to have a shot gun with him, and got into the car, and they sped off from the scene. She cannot once again identify any of the photos.

At this time there still remains the possibility that John Quinn and Stacy Quinn can identify the perpetrators photo. Also, it is very obvious that Niko Quinn knows exactly who the shooter is, but being highly traumatized at this time is reluctant to provide that information. At this point the investigation is continuing, there is one subject in custody. One other note is to a previous investigative, the Pathologist name for the autopsy of Donald Ewing that I attended was Eric Mitchell.

                              END OF REPORT/424

Supvr. Initial _____                                    PAGE        2

P0066
LMKSDC_0003456

KA...S CITY KANSAS POLICE DEPARTMEN.

** INVESTIGATIVE ADDENDUM / CLEARANCE **

April 16, 1994

FILE # 04154006081

OFFENSE          : Double Homicide
REPORT TYPE      : Clearance
INVESTIGATOR     : Detective Golubski
UNIT             : Crimes Against Persons
# OF ARREST      : One
CLEARED BY       : Arrest
STATUS           : Active
# OF PAGES       : 1
SUPERVISOR SIGNATURE :

VICTIM'S NAME : #1) Donald E. Ewing, B/M, 10-20-59, 3038 N. 20th, KCK, 621-6903
               #2) Doniel Quinn, B/M, 10-12-72, Unknown address

SUSPECT(S): Lamonte McIntyre, B/M, 7-28-76, 1929 N. 6th, KCK, 342-4147

**NARRATIVE**

This case is cleared with the arrest of,

LAMONTE MCINTYRE, B/M, 7-28-76,

with all facts and details pertaining to this file being sent to the District
Attorney's Office, Juvenile Court, for review and final disposition.

END OF REPORT

424

32

Exh. 01

KANSAS CITY, KANSAS POLICE DEPARTMENT
BUREAU OF INVESTIGATIONS

ADDITIONAL INFORMATION
PROSECUTION REPORT

SUSPECTS:      McIntyre, Lamonte

FILE NO:       Homicide File #04154006081

DATE PAPERS SENT TO DISTRICT ATTORNEY:   **April 19, 1994**

1.  Full head diagram
    (Doniel Quinn)          1 page    4-16-94    Detective Shomin

2.  Full body diagram
    (Doniel Quinn)          1 page    4-16-94    Detective Shomin

END OF REPORT

424

P0068
LMKSDC_0003458



Head, surface and skeletal anatomy, anterior and posterior views.

1 of 2

Name _Daniel Quinn_   Autopsy No. _0415400 6081_

Age _21_ _10-13-72_   Race _Black_   Sex _Male_   Date _4 1/6/94_

Massive
Facial
Trauma
from
Shotgun
Blast

Cat. No. 44-1-014-00



KANSAS CITY, KANSAS POLICE DEPARTMENT
BUREAU OF INVESTIGATIONS

ADDITIONAL INFORMATION
PROSECUTION REPORT

SUSPECTS:    McIntyre, Lamonte

FILE NO:    **Homicide - File # 04154006081**

DATE PAPERS SENT TO DISTRICT ATTORNEY:    **April 21, 1994**

| | | | | |
|---|---|---|---|---|
| 1. | Witness Statement (John Quinn) | 4-19-94 | 6 pages | Detective Golubski |
| 2. | Witness Statement (Yolanda Johnson) | 4-20-94 | 8 pages | Detective Golubski |
| 3. | Juvenile Witness Statement | 4-20-94 | 10 pages | Detective Golubski |
| 4. | Witness Statement (M'Sherie Johnson) | 4-20-94 | 7 pages | Detective Golubski |

END OF REPORT

424

P0071
LMKSDC_0003461

KANSAS CITY KANSAS POLICE DEPARTMENT                    FILE # 04154006081
BUREAU OF INVESTIGATIONS
DATE: 4-19-94
TIME: 1407 Hours

## WITNESS STATEMENT

I, John Quinn, make the following statement to Detective Golubski, whom I know to be Detective with the Police Department of Kansas City, Kansas, concerning a matter I understand is the subject of an official investigation.

Q:    What is your full name?

A:    John Quinn.

Q:    When and where were you born?

A:    I was born here in Kansas, April 8, 52.

Q:    Where do you live and what is your telephone number?

A:    I live at 2714 Cleveland, the telephone number is 321-5316.

Q:    With whom do you live?

A:    Well I stay with my mom.

Q:    Where are you employed and how long have you worked there?

A:    I'm self employed.

Q:    What relationship is Donald Ewing and Doniel Quinn to you?

A:    Donald my cousin, Doniel Quinn is my son.

Q:    And calling your attention to this past Friday, at about 2:30 or 3 in the afternoon, did you have an occasion to be there in the 3000 block of Hutchings?

A:    Yes I was.

Q:    Is Josephine your sister?

A:    Yes.

Q:    Were you, your other brother Robert, over there talking to her?

WITNESS STATEMENT OF JOHN QUINN
FILE # 04154006081
PAGE 2

A:   Yeah, right.

Q:   And was there a little disagreement between Robert and Josephine?

A:   Well they was just arguing, it really wasn't about nothing. That's what they
     do you know all the time, off and on, thing of it was it distracted me and I
     should of seen what happened.

Q:   Now you saw your son and your cousin in a vehicle, right?

A:   Yes, but wasn't aware of it.  I mean then yeah at the time, that before it
     happened, yeah I was aware they was there.

Q:   What kind of car were they in?

A:   About a 92 or 93 Fleetwood, powder blue.

Q:   And whose car was that, do you know?

A:   Well Donny Ewing's as far as I know.

Q:   Now were you sitting in the car about this time about three houses down from
     them?

A:   Yes, about three houses down, right behind them, directly....

Q:   Now during the time you were there did either of them indicate to you that
     there was a problem?

A:   No they didn't.

Q:   Did your son tell you why he was there?

A:   I never talked to him.  He sit in the car and really I never was aware it
     was him until we passed him _____

Q:   So he never had a conversation?

A:   Nor or Donny.

Q:   Were they there before you got there?

A:   Yeah, they was sitting there when we pulled up.

Q:   But did he ever get out and talk to anybody else, either of them?

A:   No.

Q:   They look like they were waiting for somebody?

WITNESS STATEMENT OF JOHN QUINN
FILE # 04154006081
PAGE 3

A:   Not, no because you know i'm usually...

Q:   Either of them have a pager on?

A:   No.

Q:   Would it seem to be out of place for them to be waiting there or sitting there?

A:   No, because he usually comes through and you know when I usually see them, you know he might be sitting somewhere you know just talking.

Q:   Had you talked to your son at all that day?

A:   No.

Q:   Now so your in a vehicle three houses down behind your son, correct?

A:   Right.

Q:   And what kind of car were you in?

A:   I was in a Ford Tempo, about 73 -74, dark blue.

Q:   Now it was you, your brother, and another man in this car right and you pull down the street?

A:   We drove right around them.

Q:   You barely made the corner when what did you hear?

A:   A gun shot.

Q:   How many?

A:   One was enough for me to react, because I knew my son was sitting there.

Q:   But how many shots did you hear?

A:   Six all together.

Q:   After you heard the shots what happened?

A:   After I heard the first shot I was trying to get the driver to react, he never reacted until after six shots were shot off.

Q:   Then what occurred?

P0074
LMKSDC_0003464

WITNESS STATEMENT OF JOHN QUINN
FILE # 04154006081
PAGE 4

A:  We went back finally, passed the vehicle they was in, because I visioned my niece standing in her yard right where we just, the location where we just had pulled off from.  Not aware that they was in the car and something had happened like that.  So she told me, I jumped out, finally got out of the car, and walked to the car.  I couldn't get in so I had reached down and picked up a wine bottle, and knocked the window out.

Q:  Now why is it that you couldn't get in the car?

A:  Power locks.  Then I broke the first window and wasn't aware of where the hand lock was or the automatic lock button, and then after that I just broke the back window out.

Q:  Now on the passenger or driver's side?

A:  On the driver's side, I never went to the passenger side.

Q:  Then what happened?

A:  Well I just seen my son and them in there.

Q:  Now did anyone get in that car?

A:  No. Nobody got in it.

Q:  So no one got in the car or took anything out?

A:  No, I was the first one that was there.  I was the first one that knocked the window out, then I didn't even get in the car.

Q:  And then someone called the police and the police arrived?

A:  Right,

Q:  And you had left before the police got there right?

A:  Ah.. let me see.  No, I was there when the police got there.  I left during the time they got there and started taping it off.  They had taped it off and requested everybody to get back and get out of the tape vicinity.

Q:  Mr. Quinn did your son indicate that he was having a problem with anybody that anybody wanted to do him or Donald Ewing any harm?

A:  No, but I sensed that something wasn't right weeks and weeks ago.

Q:  And why is that?

A:  Because the way he was acting and the individuals he associated with.

Q:  Was he ever specific with you that there was a problem with anybody?