**EXHIBIT A
TO DECLARATION OF SONA R. SHAH
IN SUPPORT OF PLAINTIFFS' MOTION TO
EXCLUDE TESTIMONY OF
ROBERT BLAKE McCONNELL**

```
                                                              Page 1

 1             UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF KANSAS
 2

 3

 4   LAMONTE McINTYRE and ROSE   )
     LEE McINTYRE,               )
 5                               )
               Plaintiffs,       )
 6                               )
        vs.                      )Case No. 2:18-cv-02545
 7                               )
     UNIFIED GOVERNMENT OF       )
 8   WYANDOTTE COUNTY and KANSAS )
     CITY, KANSAS, et al.,       )
 9                               )
               Defendants.       )
10
11
12
13
14             VIDEOTAPED DEPOSITION OF
15                 ROSE LEE McINTYRE
16    TAKEN ON BEHALF OF DEFENDANT ROGER GOLUBSKI
17                  JUNE 17, 2021
18                     VOLUME I
19
20
21
22
23
24
25
```

Page 102

1  department the next night and wanting to have
2  sexual relations with you?
3     A.  No, I didn't.
4     Q.  And what was -- what was your thought
5  process there about why not to tell Greg Hill?
6     A.  Well, if he told me not to tell him and I
7  could get in trouble, why would I tell him?
8  That's my thing.  That's what I would think, you
9  know.
10    Q.  Yeah.  And I'm not -- I'm not criticizing
11 your decision, I just want to know, what was it --
12 did you think about it, like maybe I ought to tell
13 Greg Hill, maybe I shouldn't, or was it just no
14 way, I'm not saying a word about this?
15    A.  I really don't know, sir.  I don't know.
16 I just...
17    Q.  So when you got back in the car with Greg
18 Hill, did Greg Hill tell you anything about Roger
19 Golubski at that point?
20    A.  Yeah, he kind of told me kind of -- that
21 Golubski was not a nice cop, you know, and how he
22 does bad things in the community, how he likes
23 black women.  And, you know, he kind of give me a
24 little description of him, you know.
25    Q.  If you go back to page 6 of your

Page 103

1  affidavit, paragraph 44, please.
2     A.  Yeah.
3     Q.  I'm just going to read -- paragraph 44,
4  starting on the second sentence, I'm going to read
5  that out loud.  And if I get it wrong, you correct
6  me.  "I have no trust in the lead investigator,
7  Roger Golubski, and I'm well aware of his
8  reputation in the community as a crooked cop who
9  does not do things the right way."
10        Did I read that correctly?
11    A.  Yes.
12    Q.  So what I just read, you basically knew
13 nothing about Roger Golubski prior to your
14 encounter in the car, but the -- but his
15 reputation in the community as crooked cop, all of
16 that, carries forward from that day on, correct?
17    A.  Right.
18    Q.  And not just because he solicited or
19 asked you for sexual favors, but also because --
20    A.  And finding out about him.
21    Q.  Yeah, Greg Hill tells you some more,
22 right?
23    A.  Other people, too, yeah.  They were
24 telling me how -- 'cause I've never encountered
25 this man.  So, yes, sir, Greg told me a lot about

Page 104

1  Golubski.
2     Q.  When did other people tell you about
3  Golubski?
4     A.  During the -- during the -- I don't know,
5  during that time frame between then and after that
6  incident, you know.
7     Q.  And so we're clear, the then and after
8  the incident, we're talking about the incident --
9  your first encounter with Roger Golubski in the
10 late '80s --
11    A.  Uh-huh.
12    Q.  -- in his car?
13    A.  Yes, sir.
14    Q.  After that point, you go and talk to
15 other people, friends, family in the community,
16 and you learn more about Roger Golubski; is that
17 correct?
18    A.  Yes, sir.
19    Q.  However, at no point in time did you ever
20 tell anybody about Roger Golubski asking you for
21 sexual favors until sometime many, many years
22 after your son was in prison, correct?
23    A.  No, sir.
24    Q.  No, sir?
25    A.  No, sir.

Page 105

1     Q.  Okay.  Who was the first person you told
2  about Roger Golubski?
3     A.  Internal affairs.
4     Q.  Okay.  Did anyone besides -- we'll go
5  back to internal affairs.  Anyone else?
6     A.  No.
7     Q.  When friends and family are telling you
8  these bad things about Roger Golubski, you never
9  piped up and said, you know, what he did to me, he
10 did -- he did something horrible to me as well?
11    A.  I never told you my family told me about
12 Golubski because they didn't know him either.  I
13 never said my family, I said other people.
14    Q.  Okay.
15    A.  But my -- my thing is, no, I didn't tell
16 any of my family 'cause that was embarrassing to
17 me.  That was not -- that wasn't something I could
18 just say go around and talk about.  And once I
19 tried to tell it, and I was told by the Internal
20 Affairs that their officers doesn't do anything
21 like that, then who am I supposed to tell?  Who
22 else am I supposed to tell?
23    Q.  So -- are you fine?  Can we continue or
24 do you want to take a break?
25    A.  No, sir, go ahead.

| Page 134 | Page 136 |
|---|---|
| 1  Q.  For the crack cocaine?<br>2  A.  Yeah.  And -- and another case that --<br>3  yeah, he was on another case with the kids, too.<br>4  Q.  And you told Michael Redmond what about<br>5  Roger Golubski?<br>6       MS. PILATE:  Objection,<br>7  attorney/client privilege.  I'm going to instruct<br>8  Ms. McIntyre not to answer that question on the<br>9  basis of privilege.<br>10      MR. GIST:  Okay.  You've clearly<br>11 waived it by telling the witness to say who she<br>12 told it to.  She already said she told it to him.<br>13 So she told -- she can tell me that she told<br>14 Michael Redmond about it, but can't -- I can't ask<br>15 for detail?<br>16      MS. PILATE:  Correct.  She had a<br>17 contact with an attorney.  The content of that<br>18 conversation is privileged.  She had a contact<br>19 with an attorney as a result of the incident with<br>20 Roger Golubski, but the content of that<br>21 conversation is privileged.<br>22  Q.  (By Mr. Gist)  Tell me every person that<br>23 you have told -- from -- from the late '80s until<br>24 the year 2000, tell me each and every person you<br>25 told about Roger Golubski sexually assaulting you. | 1       MR. GIST:  Well, it wasn't her<br>2  attorney.  You miss -- you list Michael Redmond on<br>3  your Rule 26 disclosures, say nothing about<br>4  attorney/client privilege.<br>5       MS. PILATE:  He's a witness as to<br>6  other things.<br>7       MR. GIST:  Okay.  Well, we're<br>8  going to have to take this one up with the Court.<br>9  You're --<br>10      MS. PILATE:  You're --<br>11      MR. GIST:  -- instructing the<br>12 witness --<br>13      MS. PILATE:  Uh-huh.<br>14      MR. GIST:  -- that she can say I<br>15 talked to Michael Redmond about Roger Golubski<br>16 sexually assaulting me, but you can't ask me<br>17 anymore questions?<br>18      MS. PILATE:  Correct.  Did she --<br>19 you asked her did she tell anyone.  The correct<br>20 answer can't be no.  If she told anyone else other<br>21 than Internal Affairs during that time period --<br>22      MR. GIST:  Okay.<br>23      MS. PILATE:  -- the answer can't<br>24 be no.<br>25      MR. GIST:  All right. |
| Page 135 | Page 137 |
| 1  A.  The people in the -- in the courthouse<br>2  and Michael Redmond.<br>3  Q.  "The people in the courthouse," is that<br>4  the detective --<br>5  A.  That's the --<br>6  Q.  Internal Affairs?<br>7  A.  Yes, sir.<br>8  Q.  All right.  Michael Redmond was your<br>9  son's attorney?<br>10 A.  Yes.<br>11 Q.  Was he your attorney?<br>12 A.  No, he was my children's attorney.  You<br>13 know, I --<br>14 Q.  Okay.<br>15 A.  -- hired him for that.<br>16      MR. GIST:  Ms. Pilate, do you want<br>17 to withdraw your instruction?<br>18      MS. PILATE:  No, because she<br>19 consulted him as an attorney.  Anyone who is<br>20 consulting with an attorney for the purpose of<br>21 legal advice is a prospective client and that, you<br>22 know, privilege also applies to that.<br>23      If at any point we revisit that, you<br>24 know, our position may change, but we can't just<br>25 willy-nilly waive attorney/client privilege. | 1       MS. PILATE:  She did speak with an<br>2  attorney, and that is protected by privilege.  It<br>3  is no different than all of the other questions<br>4  we've been asking here about people consulting<br>5  with their attorneys before depositions.  And, you<br>6  know, whether they prepared --<br>7       MR. GIST:  It's not<br>8  attorney/client -- okay.<br>9       MS. PILATE:  -- but you can't<br>10 delve into the content.  And she consulted him as<br>11 someone who had been injured or wronged and he was<br>12 an attorney and she's getting legal advice.  And,<br>13 yes, indeed that is protected by privilege.<br>14      MR. GIST:  Okay.  Do you think<br>15 she -- okay.<br>16 Q.  (By Mr. Gist)  Why didn't you tell Gary<br>17 Long about Roger Golubski?<br>18 A.  Why would I?  Gary Long, why would I tell<br>19 him anything about Gary --<br>20 Q.  Because he was the defense attorney<br>21 defending your son who was being charged with<br>22 double murder.<br>23 A.  But I mean, I didn't know Golubski was on<br>24 the case.<br>25 Q.  All right. |

| | |
|---|---|
| Page 146<br>1  Q.  Oh, yeah.  I'm not allowed to ask you<br>2  questions about that, so I guess I forgot that<br>3  one.  So I can't ask you what you told Michael<br>4  Redmond, but you're just telling me that you told<br>5  him?<br>6  A.  Yes, sir.<br>7       MR. GIST:  Okay.  And your --<br>8  your -- your instruction still stands that I can't<br>9  ask questions about what -- about what she told<br>10  Michael Redmond?<br>11       MS. PILATE:  Correct.<br>12  Q.  (By Mr. Gist)  Okay.  All right.  But<br>13  Michael Redmond was before your son was even<br>14  arrested for murder, right?<br>15  A.  Yes, he was.<br>16  Q.  So that had to have been in 1994 or even<br>17  earlier?<br>18  A.  Earlier probably, yes, sir.<br>19  Q.  Okay.  So let's do this:  From the time<br>20  your son was arrested for the double murder on<br>21  April 15th, 1994, from that time period moving<br>22  forward, you told Internal Affairs -- oh, I'm<br>23  sorry, I messed this up.  Let me start over.<br>24       You had told Internal Affairs about the<br>25  Roger Golubski sexual assault back in the '80s, | Page 148<br>1  A.  Jim.<br>2  Q.  McCloskey?<br>3  A.  Yes, sir.<br>4  Q.  And can you tell me a year or an<br>5  approximation as to when that occurred?<br>6  A.  Probably about 15 years ago.<br>7  Q.  Around -- okay.  That would be around<br>8  2006?<br>9  A.  Something like that.<br>10  Q.  More than a decade after your son went to<br>11  jail?<br>12  A.  Yeah.<br>13  Q.  And is the reason that you never told<br>14  anybody about Roger Golubski sexually assaulting<br>15  you after your son was arrested was because you<br>16  didn't know Roger Golubski was involved in your<br>17  son's criminal case; is that correct?<br>18  A.  That's correct, sir.<br>19  Q.  So about somewhere around 12 years after<br>20  your son's conviction for a double murder is when<br>21  you first found out that Roger Golubski was<br>22  involved?<br>23       MS. PILATE:  Objection, asked and<br>24  answered.  Same questions over and over.  And if<br>25  we're going to get through, please move on. |
| Page 147<br>1  right?<br>2       MS. PILATE:  Her testimony is what<br>3  it is.  This -- I'm going to object here 'cause<br>4  this ground has been trod and retrod.  If you<br>5  could just start with where she's at right now<br>6  because all of this has been asked and answered<br>7  and asked and answered.  So I'm going ask if you<br>8  could please move forward.<br>9  Q.  (By Mr. Gist)  Ms. McIntyre --<br>10  A.  Yes.<br>11  Q.  -- you told Internal Affairs about Roger<br>12  Golubski sexually assaulting you back in the<br>13  1980s; is that correct?<br>14  A.  Yes, sir.<br>15  Q.  And the next person you told about Roger<br>16  Golubski sexually assaulting you was Michael<br>17  Redmond --<br>18  A.  Yes, sir.<br>19  Q.  -- is that correct?<br>20       MS. PILATE:  Asked and answered.<br>21  Q.  (By Mr. Gist)  Is that correct?<br>22  A.  Yes, sir.<br>23  Q.  And then who's -- the next person you<br>24  told that Roger Golubski sexually assaulted you<br>25  was -- | Page 149<br>1  Q.  (By Mr. Gist)  Is that correct?<br>2  A.  Yes.<br>3  Q.  Is that a yes?<br>4  A.  Yes.<br>5  Q.  Did Jim McCloskey, was -- was he the<br>6  first person who ever told you that Roger Golubski<br>7  was involved?<br>8  A.  Yes.<br>9  Q.  Can we agree that if you knew Roger<br>10  Golubski was a detective investigating your son's<br>11  double murder case, you absolutely would have come<br>12  forward?<br>13  A.  What do you mean, please?<br>14  Q.  Yeah.  If you knew from day one, the day<br>15  your son was arrested, if you knew that Roger<br>16  Golubski was a detective investigating the murder,<br>17  that you would have told your son's criminal<br>18  defense attorney about Roger Golubski's sexual<br>19  assault?<br>20       MS. PILATE:  Objection, calls for<br>21  speculation.<br>22  Q.  (By Mr. Gist)  You can answer.<br>23  A.  I'm not sure, sir.<br>24  Q.  Are you contend -- you understand you're<br>25  a plaintiff in this case, correct? |