**EXHIBIT A**
**TO DECLARATION OF SONA R. SHAH**
**IN SUPPORT OF PLAINTIFFS' MOTION TO**
**LIMIT TESTIMONY OF TARIK KHATIB**

Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF KANSAS
 2
 3    LAMONTE McINTYRE, et al.,)
                                )
 4             Plaintiffs,     )
                                )
 5    vs.                       ) 2:18-cv-02545-KHV-KGG
                                )
 6    UNIFIED GOVERNMENT OF    )
      WYANDOTTE COUNTY AND     )
 7    KANSAS CITY, KANSAS,     )
      et al.,                   )
 8                              )
               Defendants.     )
 9
10
11
12
13
14            DEPOSITION OF DENNIS DEAN WARE, a
15    Defendant, taken on behalf of the Plaintiffs,
16    before Alison A. Tracy, Missouri CCR No. 554,
17    Kansas CSR No. 1525, pursuant to Notice, on the
18    12th day of February, 2021, at Lathrop GPM LLP,
19    2345 Grand, Suite 2200, Kansas City, Missouri.
20
21
22
23
24
25
```

Page 178

1  you accompanied Detective Golubski to show
2  photographs to Niko Quinn, that it was improper
3  for either of you to use suggestion to indicate
4  to her whom she ought to pick, correct?
5     A.  That's correct.
6     Q.  And you understood that it would have
7  been improper for either of you to try to
8  influence Niko Quinn's photo selection in any
9  way, correct?
10    A.  That's correct.
11    Q.  Okay.  Including by pressuring her to
12 pick out anyone, correct?
13    A.  Yes, ma'am, that's correct.
14    Q.  Including by telling her that the
15 shooter was in the stack of photographs, correct?
16    A.  That would be how I would present it,
17 yes, ma'am.
18    Q.  You would tell her that the shooter was
19 in the stack of photographs?
20    A.  No.  My personal advice or remarks would
21 be that the person may or may not be in these
22 photographs and not to be compelled to look at
23 them.  That's the way I handled it.
24    Q.  You didn't just make that up out of the
25 blue.  There are reasons detectives actually are

Page 179

1  instructed not to tell a witness that the suspect
2  is in the stack of photographs, right?
3     A.  They shouldn't be telling them that, no.
4     Q.  And the reason for that is because it is
5  suggestive to tell the witness that the
6  perpetrator is or suspect is in the stack of
7  photos, right?
8     A.  Because that would compel them to feel
9  like they have to identify somebody.
10    Q.  Right.  That's just, that's detective
11 work 101, right?
12       MR. COOPER:  Object to form.
13    A.  Right.
14    Q.  (By Ms. Freudenberger)  Basic common
15 sense, right?
16       MR. COOPER:  Object to form.
17    A.  Yes, ma'am.
18    Q.  (By Ms. Freudenberger)  And you
19 understood by 1994 that if you observed Detective
20 Golubski try to influence Niko Quinn's selection
21 in any way, you had an obligation to intervene to
22 stop that, correct?
23    A.  I did.
24       MR. COOPER:  Object to form.
25    Q.  (By Ms. Freudenberger)  And you would

Page 180

1  have had an obligation, had you observed
2  Detective Golubski try to influence Niko Quinn's
3  photo selection in any way, to report him for
4  doing so, correct?
5        MR. COOPER:  Object to form.
6     A.  I believe that is the same question you
7  just asked, but yes, ma'am.
8     Q.  (By Ms. Freudenberger)  And you would
9  have done so, correct?
10    A.  Yes, ma'am.
11    Q.  But you didn't, correct?
12    A.  No, ma'am.
13    Q.  I'm going to read to you from an
14 affidavit Niko Quinn has given under oath in this
15 case.  Okay?  Not in this case but during a
16 post-conviction proceeding brought by Lamonte
17 McIntyre.  And I'm just going to read it to you
18 because I don't think we have it printed out.
19 So, it says, "The day after the shooting the
20 police came to my house to talk to me again about
21 what I saw.  Detective Golubski and another
22 detective showed me four or five photos and
23 Detective Golubski told me that if I knew who it
24 was, I better testify, and that it would be
25 better for me if I did."  That's Niko Quinn's

Page 181

1  account of -- the first part of Niko Quinn's
2  account of this photo showing.
3        My question to you is, if Detective
4  Golubski stated to Niko Quinn that if she knew
5  who it was she better testify and it would be
6  better for her if she did, that would be grossly
7  improper, correct?
8        MS. EVERS GUERRA:  Object to form.
9        MR. ROACH:  Object to form.
10    A.  Yes, ma'am.
11    Q.  (By Ms. Freudenberger)  And you would
12 have recognized that at the time, correct, had
13 this happened the way Niko Quinn describes?
14    A.  Yes, ma'am.
15    Q.  And you would have had an obligation to
16 report that statement by Detective Golubski to
17 your supervisors, correct?
18    A.  Yes, ma'am.
19    Q.  And you did not do that, correct?
20    A.  No.
21    Q.  Niko Quinn goes on to say, "When I
22 looked at the photographs, photos, and told
23 Detective Golubski I wasn't sure, he pressured me
24 to make an identification."  Now, if that
25 happened, sir, you would have immediately

46 (Pages 178 - 181)

Page 182

1  recognized that it was improper, correct?
2     A.  Yes, ma'am.
3     Q.  And you would have had an obligation to
4  stop Detective Golubski from pressuring the
5  witness and report him first, right?
6     A.  Yes, ma'am.
7     Q.  And report him up the chain of command,
8  right?
9     A.  Yes, ma'am.
10    Q.  And you did not do so, correct?
11    A.  No, I did not.
12    Q.  Okay.  It then states, "But I told him I
13 wasn't sure and could not make an identification.
14 But I noticed that when the other detective was
15 holding the photos for me to look at, he placed
16 his thumb on Lamonte McIntyre's photo as if he
17 were pointing at it.  At the same time that
18 detective was pointing at Lamonte, Detective
19 Golubski was telling me that police had arrested
20 the shooter and had the gun."
21        Now, first of all, you were the other
22 detective there with Detective Golubski, correct?
23        MS. EVERS GUERRA:  Object to form.
24 You can answer if you know.
25    A.  I suppose I am.  I just don't know -- I

Page 183

1  don't know.  Is she talking about the same date
2  or some other date?
3     Q.  (By Ms. Freudenberger)  It starts, "The
4  day after the shooting."
5     A.  According to the report I was there,
6  yes, ma'am.
7     Q.  Okay.  An if you had placed your thumb
8  on Lamonte McIntyre's photo, that would have been
9  grossly improper, correct?
10        MR. COOPER:  Object to form.
11    A.  Yes, ma'am.
12    Q.  (By Ms. Freudenberger)  And you knew
13 that back in 1994, correct?
14    A.  Yes, ma'am, I did.
15    Q.  Okay.  That would have been a direct
16 suggestion, correct?
17    A.  Yes, ma'am.
18    Q.  And if, at the same time, if you had
19 pointed, used your thumb and pointed at Lamonte
20 McIntyre's photograph and at the same time
21 Detective Golubski stated that police had
22 arrested the shooter and had the gun, that would
23 be even more suggestive than simply pointing to
24 Lamonte McIntyre's photo on its own, correct?
25        MS. EVERS GUERRA:  Object to form.

Page 184

1        MR. ROACH:  Object to form.
2     A.  I don't know that it is any more
3  suggestive.  It is already suggestive.  I don't
4  know how much more it would be.
5     Q.  (By Ms. Freudenberger)  Well, Detective
6  Golubski saying we have the perpetrator and we
7  found the gun indicates that police are sure who
8  the suspect is, right?
9        MS. EVERS GUERRA:  Object to form.
10    A.  I don't know what that means to other
11 people.  It doesn't mean that to me.
12    Q.  (By Ms. Freudenberger)  Well, you know
13 in fact that Lamonte McIntyre had already been
14 arrested for this crime, right?
15    A.  No, ma'am, I didn't.
16    Q.  No?
17    A.  No.
18    Q.  Are you saying that when you went out
19 with Detective Golubski to show photos to the
20 witness in a double homicide that occurred the
21 day before, you didn't know that Golubski had
22 actually already arrested Lamonte McIntyre for
23 the crime?
24        MR. ROACH:  Object to form.
25    A.  I know that my memory from that time is

Page 185

1  nil, I don't have any memory.  The only time I --
2  you said, you know, did I know it?  No, I didn't.
3  Not until you just now said it.
4     Q.  (By Ms. Freudenberger)  I see.  I
5  misunderstood.  I misunderstood.  You are not
6  suggesting that you would not have known at the
7  time that Golubski had already arrested Lamonte
8  McIntyre for this crime.  You are saying you
9  don't remember that as you sit here today.
10        MR. ROACH:  Object to form.
11    A.  Yes, ma'am.
12    Q.  (By Ms. Freudenberger)  It is common
13 sense that Golubski would have told you when you
14 went out to show photographs to a witness
15 together in the investigation of this crime that
16 had occurred the day before, that he had a
17 suspect under arrest, right?
18        MR. COOPER:  Object to form.
19        MS. EVERS GUERRA:  Object to form.
20    A.  You would think so, but I don't know.
21    Q.  (By Ms. Freudenberger)  By the way, you
22 have given me some reasons why it is important
23 not to influence a witness's photo selection in
24 any way.  One reason that's important is because
25 a suggestive photo showing can impact a witness's