## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

LAMONTE MCINTYRE and )
ROSE LEE MCINTYRE, )
                           )
       Plaintiffs, )
                           )
       v. )    Case No. 2:18-CV-02545-KHV-KGG
                           )
UNIFIED GOVERNMENT OF )
WYANDOTTE COUNTY, *et al.*, )
                           )
       Defendants. )

## DEFENDANT GOLUBSKI'S MOTION TO DISMISS PLAINTIFF ROSE MCINTYRE'S CLAIM FOR FAILURE TO FOLLOW THE RULES OF CIVIL PROCEDURE AND THIS COURT'S ORDERS WITH MEMORANDUM OF LAW IN SUPPORT

COMES NOW Defendant Roger Golubski, by and through is attorneys of record, and pursuant to Fed. R. Civ. P. 41(b) and Fed. R. Civ. P. 37(b)(2)(v), and moves this Court for an order dismissing Count III of the Second Amended Complaint. In support of this Motion, Defendant Golubski states as follows:

## I.    STATEMENT OF RELEVANT FACTS

### Plaintiff Rose McIntyre's Deposition

1.    The Court's Scheduling Order provides for ten hours of on-the-record time for a deponent. (Doc. 474 ¶ 2(i))

2.    On June 17, 2021, Defendant Golubski began taking the deposition of Plaintiff Rose McIntyre.

3.    The partial deposition of Rose McIntyre was replete with improper speaking objections by Plaintiffs' counsel. Defendants' counsel outlined its concerns over the improper objections in written correspondence dated August 17, 2021, eight days before the deposition of

Ms. McIntyre's was scheduled to resume.  Counsel for the Plaintiffs' never responded to said correspondence in any fashion and cancelled the deposition only two days after receiving the correspondence.   To date, Plaintiffs' counsel never responded to the August 17, 2021, letter. [Exhibit 1]

4.     After five hours and one minute of on-the-record time, Plaintiffs' counsel suspended Ms. McIntyre's deposition with a question pending and, in fact, mid-answer to the following pending question:

> 17     Q.  When was the first time that you formed
> 18  an opinion or a belief that Roger Golubski framed
> 19  your son?
> 20     A.  Well, I don't know.  I said -- let me
> 21  think about that one because...  I just figured
> 22  that was the only other person probably that
> 23  had -- had something to do.  And then...
> 24          MS. PILATE:  Let's take a break,
> 25  Rosie, and get you some water.

5.     On June 29, 2021, counsel for Defendant Golubski emailed Plaintiffs' counsel asking for Ms. McIntyre's availability to finish her deposition, stating "I would like to get this completed in the next few weeks while the first part of the deposition is still fresh in everyone's head to avoid retreading things already covered." (Exhibit 2)

6.     On July 13, 2021, Plaintiffs provided August 25, 2021, as an available date and Ms. McIntyre's deposition was scheduled for that day.  (Exhibit 3)

7.      While the first part of Ms. McIntyre's deposition was in Kansas City, defense counsel agreed to take the remaining portion in Arizona, where Ms. McIntyre is now residing, to accommodate Ms. McIntyre.

8.      Shortly before the deposition was to take place, Plaintiffs canceled the deposition because Ms. McIntyre had fallen ill.

9.      Thereafter, defense counsel repeatedly sought updates on Ms. McIntyre's condition so that the deposition could be rescheduled only to learn, unfortunately, that Ms. McIntyre had been hospitalized for a long period of time.

10.     In early December after another inquiry by defense counsel, Plaintiffs' counsel informed defense counsel that Ms. McIntyre was out of the hospital but still unable to give a deposition.

11.     Plaintiffs' counsel suggested that we revisit the issue right after the first of the year.

12.     On January 5, 2022, defense counsel contacted Plaintiffs' counsel pursuant to her suggestion.  Defense counsel was told that Ms. McIntyre would not be able to complete her deposition prior to the close of discovery, and that Plaintiffs would oppose any extension of discovery.

13.     At a pre-trial conference held on February 8, 2022, in front of the Honorable Judge Gale, Plaintiffs' counsel represented to the Court that they did not know whether and when Ms. McIntyre would be able to sit for a deposition.

**Rose McIntyre's Allegations Against Roger Golubski**

15.     Ms. McIntyre alleges in her lawsuit that she was sexually assaulted by Roger Golubski in the late 1980's.  Subsequent to the alleged sexual assault, Ms. McIntyre alleges Defendant Golubski sought an ongoing sexual relationship, which was rebuffed by Ms. McIntyre.

Ms. McIntyre alleges that Golubski framed her son, Lamonte McIntyre for a double murder in 1994 in retaliation for rebuffing Golubski's sexual advances several years earlier. [See McIntyre's Second Amended Complaint; See also Pre-Trial Order]

14.     Rose McIntyre alleges she never brought up the alleged sexual assault by Golubski during her son's arrest and prosecution because she claims she didn't know Golubski was a detective that investigated her son's case. [Exhibit 4 - Rose McInytre Depo. At 137:18-24]

15.     Rose McIntyre alleges she did not find out that Golubski was involved in her son's criminal case in 1994, until she was told by Jim McCloskey, no less than 12-17 years later years later. [Exhibit 4 at 149:5-8]

**James McCloskey**

16.     At all relevant times, James McCloskey was the founder and executive director of Centurion Ministries, a non-profit organization out of New Jersey that investigates wrongful convictions.

17.     James McCloskey took on Lamonte McIntyre's case around the fall of 2008 and investigated it for many years. In the process, he made around nineteen trips to the Kansas City area conducted numerous interviews and obtained numerous witness affidavits. (Affidavit of James McCloskey at ¶ 11-12, Exhibit 5;  See testimony of James McCloskey at October 2017 Hearing, at p. 99:8 – 100:2, Exhibit 6; See Deposition of James McCloskey, tr. 10:4–15, 72:12–17, 91:19–92:14, Exhibit 7).

18.     McCloskey testified that he believes the truth "evolves" over time and, as a result, does not record most of his interviews with most witnesses. (Deposition of James McCloskey, tr. 45:1–5, Exhibit 7)

19.     McCloskey did, however, however record his first witness interview—Ruby Mitchell's in 2009.  McCloskey agrees that Ruby Mitchell did not recant her trial testimony identifying Lamonte McIntyre as the shooter in the April 15, 1994 murders.  No other audio recordings of McCloskey's interviews were produced. [McCloskey Depo at p. 44:6 – 46:18, Exhibit 7]

20.     McCloskey, who is not an ordained minister or priest, routinely wears a priest collar when he interviews witnesses. [McCloskey Depo at 127:9 – 128:7, Exhibit 7]

22.     McCloskey met over a dozen times with Ms. McIntyre to discuss his efforts to exonerate her son, Lamonte McIntyre. [McCloskey Depo at p. 41:21 – 42:5, Exhibit 7]

23.     In their meetings, which occurred during the 2010-2011 frame, McCloskey would often talk with Ms. McIntyre about Roger Golubski and allegations of sexual misconduct they purportedly uncovered about him. [McCloskey Depo at 87:18 – 90:7, Exhibit 7]

24.     Rose McIntyre first told Jim McCloskey about the sexual assault by Golubski that occurred in the late 1980's in 2010 or 2011.  [McCloskey Depo at 87:18 – 90:7, Exhibit 7][1]

**Rose McIntyre's Affidavit**

21.     Jim McCloskey along with Plaintiffs' counsel drafted a detailed affidavit for Ms. McIntyre, which was signed and notarized on December 5, 2014.  [McCloskey Depo at p. 41:2-24; Rose McIntyre Affidavit, Exhibit 8]

22.     Rose McIntyre's affidavit is nine pages long and contains seventy-two (72) paragraphs [Rose McIntyre Affidavit, Exhibit 8]

---

[1] Initially, Plaintiffs' counsel and legal counsel for McCloskey objected and instructed McCloskey not to answer whether Rose McIntyre's claim that she did not know Roger Golubski was involved in her son Lamonte McIntyre's case was consistent with his interactions with her. [See McCloskey Deposition at p. 40:2-17, Exhibit 7]

23.     Rose McIntyre's affidavit states that she waited in the hallway outside the courtroom during her son Lamont's McIntyre's entire trial, not even being allowed to go to the bathroom.  [Exhibit 8 at ¶ 17]

24.     Roger Golubski testified at Lamont McIntyre's criminal trial.   Additionally, both Rose McIntyre and Roger Golubski testified at Lamont McIntyre's juvenile waiver hearing. [Juvenile Waiver Hearing Transcript, Exhibit 9; Table of Contents of Trial Testimony, Exhibit 10]

25.     Rose McIntyre affidavit states "[t]o this day, I have no idea why police focused on my son." [Rose McIntyre affidavit at ¶ 23, Exhibit 8]

26.     Shortly after Lamonte McIntyre was convicted in 1994, Rose McIntyre hired a private investigator, Caroline Adams.  Caroline Adams obtained a statement from Niko Quinn. [Exhibit 8 at ¶¶ 24 & 28]

27.     In discovery, Plaintiffs produced documents purportedly generated by Caroline Adams summarizing Ms. Adams interview of Niko Quinn.  The statement includes Golubski's name and is dated January 4, 1995.  [LMKSDC_0004658, Exhibit 11]

28.     Rose McIntyre stated in her affidavit that she recalled a story about her son's case being run in "The Call" a local newspaper around the same time as her son's post-trial appeals. [Exhibit 8 at ¶ 40]

29.     In fact, the Call ran an article about Lamonte McIntyre's case on 1997 in which Golubski is mentioned in the article.  [Call Article; Exhibit 12]

**Witness Bernard Crawford's Allegations Against McCloskey**

30.     Bernard Crawford Sr. was staying at Niko Quinn's house at the time of the murders. He was on Niko Quinn's porch with Niko Quinn at the time of the 1994 murders but did not get a good look at the shooter.  [Bernard Crawford Depo at 10:16-25, 12:20 – 15:21, Exhibit 13]

31.     James McCloskey repeatedly approached Bernard Crawford Sr. at his place of work on at least three occasions to question him about the murders.  [Bernard Crawford Depo at 21:4–24:21, Exhibit 13]

32.     Bernard Crawford Sr. testified James McCloskey tried to intimidate and embarrass him.  He also testified that Mr. McCloskey gave him the impression that if he said what McCloskey wanted him to say, McCloskey would have accepted it whether it was true or not. [Id.]

**Witness Joe Robinson's Allegations Against McCloskey**

33.     James McCloskey drafted an affidavit for witness Joe Robinson.  The affidavit is signed an purportedly notarized on February 9, 2011. [McCloskey Depo at 77:1-9, Exhibit 7; Joe Robinson Affidavit, Exhibit 14]

34.     Joe Robinson testified at his deposition that his affidavit was false, coerced, and not notarized in his presence. [Joe Robinson Depo at 111:12–117:7, Exhibit 15]

**Evidence Suggesting McCloskey fabricated Ruby Mitchell's Affidavit**

35.     At Lamonte McIntrye's trial in September of 1994 Ruby Mitchell testified on five occasions that she did not look at the shooter's hair, only his face. [Ruby Mitchell Trial Testimony at 179:8-13, 185:18-24, 207:3-11, 186:17-19, 165:3-8, Exhibit 16]

36.     McCloskey met with Ruby Mitchell no fewer than three times.  McCloskey testified that Mitchell did not recant the testimony she gave at trial at their first meeting, which was audio recorded.  [McCloskey Depo at 44:6 - 47:10, Exhibit 7]

37.     McCloskey worked on an affidavit for Ruby Mitchell, which was purportedly signed and notarized on June 13, 2011.  In the affidavit, Mitchell attests the shooter had French braids. [McCloskey Depo at 46:21-23; See also Ruby Mitchell Affidavit, Exhibit 17]

38.     McCloskey testified under oath at a hearing on Lamonte McIntyre's K.S.A. 60-1507 motion held on October 13, 2017.  At that hearing, McCloskey testified that he pointed out to Mitchell during their third meeting that she testified at trial that she did not know what type of hair the shooter had and that this caused Mitchell to break down and cry.  Mitchell then testified that he left this out of Mitchell's yet to be drafted affidavit because Mitchell "preferred that it not be included." [McCloskey testimony at October 13, 2017, hearing at p. 175:8 - 176:24, Exhibit 6][2]

## II.      ARGUMENT AND AUTHORITIES

Fed. R. Civ. P. 41(b) states, "[i]f the plaintiff fails to prosecute *or to comply with these rules or a court order*, a defendant may move to dismiss the action or any claim against it." (emphasis added).  And, such dismissal, unless stating otherwise, "operates as an adjudication on the merits."  Further, Fed. R. Civ. P. 37(b)(2)(v) permits the Court to dismiss an action, in whole or in part, for failing to obey a discovery order. *Id.*

While dismissal, as a sanction, is generally used as a last report, it is appropriate given the factors Court's consider including: (1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the party in advance that dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992).  Notably, however, these factors are not "a rigid test" and there *is no necessary prerequisite* of a warning prior to dismissal. *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995) ("The fact that Appellant was not warned of the imminent dismissal, or that the court did not evaluate the above factors on the record does not undermine the court's consideration of the remaining factors discussed above").  However, here, there *was* a warning in

---

[2] Unlike McCloskey's first meeting with Ruby Mitchell, the third meeting where the alleged about-face over the shooter having French braided hair was not audio recorded.

this Court's Order of February 8, 2022 (Doc. 558 at p. 6) which admonished Plaintiff that she "this situation exists at potential peril for Plaintiffs ...." Finally, a District Court's dismissal is reviewed for an abuse of discretion. *Id.*

The remaining factors the Court must consider focus on three things: (1) the prejudice to the moving party; (2) the conduct of the non-moving party; and (3) whether less sanctions could prevent future abuses. Unfortunately, however, preventing future abuses are of no concern because Plaintiffs' counsel, through their actions, statements, and non-actions have effectively "run out the clock" on Defendant's ability to finish Ms. McIntyre's deposition.

### A.  Prejudice to Defendant Golubski

Courts have found prejudice to exist when a party is unable, despite trying, to depose a plaintiff. *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) ("Defendants suffered prejudice in preparing for trial without the opportunity to depose the Plaintiffs. Likewise, the Plaintiffs have prejudiced the party Defendants by causing delay and mounting attorney's fees."). Further, Courts have found prejudice when a party has had to expend time and money in preparing for a deposition that never occurred. *Id*; *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1145-46 (10th Cir. 2007).

Here, both exists. And Defendant Golubski has suffered actual prejudice. Ms. McIntyre' claims in this lawsuit that Defendant Roger Golubski framed her son because she refused repeated sexual advances approximately seven years prior to her son's arrest and conviction. Her theory stems from an interaction she alleges to have had with Roger Golubski in the mid to late 1980s where she alleges he performed oral sex upon her, and wanted to date her, but she refused. Ms. McIntyre is *the only* witness who can testify that this interaction occurred. While counsel for Defendant Golubski was able ask some questions about her version of events, he had not yet

completed the questioning that would call her version of events into question and Plaintiffs' counsel unilaterally suspended the deposition in the middle of a question and answer, and only after half of the Court-ordered allotment had been used.  The prejudice resulting to Defendant Golubski, to use a sports analogy, is like calling a football game at halftime.

Specifically, as one example, Golubski's counsel would have, but was unable to, explore McCloskey's "unearthing" of Rose's accusation of sexual assault against Golubski.  There is good reason to believe that he coerced other statements in the case.  Among many of the affidavits Plaintiffs obtained prior to Mr. McIntyre's exoneration that they believe support their allegations is an affidavit from Joe Robinson (Exhibit 14: Affidavit of Joe Robinson).  Mr. Robinson's affidavit made many allegations, including that Mr. Robinson knew an individual called "Monster" (aka Neil Edgar, Jr.) and that Monster shot Doniel Quinn. (Exhibit 14 at ¶¶ 7–15) His affidavit also alleges that Defendant Golubski was "involved" with Stacy Quinn (a witness to the double murder for which Lamonte McIntyre was convicted) and "had sex with her frequently over a long period of time …," and that Stacy Quinn "believed [that] relationship protected her from being arrested." (Exhibit 14 at ¶ 22) His affidavit also states that "Golubski was obsessed with black women and frequently had sex with black female prostitutes …", and "that Golubski would take drugs from people …." (Exhibit 14 at ¶ 23) Mr. Robinson's affidavit further stated that Golubski "father[ed] a child with" of a friend of Joe Robinson's. (Exhibit 14 at ¶ 23)

While these allegations are certainly scandalous, Mr. Robinson testified that he did *not* provide any of that information, had no reason to believe it was true, and only signed the affidavit to get Cheryl Pilate and James McCloskey of Centurion Ministries (Mr. McIntyre's investigator) out of his house. (Exhibit 15: Deposition of Joe Robinson tr. 63:22–64:17)  In Mr. Robinson's

words, "[he] had to sign [the affidavit] to keep them from coming to my house." (Exhibit 15: tr. 112:10–19)

Mr. Robinson did not even read the affidavit before he signed it, which would have been obvious to all watching him sign it. (Exhibit 15: tr. 112:24–113:5)  But, according to Mr. Robinson, one person who did *not* watch him sign the affidavit was Olivia Smith—the purported person who notarized his affidavit. (Exhibit 15: tr. 113:13–15)  Rather, Mr. Robinson testified that the *only* female present when Mr. Robinson signed the affidavit without reading it so that he could get Mr. McCloskey and Cheryl Pilate to stop coming to his house was Cheryl Pilate. (Exhibit 15: tr. 113:16–20)

As it relates specifically to Defendant Golubski, Mr. Robinson testified that he does not have any reason to believe that any of the statements in his affidavit about Defendant Golubski are true. (Exhibit 15: tr. 115:18–24)  Mr. Robinson agreed that Mr. McCloskey was suggesting what his answers to questions should be, and that Mr. Robinson never provided the information that ended up in the affidavit. (Exhibit 15: tr. 116:4–12, 120:13) Mr. Robinson testified that all of the information in the affidavit came from "another cat" that Cheryl Pilate introduced him to, who he later identified by photograph as James McCloskey. (Exhibit 15: tr. 63:10–12, 108:24–110:23)

As Mr. Robinson's testimony under cross examination demonstrates, Plaintiffs' allegations and curated affidavits cannot, and in an adversarial judicial system must not, be taken at face value. That is why Defendant Golubski is *entitled* to confront and cross examine Ms. McIntyre for the duration the Court ordered—10 hours.  And Plaintiff's actions—through obstructive and improper objections, failure to provide meaningful updates as to Ms. McIntyre's prognosis and availability, failure to consent to extension of discovery to permit her deposition—have deprived Defendant Golubski of those rights.

Bernard Crawford is another witness who accuses McCloskey of coercion. Bernard Crawford Sr. was staying at Niko Quinn's house at the time of the murders. He was on Niko Quinn's porch with Niko Quinn at the time of the 1994 murders but didn't get a good look at the shooter. [Exhibit 13: Bernard Crawford Depo at 10:16-25, 12:20 – 15:21]. James McCloskey repeatedly approached Bernard Crawford Sr. at his place of work on at least three occasions to question him about the murders. [Exhibit 13: Bernard Crawford Depo at 21:4–24:21]. Bernard Crawford Sr. testified James McCloskey tried to intimidate and embarrass him. He also testified that Mr. McCloskey gave him the impression that if he said what McCloskey wanted him to say, McCloskey would have accepted it whether it was true or not. [*Id*.]

**B. Plaintiffs' interference with the judicial process, as it relates to Plaintiff Rose McIntyre's claim began during her deposition, if not sooner.**

The Court's Case Management Order permitted 10 hours with each deponent. But, during the first part of Rose McIntyre's deposition on June 17, 2021, Plaintiffs counsel repeatedly, and despite numerous requests to refrain, coached Ms. McIntyre with speaking objections or, in some instances, blatantly told her how to answer or "clarified" her testimony for her. This not only wasted pages of the transcript and time on the record, but also improperly influenced Ms. McIntyre's testimony.

In response to this, in an effort to ensure Ms. McIntyre's resumed deposition would be more productive, Counsel for Defendant Golubski sent Plaintiffs counsel a letter, outlining the impropriety of those types of objections and asked for an agreement for those tactics not to be employed during the resumed deposition on August 25, 2021. A copy of that letter is attached as Exhibit 1.

That letter was sent on Tuesday, August 17, 2021. Six days later, on Monday, August 23, 2021,at 6:55 p.m., Plaintiffs' counsel notified Defense counsel to cancel their travel plans to Arizona because Ms. McIntyre could not give a deposition due to illness.

Because Defense counsel's default position is to assume the best, and give opposing counsel and parties the benefit of the doubt, defense counsel initially took Plaintiffs' counsel's representation that Ms. McIntyre was ill and otherwise unable to give a deposition at face value. However, over the course of the more than seven months that Defendants had been trying to reconvene and finish Ms. McIntyre's deposition, the *only* time Plaintiffs provided an update on Ms. McIntyre's availability was at defendants' or the Court's request. Meaning, whatever her ability now, or at the many times defense counsel asked, there may have been times during that seven-month period when she *could have* sat for the remaining portion of her deposition, had Plaintiffs made the effort as they were obligated to do, to ensure it happened.

To be clear, defense counsel is not suggested that Plaintiffs are misrepresenting her status when asked—although defense counsel has not been provided any medical records, doctor notes, or anything to verify the information. But what defense counsel is suggesting is, based upon the testimony of Ms. McIntyre's children, her health has been "up and down" since she fell ill. Meaning there were likely times during the more than past seven months when plaintiffs could have provided defendants the opportunity to complete her deposition, but did not.

Despite Defense Counsel's best efforts, which are shown below, Plaintiffs never provided any date, or any indication, as to when *or if* Ms. McIntyre would be able to provide a deposition.

| Date | Defense Counsel's Inquire | Plaintiff's Response |
|---|---|---|
| 6/29/2021 | First, we need a date to resume Rose McIntyre's deposition. I would like to get this completed in the next few weeks while the first part of the deposition is still fresh in everyone's head to avoid retreading things already covered. | None |
| 7/13/2021 | Continued Deposition of Rose McIntyre: We will travel to Arizona to complete her deposition. August 25, 2021, will work for us. Please let us know where Ms. McIntyre would like the deposition to take place so we can file the notice | Augusts 25 is fine with my schedule; I will check with Ms. McIntyre to confirm that date. |
| 7/16/2021 | I wanted to follow up and confirm August 25, 2021, is the date to finish Rose McIntyre's deposition and the location we are going to use so I can get our notice on file.  Same for Dr. Woods as it pertains to location on August 11th. Thanks. | I will get back to you about Rose McIntyre. |
| 7/20/2021 | Thank you. The same for Rose McIntyre's deposition on August 25th.   I assume she is in the Phoenix AZ area and will just choose a hotel by the airport unless you have an alternative location. | ATTORNEY PILATE (July 23): Matt, I am tied up today, but Lindsay is working on getting some information to suggest an accessible, convenient location for Rose McIntyre's deposition.

ATTORNEY RUNNELS (JULY 20): I will have answers regarding location for you tomorrow. Will any counsel for defendants be in person for Dr. Woods's deposition? That will assist me in finding space.

ATTORNEY RUNNELS (7 days after inquiry): The following hotels are convenient to the airport and Ms. McIntyre's home and have conference space available. |
| **8/23/2021** | | **Plaintiffs counsel notifies defense counsel of Ms. McIntyre's illness and inability to give a deposition.** |

| Date | Defense Counsel's Inquire | Plaintiff's Response |
|------|---------------------------|----------------------|
| 8/30/2021 | Deposition of Rose McIntyre: We understand that Ms. McIntyre became ill from COVID-19. While it sounds like, based on recent representations made at Joe Robinson's deposition, that she is currently unable to give a deposition, we would like to get that on the calendar.  While each person's recovery can vary, I think scheduling it out about three weeks from now should give plenty of time for Ms. McIntyre to recover, absent a severe circumstance which we are all hoping she can avoid. So, please provide deposition dates toward the end of September. | |
| 9/16/2021 | I wanted to follow up with you on a couple of times. First, any update on the availability of Ms. McIntyre to complete her deposition? I ask because the Defendants' expert deadline is a little over a month away (October 25, 2021) and we need to complete her deposition in order to designate one of our experts | With respect to Ms. McIntyre, I do not know yet when she will be able to complete her deposition. The family is in the midst of making arrangements for the burial of Ms. McIntyre's mother, Maxine Crowder. I am trying to get an answer to your query, but I'm sure you can appreciate the difficulty of the present situation as well as the fact that Ms. McIntyre has been extremely ill. |
| 10/6/2021 | On another subject, I wanted to follow up on the status of completing Rose McIntyre's deposition. I understand she was diagnosed with COVID-19 in late July but would like to know if you have an estimation when she will be available to complete her deposition? Thank you. | Matt,<br>Regarding Rosie, she is hospitalized with Covid complications. That information is current as of early this afternoon. I think an estimate for her deposition would be meaningless right now, but we will keep you posted on her condition.<br>Emma |

| Date | Defense Counsel's Inquire | Plaintiff's Response |
|---|---|---|
| 10/14/2021 | I wanted to follow-up on Rose McIntyre's deposition.  While we are sorry she is in ill health and hospitalized, given our understanding of the correlation between long hospitalizations and mortality relating to COVID, we feel obligated on behalf of our client to inquire further. Could you please provide us with an update about her current condition in as much detail as possible, including her prognosis? If there is a concern that her condition is or may soon become life-threatening then we'll need to preserve the remainder of her testimony as soon as possible. | Matt, I'll reach out and get back to you. |
| 12/7/2021 | I wanted to just check in with respect to Plaintiff Rose McIntyre's deposition.  It has been about 8 weeks since we last communicated on this issue and there is about eight weeks until the end of discovery.  Is there any update on whether Ms. McIntyre is out of the hospital and able to conclude her deposition by the end of discovery? | Matt, I understand that Rosie is out of the hospital but still on oxygen and continues to have difficulty breathing or speaking for any sustained period of time. I suggest we set a time to touch base right after the New Year and see where she is at. Happy to speak anytime before then if you prefer and will let you know if her condition improves. Thanks, Emma |
| 1/5/2022 | I am following up on the email below as you suggested we check in after the first of the year.  Is there any update on whether Ms. Rose McIntyre will be in a position to finish her deposition prior to the currently scheduled close of discovery on January 31, 2022?  Thanks. | Informed via phone call that Rose McIntyre would not be able to give deposition prior to close of discovery and that Plaintiffs would not agree to a discovery extension. |

Ultimately, Plaintiffs' counsel told Defense counsel to follow-up with them after the first

of the—less than a month before the close of discovery, to try to schedule Ms. McIntyre's

deposition.  When counsel for Golubski did as Plaintiff counsel instructed, Plaintiff counsel made

clear Ms. McIntyre would not give a deposition prior to the close of discovery and that Plaintiffs would oppose an extension of discovery—depriving defendants of the opportunity to finish Ms. McIntyre's deposition prior to having to prepare the pre-trial order and dispositive motions.

Plaintiffs have argued that Ms. McIntyre's deposition will have no bearing on dispositive motions or preparation for trial, and that Defendants have sufficient time with Ms. McIntyre. They will likely argue, similarly to how they argued in response to why they should not have to answer contention interrogatories, that their Amended Complaint, thousands of pages of documents, and affidavits, including Ms. McIntyre's, are sufficient. They are not. And if Plaintiffs' position were to be given any weight, it would essentially nullify the need for any discovery to ever occur.

Moreover, during the first part of Ms. McIntyre's deposition, Plaintiff's counsel used the attorney-client privilege as both a sword and a shield. Worse, the privilege was not even applicable. Specifically, Golubski's counsel asked whether Ms. McIntyre had ever told anyone, prior to informing Mr. McCloskey over two decades later, that she had this purported sexual interaction with Defendant Golubski. Before Ms. McIntyre could provide an answer, her attorney objected and answered for her, stating, "go ahead and explain there was contact with another person." (Exhibit 4: Deposition of Rose McIntyre, tr. 131:20–132:5) Thereafter, Ms. McIntyre indicated she had told an attorney, Michael Redmond. However, when defendant inquired further about that alleged conversation, she as instructed not to answer on the basis of the Attorney-Client Privilege.

However, after Defendant Golubski disclosed an expert that opined that the circumstances of Ms. McIntyre's allegation—coming two decades after it allegedly happened, after at least nineteen emotionally taxing meetings with Mr. McCloskey wherein he informed Ms. McIntyre of all the purported allegations of sexual misconduct he was learning about Roger Golubski, and with

having a vested interest in getting her child out of jail—were ripe for a false memory, Plaintiffs

asserted that she had told Mr. Redmond of the interaction.   But, defendants were previously not

permitted to ask her about that alleged conversation as shown below:

> 4    Q.   And you told Michael Redmond what about
> 5  Roger Golubski?
> 6             MS. PILATE:  Objection,
> 7  attorney/client privilege.  I'm going to instruct
> 8  Ms. McIntyre not to answer that question on the
> 9  basis of privilege.
> 10            MR. GIST:  Okay.  You've clearly
> 11  waived it by telling the witness to say who she
> 12  told it to.  She already said she told it to him.
> 13  So she told -- she can tell me that she told
> 14  Michael Redmond about it, but can't -- I can't ask
> 15  for detail?
> 16            MS. PILATE:  Correct.  She had a
> 17  contact with an attorney.  The content of that
> 18  conversation is privileged.  She had a contact
> 19  with an attorney as a result of the incident with
> 20  Roger Golubski, but the content of that
> 21  conversation is privileged.

(Exhibit 4: Deposition of Rose McIntyre, tr. 134:4–21)

Given Plaintiffs' evolving position as to Ms. McIntyre's attorney-client relationship with

Michael Redmond, Defendant deposed Michael Redmond, who testified—without objection—that

the first time he had ever heard the allegation that Defendant Golubski sexually assaulted Ms.

McIntyre was from Cheryl Pilate, a couple years ago.

```
 5         Q.    At any point in time has anyone ever
 6    told you there is an allegation that Roger
 7    Golubski raped Rose McIntyre?
 8         A.    Cheryl Pilate told me.
 9         Q.    Who told you that?
10         A.    Cheryl Pilate.
11         Q.    The attorney sitting here at the table?
12         A.    Wait.  Raped her?  I can't say that for
13    sure.  I can't recall hearing that.  I don't
14    really -- I know that there is an allegation he
15    did something improper towards her but whether it
16    was rape or a pass, I can't specifically recall
17    right now.
18         Q.    And would you recall when you first
19    heard that?
20         A.    I mean, probably a couple of years ago.
```

(Exhibit 18: Deposition of Michael Redmond, Tr. 26:5–20).

And, notably, no objection and instruction not to answer was lodged on the basis of privilege. Additionally, on the eve of the deposition—Sunday, January 23 at 8:19 p.m.—Plaintiffs produced two previously unproduced letters authored by Michael Redmond. The first of which was drafted shortly after his meeting with Rose McIntyre and indicate there was a male witness to the shooting who was related to the shooter. However, the letter was devoid of one key allegation—any reference to a relationship or misconduct by Roger Golubski. (Exhibit 19: Redmond Letters)

At bottom, this motion is about fairness. Is it fair to require defendants, specifically Defendant Golubski, to submit dispositive motions and go to trial in which Plaintiffs will ask a jury for over one-hundred million dollars, without the benefit of a *complete* deposition of one of

the Plaintiffs lodging inflammatory allegations against him? And is it fair, especially when Plaintiffs obstructed the first part of Ms. McIntyre's deposition with improper objections which unnecessarily prolonged the deposition, likely requiring its continuation.  And is it fair when Plaintiffs, days after Defense Counsel sent a letter to address Plaintiffs' improper objections prior to the upcoming continuation, cancelled the deposition at the eleventh-hour citing health concerns relating to the pandemic.  Then, for the next five months, provided no significant updates but only to say she is hospitalized, then out of the hospital but unable to give a deposition, then back in the hospital, then in rehab and, ultimately, that she would not give a deposition within the confines of the Court's scheduling order and that Plaintiffs would *not* agree to extend discovery.

Given the Court's apparent position that discovery and the trial date will not be continued, the *only* available remedy at this stage is dismissal of Ms. McIntyre's claim, and an order excluding any of her testimony from use in dispositive motions or the trial in this matter.

### III.     CONCLUSION

WHEREFORE, for the above and foregoing reasons, Defendants request that the Court enter an order dismiss Plaintiff Rose McIntyre's claim against Roger Golubski, Count III of the Second Amended Complaint and to preclude all testimony provided by Plaintiff Rose McIntyre, and for other relief this Court deems just and proper.

Respectfully submitted,

**ENSZ & JESTER, P.C.**


/s/ Matt Gist

| | |
|---|---|
| MATTHEW J. GIST | KS #20829 |
| CHRISTOPHER M. NAPOLITANO | KS #25499 |

1100 Main Street, Suite 2121
Kansas City, Missouri  64105
Telephone:  816-474-8010
Facsimile:  816-471-7910
E-mails:     mgist@enszjester.com
                   cnapolitano@enszjester.com

**and**

| | |
|---|---|
| MORGAN L. ROACH | KS #23060 |
| SEAN P. McCAULEY | KS #20174 |
| NICHOLAS S. RUBLE | KS #25636 |
| JEFFREY S. KRATOFIL | KS #23983 |

MCCAULEY & ROACH, LLC
527 W. 39th Street, Suite 200
Kansas City, Missouri  64111
Telephone:  816-523-1700
Facsimile:  816-523-1708
E-mails:     morgan@mccauleyroach.com
                   sean@mccauleyroach.com
                   nick@mccauleyroach.com
                   jeff@mccauleyroach.com
**ATTORNEYS FOR DEFENDANT
DETECTIVE ROGER GOLUBSKI**

## CERTIFICATE OF SERVICE

I hereby certify that, on April 1, 2022, the above and foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

MICHAEL J. ABRAMS      KS #15407
WILLIAM G. BECK        KS #77974
ALEXANDER T. BROWN     KS #78891
ALANA M. McMULLIN      KS #78948
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri  64108
Telephone:  816-292-2000
Facsimile:  816-292-2001
E-mail(s):  michael.abrams@lathropgmp.com
          william.beck@lathropgpm.com
          alexander.brown@lathropgpm.com
          alana.mcmullin@lathropgpm.com
**and**

CHERYL A. PILATE       KS #14601
LINDSAY RUNNELS      KS #78822
MORGAN PILATE, LLC
926 Cherry Street
Kansas City, Missouri  64106
Telephone:  816-471-6694
Facsimile:  816-472-3516
E-mail(s):  cpilate@morganpilate.com
          lrunnels@morganpilate.com
**and**

BARRY SCHECK         *Pro Hac Vice*
EMMA FREUDENBERGER   *Pro Hac Vice*
AMELIA GREEN         *Pro Hac Vice*
SONA R. SHAH         *Pro Hac Vice*
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson Street, 8th Floor
New York, New York  10013
Telephone:  212-965-9081
Facsimile:  212-965-9084
E-mail(s):  barry@nsbcivilrights.com
          emma@nsbcivilrights.com
          amelia@nsbcivilrights.com
          sona@nsbcivilrights.com
**ATTORNEYS FOR PLAINTIFFS**

DAVID R. COOPER                KS #16690
CHARLES E. BRANSON            KS #17376
FISHER, PATTERSON, SAYLER & SMITH, LLP
3550 SW 5th Street
Topeka, Kansas  66606
Telephone:   785-232-7761
Facsimile:   785-286-6609
E-mail(s):   dcooper@fpsslaw.com
             cbranson@fpsslaw.com

**and**

HENRY E. COUCHMAN, JR.    KS #12842
EDWARD JAMES BAIN         KS #26442
UNIFIED   GOVERNMENT   OF   WYANDOTTE
COUNTY
KANSAS CITY, KANSAS LEGAL DEPARTMENT
701 North 7th Street, Suite 961
Kansas City, Kansas  66101
Telephone:   913-573-5060
Facsimile:   913-573-5243
E-mail(s):   hcouchman@wycokck.org
             jbain@wycokck.org
**ATTORNEYS      FOR      DEFENDANT
UNIFIED      GOVERNMENT      OF
WYANDOTTE  COUNTY  AND  KANSAS
CITY, KANSAS**


SEAN M. STURDIVAN         KS #21286
ELIZABETH A. EVERS        KS #22580
TRACY M. HAYES           KS #23119
SANDERS WARREN RUSSELL LLP
11225 College Boulevard, Suite 450
Overland Park, Kansas  66210
Telephone:   913-234-6100
Facsimile:   913-234-6199
E-mail(s):   s.sturdivan@swrllp.com
             e.evers@swrllp.com
             t.hayes@swrllp.com
**ATTORNEYS FOR THE ESTATE OF
DETECTIVE     JAMES     MICHAEL
KRSTOLICH,   DETECTIVE   DENNIS
WARE, OFFICER JAMES L. BROWN,
THE ESTATE OF LIEUTENANT DENNIS
OTTO  BARBER,  DETECTIVE  CYLDE
BLOOD, DETECTIVE WK SMITH, AND**

**THE ESTATE OF LIEUTENANT STEVE
CULP**

/s/ Matt Gist

**ATTORNEYS FOR GOLUBSKI**