## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| LAMONTE MCINTYRE and <br> ROSE LEE MCINTYRE, <br><br> Plaintiffs, <br><br> v. <br><br> UNIFIED GOVERNMENT OF <br> WYANDOTTE COUNTY, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 2:18-CV-02545-KHV-KGG <br> ) <br> ) <br> ) <br> ) <br> ) |

### DEFENDANT ROGER GOLUBSKI'S MOTION
### FOR BIFURCATED/SEPARATE TRIAL

COMES NOW Defendant Roger Golubski, by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 42(b), and for his Motion for Bifurcated/Separate Trial, states as follows:

**I.    NATURE OF THE CASE**

Lamonte McIntyre and Rose McIntyre bring suit against Defendant Golubski, his fellow officers, and his former employer, the Unified Government of Wyandotte County/Kansas City, Kansas ("Unified Government"), alleging he was wrongfully convicted. Specifically, Plaintiffs assert the following claims:

Count 1:    Under Section 1983, Lamonte asserts Fourth and Fourteenth Amendment malicious prosecution claims against Golubski, Krstolich, Ware, Brown, Barber, Culp, and Smith;

Count 2:    Under Section 1983, Lamonte asserts Fourth and Fourteenth Amendment evidence fabrication and *Brady* violations against Golubski, Krstolich, Ware, Brown, Barber, and Smith;

Count 3:    Under Section 1983, Lamonte and Rose assert First and Fourteenth Amendment familial association claims against Golubski;

| | |
|---|---|
| Count 4: | Under Section 1983, Lamonte asserts Fourth and Fourteenth Amendment failure to intervene claims against Krstolich, Ware, Barber, and Culp; |
| Count 5: | Under Section 1983, Lamonte asserts Fourth, Fifth, and Fourteenth Amendment conspiracy claims against Golubski, Krstolich, Ware, Barber, and Culp; |
| Count 6: | Under Section 1983, Lamonte asserts Fourth and Fourteenth Amendment supervisory liability claims against Culp; |
| Count 7: | Under Section 1983, Lamonte and Rose assert *Monell* claims against the Unified Government; |
| Count 8: | Under state law, Lamonte asserts malicious prosecution claims against Golubski, Krstolich, Ware, Brown, Barber, Culp, and Smith; |
| Count 9: | Under state law, Lamonte asserts *respondeat superior* liability against the Unified Government for the state-level malicious prosecution claim. |

(Doc. 562, pp. 40–41)

## II.   STATEMENT OF BACKGROUND FACTS

Plaintiff Lamonte McIntyre was convicted for two 1994 homicides and spent twenty-three years in prison before being released in 2017. (Doc. 562, p. 2; Doc. 562, Stipulation ¶ 17), Defendant Golubski was a detective with the Kansas City, Kansas Police Department in 1994, and is *one* of the officers who investigated the homicides for which McIntyre was charged and convicted. (Doc. 562, Stipulation ¶ 3, p 9) While Plaintiffs' claims are numerous, the essence of all their claims is that Roger Golubski framed, or directed others within a few hour period to frame, Lamonte McIntyre for the 1994 double murders, because in 1987 or 1988—six to seven years earlier—Lamonte's mother, Rose McIntyre, rebuffed Golubski's efforts at a sexual relationship. (Doc. 562, pp. 5–22)

To support this theory, Plaintiffs have been focused on and likely intend to offer "reputation" evidence, or other purported evidence, that Defendant Golubski was attracted to black women, and that he used the "power of his badge" along with the promise of leniency or legal help

2

in exchange for sexual favors or assistance in solving cases. (Doc. 562, p. 5–22) However, this evidence is not, or should not be, admissible against Defendant Golubski under Fed. R. Civ. P. 404(b). While some of this evidence could *arguably* be admissible against the other individual defendants and/or the Unified Government to prove its purported knowledge and ratification of the alleged actions for purposes of *Monell* or supervisory liability, none of it can be used against Roger Golubski to prove he acted in conformance with prior (alleged) bad acts.

### III. QUESTION PRESENTED

Should the Court bifurcate the trial against Defendant Golubski from the other Defendants pursuant to Fed. R. Civ. P. 42(b) to avoid confusing the jury, conflating issues, and causing unfair prejudice to Golubski resulting in an unfair trial?

### IV. ARGUMENTS AND AUTHORITIES

#### A. Standard for Bifurcated Trials

District courts have discretion to order separate trials on claims for convenience, to avoid prejudice, or to expedite and economize trials of one or more separate issues or claims. Fed. R. Civ. P. 42(b). "The decision to bifurcate a trial 'must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury.'" *Valdez v. Motyka*, 2020 WL 3963717, at *17 (D. Colo. July 13, 2020) (quoting *York v. AT&T*, 95 F.3d 948, 957–58 (10th Cir. 1996)). While the Court must consider convenience, economy, and whether the issues are separable, it must also consider the resulting fairness and prejudice issues. *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964–65 (10th Cir. 1993). In fact, the "paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants. Considerations of economy of time, money and convenience of

3

witnesses must yield thereto." *Moss v. Associated Transp., Inc.*, 344 F.2d 23, 26 (6th Cir. 1965) (cleaned up).

Because whether a fair trial can be had without undue prejudice is the critical inquiry, this Motion begins there, and addresses the remaining elements—separability and judicial economy—thereafter.

> **B.    Defendant Golubski will be unfairly prejudiced and will not receive a fair trial if the claims against him are not bifurcated.**

Unfair prejudice exists where a jury is invited to "render a verdict on an improper emotional basis," and when a jury's "attitude toward the defendant [is affected] wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Soto*, 799 F.3d 68, 90 (1st Cir. 2015); *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008). Unfair prejudice "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Here, Plaintiffs will attempt to introduce evidence that Golubski worked for drug dealers, had illicit, and in some cases non-consensual, relationships with prostitutes, used prostitutes and informants to fabricate evidence against criminal defendants, and was even responsible for the deaths of numerous women. (Doc. 562, pp. 5–22) But none of these purported activities, or evidence of them, occurred within the investigation of Lamonte McIntyre. Rather, they are instances of alleged misconduct occurring outside the purview of the Lamonte McIntyre investigation. As a result, none of it would be relevant or admissible against Golubski. However, Golubski is not the only Defendant.

Lamonte McIntyre also sues many other officers and detectives for their alleged failure to intervene, and Defendant Culp for his failure to supervise Golubski. McIntyre also sues the

4

Unified Government alleging that its policies or custom and practice caused McIntyre's alleged constitutional deprivation. To hold the Unified Government and other officers responsible under 42 U.S.C. § 1983 for Golubski's alleged conduct, McIntyre must show that the other defendants, including the Unified Government, had knowledge of Golubski's alleged nefarious activities and failed to act. And it is at least arguable that the purported evidence of Golubski's other prior bad acts could be used to that end—but only against the other Defendants. These alleged prior bad acts are neither admissible under Fed. R. Civ. P. 404(b) due to their prejudicial effect, nor are they relevant to the claims against Golubski. *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989) ("[T]here is a danger that evidence admissible on the issues relating to conduct by the City or Officer Cohen will 'contaminate' the mind of the finder of fact in its consideration of liability of the other defendant."). For that reason, any introduction of such evidence would unfairly prejudice Golubski by inviting the jury to conflate the issues and the purpose for which evidence is introduced, and render a verdict not for what Golubski did or did not do in the Lamonte McIntyre investigation, but what he did or did not do over the course of his entire career. The only way to properly mitigate this unfair prejudice is to bifurcate the trial against Roger Golubski.

### 1. *Evidence of Golubski's alleged prior bad acts is inadmissible against Golubski under Rule 404(b).*

Federal Rule of Evidence 404(b) exists to ensure that *even if* a person committed prior bad acts, that person is not presumed guilty of an allegation simply because of his or her past. *Old Chief*, 519 U.S. 172 at 181 (1997) (quoting *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948)) (finding that Rule 404(b) reflects the common-law tradition to not permit propensity evidence that would persuade a jury to prejudge a defendant as "one with a bad general record and deny him a fair opportunity to defend against a particular charge."). After all, the purpose of a trial is to determine the truth as it relates to the claim alleged,

5

not to determine the veracity of allegations of prior unrelated alleged misdeeds. Rule 404(b) reads, in part:

> Evidence of any other crime, wrong, or act is ***not admissible*** to prove a person's character in order to show that on a particular occasion that person acted in accordance with the character.

Fed. R. Evid. 404(b)(1) (emphasis added). But, despite this Rule's clear admonishment, that is precisely what Plaintiffs have attempted, and continue to attempt to do—throw out enough salacious and scandalous allegations—almost all of which are nothing but "reputation" evidence and inadmissible hearsay—so that the media, the public, the Court, and, they hope, a jury, will believe Golubski is a bad guy that *probably* did "this" too, and award them over $100,000,000.00. (Doc. 562, pp. 5–22, 56–57) That is not how our justice system is supposed to work, and this Court must protect not only itself, but those whom we entrust to administer justice—the jurors—against the court of public opinion, public perception, and the Plaintiffs' entreaty, however sincere, to right one erroneous verdict with another.

In *Tanberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005), the Court upheld a trial court's exclusion of 404(b) evidence in a Fourth Amendment excessive force case. The plaintiff tried to introduce evidence of an officer's prior use of excessive force and prior arrests without probable cause. *Id.* at 1167. The district court determined that such evidence was irrelevant and highly prejudicial. *Id.* The plaintiff argued these other instances of bad conduct showed the officer's intent to use excessive force against the plaintiff. *Id.* The district court and the Tenth Circuit disagreed, finding that Fourth Amendment claims are based upon objective reasonableness, not the state of mind of the officer. *Id.* at 1167-68. The same is true here. Golubski's conduct must be judged in light of the information known to Golubski at the time of his conduct—not any alleged prior bad acts.

6

In *Brunson v. City of Dayton*, 163 F.Supp.2d 919, 924 (S.D. Ohio 2001), a plaintiff sued individual officers and the police department under § 1983 relating to a police shooting. The Court ordered the trials for the individual defendants be separated from the City because a single trial would permit evidence offered against the police department about incidents of alleged misconduct of police officers outside the purview of the shooting at issue, and would prejudice the individual defendants. *Id*. The Court made clear that an individual officer's liability "must be decided by the jury only on the facts of the particular encounter on which this case is based." *Id.* at 924. Accordingly, the "jury must be allowed to consider the evidence regarding *this incident*, with the focus on that evidence unimpaired by a torrent of information concerning the conduct of police officers in other unrelated situations at other times." *Id*. (emphasis in original). The Court noted that the danger of prejudice was real and not speculative because the Plaintiffs made clear they intended to prove their *Monell* claim with circumstantial proof that the police department customarily failed to make any meaningful investigation into alleged excessive use of force. *Id.* at n.7. In weighing the bifurcation factors, the Court determined that "any inconvenience or lack of economy which would flow from the necessity of conducting two trials would pale in comparison to the prejudice which would befall the individual Defendants, if Plaintiff's claims against them were to be resolved in the same trial as the Plaintiff's *Monell* claim." *Id*. at 925.

Here, for the same reasons that the risk of prejudice to the defendants in *Brunson* was real, so too are they real against Golubski. McIntyre has made it clear that he intends to prove his *Monell* claim against the KCKPD by using evidence of alleged pervasive misconduct by Golubski and others to show the KCKPD's knowledge and a pattern and practice of permitting such actions. While that evidence could be admissible for that purpose, it is not admissible to prove Golubski's alleged misconduct *in this case*, and permitting a jury to hear all of the other purported evidence

7

would confuse the jury, subject Golubski to prejudgment for other acts, and cause the jury to render a verdict on alleged conduct outside of Lamonte McIntyre's case.

Further, because Defendant Golubski exercised his constitutional right under the Fifth Amendment in response to Plaintiffs' questioning of him, a significant risk exists that the use of evidence which *may be* admissible against other defendants may improperly form the basis to ask questions to which the Fifth Amendment may be invoked. As this Court is aware, Plaintiffs, knowing a defendant will plead the Fifth, cannot simply ask unfounded questions which are not supported by independent evidence that can then form the basis of an adverse inference. *See, e.g.*, *Baxter v. Palmigiano*, 425 U.S. 308, 317–18, 96 S. Ct. 1551, 1558, 47 L. Ed. 2d 810 (1976); *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995); *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000). Without other independent bases beyond a Fifth Amendment invocation, Plaintiffs' counsel could have just as easily asked Golubski, "did you frame Lee Harvey Oswald?" and use it to prove he did just that. But here, the real concern exists that Plaintiffs could attempt to conflate evidence relevant only to their claims about the other defendants' knowledge of Golubski's alleged prior conduct as the basis to ask a question to which an invocation was made—evidence that would not otherwise be admissible against Golubski. Thus, if Defendant Golubski were tried along with the other defendants the evidence would do nothing more than conflate the issues, confuse the jury, and contaminate their minds by misleading them as to the purpose for which evidence was introduced, and against whom and for what purpose it may be considered. This is precisely why courts routinely separate the trials of defendant police officers from their employers when *Monell* claims are present, and why this Court should separate Defendant Golubski's trial from the Unified Government's trial here. *Wilson v. Town of Mendon*,

294 F.3d 1, *3 (1st Cir. 2002) (recognizing that bifurcation is "a common practice in police civil rights cases").

Bifurcation of Defendant Golubski's trial is not only appropriate here, but is necessary to ensure Defendant Golubski receives a fair and impartial trial, which must be the Court's paramount consideration. *Moss v. Associated Transp., Inc.*, 344 F.2d 23, 26 (6th Cir. 1965). And, a limiting instruction, given the nuances in the types of claims being made against numerous defendants, would be inadequate to protect against the unfair prejudice. *See Huizar v. City of Anaheim*, 840 F.3d 592, 603–04 (9th Cir. 2016) ("[I]f a limiting instruction was considered sufficient to cure all prejudice, there would be no need ever to bifurcate to avoid prejudice in other cases; yet in the civil rights context, courts often bifurcate the trials of individual officers from municipalities to avoid such prejudice.").

> 2. *Evidence of Golubski's alleged relationships with informants and/or prostitutes is not relevant to Plaintiffs' claims against Golubski.*

Any allegations relating to Golubski's use of, and relationships with, informants and/or prostitutes are not probative in this case. Here, two eyewitnesses identified Lamonte McIntyre in open court as the killer on two occasions—Niko Quinn and Ruby Mitchell. Neither Quinn nor Mitchell were prostitutes nor Golubski's informants. In fact, Mitchell testified that she had never sold sex, and that April 15, 1994, was the first and last time she interacted with Roger Golubski.[1] Similarly, Quinn testified that she had no interactions with Golubski prior to April 15, 1994.[2] Because neither Quinn nor Mitchell were informants of Golubski's, or had any interactions with him prior to April 15, 1994, any evidence of his development of relationships—illicit or not—with

---

[1] Exhibit A: Deposition of Ruby Mitchell, tr. at ; 124:15–125:8 and 136:14–22.
[2] Exhibit B: Deposition of Niko Quinn, tr. at 81:23–82:1.

9

prostitutes or informants is entirely irrelevant to *this* case because non-informant eyewitnesses convicted Lamonte McIntyre.

> **3.    Any probative value of evidence of Golubski's alleged relationships with informants and/or prostitutes would be substantially outweighed by the prejudicial effect it would have on Golubski.**

Rule 403 directs courts to consider the effect on the jury of otherwise admissible evidence by providing for the exclusion of evidence when its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. Here, even if evidence of Golubski's alleged prior bad acts *were* probative in this case, any probative value would be grossly outweighed by the prejudicial effect it would have on Golubski, and such evidence would serve only to conflate the issues and confuse the jury. If a jury is permitted to hear reputation evidence and learn about bad acts that he allegedly committed outside the scope of his role in the Lamonte McIntyre case, it would do nothing but inflame the jury and entice them to hate Roger Golubski—as the media, mostly through editorials, has already successfully done—and render a verdict based upon those alleged bad acts and emotional responses evoked rather than based upon what *actually happened in Lamonte McIntyre's case*.

As explained above, some of this overly prejudicial evidence *may* be relevant in Plaintiff's claims against other defendants, but it is not relevant against Golubski, and the danger of unfair prejudice, confusing the issues, and misleading the jury substantially outweighs any probative value of the evidence. As a result, the only way to sufficiently alleviate concerns of confusing the jury of the importance of such evidence, and the unfair prejudice against Golubski, is to separate his trial.

### C. The claims against Defendant Golubski are separable.

In civil rights cases such as the McIntyres', separating trials against police officers is common. *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) (noting district court bifurcated trial of police officer and city on a case alleging excessive force and lack of probable cause for arrest.); *Wilson v. Town of Mendon*, 294 F.3d 1, *3 (1st Cir. 2002) (recognizing that bifurcation is "a common practice in police civil rights cases"); *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311 (2d Cir. 1999) (where district court bifurcated trials of police officer and city); *Williams v. City of Chicago*, 315 F.Supp.3d 1060 (N.D. Ill. 2018); *Carr v. City of North Chicago*, 908 F.Supp.2d 926 (N.D. Ill. 2012); *Treadwell v. Salgado*, 2022 WL 267988 (N.D. Ill. Jan. 28, 2022).

Thus, the claims against Defendant Golubski are clearly separable from the claims against all other defendants. As indicated above, Plaintiffs bring claims against Roger Golubski, claims against other individual officers, and claims against the Unified Government. The claims against Defendant Golubski and the Unified Government are clearly separable.

### D. Bifurcation serves judicial economy and convenience.

Bifurcation may be appropriate where "the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999). If Defendant Golubski's trial were bifurcated and conducted prior to the Unified Government's trial, its result might eliminate the need to litigate Plaintiffs' claims against the Unified Government, thereby aiding in convenience and economy, and weighing in favor of separation. Before liability may be imposed under *Monell*, there must be an underlying constitutional violation. *Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1057 (D. Kan. 2021); *Brunson v. City of Dayton*, 163 F.Supp.2d 919, 925 (S.D. Ohio 2001) ("The first trial will most

11

probably moot the need for a second trial. A finding by the jury in the first trial … that those Defendants had not violated Brunson's constitutional rights, would resolve Plaintiffs claims against Dayton."). Or, at a minimum, bifurcation would limit the issues to be tried—the moving force behind a violation and not the existence of a violation on the part of the Unified Government.

Further, the claims asserted against Defendant Golubski and the Unified Government are considerably different and require different evidence. Separation of the trials would aid in the efficient administration of the case and management of the trials, would better delineate the different issues applying to each defendant, and would avoid confusing or contaminating the jury with propensity evidence that should not be admissible against Defendant Golubski. And, unlike some cases in which a motion to bifurcate is denied, Defendant Golubski is not seeking to bifurcate discovery. In sum, bifurcation will better delineate the issues, clarify the relevant evidence, streamline and simplify the presentation of proof, and prevent the contamination of the jury by propensity evidence which might be admissible against the Unified Government but would be inadmissible against Defendant Golubski.

## IV.  CONCLUSION

WHEREFORE, Defendant Golubski respectfully requests that this Court grant his Motion to Separate Trials, order a separate trial for Defendant Golubski, and for such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

**ENSZ & JESTER, P.C.**

/s/ Christopher M. Napolitano
MATTHEW J. GIST            KS #20829
CHRISTOPHER M. NAPOLITANO  KS #25499
1100 Main Street, Suite 2121
Kansas City, Missouri  64105
Telephone:  816-474-8010
Facsimile:  816-471-7910
E-mails:    mgist@enszjester.com
            cnapolitano@enszjester.com

**and**

MORGAN L. ROACH         KS #23060
SEAN P. McCAULEY        KS #20174
NICHOLAS S. RUBLE       KS #25636
JEFFREY S. KRATOFIL     KS #23983
MCCAULEY & ROACH, LLC
527 W. 39th Street, Suite 200
Kansas City, Missouri  64111
Telephone:  816-523-1700
Facsimile:  816-523-1708
E-mails:    morgan@mccauleyroach.com
            sean@mccauleyroach.com
            nick@mccauleyroach.com
            jeff@mccauleyroach.com
**ATTORNEYS FOR DEFENDANT
DETECTIVE ROGER GOLUBSKI**

## **CERTIFICATE OF SERVICE**

   I hereby certify that, on April 15, 2022, the above and foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

MICHAEL J. ABRAMS   KS #15407  
WILLIAM G. BECK    KS #77974  
ALEXANDER T. BROWN  KS #78891  
ALANA M. McMULLIN   KS #78948  
LATHROP GPM LLP  
2345 Grand Boulevard, Suite 2200  
Kansas City, Missouri  64108  
Telephone:   816-292-2000  
Facsimile:   816-292-2001  
E-mail(s):   michael.abrams@lathropgmp.com  
     william.beck@lathropgpm.com  
     alexander.brown@lathropgpm.com  
     alana.mcmullin@lathropgpm.com  

**and**

CHERYL A. PILATE    KS #14601  
LINDSAY RUNNELS    KS #78822  
MORGAN PILATE, LLC  
926 Cherry Street  
Kansas City, Missouri  64106  
Telephone:   816-471-6694  
Facsimile:   816-472-3516  
E-mail(s):   cpilate@morganpilate.com  
     lrunnels@morganpilate.com  

**and**

BARRY SCHECK    *Pro Hac Vice*  
EMMA FREUDENBERGER *Pro Hac Vice*  
AMELIA GREEN    *Pro Hac Vice*  
SONA R. SHAH     *Pro Hac Vice*  
NEUFELD SCHECK & BRUSTIN, LLP  
99 Hudson Street, 8th Floor  
New York, New York  10013  
Telephone:   212-965-9081  
Facsimile:   212-965-9084  
E-mail(s):   barry@nsbcivilrights.com  
     emma@nsbcivilrights.com  
     amelia@nsbcivilrights.com  
     sona@nsbcivilrights.com  
**ATTORNEYS FOR PLAINTIFFS**

DAVID R. COOPER        KS #16690
CHARLES E. BRANSON     KS #17376
FISHER, PATTERSON, SAYLER & SMITH, LLP
3550 SW 5th Street
Topeka, Kansas  66606
Telephone:   785-232-7761
Facsimile:   785-286-6609
E-mail(s):   dcooper@fpsslaw.com
             cbranson@fpsslaw.com
**and**

HENRY E. COUCHMAN, JR.   KS #12842
EDWARD JAMES BAIN        KS #26442
UNIFIED GOVERNMENT OF WYANDOTTE COUNTY
KANSAS CITY, KANSAS LEGAL DEPARTMENT
701 North 7th Street, Suite 961
Kansas City, Kansas  66101
Telephone:   913-573-5060
Facsimile:   913-573-5243
E-mail(s):   hcouchman@wycokck.org
             jbain@wycokck.org
**ATTORNEYS FOR DEFENDANT UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS**


SEAN M. STURDIVAN       KS #21286
ELIZABETH A. EVERS      KS #22580
TRACY M. HAYES          KS #23119
SANDERS WARREN RUSSELL LLP
11225 College Boulevard, Suite 450
Overland Park, Kansas  66210
Telephone:   913-234-6100
Facsimile:   913-234-6199
E-mail(s):   s.sturdivan@swrllp.com
             e.evers@swrllp.com
             t.hayes@swrllp.com
**ATTORNEYS FOR THE ESTATE OF DETECTIVE JAMES MICHAEL KRSTOLICH, DETECTIVE DENNIS WARE, OFFICER JAMES L. BROWN, THE ESTATE OF LIEUTENANT DENNIS OTTO BARBER, DETECTIVE CYLDE BLOOD, DETECTIVE WK SMITH, AND**

15

**THE ESTATE OF LIEUTENANT STEVE CULP**

/s/ Christopher M. Napolitano
**ATTORNEYS FOR DEFENDANT DETECTIVE ROGER GOLUBSKI**