**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| LAMONTE MCINTYRE, et al., | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | )   **Case No. 2:18-cv-02545-KHV-KGG** |
| | ) |
| UNIFIED GOVERNMENT OF WYANDOTTE | ) |
| COUNTY AND KANSAS CITY, KANSAS, | ) |
| et al., | ) |
| | ) |
| **Defendants.** | ) |

## DEFENDANT OFFICERS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO LIMIT TESTIMONY OF TARIK KHATIB

COME NOW Defendants Estates of James Michael Krstolich, Dennis Otto Barber, and Lieutenant Steven Culp; Dennis Ware, James L. Brown, and W.K. Smith (hereinafter "Defendant Officers") and move for an order denying Plaintiffs' Motion to Limit Testimony of Tarik Khatib. Defendant Officers state as follows in support thereof:

### I.      Statement of the Nature of the Matter

Plaintiffs Lamonte McIntyre and Rose McIntyre have brought this action against the Defendant Officers and others alleging Section 1983 and a state tort claim for the alleged wrongful arrest and conviction of Plaintiff in 1994.  Plaintiffs allege that Defendant Officers engaged in intentional misconduct that caused the wrongful conviction of Lamonte McIntyre.  Plaintiffs retained police practices expert Russell Fischer, whose opinion testimony is based upon the assumption that all of Plaintiffs' allegations as set forth in the Second Amended Complaint are true despite admissible evidence to the contrary.

Defendant Officers retained police practices expert Tarik Khatib to use his extensive training and experience to review all of the admissible evidence in the case and develop opinions

on the same.  Plaintiffs contend that portions of Mr. Khatib's testimony include inadmissible credibility determinations, do not satisfy Rule 702's requirements, and are more prejudicial than probative.  For reasons set forth in further detail below, Defendant Officers deny Plaintiffs' contentions.  Tarik Khatib, a former Chief of Police with 25 years of policing experience in neighboring Lawrence, Kansas, has the requisite training and experience to opine as a qualified police practices expert in this matter.  Experts review the evidence for many reasons, including in part to evaluate what evidence may provide a more reliable factual basis upon which to base opinions.  This methodology generates reliable, fact-based opinions – not improper credibility opinions as Plaintiffs contend.  Furthermore, Mr. Khatib's testimony is relevant to the issues of the case, is more probative than prejudicial, and is admissible under the law.  It is for the jury to determine what weight it wishes to assign Mr. Khatib's testimony.

## II.      Questions Presented

*A.   Whether Tarik Khatib's testimony includes inadmissible credibility determinations.*

*B.  Whether Tarik Khatib's testimony satisfies Rule 702's requirements.*

*C.  Whether Tarik Khatib's testimony is more prejudicial than probative.*

## III.     Standard of Review

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Numerous other cases indicate that trial courts may differ in their assessment of the helpfulness of particular kinds of expert testimony. Because of the Federal Rules' emphasis on liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations." *Specht v. Jensen,* 853 F.2d 805, 810–11 (10th Cir. 1988).

Courts have broad discretion in deciding whether to admit expert testimony, but should resolve doubts in favor of admissibility. *Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.,* No. CIV.A. 12-2609-KHV, 2014 WL 2196416, at *1 (D. Kan. May 27, 2014), citing *Kieffer v. Weston Land, Inc.,* 90 F .3d 1496, 1499 (10th Cir.1996); *see* Fed.R.Evid. 702 advisory committee's note; *Daubert,* 509 U.S. at 588–89.

The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments. *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.* (citing *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)). As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Daubert* 509 U.S. at 595).

## IV.     Argument & Authorities

### A. Tarik Khatib's testimony does not include improper credibility determinations

Tarik Khatib, a former Chief of Police with 25 years of policing experience in neighboring Lawrence, Kansas, has the requisite training and experience to opine as a qualified police practices expert in this matter.  Experts review the evidence for many reasons, including in part to evaluate what evidence may provide a more reliable factual basis upon which to base opinions.  This methodology generates reliable, fact-based opinions as required under Rule 702 – not improper credibility opinions as Plaintiffs contend.

Plaintiffs complain that, in contrast to Plaintiffs' expert Russell Fischer, Mr. Khatib does not base his opinions solely upon Plaintiffs' unproven allegations.  (Khatib Dep. p125:23-127:23). This is true.  Instead, Mr. Khatib reviewed the allegations but also the actual evidence in the case – documents produced and deposition testimony – upon which to base his conclusions. (Khatib Dep. p8:12-9:24; Khatib Rept. p2-3).

Plaintiffs cite *Jimenez v. City of Chicago*, 732 F.3d 710 (7th Cir. 2013) which holds that "expert testimony regarding relevant professional standards can give the jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights".  *Id.* at 721-22.  In *Jimenez*, the Court determined that Plaintiff's police practices expert did ***not*** provide improper credibility testimony when he offered a few observations on credibility.  *Id.*  For example, the expert testified that a reasonable officer would have taken a particular witness' statement as it had strong indications of credibility such that a reasonable police investigator would have taken it seriously.  *Id.* at 723.  The Court found nothing improper about this testimony.  *Id.*; see *Nunez v. BNSF Railway Co.*, No. 12-3018, 730 F.3d 684-

85 (7th Cir. 2013) (expert could not testify as to whether another witness was telling the truth, but could testify about implications if he was.)

Although this Court determined in *In re Motor Fuel Temperature Sales Pracs. Litig.,* No. 07-1840-KHV, 2012 WL 205893 at 2 (D. Kan. Jan. 19, 2012) that an expert witness' personal belief as to the weight of the evidence (whether something was fair with little objective basis for the opinion) would not help the factfinder understand the evidence or determine a fact in issue, the expert's opinion regarding transparency taken in the context of his entire report was based on his specialized knowledge and experience and would assist the trier of fact to understand the evidence or determine a fact in issue.

Plaintiffs fail to identify any improper credibility testimony from Mr. Khatib. Mr. Khatib's report outlines his exhaustive review of the voluminous documents produced and deposition transcripts in order to generate his opinions in this matter. (Khatib Dep. p.8:12-9:24; Khatib Rept. p.2-3). Despite numerous attempts by Plaintiffs' counsel to draw improper credibility opinions from Mr. Khatib at deposition (Khatib Dep. p. 88:7-90:5, 105:15-112:7 reference a couple attempts), his answers remained completely based upon his careful review of the facts of the case through his training and experience. Rule 702 is clear that an expert's opinions must be based on reliable information and that his opinions must be the product of a thorough and rigorous approach to the case. As Mr. Khatib explained, experts are allowed to scrutinize evidence to ensure that their opinions are based upon reliable facts. (Khatib Dep. p. 25:21-26:10). The role of an expert witness is to offer the facts that he found, point to some evidence within the record that supports a statement or conclusion and present this to the jury for it to decide. (Khatib Dep. p. 26:23-28:14).

Mr. Khatib documented his detailed analysis of the Plaintiffs' Second Amended Complaint and alleged knowledge of alleged misconduct on pages 22-24 of his report. Mr. Khatib reviewed

and considered numerous affidavits produced by Plaintiffs in this case, including those listed on pages 2-3 of Mr. Khatib's report, noting that not a single affidavit identifies any of the Defendant Officers as having knowledge of the Golubski allegations (Khatib Dep. p. 106:17-9, 113:23-115:17, 121:10-122:21).  Mr. Khatib acknowledged that the affidavits weren't specific in certain terms, were sometimes contradicted by later witness testimony and were written ten years ago based upon memory that is not the same.  (Khatib Dep. p. 118:19-119:21).

Generally, such affidavits are inadmissible at trial.  F.R.E. 801-803.   Furthermore, the veracity of these affidavits has been called into question on more than one occasion.  For example, witness Joe Robinson testified as follows regarding his affidavit: "Most of it is lies and false.  You all knew the answer of, you gave me the answer to this shit, so … Half of this statement you all wrote down here, you all wrote this shit down here.  Okay?  I don't know Monster.  I don't know half of the shit you all asked me about, have nothing to do with me…I'm not going to testify to the lies you all got in this shit" (Joe Robinson Dep. p30:8-31:1; 33:1-34:9).  Mr. Robinson repeated that he saw a lot of mistakes in the affidavit and that he did not say a lot of what was contained in it – instead "you all" (Cheryl Pilate and Jim McCloskey of Centurion Ministries) said it.  (Robinson Dep. p35:9-19).  Mr. Robinson testified that he signed the affidavit to get Ms. Pilate out of his house.  (Robinson Dep. 35:20-23; 63:22-64:17; 112:10-19).  He denied ever interacting with Roger Golubski.  (Robinson Dep. p 36:10-12).  Mr. Robinson repeated that the affidavit is not true, and that he never read the affidavit before signing it nor did he provide anybody information that was used to create the affidavit.  (Robinson Dep. pp 112:20 – 113:5, 120:3-13).  Mr. Robinson testified that he felt like Jim McCloskey was suggesting what his answers should be.  (Robinson Dep. p116:4-12, 120:10-13).

Another witness, Cecil Brooks, took the Fifth Amendment when presented with questions about his affidavit and did not explain why. (Brooks Dep. p42:8-16).

In addition, witness Bernard Crawford testified that Jim McCloskey made three unplanned visits to his place of business, and that he felt intimidated or embarrassed into identifying someone else as the shooter because it fit Jim McCloskey's story, whether it was true or not. (Crawford Dep. p 21:4 – 24:1).

These affidavits are a decade or older and do not specify who actually prepared them, when they were prepared, or how and under what conditions the affiants' signatures were procured. Many of the affiants remain unidentified.

In contrast, each Defendant Officer who was deposed adamantly denies having any knowledge of the Golubski allegations.[1] (Khatib Dep. p. 88:7-21). Of the close to forty depositions taken in this case, none of the deponents testified that any of the Defendant Officers had any knowledge of the Golubski allegations. And there is not a single document produced in this case to suggest otherwise. Even retired officers Ruby Ellington and Tim Maskill's affidavits (both deceased) as referenced by Plaintiff fail to specifically reference any officers with knowledge of the allegations. (Khatib Dep. p113:15-114:25). Michael Kobe's deposition testimony is similarly vague. (Id.) Using his training and experience to evaluate the entire record, Mr. Khatib had a sufficient factual basis to testify that he did not find any evidence that the Defendants Officers knew about the Golubski allegations. (Khatib Dep. p88:7-91:2, 101:21-102:15, 103:24-104:14, 111:16-112:12, 121:10-122:21, 123:16-124:6; Khatib Rept. p. 24).

Similarly, based upon his exhaustive review of the record, Mr. Khatib opined that he did not find any information to suggest that Lt. Barber conspired with Officer Brown to fabricate

---

[1] Defendants Krstolich, Barber, and Culp are deceased.

statements regarding what was said by Rose McIntyre.  It should be noted that Mr. Khatib's analysis of this issue begins on page 33 of his report and sets forth a detailed factual basis for how he arrives at this conclusion on page 36.  This conclusion certainly is not a comment upon the credibility of Rose McIntyre's allegation that Lt. Barber fabricated a statement from her.

First, Rose McIntyre has yet to provide any testimony in this case on this issue, so there is no evidence in the record to support this allegation.  Second, Rose McIntyre testified at the preliminary hearing on the homicide case that she was tricked as to which day the murders occurred because police gave her the date before so she said Lamonte was at work (FiFis), thus legitimately explaining why Lt. Barber did in fact hear Ms. McIntyre say that Lamonte was at FiFis. (FPSS043671 – preliminary hearing transcript p. 46:5-47:8).  And most importantly, Ms. McIntyre's allegation that Lt. Barber fabricated her statement has nothing to do with the issue of whether Lt. Barber and Officer Brown conspired.  There is no information to suggest that Ms. McIntyre has any knowledge of any conspiracy between Lt. Barber and Officer Brown.  Mr. Khatib's comments here do not constitute an improper credibility opinion – instead they are based upon Mr. Khatib's careful review of the facts in the entire record.  (Khatib Rept. P33-36).

Similarly again, Mr. Khatib analyzes witness Niko Quinn's numerous conflicting statements that she has made since the homicide.  (Khatib Rept. p26-30; p39-41).  Under Rule 702, Mr. Khatib can use his training and experience to identify similarities, differences and trends over time in context with his review of other admissible evidence in the case.  This Rule requires that an expert's opinions be based on reliable information and that his opinions be the product of a thorough and rigorous approach to the case.  Experts are allowed to scrutinize the evidence to ensure that their opinions are based upon reliable facts.  (Khatib Dep. p. 25-28).  Niko Quinn's 2014 affidavit alleges that the other officer who met with her the morning after the shootings placed

his thumb on Lamonte McIntyre's picture, which she interpreted as suggestion.  (Khatib Rept. p. 26).  By her deposition testimony in this case on November 3, 2021, Ms. Quinn testified that she held the photos that officers offered her to review the morning after the shootings.  (Khatib Rept. p. 27-28).  She also admitted that she was high on PCP the evening of the murders, had been drinking and had not been asleep for days before she met with detectives on the morning after the homicides.  (Khatib Rept. p. 29; Quinn Dep. 81:3-22).  Except for the 2014 affidavit, none of Ms. Quinn's other statements describe another detective placing his thumb on a photo for her to select. (Id.)  Again, Mr. Khatib has a reasonable factual basis to comment, based upon Niko Quinn's clear deposition testimony and other statements produced in this case, that she "seems to have abandoned" the assertion that an officer had his thumb on the picture.  (Khatib Rept. p. 29).  This testimony does not constitute a credibility determination of Ms. Quinn.  As set forth in *Jimenez*, Mr. Khatib is simply pointing out that both stories can't be true, which is a permissible observation that does not invade the province of the jury.  *Jimenez v. City of Chicago,* 732 F.3d 710 at 723.

Plaintiffs cite two factually inapplicable cases to support his argument.  *United States v. Scheffer*, 523 U.S. 303 (1998) addresses the admission of polygraph evidence, not expert testimony.  *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) addresses a physician's and counselor's baseless opinions that that the victims were sexually abused, noting that expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's role and therefore does not assist the trier of fact.  This is similar to Plaintiffs' expert Mr. Fischer's testimony wherein he assumes all of the allegations in Plaintiffs' Complaint are true, ignores evidence to the contrary, and provides baseless opinions that only serve to vouch for Plaintiffs' allegations. (Khatib Dep. p.125:23-127:23).

In contrast, Mr. Khatib's opinions have a clear foundation, all based upon admissible facts in the record.  For example, Plaintiffs allege that Mr. Khatib lacks the foundation to comment that Detective Ware presumably would not have observed anything inappropriate when he accompanied Det. Golubski to interview Niko Quinn.  However, Plaintiffs fail to mention Mr. Khatib's reliable basis for this statement as thoroughly analyzed in Mr. Khatib's report (p. 27-29).  Mr. Khatib notes that the police investigative file including Detective Golubski's investigative addendum reflect that Detective Ware's role was limited to physically accompanying Detective Golubski as he performed some follow-up on the case because a second partner was required.  (Id. at p.28).  Detective Ware otherwise had no involvement and would not have been acquainted with the investigation.  (Id.)  Based on the file and Niko Quinn's testimony, Detective Ware would have simply observed Detective Golubski hand photos to Niko Quinn and she held them in her hand, ultimately not identifying anyone.  (Id. at 29).  Mr. Khatib's statement is furthermore supported by Niko Quinn's recent deposition testimony that she did not think Detective Golubski did anything improper or inappropriate at this meeting.  (Niko Quinn Dep. p. 85:20-23; Khatib Dep. p. 226:25-228:6).  She also stated the officers who showed her pictures on the morning of April 16, 1994 did not touch or threaten her.  (Niko Quinn Dep. p. 148:12-14).  Mr. Khatib has clearly set forth a reasonable basis for his opinion in his report.

Plaintiffs' footnote six (6) lists a few other areas wherein Mr. Khatib used the term "likely" or "plausible".  *Erickson v. City of Lakewood*, cited by Plaintiffs, addresses the difference between an expert's unsupported speculation and factual assumptions.  An expert may base his opinions on factual assumptions, and the "full burden of exploration of the facts and assumptions underlying the testimony of an expert witness falls squarely on the shoulders of opposing counsel's cross-examination." *Smith v. Ford Motor Co.*, 626 F.2d 784, 799 (10th Cir. 1980) (citation omitted).

(Cited in *Erickson v. City of Lakewood,* No. 19-CV-02613-PAB-NYW, 2021 WL 4438035, at *10 (D. Colo. Sept. 27, 2021). Here, the clear appropriate remedy is not to strike Mr. Khatib's testimony but to allow Plaintiffs to cross-examine Mr. Khatib so that the jury can hear each and every fact upon which Mr. Khatib bases his conclusions and evaluate the same, giving it the weight the jury believes it is due.

Finally, Plaintiff comments that to the extent Mr. Khatib's testimony serves as a mouthpiece for the Officer Defendants' version of events, it is inadmissible. Plaintiffs cite no testimony or portion of Mr. Khatib's report that is reflective of this allegation and it therefore should be disregarded.

**B. Under Fed. R. Evid. 702, Tarik Khatib's testimony is admissible**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Pursuant to Federal Rule of Evidence 702, "[e]xpert testimony is admissible only if it is potentially helpful to the jury and '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied

the principles and methods to the facts of the case.'" *Wright v. BNSF Ry. Co.*, No. 13-CV-24-JED-FHM, 2016 WL 1183135, (N.D. Okla. Mar. 28, 2016) (citing *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009).

"Numerous other cases indicate that trial courts may differ in their assessment of the helpfulness of particular kinds of expert testimony.  Because of the Federal Rules' emphasis on liberalizing expert testimony, doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough, aided by counsel, to ignore what is unhelpful in its deliberations." *Specht v. Jensen,* 853 F.2d 805, 810–11 (10th Cir. 1988).

Courts have broad discretion in deciding whether to admit expert testimony, but should resolve doubts in favor of admissibility. *Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.,* No. CIV.A. 12-2609-KHV, 2014 WL 2196416, at *1 (D. Kan. May 27, 2014), citing *Kieffer v. Weston Land, Inc.,* 90 F .3d 1496, 1499 (10th Cir.1996); *see* Fed.R.Evid. 702 advisory committee's note; *Daubert,* 509 U.S. at 588–89.

The rejection of expert testimony is the exception rather than the rule.  *See* Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments.  *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."  *Id.* (citing *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996)).  As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Id.* (citing *Daubert* 509 U.S. at 595).

### i. *Tarik Khatib is qualified to provide opinions in this case.*

The Court must apply a two-part test to determine admissibility under Rule 702. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). The two-part test addresses the reliability and relevancy of an expert's testimony. First, it must decide "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Id.* (quoting *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702)).

Mr. Khatib has 25 years of law enforcement experience gained while working at the Lawrence, Kansas, Police Department. (Khatib Rept. p1). He worked as a patrol officer, drug unit investigator, field training officer, training unit officer, patrol supervisor, drug unit supervisor, detective supervisor, patrol commander, administrative services commander and chief of police. (Id.) Mr. Khatib was a department instructor for many topics including leadership, investigations, drug unit operations, informants and intelligence gathering. (Id.) Mr. Khatib has a bachelor's degree and also graduated from the FBI National Academy. (Id.) He currently serves as the Law Enforcement Leadership Academy Program Director. (Khatib Rpt. 1-2.)

Although Mr. Khatib never held the title "detective", his CV and exhaustive testimony outline his considerable experience investigating violent crime, including homicides. (Khatib Rept. 54; Khatib Dep. p 31:12-33:17, 52:2-19, 54:9-19). He also supervised detectives who investigated such crimes. (Khatib Rept. 53; Khatib Dep. 37:15-38:2, 57:9-58:7, 67:1-9, 70:3-71:6).

There is no requirement that Mr. Khatib be a police officer or employee of the KCKPD in order to provide a qualified expert opinion. If Plaintiffs are arguing that *Seifert v. Unified Gov't of Wyandotte Cty.,* No. 11-2327-JTM, 2016 WL 107932 (D. Kan. Jan. 8, 2016) stands for this

proposition, then Plaintiffs' expert Mr. Fischer (Miami Dade Police Department) must likewise be struck as unqualified. (Khatib Dep. 124:14-17). Like Mr. Khatib, Mr. Fischer's familiarity with the type of police practices and procedures at issue in the KCKPD in 1994 was wholly gained by reviewing the materials produced in the case. How else can any expert who was also not practicing in the KCKPD in 1994 become acquainted with KCKPD's policies? This does not render an expert unqualified.

Similarly, just because Mr. Fischer's and Mr. Khatib's departments followed one particular supervisory structure that was perhaps not followed by the KCKPD does not mean that neither is qualified to discuss other structures that were common in the 1990s given their knowledge and experience in the industry. Mr. Khatib testified clearly regarding his knowledge and experience to review thousands of pages of records produced and deposition testimony to identify in context what type of supervisory structure it appeared was employed in 1994. (Khatib Dep. p 63:18-65:3).

Plaintiffs contend that Mr. Khatib lacks the foundation to testify about supervisory structures and why, when taken in context with the voluminous documents he reviewed in this case, he concluded that Sgt. Culp employed a more passive supervisory method. Plaintiffs fail to cite any of Mr. Khatib's detailed analysis set forth in his report for how he came to this conclusion, including reliance on documents produced and testimony of Detective Blood and Detective Ware:

- According to Detective Ware, Lieutenant Culp's supervisory style was to let detectives do their jobs and he did not recall a time when Lieutenant Culp came to him to do something differently during an investigation he was handling or asked him questions about the case (Ware Dep., p. 123).

- Detective Blood stated Lieutenant Culp left the detectives up to their own judgement on the cases because he had never worked a homicide until he took over the unit. And if the detectives decided to stay at work longer when things quieted down, Lieutenant Culp might go back home. Detectives would call him back if they needed him (Blood Dep., p. 100).

- Detective Blood stated Lieutenant Culp never provided direction to detectives as to what to do or not. Lieutenant Culp told detectives to just follow their leads and do what they thought was right. Lieutenant Culp left it up to the detectives' experience as to whether they wanted to continue investigating after they made an arrest (Blood Dep., p. 100-101).

- Detective Blood stated he had no recollection of any rules relating to continuing the investigation after an arrest and Lieutenant Culp left it up to the discretion, experience, and knowledge of detectives because he had not worked homicides (Blood Dep., p. 104).

- Detective Blood stated that no one ever pressured him to solve a homicide or told him what to do or not to do. He worked the homicides to the best of his ability to figure out what happened and had the freedom and resources to investigate homicides as he saw fit. And Detective Blood agreed that Lieutenant Culp largely left detectives alone to their own discretion (Blood Dep., p. 200).

- Detective Blood stated that he and Detective Maskil operated on their own and would brief their supervisor. No one rode in the backseat or told them what to do (Blood Dep., p. 204).

- According to Detective Maskil, detectives investigating homicides were typically free to be out in the community all day, with little supervision (Maskil Aff. ¶ 8).

(Khatib Rept. p.11)

Clearly, Mr. Khatib provided a reasonable foundation for how he arrived at his conclusion that Sgt. Culp employed a more passive supervisory style in 1994. Mr. Khatib also explained how this conclusion did not contradict Detective Ware's personal recollection of Sgt. Culp given Mr. Khatib's access to all of the other information in the case to which Detective Ware is not privy. (Khatib Dep. p. 258:3-18, 264:3-22). Finally, Mr. Khatib "showed his work" in detail in his report regarding his analysis of case management and supervision, providing a reliable factual basis for his opinions on this issue. (Khatib Rept. p. 11-13; 30).

Plaintiffs fail to cite any controlling law to support the argument that Mr. Khatib is unqualified to offer testimony regarding other officers' actions. Again, Plaintiffs may have

identified an area that is appropriate for cross-examination so that the jury can assess the weight it wishes to give this testimony, but not disqualification.

*United States v. Kamahele,* 748 F.3d 984 (10th Cir.2014) explains the circumstances under which police officers can testify as experts. That case reaffirmed that "police officers can testify as experts based on their experience '[b]ecause the average juror is often innocent of the ways of the criminal underworld.'" *Id.* at 998 (quoting *United States v. Garcia,* 635 F.3d 472, 477 (10th Cir.2011)) and "because it is likely to assist the trier of fact to understand an otherwise unfamiliar enterprise," *United States v. Wilson*, 276 F. App'x 859, 861 (10th Cir. 2008).  Ultimately, the court upheld the officer's testimony as an expert because he (1) "relied on multiple sources," (2) "based his expert testimony on years of experience," and (3) provided specific "insights into the distinctive traits" of his area of expertise. *Kamahele* at 998–99 (also citing *United States v. Vann*, 776 F.3d 746, 758 (10th Cir. 2015)).

Mr. Khatib's opinion testimony, acquired through his training, experience and 25 years' expertise as a police officer in nearby Lawrence, Kansas, is well-reasoned, relevant and properly grounded in this case.  He has significant experience in all levels of policing, he relied on multiple sources to form his opinions, and he certainly provided a significant amount of insight in his 46-page report and deposition testimony that is distinct not only to his area of expertise but to this specific case.  Having been a patrol officer himself in 1994 in neighboring Lawrence, Kansas, Mr. Khatib is uniquely qualified to have significant reliable knowledge of the police practices in the region at the time of the Quinn Ewing homicides that the jury will find helpful.

### ii. *Tarib Khatib applies a reliable methodology.*

The second prong that the Court "'must satisfy itself [is] that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess

such testimony.'" *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (quoting *United States v. Rodriguez–Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006) (further citations omitted)).

Mr. Khatib's report includes his methodology, wherein he explains that he reviewed all case file materials "through the lens of time" and based his opinions on the admissible materials reviewed.  (Khatib Rept. P 3).  He explained that his understanding of police practices is based upon his professional experience serving in many law enforcement roles including all levels of supervision and command within a police department, his knowledge and training.  Id.

Plaintiffs cite *United States v Baca*, No. CR 16-1613 JB, 2018 WL 6602216 (D.N.M. Dec. 17, 2018) which addresses the inherent reality that is common in all situations where a law enforcement witness' expertise is based on experience, rather than on scientific or technical principles.  To account for this, an expert must provide a factual basis for his testimony.  Here, Mr. Khatib's report on pages 2 through 3 lists the seventy-two (72) categories of documents that he reviewed, from the investigative file to trial transcripts to deposition transcripts and KCKPD training documents, policies, general orders and personnel/training files – likely the same documents Plaintiffs' expert Mr. Fischer was sent to render his opinions.  Mr. Khatib provides a thorough factual basis for his opinions throughout his detailed 46-page report and in his deposition testimony.

Plaintiffs cite a couple of cases that do not apply here.  *Ho v. Michelin N. Am., Inc.,* 520 F. App'x 658 (10th Cir. 2013) is inapplicable because it addresses the qualifications of a technical expert in a products liability action against a tire manufacturer alleging defective design and manufacturing, failure to warn and breach of warranty, wherein the expert acknowledged that peer-reviewed literature suggested the opposite of his opinions.  *Cox v. Glanz*, No. 11-CV-457-JED-FHm, 2014 WL 916644 at *3 (N.D. Okla. Mar. 10, 2014) is also inapplicable as it involved a

corrections expert who opined regarding the adequacy of medical and mental health care, acknowledging that he had no training or experience in this area; the expert furthermore could not explain how he arrived at his conclusions, and could not identify any principle or method that he claimed to have applied to the facts of the case.

Plaintiffs criticize Mr. Khatib's comment regarding documenting informant information on page 22 of his report.  But, when reviewed in context (beginning with the heading "Informant Handling" starting on page 20 of his report), one will see that Mr. Khatib set forth the specific reliable facts he obtained from the record on the issue – a clear factual basis evaluated through his experience as a neighboring Kansas officer in the 1990s to form his conclusions.  Plaintiffs cherry pick a few other lines from Mr. Khatib's report, taken out of context and ignoring the clear factual basis that Mr. Khatib has set forth in support of these opinions, in satisfaction of *United States v Baca*.

As his report and deposition testimony indicate, Mr. Khatib's opinions are based upon the materials reviewed as well as on his experience, knowledge and training, all of which were outlined in detail in his CV and at deposition.  (Khatib Rept. CV 53-54; Khatib Dep. p 31:12-71:6, 109:1-110:13, 118:19-119:21).  Experts review the evidence for many reasons, including in part to evaluate what evidence may provide a more reliable factual basis upon which to base opinions per Rule 702.  This methodology employed by Mr. Khatib generates reliable, fact-based opinions and is commonly used in the industry.  Mr. Khatib's report constitutes 46 pages of "showing his work", providing a detailed road map for how he arrived at his conclusions.  As such, his opinions are reliable and admissible.

### iii.    *Tarik Khatib provides valuable insight based on his many years of relevant experience that is helpful to a jury.*

Mr. Khatib's has 25 years' experience at all levels of policing, he relied on multiple sources to form his opinions, and he certainly provided a significant amount of insight in his 46-page report and deposition testimony that is distinct not only to his area of expertise but to this specific case. Having been in drug investigations himself in 1994 in neighboring Lawrence, Kansas, his experience is uniquely positioned to have significant reliable knowledge of the police practices in the region at the time of the Quinn Ewing homicides that the jury will find helpful.  (Khatib Dep. p 178:14-22).

As explained in *United States v. Kamahele,* 748 F.3d 984 (10th Cir.2014) the circumstances under which police officers can testify as experts include when "police officers . . . testify as experts based on their experience '[b]ecause the average juror is often innocent of the ways of the criminal underworld.' " *Id.* at 998 (quoting *United States v. Garcia,* 635 F.3d 472, 477 (10th Cir.2011)) and "because it is likely to assist the trier of fact to understand an otherwise unfamiliar enterprise," *United States v. Wilson*, 276 F. App'x 859, 861 (10th Cir. 2008).

Plaintiffs list a few comments Mr. Khatib made in his report that they contend are "common sense", but the Defendant Officers respectfully disagree.  For example, a lay juror may very well not know that it would be impractical for two teams of two detectives to work five homicides in 72 hours.  (Khatib Rept. p.9).  A juror likely does not know about informants, private investigators, arrest timelines, the Metro Squad or the processing timeframe for the KBI crime lab in the 1990s. (Khatib Rept. p.7, 10, 19-20).  An expert is required to assist the jury to understand an industry that is unfamiliar to the juror.  Mr. Khatib testified that part of his experience as a law enforcement investigator for 25 years is being able to analyze things, look at the evidence, understand how police departments and investigations work and see if there are any inferences that can be made from the evidence.  (Khatib Dep. p 109:1-110:13; 118:19-119:21).

Courts have broad discretion in deciding whether to admit expert testimony, but should resolve doubts in favor of admissibility. *Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc.,* No. CIV.A. 12-2609-KHV, 2014 WL 2196416, at *1 (D. Kan. May 27, 2014), citing *Kieffer v. Weston Land, Inc.,* 90 F .3d 1496, 1499 (10th Cir.1996); *see* Fed.R.Evid. 702 advisory committee's note; *Daubert,* 509 U.S. at 588–89. The rejection of expert testimony is the exception rather than the rule. *See* Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments.

Mr. Khatib's testimony here is grounded in his knowledgeable review of the materials and will be helpful to the jury. Therefore, Plaintiffs' motion should be denied.

### C. Tarik Khatib's testimony is admissible under Fed. R. Evid. 403

Under Rule 403, "evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *United States v. Garcia*, 635 F.3d 472, 477–78 (10th Cir. 2011), citing *United States v. Tan,* 254 F.3d 1204, 1211–12 (10th Cir.2001) (alteration and quotation omitted). Even if unfair "prejudice is found, it must *substantially* outweigh the probative value of the evidence in order to be excluded." *Id.* In *Garcia*, it was noted that the prosecution expert's testimony was firmly anchored in the facts of the case, thus not tending to affect the jury's attitude toward the defendant apart from its judgement of the defendant.

Earlier in his motion, Plaintiffs argued that Mr. Khatib is not a qualified expert and, thus, his opinions should be struck. Now in direct contradiction, Plaintiffs essentially argue that Mr. Khatib is too qualified, having worked in nearby Lawrence, Kansas, for 25 years such that his opinion is inherently going to carry more weight with a jury. Because of this, his opinions should be struck. Plaintiffs fail to cite any controlling authority in support of this proposition.

First, Mr. Khatib's testimony is firmly anchored to the facts of the case as set forth in his detailed report.  Second, as Plaintiffs earlier pointed out, Mr. Khatib has never worked in Kansas City, Kansas or been employed by the KCKPD.  Certainly, Plaintiffs can present this evidence to the jury to address any unsubstantiated fear that this may cause prejudice.  Ultimately, there is absolutely no evidence to support the argument that Mr. Khatib's Lawrence roots will cause prejudice so substantial that it sufficiently outweighs his testimony's probative value such that it should be excluded.  This argument should be rejected.

## V.      Conclusion

For the reasons stated above, Defendants Estates of James Michael Krstolich, Dennis Otto Barber, and Lieutenant Steven Culp; Dennis Ware, James L. Brown, and W.K. Smith respectfully request an Order from this Court denying Plaintiffs' Motion to Limit Testimony of Tarik Khatib, and for such other relief the Court finds just and equitable.

Respectfully submitted,

*/s/ Tracy M. Hayes*

| | |
|---|---|
| Sean M. Sturdivan | KS #21286 |
| Tracy M. Hayes | KS #23119 |
| Elizabeth Evers Guerra | KS #22580 |

SANDERS WARREN & RUSSELL LLP
Compass Corporate Centre
11225 College Boulevard, Suite 450
Overland Park, KS  66210
Phone:  913-234-6100
Fax:  913-234-6199
s.sturdivan@swrllp.com
e.eversguerra@swrllp.com
t.hayes@swrllp.com
***Attorneys for The Estate of Detective James  Michael Krstolich, Detective Dennis Ware, Officer James L. Brown, The Estate of Lieutenant Dennis Otto Barber, Detective W.K. Smith, and The Estate of Lieutenant Steve Culp***

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of April, 2022, the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to all counsel of record.

Michael J. Abrams
William G. Beck
Alexander T. Brown *(Pro Hac Vice)*
Alana M. McMullin *(Pro Hac Vice)*
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO  64108
Phone: 816-292-2000
Fax: 816-292-2001
michael.abrams@lathropgpm.com
william.beck@lathropgpm.com
alexander.brown@lathropgpm.com
alana.mcmullin@lathropgpm.com

and

Cheryl Pilate
Lindsey Runnels
MORGAN PILATE LLC
926 Cherry Street
Kansas City, MO  64106
Phone: 816-471-6694
Fax: 816-472-3516
cpilate@morganpilate.com
lrunnels@morganpilate.com

***Attorneys for Plaintiffs***

and

Barry Scheck
Emma Freudenberger
Grace Ann Paras
NEUFELD SCHECK & BRUSTIN, LLP
99 Hudson Street, Eighth Floor
New York, NY  10013
Phone: 212-965-9081

David R. Cooper
Charles E. Branson
FISHER, PATTERSON, SAYLER & SMITH, LLP
3550 S.W. 5th Street
Topeka, KS  66606
Phone: 785-232-7761
Fax: 785-286-6609
dcooper@fisherpatterson.com
cbranson@fpsslaw.com
***Attorneys for Unified Government of Wyandotte County and Kansas City, Kansas***

Henry E. Couchman Jr.
Edward James Bain
UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS
Legal Department
701 N. 7th Street, Suite 961
Kansas City, KS  66101
Phone: 913-573-5060
Fax: 913-573-5243
hcouchman@wycokck.org
ebain@wycokck.org
***Attorneys for Unified Government of Wyandotte County and Kansas City, Kansas***

Sean P. McCauley
Morgan L. Roach
Jeffrey S. Kratofil
MCCAULEY & ROACH, LLC
527 W. 39th Street, Suite 200
Kansas City, MO  64111
Phone: 816-523-1700
Fax: 816-523-1708
sean@mccauleyroach.com
morgan@mccauleyroach.com
jeff@mccauleyroach.com

Fax: 212-965-9084
barry@nsbcivilrights.com
emma@nsbcivilrights.com
grace@nsbcivilrights.com
***Pro Hac Vice for Plaintiffs***

Daphne R. Halderman
MCCAUSLAND BARRETT &
BARTALOS P.C.
8695 College Blvd., Suite 200
Overland Park, Kansas 66210
Phone: 816-523-3000
Fax: 816-523-1588
Email: dhalderman@mbblawfirmkc.com
***Special Administrator for Defendants***
***Krstolich, Barber, and Culp, deceased***

and

Matthew J. Gist
Christopher M. Napolitano
ENSZ & JESTER, P.C.
1100 Main Street, Suite 2121
Kansas City, MO 64105
Phone: 816-474-8010
Fax: 816-471-7910
Emails: mgist@enszjester.com
        cnapolitano@enszjester.com

***Attorneys for Detective Roger Golubski***



 */s/ Tracy M. Hayes*_____
**ATTORNEY**