**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LAMONTE MCINTYRE &,
ROSE LEE MCINTYRE,

Plaintiffs,

v.                                   Case No. 2:18-cv-02545-KHV-KGG

UNIFIED GOVERNMENT OF WYANDOTTE
COUNTY AND KANSAS CITY, KS, et al.,

Defendants.

---

### Motion to Bifurcate Trials and Memorandum in Support

Defendant Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government"), moves to bifurcate the trials. Specifically, Unified Government seeks to bifurcate the supervisory, *Monell*, and *respondeat superior* claims (Counts 6, 7, and 9) from the remainder and submits the following memorandum in support.

### I. Nature of the Matter

This case arises from the vacation of the conviction of plaintiff, Lamonte McIntyre. Plaintiff bring two sets of Section 1983 civil rights claims: claims against the individual defendant officers based on their own actions in the investigation of the double homicides and municipal and supervisory liability claims against Unified Government and Lieutenant Steve Culp for alleged unconstitutional policies and practices and failure to train and supervise Unified Government police officers.

Plaintiff's two sets of claims are quite different, requiring proof of different facts, calling for different witnesses, and involving substantially different legal standards. Bifurcation presents

the opportunity to simplify the presentation of evidence to focus first on the claimed constitutional violations, then whether any violations were a product of KCK policy or Lt. Culp's failure to supervise. Bifurcation could even eliminate the need to try the derivative claims. Moreover, guilt by association for the Unified Government and Lt. Culp is unavoidable if tried with Golubski. Golubski and the co-defendant officers in turn should not be lumped in with the alleged misconduct of other officers wholly unconnected with them. Bifurcation is therefore warranted.

## II. Statement of Facts

On April 15, 1994, around 2 p.m., Doniel Quinn and Donald Ewing were shot while they sat in the front seat of a parked car on Hutchings Street, in KCK.  Doc. 562 at 2, Stipulation ¶ 1. Plaintiff Lamonte McIntyre was taken into custody for the double homicides at approximately 8 p.m. that evening.  Doc. 562 at 2, Stipulation ¶ 10.  Plaintiff was convicted of the double homicide and was imprisoned for 23 years.  Doc. 562 at 2, Stipulation ¶ 15.  On October 13, 2017, based on evidence presented during a hearing on a motion to vacate, the Wyandotte County District Attorney dismissed the charges and vacated plaintiff's convictions.  Doc. 562 at 2, Stipulation ¶ 17.  Plaintiff filed this action on October 11, 2018.  *See* Docket.

In the Pretrial Order of this matter, plaintiff details his allegations against defendant Golubski for five pages, including allegations ranging from sexual assault and/or harassment to being involved in the murders and/or disappearance of individuals based on his connections to drug dealers in KCK.  *See* Doc. 562 at 5-9.

Plaintiffs bring the following claims, counts 6, 7, 9 of which Unified Government seeks to bifurcate:

> Count 1: Under Section 1983, Lamonte asserts Fourth and Fourteenth Amendment malicious prosecution claims against Golubski, Krstolich, Ware, Brown, Barber, Culp, and Smith;
>
> Count 2: Under Section 1983, Lamonte asserts Fourth and Fourteenth Amendment

evidence fabrication and *Brady* violations against Golubski, Krstolich, Ware, Brown, Barber, and Smith;

Count 3: Under Section 1983, Lamonte and Rose assert First and Fourteenth Amendment familial association claims against Golubski;

Count 4: Under Section 1983, Lamonte asserts Fourth and Fourteenth Amendment failure to intervene claims against Krstolich, Ware, Barber, and Culp;

Count 5: Under Section 1983, Lamonte asserts Fourth, Fifth and Fourteenth Amendment conspiracy claims against Golubski, Krstolich, Ware, Barber and Culp;

Count 6: Under Section 1983, Lamonte asserts Fourth and Fourteenth Amendment supervisory liability claims against Culp;

Count 7: Under Section 1983, Lamonte and Rose assert *Monell* claims against the Unified Government;

Count 8: Under state law, Lamonte asserts malicious prosecution claims against Golubski, Krstolich, Ware, Brown, Barber, Culp, and Smith;

Count 9: Under state law, Lamonte asserts *respondeat superior* liability against the Unified Government for the state-level malicious prosecution claim.

Doc. 562 at 40-41.

## III. Issue Presented

1.    Counts 6, 7, and 9 should be bifurcated from the remainder should eliminate the need to these counts, simplify the presentation of evidence, and avert severe prejudice to all defendants.

## IV. Argument and Authorities

Federal Rule of Civil Procedure 42(b) authorizes the court to order separate trials on claims in the interests of "convenience, to avoid prejudice, or to expedite and economize." (emphasis added); *see also Valdez v. Motyka*, 2020 WL 3963717, at *17 (D. Colo. July 13, 2020) ("The decision to bifurcate a trial 'must be made with regard to judicial efficiency, judicial resources, and the likelihood that a single proceeding will unduly prejudice either party or confuse the jury.'" (quoting *York v. AT&T*, 95 F.3d 948, 957-58 (10th Cir. 1996))). All three reasons support separate trials for plaintiffs' direct liability claims and their supervisory and *Monell* claims. More

particularly, the case presents a scenario when "the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999).

Plaintiffs bring two sets of § 1983 civil rights claims: direct claims against individual defendant officers, based on their own actions, and supervisory, *Monell*, and *respondeat superior* claims against Unified Government and Lt. Culp for alleged unconstitutional policies and practices and failure to train and supervise Unified Government police officers. Plaintiffs' two sets of claims are quite different, requiring proof of different facts, calling for different witnesses, and involving substantially different legal standards. The supervisory, *Monell*, and *respondeat superior* claims are derivative and thus dependent upon the outcome of the direct claims against the individuals. There is also the danger that evidence admissible on the supervisory and *Monell* claims will contaminate the mind of the jury in its consideration of the liability of defendant on the direct claims. Similarly, the sordid allegations against Detective Golubski and his pervasive invocation of his Fifth Amendment right against self-incrimination will unfairly prejudice Unified Government. Therefore, the Court should hold separate trials on plaintiffs' individual and derivative claims.

**A.      Bifurcation Would Serve the Interests in Convenience, Expedition, and Economy.**

Separate trials would serve the interests in convenience, expedition, and economy. Trying the direct claims alone would eliminate the need for a trial on the derivative claims and would greatly simplify the presentation of evidence.

**1.      Bifurcation would likely eliminate the need to try the supervisory and *Monell* claims.**

Trying the direct claims first would likely render a second trial on the derivative claims moot or superfluous. A second trial should become moot because the first finds no constitutional

violation. A plaintiff seeking to impose liability on a municipality under § 1983 must prove (1) an underlying injury to a constitutional right of the plaintiff; (2) a municipal policy or custom, and (3) a direct causal link between the policy or custom and the injury. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691-92 (1978). A *Monell* theory alleging failure to train, failure to supervise, and/or failure to adopt a policy requires deliberate indifference, typically demonstrated through a pattern of similar constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 61-62 (2011). The elements of supervisory claims are substantially similar requiring (1) an underlying constitutional violation, (2) an affirmative link to the supervisor's personal participation, exercise of control or direction, or failure to supervise, and (3) deliberate indifference. *Est. of Holmes by & through Couser v. Somers*, 387 F. Supp. 3d 1233, 1253–54 (D. Kan. 2019) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)), *aff'd sub nom. Couser v. Gay*, 959 F.3d 1018 (10th Cir. 2020). Even the state *respondeat superior* claim against Unified Government is contingent on proving the individual defendants maliciously prosecuted Mr. McIntyre.

Accordingly, both the *Monell* and supervisory claims are contingent on an underlying constitutional violation, and a trial confined to the direct claims may render a second trial moot. *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers."); *Apodoca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447-48 (10th Cir. 1990) ("When there is no underlying constitutional violation by a county officer, there cannot be an action for failing to train or supervise the officer.").

Cases are commonly bifurcated on this basis. *See Lund v. Henderson*, 807 F.3d 6, 12 (1st Cir. 2015) (granting bifurcation between individual and *Monell* claims noting bifurcation is a

classic exercise of the trial court's management discretion, especially when there is a possibility the resolution of the first phase will moot the need for the second (citing *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002) (discussing commonness of bifurcation in police civil rights cases when litigation of one issue may eliminate the need to try another issue))); *Desmare v. New Mexico*, No. CIV 07-199 JB/RHS, 2007 WL 5231690, at *2 (D.N.M. Aug. 14, 2007) (bifurcating individual claim and claim against state, noting "Bifurcation is often in the interest of efficiency and judicial economy when the resolution of one claim may obviate the need to adjudicate one or more other claims.").

Having a separate trial on the individual claims ensures that neither the Court's nor the jury's time is wasted on hearing evidence against Unified Government. *See* § 2388 Separate Trials—Discretion of Court, 9A Fed. Prac. & Proc. Civ. § 2388 (3d ed.) ("If a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation, separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties."). As the above cases reflect, even the possibility of mooting the need for the voluminous evidence required for the *Monell* and supervisory claims is given great weight.

On the other hand, if a constitutional violation was found on the direct claims for which the officers were not qualifiedly immune, any compensatory and/or punitive damages awarded in the first trial would comprise plaintiffs' complete measure of damages. Plaintiffs do not seek nominal damages or declaratory or injunctive relief. *See* Doc. 74 at 49-50. And plaintiffs would be barred from relitigating or seeking duplicative compensatory damages or punitive damages against Unified Government and Culp. *See Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1241 (10th Cir. 2010) (finding a plaintiff was barred from seeking duplicative compensatory

damages against a city and was further barred from challenging the adequacy of the damage award against the individual officers); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that punitive damages are unavailable from municipalities based on § 1983 claims).[1]

Even if the Court was inclined to infer a plea for nominal damages or declaratory relief, subsequent suits against municipalities in quest of nominal damages are disfavored. *Manzanares,* 628 F.3d at 1241-43 (refusing to consider relief not explicitly pled for and suggesting it is not erroneous, or at most harmless error, to dismiss a claim against a municipality if the plaintiff would be limited to nominal damages because the municipality would have already been put on notice by the judgment against its employees); *but see Patterson v. City of Omaha*, No. 8:11CV128, 2013 WL 1568535, at *1–2 (D. Neb. Apr. 15, 2013) (permitting a subsequent trial against municipality to proceed for nominal damages).

Technically, the Court could find the officers qualifiedly immune and avoid the constitutional question in the first trial, but that would be inadvisable since the Court would be forced to retry and decide the constitutional question in a second trial to find Unified Government and Lt. Culp liable. In sum, bifurcation would serve the interests in convenience, expedition, and economy by likely eliminating a second trial's worth of proceedings and far more voluminous presentation of evidence.[2]

---

[1] Practically speaking, there is a danger plaintiffs would be unable to collect a damages judgment from the direct claims defendants and be forced to proceed against the derivative defendants. But there would be little duplication of effort, since a second jury could be instructed on the binding findings of constitutional violations and damages awards. *See Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 321 (D. Md. 1991).

[2] Counsel suggests further bifurcating the direct claims trial into liability and damages phases. That way, if the officers are found to have committed constitutional violations but be shielded by qualified immunity, the derivative claims defendants can defend themselves on damages in a second trial.

## 2.        Bifurcation would greatly simplify the presentation of proof.

Bifurcation would streamline and simplify the presentation of proof. The trial of the direct claims and the trial of the derivative liability claims would inherently involve different standards of liability, legal theories, defenses, and evidence. Proving the individual liability facts would be limited to the facts of Mr. McIntyre's arrest, conviction, and damages. To prove his *Monell* and supervisory claims, plaintiff must introduce evidence which proves a "number of prior incidents of police [misconduct], the nature of such incidents, and the municipal policy makers' reaction to them." *Marryshow*, 139 F.R.D. at 320.

Thus, a trial on the *Monell* and supervisory claims would expand the scope of the evidence exponentially to wholly unrelated incidents involving other KCKPD officers. Such proof would come in the form of training materials, policies, and voluminous testimony having nothing to do with the facts of Mr. McIntyre's arrest and conviction. Further, the individual and *Monell* issues sought to be tried separately will involve significantly different experts. The direct claims are likely to involve simple investigation experts, whereas the *Monell* claims are likely to involve complex custom/practice/policy experts—which, again, implicate wholly separate issues. Inevitably, there would be conflicting evidence regarding alleged prior incidents of police misconduct, forcing the jury to hear and consider evidence in endless "side show" trials. *Marryshow*, 139 F.R.D. at 320. "[A] jury must be allowed to consider the evidence regarding this incident with its focus on that evidence unimpaired by the torrent of information concerning the conduct of police officers in other unrelated situations at other times." *Brunson v. City of Dayton*, 163 F. Supp.2d 919, 924-25 (S.D. Ohio 2001). A combined trial would swallow the direct claims.

In sum, bifurcated trials will better delineate the issues, clarify the relevant evidence, streamline and simplify the presentation of proof, and overall prevent the individual claims from being swallowed by the *Monell* and supervisory liability claims. Bifurcation would reduce what is

slated to be a four-week trial to an approximately one-week trial.

**B.      Bifurcation Would Protect All Defendants from Unfair Prejudice.**

Unified Government, Lieutenant Culp, in his supervisory capacity, and the direct claim defendants all face unfair prejudice if the claims against them are tried together because of the substantial risk of jury confusion from the different standards of liability and evidence that can be considered against some defendants but not others.

**1.      The differing standards of liability risk prejudice.**

First, prejudice can easily occur when a jury must deliberate on several issues and consider different standards of liability. *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990). Here, for instance, the derivative claims depend on patterns of prior misconduct, deliberate indifference, and scope of employment. *See* Section A.1, *supra*. In contrast, the direct claims depend on the elements of the underlying constitutional claims, including malice for malicious prosecution; failure to take reasonable steps to protect for failure to intervene; and violations of clearly established rights of which a reasonable person would have known for qualified immunity. *Margheim v. Buljko*, 855 F.3d 1077, 1085, 1087 (10th Cir. 2017) (listing elements of malicious prosecution and qualified immunity); *Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011) (listing elements of failure to intervene). There is a substantial risk of the jury applying the wrong standard of liability to one or more of the claims, even unconsciously as the evidence is entered.

**2.      The differing evidence required risks prejudice.**

Second, prejudice can also occur when evidence is admissible only on a certain issue or against less than all of the defendants in a multiparty suit. *Ismail*, 706 F. Supp. at 251; *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127, 146 (S.D.N.Y. 1988) (citing *Ropfogel v. Wise*, 112 F.R.D. 414, 416 (S.D.N.Y. 1986) ("substantial trial disruption would result from the

necessity for continuous [limiting] instructions to the jury on the separate consideration of the voluminous prospective evidence as offered against only one party and not the other; this would require a feat of mental exclusion of insurmountable proportions on the part of the jury… .")); Separate Trials—Discretion of Court, 9A Fed. Prac. & Proc. Civ. § 2388 (3d ed.) (noting that this type of prejudice has been recognized in many cases).

In *Ismail*, the district court reasoned evidence concerning a municipality's failure to adequately train its officers could "prejudice the jury in the determination of the culpability of" the defendant officers. 706 F. Supp. at 251. Likewise, it reasoned a jury determination the defendant officers were culpable, might unfairly influence its determination of whether the City failed to adequately train them and other officers. *Id; see also Ricciuti v. New York City Transit Auth.*, 796 F. Supp. 84, 85 (S.D.N.Y. 1992) (evidence of deficient municipal training procedures could prejudice individual officer's defense).

Here, *Ismail*'s rationale applies to plaintiff's failure to train allegations. In addition, the allegations regarding Det. Golubski's role in Mr. McIntyre's conviction are particularly egregious and have been featured prominently in the press as well as his 555 invocations of his right to silence risking guilt by association. *See* Joint Motion to Transfer Trial to Wichita (filed this date). The more inflammatory bits, although perhaps admissible to demonstrate a constitutional violation on the direct claims, are of limited probativeness against Unified Government and Lt. Culp. Their derivative liability hinges on their preceding conduct causing the constitutional violations, not the mens rea for the constitutional violations. Accordingly, the prejudicial effect of the sordid details outweighs their probative value. *See* Fed.R.Evid. 403. Of course, the KCKPD, itself, has also been featured prominently in the press, making the individual officers vulnerable to guilt by association as well.

The direct claim defendants face another significant prejudice. Presenting voluminous evidence to the jury of alleged wide-spread customs, policies, or practices would be inflammatory regarding individual defendants, and it would be well-nigh impossible for a jury to compartmentalize such evidence. *See Foster v. Bernalillo Cnty. Bd. of Comm'rs*, 2012 WL 13081439, at *5 (D.N.M. Feb. 10, 2012) (granting bifurcation "because the evidence on municipal liability claims tend to be broader-based in that it reaches beyond the conduct of the individual Defendants, it is possible that this evidence could contaminate the mind of the jury in its consideration of the liability of the individual Defendants on the primary claims."); *Marryshow*, 139 F.R.D. at 320 (granting bifurcation reasoning there was little or no evidence admissible against the municipal/supervisory defendants that would also be admissible against the "active" defendant officers).

Adducing evidence of these officers' misconduct and others' poses a grave danger of a jury drawing unfair propensity inferences against them. *See Lund v. Henderson*, 807 F.3d 6, 11-12 (1st Cir. 2015) (affirming bifurcation of *Monell* and direct claims reasoning prior complaints against officer could not be used against him to support an inference of misconduct in the case at hand, much less complaints against other officers (citing Fed.R.Evid. 404(a), (b)(1)); *Kampa v. City of Albuquerque*, Civ. No. 96-1572 LFG/DJS, slip op. at 3 (D.N.M. March 6, 1998) [Docket No. 133] (granting motion to bifurcate, in part, because "[i]f a fact finder hears evidence that at other times, other officers violated the rights of citizens, the fact finder may impermissibly conclude that the conduct of those officers is evidence that [defendant officer], on this occasion, violated [plaintiff's] civil rights").

A jury may even disregard the evidence which shows that the actions defendant officers took against plaintiff were proper because this evidence runs counter to the KCKPD's alleged

unconstitutional practice and custom. *Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *6 (N.D. Ill. Jan. 29, 2014) ("Presenting evidence to the jury regarding a village-wide policy, practice or custom involving multiple improper police actions poses a danger of undue prejudice to the defendant officers by creating the perception that the police department routinely acts improperly, even if the officers acted properly in this case."); *see also Masi v. City of New York*, No. 98 CIV. 6802 (MBM), 1999 WL 688453, at *1 (S.D.N.Y. Sept. 2, 1999) ("the potential prejudice … from having the jury listen to a parade of horrors, if such there be, relating to other officers, and the potential confusion, are apparent for reasons that are obvious").

The risk of unfair prejudice to the direct defendants, along with the risk of juror confusion in attempting to parse the evidence admissible as to each aspect of each claim, cannot be overstated, nor can it be cured through any amount of limiting instructions. *See Huizar v. City of Anaheim*, 840 F.3d 592, 603-04 (9th Cir. 2016) ("[I]f a limiting instruction was considered sufficient to cure all prejudice, there would be no need ever to bifurcate to avoid prejudice in other cases; yet in the civil rights context, courts often bifurcate the trials of individual officers from municipalities to avoid such prejudice."). The prejudice to the direct claim defendants should be determinative. *See Desmare v. New Mexico*, No. CIV 07-199 JB/RHS, 2007 WL 5231690, at *9 (D.N.M. Aug. 14, 2007) (finding the chance of plaintiffs having to try a significant portion of the case twice, *arguendo*, and matters of judicial economy do not trump the risk of unfair prejudice to the individual defendant from admission of his past acts as part of a claim against the state).

### 3. Defendants' different representation and interests risks prejudice.

The different sets of defendants are represented by separate law firms, and coordination required for trial will be quite difficult. The added burden of coordination or lack thereof would make defendant's representation inherently less effective.

Defendants' differing interests would also cause significant prejudice. Although,

defendants are unified in contending no constitutional violation occurred, their alternative arguments conflict. As their summary judgment motions demonstrate, Unified Government's position is that "[e]ven if plaintiffs were able to present evidence their rights were violated as they contend, such violations occurred contrary to policy and not because of it." Doc. 580 at 53. Likewise, the individual defendants' qualified immunity defense asks whether a reasonable officer would realize he was breaking the law. The individual officers' inclination would be to fall back on KCKPD practice as an excuse if pressed on examination. *Compare Medina v. Hous. Auth. of San Miguel Cty.*, 974 F.2d 1345 (10th Cir. 1992) (unpublished) (finding separate representation prudent for individuals and municipalities because the qualified immunity and policy defenses can conflict). A combined trial would present defendants with the Hobson's choice of attacking each other or foregoing a meritorious defense.

## V. Conclusion

In sum, plaintiffs' assert two types of claims which require proof of different facts and legal standards. Granting bifurcation would streamline and simplify the trials of plaintiffs' claims, and likely eliminate the need to try the derivative claims at all. Failure to bifurcate the *Monell* claims will result in prejudice to defendant officers and Unified Government. Therefore, the Court should hold separate trials for plaintiffs' direct claims and their supervisory, *Monell*, and *respondeat superior* claims. Separate trials will then assist in efficient judicial administration of the case and management of trial, better delineate issues, and avoid great prejudice, any of which is sufficient to warrant bifurcation.

WHEREFORE, Unified Government respectfully requests that this Court grant its Motion to Bifurcate and order separate trials for plaintiffs' direct claims and their supervisory, *Monell*, and *respondeat superior* claims, and order all other relief this Court deems just and proper.

Fisher, Patterson, Sayler & Smith, LLP
3550 S.W. 5th Street
Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 286-6609
dcooper@fpsslaw.com | cbranson@fpsslaw.com

s/David R. Cooper

| | |
|---|---|
| David R. Cooper | #16690 |
| Charles E. Branson | #17376 |
| Brian C. Mauldin | #28636 |

*-and-*

Henry E. Couchman Jr., #12842
Edward James Bain, #26442
Unified Government of Wyandotte
County/Kansas City, Kansas
Legal Department
701 N. 7th Street, Suite 961
Kansas City, Kansas 66101
Tel: (913) 573-5060 | Fax: (913) 573-5243
hcouchman@wycokck.org
jbain@wycokck.org

Attorneys for Defendant Unified Government of
Wyandotte County and Kansas City, Kansas

### Certificate of Service

I hereby certify on the 15th day of April, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record:

Michael J. Abrams – Michael.Abrams@LathropGPM.com
William G. Beck – William.Beck@LathropGPM.com
Alexander T. Brown – Alexander.Brown@LathropGPM.com
Alana M. McMullin – Alana.McMullin@LathropGPM.com
Cheryl A. Pilate – cpilate@morganpilate.com
Lindsay J. Runnels – lrunnels@morganpilate.com
Barry Scheck – barry@nsbcivilrights.com
Emma Freudenberger – emma@nsbcivilrights.com
Grace Ann Paras – grace@nsbcivilrights.com
Amelia B. Green – amelia@nsbcivilrights.com
Sona Shah – sona@nsbcivilrights.com
**Attorneys for Plaintiffs**

Sean M. Sturdivan – s.sturdivan@swrllp.com
Elizabeth A. Evers – e.evers@swrllp.com

Tracy M. Hayes – t.hayes@swrllp.com
**Attorneys for The Estate of Detective James Michael Krstolich, Detective Dennis Ware, Officer James L. Brown, The Estate of Lieutenant Dennis Otto Barber, Detective Clyde Blood, Detective W.K. Smith, and The Estate of Lieutenant Steve Culp**

Morgan L. Roach – morgan@mccauleyroach.com
Sean P. McCauley – sean@mccauleyroach.com
Jeffrey S. Kratofil – jeff@mccauleyroach.com
Matthew J. Gist – mgist@enszjester.com
Christopher M. Napolitano – cnapolitano@enszjester.com
**Attorneys for Defendant Roger Golubski**

s/David R. Cooper