UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LAMONTE MCINTYRE & ROSE LEE MCINTYRE,**<br><br>   **Plaintiffs,**<br><br>v.<br><br>**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KS, et al.,**<br><br>   **Defendants.** | Case No. 2:18-cv-02545-KHV-KGG |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
ROGER GOLUBSKI'S MOTION FOR BIFURCATED/SEPARATE TRIAL**

Plaintiffs Lamonte McIntyre and Rose Lee McIntyre, by and through undersigned counsel, submit this Memorandum of Law in Opposition to Defendant Roger Golubski's (hereinafter "Golubski") Motion for Bifurcated/Separate Trial (Doc. 594).

### I. Introduction

Bifurcation is not warranted here, as the claims against all defendants are inextricably intertwined with Defendant Golubski's actions and state of mind. Accordingly, bifurcation would require substantial duplication of evidence, cause even further delay in resolving this action, confuse the jury, and prejudice Plaintiffs by creating fragmented, piecemeal trials for little to no benefit. Moreover, Golubski has failed to prove unfair prejudice, judicial economy or convenience favor bifurcation in this case, as he bases his Motion on the mistaken belief that Golubski's own actions and invocations of the Fifth Amendment cannot be used against him. He is wrong. However, any such prejudice is premature, and regardless can be cured with the less drastic measure of limiting instructions.

## II. <u>Courts Favor Complete Trials.</u>

Federal Rule of Civil Procedure 42(b) states:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The district court has broad discretion in determining whether to sever issues at trial. *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010); *Crawford v. City of Kansas,* No. CIV.A. 95-2336-DES, 1997 WL 381758, at *1 (D. Kan. June 11, 1997) (citing *Eastridge Dev. Co. v. Halpert Assocs., Inc*., 853 F.2d 772, 781 (10th Cir.1988)). In making such a determination, the "trial court should consider 'whether the interests of efficiency and convenience favor bifurcation, whether the issues are clearly separable, and whether bifurcation is fair to both parties.'" *Crawford,* No. CIV.A. 95-2336-DES, at *1 (quoting *Scheufler v. General Host Corp*., 895 F.Supp. 1411, 1414 (D.Kan.1995)). However, bifurcation should not be "routinely ordered." *See AKH Co. v. Universal Underwriters Ins. Co.,* No. CIV.A. 13-2003-JAR, 2013 WL 3456936, at *2 (D. Kan. July 9, 2013) (citing Fed. R. Civ. P. 42(b) advisory committee's note). Instead, "the party seeking bifurcation has the burden of showing that separate trials are proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience." *Dun & Bradstreet Corp. Found. v. Nat'l Seminars, Inc.,* No. CIV.A. 89-2388-O, 1990 WL 182338, at *3 (D. Kan. Oct. 23, 1990); *see also Belisle*, 697 F. Supp. 2d at 1250. "Although several factors may be considered in making the decision to bifurcate, including convenience, avoiding prejudice and minimizing expense and delay… 'piecemeal' litigation should be avoided." *Dun*, No. CIV.A. 89-2388-O, at *3 (internal citations omitted). Indeed, it is well established that "[i]n actions at law the general practice is to try all the issues in a case at one time; and it is only in exceptional instances where there are special

and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subjects of separate trials." *Miller v. American Bonding Co.*, 257 U.S. 304, 308 (1921). In addition, the Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999).

## III.     There Is No Basis to Bifurcate the Trials.

### A.     Plaintiffs Would be Prejudiced by Bifurcation.

Although Defendant Golubski claims prejudice if evidence of his own misconduct and refusal to answer questions directly bearing on the claims in this action were introduced against him in this action, the inability to do so would instead prejudice Plaintiffs. Moreover, Defendant does not show that such evidence is "unfairly prejudicial" as opposed to merely "unfavorable" which is the characteristic of all relevant evidence. *United States v. Flanagan*, 34 F.3d 949,953 (10th Cir. 1994) ("[T]he unfair prejudice aspect of Rule 403 cannot be equated with testimony which is simply unfavorable to a party,") (internal quotation omitted).

#### i.     Prior Acts Evidence is Admissible.

Evidence of other acts, regardless of whether they occurred prior or subsequent to the incidents at issue in the case, are admissible if they are relevant to the actual issues in the case. Fed. R. Civ. P. 403; *United States v. Pietre,* 960 F.2d 112, 118 (2d Cir. 1994). However, Golubski's argument regarding unfair prejudice is premature, as the threshold evidentiary issues have not been briefed by the parties. *See Crawford v. City of Kansas*, No. CIV.A. 95-2336-DES, 1997 WL 381758, at *1 (D. Kan. June 11, 1997) (holding that because the admissibility of the evidence Defendants argued may prejudice them was not yet resolved or briefed in Motions in Limine, "the court cannot determine at this time that Defendants would be subject to unfair prejudice that could not be cured by appropriate limiting jury instructions.") Even if a motion to bifurcate was the proper

3

place to brief these issues (it is not) Golubski does not identify what specific material or evidence in the record is allegedly inadmissible, instead referring generally to "illicit associations" and "relationships" with informants and prostitutes. This prevents Plaintiffs from fully explaining how each individual piece of evidence is admissible and forces speculation. Accordingly, Golubski has not and cannot satisfy his burden to show unfair prejudice and his motion should be denied.

Notwithstanding the above, prior acts of Defendant Golubski, as well as his contemporaneous[1] illicit associations with drug dealers and pervasive sexual exploitation of women in the KCK community are directly relevant to the claims in this action under numerous evidentiary theories. For example, under Rule 404(b)(2) – which is conveniently omitted from Golubski's Motion – prior acts "evidence may be admissible for another purpose [as opposed to propensity], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Here, because Plaintiffs' claims against Golubski and the Defendant Officers involve, *inter alia,* how they improperly investigated a felony double homicide, fabricated and suppressed evidence from eyewitnesses, and failed to intervene in the same, Golubski's prior acts are admissible against Golubski. For example, this evidence shows: (1) his *motive* and the *absence of mistake or accident* in framing Lamonte McIntyre: to retaliate against Rose McIntyre, a victim of his sexual assaults, and to protect his illicit arrangements with drug dealers; (2) his *plan and intent* to fabricate evidence from Black females in the KCK community against Lamonte McIntyre, as he had done in other cases before and *knew* he could get away with it without repercussion; (3) his *opportunity* to suppress exculpatory evidence from

---

[1] Golubski asserts that evidence of his work for drug dealers, illicit and non-consensual relationships with informants and other women in the KCK community did not occur "within the investigation of Lamonte McIntyre." (Motion, p. 4) This is incorrect, as much of the evidence surrounding Golubski's illicit associations and sexual exploitation of women occurred during the 1994 time period.

witnesses he previously sexually exploited in this investigation and others; (4) his *knowledge* that Lamonte McIntyre was innocent, as the informants and individuals with whom he had illicit associations knew Lamonte did not commit the crimes; and (5) his *intent and opportunity* to close the case as quickly as possible to avoid his misconduct from being detected and to further his criminal enterprises.[2] Additionally, such evidence is relevant as Fed. R. Evid. 401's standard of relevance "is a liberal one." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 587 (1993).[3]

Not only does Golubski's past behavior form the basis of a pattern and practice (his "MO") but it is also probative to show the (1) Defendant Officers had knowledge or notice of Golubski's behavior and that they should have intervened to prevent the violations of Lamonte and Rose McIntyre's constitutional rights, and (2) Defendant Unified Government had knowledge or notice of Golubski's behavior but ratified or was deliberately indifferent to it, foreseeably resulting in Plaintiffs' constitutional violations.[4] Such evidence would be admissible against all defendants

---

[2] Golubski also mentions without argument that reputation evidence would also be inadmissible. However, if Golubski introduces evidence of his good character under Rule 404(a)(1), Plaintiffs would be permitted to offer proof of his character to rebut such evidence. *See Crawford v. City of Kansas,* No. CIV.A. 95-2336-DES, 1997 WL 381758, at *2 (D. Kan. June 11, 1997).

[3] Additionally, the evidence of Defendants' prior misconduct, particularly in conjunction with repeated reprimands or complaints, would be relevant to Plaintiffs' punitive damages claim, as punitive damages are allowed "only when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Youren v. Tintic Sch. Dist.,* 343 F.3d 1296, 1308 (10th Cir. 2003) (quoting *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992)). Because this evidence is relevant against all defendants for certain purposes, bifurcation is unnecessary and would needlessly duplicate the same evidence in multiple trials. *Zimmerman v. Univ. of Utah*, No. 2:13-CV-1131, 2018 WL 10152216, at *1-2 (D. Utah Aug. 8, 2018) ("Ordering a separate trial and recalling witnesses to the stand simply to prove [Defendants'] state of mind would be inefficient and inconvenient. And that court does not find that introducing such evidence in conjunction with evidence on the questions of liability and compensatory damages so prejudicial as to warrant bifurcation.").

[4] Plaintiffs have further asserted state law claims against the individual defendants and the Unified Government that will require a jury to determine the mental state of the defendants during the investigative misconduct, including intent, maliciousness, ill will, motive and implicating their notice of the unreasonableness of their conduct. All of these issues implicate the concepts of notice

regardless of bifurcation. *See Ismail v. Cohen,* 706 F.Supp. 243, 252-253 (S.D.N.Y. 1989), *aff'd in relevant part*, 899 F.2d 183 (2d Cir. 1990) (even after bifurcation, evidence of a similar incident to show a pattern of defendant's activity and intent was admissible and finding that the risk of prejudice to the officer did not substantially outweigh its probative value). Notably, Golubski admits this same evidence could be relevant against the other defendants to show knowledge, and ratification, (Motion, p. 2),[5] while the other defendants admit such evidence is only relevant against Golubski. (Doc. 599, p. 10).[6] Under Defendants' logic, there would have to be separate trials for *each* officer and the Unified Government in order to avoid prejudice that may result from any piece of evidence not directly related to that defendant, a result incompatible with the Federal Rules and the disfavoring of separate trials. Instead, because the evidence referred to in Golubski's Motion is clearly relevant and admissible against all defendants to prove Plaintiffs' claims, the probative value substantially outweighs any prejudicial effect.

To the extent Golubski is concerned about the jury interpreting such evidence as indicative of propensity, the Court can guard against any such prejudice by cautioning the jury that the proof was offered for another sole and limited purpose. Indeed, Fed. R. Evid. 105 provides a mechanism to address a situation where "evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Defendant argues that

---

and intent that would make the relevance of Golubski's prior acts, and reprimands for prior acts, relevant and admissible.

[5] Golubski states "some of this evidence could *arguably* be admissible against the other individual defendants and/or the Unified Government to prove its purported knowledge and ratification of the alleged actions"

[6] Unified Government states "The more inflammatory bits, although perhaps admissible to demonstrate a constitutional violation on the direct claims, are of limited probativeness against Unified Government and Lt. Culp."

that it makes more sense to have two or three separate trials involving substantially the same evidence than to use this tool that is specifically provided for in the federal rules for circumstances exactly like those in the present case. This tool is the most effective means of providing for judicial economy while addressing any potential prejudice to the Defendants. *Kretek v. Bd. of Commissioners of Luna Cty.*, No. CIV. 11-676 KG/GBW, 2014 WL 11621695 (D.N.M. Feb. 24, 2014) (holding that bifurcation of *Monell* and individual liability claims was not warranted as "a limiting jury instruction will sufficiently cure any possibility of prejudice or jury confusion."). While Plaintiffs contend that the evidence of Defendants' prior misconduct is directly relevant to their claims against Golubski or the other Defendants, any possible prejudice can be addressed by an instruction as provided in Rule 105, although such an evidentiary offering is speculative and premature at this point.

Additionally, the cases cited by Golubski, *Tanberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005) and *Brunson v. City of Dayton*, 163 F. Supp. 2d 919 (S.D. Ohio 2001), are distinguishable and do not support bifurcation in this case. In *Tanberg*, the Plaintiffs brought suit against officers for excessive use of force, false arrest, and assault and battery and sought to admit three other occasions where a defendant arrested individuals without probable cause or used excessive force. 401 F.3d 1151 (10th Cir. 2005). The Tenth Circuit held that such instances were irrelevant *to the false arrest and excessive force claims* because they "require[] assessment of [the officer's] conduct under an objective standard" and because the officer did not dispute intent in the assault and battery claims. *Id.* at 1167-1168. Unlike *Tanberg,* Plaintiffs here allege, *inter alia*, malicious prosecution, fabrication of evidence, conspiracy, and familial association claims against Golubski, all of which require Plaintiff to prove Golubski's subjective state of mind. Since none of these claims were alleged in *Tanberg* that case does not support bifurcation here.

7

Likewise, the Plaintiff in *Brunson* brought an excessive force claim against defendant officers and their employer, the City of Dayton. 163 F. Supp. 2d 919 (S.D. Ohio 2001) The court separated the trials of the municipality from the individual officers based on prejudice, holding that "individual Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current Dayton police officer." *Id.* at 924. Unlike *Brunson*, Plaintiffs' *Monell* claim in this action relies primarily on the named Defendants' *own prior misconduct*. Regardless, *Brunson* is an out of circuit, non-binding district court decision, that should not be followed as this Court's own precedent has addressed the exact same circumstance and come to the opposite conclusion. In *Crawford v. City of Kansas*, this Court directly addressed the issue of bifurcation in an excessive force case. No. CIV.A. 95-2336-DES, 1997 WL 381758 (D. Kan. June 11, 1997). There, like here, the Defendants sought separate submission of the issues to the jury "to avoid the premature introduction of evidence that would be inadmissible and prejudicial as to the individual defendants." *Id.* at *1. Further, like here, the Defendants argued that unless at least one of the individual defendants is found liable, the City may not be held liable – and thus separate trials would promote judicial economy. *Id.* In addition to finding that the evidentiary issues relevant to unfair prejudice had not yet been briefed and were thus premature, *id.* at *2; the court held that it must also consider whether the interests of efficiency and convenience favor bifurcation. *Id.* In assessing these elements, the court noted that some witnesses would be required to testify twice, and that when – like here – "discovery has already been completed, there is less to be gained by bifurcation." *Id.* Accordingly, the court denied the Defendants' Motion to Bifurcate. *Id.* at *3.

### ii. Golubski's Fifth Amendment Invocations are Admissible.

Golubski cites no case in support of his proposition that his invocations of the Fifth Amendment are inadmissible against him. And he cannot. Instead, it is well-settled in the civil context that evidence a party has invoked their Fifth Amendment privilege is admissible so long as

8

it is relevant under Rule 401 and not excludable under Rule 403. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) ("[I]n proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause.") In this action, Golubski repeatedly invoked the Fifth Amendment when questioned about his own liability as well as his conspiracy with the other defendants and the ratification he received from the Unified Government, all of which are supported by ample evidence in the record. Although he has the constitutional right to do so, Golubski is not free from the consequences that may follow his invocations. *Id.* at 317-318. Indeed, a refusal to answer questions based on the Fifth Amendment is relevant if the questions themselves are relevant, because "silence in the face of accusation is a relevant fact…[and] often evidence of the most persuasive character." *Id.* at 319 (internal citations and quotation marks omitted). After using the Fifth Amendment as a sword throughout discovery, Golubski cannot now use it as a shield. Any adverse inference or introduction of his refusals are no doubt prejudicial, as "[p]rejudice to one party is the natural and intended consequence of the admission of evidence by another. . . . prejudice does not necessarily mean unfair prejudice." *Hinojosa v. Butler*, 547 F.3d 285, 295 (5th Cir. 2008). Thus, "[t]he mere fact that the evidence will damage the defendant's case is not enough to establish unfair prejudice [justifying exclusion under Rule 403]." *BMG Rights Mgmt., LLC v. Cox Commc'n, Inc.*, 881 F.3d 293, 313–14 (4th Cir. 2018) (internal citations and quotation marks omitted).

To the contrary, it would be highly prejudicial to Plaintiffs to preclude them from admitting Golubski's invocations of the Fifth Amendment as evidence. *See Wood v. Reassure Am. Life Ins. Co.,* No. 4:03 CV 00800 JWC, 2006 WL 8444860 at *3 (E.D. Ark. June 8, 2006) ("Hearing [witness] invoke the Fifth Amendment would assist the jury in understanding Defendant's need to prove its case through documents and circumstantial evidence."); *see also SEC v. Graystone Nash, Inc.,* 25 F.3d 187, 190–91 (3d Cir. 1994) ("[I]nvocation of the Fifth Amendment poses substantial

9

problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth."); *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509, 522–23 (8th Cir. 1984) (holding plaintiff must be permitted to call nonparty witness to the stand to invoke the Fifth Amendment because it was necessary to "offset the unfair advantage" defendant gained from selective use of witness's statements). Additionally, while there is ample support for instructing the jury it may draw an inference against Golubski based on his invocation of the Fifth Amendment, the Court need not reach that issue to rule the evidence is admissible. It is. Defendant provides no basis to exclude this highly probative evidence.

### B. The Claims Against the Individual Defendants and the Unified Government are Intertwined.

In analyzing whether bifurcation is appropriate in wrongful conviction cases, the key determination is whether the "claims against the Officers and the *Monell* claim will involve intertwined evidence." *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 462 (D. Md. 2020); *see also Allstate Ins. Co. v. Vizcay,* 826 F.3d 1326, 1333 (11th Cir. 2016) (describing the factors courts should consider as including "the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense" of the alternatives.") (internal quotations omitted).

Here, the claims against the individual defendants and the Monell claim against the Unified Government present common questions of law and fact related to the officers' state of mind during their investigation of the Ewing/Quinn murders. To prove both the individual liability claims and the municipal liability claims, Plaintiffs must show that an underlying constitutional violation occurred. In doing so, Plaintiffs intend to prove the individual defendants (Golubski and the Defendant Officers) acted with *malice* and that they *intentionally* or *knowingly* caused Lamonte

McIntyre harm by failing to properly investigate, suppressing exculpatory evidence, and fabricating inculpatory evidence. In addition, to prove Plaintiffs' failure to intervene and conspiracy claims against the Defendant Officers, Plaintiffs are required to additionally show that they *were aware of or had reason to know* of Golubski's constitutional violations and that they *agreed* to deprive Lamonte of his rights. Lastly, to prove Plaintiffs' Monell claim, Plaintiffs must show that the individual defendants' actions were the result of the Unified Government's deliberate indifference to, or ratification of, the officers' conduct in this and similar actions such that it amounted to a custom or policy of disregarding individuals' rights. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978). Accordingly, evidence of other, similar acts, Golubski's illicit associations and sexual exploitation of women in the KCK community, and Golubski's Fifth Amendment assertions are probative of both the officers' intent and state of mind, as well as the culture, custom and policy of the municipality. *See* Fed. R. Evid. 404(b)(2); *Snell v. Tunnell*, 920 F.2d 673, 701-702 (10th Cir. 1990) ("While a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim, proof of an agreement to deprive often will require examination of conduct occurring prior to the deprivation."); *see also Brink's v. City of New York*, 717 F.2d 700 (2d Cir. 1983) (holding the refusal of an ex-employee to testify is admissible in a civil case to support an adverse inference against a former employer); *Willingham v. Cty. of Albany,* 593 F. Supp. 2d 446, 453 (N.D.N.Y. 2006) (applying invocation of Fifth Amendment by a defendant to his co- defendant because he "accepted and followed [the other defendant's] leadership and actions and joined with [the defendant].") Moreover, evidence of a municipal policy or practice is probative of whether an individual Defendant engaged in a particular course of conduct consistent with those policies on a particular occasion. *Coleman v. Peoria*, 2016 WL 5497363, at *6 (C.D. Ill. Sep. 27, 2016) (denying bifurcation because Monell evidence was "relevant to the actions of the defendant

officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices").

This factual and evidentiary nexus between the conduct of the officers on this occasion and previous or subsequent occasions, and the custom and practice of the Unified Government will require testimony from the same witnesses and much of the same documentary proof. The duplicative and significant overlap in the evidence makes the proposed bifurcation of Plaintiffs' claims inefficient and impractical. For example, many witnesses' testimony will relate to both the claims against the individual officers as well as the Unified Government. Those witnesses include, most notably, the officer defendants themselves, the Plaintiffs, non-defendant KCKPD officers, Plaintiffs' experts, civilian witnesses, and the other witnesses involved in the Ewing/Quinn investigation. Further, documentary evidence would also be relevant to both claims, including evidence concerning the investigation (or lack thereof) into the Ewing/Quinn homicides and the policies that were violated by the defendants. Rather than preserve judicial economy, a bifurcation in such circumstances would require *substantial* repetition of evidence, impose a severe hardship on witnesses (especially indigent civilian witnesses and those traveling from out of state, such as the Plaintiffs and their experts), substantially lengthen the entire process and cause confusion to the jury, most of whom presumably would not wish to sit through the same testimony repeatedly.

Simply stated, Golubski's motion fails to show that separate trials (however bifurcated) would avoid prejudice or lessen delay, expense, or inconvenience. Instead, bifurcation would unnecessarily prolong resolution of the factual and legal issues in connection with the wrongful prosecution and conviction of Plaintiff that forms the basis for Plaintiffs' claims against all Defendants. Bifurcation under these circumstances would do substantial prejudice to the parties as all claims are inextricably intertwined not only with the underlying facts, but with the factual and

legal claims made against Roger Golubski. Bifurcation would certainly prolong an already protracted case, and would not promote efficiency or judicial economy as Defendant suggests. A second trial would require all Defendants and other witnesses to re-testify and separate trials could create inconsistent verdicts, leading to bifurcated and inconsistent appeals. Instead, the Court should proceed with trial as the case is currently postured and in accordance with the pleadings, discovery, and pretrial order entered by each of the parties and anticipated during the pendency of the lawsuit. Indeed, Defendants invite the Court to create substantially more, not less, work for the Court, the parties, and their counsel. Bifurcation would severely prejudice the Plaintiffs trial preparation based upon the Pretrial Order and discovery conducted to prepare this case for one trial to resolve all claims between all parties.

Given the fact that the instant case is specially set for a 4-week trial beginning on October 17, 2022 it seems doubtful that Defendant's 11th hour motion is offered to avoid delay, prejudice, or confusion. Instead, Defendant's motion seems to only inject confusion (and delay and expense) into this action by needlessly fragmenting the litigation. Moreover, the remainder of Golubski's arguments are conclusory and speculative and misrepresent the burdens and evidence in this case. Rather than achieve any of the purposes for which Rule 42(b) exists, Defendant's motion seems to have the opposite effect.

## IV.     Conclusion

Defendant Golubski offers no basis to bifurcate the trials. Defendant Golubski's motion should be denied in its entirety.

Date: April 29, 2022	Respectfully submitted,

LATHROP GPM LLP

By: /s/ *Alana M. McMullin*
Michael J. Abrams #15407
Alana M. McMullin #78948
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
(816) 292-2000
(816) 292-2001 Facsimile
michael.abrams@lathropgpm.com
alana.mcmullin@lathropgpm.com

Cheryl A. Pilate #14601
Lindsay Runnels #78822
Morgan Pilate, LLC
926 Cherry Street
Kansas City, MO 64106
Telephone: (816) 471-6694
Facsimile: (816) 472-3516
cpilate@morganpilate.com

Barry Scheck (*admitted pro hac vice*)
Emma Freudenberger (*admitted pro hac vice*)
Sona R. Shah (*admitted pro hac vice*)
Grace Paras (*admitted pro hac vice*)
Neufeld Scheck & Brustin, LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
Telephone: (212) 965-9081
Facsimile: (212) 965-9084
emma@nsbcivilrights.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 29th day of April, 2022, the foregoing was electronically filed with the clerk of the court using the CM/ECF system which will provide notice and service to all counsel of record.

By: /s/ *Alana M. McMullin*
An Attorney for Plaintiffs