## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LAMONTE MCINTYRE & ROSE LEE MCINTYRE,**

        **Plaintiffs,**

**v.**

**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KS, et al.,**

        **Defendants.**

Case No. 2:18-cv-02545-KHV-KGG

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT OFFICERS' MOTION FOR SEPARATE TRIAL

Plaintiffs Lamonte McIntyre and Rose Lee McIntyre, by and through undersigned counsel, submit this Memorandum of Law in Opposition to Defendants Estates of James Michael Krstolich, Dennis Otto Barber, and Lieutenant Steven Culp, and Dennis Ware, James L. Brown, and W.K. Smith (hereinafter "Defendant Officers") Motion for Separate Trial (Doc. 596).

## I.  Introduction

Bifurcation is not warranted here, as the claims against all defendants are inextricably intertwined with Defendant Golubski's actions and state of mind. Accordingly, bifurcation would require substantial duplication of evidence, cause even further delay in resolving this action, confuse the jury, and prejudice Plaintiffs by creating fragmented, piecemeal trials. Moreover, the Defendant Officers have failed to prove unfair prejudice, judicial economy or convenience favor bifurcation, as their Motion completely ignores the conspiracy and failure-to-intervene claims against them that are predicated on Golubski's misconduct. Regardless, any prejudice resulting

from evidence relating to Golubski can be cured with the less drastic measure of limiting instructions.

## II.   <u>Courts Favor Complete Trials</u>

Federal Rule of Civil Procedure 42(b) states:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The district court has broad discretion in determining whether to sever issues at trial. *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010); *Crawford v. City of Kansas,* No. CIV.A. 95-2336-DES, 1997 WL 381758, at *1 (D. Kan. June 11, 1997) (citing *Eastridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 781 (10th Cir.1988)). In making such a determination, the "trial court should consider 'whether the interests of efficiency and convenience favor bifurcation, whether the issues are clearly separable, and whether bifurcation is fair to both parties.'" *Crawford,* No. CIV.A. 95-2336-DES, at *1 (quoting *Scheufler v. General Host Corp.*, 895 F.Supp. 1411, 1414 (D.Kan.1995)). However, bifurcation should not be "routinely ordered." *See AKH Co. v. Universal Underwriters Ins. Co.,* No. CIV.A. 13-2003-JAR, 2013 WL 3456936, at *2 (D. Kan. July 9, 2013) (citing Fed. R. Civ. P. 42(b) advisory committee's note). Instead, "the party seeking bifurcation has the burden of showing that separate trials are proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience." *Dun & Bradstreet Corp. Found. v. Nat'l Seminars, Inc.,* No. CIV.A. 89-2388-O, 1990 WL 182338, at *3 (D. Kan. Oct. 23, 1990); *see also Belisle*, 697 F. Supp. 2d at 1250. "Although several factors may be considered in making the decision to bifurcate, including convenience, avoiding prejudice and minimizing expense and delay… 'piecemeal' litigation should be avoided." *Dun*, No. CIV.A. 89-2388-O, at *3 (internal

2

citations omitted). Indeed, it is well established that "[i]n actions at law the general practice is to try all the issues in a case at one time; and it is only in exceptional instances where there are special and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subjects of separate trials." *Miller v. American Bonding Co.*, 257 U.S. 304, 308 (1921). In addition, the Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999).

**III.   There Is No Basis to Bifurcate the Trials.**

**A.  Plaintiffs Would be Prejudiced by Bifurcation.**

Although the Defendant Officers claim prejudice if evidence of Golubski's misconduct and refusal to answer questions directly bearing on the claims in this action were introduced against them, the inability to do so would instead prejudice Plaintiffs. To prove that the Defendant Officers conspired with Golubski and failed to intervene to prevent Lamonte McIntyre's wrongful conviction, Plaintiffs must be able to show Golubski's actions were known to the officer defendants. Thus, Golubski's actions and state of mind are directly relevant to the claims against the Defendant Officers as well as the claims against Golubski and Defendant Unified Government. Regardless, Defendants do not show that such evidence is "unfairly prejudicial" as opposed to merely "unfavorable" which is the characteristic of all relevant evidence. *United States v. Flanagan*, 34 F.3d 949,953 (10th Cir. 1994) ("[T]he unfair prejudice aspect of Rule 403 cannot be equated with testimony which is simply unfavorable to a party,") (internal quotation omitted).

**i.  Prior Acts and State of Mind Evidence is Admissible.**

Like Defendant Golubski, the Defendant Officers' Motion fails to identify the specific material or evidence upon which they base their unfair prejudice argument. Accordingly, bifurcation on this basis is premature, as the threshold evidentiary issues have not been briefed by

3

the parties. *See Crawford v. City of Kansas*, No. CIV.A. 95-2336-DES, 1997 WL 381758, at *1 (D. Kan. June 11, 1997) (holding that because the admissibility of the evidence Defendants argued may prejudice them was not yet resolved or briefed in Motions in Limine, "the court cannot determine at this time that Defendants would be subject to unfair prejudice that could not be cured by appropriate limiting jury instructions.") The Defendant Officers instead refer generally to "claims of misconduct against Defendant Golubski ranging from sexual assault to being complicit with various crimes of drug dealers in Kansas City, Kansas." (Motion, p. 5). This prevents Plaintiffs from fully explaining how each individual piece of evidence is admissible and forces speculation. Accordingly, the Defendant Officers have not and cannot satisfy their burden to show unfair prejudice and their motion should be denied.

Regardless, Defendant Officers **do not assert that the evidence of Golubski's misconduct or his invocations of the Fifth Amendment are inadmissible or irrelevant to the claims against them**. *See generally* Doc. 596. And they cannot. Plaintiffs' claims against Defendant Golubski and the Officer Defendants involve, *inter alia,* how they improperly investigated a felony double homicide, fabricated and suppressed evidence from eyewitnesses, and failed to intervene in the same. Thus, it is not enough for Plaintiff to simply show that an officer performed a certain action or failed to perform a certain action in a § 1983 case. Plaintiff must show that the investigative failures were so deficient as to be constitutionally offensive, which require the introduction of evidence as to what acceptable investigative standards are. This evidence is necessary to prove Plaintiffs' claims against the individual officers, and thus the alleged prejudice to the defendants would not outweigh the probative value of the evidence nor the efficiency that will occur by trying this case together. Further, much of Defendant Golubski's misconduct, both prior and subsequent to Lamonte McIntyre's conviction (including Rose McIntyre's sexual assault) are directly relevant

4

to the Defendant Officers' knowledge, motive, intent, plan, absence of mistake, and state of mind under Rule 404(b)(2). Accordingly, not only does Golubski's past behavior form the basis of a pattern and practice (his "MO") but it is also probative to show the (1) Defendant Officers had knowledge or notice of Golubski's behavior and that they should have intervened to prevent the violations of Lamonte and Rose McIntyre's constitutional rights, and (2) Defendant Unified Government had knowledge or notice of Golubski's behavior but ratified or were deliberately indifferent to it, foreseeably resulting in Plaintiffs' constitutional violations.[1] Such evidence would be admissible against all defendants regardless of bifurcation. *See  Ismail v. Cohen,* 706 F.Supp. 243, 252-253 (S.D.N.Y. 1989), *aff'd in relevant part*, 899 F.2d 183 (2d Cir. 1990) (even after bifurcation, evidence of a similar incident to show a pattern of defendant's activity and intent was admissible and finding that the risk of prejudice to the officer did not substantially outweigh its probative value). Notably, Golubski argues this same evidence could be relevant against the other defendants to show knowledge, and ratification (Doc. 594, p. 2).[2] Under Defendants' logic, there would have to be separate trials for each officer, Golubski, and the Unified Government in order to avoid prejudice that may result from any evidence not directly involving that defendant, a result incompatible with the Federal Rules and the disfavoring of separate trials. Instead, as explained above, the noted evidence is clearly relevant and admissible against all defendants to prove Plaintiffs' claims and the probative value substantially outweighs any prejudicial effect.

---

[1] Plaintiffs have further asserted state law claims against the individual defendants and the Unified Government that will require a jury to determine the mental state of the defendants during the investigative misconduct, including intent, maliciousness, ill will, motive and implicating their notice of the unreasonableness of their conduct. All of these issues implicate the concepts of notice and intent that would make the relevance of Golubski's prior acts, and reprimands for prior acts, relevant and admissible.

[2] In his Motion to Bifurcate, Golubski states: "some of this evidence could *arguably* be admissible against the other individual defendants and/or the Unified Government to prove its purported knowledge and ratification of the alleged actions".

### ii. Golubski's Invocations are Probative Evidence Admissible under Rule 403.

The Defendant Officers cite no case in support of their proposition that Golubski's invocations of the Fifth Amendment are inadmissible against them. And they cannot. Instead, it is well-settled in the civil context that evidence a nonparty witness has invoked their Fifth Amendment privilege is admissible so long as it is relevant under Rule 401 and not excludable under Rule 403. *See, e.g., Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) ("[I]n proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause.") Defendants do not dispute that Golubski's privilege invocations are "relevant" within the meaning of Rule 401. Fed. R. Evid. 401; *see generally* Doc. 599. Nor could they, as Golubski's actions and state of mind are critical factual context for all the claims in this action. Furthermore, a refusal to answer questions based on the Fifth Amendment is relevant if the questions themselves are relevant, because "silence in the face of accusation is a relevant fact…[and] often evidence of the most persuasive character." *Baxter, 425 U.S.* at 319 (internal citations and quotation marks omitted). Instead, Defendants assert, without any support, that Golubski's Fifth Amendment invocations are inadmissible against them because a jury could put "undue weight" on them and "hold it against the Defendant." It is not clear from this undeveloped contention what exact prejudice they are referring to, but in any event, this is not a basis for exclusion. *See FDIC v. Fidelity & Deposit Co. of Md.,* 45 F.3d 969, 978 (5th Cir. 1995) (rejecting argument that jury may find defendant liable "from his association with witnesses who invoked the Fifth Amendment, thereby unduly prejudicing [him], was avoided by the instruction that the jury was not to find liability absent evidence corroborating the relationship between the invoking witnesses and [the defendant].") Golubski's invocation of his privilege, especially to questions regarding the conspiracy and failure-to-intervene by the Defendant Officers, is highly probative of central fact

issues in this case. Regardless, Defendants do not identify what *unfair* prejudice to them would result from the admission of evidence that *Golubski* has invoked his Fifth Amendment rights. "Prejudice to one party is the natural and intended consequence of the admission of evidence by another. . . . prejudice does not necessarily mean unfair prejudice." *Hinojosa v. Butler*, 547 F.3d 285, 295 (5th Cir. 2008). Thus, "[t]he mere fact that the evidence will damage the defendant's case is not enough to establish unfair prejudice [justifying exclusion under Rule 403]." *BMG Rights Mgmt., LLC v. Cox Commc'n, Inc*., 881 F.3d 293, 313–14 (4th Cir. 2018) (internal citations and quotation marks omitted). Further, when it comes to co-defendants in a civil action, courts have permitted adverse inferences against parties that did not invoke the privileged based on relationships that are remarkably thin to the individual who did invoke the privilege. *See Brink's v. City of New York,* 717 F.2d 700 (2d Cir. 1983) (holding the refusal of an ex-employee to testify is admissible in a civil case to support an adverse inference against a former employer); *Aspen Tech., Inc. v. M3 Tech., Inc*., 569 Fed.Appx. 259, 266 (5th Cir. 2014) (same); *RAD Servs. v. Aetna Casualty & Surety Co.,* 808 F.2d 271 (3d Cir.1986) (same); *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.,* 819 F.2d 1471 (8th Cir. 1987) (same); *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997) (finding adverse inference from father's invocation of the Fifth Amendment privilege was admissible against his daughter based on the strength of their relationship and their united interests); *Willingham v. Cty. of Albany,* 593 F. Supp. 2d 446, 453 (N.D.N.Y. 2006) (applying invocation of Fifth Amendment by a defendant to his co-defendant because he "accepted and followed [the other defendant's] leadership and actions and joined with [the defendant].")

    To the contrary, it would be highly prejudicial to Plaintiffs to preclude them from admitting Golubski's invocations of the Fifth Amendment as evidence. *See Wood v. Reassure Am. Life Ins. Co.,* No. 4:03 CV 00800 JWC, 2006 WL 8444860 at *3 (E.D. Ark. June 8, 2006) ("Hearing

[witness] invoke the Fifth Amendment would assist the jury in understanding Defendant's need to prove its case through documents and circumstantial evidence."); *see also SEC v. Graystone Nash, Inc.,* 25 F.3d 187, 190–91 (3d Cir. 1994) ("[I]nvocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth."); *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509, 522–23 (8th Cir. 1984) (holding plaintiff must be permitted to call nonparty witness to the stand to invoke the Fifth Amendment because it was necessary to "offset the unfair advantage" defendant gained from selective use of witness's statements). Regardless, while there is ample support for an adverse inference instruction here, the Court need not reach that issue to rule the evidence is admissible. It is. Defendants provide no basis to exclude this highly probative evidence.

### iii. The Claims Against the Individual Defendants and the Unified Government are Intertwined

Like the Unified Government, the Defendant Officers allege that the claims against them should be bifurcated from the municipal liability claims. In analyzing bifurcation in wrongful conviction cases, a key determination is whether the "claims against the Officers and the *Monell* claim will involve intertwined evidence." *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 462 (D. Md. 2020). Other factors include: "(1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted." *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001), opinion modified on denial of reconsideration, No. 95 CIV. 9076(LTS)(RL, 2002 WL 1013291 (S.D.N.Y. May 20, 2002).

48611741v1

Here, the claims against the individual defendants and the Monell claim against the Unified Government present common questions of law and fact related to the officers' state of mind during their investigation of the Ewing/Quinn murders. To prove both the individual liability claims and the municipal liability claims, Plaintiffs must show that an underlying constitutional violation occurred. In doing so, Plaintiffs intend to prove the individual defendants (Golubski and the Defendant Officers) acted with malice and that they intentionally or knowingly caused Lamonte McIntyre harm by failing to properly investigate, suppressing exculpatory evidence, and fabricating inculpatory evidence. In addition, to prove Plaintiffs' failure to intervene and conspiracy claims against the Defendant Officers, Plaintiffs are required to additionally show that they were aware of or had reason to know of Golubski's constitutional violations and that they agreed to deprive Lamonte of his rights. Lastly, to prove Plaintiffs' Monell claim, Plaintiffs must show that the individual defendants' actions were the result of the Unified Government's deliberate indifference to, or ratification of, the officers' conduct in this and similar actions such that it amounted to a custom or policy of disregarding individuals' rights. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978). Accordingly, evidence of other, similar acts, Golubski's illicit associations and sexual exploitation of women in the KCK community, and Golubski's Fifth Amendment assertions are probative of both the officers' intent and state of mind, as well as the culture, custom and policy of the municipality, as discussed above.

The Defendant Officers only argument in favor of bifurcation on this issue is that Plaintiffs have two "sets" of claims (individual and municipal) which are "quite different." (Motion, p. 5) However, Defendants fail to explain *how* any differences in the burdens of proof favor bifurcation here, where the same evidence can be used to prove multiple elements of the individual and municipal liability claims. Defendants then speculate that evidence admissible on the municipal

liability claims will "contaminate the mind of the jury in its consideration of the liability claims." (Motion, p. 5) But, evidence of a municipal policy or practice is probative of whether an individual Defendant Officer engaged in a particular course of conduct consistent with those policies on a particular occasion. *Coleman*, 2016 WL 5497363, at *6 (denying bifurcation because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices").

Moreover, the Defendant Officers do not dispute that the claims against them, Golubski, and the Unified Government arise from the same underlying facts or that the evidence required to prove the individual claims also demonstrates municipal liability. This factual and evidentiary nexus between the conduct of the officers on this occasion and previous or subsequent occasions, and the custom and practice of the Unified Government will require testimony from the same witnesses and much of the same documentary proof. These practical realities favor one trial on all issues, not multiple trials requiring the same evidence relating to the defendants' constitutional violations and their states of mind.

Even if the prejudice to Defendant Officers was valid, courts addressing the issue have held that "while an unguided jury might improperly award money damages against [one defendants] solely on account of [another defendant's] actions, any prejudice or confusion can be remedied by a carefully drafted jury instruction." *Lewis v. Triborough Bridge & Tunnel Auth.,* No. 97 CIV. 0607 (PKL), 2000 WL 423517, at *5 (S.D.N.Y. Apr. 19, 2000). The court in *Lewis* noted that a jury has the ability to keep one officers' claims separate from the others, and to distinguish their behavior. *Id.* Likewise, "[u]ndue prejudice obtains when the jury is unable to compartmentalize and isolate the evidence of liability on a particular claim against one of the parties and instead allows its evaluation of the evidence to contaminate its determination of another defendant's liability." *Bowers*

*v. Navistar Int'l Transp. Corp.*, No. 88 CIV 8857 (SS), 1993 WL 159965, at *1 (S.D.N.Y. May 10, 1993) "However, when the claims, witnesses and evidence overlap, no prejudice is visited upon the parties by joint trial of the claims." *Id.* "This is so because the evidence on one claim is relevant and necessary to establish an independent but interrelated claim asserted against another party to the lawsuit." *Id.*

Additionally, like Defendant Golubski, Defendant Officers reliance on *Brunson v. City of Dayton*, 163 F. Supp. 2d 919 (S.D. Ohio 2001) is misplaced. *Brunson* is distinguishable. There, the Plaintiff in *Brunson* brought an excessive force claim against defendant officers and their employer, the City of Dayton. 163 F. Supp. 2d 919 (S.D. Ohio 2001) The court separated the trials of the municipality from the individual officers based on prejudice, holding that  "individual Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current Dayton police officer." *Id.* at 924. Unlike *Brunson*, Plaintiffs' *Monell* claim in this action relies primarily on the named Defendants' *own prior misconduct*. Regardless, *Brunson* is an out of circuit, non-binding district court decision, that should not be followed as this Court's own precedent has addressed the exact same circumstance and come to the opposite conclusion. In *Crawford v. City of Kansas*, this Court directly addressed the issue of bifurcation in an excessive force case. No. CIV.A. 95-2336-DES, 1997 WL 381758 (D. Kan. June 11, 1997). There, like here, the Defendants sought separate submission of the issues to the jury "to avoid the premature introduction of evidence that would be inadmissible and prejudicial as to the individual defendants." *Id.* at *1. Further, like here, the Defendants argued that unless at least one of the individual defendants is found liable, the City may not be held liable – and thus separate trials would promote judicial economy. *Id.* In addition to finding that the evidentiary issues relevant to unfair prejudice had not yet been briefed and were thus premature, *id.* at *2, the court held that it must also consider

whether the interest of efficiency and convenience favor bifurcation. *Id.* In assessing these elements, the court noted that some witnesses would be required to testify twice, and that when – like here – "discovery has already been completed, there is less to be gained by bifurcation." *Id.* Accordingly, the court denied the Defendants' Motion to Bifurcate. *Id.* at *3.

In short, Defendant Officers do not argue and cannot show that the evidence admissible against Golubski and the Unified Government is inadmissible against them to prove Plaintiffs' claims in this action. Further, the Defendant Officers provide no explanation as to how such evidence's probative value is *substantially* outweighed by its prejudicial effect, nor why carefully crafted limiting instructions would not cure any such prejudice.

### B.  Bifurcation will Duplicate Proceedings, Waste Resources, and Inconvenience Witnesses

"[I]n determining whether to grant a motion for a separate trial, a court must weigh the possible benefits in efficiency and fairness of separate trials against the possible losses in efficiency and fairness." *See Coleman v. City of Peoria*, No. 115CV01100SLDTSH, 2016 WL 5497363, at *2 (C.D. Ill. Sept. 27, 2016). The duplication and significant overlap in the evidence noted above makes the proposed bifurcation of Plaintiffs' claims inefficient and impractical. For example, many witnesses' testimony will relate to both the claims against the individual officers as well as the Unified Government. Those witnesses include, most notably, the officer defendants themselves, the Plaintiffs, non-defendant KCKPD officers, Plaintiffs' experts, civilian witnesses, and the other witnesses involved in the Ewing/Quinn investigation. Further, documentary evidence would also be relevant to both claims, including evidence concerning the investigation (or lack thereof) into the Ewing/Quinn homicides and the policies that were violated by the defendants. Even assuming bifurcation occurs, and assuming that a jury finds a constitutional violation by Defendant Golubski or the other Officer Defendants, the jury would then go on to evaluate the actions of the Defendant

Unified Government. In presenting these claims, it will be necessary for the Plaintiffs to present evidence that implicates a rule, policy or custom of the Unified Government with respect to the specific actions taken by Golubski and the Officer Defendants in their investigation and prosecution of Lamonte McIntyre. So even though a jury's finding of malicious prosecution, fabrication of evidence, and withholding of evidence may be binding in a second trial, the specific events will have to be completely re-played in detail to prove causation and action in accordance with rule, policy or custom as well as the individual officers' conduct as a part of the conspiracy allowed by the Unified Government. Additionally, with respect to the *Monell* claim of failure to supervise, the specific acts and events will have to be admitted in detail to prove a causal connection between the failure to supervise and the deprivation of Lamonte McIntyre's constitutional rights. *See generally Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003). Rather than preserve judicial economy, a bifurcation in such circumstances would require *substantial* repetition of evidence, impose a severe hardship on witnesses (especially indigent civilian witnesses and those traveling from out of state, such as the Plaintiffs and their experts), substantially lengthen the entire process and cause confusion to the jury, most of whom presumably would not wish to sit through the same testimony repeatedly.

In their Motion, Defendant Officers request not only a separate trial from Golubski, but a separate trial from the Unified Government, which would result in three consecutive trials. That approach would be impractical, multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses – all with very little benefit as essentially the same information would be introduced and presented three consecutive times. Further, the cases cited by the Defendant Officers where bifurcation was granted all either involved a solitary incident, such as an excessive force shooting or prison beating, or discovery had not yet taken place. *See Ismail v.*

*Cohen,* 706 F. Supp. 243, 245 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990) (excessive force);[3] *Kampa v. City of Albuquerque*, No. CIV 96-1572 LFG/DJS (D.N.M.) (excessive force); *Wilson v. Town of Mendon*, 294 F.3d 1 (1st Cir. 2002) (excessive force); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060 (N.D. Ill. 2018) (City requests bifurcation of discovery); *Treadwell v. Salgado*, No. 19 C 3179, 2022 WL 267988, at *1 (N.D. Ill. Jan. 28, 2022) (same); *Foster v. Bernalillo Cty. Bd. of Commissioners*, No. CV 10-01075 WJ/ACT, 2012 WL 13081439, at *2 (D.N.M. Feb. 10, 2012) (beating by other inmates); *Amato v. City of Saratoga Springs, N.Y.,* 170 F.3d 311 (2d Cir. 1999) (excessive force during arrestee's booking); *Sound Video Unlimited, Inc. v. Video Shack Inc.,* 700 F. Supp. 127 (S.D.N.Y. 1988) (wire fraud and breach of fiduciary duty). These cases are inapplicable here, where Plaintiffs' individual constitutional claims resulted from numerous separate actions by multiple officers. Also, whether discovery has been completed is "another relevant factor in determining whether the interests of efficiency favor bifurcation…in § 1983 cases." *Crawford v. City of Kansas*, No. CIV.A. 95-2336-DES, 1997 WL 381758, at *2 (D. Kan. June 11, 1997). Since discovery has been completed in this action, "there is less to be gained by bifurcation." *Id.*

Thus, the necessary record is already developed, and it clearly shows the intertwined nature and substantial overlap of the individual and municipal liability claims in this action. If Defendants' motion is granted, each witness would be called *three separate times* – one to talk about the facts of the individual case against Golubski, a second time to talk about the same individual facts against Golubski and the Defendant Officers, and a third time to discuss the policies of the City and the

---

[3] Defendants argues *Ismail v. Cohen,* 706 F. Supp. 243, 251 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990) supports its claim for bifurcation, but Defendants omit that it was Plaintiffs who requested – and agreed to – bifurcation of the *Monell* and individual liability claims. Thus, *Ismail* is inapplicable here.

way those policies impacted the individual case. This is especially prejudicial to Plaintiffs here as they are required to prove that Golubski and the Defendant Officers conspired together to deprive Lamonte McIntyre of his constitutional rights and that the Defendant Officers were aware, or should have been, of Golubski's misconduct, but failed to intervene. It would be impossible to demonstrate the relationships between Golubski and all the Officer Defendants, including their supervisor, Culp, if each defendant received separate trials wherein no evidence relevant to the others could be introduced. Such an outcome would cause massive duplication of effort, witness testimony, document admission, motion practice, and opening and closing statements, and the resultant delay would be ineffective as much of the evidence relevant to the individual defendants must also be presented against the Unified Government.

### C.  The Balance Of Prejudice Weights Against Bifurcation.

The Defendants' argument that bifurcation is warranted because evidence relevant to *Monell* would prejudice them should be rejected. A substantial portion of the *Monell* evidence will be directly relevant to Plaintiffs' claims against the individual defendants and therefore it is not unfairly prejudicial. Indeed, it is not enough for Plaintiff to simply show that an officer performed a certain action or failed to perform a certain action. Plaintiff must show that the investigative failures were so deficient as to be constitutionally offensive, which require the introduction of evidence as to what acceptable investigative standards are. The alleged prejudice to the defendants would not outweigh the efficiency that will occur by trying this case together. Indeed, a pattern and practice must begin with a particular event. The evidence of the Unified Government's unconstitutional patterns and practices include the wrongful conviction of Lamonte McIntyre and the sexual exploitation of Rose McIntyre. It is not improper to use both events to prove a pattern and practice exists. Even if the officers' prejudice concern was valid, that would not justify bifurcation, as a limiting instruction is the preferred and established mechanism for managing

15

prejudice. *See* Fed. R. Evid. 105 (providing a mechanism to address a situation where "evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.").

Regardless, any prejudice against the individual officers must be weighed against the prejudice to Plaintiffs. The only truly unfair prejudice would be if bifurcation was granted resulting in piecemeal litigation. This is especially true here as the claims against both the individuals and the municipality are interwoven, and thus unreasonable hardship would ensure if Plaintiffs were required to prove virtually the same facts in two or three separate trials. Further, needlessly fragmenting the litigation and removing the context for why each Defendant acted or failed to act would create – rather than alleviate – juror confusion Further, disputes would then arise – and motion practice would be required – to determine what is "*Monell*-only" evidence and whether certain evidence permissible against the individuals would also be permissible against the Unified Government. This is the exact situation in which bifurcation would add unnecessary complexity and confusion to the trial process thus weighing against bifurcation.

Given the fact that the instant case is specially set for a 4-week trial beginning on October 17, 2022 it seems doubtful that Defendants' motion is offered to avoid delay, prejudice, or confusion. Instead, Defendants' motion seems to only inject confusion (and delay and expense) into this action by needlessly fragmenting the litigation. Rather than achieve any of the purposes for which Rule 42(b) exists, Defendants' motion seems to have the opposite effect.

## IV.   Conclusion

Defendant Officers offer no basis to bifurcate the trials. Defendant Officers' motion should be denied in its entirety.

Date: April 29, 2022                    Respectfully submitted,

                                        LATHROP GPM LLP

                                        By: /s/ Alana M. McMullin
                                        Michael J. Abrams #15407
                                        Alana M. McMullin #78948
                                        2345 Grand Boulevard, Suite 2200
                                        Kansas City, MO 64108
                                        (816) 292-2000
                                        (816) 292-2001 Facsimile
                                        michael.abrams@lathropgpm.com
                                        alana.mcmullin@lathropgpm.com

                                        Cheryl A. Pilate #14601
                                        Lindsay Runnels #78822
                                        Morgan Pilate, LLC
                                        926 Cherry Street
                                        Kansas City, MO 64106
                                        Telephone: (816) 471-6694
                                        Facsimile: (816) 472-3516
                                        cpilate@morganpilate.com

                                        Barry Scheck (*admitted pro hac vice*)
                                        Emma Freudenberger (*admitted pro hac vice*)
                                        Sona R. Shah (*admitted pro hac vice*)
                                        Grace Paras (*admitted pro hac vice*)
                                        Neufeld Scheck & Brustin, LLP
                                        99 Hudson Street, Eighth Floor
                                        New York, NY 10013
                                        Telephone: (212) 965-9081
                                        Facsimile: (212) 965-9084
                                        emma@nsbcivilrights.com

                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

        The undersigned certifies that on the 29th day of April, 2022, the foregoing was electronically filed with the clerk of the court using the CM/ECF system which will provide notice and service to all counsel of record.

                                        By:  /s/ Alana M. McMullin
                                        An Attorney for Plaintiffs

17