## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LAMONTE MCINTYRE & ROSE LEE MCINTYRE,**<br><br>           **Plaintiffs,**<br><br>**v.**<br><br>**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KS, et al.,**<br><br>           **Defendants.** | Case No. 2:18-cv-02545-KHV-KGG |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS' MOTION TO BIFURCATE TRIALS

Plaintiffs Lamonte McIntyre and Rose Lee McIntyre, by and through undersigned counsel, submit this Memorandum of Law in Opposition to Defendant Unified Government of Wyandotte County and Kansas City, Kansas' ("Unified Government") Motion to Bifurcate Trials (Doc. 599).

### I.  Introduction

Bifurcation is not warranted here, as the claims against all defendants are inextricably intertwined with Defendant Golubski's actions and state of mind. Accordingly, bifurcation would require substantial duplication of evidence, cause even further delay in resolving this action, confuse the jury, and prejudice Plaintiffs by creating fragmented, piecemeal trials. Moreover, the Unified Government has failed to prove unfair prejudice, judicial economy or convenience favor bifurcation, and bases its Motion entirely on inapplicable cases bifurcating *Monell* in the excessive force context or to streamline discovery. Instead, the *Monell* claim here cannot and should not be bifurcated from the individual defendants' claims and Defendant's motion should be denied.

## II.    Courts Favor Complete Trials.

Federal Rule of Civil Procedure 42(b) states:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The district court has broad discretion in determining whether to sever issues at trial. *Belisle v. BNSF Ry. Co.*, 697 F. Supp. 2d 1233, 1250 (D. Kan. 2010); *Crawford v. City of Kansas,* No. CIV.A. 95-2336-DES, 1997 WL 381758, at *1 (D. Kan. June 11, 1997) (citing *Eastridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 781 (10th Cir.1988)). In making such a determination, the "trial court should consider 'whether the interests of efficiency and convenience favor bifurcation, whether the issues are clearly separable, and whether bifurcation is fair to both parties.'" *Crawford,* No. CIV.A. 95-2336-DES, at *1 (quoting *Scheufler v. General Host Corp.*, 895 F.Supp. 1411, 1414 (D.Kan.1995)). However, bifurcation should not be "routinely ordered." *See AKH Co. v. Universal Underwriters Ins. Co.,* No. CIV.A. 13-2003-JAR, 2013 WL 3456936, at *2 (D. Kan. July 9, 2013) (citing Fed. R. Civ. P. 42(b) advisory committee's note). Instead, "the party seeking bifurcation has the burden of showing that separate trials are proper in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience." *Dun & Bradstreet Corp. Found. v. Nat'l Seminars, Inc.,* No. CIV.A. 89-2388-O, 1990 WL 182338, at *3 (D. Kan. Oct. 23, 1990); *see also Belisle*, 697 F. Supp. 2d at 1250. "Although several factors may be considered in making the decision to bifurcate, including convenience, avoiding prejudice and minimizing expense and delay… 'piecemeal' litigation should be avoided." *Dun*, No. CIV.A. 89-2388-O, at *3 (internal citations omitted). Indeed, it is well established that "[i]n actions at law the general practice is to try all the issues in a case at one time; and it is only in exceptional instances where there are special

and persuasive reasons for departing from this practice that distinct causes of action asserted in the same case may be made the subjects of separate trials." *Miller v. American Bonding Co.*, 257 U.S. 304, 308 (1921). In addition, the Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999).

## III.   There Is No Basis to Bifurcate the Trials.

### A.   A Trial on *Monell* Liability Can, and Likely Will, Occur Irrespective of the Individual Defendant's Liability.

The Unified Government argues – but fails to prove – that bifurcation is warranted because its liability is solely derivative and requires a jury to first find liability against the named individual defendants.  Instead, the Tenth Circuit has specifically held that "*Monell* does not require that a jury find an individual defendant liable before it can find a local governmental body liable," and that "[a]lthough the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 310 (10th Cir. 1985). Notably, the Unified Government's reliance on two Tenth Circuit cases, *Hinton v. City of Elwood,* 997 F.2d 774 (10th Cir. 1993) and *Apodoca v. Rio Arriba County Sheriff's Dept.,* 905 F.2d 1445 (10th Cir. 1990) is misguided, as the Tenth Circuit recently addressed these and other similar precedents in *Crowson v. Washington Cty. Utah,* 983 F.3d 1166 (10th Cir. 2020),[1] finding they were only "made in the context of the city's failure to train" "rather than for a systemic lack of policies and procedures" and thus "did not undermine *Garcia." Id.* at 1188-89. The *Crowson* court found that "where the claim is premised upon

---

[1] *Cert. denied sub nom Washington Cty. v. Crowson*, 142 S. Ct. 224, 211 L. Ed. 2d 98 (2021).

a…well-settled custom or practice…the inquiry is whether the policy or custom itself is unconstitutional so as to imposed liability on the city for its own unconstitutional conduct in implementing an unconstitutional policy." *Id.* at 1187 (internal quotations and citations omitted). The Tenth Circuit also held that:

> But, as in *Garcia,* sometimes the municipal policy devolves responsibility across multiple officers. In those situations, the policies may be unconstitutional precisely because they fail to ensure that any single officer is positioned to prevent the constitutional violation. Where the sum of multiple officers' actions taken pursuant to municipal policy results in a constitutional violation, the municipality may be directly liable. That is, the municipality may not escape liability by acting through twenty hands rather than two.

> *Id.* at 1191; *see also Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 305 (7th Cir. 2010)

("a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict."); *Coleman v. City of Peoria*, No. 115CV01100SLDTSH, 2016 WL 5497363, at *5 (C.D. Ill. Sept. 27, 2016) ("cases where a discrete and recent act of individual misconduct is alleged tend to require a plaintiff to succeed against an individual municipal employee to succeed against the city. This is less true the more time passes, the more complex and diffuse the misconduct alleged is, and the more participants are alleged to have been involved in different capacities.") *see also Dill v. City of Edmond, Okl.,* 155 F.3d 1193, 1212 (10th Cir. 1998) (allowing a *Monell* claim to proceed despite the officer's qualified immunity, finding that "because Vetter's qualified immunity was predicated on the basis that the law was not clearly established, qualified immunity does not shield the City of Edmond."); *Meyers v. Oklahoma Cty,* 151 F.3d 1313 (10th Cir. 1998) ("if a jury returns a general verdict for an individual officer premised on qualified immunity, there is no inherent inconsistency in allowing suit against the municipality to proceed since the jury's verdict has not answered the question whether the officer actually committed the alleged constitutional violation").

Because Plaintiffs here are alleging *Monell* liability under several theories, including but not limited to, the implementation of systematic unconstitutional customs, policies and practices that allowed abuses of authority and improper and unreliable investigative practices, *see* Doc. 562, (Pretrial Order) pp. 15-21, the Unified Government has failed to show that a trial of the defendant officers in this case would eliminate the need to litigate the *Monell* issue. Further, the other cases cited by the Unified Government only hold that it was not an abuse of discretion for the trial courts to grant bifurcation, highlighting the discretion of the district court in making that case-by-case decision. *See Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999) ("By its very nature, discretion yields differing outcomes. For the aforementioned reasons, we find that the district court did not abuse its discretion by bifurcating the proceedings."); *Lund v. Henderson*, 807 F.3d 6, 12 (1st Cir. 2015) ("Lund is unable to cite to a case in which we have overturned a district court's grant or denial of a Rule 42 motion to consolidate or bifurcate trials…The record provides no cause to deviate from that pattern.")

### B. The Claims Against the Individual Defendants and the Unified Government are Intertwined.

In analyzing bifurcation in wrongful conviction cases, a key determination is whether the "claims against the Officers and the *Monell* claim will involve intertwined evidence." *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 462 (D. Md. 2020). Other factors include: "(1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted." *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001), *opinion modified on denial of reconsideration*, No. 95 CIV. 9076(LTS)(RL, 2002 WL 1013291 (S.D.N.Y. May 20, 2002).

5

Here, the claims against the individual defendants and the *Monell* claim against the Unified Government present common questions of law and fact related to the officers' state of mind during their investigation of the Ewing/Quinn murders. To prove both the individual liability claims and the municipal liability claims, Plaintiffs must show that an underlying constitutional violation occurred. In doing so, Plaintiffs intend to prove the individual defendants (Golubski and the Defendant Officers) acted with *malice* and that they *intentionally* or *knowingly* caused Lamonte McIntyre harm by failing to properly investigate, suppressing exculpatory evidence, and fabricating inculpatory evidence. In addition, to prove Plaintiffs' failure to intervene and conspiracy claims against the Defendant Officers, Plaintiffs are required to additionally show that they *were aware of or had reason to know of* Golubski's constitutional violations and that they *agreed* to deprive Lamonte of his rights. Lastly, to prove Plaintiffs' *Monell* claim, Plaintiffs must show that the individual defendants' actions were the result of the Unified Government's deliberate indifference to, or ratification of, the officers' conduct in this and similar actions such that it amounted to a custom or policy of disregarding individuals' rights. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978).

In its Motion, the Unified Government asserts, without any explanation, that Golubski's Fifth Amendment invocations are inadmissible under Rule 403 because it risks "guilt by association."[2] It is not clear from this undeveloped contention what exact prejudice the Unified Government is referring to, but in any event, this is not a basis for exclusion. *See FDIC v. Fidelity & Deposit Co. of Md.,* 45 F.3d 969, 978 (5th Cir. 1995) (rejecting argument that jury may find defendant liable "from his association with witnesses who invoked the Fifth Amendment, thereby

---

[2] Defendants only support for this claim is apparently the content of another motion, jointly filed by the Defendants, which is forty-nine pages long. (Motion, p. 10) (citing *See* Doc. 597).

unduly prejudicing [him], was avoided by the instruction that the jury was not to find liability absent evidence corroborating the relationship between the invoking witnesses and [the defendant].") Accordingly, evidence of other, similar acts, Golubski's illicit associations and sexual exploitation of women in the KCK community, and Golubski's Fifth Amendment invocations are probative of both the officers' intent and state of mind, as well as the culture, custom and policy of the municipality. *See* Fed. R. Evid. 404(b)(2); *Snell v. Tunnell*, 920 F.2d 673, 701-702 (10th Cir. 1990) ("While a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim, proof of an agreement to deprive often will require examination of conduct occurring prior to the deprivation."); *see also Brink's v. City of New York,* 717 F.2d 700 (2d Cir. 1983) (holding the refusal of an ex-employee to testify is admissible in a civil case to support an adverse inference against a former employer); *Willingham v. Cty. of Albany,* 593 F. Supp. 2d 446, 453 (N.D.N.Y. 2006) (applying invocation of Fifth Amendment by a defendant to his co-defendant because he "accepted and followed [the other defendant's] leadership and actions and joined with [the defendant].") Moreover, evidence of a municipal policy or practice is probative of whether an individual Defendant engaged in a particular course of conduct consistent with those policies on a particular occasion. *Coleman v. Peoria*, 2016 WL 5497363, at *6 (C.D. Ill. Sep. 27, 2016) (denying bifurcation because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices").

Further, the Unified Government does not dispute that the claims against it and the individual defendants arise from the same underlying facts or that the evidence required to prove the individual claims is admissible against all defendants. Instead, the Unified Government admits that the exact same constitutional questions arise when determining municipal and individual

liability, especially if the officers are alleging qualified immunity, as they are here. *Id.* at p. 7. This factual and evidentiary nexus between the conduct of the officers on this occasion and previous or subsequent occasions, and the custom and practice of the Unified Government will require testimony from the same witnesses and much of the same documentary proof. These practical realities favor one trial on all issues, not multiple trials requiring the same evidence relating to the defendants' constitutional violations and their states of mind. Accordingly, the Unified Government has failed to prove the presentation of proof would be simplified by bifurcation and instead the opposite is true.

### C. Bifurcation will Duplicate Proceedings, Waste Resources, and Inconvenience Witnesses

"[I]n determining whether to grant a motion for a separate trial, a court must weigh the possible benefits in efficiency and fairness of separate trials against the possible losses in efficiency and fairness." *See Coleman v. City of Peoria,* No. 115CV01100SLDTSH, 2016 WL 5497363, at *2 (C.D. Ill. Sept. 27, 2016). The duplication and significant overlap in the evidence noted above makes the proposed bifurcation of Plaintiffs' claims inefficient and impractical. For example, many witnesses' testimony will relate to both the claims against the individual officers as well as the Unified Government. Those witnesses include, most notably, the officer defendants themselves, the Plaintiffs, non-defendant KCKPD officers, Plaintiffs' experts, civilian witnesses, and the other witnesses involved in the Ewing/Quinn investigation. Further, documentary evidence would also be relevant to both claims, including evidence concerning the investigation (or lack thereof) into the Ewing/Quinn homicides and the policies that were violated by the defendants. Even assuming bifurcation occurs, and assuming that a jury finds a constitutional violation by Defendant Golubski or the Officer Defendants, the jury would then go on to evaluate the actions of the Defendant Unified Government. In presenting these claims, it will be necessary for the Plaintiffs to present

evidence that implicates a rule, policy or custom of the Unified Government with respect to the specific actions taken by Golubski and the Officer Defendants in their investigation and prosecution of Lamonte McIntyre. So even though a jury's finding of malicious prosecution, fabrication of evidence, and withholding of evidence may be binding in a second trial, the specific events will have to be completely re-played in detail to prove causation and action in accordance with rule, policy or custom as well as the individual officers' conduct as a part of the conspiracy allowed by the Unified Government. Additionally, with respect to the *Monell* claim of failure to supervise, the specific acts and events will have to be admitted in detail to prove a causal connection between the failure to supervise and the deprivation of Lamonte McIntyre's constitutional rights. *See generally Carr v. Castle*, 337 F.3d 1221, 1229 (10th Cir. 2003). Rather than preserve judicial economy, a bifurcation in such circumstances would require *substantial* repetition of evidence, impose a severe hardship on witnesses (especially indigent civilian witnesses and those traveling from out of state, such as the Plaintiffs and their experts), substantially lengthen the entire process and cause confusion to the jury, most of whom presumably would not wish to sit through the same testimony repeatedly.

Indeed, if bifurcation is granted as Defendant requests, there would be at least two separate cases tried consecutively. That approach would multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses – all with very little benefit. Further, the cases cited by the Unified Government where bifurcation was granted all either involved a solitary incident, such as an excessive force shooting or prison beating, or discovery had not yet taken place. *See Ismail v. Cohen,* 706 F. Supp. 243, 245 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990) (excessive force); *Kampa v. City of Albuquerque*, No. CIV 96-1572 LFG/DJS (D.N.M.) (excessive force); *Wilson v. Town of Mendon*, 294 F.3d 1 (1st Cir. 2002) (excessive force); *Marryshow v. Town*

*of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) (excessive force during arrest, discovery not yet begun); *Foster v. Bernalillo Cty. Bd. of Commissioners*, No. CV 10-01075 WJ/ACT, 2012 WL 13081439, at *2 (D.N.M. Feb. 10, 2012) (beating by other inmates); *Amato v. City of Saratoga Springs, N.Y.,* 170 F.3d 311 (2d Cir. 1999) (excessive force during arrestee's booking); *Lund v. Henderson*, 807 F.3d 6 (1st Cir. 2015) (excessive force in the dispersing of an unruly crowd); *Desmare v. New Mexico,* No. CIV 07-199 JB/RHS, 2007 WL 5231690, at *1 (D.N.M. Aug. 14, 2007) (sexual harassment and hostile work environment); *Sound Video Unlimited, Inc. v. Video Shack Inc.,* 700 F. Supp. 127 (S.D.N.Y. 1988) (wire fraud and breach of fiduciary duty).[3] These cases are inapplicable here, where Plaintiffs' individual constitutional claims resulted from numerous separate actions by multiple officers. Also, whether discovery has been completed is "another relevant factor in determining whether the interests of efficiency favor bifurcation…in § 1983 cases." *Crawford v. City of Kansas*, No. CIV.A. 95-2336-DES, 1997 WL 381758, at *2 (D. Kan. June 11, 1997). Since discovery has been completed in this action, "there is less to be gained by bifurcation." *Id.* Indeed, the necessary record is already developed, and it clearly shows the intertwined nature and substantial overlap of the individual and municipal liability claims in this action. Each witness and Plaintiffs' experts would be called twice – one to talk about the facts of the individual case, and a second time to talk about the policies of the City, and the way those policies impacted the individual case. Exhibits would be introduced against the individual defendants and then re-introduced against the Unified Government in the second trial. There would be two rounds of opening statements and closing arguments. Additionally, each trial would bring

---

[3] Defendant also argues *Ismail v. Cohen,* 706 F. Supp. 243, 251 (S.D.N.Y. 1989), aff'd, 899 F.2d 183 (2d Cir. 1990) supports its claim for bifurcation, but Defendant omits that it was Plaintiffs who requested – and agreed to – bifurcation of the *Monell* and individual liability claims. Thus, *Ismail* is inapplicable here.

another round of motion practice. This massive duplication of effort and the resultant delay in resolution of this case would be ineffective as much of the evidence relevant to the individual claims must also be presented against the Unified Government.

### D.  The Balance Of Prejudice Weights Against Bifurcation.

The Defendant's argument that bifurcation is warranted because evidence relevant to *Monell* would prejudice the individual Defendants should be rejected. A substantial portion of the *Monell* evidence will be directly relevant to Plaintiffs' claims against the individual defendants and therefore it is not unfairly prejudicial. Indeed, it is not enough for Plaintiff to simply show that an officer performed a certain action or failed to perform a certain action. Plaintiff must show that the investigative failures were so deficient as to be constitutionally offensive, which require the introduction of evidence as to what acceptable investigative standards are. The alleged prejudice to the defendants would not outweigh the efficiency that will occur by trying this case together. Indeed, a pattern and practice must begin with a particular event. The evidence of the Unified Government's unconstitutional patterns and practices include the wrongful conviction of Lamonte McIntyre and the sexual exploitation of Rose McIntyre. It is not improper to use both events to prove a pattern and practice exists. Even if the prejudice concern was valid, that would not justify bifurcation, as a limiting instruction is the preferred and established mechanism for managing prejudice. *See* Fed. R. Evid. 105 (providing a mechanism to address a situation where "evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.") Likewise, any prejudice that may accrue from the admission of evidence of misconduct by other officers can be ameliorated by an appropriate jury instruction, although such an evidentiary offering is speculative and premature at this point.

Regardless, any prejudice against the individual officers must be weighed against the prejudice to Plaintiffs. The only truly unfair prejudice would be if bifurcation was granted resulting in piecemeal litigation. This is especially true here as the claims against both the individuals and the municipality are interwoven, and thus unreasonable hardship would ensure if Plaintiffs were required to prove virtually the same facts in two or three separate trials. Further, needlessly fragmenting the litigation and removing the context for why each Defendant acted or failed to act would create – rather than alleviate – juror confusion Further, disputes would then arise – and motion practice would be required – to determine what is "*Monell*-only" evidence and whether certain evidence permissible against the individuals would also be permissible against the Unified Government. This is the exact situation in which bifurcation would add unnecessary complexity and confusion to the trial process thus weighing against bifurcation.

In addition to the above, Plaintiffs have an extremely strong non-economic interest in deterring future constitutional violations by the Unified Government, a fundamental purpose of Section 1983 litigation. *Owen v. City of Indep., Mo.,* 445 U.S. 622, 652 (1980) ("§ 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well.") This case involves the wrongful conviction of an individual for over 23 years and the devastating abuses and constitutional violations caused by the Unified Government's policies and practices which allowed Defendant Golubski to terrorize the Kansas City Kansas community with impunity. These claims are of profound import to future institutional reform and Plaintiffs should be able to fully present their case with admissible evidence against the Unified Government, including how their unconstitutional customs, policies, and procedures resulted in Lamonte McIntyre's wrongful conviction. These factors strongly weigh against bifurcation.

### E.  Differing Interests Do Not Warrant Bifurcation

The Unified Government's assertion that each defendant has different interests and different counsel does not provide a basis for bifurcation. Similarly unavailing is the argument that "coordination or lack thereof would make defendant's representation inherently less effective." Such an assertion is meritless, as these very bifurcation motions (and the joint motion to transfer venue filed on the same date) show that Defendants are coordinating their defenses and Defendants provide no evidence to suggest they will not continue to do so through trial. Regardless, that the defendants have varying (self-serving) interests is not a basis for bifurcation. In fact, although Defendant uses the summary judgment motions recently filed as support for each defendant's differing claims, the motions instead favor a single trial as they all contain substantially overlapping factual and legal questions.

Further, Defendant concludes there is a substantial risk of the jury applying the wrong standard of liability to one or more the claims "even unconsciously," but such an assertion is speculative and unsupported. Instead, courts addressing this issue have held that "[i]t would be a waste of judicial resources to have to rehash factual issues…in two separate proceedings between two different juries." *Lewis v. Triborough Bridge & Tunnel Auth.*, No. 97 CIV. 0607 (PKL), 2000 WL 423517, at *3 (S.D.N.Y. Apr. 19, 2000) Instead, "[n]early every trial involving multiple defendants will involve some separate issues of fact that call for testimony from different witnesses on entirely unrelated matters. The more appropriate question, which the moving defendants unsurprisingly ignore, is whether separate trials will require substantial overlap of witnesses or documentary proof." *Id.*; *see also Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette Sec. Corps .*, No. 91 Civ.2050, 1999 WL 159889, at *2 (S.D.N.Y. Mar. 22, 1999) ("[B]ecause having two trials would necessitate two sets of pretrial motions, two sets of pretrial orders, two sets of jury charges, and the possibility of having to select two different juries, extracting this one issue out of

the 'main' trial may in fact lead to greater delay and expense."). As stated above, the substantial overlap of the evidence admissible against all three defendants weigh in favor of one trial.

Simply stated, the Unified Government's motion fails to show that separate trials (however bifurcated) would avoid prejudice or lessen delay, expense, or inconvenience. Instead, bifurcation would unnecessarily prolong resolution of the factual and legal issues in connection with the wrongful prosecution and conviction of Plaintiff that forms the basis for Plaintiffs' claims against all Defendants. Bifurcation under these circumstances would do substantial prejudice to the parties as all claims are inextricably intertwined not only with the underlying facts, but with the factual and legal claims made against Roger Golubski. Bifurcation would certainly prolong an already protracted case, and would not promote efficiency or judicial economy as Defendant suggests. A second or third trial would require all Defendants and other witnesses to re-testify and separate trials could create inconsistent verdicts, leading to bifurcated and inconsistent appeals. Instead, the Court should proceed with trial as the case is currently postured and in accordance with the pleadings, discovery, and pretrial order entered by each of the parties and anticipated during the pendency of the lawsuit. Indeed, Defendants invite the Court to create more, not less, work for the Court, the parties, and their counsel. Bifurcation would severely prejudice the Plaintiffs trial preparation based upon the Pretrial Order and discovery conducted to prepare this case for one trial to resolve all claims between all parties.

## IV.   <u>Conclusion</u>

Defendant Unified Government offers no basis to bifurcate the trials. Defendant Unified Government's motion should be denied in its entirety.

Date: April 29, 2022                    Respectfully submitted,

                                        LATHROP GPM LLP

                                        By: /s/ Alana M. McMullin
                                        Michael J. Abrams #15407
                                        Alana M. McMullin #78948
                                        2345 Grand Boulevard, Suite 2200
                                        Kansas City, MO 64108
                                        (816) 292-2000
                                        (816) 292-2001 Facsimile
                                        michael.abrams@lathropgpm.com
                                        alana.mcmullin@lathropgpm.com

                                        Cheryl A. Pilate #14601
                                        Lindsay Runnels #78822
                                        Morgan Pilate, LLC
                                        926 Cherry Street
                                        Kansas City, MO 64106
                                        Telephone: (816) 471-6694
                                        Facsimile: (816) 472-3516
                                        cpilate@morganpilate.com

                                        Barry Scheck (*admitted pro hac vice*)
                                        Emma Freudenberger (*admitted pro hac vice*)
                                        Sona R. Shah (*admitted pro hac vice*)
                                        Grace Paras (*admitted pro hac vice*)
                                        Neufeld Scheck & Brustin, LLP
                                        99 Hudson Street, Eighth Floor
                                        New York, NY 10013
                                        Telephone: (212) 965-9081
                                        Facsimile: (212) 965-9084
                                        emma@nsbcivilrights.com

                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 29th day of April, 2022, the foregoing was electronically filed with the clerk of the court using the CM/ECF system which will provide notice and service to all counsel of record.

                                        By:  /s/ Alana M. McMullin
                                        An Attorney for Plaintiffs