# **<u>EXHIBIT F</u>**

Page 1

```
1           IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
2
3      LAMONTE McINTYRE, et al.,)
                               )
4                   Plaintiffs, )
                               )
5      vs.                     ) 2:18-cv-02545-KHV-KGG
                               )
6      UNIFIED GOVERNMENT OF    )
       WYANDOTTE COUNTY AND     )
7      KANSAS CITY, KANSAS,     )
       et al.,                 )
8                               )
                   Defendants. )
9
10
11
12                DEPOSITION OF ROBERT BLAKE
13     McCONNELL, a Witness, taken on behalf of the
14     Plaintiffs, before Alison A. Tracy, Missouri CCR
15     No. 554, Kansas CSR No. 1525, pursuant to Notice,
16     on the 18th day of January, 2022, via Zoom.
17
18
19
20
21
22
23
24
25
```

Page 6

1     (The deposition commenced at 9:30 a.m.)
2          ROBERT BLAKE McCONNELL,
3     the Witness, being first duly sworn, testified
4     under oath as follows:
5                    EXAMINATION
6     BY MS. SHAH:
7     Q.   Hi, Mr. McConnell.  My name in Sona
8     Shah, I'm one of the attorneys for plaintiffs.  I
9     will be asking you some questions today.  Before
10    we get started I just wanted to go over some
11    ground rules pretty quickly.  Of course the court
12    reporter is here, she is taking down everything
13    you say.  We need a written record of all of your
14    questions and answers, so please be sure to give
15    verbal answers and don't just shake your head yes
16    or no in response to my questions.
17          We can take a break at any time that you
18    feel you need a break as long as a question is
19    not pending at the time.  So, please just let me
20    know any time you would like to take a couple of
21    minutes.
22          Finally, your attorneys may object to
23    some of the questions that I ask you, but you
24    should still go ahead and answer those questions
25    unless you are advised by your attorney not to

Page 7

1     answer them.  Does all of that make sense?
2     A.   Yes.
3     Q.   Can you please state your name for the
4     record?
5     A.   Robert Blake McConnell.
6     Q.   And your home address?
7     A.   1414 Mt. Isle Harbor Drive, Charlotte,
8     North Carolina.
9     Q.   Your business address?
10    A.   The same.
11    Q.   Mr. McConnell, are you a psychologist?
12    A.   I am not.
13    Q.   Do you conduct clinical examinations of
14    people?
15    A.   I do not.
16    Q.   Do you consider yourself qualified to
17    diagnose mental health issues?
18    A.   No.
19    Q.   Are you a member of the American
20    Psychological Association?
21    A.   No.
22    Q.   Where are you currently employed,   Mr.
23    McConnell?
24    A.   I'm an independent contractor and I
25    provide services to Park Dietz & Associates.

Page 8

1     Also I'm a polygraph examiner sometimes and I do
2     polygraph examinations for the federal
3     government.
4     Q.   Is there any place else that as an
5     independent contractor you are currently
6     providing services?
7     A.   As an independent contractor -- well,
8     Park Dietz has another company called Threat
9     Assessment Group.  I tentatively had planned to
10    work for them and still might, but I haven't
11    actually provided them with any services.  And
12    then additionally I'm an adjunct faculty
13    instructor at George Washington University.
14    Q.   What are you teaching at George
15    Washington University?
16    A.   The name of the course, it is misnamed,
17    but it is called interviewing and interrogation.
18    Which the discipline in law enforcement used to
19    be call interview and interrogation.  For some
20    reason they have it backwards.  But I asked them
21    to change that to investigative interviewing, but
22    they haven't done that yet.
23    Q.   Have you taught any other classes at
24    George Washington University?
25    A.   No, just that one.

Page 9

1     Q.   Mr. McConnell, do you work with victims
2     of sexual assault?
3     A.   I do not.
4     Q.   Have you worked with victims of sexual
5     assault in the past?
6     A.   I have.
7     Q.   In what capacity?
8     A.   An investigator.
9     Q.   Can you tell me a little bit more about
10    your experience as an investigator working with
11    victims of sexual assault.  Can you provide some
12    more context for me?
13    A.   Sure.  So as an FBI agent one of the
14    places that might come up and has come up
15    is allegations of sexual assault by prison
16    guards, and that would actually be a civil rights
17    investigation.
18    Q.   What was your role in investigating
19    those claims?
20    A.   My role was, as an investigator was we
21    in the FBI we are the investigative arm of the
22    Department of Justice so any investigations we do
23    are for the Department of Justice.  And in that
24    capacity I was responding to a complaint from
25    multiple victims that they had been sexually

3 (Pages 6 - 9)

Page 102

1  interview, right?
2    A.  That's correct.
3    Q.  But you can't -- we discussed earlier
4  you can't quantify the susceptibility?
5        MR. ROACH:  Object to form.
6    A.  That's correct.  There is no scale that
7  I'm aware of other than the Gudjonsson scales.
8    Q.  (By Ms. Shah)  Would you say it is more
9  likely than not that she would provide a coerced
10  false confession or adopt a false memory?
11    A.  No, I wouldn't say that.  I would just
12  say that she is -- more likely than not she is
13  susceptible to that.
14        MS. SHAH:  I probably need about 20
15  minutes to a half hour break.  I don't know if
16  this is a good time to break for lunch or if you
17  guys would just like to do a 20 minute break.
18        MR. ROACH:  How much time
19  afterwards do you have?
20        MS. SHAH:  I won't have very long
21  at all.  Probably just 15 minutes or so.  But I
22  don't know if anyone else has any questions.
23        MR. ROACH:  I vote for 20, but I'm
24  open to hearing from other people.
25        MS. HAYES:  20 is probably

Page 103

1  sufficient, unless anybody has strong feelings
2  otherwise.
3        MR. COOPER:  I agree with that.
4        MS. SHAH:  How about 45 past the
5  hour.  Does that work for everyone?
6        MR. ROACH:  Yes.
7        (Short recess was taken.)
8    Q.  (By Ms. Shah)  Mr. McConnell, have you
9  ever been asked to give an expert opinion
10  regarding false admissions for gain or false
11  memories, outside of the law enforcement context?
12    A.  I have not.
13    Q.  Are you aware of any expert being
14  permitted to give an opinion regarding
15  susceptibility to false admissions for gain or
16  false memories, outside the context of law
17  enforcement?
18        MR. ROACH:  Object to the form.  Go
19  ahead.
20    A.  Can you repeat that?
21    Q.  (By Ms. Shah)  Are you aware of any
22  expert being permitted to give an opinion
23  regarding susceptibility to false admissions for
24  gain or false memories, outside the law
25  enforcement context?

Page 104

1        MR. ROACH:  Same objection.  Go
2  ahead.
3    A.  I'm just not familiar with that.
4    Q.  (By Ms. Shah)  Okay.  Mr. McConnell, do
5  you believe that you are qualified to give an
6  opinion regarding false confessions or false
7  admissions for gain or false memories, outside of
8  a law enforcement context?
9    A.  I do.
10        MR. ROACH:  Object to the form.
11    Q.  (By Ms. Shah)  Just give me one moment.
12  Mr. McConnell, to go back to something we
13  discussed before.  In Rose McIntyre's transcript,
14  in Rose McIntyre's deposition she testified that
15  she told at least one other person about the
16  alleged sexual assault by Roger Golubski,
17  correct?
18        MR. ROACH:  Object to the form.  Go
19  ahead.
20    A.  At least one other, yes.
21    Q.  (By Ms. Shah)  And if that disclosure by
22  Rose McIntyre regarding the alleged sexual
23  assault by Roger Golubski took place before
24  Lamonte McIntyre's conviction, the situational
25  and dispositional risk factors that you discuss

Page 105

1  in your report would not have been applicable to
2  her disclosure, correct?
3        MR. ROACH:  Object to the form.  Go
4  ahead if you can.
5    A.  I wouldn't say they wouldn't be
6  applicable, but it would have a dramatic impact
7  on that, if that information is reliable.
8    Q.  (By Ms. Shah)  What do you mean when you
9  say dramatic impact?
10    A.  Well, if she had before this, before her
11  son was -- I would have to say before he was
12  arrested or charged with this, if she had made
13  those same allegations and it is not just
14  something that she said he did but there is
15  actual evidence of that, then certainly that
16  would at least change my opinion about this.  I'm
17  just completely unaware of anything like that.  I
18  would have to look at it again.  I mean,
19  basically.  Because the reasons that I'm -- the
20  situational risk factors I talked about, those
21  would be affected by that, the way I look at
22  those risk factors.
23    Q.  Right.  And if those risk factors were
24  not applicable due to the change in
25  circumstances, her susceptibility to false

27 (Pages 102 - 105)

Page 106

1  allegations for gain or false memory would not
2  exist, correct?
3       MR. ROACH:  Object to the form.
4    A.  I wouldn't say they would not exist.  I
5  would just -- I would have to look at the context
6  of those.  But dispositional risk factors would
7  there.  There would still be some situational
8  risk factors.  However, one being just the fact
9  that anybody being interviewed by someone who is
10 not keenly aware of suggestibility and these
11 types of things, I'm not saying McCloskey wasn't,
12 it just seems like from his deposition that he
13 wasn't, so those would still exist.  But one
14 situational risk factor, the fact that she would,
15 for example, have a reason to formulate a false
16 allegation at that point in time after her son
17 was convicted, would have an impact on that.
18    Q.  (By Ms. Shah)  To the extent that she
19 cited her relationship with the Innocence Project
20 as being a stressor, that would not be relevant
21 to an assessment of her risk factors at a time
22 prior to her son's conviction, correct?
23       MR. ROACH:  Object to the form.
24       THE COURT REPORTER:  I didn't hear
25 the answer.

Page 107

1    A.  The answer is correct.
2    Q.  (By Ms. Shah)  Mr. McConnell, would it
3  change your opinion to know that numerous
4  affidavits exist saying that Roger Golubski
5  sexually assaulted other black females in the
6  Kansas City, Kansas community over a period of
7  decades?
8       MR. COOPER:  Object to form.
9       MR. ROACH:  Object to form.
10   A.  It would -- it might have some
11 influence.  But I'm just looking at this
12 particular case, her suggestibility at the time,
13 that could actually -- if there are people that
14 are also making those same allegations and she
15 was being told about that, I guess it would
16 depend on whether she knew or not, that would
17 actually in some respects it could influence her
18 to provide a false allegation similar to the ones
19 she has heard before.  Again, that would be if
20 somebody is telling her about these other
21 allegations and she is aware of those.  Again,
22 you are getting her information that could be
23 recited back.  So the impact of that could go
24 either way.  I would just have to know what she
25 knew about those and when they were.

Page 108

1    Q.  (By Ms. Shah)  Sure.  Alternatively it
2  could also make her allegation more credible?
3       MR. ROACH:  Object to the form.
4    A.  The possibility that something like that
5  could exist, I guess it would increase the
6  potential of that.
7    Q.  (By Ms. Shah)  Would it change your
8  opinion to know that Roger Golubski took the
9  Fifth, claimed his Fifth Amendment Right against
10 self incrimination rather than denying that this
11 event occurred?
12       MR. ROACH:  Object to the form.
13   A.  I mean, that doesn't surprise me that he
14 did that, regardless of whether the allegations
15 are true or false.
16   Q.  (By Ms. Shah)  So it wouldn't change
17 your opinion either way?
18   A.  It does not, no.
19   Q.  Okay.  Can you remind me -- I know we
20 discussed that Rose McIntyre testified she told
21 at least one other person about the alleged
22 sexual assault by Roger Golubski.  What was the
23 reason you didn't include that in your report?
24   A.  Well, the reason that I didn't include
25 that is because it was just -- I mean, she

Page 109

1  mentioned that in her deposition and I don't
2  have -- that's all I know about what she is
3  saying in this case.  And that's just an unproven
4  fact.  But obviously if that or DNA analysis,
5  anything that comes up that could disprove it,
6  that obviously would have something to do with my
7  opinion.
8    Q.  A deposition is sworn testimony, though,
9  as you know, because you were sworn in today,
10 right, that you swear to tell the truth?
11   A.  Right.
12   Q.  So, then is the conclusion in your
13 opinion dependent on Rose, Rose McIntyre either
14 being mistaken about representing that this
15 assault occurred to others prior to Lamonte's
16 conviction, or that she was lying about the
17 assault?
18       MR. ROACH:  Object to the form.  Go
19 ahead if you can.
20   A.  I'm not sure -- can you repeat that?
21   Q.  (By Ms. Shah)  Given that Rose McIntyre
22 provided sworn testimony that she did disclose
23 the alleged sexual assault by Roger Golubski to
24 at least one other person and you have not
25 addressed that factor in your report, is your

28 (Pages 106 - 109)