UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LAMONTE MCINTYRE & ROSE LEE MCINTYRE,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KS, et al.,**<br><br>    **Defendants.** | Case No. 2:18-cv-02545-KHV-KGG |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' JOINT MOTION TO TRANSFER TRIAL TO WICHITA**

Plaintiffs Lamonte McIntyre and Rose McIntyre, by and through undersigned counsel, submit this Memorandum of Law in Opposition to Defendants' Joint Motion to Transfer Trial to Wichita (Doc. 597).

### I. Nature of the Matter

Defendants seek to transfer trial of this matter to Wichita, Kansas based on the unfavorable media attention this action has generated. However, Defendants exaggerate the local coverage this case has received, and regardless, fail to prove the volume or content is constitutionally offensive. Additionally, the inconvenience of forcing ten parties, their counsel, a significant number of lay witnesses (many of whom are indigent or have serious medical conditions), the parties' out-of-town experts, and the Court[1] to travel three hours one-way weighs heavily against transfer. Regardless,

---

[1] It is unclear from Defendants' Motion whether they are requesting that the current judge continue to preside over this matter in Wichita, or whether an entirely new judge would preside. If Defendants Motion requests the latter, it would substantially prejudice the parties and the progress of the case, as this court is familiar with the issues involved, having issued numerous orders on the

voir dire is the proper mechanism to handle any perceived prejudice from pretrial media, and thus Defendants' motion should be denied.

## II.     Issue Presented

Whether Defendants have met their burden to prove the drastic measure of a transfer to Wichita is required for a fair trial, and when the interest of justice and the convenience of the parties, counsel, witnesses, and experts weigh against a transfer.

## III.    There Is No Basis to Transfer this Action to Wichita.

### A. Statement of Facts[2]

Lamonte McIntyre spent 23 years, 5 months, and 28 days imprisoned for a double murder of which he is actually innocent. He and his mother, Rose McIntyre filed this action under 42 U.S.C. § 1983 and Kansas state law in October of 2018 alleging, among other things, that the individual defendant officers who wrongfully arrested and prosecuted Lamonte did so by fabricating and withholding evidence, which was a result of the Unified Government and Kansas City, Kansas Police Department's ("KCKPD") customs and practices. In his Complaint, Lamonte designates the District of Kansas, in Kansas City, Kansas, as the place of trial.

### B. Intra-District Transfers are Disfavored.

In consideration of a request for intradistrict transfer, the Court looks to the factors relevant to motions for change of venue set forth in 28 U.S.C. § 1404. *Prier v. Ford Motor Co.,* No. 05-1294-WEB, 2006 WL 1933796, at *2 (D. Kan. July 12, 2006); *Lavin v. Lithibar* Co., No. 01-2174-

---

merits, and is currently presiding over substantial briefing on Defendants' motions for summary judgment.

[2] Defendants "Statement of Facts" is simply a listing of purported "articles [with cherry-picked quotes] counsel has collected from local news outlets in chronological order." However, Defendants listing of these articles – some with extensive quotes – under this heading is an improper attempt to avoid the 30-page limit for arguments and authorities under the Local Rules.

JWL. 2001 WL 1175096, at 1 (D.Kan. September 19, 2001). Section 1404 states: "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." When a Court evaluates an intradistrict transfer under § 1404(a), the Court considers "plaintiffs' choice of forum, the convenience for witnesses, the accessibility of witnesses and other sources of proof, the relative advantages and obstacles to a fair trial, and all other considerations of a practical nature that make a trial easy, expeditious and economical." *Zhu v. Countrywide Realty Co.,* 160 F. Supp. 2d 1210, 1228 (D. Kan. 2001); *see also Wiggans v. Hartford Life & Accident Ins. Co.,* No. 02-2080-JWL, 2002 WL 731701, at *2 (D. Kan. Apr. 15, 2002) Further, as the party seeking transfer, Defendants have the burden to prove the existing forum is inconvenient. *Twigg v. Hawker Beechcraft Corp.,* 08-2632-JWL, 2009 WL 1044942 (D. Kan. Apr. 20, 2009) (citing *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992) However, "[c]ases are generally not transferred between cities except for the most compelling reasons." *United States v. $21,055.00 in U.S. Currency*, 08-1273-WEB-DWB, 2010 WL 2044674 (D. Kan. May 24, 2010).

Like here, when the question is whether pervasive prejudicial publicity compels a change of venue, the district court has large discretion. *Wash. Pub. Utilities Group v. U.S. Dist. Court for Western Dist. Wash.*, 843 F.2d 319, 324 (9th Cir. 1987); *United States v. Van Dyke*, 605 F.2d 220, 229 (6th Cir. 1979). "Merely unfavorable publicity, in itself, however, is insufficient to compel a finding that the defendants were denied an impartial jury." *Oliver v. City & Cty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736493, at *2 (N.D. Cal. Mar. 25, 2009) (internal citations and quotations omitted). Instead, it is "[o]nly where a jury is 'utterly corrupted by press coverage' may unfavorable press coverage justify a change of venue." *Id.*

3

### C.  Plaintiff's Chosen Forum is Kansas City, Kansas.

"Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Zhu*, 160 F.Supp.2d at 1228, (citing *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992). Indeed, the plaintiff's choice of forum is given "great deference." *Scheidt*, 956 F.2d 963, 965 (10th Cir.1992); *Guertin v. Michigan*, No. 16-CV-12412, 2017 WL 6390962, at *3 (E.D. Mich. Jan. 23, 2017) (giving Plaintiff's choice of forum "substantial deference" under § 1404). Further, "A district court may also consider delay and the passage of time as an additional factor, even though section 1404(a) does not include a time limit for motions to change venue." *Oliver v. City & Cty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736493, at *2 (N.D. Cal. Mar. 25, 2009).

Here, Plaintiffs filed this action in 2018 designating Kansas City, Kansas as its chosen forum. Notably, the first article cited by Defendants in support of their motion was published in 2016, well before this case was filed. Yet, after three and a half years, this is the first motion for transfer of venue Defendants have made. Such a delay in requesting a change of venue when Defendants were apparently aware of the publicity surrounding this case, "diminishes the urgency of their claim that they face unfair prejudice." *Oliver v. City & Cty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736493, at *2 (N.D. Cal. Mar. 25, 2009) (holding "Defendants' protracted delay in requesting a change of venue diminishes the urgency of their claim that they face unfair prejudice. Defendants were apparently well aware of the publicity through the life of this case but took no position until now as to whether venue in this matter should be changed.")

### D.  Kansas City, Kansas is the Most Convenient Forum.

Defendants admit that moving this trial to Wichita will be inconvenient for the parties, the witnesses, and the evidence to be presented – as they must. (Motion, p. 48). Instead, Defendants attempt to downplay the resulting hardships of a transfer by stating "the reality of modern times, the ease and availability of transportation, and the use of remote options…allay such

4

inconvenience." *Id.* This disregard for the considerations of convenience and accessibility only underscores the weakness of Defendants' Motion, especially since inconvenience and accessibility are the only concrete harm in the transfer analysis.

A large majority of the lay witnesses in this case are local Kansas City, Kansas residents. This factor weighs heavily in favor of maintaining the Kansas City forum. Additionally, over a dozen of the lay witnesses in this case are indigent, disabled, elderly, or have serious medical conditions that may prevent them from traveling long distances. Some of them do not have cars or do not drive and compelling them to appear at a courthouse three hours from home is a severe, and in some cases, a possibly insurmountable burden. Accordingly, forcing them to pay for or locate travel arrangements for the three hour drive in order to provide testimony would be unduly burdensome and would likely deter these witnesses from testifying. This would inevitably cause serious prejudice to Plaintiffs and would likely prevent them from presenting critical evidence in this action. Further, the court's subpoena power for witnesses will not be enforced if this matter is moved, because Wichita is well over 100 miles from Kansas City, Kansas. This is particularly significant here as Plaintiffs have the burden of proof and intend to present live witness testimony in support of each claim. Having the ability to subpoena witnesses (including officer witnesses) is essential to Plaintiffs' case.

Next, Defendants also ignore that there are several out-of-state witnesses (residing in Texas and Missouri), Plaintiffs (who reside in Arizona), Plaintiffs' counsel (who reside in New York), and Plaintiffs' expert witnesses (who reside in New York and out-of-country in Sint Maarten) who would have to travel great distances just to get to Kansas City. And, this Court has repeatedly held that Kansas City, Kansas is a more convenient forum for out-of-state witnesses because of its proximity to the Kansas City International Airport. *See Lavin v. The Lithibar Co.,* 01-2174-JWL,

5

2001 WL 1175096 (D. Kan. Sept. 19, 2001) ("it is likely that many fact and expert witnesses in this case will come from outside of Kansas. Kansas City is more convenient in that respect."); *Llizo v. City of Topeka, Kan.,* 11-2302-JWL, 2012 WL 171337 (D. Kan. Jan. 20, 2012) ("Kansas City, in all likelihood, is far more convenient for out-of-state witnesses in light of the proximity of the Kansas City International Airport to the Kansas City courthouse.") The convenience of flying to Kansas City International Airport and travelling to the courthouse within a few miles of the airport significantly weighs in favor of maintaining this matter in Kansas City rather than forcing the out-of-state Plaintiffs, their counsel, their experts, and their witnesses to drive three hours to Wichita *after* arriving in Kansas City.

Additionally, all of the counsel in this matter (apart from the Unified Government's counsel in Topeka, and the Plaintiffs' counsel in New York) are local to the Kansas City area. Defendants ignore this reality, but doing so contradicts many decisions in this District that considered the location of counsel in deciding whether to grant transfer. *See Lavin v. The Lithibar Co.,* 01-2174-JWL, 2001 WL 1175096 (D. Kan. Sept. 19, 2001) ("Further, defendants' counsel is located in Kansas City."); *Benson v. Hawker Beechcraft Corp.*, 07-2171-JWL, 2007 WL 1834010 (D. Kan. June 26, 2007) ("Mr. Benson resides in Wichita as do his attorneys."); *Twigg v. Hawker Veechcraft Corp.*, 2009 WL 1044942 (D. Kan. April 20, 2009) (Ms. Twigg's counsel practices in Topeka which made it a possible location.). No attorneys are located in Wichita, and thus all attorneys would be forced to either bear the cost of housing multiple counsel in Wichita for four-weeks or be deprived of critical trial preparation time in order to travel back and forth each day. Further, Plaintiffs' counsel do not have offices in Wichita and would be forced to set up office space, complete with all the necessary equipment, including computers, scanners, printers, copiers, an internet network, and office supplies.

Holding trial in Kansas City will be more economical, efficient and convenient because it will reduce travel costs of those out-of-state individuals and minimize attorney and witness travel expenses while allowing the parties to prepare in the offices of their attorneys here in Kansas City. Defendants do not dispute these practical impacts of a transfer, and instead simply ignore them. Regardless, the inconveniences noted above strongly favor remaining in Kansas City.

### E.  Kansas City, Kansas is the Best Location for Obtaining a Fair Trial

Defendants only claimed basis for transfer appears to be that the media coverage for this case is so pervasive and negative as to be constitutionally offensive, and that for a fair trial to take place, transfer to Wichita is required. Their hyperbole aside, Defendants provide no compelling basis for such a transfer and do not explain how the media attention in this case outweighs the hardships on the Plaintiffs, their counsel, the Court, and all witnesses who would be compelled to endure the three-hour one way travel distance. Indeed, they cannot.

Notably, Defendants look to criminal law – as opposed to civil precedent – and to Michigan and California cases – instead of those in this Circuit – to support their Motion. None of the cases Defendants cite support transfer in this case, and regardless, this Court has addressed the issue of pretrial media coverage on transfers repeatedly and found voir dire an appropriate remedy.

In *Llizo v. City of Topeka, Kan.,* 844 F. Supp. 2d 1212 (D. Kan. 2012), a civil Plaintiff filed suit against the City of Topeka for discrimination and wrongful termination under § 1983. The City filed a motion to transfer the place of trial to Topeka, as opposed to Kansas City, Kansas, where the trial was originally set. *Id.* at 1213. In analyzing the factors set out in § 1404(a), this Court considered the following: (1) plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the accessibility of witnesses and other sources of proof; (4) the possibility of obtaining a fair trial; and (5) all other practical considerations that make a trial easy, expeditious, and economical. *Id.* at 1214. The Court noted that "[g]enerally, unless the balance weighs strongly in favor of transfer, the

7

plaintiff's choice of forum is not disturbed." *Id.* The court first discussed the convenience of the parties, witnesses, and evidentiary proof, none of which favored transfer to Topeka, *even though* some witnesses were located there. *Id.* The court held that Kansas City is a far more convenient forum for out-of-state witnesses, and that "Defendant offers no reason why the convenience of these witnesses should be disregarded (such as, that these witnesses are unlikely to be called as witnesses at trial)." *Id.* The court also rejected "defendant's suggestion that these witnesses simply 'charter a flight' to Topeka" as it failed "to account for the increased financial burden that this alternative ultimately places on the parties." *Id.* Next, the court analyzed the significant media attention the Plaintiff's claims received in a short period of time, and how public filings like the motion for change of venue, repeatedly generated more articles. *Id.* at 1215. The Plaintiff argued transfer was not warranted because media attention in Topeka, where the defendant was attempting to transfer the case, was negative against the Plaintiff. *Id.* In its analysis, the court not only discussed the articles submitted by the Plaintiff, but the public comments from each article, showing "the public itself has also weighed in on plaintiff's case" and which ultimately reflected a "negative and even hostile attitude toward plaintiff." *Id.* Even though the court found those individuals likely were residents or had ties with individuals in the Topeka community, it held that "[t]he court undoubtedly could address this pretrial publicity and alleged prejudice through the voir dire process and is confident that an impartial jury could be selected in Topeka as a result." *Id.*

Here, Defendants apparently ignore the § 1404 analysis this Court has consistently used to determine whether intra-district transfer is appropriate and instead argue that their constitutional right to a fair trial would be violated if no transfer was granted under general criminal law principles. But, even the cases Defendants cite for this proposition review the "fair trial" analysis under the § 1404 framework, weighing it against other factors like convenience. *See Guertin v. Michigan,*

8

No. 16-CV-12412, 2017 WL 6390962, at *5 (E.D. Mich. Jan. 23, 2017) (rejecting Defendants' argument that the "interest of justice" factor under § 1404 alone requires transfer, holding the "Defendants do not make any arguments as to the multiple factors that must be considered before granting such a motion.") Regardless, even under the criminal framework, Defendants have not met their burden to show an unfair trial would occur in Kansas City. Instead, Defendants conclude, with no specific citations to material, that the pretrial media publicity for this action is "pervasive and rife with scathing editorials and victim interviews unanimous in the culpability of the named defendants," thus indicating "an impartial jury is impossible in KCK." (Motion, p. 44-47) However, like *Llizo,* the media reports actually discussing this case follow the parties' public filings. Indeed, Defendants do not argue that the content of any media cited – let alone all of them – are not based on publicly available information or first-hand witness accounts. *See Oliver v. City & Cty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736493, at *3 (N.D. Cal. Mar. 25, 2009) (when assessing whether the pretrial publicity warrants transfer, the court held that "[t]he content of the complained-of publicity is critical.") Further, contrary to the Defendants assertion that a "vast majority" of the content of the articles is inadmissible, victim interviews and statements by Plaintiffs would be admissible as first-hand accounts of Defendants' misconduct, while Defendant Golubski's Fifth Amendment invocations are clearly relevant and admissible as statements of a party opponent. Indeed, these are the exact kinds of evidence Plaintiffs intend to present at trial in order to carry their burden of proof. Accordingly, media outlets repeating the allegations from this action, publishing witness's accounts, and reporting on the ECF public filings does "not present the kind of vivid, unforgettable information the Court has recognized as particularly likely to produce prejudice." *Skilling v. United States*, 561 U.S. 358 (2010).

9

Likewise unavailing are the other factors Defendant argues are relevant here, including (1) the size and characteristics of the community in which the crime occurred; (2) the memorableness and prejudice of the publicity; (3) the time that elapsed between the crime and the trial; and (4) the breadth of the impact of the crime on the community (Motion, p. 41). Although the population of the Kansas City, Kansas community is roughly 157,000,[3] this action is not in state court, and, as Defendants admit, the federal jury pool is likely closer to 1.2 million, pulling individuals from eight counties. (Motion, p. 44)[4] Additionally, the actions giving rise to this case did occur in the Kansas City community, but did so over 25 years ago, and as a result, many of the defendants do not even remember the events in question and have either left the area or are deceased. None of these factors weigh in favor of transfer, especially given the inconveniences described above.

But, to the extent criminal actions assist the court in its determination regarding transfer, this court's own precedent is instructive. In *United States v. Lindemuth,* the Defendant in a criminal case was charged with bankruptcy fraud for failing to disclose large purchases of firearms during his bankruptcy proceedings. No. 16-40047-01-DDC, 2017 WL 2572819 (D. Kan. June 14, 2017). There, the defendant requested the trial be moved from Topeka to Kansas City. Like Defendants here attempt to do, the court used Fed. R. of Crim. Pro. 21 to determine whether transfer was appropriate in the criminal matter. *Id.* Like here, the defendant's transfer request was based on the "pre-trial media coverage of this case," and he argued such media attention would prevent him from obtaining a fair and unbiased jury. *Id.* at *2. Also like the Defendants here, the defendant in *Lindemuth* argued having a trial in the forum where such media attention existed "will violate his due process rights." *Id.* The court held that "[p]re-trial publicity can give rise to a due process

---

[3] *See* Motion, p. 44 (citing https://www.census.gov/quickfacts/kansascitycitykansas).

[4] *See also* https://ksd.uscourts.gov/index.php/faqs.

10

violation—and thereby require a transfer—in two ways: (1) where prejudice is presumed because the publicity was 'sufficiently prejudicial and inflammatory and [it] ... saturated the community where the trial was held,' or [(2)] where the defendant establishes actual prejudice resulting from the publicity." *Id.* (internal citations omitted). "Presumed prejudice may appear before jury selection, but actual prejudice cannot appear until jury selection, at the earliest." *Id.* The court noted that the defendant had the burden to prove transfer was warranted, and that "[t]his is not an easy burden to bear." *Id.* at *3. Citing *Skilling v. United States,* 561 U.S. 358, 381 (2010) – the case Defendants rely on here – the Court held that "[a] presumption of prejudice…attends only the extreme case." *Id.* Further, the court noted that "prejudice will only be presumed where publicity created either a circus atmosphere in the court room or a lynch mob mentality such that it would be impossible to receive a fair trial." *Id.* (internal citations and quotations omitted). The court then explained pre-trial publicity was inevitable in topical cases, and that defendants are "not constitutionally entitled to a trial by jurors ignorant about relevant issues and events." *Id.* And, the court emphasized that "[s]imply showing that all the jurors knew about the case and that there was extensive pretrial publicity will not suffice...." *Id.* (internal citations and quotations omitted). Indeed, the court held that the defendant "must establish that 'an irrepressibly hostile attitude pervaded the community' to prove presumptive prejudice from pre-trial publicity." *Id.* (quoting *Stafford v. Saffle*, 34 F.3d 1557, 1566 (10th Cir. 1994)).

Ultimately, the court in *Lindemuth* analyzed almost 50 media articles the defendant submitted in support of his motion, but found over 30 did not mention his pending criminal case, and instead discussed the defendant, his bankruptcies, and his tax issues. Of those that did mention the case, they "simply recite facts" such as reporting "the crimes Mr. Lindemuth is charged with" and explaining "what those crimes accuse him of doing." *Id.* The court even found that the reader

11

comments attending each article (accusing him of murder and pointedly asking how long the defendant would be allowed to violate the law), did not support transfer. *Id.* at *5. The court further noted that "as the Supreme Court explained in *Skilling,* the sheer number of people affected by a defendant's actions alone is not sufficient to 'trigger' a presumption of prejudice," *id.* at *9, and, that "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." *Id.* (citing *Skilling v. United States,* 561 U.S. 358, 384 (2010)) Even after analyzing scathing comments about the defendant by local residents, the court found that "the solution to the problem that these comments may pose is a thorough voir dire, not a venue change." *Id.*

Like *Lindemuth,* the Defendants here cite several articles that do not actually discuss this case and a majority of them are not focused on the Defendants' actions giving rise to Plaintiffs' claims. For example, dozens of the listed articles are about Lamonte McIntyre's exoneration, his innocence finding from the state of Kansas, and his life after being released. (*See* Motion, Statement of Facts ¶¶ 3-6, 8-13, 23-24, 26-30, 34, 46, 59, 133). Other articles focus on entirely separate issues such as the KCK mayoral race, general reform within the KCKPD or Unified Government, the elections of new police chiefs, and the call for DOJ investigations sparked by non-party open records requests. (*Id.* at ¶¶15, 20-22, 33, 42, 44, 45, 54-55, 61, 69, 75-76, 78-79, 82, 94, 96-97, 102-108, 110-112, 117-119, 121-122, 127-128, 129-132, 134-135, 137-142, 150, 152-153). Also, Defendants' characterization of the listed media as purely local is disingenuous, as over 50 of the cited media are found *solely* online and can be accessed by anyone.[5] Thus, despite the volume of purportedly pervasive media – most of which simply refer to this action or one of the eight Defendants – only a few dozen files directly focus on the allegations made against Defendant

---

[5] Additionally, the inference that everyone in the Kansas City area has viewed or heard the cited media is unfounded speculation. This is especially true as the articles from the Kansas City Star require a subscription and without one, a pay wall prevents online viewing.

Golubski or the Unified Government by Plaintiffs here. Even taking into account the five editorials cited (over a four-year period), and the few dozen articles focusing on Roger Golubski (over a six-year period), it does not support Defendants' assumption that all of the 1.2 million potential jurors are predisposed to a finding against the Defendants. *See Villafuerte v. Decker Truck Line, Inc.,* No. 2:14-CV-177-TLS-PRC, 2014 WL 3721962, at *3 (N.D. Ind. July 25, 2014) (finding transfer not warranted, despite defendants' argument that jurors could not be impartial due to negative media coverage of the incident, finding "[j]urors who read or heard news reports following the incident may not necessarily be biased against Defendant. And, if a juror is biased because of the media coverage, the voir dire of potential jurors should expose the bias."); *see also Oliver v. City & Cty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736493, at *2 (N.D. Cal. Mar. 25, 2009) (although the Defendant "complied an impressive collection of newspaper clippings and television broadcasts…[which] reported unfavorably about Defendant…Defendants fail to show anything beyond mere speculation that this publicity has infected the fairness of the trial.")

Indeed, the Supreme Court in *Irvin v. Dowd,* 366 U.S. 717, 722 (1961) held that:

It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Defendants exaggerate the volume and content of media attention actually garnered in this case by equating it to the beating of Rodney King. (Motion, p. 47). Although Plaintiffs' case is undoubtably important and involves abusive and unconstitutional policing practices, the media coverage surrounding this action is *nothing like the repeated airing of a videotaped beating of an unarmed Black man by police* that caused worldwide outrage, protests, and riots. Instead, the

13

conduct and practices giving rise to this action occurred as far back as the 1970s. It was only because of Lamonte's wrongful incarceration that this action could not be filed until after his release in 2017. Further, Defendants' contention that "the recent destructive protests in Kansas City will impress upon a local jury the possibility of civil unrest and further destruction, should it find defendants not liable" is completely unfounded. There is nothing connecting any such "destructive protests" (if they even occurred) to this case or the media attention of this case. Additionally, Defendants' assertion that "it is a veritable certainty no one in Kansas City and the surrounding area will not have a preconceived opinion as trial approaches" is pure speculation and is verifiably false. Indeed, most of the individuals familiar with Plaintiffs' case are either witnesses or victims (and thus cannot be jurors) or are deceased (including three of the Defendants).

Additionally, any inference or assertion that media coverage will decline after a transfer to Wichita is pure speculation and unsupported by the very media coverage Defendants submitted. *Doe v. Rousseau,* No. 11-11987, 2011 WL 2489982, at *3 (E.D. Mich. June 21, 2011) (finding "assertion that media coverage will decline after a transfer to the Southern Division is speculation, and unsupported by the evidence")

### F. Voir Dire is the Proper Remedy, if Any is Needed

In this District, and around the country, voir dire is the preferred mechanism to address pretrial publicity and alleged prejudice. *See Llizo v. City of Topeka,* Kan., 844 F. Supp. 2d 1212, 1215 (D. Kan. 2012) ("The court undoubtedly could address this pretrial publicity and alleged prejudice through the voir dire process and is confident that an impartial jury could be selected in Topeka as a result."); *United States v. Lindemuth*, No. 16-40047-01-DDC, 2017 WL 2572819, at *11 (D. Kan. June 14, 2017) ("the court believes that the solution to the problem that these comments may pose is a thorough voir dire, not a venue change. Like Judge Lungstrum in *Llizo*, the court is confident that it can weed out any jurors who have written or been exposed to and

prejudiced by these online comments during jury selection. Indeed, voir dire is designed for just that purpose."); *Prier v. Ford Motor Co*., No. 05-1294-WEB, 2006 WL 1933796, at *2 (D. Kan. July 12, 2006) ("To the extent the evidence at trial differs from media reports, instructions to the jury will be sufficient to protect against unfair prejudice…To the extent any individual juror may be unable to render a fair and impartial verdict based solely on the evidence at trial and the court's instructions, the court concludes that the ordinary voir dire procedures will be sufficient to protect the defendants' right to a fair trial."); *Oliver v. City & Cty. of San Francisco,* No. C 07-2460 JL, 2009 WL 10736493, at *4 (N.D. Cal. Mar. 25, 2009) ("Any subjective juror bias may be addressed by a properly conducted voir dire…. In jury selection, a district court may utilize devices such as conducting individualized voir dire, providing extensive questionnaires to jurors, increasing the size of the jury pool, excusing for cause jurors who have been exposed to unfavorable media coverage, increasing the number of peremptory challenges per side, and admonishing the jurors from reading or watching news reports if it might expose them to coverage of the case.")

## IV.     Conclusion

Defendants have failed to establish that the media coverage of this important civil rights case is constitutionally offensive or that factors such as economy, convenience, or the interest of justice weigh in favor of a transfer to Wichita. Accordingly, Defendants' motion should be denied.

Date: April 29, 2022                                  Respectfully submitted,

                                        LATHROP GPM LLP

                                        By: /s/ *Michael J. Abrams*
Michael J. Abrams #15407
Alana M. McMullin #78948
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
(816) 292-2000
(816) 292-2001 Facsimile
michael.abrams@lathropgpm.com
alana.mcmullin@lathropgpm.com

Cheryl A. Pilate #14601
Lindsay Runnels #78822
Morgan Pilate, LLC
926 Cherry Street
Kansas City, MO 64106
Telephone: (816) 471-6694
Facsimile: (816) 472-3516
cpilate@morganpilate.com

Barry Scheck (*admitted pro hac vice*)
Emma Freudenberger (*admitted pro hac vice*)
Sona R. Shah (*admitted pro hac vice*)
Grace Paras (*admitted pro hac vice*)
Neufeld Scheck & Brustin, LLP
99 Hudson Street, Eighth Floor
New York, NY 10013
Telephone: (212) 965-9081
Facsimile: (212) 965-9084
emma@nsbcivilrights.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 29th day of April, 2022, the foregoing was electronically filed with the clerk of the court using the CM/ECF system which will provide notice and service to all counsel of record.

                                        By: /s/ *Michael J. Abrams*
An Attorney for Plaintiffs