IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAMONTE MCINTYRE and<br>ROSE LEE MCINTYRE,<br><br>Plaintiffs,<br><br>v.<br><br>UNIFIED GOVERNMENT OF WYANDOTTE<br>COUNTY AND KANSAS CITY, KS, et al.,<br><br>Defendants. | CIVIL ACTION<br><br>No. 18-2545-KHV |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Roger Golubski's Motion To Exclude Plaintiffs' Expert Jennifer Dysart Ph.D. And Memorandum Of Law In Support (Doc. #573) filed April 1, 2022.  For reasons briefly stated below, on the record at the hearing on May 23, 2022, and in the Memorandum Of Law In Opposition To Defendant Roger Golubski's Motion To Exclude Plaintiffs' Expert Jennifer Dysart Ph.D. (Doc. #600) filed April 15, 2022,  the Court sustains in part defendant's motion.[1]

Golubski seeks to exclude the testimony of Jennifer Dysart, Ph.D., an eyewitness identification expert who has opined that "the identification procedures used by police likely led to the wrongful prosecution and conviction of Lamonte McIntyre."  Golubski argues that for various reasons, her opinions are neither relevant nor reliable and would usurp the rule of the jury

---

[1] To expedite a ruling on this motion, because this case is set for trial commencing October 17, 2022, the Court held oral argument on May 23, 2022 and communicated the reasons for its decision without attempting to draft a legal treatise or cite extensive case law.  The law in this area is clear and the Court has taken into account the authorities which are cited in the parties' briefs, along with other authorities.  If necessary for future proceedings, the Court may supplement this order with additional findings of fact or legal citations.

in evaluating the credibility of witnesses.

The Court acts as a gatekeeper with the obligation to determine the admissibility of all expert testimony.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)).  To render expert testimony under Rule 702, Fed. R. Evid., an individual must (1) be qualified by knowledge, skill, experience, training or education in the discipline in which the expert is expected to testify and (2) offer an opinion that is both reliable and relevant.[1]  Tudor v. Se. Okla. State Univ., 13 F.4th 1019, 1029 (10th Cir. 2021); see Kumho, 526 U.S. at 148; Daubert, 509 U.S. at 588–89.

The Court determines whether an expert opinion is reliable by assessing the underlying reasoning and methodology as set forth in Daubert.  Schulenberg v. BNSF Ry. Co., 911 F.3d 1276, 1283 (10th Cir. 2018).  The Court must ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire, 526 U.S. at 152.  As part of this inquiry, the Court assesses whether the reasoning or methodology underlying the testimony is both "scientifically valid" and "properly can be applied to the facts in issue."  Daubert, 509 U.S. at 592–93.  To do so, the Court evaluates whether the theory or technique (1) has

---

[1] Rule 702 states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

been or can be tested, (2) has been peer-reviewed, (3) has a known or potential error rate, (4) has standards controlling the technique's operation and (5) has been generally accepted by the scientific community. Etherton v. Owners Ins. Co., 829 F.3d 1209, 1217 (10th Cir. 2016) (citing Daubert, 509 U.S. at 593–94).

The relevance inquiry mirrors Rule 702's requirement that expert testimony "[help] the trier of fact to understand the evidence or to determine a fact in issue." Delsa Brooke Sanderson v. Wyo. Hwy. Patrol, 976 F.3d 1164, 1172 (10th Cir. 2020) (citations omitted). To determine whether the testimony will help the trier of fact, the Court considers several factors including "whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of evaluating a witness's credibility." United States v. Cushing, 10 F.4th 1055, 1079 (10th Cir. 2021) (quoting United States v. Garcia, 635 F.3d 472, 476–77 (10th Cir. 2011)), cert. denied, 142 S. Ct. 813 (2022). As this Court has recognized, an expert may not simply tell the jury what result it should reach. Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc., No. CIV.A. 12-2609-KHV, 2014 WL 2196416, at *1–2 (D. Kan. May 27, 2014) (citing United States v. Simpson, 7 F.3d 186, 188 (10th Cir. 1993)). An expert's personal opinion as to the weight of evidence would invade the province of the jury. Id. Expert opinions that address matters that are equally within the jury's competence to understand and decide are not helpful and therefore inadmissible. Id.

Golubski does not challenge Dysart's qualifications or the methodology and science on which her opinion relies. His sole challenge is to the reliability of how she applies the science of eyewitness identification to the facts of this case and the relevance of such testimony.

I.   **Golubski's Global Objection To Expert Testimony On Eyewitness Identification**

Preliminarily, Golubski argues that independent of Daubert, and independent of Dysart's

report, expert testimony relating to eyewitness identification is generally not allowed. Specifically, he argues that "[u]ntil fairly recently, most courts excluded expert psychological testimony on the validity of eyewitness identification, and those courts who have allowed such testimony describe the circumstances under which eyewitness expert testimony is allowed as 'narrow.'" Defendant Roger Golubski's Motion To Exclude Plaintiffs' Expert Jennifer Dysart Ph.D. And Memorandum of Law in Support (Doc. #573) at 5 (quoting United States v. Rodriguez-Felix, 450 F.3d 1117, 1124 (10th Cir. 2006), which in turn quotes United States v. Smith, 156 F.3d 1046, 1052 (10th Cir. 1998)). Be that as it may, the science of eyewitness identification has come a long way since the Tenth Circuit decided the cited cases, and Golubski's effort to cabin such testimony into a narrow range of delineated circumstances must be rejected. See United States v. Thomas, 849 F.3d 906, 911 (10th Cir. 2017) (preliminary judicial reliability assessment of eyewitness identification in criminal cases no longer necessary; jury could properly determine evidentiary reliability of eyewitness identification based on evidence including expert testimony about fallibility of eyewitness identifications); Davis v. Cline, No. 06-3127-KHV, 2007 WL 1520916, at *8 (D. Kan. May 24, 2007) (state trial court allowed expert testimony that accuracy of eyewitness identification is less than what lay people believe and various factors undermine its accuracy), aff'd, 277 F. App'x 833 (10th Cir. 2008); see also Rodriguez-Felix, 450 F.3d at 1125 (while cross-examination is often effective, expert testimony directed at complex issues may provide more effective tool for rebutting eyewitness testimony).

In this case, plaintiffs challenge the specific methods that officers used to secure an eyewitness identification nearly 30 years ago, and expert testimony will be helpful for a jury to evaluate the many factors that may have influenced each witness's identification of McIntyre. Golubski cites no reason why effective cross-examination and expert testimony are mutually

4

exclusive means of testing the sufficiency of eyewitness identification evidence. Accordingly, the Court rejects Golubski's argument that Dysart's opinion should be excluded because it does not involve cross-racial identification, identification after a long delay, identification after observation under stress and psychological phenomena such as the feedback factor or unconscious transference. The Court finds that Dysart has reliable expertise which will assist the jury in evaluating the impact of the procedures that defendants utilized in this case to secure each witness's identification. The Court therefore overrules Golubski's motion to exclude in this regard.

On the other hand, Dysart's expertise in eyewitness identification does not extend to legal issues or speculation that the identification procedures used in this case "likely led to the wrongful prosecution and conviction of Lamonte McIntyre." After considering the specific procedures which defendants used in this case, the jury will be well equipped to decide whether faulty eyewitness identifications caused McIntyre to be wrongfully prosecuted and convicted. On this limited issue, the Court sustains Golubski's motion to exclude Dysart's testimony.

**II.     Golubski's Specific Objections To Dysart's Testimony**

Golubski raises several specific arguments why Dysart's testimony should be excluded because it is not reliable or relevant. In general, all of these arguments go to the weight of Dysart's testimony, not its admissibility. The Court addresses each of Golubski's objections in turn.

   A.     <u>Dysart Did Not Consider Certain Facts Related To Niko Quinn</u>.

Golubski complains that Dysart did not consider evidence that Niko Quinn (one of two eyewitnesses) lied to officers about the identity of the shooter and Dysart therefore could not rule out the possibility that Quinn's deception—rather than faulty eyewitness identification protocols—caused McIntyre to be wrongfully charged and convicted. The fact that Dysart did not address this

possibility does not vitiate the entirety of her report—which addresses identifications by both Quinn and Ruby Mitchell. Moreover, it is possible that Quinn lied and also that the officers used faulty identification procedures. The jury will decide whether Quinn lied to detectives and if so, what weight (if any) to afford Dysart's opinion.

B. Dysart's Testimony Is Irrelevant Because It Will Not Assist The Jury.

Golubski argues that the content of Dysart's report lies within a juror's common knowledge and experience and her testimony will therefore usurp the jury's role of evaluating the credibility of witnesses. The Court disagrees. From Dysart's extensive scientific CV to the content of her expert report, it is clear that she possesses a vast amount of scientific knowledge which may assist the jury in evaluating how various police techniques may have influenced the eyewitness identifications in this case.

C. Dysart's Testimony Is Based On Subjective Beliefs And Speculation.

Golubski objects that Dysart's opinion is based not on "knowledge," but subjective belief and unsupported speculation, and is therefore irrelevant. In this regard, Golubski accuses Dysart of opining that Mitchell's identification of McIntyre was coerced due to allegedly improper police procedures. That is not Dysart's opinion, however, and whether the identification procedure was suggestive or coercive remains a question for the jury. It can find the facts and accept or reject Dysart's opinion as it pleases. Because Dysart does not opine that Mitchell's identification was coerced, Golubski's argument is a classic straw man argument. Likewise, Dysart does not opine that Mitchell flipped the Polaroid photo and noticed the name "McIntyre" written on the back, that post-identification feedback affected Mitchell, or that either Mitchell or Quinn had seen the names on the backs of the photos. Because Dysart is not expressing opinions on those topics, the Court declines to exclude her opinions on the ground that they are speculative and unreliable.

6

D. <u>Dysart Did Not Apply Scientific Methodology And Reasoning To Facts At Issue</u>.

Golubski argues that even if Dysart's reasoning and methodology were scientifically valid, she did not properly apply such methodology and reasoning to the facts at issue. Golubski complains that her conclusion addresses only one eye-witness (Mitchell) as being potentially unreliable. This is plainly incorrect and the Court need not further address it, or the fact that Mitchell identified McIntyre on more than one occasion. These matters go to the weight and not the admissibility of Dysart's opinion. Moreover, Dysart's statements are based on "more than her own speculation and conjecture." Her opinions are premised on facts which the jury may or may not find to be true, and at the end of the day, the jury will decide whether the facts justify the expert conclusions in question. Whether Dysart failed to consider relevant evidence that would have affected her conclusions is a basis for rigorous cross-examination, not blanket exclusion of her testimony.

## III.  Conclusion

For these reasons, and those well stated in the <u>Memorandum of Law in Opposition to Defendant Golubski's Motion to Exclude Plaintiffs' Expert Jennifer Dysart, Ph.D.</u> (Doc. #600) filed April 15, 2022, and the reasons articulated by the Court at oral argument on May 23, 2022, the Court overrules Golubski's motion to exclude Dysart's testimony except as to her opinion that that the identification procedures used in this case "likely led to the wrongful prosecution and conviction of Lamonte McIntyre."

**IT IS THEREFORE ORDERED** that <u>Defendant Roger Golubski's Motion To Exclude Plaintiffs' Expert Jennifer Dysart Ph.D. And Memorandum Of Law In Support</u> (Doc. #573) filed April 1, 2022 is **SUSTAINED as to Dysart's opinion that that the identification procedures used in this case "likely led to the wrongful prosecution and conviction of Lamonte**

**McIntyre." Defendant's motion is otherwise overruled**.

Dated this 31st day of May, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
