**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LAMONTE MCINTYRE and ROSE LEE MCINTYRE,** <br> **Plaintiffs,** <br> **v.** <br> **UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KS, et al.,** <br> **Defendants.** | ) | **CIVIL ACTION** <br> **No. 18-2545-KHV** |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion To Limit Testimony Of Tarik Khatib (Doc. #578) filed April 1, 2022. For reasons briefly stated below, on the record at the hearing on May 23, 2022, and in Plaintiffs' Memorandum Of Law In Support Of Motion To Limit Testimony Of Tarik Khatib (Doc. #579) filed April 1, 2022 and Plaintiffs' Reply Memorandum Of Law In Support Of Motion To Limit Testimony Of Tarik Khatib (Doc. #619) filed April 29, 2022, the Court sustains in part plaintiffs' motion.[1]

Defendants designated Tarik Khatib, a former Chief of Police of the Lawrence, Kansas Police Department, as an expert on police practices. Plaintiffs seek to bar Khatib from testifying about certain matters. Specifically, plaintiffs argue that the Court should bar Khatib from testifying about (1) the credibility of other witnesses, (2) factual conclusions based on the

[1] To expedite a ruling on this motion, because this case is set for trial commencing October 17, 2022, the Court held oral argument on May 23, 2022, and communicated the reasons for its decision without attempting to draft a legal treatise or cite extensive case law. The law in this area is clear and the Court has taken into account the authorities which are cited in the parties' briefs, along with other authorities. If necessary for future proceedings, the Court may supplement this order with additional findings of fact or legal citations.

testimony; and (3) opinions that go beyond his expertise in police practices.

The Court acts as a gatekeeper with the obligation to determine the admissibility of all expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)). To render expert testimony under Rule 702, Fed. R. Evid., an individual must (1) be qualified by knowledge, skill, experience, training or education in the discipline in which the expert is expected to testify and (2) offer an opinion that is both reliable and relevant.[1] Tudor v. Se. Okla. State Univ., 13 F.4th 1019, 1029 (10th Cir. 2021); see Kumho Tire, 526 U.S. at 148; Daubert, 509 U.S. at 588–89.

The Court determines whether an expert opinion is reliable by assessing the underlying reasoning and methodology as set forth in Daubert. Schulenberg v. BNSF Ry. Co., 911 F.3d 1276, 1283 (10th Cir. 2018). The Court must ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. As part of this inquiry, the Court assesses whether the reasoning or methodology underlying the testimony is both "scientifically valid" and "properly can be applied to the facts in issue." Daubert, 509 U.S. at 592–93. To do so, the Court considers whether the theory or technique (1) has

---

[1] Rule 702 states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

been or can be tested, (2) has been peer-reviewed, (3) has a known or potential error rate, (4) has standards controlling the technique's operation and (5) has been generally accepted by the scientific community. Etherton v. Owners Ins. Co., 829 F.3d 1209, 1217 (10th Cir. 2016) (citing Daubert, 509 U.S. at 593–94).

The relevance inquiry mirrors Rule 702's requirement that expert testimony "[help] the trier of fact to understand the evidence or to determine a fact in issue." Delsa Brooke Sanderson v. Wyo. Hwy. Patrol, 976 F.3d 1164, 1172 (10th Cir. 2020) (citations omitted). To determine whether the testimony will help the trier of fact, the Court considers several factors including "whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of evaluating a witness's credibility." United States v. Cushing, 10 F.4th 1055, 1079 (10th Cir. 2021) (quoting United States v. Garcia, 635 F.3d 472, 476–77 (10th Cir. 2011)), cert. denied, 142 S. Ct. 813 (2022). As this Court has recognized, an expert may not simply tell the jury what result it should reach. Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc., No. CIV.A. 12-2609-KHV, 2014 WL 2196416, at *1–2 (D. Kan. May 27, 2014) (citing United States v. Simpson, 7 F.3d 186, 188 (10th Cir. 1993)). An expert's personal opinion as to the weight of evidence would invade the province of the jury. Id. Expert opinions that address matters that are equally within the jury's competence to understand and decide are not helpful and therefore inadmissible. Id.

It is the exclusive function of the jury to weigh the evidence and determine witness credibility. Erickson v. City of Lakewood, No. 19-CV-02613-PAB-NYW, 2021 WL 4438035, at *11 (D. Colo. Sept. 27, 2021) (citing United States v. Leach, 749 F.2d 592, 600 (10th Cir. 1984) and United States v. Samara, 643 F.2d 701, 705 (10th Cir. 1981)). Accordingly, "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony." United States v. Hill,

749 F.3d 1250, 1258 (10th Cir. 2014) (quoting United States v. Toledo, 985 F.2d 1462, 1470 (10th Cir. 1993)).

At trial, a significant issue will be how police conducted the murder investigation in 1994 and whether officers intentionally framed Lamonte McIntyre for murders that he did not commit. Defendants have designated Khatib, an expert on police practices, who has submitted a 45-page, single-spaced expert report. See Expert Report Of Tarik Khatib, attached as Exhibit C to Declaration Of Sona R. Shah In Support Of Plaintiffs' Motion To Limit Testimony Of Tarik Khatib (Doc. #579-1) filed April 1, 2022.

Plaintiffs correctly note that Khatib's expert report "is largely a narrative that recounts the Officer Defendants' version of events, and then resolves disputed facts in their favor," and "does not include any sections that properly identify or label his opinions and conclusions." They also correctly observe that his "conclusions" are "inextricably interwoven" with his factual narrative. To aid in ruling on plaintiffs' motion to exclude, the Court ordered defendants to file a highlighted copy of Khatib's expert report which identifies each of his opinions and each statement in which Khatib opines on (1) credibility of witnesses, (2) resolution of factual disputes and (3) speculation (including opinions phrased in term of what "could" have happened, whether Khatib "finds evidence" or information of certain matters, what officers or others knew, whether positions have been "abandoned," presumptions, assumptions, factual plausibility, weight of the evidence or other matters that are typically questions for the jury). At oral argument, after first dissecting whether Khatib's various statements constituted fact or opinion, the Court ruled on plaintiffs' objections line by line. The bottom line, however, is that as a person who has specialized knowledge about police practices, Khatib may be able to testify as a fact witness on various subjects. As an expert, he may also offer opinion testimony on select narrow issues. Even so, the Court excludes his

testimony on a number of subjects outlined at the hearing. Most of the Court's rulings fall into three broad categories of testimony on which Khatib will not be permitted to testify at trial. The Court briefly sets forth its reasoning for excluding these three categories of testimony.

First, in much of Khatib's report, he attempts to state facts based on his review of police records, newspapers and other third-party sources. While an expert may rely on hearsay to form a relevant opinion, he cannot testify about facts from hearsay sources that do not relate to specified opinions. For example, Khatib states that based on various sources including police reports and trial testimony, "it appears Detective Golubski was assigned the primary responsibility for the investigation." Expert Report at 8. Defendants have not shown that Khatib has special expertise in reviewing police reports and trial testimony. In addition, Khatib offers no "opinion" which corresponds to any factual matter about Golubski's role in the investigation. The jury is perfectly capable of reviewing the same information that Khatib reviewed and determining Golubski's role. In sum, the various records speak for themselves and do not require the interpretation of an expert on police practices. Khatib's "opinion" of what factual conclusions should be drawn from police records, newspapers and other third-party sources is simply not helpful to the jury. It is unduly prejudicial under Rule 403, Fed. R. Evid., and duplicates testimony about documents that, independent of his review, will already be in the record.

Next, in much of Khatib's report, he credits witness testimony that is favorable to the defense while discrediting opposing testimony. For example, Khatib states that despite Ware's testimony that Smith and Golubski were both assigned the murder investigation, "Smith does not recall being assigned to the case and does not recall taking any other investigative steps . . . . From the record, it appears this was the case as there are no additional investigative steps taken by Smith." Expert Report at 8–9. This type of opinion testimony is improper because it essentially

vouches for the credibility of certain witnesses and usurps the jury's role of evaluating each witness's credibility.  Cushing, 10 F.4th at 1079; see also United States v. DeLeon, No. CR 15-4268 JB, 2021 WL 4909981, at *20 (D.N.M. Oct. 21, 2021) (expert witness not allowed to tell jury who is lying and who is telling truth; "that is the jury's job").  The specific factual matter—who was assigned to the investigation—is within the common understanding and knowledge of an average juror, and expert opinion testimony on this issue would not be helpful.  See Am. Fam. Mut. Ins. Co., 2014 WL 2196416, at *3 (issues within realm of common understanding and knowledge of average juror do not require expert testimony).

Finally, Khatib opines that management of case investigations can fall generally into two categories: (1) a direct approach where the case supervisor knows the specific details of the investigation and gives subordinate detectives direction how to conduct the investigation and (2) a hands-off approach where the case supervisor is "generally apprised" of the case from a subordinate detective and provides requested resources but does not give direction on possible leads to pursue, specific investigative techniques or other details of how to conduct the investigation.  Expert Report at 11.  Khatib suggests that both management styles are legitimate and that in fact, it is not uncommon for "police supervisors [to] sign reports they may not have fully examined."  Id. at 13.

The Court is hard pressed to believe that in 1994, these alleged models constituted the range of choices available to police departments, or that they represented the range of options available to police chiefs and governing bodies.  The Court also questions whether police chiefs and governing bodies encouraged supervisors to sign reports without reviewing them.  In any event, Khatib's opinion about styles of supervision is not tethered to any relevant legal standard.  Moreover, the jury is capable of evaluating Lieutenant Culp's supervisory style and whether he

acted intentionally or with reckless disregard of certain facts. In sum, Khatib's opinions on case management style are not relevant and, in any event, would be unduly prejudicial under Rule 403, Fed. R. Evid.

For these reasons, and those well stated in Plaintiff's Memorandum of Law In Support Of Motion To Limit Testimony Of Tarik Khatib (Doc. #579) and Plaintiffs' Reply Memorandum Of Law In Support Of Motion To Limit Testimony Of Tarik Khatib (Doc. #619), and the reasons articulated by the Court at oral argument on May 23, 2022, the Court sustains in part plaintiffs' motion to exclude Khatib's testimony.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion To Limit Testimony Of Tarik Khatib (Doc. #578) filed April 1, 2022 is **SUSTAINED in part**.

Dated this 31st day of May, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge