IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAMONTE MCINTYRE and ROSE LEE MCINTYRE, </br></br>Plaintiffs, </br></br>v. </br></br>UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KS, et al., </br></br>Defendants. | CIVIL ACTION </br></br>No. 18-2545-KHV |

### MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiffs' Motion To Exclude Testimony of Robert Blake McConnell (Doc. #576) filed April 1, 2022. For reasons briefly stated below, on the record at the hearing on May 23, 2022, and the reasons stated in Plaintiffs' Memorandum Of Law In Support Of Motion To Exclude Testimony Of Robert Blake McConnell (Doc. #577) filed April 1, 2022 and Plaintiffs' Reply Memorandum Of Law In Support Of Motion To Exclude Testimony Of Robert Blake McConnell (Doc. #620) filed April 29, 2022, the Court sustains plaintiffs' motion.[1]

Plaintiffs seek to bar Robert Blake McConnell from opining, with regard to testimony by Rose McIntyre, that situational, dispositional and other factors put her at a higher risk for false confessions and accusations. Specifically, plaintiffs argue that (1) the Tenth Circuit has repeatedly

---

[1] To expedite a ruling on this motion, because this case is set for trial commencing October 17, 2022, the Court conducted oral argument on May 23, 2022, and communicated its decision without attempting to draft a legal treatise or cite extensive case law. The law in this area is clear and the Court has taken into account the authorities which are cited in the parties' briefs, along with other authorities. If necessary for future proceedings, the Court may supplement this order with additional findings of fact or legal citations.

excluded testimony exactly like McConnell's; (2) McConnell is not qualified to offer the opinions he has proffered, his testimony is not based on sufficient facts or data and does not reliably apply any methodology, he does not consider all relevant facts and the possibility of a false accusation is easily understood by a layperson without expert testimony; and (3) any probative value of his testimony is outweighed by the potential for prejudice. Rules 403 and 702, Fed. R. Evid.

The Court acts as a gatekeeper with the obligation to determine the admissibility of all expert testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993)). To render expert testimony under Rule 702, Fed. R. Evid., an individual must (1) be qualified by knowledge, skill, experience, training or education in the discipline in which the expert is expected to testify and (2) offer an opinion that is both reliable and relevant.[2] Tudor v. Se. Okla. State Univ., 13 F.4th 1019, 1029 (10th Cir. 2021); see Kumho Tire, 526 U.S. at 148; Daubert, 509 U.S. at 588–89.

The Court determines whether an expert opinion is reliable by assessing the underlying reasoning and methodology as set forth in Daubert. Schulenberg v. BNSF Ry. Co., 911 F.3d 1276, 1283 (10th Cir. 2018). The Court must ensure that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual

---

[2] Rule 702 states as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152. As part of this inquiry, the Court assesses whether the reasoning or methodology underlying the testimony is both "scientifically valid" and "properly can be applied to the facts in issue." Daubert, 509 U.S. at 592–93. To do so, the Court considers whether the theory or technique (1) has been or can be tested, (2) has been peer-reviewed, (3) has a known or potential error rate, (4) has standards controlling the technique's operation and (5) has been generally accepted by the scientific community. Etherton v. Owners Ins. Co., 829 F.3d 1209, 1217 (10th Cir. 2016) (citing Daubert, 509 U.S. at 593–94).

The relevance inquiry mirrors Rule 702's requirement that expert testimony "[help] the trier of fact to understand the evidence or to determine a fact in issue." Delsa Brooke Sanderson v. Wyo. Hwy. Patrol, 976 F.3d 1164, 1172 (10th Cir. 2020) (citations omitted). To determine whether expert testimony will help the trier of fact, the Court considers several factors including "whether the testimony is within the juror's common knowledge and experience, and whether it will usurp the juror's role of evaluating a witness's credibility." United States v. Cushing, 10 F.4th 1055, 1079 (10th Cir. 2021) (quoting United States v. Garcia, 635 F.3d 472, 476–77 (10th Cir. 2011)), cert. denied, 142 S. Ct. 813 (2022). As this Court has recognized, an expert may not simply tell the jury what result it should reach. Am. Fam. Mut. Ins. Co. v. Techtronic Indus. N. Am., Inc., No. CIV.A. 12-2609-KHV, 2014 WL 2196416, at *1–2 (D. Kan. May 27, 2014) (citing United States v. Simpson, 7 F.3d 186, 188 (10th Cir. 1993)). An expert's personal opinion as to the weight of evidence would invade the province of the jury. Id. Expert opinions that address matters that are equally within the jury's competence to understand and decide are not helpful and therefore inadmissible. Id.

It is the exclusive function of the jury to weigh the evidence and determine witness

credibility.  Erickson v. City of Lakewood, No. 19-CV-02613-PAB-NYW, 2021 WL 4438035, at *11 (D. Colo. Sept. 27, 2021) (citing United States v. Leach, 749 F.2d 592, 600 (10th Cir. 1984) and United States v. Samara, 643 F.2d 701, 705 (10th Cir. 1981)).  Accordingly, "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony."  United States v. Hill, 749 F.3d 1250, 1258 (10th Cir. 2014) (quoting United States v. Toledo, 985 F.2d 1462, 1470 (10th Cir. 1993)).  That said, expert testimony on the credibility of witnesses is not categorically excluded.  United States v. Benally, 541 F.3d 990, 994 (10th Cir. 2008).

At trial, one issue will be whether Golubski sexually assaulted Rose McIntyre in 1988, and whether her rejection motivated him to frame her son, Lamonte McIntyre, for murders that he did not commit.  Rose McIntyre will apparently testify that he did, and apparently no witness will testify to the contrary.[3]  Enter Robert Blake McConnell, a retired FBI agent who proposes to testify "to a reasonable degree of certainty"[4] that Rose McIntyre was "susceptible to providing a coerced false confession to Jim McCloskey or adopting a false memory as a result of their discussions."  Expert Report of Robert Blake McConnell at 14, attached as Exhibit C to Declaration Of Sona R. Shah In Support Of Plaintiffs' Motion To Exclude Testimony Of Robert Blake McConnell (Doc. #577-1) filed April 1, 2022.

I.      **Opinion That Rose McIntyre Was Susceptible To Providing A "False Confession"**

McConnell's first opinion, that in 2010, Rose McIntyre "was susceptible to providing a

---

[3]     In response to all questions about Rose McIntyre, Golubski has invoked his Fifth Amendment right not to incriminate himself and the Court is unaware of any witnesses to the alleged assault.

[4]     In this context, what constitutes a "reasonable degree of certainty" and whether that mantra establishes the threshold for admissibility remain unanswered questions in this case.  None of the parties have addressed either issue.

coerced false confession to Jim McCloskey" has little (if any) relevance to this case.[5] Considerations of unfair prejudice, confusing the issues, misleading the jury, undue delay and waste of time therefore counsel against its admission. Rule 403, Fed. R. Evid. Golubski essentially conceded this point at oral argument, and the Court need not address it further. The Court therefore finds that McConnell's opinion that "Rose McIntyre was susceptible to providing a coerced false confession to Jim McCloskey" is irrelevant, highly prejudicial and must be excluded under Rules 403 and 702, Fed. R. Evid.

## II.  Opinion That Rose McIntyre Was Susceptible To Adopting "False Memory" Of An Assault by Golubski

McConnell's second opinion is that Rose McIntyre "was susceptible to . . . adopting a false memory" of the alleged assault.[6] Expert Report at 14. McConnell bases his opinion on an eight-

---

[5] None of the parties theorize how such evidence might be relevant. If Rose McIntyre testifies that Golubski assaulted her, a prior consistent statement would not be helpful or relevant for purposes of impeachment. Furthermore, because nobody argues that Rose McIntyre recently fabricated her accusation, her disclosure to McCloskey would not be admissible as a prior consistent statement under Rule 801(d)(1)(B), Fed. R. Evid.

[6] In this regard, it is important to distinguish a false accusation from a false memory. This aspect of McConnell's opinion addresses the possibility that Rose McIntyre has a false memory of the assault, not that she is intentionally making a false accusation. A false accusation is typically motivated by hopes for gain (sympathy, compensation, eliminating competition, covering up a crime or exacting revenge). Expert Report at 7. According to McConnell, the Federal Bureau of Investigation has calculated that five per cent of all rape cases involve false or baseless allegations, and most false allegations of rape are made for a form of gain—primarily emotional. Expert Report at 11. These are precisely the type of explanations that a jury would be capable of resolving without expert testimony. United States v. Adams, 271 F.3d 1236, 1246 (10th Cir. 2001). In this regard, McConnell would be little more than a professionally-trained witness testifying that Rose McIntyre has lied about the assault—testimony which would encroach on the jury's exclusive function to make credibility determinations. United States v. Charley, 189 F.3d 1251, 1267 (10th Cir. 1999).

The Court is aware of McConnell's disclaimer: he will not opine that Rose McIntyre has lied about the assault, and by limiting his opinion to scientific factors about her risk of false memories, he is merely giving the jury the scientific tools they will need to evaluate her testimony. The Court must reject this narrow characterization of McConnell's opinion. As noted, 95 per cent of rape cases do not involve false allegations. As discussed in more detail below, McConnell's testimony about increased risk of a false accusation is not helpful and is highly prejudicial.

legged stool of factors which allegedly increased her risk of adopting a false memory: (1) dispositional risk factors associated with providing false information in investigative interviews; (2) situational risk factors associated with providing false information in investigative interviews; (3) contamination; (4) "potential" suggestive questioning; (5) her mental state; (6) her chronically stressful interactions with the Innocence Project; (7) her desire to help her son; and (8) her desire to alleviate feelings of guilt.

As to Leg One, dispositional risk factors, McConnell states that "[d]uring much of the investigation into the wrongful conviction of Lamonte McIntyre, Rose McIntyre was suffering from various forms of depression and anxiety," and that "her mental health symptoms—when combined with suggestive questioning/language and information contamination (providing information the [sic] Rose McIntyre did not otherwise know), **could** put her at a higher risk" for adopting a false memory of an assault by Golubski.  Expert Report at 9 (emphasis added).

As to Leg Two, situational risk factors, McConnell states that McCloskey told Rose McIntyre that Golubski "was widely considered to be a sexual deviant" and that because this information was new to her, it "could" have led her to realize that accusing Golubski of rape "would be important to her son's release" and that a false allegation of rape would be believable and justified.  Id. at 9.  McConnell opines that by giving Rose McIntyre this information about Golubski, McCloskey put Rose McIntyre "at a higher risk" for telling him what he wanted to hear.[7]  Id. at 10.

As to Leg Three, "contamination," McConnell again refers to McCloskey telling Rose McIntyre that Golubski "was widely considered to be a sexual deviant" and that other witnesses

---

[7] The parties' briefs do not explain why McCloskey would have wanted to hear that Golubski had sexually assaulted Rose McIntyre, or explain any motive for soliciting false accusations from her.

6

had claimed sexual misconduct by Golubski—information which Rose McIntyre did not otherwise have. This is not a separate factor, but a restatement of situational risk factors, i.e. Leg Two.

With reference to Leg Four, "potential suggestive questioning," McConnell again implicates McCloskey and his alleged interviewing techniques. McConnell opines that Rose McIntyre's mental state would make it more difficult for her to resist "potential suggestive questioning." He cites no evidence, however, of suggestive questioning. The record in fact suggests no reason to believe that McCloskey questioned Rose McIntyre about sexual misconduct by Golubski, let alone questioned her in a suggestive manner.[8]

As to Leg Five, Rose McIntyre's mental state, McConnell says that she suffered from "various forms of depression and anxiety." In support, he cites (1) attachments to a Social Security decision dated July 19, 1997; (2) psychiatric evaluations from Wyandotte Center for Community Behavioral Health dated April 13, 2010 and January 6, 2012; and (3) a neuropsychological

---

[8]   At his deposition, McCloskey testified as follows:

Q.   Can you describe the context in which Rose McIntyre told you that she was raped by Roger Golubski?

A.   Yes, I can. Rosy and I had developed a very close friendship with each other. . . we developed a rapport and a real trusting relationship. . . . So she said, "Jim, there's something I need to tell you and I'm really embarrassed by this, but you and Cheryl need to know this," and I said, "What is that, Rosy," and then in the privacy of her apartment, she relayed what is in the affidavit, the whole Golubski encounter that night back in 1988 with her boyfriend and what happened the next day in Golubski's office. That was it.

Deposition of James McCloskey at 87–89, attached as Exhibit 4 to Defendant Golubski's Response To Plaintiffs' Motion To Exclude Testimony Of Robert Blake McConnell (Doc. #593) filed April 15, 2022.

examination dated May 27, 2021 by George Woods, Jr., M.D.[9] McDonnell opines that in connection with suggestive questioning, contamination and chronic stress from her interactions with the Innocence Project, these mental health symptoms put Rose McIntyre "at a higher risk" for adopting a false memory. Expert Report at 9. The mental health documents do not appear to be part of the record. More importantly, this factor merely re-states the dispositional risk factors already set forth as Leg One.

As to Leg Six, Rose McIntyre's interactions with the Innocence Project as a chronic stressor, this factor is addressed as part of her overall mental health and is merely part of the dispositional risk factors identified as Leg One.

Finally, for Legs Seven and Eight, McConnell opines that Rose McIntyre was susceptible to providing a false memory because of her alleged desire to help her son and alleviate feelings of guilt. In evaluating her testimony, however, a jury is easily capable of understanding and evaluating such "risk factors." Expert testimony is not necessary to help them in that task.

Stripped of redundant commentary, multiplication of allegedly relevant factors and credibility issues on which expert testimony is not necessary, McConnell's eight-legged stool reveals itself as a one-legged stool and collapses of its own weight. Legs Two and Three are different ways of saying that McCloskey exposed Rose McIntyre to information about sexual misconduct by Golubski. Legs Seven and Eight deal with motives for false accusations (helping her son and alleviating her guilt). Expert testimony is not necessary and will not be helpful on these issues. Juries are superbly positioned to evaluate the credibility of witnesses and common sense equips them to evaluate the suggestive power of prejudicial information and human motives

---

[9] The mental health records to which McDonnell refers are not attached to his expert report or defendants' brief in opposition to the motion to exclude his testimony. The Court is unaware of their contents.

to lie. Vigorous cross-examination will be more helpful than expert testimony in considering these factors. The idea that people may lie when they have an incentive to do so is hardly beyond the comprehension of a layperson. Indeed, an expert is unnecessary where "fairly obvious and commonly understood issues of veracity" are at issue. Hill, 749 F.3d at 1262; see also United States v. DeLeon, No. CR 15-4268 JB, 2021 WL 4909981, at *20 (D.N.M. Oct. 21, 2021) (expert witness not allowed to tell jury who is lying and who is telling truth; "that is the jury's job"); Am. Fam. Mut. Ins. Co., 2014 WL 2196416, at *3 (issues within realm of common understanding and knowledge of average juror do not require expert testimony).

Leg Four (potentially suggestive questioning by McCloskey) has no support in the record. Expert testimony premised on its existence would be improper.

This leaves us with Legs One, Five and Six of McConnell's eight-legged stool, all of which posit in slightly different ways that Rose McIntyre had mental health issues which made her "susceptible to . . . adopting a false memory." Expert Report at 14. McConnell opines that the mental health issues "could" put her at higher risk. Id. at 9. He characterizes the increased risk as "significant." Id. at 12-13. He does not define "significant." At the hearing on plaintiffs' motion, defense counsel quantified McConnell's opinion that Rose McIntyre's susceptibility to adopting a false memory was not "minimal." McConnell himself did not include this characterization in his expert report. In any event, McConnell's opinion that the risk was "significant" and not minimal does not purport to quantify the degree to which Rose McIntyre was at increased risk of adopting a false memory because of mental health conditions. Id. at 14.

The problems with McConnell's opinion are manifold: (1) he has no expertise in

diagnosing false memory syndrome;[10] (2) his opinion that Rose McIntyre "could" be at higher risk of false memory is speculative; (3) he does not quantify the degree of excess risk from Rose McIntyre's mental health conditions;[11] (4) the potential for prejudice is vastly more problematic than in a typical case because Golubski apparently does not plan to testify and in even bringing up the subject of "false" memories, McConnell would be implicitly telling the jury that Golubski did not assault Rose McIntyre—even if Golubski would not be testifying under oath to his innocence, would not be subject to cross-examination and from his invocation of the Fifth Amendment, he could be subject to an adverse inference that he did assault Rose McIntyre.  In other words, the import of McConnell's opinion will be to portray Rose McIntyre as a liar and vouch for Golubski—who apparently cannot or will not testify on his own behalf—by channeling a theory that Rose

---

[10]   McConnell brings no special qualifications in diagnosing false memories and the methodology and opinions he offers are not applicable to the facts of the case.  McConnell is an experienced FBI investigator and polygrapher.  See McConnell Depo. at 17 ("My areas of expertise are in interviewing and interrogation.").  McConnell is not a clinician and never examined Rose McIntyre.  He has never conducted research on false confessions or false allegations for gain.  Id. at 21.  He does not consider himself an expert on false memories, id. at 22, has no firsthand experience with sexual assault victims having false memories, id. at 27, and has never conducted his own research on false memories, id.  In fact, this proceeding is the first case in which McConnell has been retained as an expert on false confessions, false allegations for gain or false memories.  Id. at 38.  Despite the shortage of demonstrated expertise on false memories, the risk that the jury would be swayed by his credentials is high.

[11]   McConnell Depo. at 73–74 (McConnell cannot quantify Ms. McIntyre's susceptibility to providing a coerced false confession or having a false memory); id. at 102 (same).  McConnell is not qualified to opine on the likelihood that McIntyre provided a false confession in this case.  See Myrick v. Husqvarna Pro. Prod., Inc., 508 F. Supp. 3d 846, 854 (D. Kan. 2020) ("An expert who possesses knowledge as to a general field but lacks specific knowledge does not necessarily assist the jury.").  Without some way to assess the degree to which Rose McIntyre is at risk of falsely accusing a stranger of rape, 12 years after the fact, what could a jury reasonably do with the information that McConnell proposes to provide?  Especially given that 95 per cent of rape victims apparently do not make false accusations of rape?  To conclude that Rose McIntyre falls into the five per cent of women who falsely claim to be rape victims, a jury would presumably need evidence more substantial than that "to a reasonable certainty," she "could" be at a higher risk.  McConnell's opinion is replete with statements regarding what "could" or may have occurred.  The Tenth Circuit has consistently excluded expert testimony that was based on speculation.  Lippe v. Howard, 287 F. Supp. 3d 1271, 1283 (W.D. Okla. 2018).

10

McIntyre's accusation is "false."

In summary, even if McConnell's testimony has some relevance, the risk of prejudice vastly outweighs any probative value. While McConnell is not qualified to opine on the credibility of Rose McIntyre's allegations or whether she is at risk for false memories, he is an experienced former FBI agent and polygrapher. The jury is likely to be unduly influenced by his opinion. See Adams, 271 F.3d at 1245 ("testimony of impressively qualified experts on the credibility of other witnesses is prejudicial, unduly influences the jury, and should be excluded under Rule 403").

### III.  Conclusion

For these reasons, and those well stated in Plaintiffs' Memorandum Of Law In Support Of Motion To Exclude Testimony Of Robert Blake McConnell (Doc. #577) and Plaintiffs' Reply Memorandum Of Law In Support Of Motion To Exclude Testimony Of Robert Blake McConnell (Doc. #620), and the reasons articulated by the Court at oral argument on May 23, 2022, the Court sustains plaintiffs' motion to exclude McConnell's testimony.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion To Exclude Testimony of Robert Blake McConnell (Doc. #576) filed April 1, 2022 is **SUSTAINED**.

Dated this 31st day of May, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge