IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAMONTE MCINTYRE and ) | |
| ROSE LEE MCINTYRE, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION |
| ) | |
| v. ) | No. 18-2545-KHV |
| ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE ) | |
| COUNTY AND KANSAS CITY, KANSAS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Lamonte McIntyre and Rose Lee McIntyre filed suit against the Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government"), Roger Golubski, Dennis Ware, James Brown, Clyde Blood, W.K. Smith and Daphne Halderman (as special administrator of the estates of James Michael Krstolich, Dennis Otto Barber and Steve Culp, who are deceased). Plaintiffs allege that defendants arrested, prosecuted and imprisoned Lamonte McIntyre for murders that he did not commit, and they bring various claims under 42 U.S.C § 1983 and state law.[1]  This matter is before the Court on <u>Defendant Roger Golubski's Motion For Summary Judgment</u> (Doc. #581) filed April 1, 2022. For reasons stated below, the Court sustains in part defendant's motion for summary judgment.[2]

---

[1] To avoid confusion, the Court refers to Lamonte McIntyre as "McIntyre" and his mother, Rose Lee McIntyre, as "Ms. McIntyre."

[2] To expedite a ruling on this motion, because this case is set for trial commencing October 17, 2022, the Court held oral argument on May 24, 2022 and communicated the reasons for its decision without attempting to draft a legal treatise or cite extensive case law. The law in this area is clear and the Court has taken into account the authorities which are cited in the parties' briefs, along with other authorities. If necessary for future proceedings, the Court may supplement this order with additional findings of fact or legal citations.

**Summary Judgment Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."

Id. at 251–52.

## **Factual Background**

Initially, the Court addresses the form of the parties' briefing and their compliance with D. Kan. Rule 56.1.  The parties have submitted lengthy memoranda—a total of 488 pages of facts and argument.  The factual sections of the parties' briefing encompass more than 400 pages which address 377 separate factual statements.  In the parties' responses to the opposing party's statement of facts, neither side has complied with the local rule on motions for summary judgment.[3]  The Court is therefore hesitant to dive too deeply into the futile exercise of addressing the parties' numerous arguments in the fact sections of their memoranda and attempting to distinguish disputed from undisputed facts, facts from inferences and facts from argument.  In any event, from the voluminous briefing on the motion and counsel's statements at the hearing, the parties presented two diametrically opposed version of the facts with supporting record evidence.  On this record, it is clear that Golubski's narrative can only be characterized as "factual" if it is tested against a narrow slice of the record evidence and if he—rather than plaintiffs—receives the benefit of all favorable inferences.

Fairly viewed in light of the relevant summary judgment standards, the record reveals

---

[3] See D. Kan. Rule 56.1(a) (factual section in supporting memorandum must include "concise" statement of material facts); (b)(1) (factual section in opposition memorandum must include "concise" statement of material facts); (b)(2) (additional facts in opposition memorandum also shall comply with subsection (a)); (c) (in reply brief, moving party must respond to additional material facts in manner prescribed in subsection (b)(1)); (e) (all responses must fairly meet substance of matter asserted); see also Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (in responding to summary judgment facts, counsel should challenge sufficiency of evidence, not admissibility based on objections such as lack of materiality or relevance); Black & Veatch Corp. v. Aspen Ins. (UK) Ltd., No. 12-2350-SAC, 2016 WL 6804894, at *2 (D. Kan. Nov. 17, 2016) (under D. Kan. Rule 56.1(e), party should not dispute fact because it disputes relevance or force of legal argument for which fact may be offered), vacated on other grounds, 882 F.3d 952 (10th Cir. 2018).

critical issues of material fact which defeat Golubski's motion. Stated most generally, these issues include (1) whether—independent of individual wrongdoing—defendants had probable cause to arrest, confine and prosecute McIntyre; (2) whether defendants fabricated inculpatory evidence and intentionally withheld exculpatory evidence; (3) whether defendants proximately caused McIntyre's wrongful prosecution and conviction; (4) whether Golubski violated plaintiffs' rights to familial association by framing McIntyre for murders that he did not commit and (5) whether Golubski conspired with other officers to wrongfully arrest, confine and prosecute McIntyre. This list is by no means exhaustive, and no fair reading of the summary judgment record would entitle Golubski to summary judgment on any of plaintiffs' claims in their entirety.

McIntyre claims as follows: (1) under Section 1983, Count 1 asserts Fourth and Fourteenth Amendment malicious prosecution claims against Golubski, Krstolich, Ware, Brown, Barber, Culp and Smith; (2) under Section 1983, Count 2 asserts Fourth and Fourteenth Amendment evidence fabrication claims against Golubski, Krstolich, Ware, Brown and Barber and violations of Brady v. Maryland, 373 U.S. 83 (1963) against Golubski, Krstolich and Ware; (3) under Section 1983, Count 3 asserts First and Fourteenth Amendment familial association claims against Golubski; (4) under Section 1983, Count 4 asserts Fourth and Fourteenth Amendment failure to intervene claims against Krstolich, Ware and Culp; (5) under Section 1983, Count 5 asserts First, Fourth, Fifth and Fourteenth Amendment conspiracy claims against Golubski, Krstolich, Ware, Barber and Culp; (6) under Section 1983, Count 6 asserts Fourth and Fourteenth Amendment supervisory liability claims against Culp; (7) under Section 1983, Count 7 asserts claims under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) against the Unified Government; (8) under state law, Count 8 asserts malicious prosecution claims against Golubski, Krstolich, Ware, Brown, Barber, Culp and Smith; and (9) under state law, Count 9 asserts

respondeat superior liability against Unified Government for the state-level malicious prosecution claims.  See Pretrial Order (Doc. #562) filed March 17, 2022 at 40–41.[4]  Ms. McIntyre joins in Count 3 (loss of familial association) and Count 7 (Monell liability).

## Analysis

I.  **Probable Cause To Arrest McIntyre (Counts 1 and 8)**

In Count 1, McIntyre asserts claims for malicious prosecution under the Fourth and Fourteenth Amendments, alleging that Golubski fabricated inculpatory evidence and intentionally withheld and misrepresented exculpatory facts that would have vitiated probable cause to believe that he committed the murders.  In Count 8, McIntyre asserts claims for malicious prosecution under state law.  Defendant argues that he is entitled to summary judgment on plaintiff's malicious prosecution claims because the officers had sufficient probable cause, or at least a reasonable official would have believed that probable cause existed, to arrest, detain and prosecute McIntyre.

An essential element of a malicious prosecution claim under both federal and state law is that probable cause did not support the original arrest, continued confinement or prosecution.  Montoya v. Vigil, 898 F.3d 1056, 1066 (10th Cir. 2018); Lindenman v. Umscheid, 255 Kan. 610, 624, 875 P.2d 964, 974 (1994).  Probable cause exists if "the facts and circumstances are sufficient to warrant a person of reasonable caution to believe" that an individual committed a crime.  McCarty v. Gilchrist, 646 F.3d 1281, 1286 (10th Cir. 2011); see Mink v. Knox, 613 F.3d 995, 1003 (10th Cir. 2010).  If evidence is falsified or withheld, "the probable cause determination is

---

[4]  In the Pretrial Order (Doc. #562), plaintiffs also assert a failure to intervene claim (Count 4) against Barber, a fabrication claim (Count 2) against Smith and a Brady claim (Count 2) against Smith, Barber and Brown.  On June 6, 2022, the parties stipulated to the dismissal of these claims.  See Stipulation Of Dismissal (Doc. #665) filed June 6, 2022 (Barber); Stipulation Of Dismissal (Doc. #666) filed June 6, 2022 (Smith); Stipulation Of Dismissal (Doc. #665) filed June 6, 2022 (Brown).

made by considering whether, excluding the falsified inculpatory evidence or including the withheld exculpatory evidence, probable cause existed to prosecute." McCarty, 646 F.3d at 1286. In other words, the Court asks whether—considering the exculpatory evidence and ignoring the falsified evidence—a person of reasonable caution would believe that the individual committed a crime. See id.

Golubski notes that throughout the years, Niko Quinn and Ruby Mitchell gave inconsistent statements about his influence on their identifications and whether McIntyre was the shooter. Even so, McIntyre has presented evidence that (1) Golubski knew that Mitchell did not have a vantage point to see the shooter's face; (2) Mitchell's identification of "Lamont" who dated her niece was not McIntyre; (3) Mitchell identified the shooter as an individual who was five feet six or seven inches with French braids but Golubski and other officers knew that McIntyre was five feet eleven inches and before the shooting, had his hair cut near his scalp; and (4) both Niko Quinn and Stacy Quinn identified someone other than McIntyre as the shooter and provided detailed evidence of that individual's motive and past assaults on the victim. Viewing the evidence in a light most favorable to plaintiff, a reasonable jury could find that based on this exculpatory evidence and ignoring the evidence that Golubski falsified, a reasonable officer would not believe that probable cause existed to arrest, detain and prosecute McIntyre. The Court therefore overrules defendant's motion for summary judgment on this ground.

## II.     Causation (Counts 1, 2, 3, 5 and 8)

Golubski argues that he is entitled to summary judgment on various counts because plaintiff has not presented evidence that he caused McIntyre's prosecution. Specifically, defendant argues that the chain of causation was broken because (1) Terra Morehead, the prosecutor, coerced Niko Quinn to identify McIntyre and (2) at trial, months after the alleged wrongdoing, Mitchell

and Niko Quinn still identified McIntyre as the perpetrator.

Under Section 1983, a government actor is liable if he "set in motion a series of events" that he knew or reasonably should have known would cause others to deprive plaintiff of his constitutional rights. Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012) (citations omitted); see also Russell v. May, 306 Kan. 1058, 1078, 400 P.3d 647, 662 (2017) (if first actor could reasonably foresee intervening cause, his negligence may be considered proximate cause, notwithstanding intervening cause). In other words, defendant is liable for the harm that his conduct proximately causes. Martinez, 697 F.3d at 1255. Accordingly, an officer can be liable for the violation of plaintiff's constitutional rights if the violation would not have occurred but for defendant's conduct and if no unforeseeable intervening acts superseded defendant's liability. Id. The fact that people other than defendant "may have concurrently caused the harm does not change the outcome as to [defendant]." Id. (citations omitted). Causation generally is a question of fact for the jury. Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 778 (10th Cir. 2013).

Golubski has presented evidence that Morehead coerced Niko Quinn to continue to identify McIntyre as the perpetrator and that at trial, Mitchell and Niko Quinn re-identified McIntyre. Even so, plaintiff has presented evidence that Golubski never revealed his misconduct to Morehead and that his misconduct tainted the in-court identifications by Mitchell and Niko Quinn. This evidence, combined with the natural inclination of a witness not to change his or her story, creates a genuine issue of material fact whether Golubski's misconduct caused McIntyre's prosecution and conviction. The Court therefore overrules defendant's motion for summary judgment on this ground.

### III.    Adequacy Of State Law Remedies – 14th Amendment Claims (Counts 1, 2 and 3)

In a single sentence, Golubski argues that because Kansas provides adequate state

remedies, he is entitled to summary judgment on all of McIntyre's Fourteenth Amendment claims. See Defendant Roger Golubski's Memorandum In Support Of His Motion For Summary Judgment (Doc. #582) filed April 1, 2022 at 45–46. Golubski does not address the Court's prior ruling on this same issue. See Memorandum And Order (Doc. #190) filed March 3, 2020 at 17–19. For substantially the reasons stated in the order on Golubski's motion to dismiss, the Court overrules defendant's motion for summary judgment on this ground. See id.

### IV.     Fourth Amendment Claim For Malicious Prosecution (Count 1)

Golubski argues that McIntyre cannot assert a Fourth Amendment claim under 42 U.S.C. § 1983 for malicious prosecution. McIntyre correctly notes that the Supreme Court has explicitly recognized such a claim. See Thompson v. Clark, 142 S. Ct. 1332 (2022). In reply, defendant does not dispute that plaintiff's Fourth Amendment claim is viable under Thompson. The Court therefore overrules defendant's motion for summary judgment on this ground.

### V.     Due Process Claim Based On Fabrication Of Evidence (Count 2)

Golubski argues that he is entitled to qualified immunity on McIntyre's due process claim based on fabrication of evidence because (1) McIntyre has not shown that Golubski fabricated evidence and (2) in 1994, the law was not clearly established that Golubski's conduct constituted fabrication. In support of both arguments, Golubski argues that McIntyre has not presented evidence that Golubski knew that the evidence which incriminated him was false.

To establish a due process violation based on fabrication of evidence, plaintiff must show that Golubski knowingly fabricated evidence, i.e. that he necessarily knew that the evidence was false. Truman v. Orem City, 1 F.4th 1227, 1236 (10th Cir. 2021). Golubski argues that at most, McIntyre has presented evidence of coercion, not fabrication. Viewed in a light most favorable to McIntyre, however, a reasonable jury could infer that Golubski fabricated a narrative which

implicated McIntyre and coerced witnesses to give statements that corroborated a narrative that Golubski knew was false.  The Court cannot come close to conclusively resolving this issue in Golubski's favor, or find that McIntyre's case is devoid of evidence which supports his claim that Golubski knowingly fabricated false evidence against McIntyre.  McIntyre has presented sufficient evidence to create a genuine issue of material fact whether Golubski violated his due process rights by fabrication of evidence.

Golubski asserts that in 1994, no due process right prohibiting fabrication of evidence was clearly established.  A constitutional right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Estate of Ceballos v. Husk, 919 F.3d 1204, 1215 (10th Cir. 2019) (citations omitted).  The Supreme Court has warned against defining a clearly established right "at a high level of generality" and that the law must be "particularized to the facts of the case," but this does not mean that a right is only clearly established if a case exists that is factually identical.  Id. (citations omitted).  In other words, the "clearly established" prong does not require plaintiff to show that "the very act in question previously was held unlawful."  Weigel v. Broad, 544 F.3d 1143, 1153 (10th Cir. 2008) (citations omitted).  This makes good sense: if a right is only clearly established when a prior case presents identical facts, qualified immunity would apply whenever a different fact pattern arises.  Under this standard, officials would always be entitled to qualified immunity so long as their actions— no matter how outrageous or harmful—were sufficiently novel.  The Tenth Circuit has therefore explained that the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  Stetzel v. Holubek, 661 F. App'x 920, 922 (10th Cir. 2016); see Duran v. Sirgedas, 240 F. App'x 104, 127 (7th Cir.) ("It would create perverse incentives indeed if a qualified immunity defense

could succeed against those types of claims that have not previously arisen because the behavior alleged is so egregious that no like case is on the books.") (citations omitted), vacated in part on reh'g (July 17, 2007).

In 1994, the law was clearly established that Golubski's conduct—when the evidence is viewed in the light most favorable to plaintiff—constituted fabrication. See Truman, 1 F.4th at 1236 (long recognized that individuals have right not to be deprived of liberty as result of fabrication of evidence by government officer) (citing Pyle v. Kansas, 317 U.S. 213, 216 (1942)); see also Pierce v. Gilchrist, 359 F.3d 1279, 1299 (10th Cir. 2004) ("Long before the events in question, the Supreme Court held that a defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction") (citing Pyle, 317 U.S. at 216; id. ("Even if there were no case directly on point imposing liability on officials whose falsification of evidence occurred at the post-arrest stage, an official in [defendant's] position could not have labored under any misapprehension that the knowing or reckless falsification and omission of evidence was objectively reasonable."). The Court therefore overrules Golubski's motion for summary judgment on McIntyre's due process claim based on fabrication of evidence.

**VI.   Due Process Claims Based On Withholding Evidence**

Golubski argues that he is entitled to qualified immunity on McIntyre's due process claim based on violations of obligations set forth in Brady. Specifically, Golubski argues that in 1994, the law did not clearly establish that (1) an officer—as opposed to the prosecutor—had an affirmative duty to disclose Brady material or (2) an officer had a duty to disclose his own misconduct (related or unrelated to the subject investigation) or otherwise inadmissible evidence.

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to

guilt or to punishment." 373 U.S. at 87. To succeed on a Brady claim, plaintiff must show (1) the evidence at issue is favorable to him either because it is exculpatory, or because it is impeaching, (2) the state suppressed that evidence, either willfully or inadvertently and (3) he was prejudiced. Powell v. Miller, 104 F. Supp. 3d 1298, 1309 (W.D. Okla. 2015).

Golubski argues that in 1994, the law was not clearly established that an officer—as opposed to the prosecutor—had an affirmative duty to disclose Brady material. Since well before 1986, however, the law has established that due process prohibits the state—including one of its investigators—from withholding exculpatory evidence. Pierce, 359 F.3d at 1299 (long before 1986, Supreme Court held that "defendant's due process rights are implicated when the state . . . withholds exculpatory evidence from the defense.") (citing Newsome v. McCabe, 256 F.3d 747, 752–53 (7th Cir. 2001) for proposition that "Brady clearly established that officers could not withhold information that plaintiff's fingerprints did not match those found at the crime scene or that officers influenced witnesses to pick plaintiff out of police lineup"); see also United States v. Buchanan, 891 F.2d 1436, 1442 (10th Cir. 1989) (because investigative officers are part of prosecution, taint on trial no less if they, rather than prosecutors, were guilty of nondisclosure; knowledge by police or investigators therefore imputed to prosecution under Brady).

Next, Golubski argues that in 1994, the law was not clearly established that an officer had a duty to disclose his own misconduct (related or unrelated to the subject investigation) or otherwise inadmissible evidence. In 1994, Brady unquestionably required the prosecution to disclose an officer's misconduct and other impeachment evidence. See Ballinger v. Kerby, 3 F.3d 1371, 1376 (10th Cir. 1993) (Brady violation based on suppression of impeachment evidence); Bowen v. Maynard, 799 F.2d 593, 613 (10th Cir. 1986) (Brady violation based on suppression of evidence which impeached identifications of eyewitnesses, evidence pointing to a credible

alternate suspect, as well as evidence which "raises serious questions about the manner, quality, and thoroughness of the [police] investigation"); see also Buchanan, 891 F.2d at 1443–45 (evidence of sexual relationship between investigating officer and witness, known only to officer, was impeachment that should have been disclosed). Golubski argues that Ballinger and Bowen do not address a police officer's specific role in the Brady violation and Buchanan did not address whether the individual officer had a duty to disclose as opposed to the prosecution's duty to ensure that officers turn over evidence against them. Even so, Brady was decided in 1963, and it "clearly established that officers could not withhold information that plaintiff's fingerprints did not match those found at the crime scene or that officers influenced witnesses to pick plaintiff out of police lineup." Pierce, 359 F.3d at 1299 (citing Newsome, 256 F.3d at 752–53). Accordingly, in 1994, a reasonable official in Golubski's position could not have labored under any misapprehension that the knowing suppression of exculpatory and impeachment evidence involving his prior misconduct (both related and unrelated to the investigation) violated McIntyre's due process rights. See id. ("Even if there were no case directly on point imposing liability on officials whose falsification of evidence occurred at the post-arrest stage, an official in [defendant's] position could not have labored under any misapprehension that the knowing or reckless falsification and omission of evidence was objectively reasonable."). The Court therefore overrules defendant's motion for summary judgment claim on McIntyre's due process claims based on withholding evidence.

### VII.    Familial Association Claims (Count 3)

Under Section 1983, McIntyre and Ms. McIntyre assert First and Fourteenth Amendment familial association claims against Golubski. Defendant argues that he is entitled to qualified immunity on plaintiffs' familial association claims.

> On defendant's motion to dismiss, the Court stated as follows:
>
> > In 1994, the right to familial association was sufficiently clear that every reasonable official would have understood that what Golubski was doing violates that right. By 1985, the Tenth Circuit had made clear that intentionally and unlawfully interfering with familial relations is unconstitutional. See Trujillo, 768 F.2d at 1190. According to plaintiffs' allegations, which the Court accepts as true for purposes of the motion to dismiss, Golubski sexually assaulted Rose and continually harassed her, pressuring her for a long-term relationship and offering to pay for sex. Rose repeatedly rejected his advances, changed her phone number and moved to a new home to hide from Golubski. To punish Rose for her rejections, Golubski took away her son by framing him for murder—coercing identifications, fabricating police reports and suppressing exculpatory evidence. Golubski's plot succeeded: Lamonte was wrongfully convicted and spent 23 years in prison. As a result, Rose suffered extreme emotional and psychological devastation.
> >
> > Golubski is correct that in 1994, no Tenth Circuit court had held that an officer violates the clearly established right to familial association by framing a son for murder in retaliation for the mother's rejection of sexual advances. But every reasonable officer would have understood that this egregious conduct violates that right.
>
> Memorandum And Order (Doc. #190) at 25.

Golubski first argues that plaintiffs cannot assert a First Amendment claim for loss of familial association. Golubski did not raise this issue in his motion to dismiss. Familial association claims are "grounded in the shocks-the-conscience approach to substantive due process claims challenging executive action." Halley v. Huckaby, 902 F.3d 1136, 1155 (10th Cir. 2018); see also Thomas v. Kaven, 765 F.3d 1183, 1196 (10th Cir. 2014) (familial association claim grounded in "substantive due process"); id. at 1190 n.4 (noting that plaintiffs also brought First Amendment associational claim, but district court dismissed it without objection); Griffin v. Strong, 983 F.2d 1544, 1547 (10th Cir. 1993) (familial right of association properly based on concept of liberty in Fourteenth Amendment). In their response, plaintiffs do not dispute that their familial association claims arise only under the Fourteenth Amendment. The Court therefore sustains defendant's motion for summary judgment on plaintiffs' First Amendment claim for loss of familial

association.

Defendant next argues that in 1994, the Tenth Circuit had not made clear that the right to familial association protects against the wrongful incarceration of a child or that any such right applies to both parent and child. Defendant does not address the Court's reasoning in overruling his motion to dismiss on substantially the same issues. See Defendant Roger Golubski's Memorandum In Support Of His Motion For Summary Judgment (Doc. #582) at 57–61. Plaintiffs have presented evidence that after Ms. McIntyre rejected Golubski's sexual advances, he sought to punish her by framing McIntyre for the murders of Doniel Quinn and Donald Ewing. At this stage, viewing the evidence in a light most favorable to plaintiffs, a jury could reasonably infer that Golubski intended to interfere with the familial association rights of both McIntyre and his mother. For substantially the reasons stated in the Court's order on defendants' motions to dismiss, every reasonable officer would have understood that Golubski's egregious conduct violated the rights to familial association of McIntyre and his mother.[5]

---

[5] Defendant argues that even if plaintiffs' rights to familial association were well established in 1994, the law was not clearly established that any such right extended to a 17-year old child who was mature and competent enough to stand trial as an adult. Defendant cites authorities which suggest that the right to familial association does not extend to adult children unless they are unemancipated. See McCurdy v. Dodd, 352 F.3d 820, 830 (3d Cir. 2003); Butera v. D.C., 235 F.3d 637, 654 (D.C. Cir. 2001) (no claim of constitutional right to companionship of 31–year–old son who had moved out of parent's house and was married). Defendant ignores the fact that adulthood ordinarily is established by reference to the presumed age of majority, which is 18 in Kansas. See McCurdy, 352 F.3d at 830 ("in some (probably rare) cases, the presumption of adulthood may be rebutted by clear and convincing evidence of lack of emancipation" after age of majority). Because officers arrested McIntyre when he was 17 and living at his mother's house, he presumably was unemancipated. Golubski has presented no evidence which establishes as a matter of law that McIntyre was not a child for the purposes of a familial association claim.

Golubski argues that even if McIntyre had a right to familial association with his mother, it was not clearly established in 1994 that any such right would continue beyond his eighteenth birthday. At trial, Golubski may be able to establish as a factual matter that based on McIntyre's relationship with his mother, McIntyre cannot recover damages beyond the age of 18. Even so, Golubski does not explain how any such limitation on damages extinguishes McIntyre's claim in its entirety.

Defendant cites Reasonover v. St. Louis County, 447 F.3d 569 (8th Cir. 2006) for the proposition that even in 2006 a police officer would not be on notice that the right to familial association could be violated by wrongfully incarcerating a family member. In Reasonover, the Eighth Circuit affirmed the district court's order which granted summary judgment for defendants on a familial association claim because (1) plaintiffs presented no evidence that defendants intended to interfere with the familial relationship between a wrongfully convicted individual and her daughter and (2) neither the Supreme Court nor the Eighth Circuit had clearly held that wrongful prosecution and incarceration of a family member violates a right to familial association. 447 F.3d at 585. Here, as explained above, a reasonable jury could infer from Golubski's conduct that he intended to interfere with the familial association rights of both McIntyre and his mother. Reasonover did not directly address the viability of a familial association claim where an officer procures a wrongful conviction of one family member with the specific intent to punish another family member who has rejected the officer's sexual advances. In 1994, it was established that conduct of such an egregious nature would violate the rights to familial association of both the wrongfully convicted individual and his family member.[6] See Trujillo, 768 F.2d at 1190 (in 1985, clarifying that intentionally and unlawfully interfering with familial relations is unconstitutional); see also Stetzel, 661 F. App'x at 922 (the "more obviously egregious the conduct in light of

---

[6] In passing, defendant argues that the Court should dismiss McIntyre's claim for loss of familial association because he has an adequate remedy under Section 1983 for Fourth Amendment violations. See Defendant Roger Golubski's Memorandum In Support Of His Motion For Summary Judgment (Doc. #582) at 60 (citing Manuel v. City of Joliet, Ill., 137 S. Ct. 911 (2017)). In Manuel, the Supreme Court held that the Fourth Amendment—not the Fourteenth Amendment—governs a Section 1983 claim for unlawful pretrial detention even beyond the start of legal process. 137 S. Ct. at 919–20. Manuel did not address whether Section 1983 claims which assert violations of rights beyond unlawful pretrial detention—such as loss of familial association—are limited to the Fourth Amendment. Absent explanation why the Court should extend Manuel to bar McIntyre's claim for loss of familial association which alleges more than unlawful pretrial detention, the Court must overrule defendant's argument.

prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation"). The Court therefore overrules Golubski's motion for summary judgment on plaintiffs' Fourteenth Amendment claim for loss of familial association.

## VIII. Conspiracy Claim (Count 5)

In Count 5, McIntyre asserts conspiracy, alleging that Golubski—along with other defendants—acted in concert to deprive him of rights under the Fourth, Fifth and Fourteenth Amendments to be free from unreasonable searches and seizures, malicious prosecution, coercion, deprivation of liberty without due process of law and to a fair trial. Golubski argues that he is entitled to qualified immunity on McIntyre's conspiracy claims because (1) McIntyre has not established a constitutional violation and (2) McIntyre has not raised a genuine issue of material fact whether Golubski agreed with others to violate his constitutional rights.

To succeed on a conspiracy claim under Section 1983, McIntyre must show (1) an actual deprivation of a constitutional right, (2) a combination of two or more persons acting in concert and (3) a meeting of the minds, an agreement among defendants or a general conspiratorial objective. Brooks v. Gaenzle, 614 F.3d 1213, 1227–28 (10th Cir. 2010), abrogated on other grounds by Torres v. Madrid, 141 S. Ct. 989 (2021). Because direct evidence of an agreement rarely is available, a plaintiff can rely solely on circumstantial evidence to establish a conspiracy. Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990). Proof of an agreement among defendants need not be express. Frasier v. Evans, 992 F.3d 1003, 1025 (10th Cir. 2021). Parallel action may or may not indicate an agreement to act in concert. Id.

For substantially the reasons stated above, McIntyre has raised a genuine issue of material fact whether he suffered an actual deprivation of a constitutional right. As to Golubski's agreement with others, plaintiff has presented evidence that several officers worked in tandem with Golubski

to create false evidence, hide exculpatory evidence and not investigate the true perpetrator of the murders, all in a successful attempt to deprive McIntyre of his constitutional rights. Specifically, plaintiff has presented evidence that (1) Culp assigned the case to Smith and Golubski, a non-homicide detective, in the interest of closing the case quickly; (2) Ware and Golubski used suggestion and coercion during a photo identification procedure with Niko Quinn; (3) Golubski created a report on the improper identification by Quinn which omits his and Ware's suggestion; (4) Ware, Smith and all detectives on the case ignored evidence that the homicides were drug-motivated; (5) Golubski and Krstolich failed to compile photos and a composite which matched Ruby Mitchell's description of the shooter; (6) Golubski and Krstolich used suggestion during a photo identification procedure with Mitchell; (7) Golubski and Krstolich fed Mitchell the last name "McIntyre;" (8) all officers failed to interview Mitchell's niece in a timely manner; (9) Golubski and other officers failed to document any encounters with Stacy Quinn; (10) all officers failed to investigate McIntyre's alibi that he had placed calls to a cab company; (11) Brown, Barber and Golubski jointly fabricated inconsistent alibi statements by McIntyre and Ms. McIntyre; (12) all officers failed to conduct basic forensic testing; (13) Golubski participated with Barber in fabricating a false statement from Ms. McIntyre to undermine McIntyre's truthful alibi; (14) Golubski recorded a statement of Barber falsely alleging that Ms. McIntyre had made a "totally unsolicited" statement suggesting both that she knew McIntyre was guilty of the murders and that she lied about his alibi to protect him; and (15) Golubski reported Barber's false statements in his report and represented to the prosecutor that "inconsistent alibis" existed, bolstering the evidence against McIntyre. Viewing the circumstantial evidence in a light most favorable to McIntyre, a reasonable jury could find a conspiratorial agreement. See Frasier, 992 F.3d at 1025 (proof of agreement need not be express); Snell, 920 F.2d at 702 (plaintiff can

establish conspiracy based solely on circumstantial evidence). The Court therefore overrules Golubski's motion for summary judgment on McIntyre's conspiracy claim.

**IT IS THEREFORE ORDERED** that <u>Defendant Roger Golubski's Motion For Summary Judgment</u> (Doc. #581) filed April 1, 2022 is **SUSTAINED in part. The Court sustains defendant's motion as to plaintiff's First Amendment claim for loss of familial association. Defendant's motion is otherwise overruled.**

Dated this 9th day of June, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
