**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| LAMONTE MCINTYRE and | ) | |
| ROSE LEE MCINTYRE, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 18-2545-KHV |
| | ) | |
| UNIFIED GOVERNMENT OF WYANDOTTE | ) | |
| COUNTY AND KANSAS CITY, KANSAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Lamonte McIntyre and Rose Lee McIntyre filed suit against the Unified Government of Wyandotte County and Kansas City, Kansas ("Unified Government"), Roger Golubski, Dennis Ware, James Brown, Clyde Blood, W.K. Smith and Daphne Halderman (as special administrator of the estates of James Michael Krstolich, Dennis Otto Barber and Steve Culp, who are deceased). Plaintiffs allege that defendants arrested, prosecuted and imprisoned Lamonte McIntyre for murders that he did not commit, and they bring various claims under 42 U.S.C § 1983 and state law.[1] This matter is before the Court on the <u>Defendant Officers' Motion For Summary Judgment</u> (Doc. #574) filed April 1, 2022. For reasons stated below, the Court overrules defendants' motion for summary judgment.[2]

---

[1]    To avoid confusion, the Court refers to Lamonte McIntyre as "McIntyre" and his mother, Rose Lee McIntyre, as "Ms. McIntyre."

[2]    To expedite a ruling on this motion, because this case is set for trial commencing October 17, 2022, the Court held oral argument on May 24, 2022 and communicated the reasons for its decision as to all defendants without attempting to draft a legal treatise or cite extensive case law. The law in this area is clear and the Court has taken into account the authorities which are cited in the parties' briefs, along with other authorities. If necessary for future proceedings, the Court may supplement this order with additional findings of fact or legal citations.

## Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry this burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

In applying these standards, the Court views the factual record in the light most favorable to the party opposing the motion for summary judgment. Dewitt v. Sw. Bell Tel. Co., 845 F.3d 1299, 1306 (10th Cir. 2018). The Court may grant summary judgment if the nonmoving party's evidence is merely colorable or not significantly probative. Liberty Lobby, 477 U.S. at 250–51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."

Id. at 251–52.

## **Factual Background**

Initially, the Court addresses the form of the parties' briefing and their compliance with D. Kan. Rule 56.1. The parties have submitted lengthy memoranda—a total of 523 pages of facts and argument. The factual sections of the parties' briefing encompass more than 400 pages which address 454 separate factual statements. In the parties' responses to the opposing party's statement of facts, neither side has complied with the local rule on motions for summary judgment.[3] The Court is therefore hesitant to dive too deeply into the futile exercise of addressing the parties' numerous arguments in the fact sections of their memoranda and attempting to distinguish disputed from undisputed facts, facts from inferences and facts from argument. In any event, from the voluminous briefing on the motion and counsel's statements at the hearing, the parties presented two diametrically opposed version of the facts with supporting record evidence.

Fairly viewed in light of the relevant summary judgment standards, the record reveals critical issues of material fact which defeat defendants' motion. Stated most generally, these issues include (1) whether—independent of individual wrongdoing—defendants had probable cause to arrest, confine and prosecute McIntyre; (2) whether any individual defendant acted with malice

---

[3]        See D. Kan. Rule 56.1(a) (factual section in supporting memorandum must include "concise" statement of material facts); (b)(1) (factual section in opposition memorandum must include "concise" statement of material facts); (b)(2) (additional facts in opposition memorandum also shall comply with subsection (a)); (c) (in reply brief, moving party must respond to additional material facts in manner prescribed in subsection (b)(1)); (e) (all responses must fairly meet substance of matter asserted); see also Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (in responding to summary judgment facts, counsel should challenge sufficiency of evidence, not admissibility based on objections such as lack of materiality or relevance); Black & Veatch Corp. v. Aspen Ins. (UK) Ltd., No. 12-2350-SAC, 2016 WL 6804894, at *2 (D. Kan. Nov. 17, 2016) (under D. Kan. Rule 56.1(e), party should not dispute fact because it disputes relevance or force of legal argument for which fact may be offered), vacated on other grounds, 882 F.3d 952 (10th Cir. 2018).

and caused McIntyre's wrongful prosecution; (3) whether defendants fabricated inculpatory evidence and intentionally withheld exculpatory evidence; (4) whether individual defendants knew of Golubski's wrongful conduct yet failed to intervene; (5) whether officers conspired with each other to wrongfully arrest, confine and prosecute McIntyre; and (6) whether an affirmative link exists between the underlying constitutional violations and Culp's failure to supervise and implied approval of the investigative methods. This list is by no means exhaustive. No fair reading of the summary judgment record would entitle defendants to summary judgment on McIntyre's substantive claims.

McIntyre brings various federal claims under Section 1983: (1) Count 1 asserts Fourth and Fourteenth Amendment malicious prosecution claims against Golubski, Krstolich, Ware, Brown, Barber, Culp and Smith; (2) Count 2 asserts Fourth and Fourteenth Amendment evidence fabrication claims against Golubski, Krstolich, Ware, Brown and Barber and violations of Brady v. Maryland, 373 U.S. 83 (1963) against Golubski, Krstolich and Ware; (3) Count 3 asserts First and Fourteenth Amendment familial association claims against Golubski; (4) Count 4 asserts Fourth and Fourteenth Amendment failure to intervene claims against Krstolich, Ware and Culp; (5) Count 5 asserts First, Fourth, Fifth and Fourteenth Amendment conspiracy claims against Golubski, Krstolich, Ware, Barber and Culp; (6) Count 6 asserts Fourth and Fourteenth Amendment supervisory liability claims against Culp; and (7) Count 7 asserts claims under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) against the Unified Government. McIntyre also brings two state law claims: (1) Count 8 asserts malicious prosecution claims against Golubski, Krstolich, Ware, Brown, Barber, Culp and Smith; and (2) Count 9 asserts respondeat superior liability against the Unified Government for the state malicious prosecution

claims.  See Pretrial Order (Doc. #562) filed March 17, 2022 at 40–41.[4]  Ms. McIntyre joins in Count 3 (federal loss of familial association claim) and Count 7 (federal Monell liability claim).

**Analysis**

**I.      Defendants' Arguments That The Court Addressed On Motions To Dismiss**

Defendants argue that (1) the statute of limitations bars McIntyre's Section 1983 claims (Counts 1, 2, 4, 5 and 6) that are based on the Fourth Amendment, Defendant Officers' Memorandum In Support Of Motion For Summary Judgment (Doc. #575) filed April 1, 2022 at 26–27; (2) because Kansas provides adequate state remedies, defendants are entitled to summary judgment on McIntyre's Section 1983 claims (Counts 1, 2, 4, 5 and 6) that are based on the Fourteenth Amendment, id. at 27–29; (3) McIntyre cannot maintain a claim for evidence fabrication or Brady violations separate from his malicious prosecution claims, id. at 39–40; (4) the statute of limitations bars McIntyre's Section 1983 claims for failure to intervene, conspiracy and supervisory liability, id. at 44–45; and (5) defendants are entitled to discretionary function immunity for McIntyre's state law malicious prosecution claim, id. at 52–55.  In ruling on defendants' motions to dismiss, the Court rejected each of these arguments as a matter of law. Memorandum And Order (Doc. #190) filed March 3, 2020 at 13–20, 31–32, 37–38, 47, 53, 57–58, 62–63.  McIntyre argues that the Court should reject these arguments for the reasons stated in the order on defendants' motions to dismiss.  For reasons explained below, the Court agrees.

Defendants' attempt to reassert arguments which the Court has previously rejected is

---

[4]      In the Pretrial Order (Doc. #562), plaintiffs also asserted a failure to intervene claim (Count 4) against Barber, a fabrication claim (Count 2) against Smith and a Brady claim (Count 2) against Smith, Barber and Brown.  On June 6, 2022, the parties stipulated to dismiss these claims. See Stipulation Of Dismissal (Doc. #665) filed June 6, 2022 (Barber); Stipulation Of Dismissal (Doc. #666) filed June 6, 2022 (Smith); Stipulation Of Dismissal (Doc. #665) filed June 6, 2022 (Brown).

untimely.  A motion to reconsider must be filed within 10 days after entry of the order.  See D. Kan. Rule 7.3(b).  Defendants did not file a timely motion to reconsider the Court's order on their motions to dismiss, so the rulings in that order constitute the law of the case.[5]  The law of the case doctrine posits that when a court decides a legal issue, that decision "should continue to govern the same issues in subsequent stages in the same case."  Arizona v. California, 460 U.S. 605, 618 (1983); see Entek GRB, LLC v. Stull Ranches, LLC, 840 F.3d 1239, 1241 (10th Cir. 2016) (law of case doctrine bars relitigation of issues resolved in prior proceedings); United States v. West, 646 F.3d 745, 748 (10th Cir. 2011) (law of case doctrine precludes relitigation of legal ruling once decided).  The doctrine seeks to preserve the finality of judgments, prevent continued re-argument of issues already decided and preserve scarce judicial resources.  Procter & Gamble Co. v. Haugen, 317 F.3d 1121, 1132-33 (10th Cir. 2003).

As noted above, defendants seek summary judgment on legal arguments which the Court previously rejected.  Defendants' motion for summary judgment does not even acknowledge the Court's 70-page Memorandum And Order (Doc. #190) which has rejected each of their legal arguments.[6]  The Court acknowledges that the factual record is not identical to the allegations in

---

[5]     Even if defendants had timely filed a motion to reconsider, they have not shown a sufficient basis for reconsideration such as (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.  Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  Such motions are not appropriate to ask the Court to revisit issues already addressed or to hear new arguments that could have been presented originally.  See Matosantos Commercial Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1209 n.2 (10th Cir. 2001); Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991).

[6]     In defendants' supporting memorandum, they cite the Court's prior order in two instances, but do not assert that it was erroneous.  See Defendant Officers' Memorandum In Support Of Motion For Summary Judgment (Doc. #575) at 31 n.4, 52 n.12 (citing for limited purpose to distinguish evidence of malice in summary judgment record from plaintiffs' allegations in complaint which Court found sufficient to state claim).  Even in reply to plaintiffs' argument
(continued. . .)

plaintiffs' complaint.  Even so, defendants' arguments primarily are legal ones and for present purposes, the evidentiary record—viewed in a light most favorable to McIntyre—is not materially different from the allegations in the complaint.  For these reasons and substantially the reasons stated in the Court's <u>Memorandum And Order</u> (Doc. #190), the Court rejects defendants' arguments that (1) the statute of limitations bars McIntyre's Section 1983 claims that are based on the Fourth Amendment; (2) because Kansas provides adequate state remedies, defendants are entitled to summary judgment on McIntyre's Section 1983 claims that are based on the Fourteenth Amendment; (3) McIntyre cannot maintain a claim for fabrication or <u>Brady</u> violations separate from his malicious prosecution claim; (4) the statute of limitations bars McIntyre's Section 1983 claims for failure to intervene, conspiracy and supervisory liability claims; and (5) defendants are entitled to discretionary function immunity for McIntyre's state law malicious prosecution claim.

## II.    Malicious Prosecution Claim (Counts 1 and 8)

In Count 1, McIntyre asserts claims for malicious prosecution under the Fourth and Fourteenth Amendments against Golubski, Krstolich, Ware, Brown, Barber, Culp and Smith.  In Count 8, McIntyre asserts claims for malicious prosecution under state law against the same defendants.

### A.    Probable Cause To Arrest McIntyre

Defendants argue that they are entitled to summary judgment on McIntyre's federal and state malicious prosecution claims because as a matter of law, the defendant officers had probable

---

[6](. . . continued)
that the Court already decided various legal issues, defendants do not attempt to explain how the Court's prior rulings are erroneous.  <u>See</u> <u>Defendant Officers' Reply In Support Of Motion For Summary Judgment</u> (Doc. #645) at 256 (noting standard of review different on motions to dismiss and for summary judgment without explaining how that difference applies to specific issues of law raised in both motions).

cause to arrest, detain and prosecute McIntyre.  Defendant Officers' Memorandum In Support Of Motion For Summary Judgment (Doc. #575) at 30.

An essential element of a malicious prosecution claim under both federal and state law is that probable cause did not support the original arrest, continued confinement or prosecution. Montoya v. Vigil, 898 F.3d 1056, 1066 (10th Cir. 2018); Lindenman v. Umscheid, 255 Kan. 610, 624, 875 P.2d 964, 974 (1994).  Probable cause exists if "the facts and circumstances are sufficient to warrant a person of reasonable caution to believe" that an individual committed a crime. McCarty v. Gilchrist, 646 F.3d 1281, 1286 (10th Cir. 2011); see Mink v. Knox, 613 F.3d 995, 1003 (10th Cir. 2010).  If evidence is falsified or withheld, "the probable cause determination is made by considering whether, excluding the falsified inculpatory evidence or including the withheld exculpatory evidence, probable cause existed to prosecute."  McCarty, 646 F.3d at 1286. In other words, the Court asks whether—considering the exculpatory evidence and ignoring the falsified evidence—a person of reasonable caution would believe that the individual committed a crime.  See id.

Defendants argue that Ruby Mitchell's identification was sufficient to establish probable cause that McIntyre was the shooter and that Mitchell denies that officers coerced or suggested that she select McIntyre.  Defendant Officers' Memorandum In Support Of Motion For Summary Judgment (Doc. #575) at 30.  Even so, McIntyre has presented evidence that (1) officers knew that Mitchell did not have a good vantage point to see the shooter's face; (2) Mitchell's identification of the "Lamont" who dated her niece was not McIntyre; (3) Mitchell identified the shooter as an individual who was five feet six or seven inches with French braids but Golubski and other officers knew that McIntyre was five feet eleven inches and before the shooting, had his hair cut near his scalp; (4) both Niko Quinn and Stacy Quinn identified someone other than McIntyre as the shooter

and provided detailed evidence of that individual's motive and past assaults on the victim and (5) officers fabricated the inconsistent alibi statements by McIntyre and his mother. Viewing the evidence in a light most favorable to McIntyre, a reasonable jury could find that based on this exculpatory evidence and ignoring the evidence that officers falsified, a reasonable officer would not believe probable cause existed to arrest, detain and prosecute McIntyre. The Court therefore overrules defendants' motion for summary judgment on this ground.

    B.    <u>Malice</u>

Defendants argue that McIntyre has not presented sufficient evidence to create a genuine issue of material fact whether they acted with malice. Under Section 1983, McIntyre may show malice by establishing that each defendant "knowingly or recklessly used false information to institute legal process." <u>Sanchez v. Hartley</u>, 810 F.3d 750, 758 (10th Cir. 2016). For example, a jury can infer malice if an officer intentionally or recklessly coerces false witness statements. <u>See</u> <u>Wilkins v. DeReyes</u>, 528 F.3d 790, 799–800 (10th Cir. 2008). Similarly, under Kansas law, a jury may infer malice if the prior action was instituted for any improper or wrongful motive, <u>i.e.</u> with any motive other than to bring a party to justice. <u>Nelson v. Miller</u>, 227 Kan. 271, 278, 607 P.2d 438, 444 (1980). Like intent, the issue of malice or wrongful purpose is ordinarily a question of fact for a jury. <u>Id.</u> at 279, 607 P.2d at 445.

Viewing the evidence in a light most favorable to plaintiff, a reasonable jury could find that each of the defendants acted with malice. Plaintiff has presented evidence that the officers went along with Golubski to deliberately target McIntyre for prosecution despite knowing or having reason to know that McIntyre was not responsible for the murders and that they fabricated and withheld evidence to ensure that McIntyre was wrongfully prosecuted and convicted. Specifically, plaintiff has presented evidence that (1) Smith conducted extremely brief interviews

of Niko and Josephine Quinn and did not ask them to describe the shooter; (2) Smith did not document Josephine Quinn's statement that her daughter, Stacy Quinn, could identify the shooter; (3) Ware (along with Golubski) used suggestion and coercion during the photo identification procedure with Niko Quinn; (4) Krstolich (along with Golubski) failed to compile photos and a composite which matched Ruby Mitchell's description of the shooter; (5) Krstolich (along with Golubski) used suggestion during the photo identification procedure with Mitchell; (6) Krstolich and Golubski fed Mitchell the last name "McIntyre;" (7) Brown, Barber and Golubski jointly fabricated inconsistent alibi statements by McIntyre and Ms. McIntyre; (8) Barber (along with Golubski) fabricated a false statement from Ms. McIntyre to undermine McIntyre's truthful alibi and create a false narrative of "inconsistent alibis" to bolster the evidence against McIntyre; (9) Culp assigned the case to Smith and Golubski, a non-homicide detective who had a history of exploiting vulnerable Black women to create false evidence and close cases quickly; (10) as Golubski's partner on the investigation, Smith kept abreast of developments in the investigation and the case file was readily available to him; and (11) Culp ignored obvious signs of misconduct by Golubski and other officers.[7]   The record presents a genuine issue of material fact whether any defendant acted with malice.  See Wilkins, 528 F.3d at 799–800 (evidence that officers fabricated evidence by recklessly or intentionally coercing false testimony sufficient to establish malice); see also Nelson, 227 Kan. at 276, 607 P.2d at 443 (malice established if officer acted primarily for

---

[7]   The Court recognizes that the evidence against Barber primarily consists of the affidavit of Ms. McIntyre, who has been unavailable for a deposition.  The Unified Government recently noticed her deposition for July 9, 2022.  See Notice to Take Videotaped Deposition (Doc. #678) filed June 22, 2022.  Accordingly, within 14 days after the conclusion of the deposition of Ms. McIntyre, the Estate of Barber may renew its motion for summary judgment on this limited factual issue and file a supplemental memorandum limited to five pages of facts and argument.  Within 14 days after any renewed motion for summary judgment, plaintiffs may file a supplemental opposition memorandum limited to five pages of facts and argument.  Absent leave of Court, no reply will be permitted.

purpose other than securing proper adjudication of case).   The Court therefore overrules defendants' motion for summary judgment on this issue.

      C.    <u>Causation</u>

      Defendants argue that they are entitled to summary judgment on McIntyre's Section 1983 malicious prosecution claim because he has not presented evidence that they caused his confinement or prosecution.   Specifically, defendants argue that the chain of causation was broken because (1) the prosecutor, Terra Morehead, coerced Niko Quinn to identify McIntyre; (2) at trial, months after defendants' alleged wrongdoing, Mitchell and Niko Quinn still identified McIntyre as the perpetrator and (3) plaintiff's family members gave conflicting alibi testimony.   <u>Defendant Officers' Memorandum In Support Of Motion For Summary Judgment</u> (Doc. #575) at 31–32.

      Under Section 1983, a government actor is liable if he "set in motion a series of events" that he knew or reasonably should have known would cause others to deprive plaintiff of his constitutional rights.   <u>Martinez v. Carson</u>, 697 F.3d 1252, 1255 (10th Cir. 2012) (citations omitted); <u>see also</u> <u>Russell v. May</u>, 306 Kan. 1058, 1078, 400 P.3d 647, 662 (2017) (if first actor could reasonably foresee intervening cause, his negligence may be considered proximate cause, notwithstanding intervening cause).   In other words, a defendant is liable for the harm that his conduct proximately causes.   <u>Martinez</u>, 697 F.3d at 1255.   Accordingly, an officer can be liable for the violation of plaintiff's constitutional rights if the violation would not have occurred but for defendant's conduct and if no unforeseeable intervening acts superseded defendant's liability.   <u>Id.</u> The fact that people other than defendant "may have concurrently caused the harm does not change the outcome as to [defendant]."   <u>Id.</u> (citations omitted).   Causation generally is a question of fact for the jury.   <u>Schneider v. City of Grand Junction Police Dep't</u>, 717 F.3d 760, 778 (10th Cir. 2013).

      Defendants have presented evidence that Morehead coerced Niko Quinn to re-identify

McIntyre as the perpetrator and that at trial, Mitchell and Niko Quinn again identified McIntyre. Even so, based on the evidence outlined above in the discussion of malice, a reasonable jury could find that the misconduct of the individual officers tainted the in-court identifications by Mitchell and Niko Quinn. This evidence, combined with the natural inclination of a witness not to change his or her story or to avoid recantation because of threats by the prosecutor, creates a genuine issue of material fact whether any officer's misconduct caused McIntyre's prosecution and conviction.

     D.    <u>Qualified Immunity</u>

     Defendants assert that they are entitled to qualified immunity on McIntyre's malicious prosecution claims under Section 1983. For reasons set forth below and viewing the evidence in the light most favorable to McIntyre, the conduct of each individual officer violated McIntyre's clearly established constitutional rights. On this record, defendants' motion for summary judgment on the issue of qualified immunity is frivolous and is therefore overruled.

**III.    Due Process Claim Based On Fabrication And Withholding Of Evidence (Count 2)**

     Under Section 1983, McIntyre asserts Fourth and Fourteenth Amendment claims for (a) evidence fabrication against Krstolich, Ware, Brown and Barber and (b) violations of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) against Krstolich and Ware. Defendants argue that each officer is entitled to qualified immunity on McIntyre's fabrication and <u>Brady</u> claims because (1) McIntyre has not shown that any officer fabricated evidence or withheld exculpatory evidence and (2) in 1994, the law was not clearly established that each officer's conduct constituted fabrication or a violation of <u>Brady</u>.

     A.    <u>Fabrication Of Evidence</u>

     To establish a due process violation based on fabrication of evidence, plaintiff must show that each officer knowingly fabricated evidence, <u>i.e.</u> that he necessarily knew that the evidence

was false.  Truman v. Orem City, 1 F.4th 1227, 1236 (10th Cir. 2021).  Defendants argue that McIntyre has not raised a genuine issue of material fact whether any officer fabricated evidence. Viewed in a light most favorable to McIntyre, however, a reasonable jury could infer that Krstolich, Ware, Brown and Barber each went along with a fabricated narrative which implicated McIntyre and coerced witnesses to give statements consistent with a narrative that each of them knew was false.  Specifically, Ware used suggestion and coercion to help obtain a mistaken identification by Niko Quinn.  Krstolich used similar methods during a photo lineup to obtain a mistaken identification by Mitchell.  Brown and Barber coordinated with Golubski and each other to fabricate inconsistent alibi statements by McIntyre and Ms. McIntyre to bolster the evidence against McIntyre.  In sum, McIntyre has presented sufficient evidence to create a genuine issue of material fact whether each officer violated his due process rights by fabrication of evidence.

Defendants also assert that no due process right based on fabrication of evidence was clearly established in 1994.  A constitutional right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Estate of Ceballos v. Husk, 919 F.3d 1204, 1215 (10th Cir. 2019) (citations omitted).  The Supreme Court has warned against defining a clearly established right "at a high level of generality" and that the law must be "particularized to the facts of the case," but this does not mean that a right is only clearly established if a case exists that is factually identical.  Id. (citations omitted).  In other words, the "clearly established" prong does not require plaintiff to show that "the very act in question previously was held unlawful."  Weigel v. Broad, 544 F.3d 1143, 1153 (10th Cir. 2008) (citations omitted).  This makes good sense: if a right is clearly established only when a prior case presents identical facts, qualified immunity would apply under every different fact pattern.  Under this standard, officials would always be entitled to qualified immunity so long as their actions—

no matter how outrageous or harmful—were sufficiently novel. The Tenth Circuit has therefore explained that the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Stetzel v. Holubek, 661 F. App'x 920, 922 (10th Cir. 2016); see Duran v. Sirgedas, 240 F. App'x 104, 127 (7th Cir.), vacated in part on reh'g (July 17, 2007) (citations omitted) ("It would create perverse incentives indeed if a qualified immunity defense could succeed against those types of claims that have not previously arisen because the behavior alleged is so egregious that no like case is on the books.").

In 1994, the law was clearly established that each officer's conduct—when the evidence is viewed in the light most favorable to plaintiff—constituted fabrication. See Truman, 1 F.4th at 1236 (long recognized that individuals have right not to be deprived of liberty as result of fabrication of evidence by government officer) (citing Pyle v. Kansas, 317 U.S. 213, 216 (1942)); see also Pierce v. Gilchrist, 359 F.3d 1279, 1299 (10th Cir. 2004) ("Long before the events in question, the Supreme Court held that a defendant's due process rights are implicated when the state knowingly uses false testimony to obtain a conviction") (citing Pyle, 317 U.S. at 216); id. ("Even if there were no case directly on point imposing liability on officials whose falsification of evidence occurred at the post-arrest stage, an official in [defendant's] position could not have labored under any misapprehension that the knowing or reckless falsification and omission of evidence was objectively reasonable."). The Court therefore overrules defendants' motion for summary judgment on their demand for qualified immunity on McIntyre's due process claim based on fabrication of evidence. On this record, defendants' motion is frivolous and is therefore overruled.

B.    Withholding Of Evidence

In Brady, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. To succeed on a Brady claim, plaintiff must show (1) the evidence at issue is favorable to him either because it is exculpatory, or because it is impeaching, (2) the state suppressed that evidence, either willfully or inadvertently and (3) he was prejudiced. Powell v. Miller, 104 F. Supp. 3d 1298, 1309 (W.D. Okla. 2015).

Krstolich and Ware argue that McIntyre has not shown that they withheld evidence in violation of Brady. As explained above, McIntyre has presented evidence that Krstolich and Ware used suggestion and coercion to obtain mistaken identifications from Ruby Quinn and Mitchell. Whether such evidence is classified as exculpatory or impeaching, a reasonable jury could find that it was material to McIntyre's guilt. Therefore, McIntyre has established a genuine issue of material fact whether Krstolich and Ware violated his due process rights by withholding evidence.

Krstolich and Ware also argue that they are entitled to qualified immunity because in 1994, the law was not well established that an officer withholding evidence was a constitutional violation. Since well before 1986, however, the law has established that due process prohibits the state—including one of its investigators—from withholding exculpatory evidence. Pierce, 359 F.3d at 1299 (long before 1986, Supreme Court held that "defendant's due process rights are implicated when the state . . . withholds exculpatory evidence from the defense.") (citing Newsome v. McCabe, 256 F.3d 747, 752–53 (7th Cir. 2001) for proposition that "Brady clearly established that officers could not withhold information that plaintiff's fingerprints did not match those found at the crime scene or that officers influenced witnesses to pick plaintiff out of police lineup"); see also United States v. Buchanan, 891 F.2d 1436, 1442 (10th Cir. 1989) (because investigative

officers are part of prosecution, taint on trial no less if they, rather than prosecutors, guilty of nondisclosure; knowledge by police or investigators therefore imputed to prosecution under Brady).   In 1994, Brady unquestionably required the prosecution to disclose an officer's misconduct in obtaining the identification of the accused or other impeachment evidence.  See Ballinger v. Kerby, 3 F.3d 1371, 1376 (10th Cir. 1993) (Brady violation based on suppression of impeachment evidence); Bowen v. Maynard, 799 F.2d 593, 613 (10th Cir. 1986) (Brady violation based on suppression of evidence which impeached identifications of eyewitnesses, evidence pointing to a credible alternate suspect, as well as evidence which "raises serious questions about the manner, quality, and thoroughness of the [police] investigation"); see also Buchanan, 891 F.2d at 1443–45 (evidence of sexual relationship between investigating officer and witness, known only to officer, was impeachment that should have been disclosed).  Accordingly, in 1994, a reasonable official in the position of Krstolich or Ware could not have labored under any misapprehension that the knowing suppression of officer misconduct to obtain an eyewitness identification violated McIntyre's due process rights.  See Pierce, 359 F.3d at 1299 ("Even if there were no case directly on point imposing liability on officials whose falsification of evidence occurred at the post-arrest stage, an official in [defendant's] position could not have labored under any misapprehension that the knowing or reckless falsification and omission of evidence was objectively reasonable.").  The Court therefore overrules defendants' motion for summary judgment claim on their demand for qualified immunity on McIntyre's due process claims based on withholding evidence.  On this record, defendants' motion is frivolous and is therefore overruled.

## IV.    Failure To Intervene Claim (Count 4)

Under Section 1983, McIntyre asserts Fourth and Fourteenth Amendment failure to intervene claims against Krstolich, Ware and Culp.  Pretrial Order (Doc. #562) at 44.  McIntyre

asserts that these defendants knew or had reason to know of Golubski's violations of McIntyre's constitutional rights yet failed to intervene.  Id.  Defendants argue that they are entitled to summary judgment because (1) McIntyre has not produced evidence that Krstolich, Ware or Culp failed to intervene and (2) in 1994, the law was not clearly established that each officer's conduct constituted a failure to intervene.

All law enforcement officials have an "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."  Vondrak v. City of Las Cruces, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).  An officer who has a realistic opportunity to intervene but fails to do so is liable "for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know" that other law enforcement officers committed a constitutional violation.  Id. (quoting Anderson v. Branen, 17 F.3d at 557); see Jones v. Norton, 809 F.3d 564, 576 (10th Cir. 2015).

Viewing the evidence in a light most favorable to McIntyre, Krstolich and Ware each failed to intervene in Golubski's improper methods to obtain an eyewitness identification.  Likewise, a reasonable jury could infer that Culp had reason to know that consistent with prior misconduct and glaring deficiencies in the investigation, Golubski violated McIntyre's well-established constitutional rights.  As with the other claims, in 1994, a reasonable officer in the position of Krstolich, Ware or Culp with knowledge of Golubski's egregious misconduct could not have labored under any misapprehension that he had a duty to intervene.  The Court therefore overrules defendants' motion for summary judgment on their demand for qualified immunity on McIntyre's failure to intervene claim.  On this record, defendants' motion is frivolous and is therefore overruled.

## V.        Conspiracy Claim (Count 5)

Under Count 5, McIntyre asserts conspiracy, alleging that Golubski, Krstolich, Ware, Barber and Culp acted in concert to deprive him of rights under the Fourth, Fifth and Fourteenth Amendments to be free from unreasonable searches and seizures, malicious prosecution, coercion, deprivation of liberty without due process of law and his right to a fair trial.  Krstolich, Ware, Barber and Culp argue that they are entitled to qualified immunity on McIntyre's conspiracy claims because (1) McIntyre has not established a constitutional violation and (2) he has not raised a genuine issue of material fact whether each officer agreed with others to violate McIntyre's constitutional rights.

To succeed on a conspiracy claim under Section 1983, McIntyre must show (1)  an actual deprivation of a constitutional right, (2) a combination of two or more persons acting in concert and (3) a meeting of the minds, an agreement among defendants, or a general conspiratorial objective.  Brooks v. Gaenzle, 614 F.3d 1213, 1227–28 (10th Cir. 2010).  Because direct evidence of an agreement rarely is available, a plaintiff can rely solely on circumstantial evidence to establish a conspiracy.   Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990).   Proof of an agreement among defendants need not be express.   Frasier v. Evans, 992 F.3d 1003, 1025 (10th Cir. 2021).  Parallel action may or may not indicate an agreement to act in concert.  Id.

For substantially the reasons stated above, McIntyre has established a genuine issue of material fact whether he suffered an actual deprivation of a constitutional right.  As to an agreement among the officers, plaintiff has presented evidence that several officers worked in tandem with Golubski to create false evidence, hide exculpatory evidence and not investigate the true perpetrator of the murders, all in a successful attempt to deprive McIntyre of his constitutional rights.  Specifically, plaintiff has presented evidence that (1) Culp assigned the case to Smith and

Golubski, a non-homicide detective, in the interest of closing the case quickly; (2) Ware and Golubski used suggestion and coercion during a photo identification procedure with Niko Quinn; (3) Golubski created a report on the improper identification by Quinn which omitted his and Ware's suggestion; (4) Ware and all detectives on the case ignored evidence that the homicides were drug-motivated; (5) Golubski and Krstolich failed to compile photos and a composite which matched Ruby Mitchell's description of the shooter; (6) Golubski and Krstolich used suggestion during a photo identification procedure with Mitchell; (7) Golubski and Krstolich fed Mitchell the last name "McIntyre;" (8) all officers failed to interview Mitchell's niece in a timely manner; (9) Golubski and other officers failed to document any encounters with Stacy Quinn; (10) all officers failed to investigate McIntyre's alibi that he had placed calls to a cab company; (11) Brown, Barber and Golubski coordinated to fabricate inconsistent alibi statements by McIntyre and Ms. McIntyre; (12) all officers failed to conduct basic forensic testing; (13) Golubski participated with Barber in fabricating a false statement from Ms. McIntyre to undermine McIntyre's truthful alibi; (14) Golubski recorded a statement of Barber falsely alleging that Ms. McIntyre had made a "totally unsolicited" statement suggesting both that she knew McIntyre was guilty of the murders and that she lied about his alibi to protect him; and (15) Golubski reported Barber's false statements in his report and falsely presented "inconsistent alibis" to the prosecutor to bolster the evidence against McIntyre.   Viewing the evidence in a light most favorable to McIntyre, a reasonable jury could find a conspiratorial agreement.  See Frasier, 992 F.3d at 1025 (proof of agreement need not be express); Snell, 920 F.2d at 702 (plaintiff can establish conspiracy based solely on circumstantial evidence).  The Court therefore overrules defendants' motion for summary judgment on McIntyre's conspiracy claim.

## VI.    Supervisory Liability Claim (Count 6)

Under Section 1983, McIntyre asserts Fourth and Fourteenth Amendment supervisory liability claims against Culp.  Culp argues that he is entitled to summary judgment because McIntyre cannot show an affirmative link between Culp's supervision and any such violation.[8]

Because vicarious liability does not apply to claims under Section 1983, plaintiffs must show that each defendant violated his constitutional rights through his own individual actions. Durkee v. Minor, 841 F.3d 872, 877 (10th Cir. 2016).  Accordingly, Section 1983 does not involve any "special rules" for supervisor liability—the test for a supervisor "is the same as the test for everyone else."  Id.  That is, a supervisor is liable if plaintiff can show (1) personal involvement, (2) causation and (3) a culpable state of mind.  Burke v. Regalado, 935 F.3d 960, 997 (10th Cir. 2019).  To satisfy the personal involvement requirement, plaintiffs must show an "affirmative link" between the constitutional deprivation and either "the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."  Arnold v. City of Olathe, Kansas, 35 F.4th 778, 793 (10th Cir. 2022); see Rizzo v. Goode, 423 U.S. 362, 371 (1976) (need affirmative link between police misconduct and plan or policy, "express or otherwise," showing authorization or approval of such misconduct).

Culp argues that McIntyre cannot show that he had actual knowledge of misconduct or that he did not adequately train officers.  Viewing the evidence in a light most favorable to McIntyre, however, a reasonable jury could find that Culp (1) assigned the case to Golubski, a non-homicide detective who had a history of exploiting vulnerable Black women to create false evidence and

---

[8]     Culp also argues that he is entitled to summary judgment because McIntyre cannot show an underlying constitutional violation of a clearly established right.  For reasons stated above, defendants are not entitled to summary judgment on the issue whether an underlying constitutional violated occurred or whether they are entitled to qualified immunity.  As explained above, defendants' motion is frivolous.

close cases quickly and (2) knew of (or consciously avoided confirming) obvious signs of misconduct by Golubski and other officers during the investigation.  Despite glaring warning signs, Culp essentially adopted a hands off policy which permitted Golubski and other officers to continue to violate McIntyre's constitutional rights.  This evidence creates a genuine issue of material fact whether an affirmative link exists between the underlying constitutional violations and Culp's failure to supervise and implied approval of the investigative methods.  The Court therefore overrules defendants' motion for summary judgment on plaintiff's supervisory liability claim against Culp.

## VII.   Brown's Assertion Of Absolute Immunity

Brown argues that he is entitled to absolute immunity because McIntyre's claims against him are based solely on trial testimony.  Defendant Officers' Memorandum In Support Of Motion For Summary Judgment (Doc. #575) at 36.  A testifying witness is afforded absolute immunity for his or her testimony because "[a] witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence."  Briscoe v. LaHue, 460 U.S. 325, 333 (1983).  Even so, absolute immunity does not extend to non-testimonial conduct unless such conduct is "inextricably tied" to the witness's testimony.  Paine v. City of Lompoc, 265 F.3d 975, 981 (9th Cir. 2001) (citation omitted); see also Rehberg v. Paulk, 566 U.S. 356, 370 n.1 (2012) (absolute immunity does not extend to officials who falsify affidavits or fabricate evidence concerning unsolved crime) (citations omitted).

Here, Brown attempts to invoke absolute immunity to shield him from liability for non-testimonial conduct which occurred well before trial.  Absolute immunity does not shield an

officer's prior misconduct simply because the officer testifies about it.  Brown is not entitled to absolute immunity for his prior non-testimonial conduct.  See Lisker v. City of Los Angeles, 780 F.3d 1237, 1242 (9th Cir. 2015) ("pretrial, out-of-court effort to fabricate physical evidence is not inextricably tied—or tied at all—to any witness' own testimony, even if a potential witness does happen to be involved") (quoting Paine, 265 F.3d at 982) (cleaned up); Paine, 265 F.3d at 981 (to be entitled to absolute immunity, proponent must show prior conduct "inextricably tied" to testimony); see also Gregory v. Louisville, 444 F.3d 725, 741–42 (6th Cir. 2006) (absolute immunity for trial testimony does not "relate back" to shield pretrial, nontestimonial acts such as fabrication of evidence).

In sum, the Court overrules defendants' motion for summary judgment.[9]

**IT IS THEREFORE ORDERED** that the Defendant Officers' Motion For Summary Judgment (Doc. #574) filed April 1, 2022 is **OVERRULED**.

Dated this 28th day of June, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[9]     In Section VI of Defendant Officers' Memorandum In Support Of Motion For Summary Judgment (Doc. #575), defendants attempt to incorporate the memoranda in support of the motions for summary judgment of Golubski and the Unified Government.  The Court previously struck Section VI as an improper attempt to avoid the Court's page limitations on memoranda in support of a motion for summary judgment.  See Order (Doc. #603) filed April 20, 2022.