IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAMONTE MCINTYRE and            )
ROSE LEE MCINTYRE,              )
                               )
                  Plaintiffs,   )
                               )
          vs.                   )          No. 18-2545-KHV
                               )
UNIFIED GOVERNMENT OF           )
WYANDOTTE COUNTY AND            )
KANSAS CITY, KANSAS, et al.     )
_____)

## MEMORANDUM IN SUPPORT OF THE
## MCCLATCHY COMPANY, LLC'S MOTION
## TO INTERVENE FOR LIMITED PURPOSE

The McClatchy Company, LLC d/b/a The Kansas City Star (the Star) has filed a

motion (Doc. 689) for an order allowing it to intervene in this action for the limited purpose

of seeking the removal of obstacles to the access of information regarding the matter. If

intervention is granted the Star intends to file a motion to vacate the Court's order of May

11, 2022 (Doc. 644) which allowed certain documents to be filed under seal, and to modify

the protective order entered on November 8, 2019 (Doc. 124). For the reasons stated below

the motion to intervene should be granted.

### BACKGROUND AND PROCEDURAL POSTURE

This matter has been pending nearly four years and the Court is obviously well

acquainted with the facts and claims involved. Briefly stated, plaintiff Lamonte McIntyre was

convicted on two murder charges in Wyandotte County District Court on September 29, 1994, and subsequently spent over 23 years in prison. In 2016, Mr. McIntyre filed a motion to vacate his convictions. That motion was subsequently granted by the state court and the charges against Mr. McIntyre were dismissed on October 13, 2017. He received a Certificate of Innocence on February 24, 2020. (*See generally* Doc. 562, p. 3).

On October 11, 2018, Mr. McIntyre and his mother, plaintiff Rose Lee McIntyre, commenced this action against the Unified Government of Wyandotte County and Kansas City, Kansas (Unified Government) and a number of individuals who were employed by the Kansas City, Kansas Police Department (KCKPD) at the time of Mr. McIntyre's arrest and conviction. The complaint made serious allegations of longstanding misconduct and wrongdoing within the KCKPD, particularly by former detective Roger Golubski. (*See generally*, Doc. 1).

For obvious reasons, the lawsuit and matters involved therein attracted significant attention in the Kansas City metro area and far beyond. The events have been reported extensively by the Star, the most widely circulated outlet of print journalism in the area.

On November 8, 2019, the Court entered a protective order that was jointly requested by the parties. (Doc. 124). The Order defines the term "Confidential Information" and allows the parties to designate information exchanged in discovery as Confidential Information if it falls within the following categories:

> (a)     Financial records of Plaintiffs and any related materials;

(b)     Medical or mental health records of any party or non-party;

(c)     Personnel files or records of current or former employees of the Unified Government of Wyandotte County and Kansas City, Kansas or its precedessor(s); and

(d)     Criminal investigation records in open investigations of the Unified Government of Wyandotte County and Kansas City, Kansas or its precedessor(s). For the purpose of this order, "open investigation" means a case that has not been prosecuted or has not been closed.

(Doc. 124, pp. 2-3). The dissemination of the information so designated is limited to certain individuals identified in the order. (Doc. 124, pp. 4-5). The order provides that information produced by third parties may also be designated as Confidential Information. (Doc. 124, p. 10).

The order also creates a category of information described as "Attorneys Eyes Only," although the information that might fall within this category is only generally and subjectively described. (Doc. 124, pp. 5-6). Information designated by the parties as "Confidential - Attorney Eyes Only" may be disseminated only to the attorneys involved in the case and their employees or agents, but not the parties themselves. (Doc. 124, p. 6).

The order provides that if a party desires to file a document containing Confidential Information in the case, "that party must take appropriate action to ensure that the document receives proper protection from public disclosure." (Doc. 124, pp. 6-7). Thus, a party is to either redact the Confidential Information (with the consent of the party who made the

designation) or seek permission to file the document containing the information under seal. (Doc. 124, p. 7).[1]

The Order states that it may be modified "by the court on its own motion or on motion of any party or any other person with standing concerning the subject matter" after the parties were provided notice and an opportunity to be heard. The Order is to remain in effect after the litigation is concluded and all Confidential Information destroyed within 28 days.[2] (Doc. 124, pp. 8-9). However, the Order is still subject to modification even after the case has ended. (Doc. 124, p. 9).

Somewhat ironically, notwithstanding its severe restriction of the release of information that would be in the public interest, the Order sates: "As there is a presumption in favor of open and public judicial proceedings in the federal courts, this Order will be strictly construed in favor of public disclosure and open proceedings wherever possible." (Doc. 124, p. 2).

On April 1, 2022, all defendants filed motions for summary judgment. (Doc. 580 [Unified Government]; Doc. 581/582 [Golubski]; Doc. 574/575 [other officers]). On May 2, 2022, plaintiffs filed their response to the Unified Government's motion for summary

---

[1]   The Order does not create a procedure for including information designated as Attorney Eyes Only in documents filed in the case. Presumably, the procedure for Confidential Information would apply to Attorney Eyes Only information as well.

[2]   Again, this provision refers only to Confidential Information and not Attorney Eyes Only information. In fact, the Order seems to assume that Attorney Eyes Only information is a subset of Confidential Information, even though the description of Attorney Eyes Only information is potentially much broader than the definition of Confidential Information.

judgment. (Doc. 624). At the same time, plaintiffs filed a motion seeking leave to file 17 exhibits to their response under seal. (Doc. 625). Because the motion itself was filed under seal it is difficult to tell exactly what was involved, but it appears that plaintiffs sought to file under seal unredacted versions of redacted exhibits that they had filed as part of their response. On May 11, 2022, the Court granted the motion to seal in a text entry, "for substantially the reasons stated in the motion." (Doc. 644). The sealed exhibits were filed on May 16, 2022. (Doc. 651).[3]

On May 24, 2022, the Court held a hearing on the summary judgment motions of Golubski and the other officers, as well as other non-dispositive motions. At the conclusion of the hearing, the Court announced most of its rulings on those motions. It also directed the parties to participate in mediation. (Doc. 659).

On June 9, 2022, the Court entered a formal order in which Golubski's motion for summary judgment was sustained in part and overruled in part. (Doc. 668). On June 28, 2022, the Court entered an order overruling the other officers motion for summary judgment (Doc. 686). The Unified Government's motion for summary judgment was set for hearing on July 27, 2022. (Doc. 673).

On June 30, 2022, the parties reported to the Court that the case had been settled at a mediation held the day prior. (Doc. 687). On June 30, 2022, the Board of Commissioners

---

[3] Prior to the summary judgment motions, the only document that a party requested be filed under seal was the return of service for a subpoena issued to a witness who is "in custody of the Bureau of Prisons, but is currently living in the community." (Doc. 410). The motion was granted by the Court. (Doc. 415). The Star does intend to seek to vacate that order.

of the Unified Government approved the payment of $12.5 million to plaintiffs to settled the case.[4]

The existence of the sealing order and protective order have hindered the Star's ability to gather information about the case. The sealing order obviously restricts access to information which plaintiffs contended would defeat the Unified Government's motion for summary judgment. The protective order, in its present form, inhibits the freedom of the parties to provide pertinent information to the Star, which is essential to its First Amendment newsgathering activities. *See Board of Education, Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (recognizing First Amendment right to "receive information and ideas" which is an "inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution").

## ARGUMENT AND AUTHORITIES

### I.

### INTERVENTION IS A PROPER PROCEDURAL MECHANISM FOR THE PRESENTATION OF THE STAR'S MOTION TO VACATE OR MODIFY THE CONFIDENTIALITY ORDERS

The precise procedural mechanism to be employed by the Star in presenting its substantive motion to the Court is not entirely clear in the Tenth Circuit.

In *United States v. McVeigh*, 918 F. Supp. 1452 (W.D. Okla. 1996), twenty-two media organizations filed motions to unseal documents that had been filed under seal in the case.

---

[4]  *See* Luke Nozika and Aaron Torres, *Wyandotte County will pay $12.5M to Lamonte McIntyre, wrongly imprisoned for 23 years*," KANSAS CITY STAR, July 1, 2022. *Available at* https://www.kansascity.com/news/state/kansas/article263060113.html

The court recognized that these organizations "have standing to present these questions on behalf of themselves and the general public," but because they were not parties, held that "the motions are more appropriately considered as a collateral or ancillary civil action in the nature of a petition for writ of mandamus under the All Writs Act, 28 U.S.C. § 1361, directed to the clerk of the district court," and decided the motions on that basis. 918 F. Supp. at 1456. In assessing its appellate jurisdiction, the Tenth Circuit agreed that mandamus, rather than the collateral order doctrine, applied. *United States v. McVeigh*, 119 F.3d 806, 810 (10th Cir. 1997), *cert. denied*, 522 U.S. 1142 (1998). *See also United States v. Gonzales*, No. 95-538-MV, 1997 WL 155403, at *1, fn. 1 (D.N.M. Feb. 11, 1997), *rev'd*, 150 F.3d 1246 (10th Cir. 1998), *cert. denied*, 525 U.S. 1129 (1999) (following same mandamus procedure in district court and on appeal).

Earlier, however, the Tenth Circuit had observed that "courts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose." *United Nuclear Corp. v. Cranford Insurance Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990), *cert. denied*, 498 U.S. 1073 (1991). And this appears to be the most common method for the media to be heard on issues of sealing and confidentiality in the courts of this circuit. For instance, in *Barnwell v. Corrections Corporation of America*, No. 08-2151-JWL, 2009 WL 10645266 (D. Kan. Aug. 27, 2009), Prison Legal News (PLN) moved to intervene in a civil action in order to seek to unseal a settlement agreement and related documents and transcripts. Judge Lungstrum found this to be the correct procedural avenue, stating:

> The parties do not separately challenge PLN's motion to intervene and, in light of the limited purpose of PLN's motion, intervention is appropriate. *See In re Associated Press*, 162 F.3d 503, 507 (7th Cir. 1998) (granting a motion to intervene is the "appropriate procedural mechanism" to permit those asserting right of access to challenge suppression of materials). The court, then, proceeds directly to resolve the issue of whether to unseal the parties' settlement agreement.

*Id*. at *1, fn. 1. *See also, e.g.*, *Parson v. Farley*, 352 F. Supp. 3d 1141 (N.D. Okla. 2018), *opinion aff'd*, No. 16-CV-423-JED-JFJ, 2018 WL 6333562 (N.D. Okla. Nov. 27, 2018); *Angilau v. United States*, No. 16-00992-JED, 2017 WL 9496068 (D. Utah July 27, 2017); *Landco Equity Partners, LLC v. City of Colorado Springs*, 259 F.R.D. 510 (D. Colo. 2009).[5]

The Star therefore asks that the Court assess the Star's involvement in this case in the context of intervention. In the alternative, if the Court finds intervention to not be the correct mechanism, the Star asks that it be allowed to submit its motion as a request for a writ of mandamus as was the case in *McVeigh and Gonzalez*.

## II.
### THE STAR MEETS THE RULE 24 REQUIREMENTS FOR INTERVENTION

Federal Rule of Civil Procedure 24(b)(1)(B) states that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that share with the main action a common question of law or fact." In *Angilau*, the court observed that "[c]ourts have noted that in circumstances such as those presented here—intervention in order to challenge a closure order in a civil lawsuit—the specific requirements of Rule 24 are an imperfect fit."

---

[5] Intervention would clearly be the proper way for a member of the media to challenge closure in state court. *See Wichita Eagle Beacon Co. v. Owens*, 271 Kan. 710, 27 P.3d 881 (2001).

2017 WL 9496068, at *3. But, the court went on to quote *Jessup v. Luther*, 227 F.3d 993, 997-98 (7th Cir. 2000) for the proposition that "every court of appeals to have considered the matter has come to the conclusion that Rule 24 is sufficiently broad-gauged to support a request of intervention for the purposes of challenging confidentiality orders." *Angilau*, 2017 WL 9496068, at *3. That is likely why the parties to an action often do not challenge intervention by the media for this limited purpose. *See, e.g.*, *Barnwell*, 2009 WL 10645266, at *1, fn. 1. The Star will, however, examine each of the requirements for intervention to demonstrate that they are met in this case.

## A.    The Common Question Requirement is Met.

Following the lead of "most circuits that have addressed the issue" the court in *Angilau* concluded that "in seeking to intervene for the limited purpose of asserting access to judicial records and proceedings, the proposed Media Intervenors have asserted a claim—the public's right of access—sufficient to meet the common question test of Rule 24(b)(1)(B)." 2017 WL 9496068, at *3. *See also Parson*, 352 F. Supp. 3d at 1149, fn. 4 (allowing media intervention and noting that when intervention is sought for the purpose of gaining access to information, "courts take a flexible approach to the 'common question of law or fact'" requirement."); *Young v. Glanz*, No. 13-00315-JED-JFJ, 2018 WL 1588026, at *6 (N.D. Okla. Mar. 31, 2018) (same); *Jessup*, 227 F.3d at 998 ("[A]ny party challenging a confidentiality order 'meet[s] the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action.'" [quoting *Pansy v. Stroudsburg*, 23 F.3d 772, 778 (3d Cir. 1994)]).

"[T]he news media, when asserting the right of access, are surrogates for the public." *Courthouse News Service v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) (citation omitted). By asserting the public's right of access, the Star has presented a claim that raises questions of law or fact common to every court proceeding, including this one.

**B.     The Star's Motion is Timely and Will Not Delay or Prejudice the Parties' Rights**.

Rule 24(b)(1) requires a motion for permissive intervention to be "timely." In addition, Rule 24(b)(3) directs the court to consider whether intervention "will unduly delay or prejudice the adjudication of the original parties' rights."

The test for timeliness is "essentially one of reasonableness." *Angilau,* 2017 WL 9496068, at *3 (citation omitted). "What constitutes a timely application is not spelled out in the Rule and 'must be answered in each case by the exercise of the sound discretion of the trial court.'" *Id*. (quoting *Simms v. Andrews*, 118 F.2d 803, 806 (10th Cir. 1941)). "The primary purpose of the timeliness requirement is to guard against prejudice to the original parties and not to sanction proposed intervenors who might have intervened earlier. Prejudice resulting from the intervention itself, as opposed to the intervenors' tardiness, cannot be considered in determining the timeliness of a motion." *American Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 250 (D.N.M. 2008) (citing *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001)).

Given the posture of this case, the Star's motion to intervene is timely. The Star *could* have moved to intervene shortly after the sealing and protective orders were entered, but doing so, and diverting the parties from their litigation of the merits, would have been more

prone to create the kind of delay and prejudice warned of in subsection (b)(3). That is certainly not the case now that the matter is concluded.

Moreover, it is often argued that a sealing or protective order is needed to avoid the release of information that might influence the potential jury pool. *See, e.g.*, *Bangert v. City of Placer*, No. 17-1667-KJN, 2019 WL 358518, at \*4 (E.D. Cal. Jan. 29, 2019). Given that there will be no trial in this case, that argument is not pertinent to the Star's motion. Finally, even 28 years ago there was a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place ***long after*** a case has been terminated." *Pansy*, 23 F.3d at 779 (emphasis added; citations omitted). *See also United Nuclear*, 905 F.2d at 1426 (movants allowed to intervene to challenge sealing order and protective order three years after case was settled).

The Star's motion to intervene comes after this case has settled but while it is still pending. This is both timely and nonprejudicial.

## C.     The Star Has Standing to Challenge the Orders.

Even though the Rule 24 requirements for intervention are met, the Star recognizes that it must also establish Article III standing in order to intervene. *Parson*, 352 F. Supp. 3d at 1147; *Young*, 2018 WL 1588026 at \*7; *Angilau*, 2017 WL 9496068, at \*4; *Exum v. U.S. Olympic Committee*, 209 F.R.D. 201, 204 (D. Colo. 2002). This requires the Star to show:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

> speculative, that the injury will be redressed by a favorable
> decision.

*New England Health Care Employee Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008).[6] *See also Young*, 2018 WL 1588026 at *6-7, *Exum*, 209 F.R.D. at 240, and *Angilau*, 2017 WL 9496068, at * 4 (all applying this three-prong test to a media motion to intervene for purposes of challenging confidentiality orders).

Standing to challenge the sealing order (Doc. 644) is easily established. The public, including the media, has a common law right of access to court records. *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124-1135-36 (10th Cir. 2011) ("A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records."). This right was clearly articulated in *Nixon v. Warner Communications*, 436 U.S. 589, 597 (1978) and has been repeatedly cited in this circuit and this district when issues of sealing have arisen. *See, e.g.*, *United States v. Bacon*, 950 F.3d 1286 (10th Cir. 2020); *JetAway Aviation, LLC v. Montrose County Board of Comm'rs*, 754 F.3d 824, 826 (10th Cir. 2014); *King v. Johnson County Board of Comm'rs*, No. 21-2049-KHV, 2022 WL 486550, at *1 (D. Kan. Feb. 17, 2022); *In re EpiPen Marketing, Sales Practices & Antitrust Litigation*, 545 F. Supp. 922, 931, fn. 3 (D. Kan. June 23, 2021). In addition, the Star, as member of the press, has a First Amendment right to gather news to be reported to the public. *See Branzburg v. Hayes*, 408 U.S. 665, 681 (1972); *Irizary v. Yahia*, —F.4th—, 2022 WL 2659426, at *4 (10th Cir. July 11, 2022);

---

[6] The generally cited source of this test is *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

*Journal Publishing Co. v. Meachem*, 801 F.2d 1233, 1236 (10th Cir. 1986); *United States v. Foote*, No. 00-20091-01-KHV, 2002 WL 1822407, at *1 (D. Kan. Aug. 8, 2002). Given these rights, courts have consistently held that a sealing order creates an injury-in-fact that can be redressed if the order is lifted, thereby establishing standing for media entities seeking to intervene. *See Parson*, 352 P.3d at 1148; *Angilau*, 2017 WL 9496068, at *4; *McVeigh*, 918 F. Supp. at 1456; *see also SanMedica International v. Amazon.com, Inc.*, No. 13-00169, 2015 WL 6680222 (D. Utah Nov. 2, 2015).

The matter of the protective order is somewhat different. In some circuits, independent standing does not have to be established to challenge a protective order. *See, e.g., Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009) (stating that "most cases addressing third party challenges to protective orders in ongoing lawsuits overlook the standing question."). In the Tenth Circuit, however, courts rely upon the holding in *Oklahoma Hospital Ass'n v. Oklahoma Publishing Co.*, 748 F.2d 1421 (10th Cir. 1984), *cert. denied*, 473 U.S. 905 (1985) to require a showing of Article III standing in order to intervene, even in the context of a non-party challenge to a protective order. The intervening press entities in *Young* made the mistake of not addressing this requirement, citing only a decision from the District of Columbia Circuit to argue that "[a] showing of standing is not necessary here." 2018 WL 1588026, at *5. But the court found that, pursuant to *Oklahoma Hospital Ass'n*, standing *did* have to be shown,[7] and because the press "did not even attempt to do so" its motion to

---

[7]  The *Young* court did, however, aptly observe that the three-prong standing test is "not easily applied to the Press's  request for intervention for the limited purpose of modifying a protective order to obtain public access to protected documents." Young, 2018 WL 1588026, at *6.

intervene was denied—even though, the court said, "facts may have existed demonstrating standing." 2018 WL 1588026, at *7. The Star will not make the same mistake here and will squarely address the issue of standing with regard to the protective order.

Protective orders differ from sealing orders in that they generally do not restrict access to documents filed with the court, but rather documents exchanged in discovery, which are not subject to the same common law right of access. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *Eaton v. Harsha*, No. 06-4030-JAR, 2006 WL 3316792, at *2 (D. Kan. Oct. 23, 2006). Nevertheless, protective orders do create an injury-in-fact to a media entity because they erect an obstacle to the media's ability to gather information from those restricted by the order. In the absence of such an order, "parties to litigation have a constitutionally protected right to disseminate information obtained by them through the discovery process." *Oklahoma Hospital Ass'n v. Oklahoma Publishing Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984); *see also Pulsecard, Inc. v. Discover Card Services, Inc.*, No. 94-2304-EEO, 1995 WL 526533, at *5 (D. Kan. Aug. 31, 1995). Given the injury created by the protective order, the first two prongs of the standing test are met. *See Oklahoma Hospital Ass'n*, 748 F.2d at 1424; *Young*, 2018 WL 1588026, at *7; *SanMedica International*, 2015 WL 6680222, at *3 (D. Utah Nov. 2, 2015).

The standing problem identified in *Oklahoma Hospital Ass'n* deals with the third prong of the test—redressability. According to the court:

> [A]ssuming we were to lift the protective orders, still the parties to the underlying suit cannot be compelled, ipso facto, to disseminate documents in their possession; OPUBCO, a

nonparty, can gain access to those documents only by exercising a party's right to disseminate. This it cannot do. Moreover, the protective orders were imposed by the district court following the parties' agreement and stipulation to terms and conditions for production of documents. Neither OHA nor DHS objected to or appealed from the district court's imposition of those orders. In light of the fact that the parties have not chosen to assert their rights of dissemination, we view it as highly unlikely that they would do so were we simply to lift the protective orders at this time. Consequently, it is unlikely that OPUBCO would succeed in obtaining the redress it seeks—access to the documents—were we to lift the protective orders. We therefore conclude that OPUBCO has failed to satisfy the second constitutional requirement for standing under *Valley Forge*.[8]

748 F.2d at 1425.

The Star recognizes that, generally speaking, even if the protective order in this case is lifted, the parties may or may not provide the Star with any information currently covered by the order. But there are at least two reasons why that should not be a bar to the Star's right to intervene.

First, even though the parties jointly requested the imposition of the protective order in 2019, their views on whether some or all of the information covered by the order must remain confidential three years later after the case has settled may be different. If one of the parties does not entirely oppose the Star's motion with regard to the protective order, this would be an indication that the party may be willing to provide information if not constrained by the order. *See Exum*, 209 F.R.D. at 205 (press had standing to intervene and oppose

---

[8] The court in *Oklahoma Hospital Ass'n* treated redressablity as the second prong of the test and traceability as the third.

motion for protective order because plaintiff also opposed the order and there was a chance he might provide at least some information to the press).[9]

Second, it must be remembered that the Unified Government is subject to the Kansas Open Records Act (KORA) and, therefore, in the absence of the protective order, might be compelled to produce some of the information covered by the order.[10] In *Daines v. Harrison*, 838 F. Supp. 1406 (D. Colo. 1993), a newspaper moved to intervene to challenge a protective order prohibiting disclosure of a settlement agreement. The government defendant argued that the newspaper lacked standing under the holding of *Oklahoma Hospital Ass'n.* But the court rejected this argument, reasoning that, regardless of the fact that it would not *voluntarily* provide information to the newspaper, it might be compelled to do so under the Colorado Open Records Act. The court stated:

> The *Oklahoma Hospital* case is distinguishable. Even if the protective order in that case had been vacated, the parties would not have been obligated to disseminate the desired information, procured by the parties during discovery, to nonparties. *Oklahoma Hosp.*, 748 F.2d at 1425. The parties had vigorously resisted dissemination of this material and were not going to relinquish it voluntarily. There was no mechanism for access to discovery materials by nonparties. In contrast to this, the Colorado Open Records Act creates a presumption of access to public records. COLO. REV. STAT. § 24-72-203 (1988 Repl.

---

[9]  This is akin to "piggyback standing," which is available to an intervenor when "another party with constitutional standing on the same side as the intervenor remains in the case." *City of Colorado Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1080 (10th Cir. 2009); *see also Parson*, 352 F. Supp. 3d at 1148; *Young*, 2018 WL 1588026, at *6.

[10]  All information maintained, kept by or in the possession of the Unified Government and its officers and employees is a "public record" subject to the provisions of KORA. KAN. STAT. ANN. § 45-217(l)(1); *Data Tree, LLC v. Meek*, 279 Kan. 445, 453, 109 P.3d 1226 (2005).

> Vol.). Refusal of access can be challenged in state court. The custodian of records must then show cause why access was denied. Colo. Rev. Stat. § 24-72-204(5) (1988 Repl. Vol.). I therefore reject defendant's redressability argument. Dealing with the confidentiality order is a necessary first step in addressing the newspaper's contentions.

838 F. Supp. at 1407-08. The court further held that this result was not changed by the fact that the defendant might be able to invoke an exemption to disclosure found in the open records act, because "[t]he possibility that petitioners might fail in their attempt to gain access to the settlement agreement, for a reason other than the confidentiality order entered by the magistrate, is simply not enough to defeat standing." *Id*. at 1407.

Because there is at least a possibility that the Star may be able to obtain access to information covered by the protective order if the order is modified, the Star has standing and should be allowed to intervene.

### III.
### THE PLEADING REQUIREMENT OF RULE 24(C) SHOULD BE CONSIDERED MET

Rule 24(c) directs that a motion to intervene be accompanied by "a pleading that sets out the claim or defense for which intervention is sought." In *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992), the court held that an intervenor that sought to challenge a protective order was relieved of the requirement of attaching a "pleading" because it was not seeking to become a party to the action or to assert any claims or defenses on the merits. The court held that the intervenor's motion adequately apprised the court of the grounds for intervention, thus fulfilling the purpose of Rule 24(c). *Id*. This holding in *Beckman* was followed by the Tenth Circuit in *Alvarado v. J.C. Penny Co., Inc.*,

997 F.2d 803, 805 (10th Cir. 1993). *Accord Does 1-6 v. Mills*, No. 21-00242-JDL, 2021 WL

6197377, *3 (D. Me. Dec. 30, 2021) (in case where media intervened to challenge protective

order, court stated: "Here, no new claim or defense will be added to the existing suit if

intervention is granted, nor will additional parties to the litigation be joined in relation to the

merits of the Plaintiffs' claims. Thus, this is an instance in which a pleading is not

necessary."); *Innovation Ventures LLC v. Pittsburg Wholesale Grocers Inc.*, No.

13-CV-6397(KAM)(ST), 2019 WL 4805041, at *1 (E.D.N.Y. Sept. 30, 2019) (pleading not

necessary where intervenor "seeks intervention to have this court modify the protective

order"); *WaterLegacy v. U.S. E.P.A.*, 300 F.R.D. 332 (D. Minn. 2014); *Yaffa v. Sunsouth

Bank*, No. 12CV00288/MCR/CJK, 2014 WL 11512204, at *2 (N.D. Fla. Feb. 19, 2014). *See

also School Board of City of Newport News v. T.R. Driscoll, Inc.*, No. 11CV79, 2011 WL

3809216, at *3 (E.D. Va. July 29, 2011) ("Since General Casualty is moving to intervene for

a limited purpose, which is clearly set forth in its motion and memoranda, the Court does not

find it necessary to demand strict compliance with the Rule 24(c) provision requiring that the

motion to intervene be accompanied by a pleading."); *Daines*, 838 F. Supp. at 1408 (granting

motion to intervene to challenge confidentiality order that did not strictly comply with Rule

24(c) and noting that "federal courts have been quite lenient in permitting participation by

parties who failed to comply with rule 24").

The Star seeks to intervene for a limited purpose and to not assert claims or defenses

going to the merits of the case. Its present motion fully sets forth the grounds for intervention

and the basis for the relief it seeks. Given these circumstances, the Star requests that it not

be required to file a separate "pleading" setting forth its arguments. *See SanMedica International*, 2015 WL 6680222, at *4 (granting intervention and directing intervenor to simply proceed with filing her motion to unseal within 14 days).

## CONCLUSION

For the reasons stated above, the Star requests that its motion to intervene be granted so that it may proceed to file a motion to vacate the sealing order and modifying the protective order in this case.

Respectfully submitted,

 /s Lyndon W. Vix
Lyndon W. Vix - #12375
FLEESON, GOOING, COULSON & KITCH, L.L.C.
1900 Epic Center, 310 N. Main
Wichita, Kansas 67202
(316) 267-7361
lvix@fleeson.com
*Attorneys for Movant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2022, I submitted the above and foregoing memorandum to the Clerk of the Court for filing through the CM/ECF System, which will provide service to all counsel of record.

 /s/ Lyndon W. Vix
Lyndon W. Vix