IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LAMONTE MCINTYRE and ROSE LEE MCINTYRE, Plaintiffs, Vs. UNIFIED GOVERNMENT OF WYANDOTTE COUNTY AND KANSAS CITY, KANSAS, et al. | Case No. 18-2545-KHV |

**MEMORANDUM IN SUPPORT OF THE MIDWEST INNOCENCE PROJECT'S MOTION TO INTERVENE FOR A LIMITED PURPOSE**

Movant, the Midwest Innocence Project, a nonprofit law firm (hereinafter "MIP"), hereby submits this memorandum in support of its motion filed August 26, 2022, (Doc. 701) moving this court for an order permitting it to intervene in this action for the limited purpose of filing and arguing its motions to vacate the order to seal entered on May 11, 2022 (Doc. 644) and to modify the protective order entered on November 8, 2019 (Doc. 124.). For the reasons stated below, the motion to intervene should be granted.

**BACKGROUND AND PROCEDURAL POSTURE**

On August 23, 2022, the Court sustained the motions of fellow intervenors McClatchy Company LLC, and KCUR 89.3 F.M. both of whom stated significantly similar arguments to the ones contained herein. (Doc. 699; Doc. 700). Like McClatchy and KCUR, MIP has an interest in the information sealed under the protective order. However, unlike those parties, MIP also represents individuals directly impacted by this litigation and the withheld information.

The Midwest Innocence Project is a nonprofit legal organization whose mission is to investigate and litigate claims of wrongful conviction in a five-state region comprised of Kansas, Missouri, Iowa, Arkansas, and Nebraska. In carrying out this mission, the MIP relies on publicly

1

available information, independent research, and partnerships with community members to obtain the information relevant to its cases and the litigation of wrongful conviction cases. MIP cannot file a pleading to overturn an unjust conviction until it has the evidence necessary to substantiate the defendant's innocence claim, which requires MIP have access to documents related to the cases it investigates and the actors who played a role in its client's convictions. To that end, MIP relies, in part, upon information uncovered in criminal cases not involving its clients, as well as that unearthed in civil cases like the one before the court. In addition to its activities in a legal capacity, MIP also performs research, releases reports, engages with community leaders, and advocates for reform within the criminal legal system. Indeed, MIP has a significant interest in overturning wrongful convictions in Wyandotte County and reforming the system that permitted such unjust convictions to be secured within the jurisdiction. With co-counsel Morgan Pilate, MIP represented Plaintiff Lamonte McIntyre in the underlying case to overturn his wrongful conviction. MIP and Morgan Pilate also represented Olin "Pete" Coones in the case that led to his exoneration in 2020.[1] Like Plaintiff, Mr. Coones was also wrongfully convicted in Wyandotte County as the result of official misconduct.

As a result of Plaintiff McIntyre's exoneration and the continued need for justice in Wyandotte County, MIP has staffed a unit to investigate cases within Kansas City, Kansas, securing $294,582 in federal grant funds[2] and $1 million in independent funding[3] to support this

---

[1] Luke Nozicka, "Pete Coones, exonerated in Kansas City, Kansas, murder, dies after 108 days of freedom", KANSAS CITY STAR, Feb. 22, 2021, available at https://www.kansascity.com/news/local/crime/article249417185.html

[2] *See Midwest Innocence Project's Wyandotte County WCR*, BJA, https://bja.ojp.gov/funding/awards/2020-fa-bx-0006. These funds were earmarked not only for MIP's review of Wyandotte County wrongful conviction cases, but also included funding to staff the Wyandotte County District Attorney's Conviction Review Unit.

[3] *Midwest Innocence Project gets donation of $1 million, thanks Jay-Z's Team Roc*, KESQ, https://kesq.com/news/2021/10/11/midwest-innocence-project-gets-donation-of-1-million-thanks-jay-zs-team-roc/

work. MIP currently represents multiple individuals claiming innocence of the crimes for which they were convicted in Wyandotte County. Access to documents regarding their cases and actors involved in their cases, as well as conduct by officials in Wyandotte County generally, are necessary to ensure that their rights are vindicated and no unjust conviction is permitted to stand.

On November 8, 2019, this Court entered a protective order pursuant to a joint request by the parties. (Doc. 124). The order defines the term "Confidential Information" and allows the parties to designate information exchanged in discovery as Confidential Information if it falls within the following categories:

(a) Financial records of Plaintiffs and any related materials;

(b) Medical or mental health records of any party or non-party;

(c) Personnel files or records of current or former employees of the Unified Government of Wyandotte County and Kansas City, Kansas or its predecessor(s); and

(d) Criminal investigation records in open investigations of the Unified Government of Wyandotte County and Kansas City, Kansas or its predecessor(s). For the purpose of this order, "open investigation" means a case that has not been prosecuted or has not been closed.

(Doc. 124, pp 2-3). The order further limits dissemination of the Confidential Information to specific individuals specified within the order. (Doc. 124, pp 4-5). The order allows information produced in the case by third-parties to be designated as confidential information.

The order also designates certain categories of information as "Attorney's Eyes Only," while only generally describing what types of information may be designated as such. (Doc. 124 pp 5-6). Information designated as "Attorney's Eyes Only" may only be disseminated to the attorneys involved in the case and their employees and agents, but not to the parties themselves. (Doc. 124, pp 6).

The order provides that it may be modified "by the Court on its own motion or on motion of any party or any other person with standing concerning the subject matter" after the parties have been provided notice and an opportunity to be heard. The order remains in effect after the litigation has concluded and all Confidential Information is to be destroyed within 28 days. (Doc. 124, pp 8-9). The order is still subject to modification after the case has ended. (Doc. 124, pp 9).

On June 30, 2022 the parties reported to the Court that the case had been settled at a mediation held the day before. (Doc. 687). On June 30, 2022, the Board of Commissioners of the Unified Government approved the payment of $12.5 million to the Plaintiffs to settle the case.[4] The sealing order restricts access to information which Plaintiffs contend, and the Unified Government implicitly acquiesces to in settling, would defeat the Unified Government's motion for summary judgement, and warranted this staggering payout.

If Plaintiff's exoneration and this instant case have shown, it is that there are indeed other wrongful convictions in Wyandotte County. And the protective order, without modification, prevents MIP from accessing information relevant and crucial to MIP's activities in representing its clients and litigating wrongful conviction claims. Particularly of interest to the MIP is information related to decades long police misconduct and wrongdoing in the Unified Government and the KCKPD which is relevant to the MIP's current clients, as well as future clients whose innocence may be uncovered because of access to the information and further investigation.

**ARGUMENT**

I.  **Intervention is the Appropriate Procedural Mechanism for Third-Party Movants to Challenge Court Orders Limiting Access to Court Records**

---

[4] This is the largest public settlement related to a wrongful conviction in the State of Kansas' history. This figure amounts to approximately 3% of the Unified Government's total 2022 budget, would be the 6th highest line-item, and is more than the budget for all judicial services combined.

4

Intervention is the most widely accepted means to challenge a court order relating to third-party access to court records. While the Tenth Circuit has been unclear on the correct procedural mechanism, courts in the Circuit, including this one, generally recognize intervention as the appropriate method, and this Court should rule this motion is properly brought as a motion for intervention.

The Tenth Circuit has yet to resolve the particular question of which procedural mechanism is the correct one for third-party intervention seeking to modify protective orders and others related to court documents produced in a civil lawsuit. The federal courts have recognized that third-parties have the right to intervene to argue motions related to discovery orders where the information in question implicates the public interest. see *N. States Power Co. v. Westinghouse Elec. Corp.*, 156 F.R.D. 168, 171 (D. Minn. 1994) (holding that non-profit group may intervene for the purposes of arguing motions for access to discovery material produced in a civil case.); see also *Angilau v. United States*, No. 2:16-00992-JED, 2017 WL 9496068 (D. Utah July 27, 2017). Nine of the eleven sister circuits in total have recognized that intervention is the appropriate method rather than mandamus or declaratory judgement. *See, e.g. Pub. Citizen v. Liggett Grp., Inc.,* 858 F.2d 775 (1st Cir. 1988); *Doe v. Pub. Citizen*, 749 F.3d 246 (4th Cir. 1988); *Flynt v. Lombardi,* 782 F.3d 963 (8th Cir. 2015). The Tenth Circuit has certainly recognized that intervention is the most widely accepted procedure to for third-parties to challenge a protective order. *United Nuclear Corp. v. Cranford Ins. Co*., 905 F.2d 1424, 1427 (10th Cir. 1990) ("The courts have widely recognized that the correct procedure for a nonparty to challenge a protective order is through intervention for that purpose") (citing *Public Citizen* 858 F.2d at 783). Although the Circuit has on least one occasion stated that Mandamus was the appropriate procedure. *See United States. v.* McVeigh, 918 F. Supp. 1452 (W.D. Okla. 1996). Despite some lack of

5

consistency from the court, it appears that generally courts in the circuit – including this Court – most commonly accept motions of this type as motions for Rule 24 intervention. *See Barnwell v. Corr. Corp. of Am.*, No. 08-2151-JWL, 2009 WL 10645266, fn. 1 (D. Kan. Aug. 27, 2009) (holding intervention was the appropriate mechanism for third-party to intervene for the purpose of challenging a sealing order); *Parson v. Farley,* 352 F. Supp. 3d 1141, 1146 (N.D. Okla. 2018), aff'd, No. 16-CV-423-JED-JFJ, 2018 WL 6333562 (N.D. Okla. Nov. 27, 2018); *Landco Equity Partners, LLC v. City of Colorado Springs, Colo.*, 259 F.R.D. 510 (D. Colo. 2009).

As such, the MIP requests that this court examine the MIP's involvement in in this case under the law of Rule 24 intervention. In the alternative, if the Court finds intervention not the correct procedural mechanism, the MIP requests that it be allowed to submit its motion as a request for a writ of mandamus.

**II.     The MIP Meets the Rule 24 Requirements for Intervention**

Under Federal Rule of Civil Procedure 24(b)(1)(B), "On timely motion, the court may permit anyone to intervene who… has a claim or defense that shares with the main action a common question of law or fact." The specific requirements of Rule 24 are an imperfect fit for situations where a third party is seeking to alter a protective order in a civil suit. *See Angilau v. United States*, No. 2:16-00992-JED, 2017 WL 9496068 (D. Utah July 27, 2017) (granting motion to intervene by media organizations under Rule 24 permissive intervention despite the "imperfect fit" of rule 24 to the circumstances). Meeting the requirements of Rule 24 permissive intervention means that MIP's motion must (1) be timely, so as to not prejudice any of the parties, and (2) share a common question of law or fact with the main action.

A.    <u>The Common Question Requirement is Met</u>

6

In general, the public's right to access is sufficient to meet the common question requirement of Fed. R. Civ. P. 24(b)(1)(B). *Angilau v. United States*, 2017 WL 9496068, at *3 ("[I]ntervenors have asserted a claim—the public's right of access—sufficient to meet the common question test of Rule 24(b)(1)(B).") Intervention may also be granted based on the "reasonable needs of other parties in other litigation." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (affirming trial court granting of motion to intervene and motion to modify protective order in favor of legal group seeking information in civil suit for their own separate civil suit). While the media interveners in this case seemingly rely on their purpose as media organizations, intervention in this fashion is available to any member of the public or organization, not just media organizations. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d (affirming ruling allowing intervention of non-profit advocacy organization seeking to access information produced in civil suit); *Jessup v. Luther*, 227 F.3d 993, 998 (7th Cir. 2000) ("[A]ny party challenging a confidentiality order 'meet[s] the requirement of Fed.R.Civ.P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action.'") (quoting *Pansy v. Stroudsburg*, 23 F.3d 772, 778 (3d Cir.1994)). In this case, MIP asserts both the public's right to access, and access based on its reasonable need for information as a party in other litigation against the Unified Government and parties to this case; MIP's interest is not abstract—it represents a number of individuals whose cases were infected with misconduct, resulting in a wrongful conviction. . Further, courts have recognized the public interest in information relating to police misconduct as a powerful justification for release. *Bangert v. Cnty. of Placer,* No. 2:17-CV-1667 KJN P, 2019 WL 358518, at *4 (E.D. Cal. Jan. 29, 2019) ("[C]ourts have found a strong public interest in the disclosure of records related to alleged officer misconduct.") As such the MIP has

7

presented a claim that raises common questions of law and fact sufficient to intervene under 24(b)(1(B).

B. <u>The MIP's Motion is Timely and Will Not Delay or Prejudice the Parties' Rights</u>

Rule 24(b)(1)(B) requires that a motion for intervention be "timely" and directs the court to consider whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights."

The test for timeliness is "essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Angilau,* 2017 WL 9496068. At *3 (quoting *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir. 1995)). "The primary purpose of the timeliness requirement is to guard against prejudice to the original parties and not to sanction proposed intervenors who might have intervened earlier." *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 250 (D.N.M. 2008).

Given the recent disposition of this case, including this Court's order permitting the Kansas City Star and KCUR to intervene, MIP's motion to intervene is timely, and creates no prejudice for any of the parties. The MIP may have chosen to intervene earlier in the case, however, arguably doing so would have been more likely to prejudice the parties as the case was ongoing. While there is no hard rule for when a motion to intervene to access court records must be brought, courts in this Circuit have found such motions timely years after a case has settled or otherwise concluded *see United Nuclear*, 905 F.2d at 1426 (allowing movants to intervene three years after conclusion of case). MIP has acted within a reasonable period of time to file its motion, as such, MIP's motion is timely.

Further, this motion does not prejudice any party. Given that due to the settlement this case will not be proceeding to trial, there is no risk of prejudicing a jury pool, a common justification for sealing or protective orders. *See e.g., Bangert v. City of Placer*, No. 17-1667-KJN, 2019 WL 358518, at *4 (E.D. Cal. Jan. 29, 2019). Plaintiff's response to the motions of the other two intervenors also supports the contention that no prejudice is caused by this motion. (Doc. 698); (Doc. 693); (Doc. 697). Plaintiff supports the motions to intervene and agree that the motions are timely. MIP's motion comes mere days after the motions of the other intervenors, and regardless of such has been filed in a reasonable time.

### III.     The MIP has Article III Standing to Intervene

To have standing a party must show that:

(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*New England Health Care Emps. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288 (10th Cir. 2008).

The public has a long-recognized common-law right to access the records of the Court. *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1135 (10th Cir. 2011) ("A party seeking to file court records under seal must overcome a presumption, long supported by courts, that the public has a common-law right of access to judicial records") (citing *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir.2007)). Courts in this circuit consistently hold that a sealing order creates an injury that can be redressed if the order is lifted. Angilau v. United States, No. 2:16-00992-JED, 2017 WL 9496068, at *4 (D. Utah July 27, 2017) ("Movants have an interest in this matter that may be harmed by sealing of certain records or closing of some proceedings.

9

That potential injury—denial of public access—is clearly traceable to the sealing of records, and that possible injury can be redressed by a favorable decision here."); *SanMedica Int'l v. Amazon.com Inc.*, No. 2:13-CV-00169, 2015 WL 6680222, at *4 (D. Utah Nov. 2, 2015) ("Because the information would be made public if the court granted her Motion to Unseal, Professor Tushnet's injury is likely to be redressed by a favorable decision.")

The protective order, likewise creates an obstacle to MIP obtaining information in the case that it has a right to as an organization acting as a proxy for the public, as well as in gathering information relevant to its work and litigation involving the Unified Government and KCKPD. Unlike the sealing order, the protective order applies to information exchanged in discovery, which the public generally does not have a right to. In this case, however, the Plaintiff's response to the motions filed by other intervening parties is instructive. Plaintiff confirms that "they may be willing to provide certain information currently under protection of Paragraph 10(b) of the protective order if they are no longer restrained by it." (Doc. 697 at 1). As such, the protective order is the only impediment to MIP obtaining access to the documents in question, and creates an injury in fact redressable by the court.

### IV.  Movant Has Complied With The Pleading Requirement Of Rule 24(C).

Rule 24 generally requires that a motion brought under the rule be accompanied by a pleading setting forth the claim or defense for which intervention is sought. *See Alvarado v. J.C. Penny Co., Inc.,* 997 F.2d 803, 905 (10th Cir. 1993). However, the Tenth Circuit does not require such a pleading when the court is "sufficiently apprised of the nature of the intervenor's claims and interests to rule." *Alvarado v. J.C. Penney Co.*, 997 F.2d 803, 805 (10th Cir. 1993).

Herein MIP has fully set forth its arguments supporting the motion to intervene and believes that this court is sufficiently appraised of the nature of and reason for intervention. This court should find the additional pleading requirements has been met.

## CONCLUSION

For the reasons set forth above, The Midwest Innocence Project requests that the court grant its motion to intervene so that it may file its motions to vacate and modify.

                Respectfully Submitted,

                /s/Jean K. Gilles Phillips
                Jean K. Gilles Phillips, #14540
                Project for Innocence
                    and Post Conviction Remedies
                1535 W. 15th, Room 409
                University of Kansas School of Law
                Lawrence, Kansas 66045
                Telephone:  (785) 864-5571
                FAX: (785) 864-5054
                Email: phillips@ku.edu


                *Tricia J. Rojo Bushnell\**
                Tricia J. Rojo Bushnell, Missouri Bar #66818
                **MIDWEST INNOCENCE PROJECT**
                3619 Broadway Blvd., #2
                Kansas City, MO 64111
                Phone: (816) 221-2166
                trojobushnell@themip.org
                *Counsel for Midwest Innocence Project*
                *\* Pending admission pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of August 2022, I submitted the above and foregoing motion to the Clerk of the Court for filing through the CM/ECF System, which will provide service to all counsel of record.

/s/Jean K. Gilles Phillips
Jean K. Gilles Phillips, #14540
