**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

LAMONTE MCINTYRE &,
ROSE LEE MCINTYRE,

                  Plaintiffs,

    v.                                     Case No. 2:18-cv-02545-KHV-KGG

UNIFIED GOVERNMENT OF WYANDOTTE
COUNTY AND KANSAS CITY, KS, et al.,

                  Defendants.

---

### Joint Response to Motions to Modify Protective Order

Defendants jointly submit the following response opposing the Intervenors' motions to modify the protective order herein, *Docs. 708 and 710.*

Intervenors, news/media organizations, seek to modify the Protective Order filed herein to gain access to "Confidential Information" produced during discovery but never filed with the Court. Intervenors have withdrawn their requests to unseal documents filed by Plaintiffs during summary judgment briefing. The records and documents at issue for Intervenors' motions were never filed with the court nor were they used in any judicial proceeding.

On August 1, 2022, Plaintiffs stated they may be willing to provide certain information to the media outlets if they were no longer restrained by the protective order. *Doc. 693*, at 2. Plaintiffs themselves, however, do not seek modification of the protective order.

Defendants object to the relief requested by Intervenors. Intervenors lack standing for the relief requested. The relief requested by Intervenors is not warranted and poses harm to parties and

non-parties. Intervenor's motions should be denied.

## Background/Facts

Plaintiffs sued the Unified Government and several former officers of the Kansas City, Kansas Police Department claiming that the officers violated Plaintiffs constitutional rights. In discovery, the Unified Government produced voluminous material, including personnel records of parties and non-parties, and criminal investigation records for yet-unresolved homicides. These documents were produced subject to a protective order that prohibited public disclosure of these confidential records.

On November 8, 2019, the Court issued a Protective Order preventing the release of certain discovery, designated Confidential Information, by the parties to the public or third parties *Doc. 124*.

1.  All parties agreed that the disclosure of certain documents could potentially cause harm to the interests of the disclosing party. *Id*., at 2, ¶ 2.

2.  The parties moved for the protective order stating the documents should be "protected from disclosure outside this litigation, and only used for the prosecution or defending this action and any appeals." *Doc. 124*, at 1-2.

3.  The parties agreed, and the Protective Order provides that the Confidential Information designated and produced pursuant to the Order "must be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals." *Id*., at 4, ¶ 6.a.

4.  The parties agreed, and the Order required provides that the "parties must take reasonable efforts to prevent unauthorized or inadvertent disclosure of documents designated as containing Confidential Information." *Id*., at 6, ¶ 6.d.

5.  The parties agreed to refrain from, and the Order precluded the filing of Confidential Information with the Court except by (a) consent of the designating party with necessary redactions or (b) under seal with approval of the Court. *Id*., at 6-7, ¶ 7.

6.  The order provided that any party could challenge the designation of any material or document as Confidential Information. *Id*., at 7, ¶ 8.

No party challenged the designation of any material or document as Confidential Information.

Plaintiffs settled their claims against the defendants and a stipulation of dismissal with prejudice was filed. *Doc. 691*, filed July 21, 2022.

## Summary of Argument

Intervenor's lack standing for the relief they request. Nonetheless, the release of Confidential Information here:

1. Undermines the Rule 1 objective allowing the court and the parties "to secure the just, speedy, and inexpensive determination of every action and proceeding,"

2. Presents an unreasonable risk of harm through the release of private information pertaining to the individual defendants,

3. Presents an unreasonable risk of harm to active criminal investigations, and

4. Presents an unreasonable risk of harm to the safety and welfare of witnesses.

To be clear, Defendants are not objecting to the disclosure of already public information exchanged during discovery. By its terms, the Protective Order does not cover already public information. *Doc. 124* ("Information or documents that are available to the public may not be designated as Confidential Information."). The Kansas Open Records Act (KORA), K.S.A. 45-215, *et seq.* defines records which must be made public by a governmental entity upon request. If presented with a request under KORA, the Unified Government would comply with applicable state law. Defendants are objecting to the blanket release of information regularly not released under the Kansas Open Records Act such as: 1) personnel records relating to officers; 2) private information of witnesses in open investigations; and 3) criminal investigation records pertaining to open investigations.

Exhibit 1 illustrates the Kansas City, Kansas Police Department Special Investigations Unit includes a Cold Case Unit that investigates open missing person cases, equivocal death or sexual assault cases or unsolved homicide cases or homicide cases originally declined for charging because of insufficient evidence. Doc. 718-1. A cold case may be resolved even if the suspect is

deceased. The disclosure of open investigations would interfere with any prospective law enforcement action, criminal investigation or prosecution. The discovery in this case includes open investigations cases.

### Argument and Authority

Intervenors seek to have the Protective Order (Doc. 124) modified to permit the parties to disclose personnel files or records, criminal investigation records, and any information separately designated as "Attorney Eyes Only." Doc. 709, at 7, Doc. 711, at 4-5.

**I.      The Court lacks jurisdiction to address Intervenors' motions.**

Standing is a threshold requirement for a federal court to adjudicate a dispute and the court cannot reach the merits of the Intervenors' motion as Intervenors' have not first demonstrated that a "case or controversy" exists which is proper for judicial resolution. *Oklahoma Hosp. Ass'n v. Oklahoma Pub. Co.*, 748 F.2d 1421, 1423 (10th Cir. 1984) (holding publishing company lacked standing to secure order vacating protective orders entered in an action).

**A.      Intervenors lack standing and are not entitled to the relief they request.**

The case or controversy supporting the Court's jurisdiction terminated on July 21, 2022. There is no case or controversy to which Intervenors have Article III standing. The parties have settled, the case has been dismissed with prejudice, none of the parties seek any post-judgment relief, and none of the parties ask the court to revisit and modify the terms of the protective order.

Intervenors' motions are predicated on the right of the press to gather news. The Tenth Circuit expressly and directly addressed such a claim and held the non-party news organization lacked standing. *Oklahoma Pub. Co.*, 748 F.2d at 1423 (rejecting standing predicated on alleged First Amendment right to gather information). In *Oklahoma Pub. Co.*, the Tenth Circuit directly addressed and rejected the arguments advanced by Intervenors—that is, but-for the protective orders parties could disseminate the Confidential Information secured through discovery and the

news organizations would then be free to gather and publish should the parties choose to disclose them. *Id*., at 1424. *Accord Bond v. Utreras*, 585 F.3d 1061, 1072 (7th Cir.2009) (journalist seeking to intervene after dismissal to challenge protective order entered in case must show standing).

**B.**   **Intervenors' motions do not fit within the Court's ancillary (inherent) jurisdiction.**

Dismissal of a lawsuit by stipulation under Fed. R. Civ. P. 41(a)(1)(A)(ii) (as occurred in this case, *Doc. 691*) generally limits the power of the court to issue further orders. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). While a court can take certain postdismissal action in furtherance of its ancillary jurisdiction, a doctrine "which recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them," *id*. at 378, Intervenors' motion to modify the Protective Order herein does not fall within the court's ancillary jurisdiction. It is not a matter "incidental to" another matter that is "properly before" the court.

The *Kokkonen* Court held that, once a lawsuit has been dismissed the doctrine of ancillary jurisdiction empowers the court to act only where necessary to "enable the court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." 511 U.S. at 380. *Kokkonen* held that, to support an exercise of ancillary jurisdiction postjudgment, there must be an express reservation of jurisdiction in the judgment. *Id*., at 379-80. The decision in *Kokkonen* forecloses the Intervenors request to revisit and modify the protective order. It should be noted again that the protective order herein did not, itself, operate to shield any documents filed with the court from public view (and Intervenors expressly disclaim any attempt to obtain those documents, which were filed under seal). Simply put, a court's ancillary jurisdiction affords Intervenors no basis for the relief they seek. *Bond v. Utreras*, 585 F.3d at 1078–79 (ancillary jurisdiction may afford a court authority to modify an order sealing documents maintained in the

{T0476354}                                        5

court file, it does not afford authority for a third-party/intervenor's attack on a protective order).

II.     **A litigant has no First Amendment right to access information through discovery. A non-party, non-litigant news gatherer has no First Amendment right to access material and documents, not filed with the court, which was disclosed via discovery subject to a protective order.**

Intervenors' motion is a threat to the discovery process generally. The protective order, in the form required by the Court, assures parties and counsel that documents that are within the scope of discovery but not admissible on any claim or defense will remain confidential. The thrust of the order is to permit discovery to proceed without requiring Court intervention regarding the need to address confidentiality and protections to be afforded to the documents.

Intervenors attempt to stand in the shoes of litigants and parties when citing to the various standards advanced for the entry of protective order and for the modification of protective orders. The starting point must be clear—Intervenors are not parties or litigants. Intervenors are media/news organizations that are "news gathering." *Doc. 709*, at 21 ("*Star* seeks to have the Protective Order modified so that it may obtain information that can then be reported to the public. [] to engage in news gathering."); *Doc. 711*, at 1 (KCUR "seeks to further report on the case based on the information currently subject to the protective order").

"A ***litigant*** has no First Amendment right of access to information made available only for purposes of trying his suit." (Emphasis added.) *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). Intervenors' status as news gatherers (not litigants or parties) does not afford them any right to the Confidential Information exchanged by the parties solely for the purposes of litigating the plaintiffs' claims against the defendants. "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965).

> Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action. Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

*Seattle Times*, 467 U.S. at 33. The issue presented by Intervenors' motions is <u>not</u> whether the Protective Order should have been issued in the first instance. "Sufficient justification" for protective orders arises from the "prevention of the abuse that can attend the coerced production of information under" the discovery rules. 467 U.S. at 35–36.

Intervenors begin their arguments with the incorrect premise that there is a general rule permitting public access to documents and information produced during discovery. *Doc. 709*, at 8 (quoting *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (which, in turn, cite *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002), and *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir.1999)). For the reasons set forth by the Seventh Circuit in *Bond v. Utreras*, 585 F.3d 1061, 1075–76 (7th Cir. 2009), the Intervenors' premise is incorrect:

> It is true that some cases suggest that Rule 26(c) creates a substantive right of public access to discovery. *See San Jose Mercury News, Inc. v. U.S. Dist. Court for N. Dist.*, 187 F.3d 1096, 1103 (9th Cir.1999); *Public Citizen* [*v. Liggett Grp., Inc.*,] 858 F.2d [775, 787-90 (1st Cir. 1988)]; [*In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139,] 145-57 [(2d Cir.1987)]. These cases, however, were based on a prior version of Rule 5(d) of the Federal Rules of Civil Procedure that generally required all discovery materials to be filed with the court unless the court ordered otherwise. *See, e.g., Agent Orange*, 821 F.2d at 146 (citing a prior version of Rule 5(d)). The drafters of a 1980 amendment to Rule 5(d) considered establishing a rule that discouraged the filing of all discovery but decided not to; "such materials are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally." FED.R.CIV.P. 5(d), advisory committee note (1980). Accordingly, some courts read the prior Rule 5(d) together with Rule 26(c) and concluded that these rules implied the existence of a public right to access discovery even if the discovery was not filed with the court. *E.g., Agent Orange*, 821 F.2d at 145–46.

> Whatever force these decisions had was destroyed by the 2000 amendment to Rule 5(d), which reversed the longstanding rule generally requiring discovery to be filed with the court. Since 2000, information exchanged in discovery "must not be filed" until it is "used in the proceeding" or until "the court orders filing." FED.R.CIV.P. 5(d) (emphasis added). In its present form, then, Rule 5(d) separates discovery material—regardless of whether it is subject to a Rule 26(c) protective order—into two categories: (1) that which is filed with the court (because it is used

> in a court proceeding or is ordered to be filed); and (2) that which remains unfiled and therefore not part of the public court record. As the Second Circuit has recognized, this amendment eliminated any implied right of public access to unfiled discovery emanating from the procedural rules. *See SEC v. TheStreet.com*, 273 F.3d 222, 233 n. 11 (2d Cir.2001) (observing that the 2000 amendment to Rule 5(d) "provides no presumption of filing of all discovery materials, let alone public access to them") (abrogating *Agent Orange*). Accordingly, nothing in Rule 26(c)—either standing alone or when read in conjunction with the current version of Rule 5(d)—confers substantive rights upon third parties seeking access to the fruits of discovery.

*Bond v. Utreras*, 585 F.3d at 1075–76. The United States Supreme Court noted in *Seatle Times* that "pretrial depositions and interrogatories are not public components of a civil trial," noting that even the former requirements of Rule 5(d) were often dispensed with through court order or local rules. 467 U.S. 33 and n.19.

Intervenors cite *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). There, the Tenth Circuit observed that "blanket" protective orders allow litigants to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information. This, in turn, promotes the overriding goal of the Federal Rules of Civil Procedure, "to secure the just, speedy, and inexpensive determination of every action." *United Nuclear*, 905 F.2d at 1427 (quoting Fed.R.Civ.P. 1). *See also S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010) (protective orders serve vital function of securing just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant) (quotation and citation omitted).

The Tenth Circuit noted, in *United Nuclear*, that blanket protective orders "make the discovery process in a particular case operate more efficiently" as the confidentiality assured by the orders "encourage disclosures that otherwise would be resisted." 905 F.2d at 1427. Also, "[a]llowing modification of protective orders for the benefit of collateral litigants tends to

undermine the order's potential for more efficient discovery. *Id.*, at 1427–28.

*United Nuclear* does not, as Intervenors suggest, adopt or countenance the two-step procedure from *Roman Catholic Archbishop*. Doc. 709, at 13. The Tenth Circuit, in *United Nuclear* was addressing a claim by collateral litigants seeking access to discovery produced under a protective order to avoid duplicative discovery. 905 F.2d at 1427-28. The Tenth Circuit then approved a modification of the protective order protecting the interests of the parties to the original litigation by "placing Intervenors under the restrictions on use and disclosure contained in the original protective order." *Id.*, at 1428. Intervenors here (1) are not collateral litigants and (2) are not asking access to the Confidential Information while subject to the same restrictions on use and disclosure.

Intervenors' selective quotation and use of ellipses when discussing *United Nuclear* materially misses the holding of that case. First, the portions cited are a quote from *Wilk v. American Medical Ass'n*, 635 F.2d 1295 (7th Cir.1980). The entire quote is as follows:

> We find ourselves in agreement with the standard laid down by the Seventh Circuit in *Wilk*:
>
> "***[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would*** tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order." [Citations omitted.]

*United Nuclear* 904 F.2d at 1428 (quoting *Wilk*, 635 F.2d at 1299 (emphasis added)). Intervenors omit the emphasized text above which illustrates the limited application of *United Nuclear*—that is, *litigants* seeking to modify a protective order to avoid repetitious discovery with the same party are to be denied only upon a showing of prejudice. Intervenors are not litigants nor do they seek the confidential information to avoid repetitive discovery in collateral litigation with any of the

parties to this case. Rather, Intervenors are news and media organizations engaged in news gathering. While news gathering is undeniably an activity protected by the Free Press clause of the First Amendment, the right to gather news does not bestow a right under the First Amendment for the press to employ the compulsory process of the Rules of Civil Procedure to gather that news. Nor does the First Amendment empower a litigant that has availed itself of the compulsory process to then make public Confidential Information made available only solely for purposes of prosecuting or defending this lawsuit. *Seattle Times,* 467 U.S. at 32; *Doc. 124*, at 4, ¶ 6.a.

*United Nuclear's* discussion of the prejudice requirement for modification of a protective order contemplated the fact the parties seeking the modification were litigants who agreed to be subject to the restrictions of the protective order. Non-litigant intervenors who seek access to Confidential Information subject to a protective order are subject to a different burden—first they need standing and they must show unusual or exceptional circumstances warranting a disruption of the purposes served by protective orders.

A protective order is interpreted according to its plain language and the agreements of the parties. *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271–72 (10th Cir. 2010). The protective order here provides that the Confidential Information would only be shared for the purposes of pursuing the Plaintiff's action against Defendants, and for no other purpose and the order identified those with whom it would be shared. *Doc. 124*. The parties in this dismissed action agreed to the terms of the protective order and agreed to be bound by the order—there is no basis to modify the terms or parameters of the agreement to which the parties agreed. Non-party intervenors have no basis or standing to modify the agreement or order.

The Tenth Circuit cautions wariness of retroactive attempts to modify a protective order to undermine justified reliance on protective orders by parties and witnesses disclosing information

and documents through discovery. *Merrill Scott & Assocs.*, 600 F.3d at 1272. These concerns overshadow and outweigh the general rule affording broad discretion of the court to judge whether the injury/prejudice to the party opposing modification outweigh the benefits of modification of a protective order. *Id*. A greater showing is required where the movant seeks to undermine the continued integrity of a protective order. *Id*. As the movants seeking to modify and undermine the existing protective order, movants bear the burden of (after, of course, meeting the Article III standing threshold) to show unusual or exceptional circumstances. *Id*. The Tenth Circuit affirmed that a recipient of Confidential Information is prohibited from further disclosing or using it except as specifically provided within the protective orders. *Id*.

Intervenors cannot premise their First Amendment rights on the First Amendment rights of Plaintiffs or Defendant to disseminate information obtained via discovery. First, Intervenors cannot assert the constitutional rights of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Oklahoma Pub. Co.*, 748 F.2d at 1424. Plaintiffs and Defendants waived any "right" to disseminate Confidential Information when agreeing to the terms of the protective order. *Doc. 124*; *Merrill Scott & Assocs., Ltd.*, 600 F.3d at a271–72; *City of Hartford v. Chase*, 942 F.2d 130, 134–35 (2d Cir.1991) ("Because the Confidentiality Order was part of a court-approved agreement, it must be construed according to general principles of contract law ... Thus, deference is to be paid to the plain meaning of the language ... and the normal usage of the terms selected." (citation and quotation omitted)).

III.    **Intervenors' motions should also be denied because of the harm caused by the disclosure of the Confidential Information.**

A.    **Personnel records.**

The personnel files exchanged in discovery contain such private information as social security numbers, addresses, phone numbers, birthdates, and other sensitive information having

no relevancy to the issues in the litigation. It is impossible to predict the harm and havoc wreaked by disclosure of such Confidential Information. The federal Freedom of Information Act and the Kansas Open Records Act, permit the government to withhold all personnel and medical files and similar files when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); K.S.A. 45-221(a)(3).

Good cause exists for the entry of a protective order to protect the confidentiality of "personnel files of parties and non-parties, financial records, criminal investigation reports, medical records, and internal policies and procedures of law enforcement agencies." *Stewart v. City of Prairie Vill.*, Kan., No. 12-2185-JAR-DJW, 2013 WL 1498669, at *2 (D. Kan. Apr. 11, 2013). In *Gillard v. Boulder Valley School Dist. Re-2,* the court held good cause existed to keep confidential discovery involving school personnel records, school records with personally identifiable information about students, and juvenile delinquency records. 196 F.R.D. 382, 386 (D. Colo. 2000). The court noted that the records are all normally required to be maintained confidentially, much like the personnel records requested by the Intervenors. *Id.*

Redaction of the records is an unduly burdensome and expensive proposition, and Rule 26(c) requires consideration of the burden and expense. For example, one of the Plaintiffs' discovery request in this matter reads:

> "Identify and produce true and correct copies of any and all documents ***relating to*** the hiring, employment, performance, discipline, and remediation of Roger Golubski, James Michael Krstolich, Dennis ware, James L. Brown, Dennis Otto Barber, Clyde Blood, W.K. Smith, and Steven Culp, from the dates each first applied for any position at the KCKPD to the present including without limitation the following:"

The request then proceeded to list 20 categories of subparts. In response to this request, the Unified Government produced over 42,000 pages of discovery without redacting private, confidential information. The undertaking for such redactions would have been, and remains, unduly

burdensome and costly.

It is worth noting that no party in this matter objected to the designation of Confidential Information. There is no suggestion that the Confidential Information designation was improperly applied by any of the parties.

The cases cited by Intervenors Star do not involve media requests for personnel records in a civil matter. *Daniels v. Dixon* is a discovery dispute revolving around the Official Information Privilege under California law. 2022 WL 3012535 (C.D. Cal. June 9, 2022). *United Nuclear Corp v. Cranford Ins. Co.,* dealt with an intervenor seeking discovery in collateral litigation against the same defendant in a different federal court district. 905 F.2d 1424 (10th 1990). *Walls v. Vasselli* was a discovery dispute in the Ninth Circuit questioning the Deliberative Process Privilege and Work Product Privilege. 2022 WL 1004248 (N.D. Ill Apr. 4, 2022). *Harmon v. City of Santa Clara* involved police body camera footage of a completed police investigation in California. 323 F.R.D. 617 (N.D. Cal 2018). The court in *Shelley v County of San Joaquin* held there is a privacy interest in maintaining the confidentiality of ongoing criminal records. WL 2082370 (E.D. Cal. May 4, 2015). None of these cases address personnel or private records of individual police officers.

### B.    Criminal investigations

Defendants objected to discovery requests for case files of active investigations that were irrelevant to the allegations in this matter. *See Doc. 365* (Order Compelling production of investigation files). The Court later ruled many of the active investigations were irrelevant to the claims when the Court granted the Defense motion to quash the Plaintiff's 30(b)(6) deposition that purported to inquire about the cases. *Doc*. 517 (Notice); *Doc. 538* (Motion to Quash); *Doc. 558*, at 8-14 (Order granting motion to quash) ("Much of what is sought in the deposition notice is clearly irrelevant to Plaintiffs' claims.").

Kansas law recognizes the sensitivity of criminal investigation files and the harm caused

by their disclosure

> "Criminal investigation files are sensitive. Raw investigative files nearly always include the names of many innocent people. Where the files are open to public scrutiny, the potential for injury is great. In addition, if criminal investigation files are open, many people with information which might lead to a resolution of the investigation will refuse to disclose such information. Investigations will be badly hampered."

*Harris Enterprises, Inc v. Moore*, 241 Kan. 59, 67, 734 P.2d 1083 (1987). The Kansas Open Records Act affords a mechanism for the orderly and justified disclosure of criminal investigation files. *See* K.S.A. 45-221(a)(10). There, such records are subject to disclosure:

(A)   Is in the public interest;

(B)   would not interfere with any prospective law enforcement action, criminal investigation or prosecution;

(C)   would not reveal the identity of any confidential source or undercover agent;

(D)   would not reveal confidential investigative techniques or procedures not known to the general public;

(E)   would not endanger the life or physical safety of any person; and

(F)   would not reveal the name, address, phone number or any other information that specifically and individually identifies the victim of any sexual offense described in article 35 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or article 55 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto.

*Id.* The Kansas City Kansas Police Department (KCKPD) has a cold case unit actively investigating many of the unsolved case files turned over in discovery.

### III.    If the Protective Order is modified to permit disclosure, disclosure should occur only after the documents are redacted at the Intervenors' expense.

Intervenors' motions should be denied for the reasons discussed above.

In the alternative, should the Court grant Intervenors' motions in whole or part, the Court should enter an Order that in the event any documents are released to Intervenors, all social security numbers, addresses, phone numbers, birthdates, and other sensitive information, shall be redacted.

Further, it is requested that the Intervenors be ordered to pay for all attorney fees and costs associated with such redaction and that the redacted documents not be turned over to the Intervenors until all parties have reviewed the proposed redaction and approved it prior to production.

Respectfully submitted,

Fisher, Patterson, Sayler & Smith, LLP
3550 S.W. 5th Street | Topeka, Kansas 66606
Tel: (785) 232-7761 | Fax: (785) 286-6609
dcooper@fpsslaw.com  |  cbranson@fpsslaw.com  |
bmauldin@fpsslaw.com

**s/David R. Cooper**

| David R. Cooper | #16690 |
| Charles E. Branson | #17376 |
| Brian C. Mauldin | #28636 |

*-and-*

Edward James Bain, #26442
Unified Government of Wyandotte
County/Kansas City, Kansas
Legal Department
701 N. 7th Street, Suite 961
Kansas City, Kansas 66101
Tel: (913) 573-5060 | Fax: (913) 573-5243
jbain@wycokck.org

**Attorneys for Defendant Unified Government of Wyandotte County and Kansas City, Kansas**

*s/Tracy M. Hayes*

| | |
|---|---|
| Sean M. Sturdivan | KS #21286 |
| Tracy M. Hayes | KS #23119 |
| Elizabeth A. Evers | KS #22580 |

Sanders Warren & Russell LLP
Compass Corporate Centre
11225 College Boulevard, Suite 450
Overland Park, KS 66210
Tel: 913-234-6100 | Fax: 913-234-6199
s.sturdivan@swrllp.com   |   e.eversguerra@swrllp.com
t.hayes@swrllp.com
***Attorneys for The Estate of Detective James
Michael Krstolich, Detective Dennis Ware, Officer
James L. Brown, The Estate of Lieutenant Dennis
Otto Barber, Detective W.K. Smith, and The Estate
of Lieutenant Steve Culp***

*s/Morgan L. Roach*

| | |
|---|---|
| Morgan L. Roach | KS #23060 |
| Sean P. McCauley | KS #20174 |
| Nicholas S. Ruble | KS #25636 |
| Jeffrey S. Kratofil | KS #23983 |

McCauley & Roach, LLC
527 W. 39th Street, Suite 200
Kansas City, MO 64111
Tel: (816) 481-2663 | Fax: (816) 523-1708
morgan@mccauleyroach.com | sean@mccauleyroach.com
nick@mccauleyroach.com | jeff@mccauleyroach.com

and

| | |
|---|---|
| Matthew J. Gist | KS #20829 |
| Christopher M. Napolitano | KS #25499 |

Ensz & Jester, P.C.
1100 Main Street, Suite 2121
Kansas City, MO 64105
Tel: (816) 474-8010 | Fax: (816) 471-7910
mgist@enszjester.com | cnapolitano@enszjester.com
**Attorneys for Defendant Roger Golubski**

## Certificate of Service

I hereby certify on the 23rd day of September, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to counsel of record:

Michael J. Abrams – Michael.Abrams@LathropGPM.com
William G. Beck – William.Beck@LathropGPM.com
Alexander T. Brown – Alexander.Brown@LathropGPM.com
Alana M. McMullin – Alana.McMullin@LathropGPM.com
Cheryl A. Pilate – cpilate@morganpilate.com
Lindsay J. Runnels – lrunnels@morganpilate.com
Barry Scheck – barry@nsbcivilrights.com
Emma Freudenberger – emma@nsbcivilrights.com
Amelia B. Green – amelia@nsbcivilrights.com
Sona Shah – sona@nsbcivilrights.com
**Attorneys for Plaintiffs**

Sean M. Sturdivan – s.sturdivan@swrllp.com
Elizabeth A. Evers – e.evers@swrllp.com
Tracy M. Hayes – t.hayes@swrllp.com
**Attorneys for The Estate of Detective James Michael Krstolich, Detective Dennis Ware, Officer James L. Brown, The Estate of Lieutenant Dennis Otto Barber, Detective Clyde Blood, Detective W.K. Smith, and The Estate of Lieutenant Steve Culp**

Morgan L. Roach – morgan@mccauleyroach.com
Sean P. McCauley – sean@mccauleyroach.com
Jeffrey S. Kratofil – jeff@mccauleyroach.com
Matthew J. Gist – mgist@enszjester.com
Christopher M. Napolitano – cnapolitano@enszjester.com
**Attorneys for Defendant Roger Golubski**

Lyndon W. Vix, #12375
FLEESON, GOOING, COULSON & KITCH, LLC
1900 Epic Center, 310 N. Main
Wichita, Kansas 67202
Tel: (316) 267-7361 | lvix@fleeson.com
**Attorneys for The McClatchy Company, LLC d/b/a The Kansas City Star**

{T0476354}

17

Jean K. Gilles Phillips, #14540
Project for Innocence and Post Conviction Remedies
UNIVERSITY OF KANSAS SCHOOL OF LAW
1535 West 15th, Room 409
Lawrence, Kansas 66045
Tel: (785) 864-5571 | Fax: (785) 864-5054 | phillips@ku.edu

Tri Rojo Busjnell, MO #66818, *Pro Hac Vice*
MIDWEST INNOCENCE PROJECT
3619 Broadway Boulevard, #2
Kansas City, Missouri 64111
Tel: (816) 221-2166 | Fax: (816) 325-3107 | trojobushnell@themip.org
**Attorneys for Midwest Innocence Project**

Maxwell E. Kautsch, #21255
KAUTSCH LAW, L.L.C.
810 Pennsylvania Street, Suite 207
Lawrence, Kansas 66044
Tel: (785) 840-0077 | Fax: (785) 842-3039 | maxk@kautschlaw.com
**Attorney for KCUR 89.3 FM**

s/David R. Cooper