IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LAMONTE MCINTYRE and | ) | |
| ROSE LEE MCINTYRE, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 18-2545-KHV |
| | ) | |
| UNIFIED GOVERNMENT OF | ) | |
| WYANDOTTE COUNTY AND | ) | |
| KANSAS CITY, KANSAS, et al. | ) | |

---

### KCUR'S REPLY TO DEFENDANTS' JOINT RESONSE TO KCUR 89.3 FM'S MOTION TO MODIFY PROTECTIVE ORDER

Intervenor KCUR 89.3 FM, a unit of the University of Missouri System (hereinafter "KCUR"), hereby submits the following in response to Defendants' memorandum filed September 23, 2022 (Doc. 718).

### FACTUAL BACKGROUND

As the Court is aware, the instant case arose because Plaintiff Lamonte McIntyre was incarcerated for over two decades for a crime he did not commit. Like fellow intervenor McClatchy Company, LLC d/b/a The Kansas City Star (hereinafter "the Star"), KCUR has extensively reported on this case since its inception in 2018 and seeks to further report on the case based on certain information currently subject to the protective order entered in this matter in 2019 (Doc. 124).

On or about June 29, 2022, the litigants settled the case in principle, and on June 30, 2022, the Board of Commissioners of the Unified Government approved the payment

of \$12.5 million to plaintiffs in connection with that settlement.  A stipulation of dismissal was filed with the Court on July 21, 2022.  (Doc. 691).

On July 19, 2022, the Star filed its motion to intervene in this matter for the limited purposes of arguing its motions to vacate and modify certain orders, including those at issue here.  (Doc. 689; Doc. 690).

On August 4, 2022, KCUR filed its motion and memorandum to intervene in this matter for the limited purposes of arguing its motions to vacate and modify certain orders, including those at issue here.  (Doc. 694; Doc. 695).

On August 15, 2022, Plaintiffs filed their response to KCUR's motion to intervene, stating that "Plaintiffs confirm they may be willing to provide certain information if they are no longer restrained by the protective order."  (Doc. 698, p. 2). Defendants did not respond to KCUR's motion.

On August 23, 2022, the Court found that KCUR's Motion to Intervene for Limited Purpose "is unopposed and is sustained for substantially the reasons stated therein."  Contemporaneously, the Court granted the Star's motion to intervene on the same basis.

On September 7, 2022, KCUR filed its motion to modify the protective order to permit the litigants, should they so choose, to disclose personnel files or records, criminal investigation records, and any information separately designated as "Attorney Eyes Only." (Doc. 711).

On September 15, 2022, in connection with the facts underlying this case, former Kansas City, Kansas Police Department detective Roger Golubski was indicted on

charges of "six counts of depriving two individuals of their civil rights and accusing him of sexual assault, kidnapping and attempted kidnapping."[1]

On September 21, 2022, Plaintiffs filed their response to KCUR's motion to modify, stating that "Plaintiffs oppose this request to the extent that KCUR requests the disclosure of documents designated as 'Attorneys Eyes Only,' which includes documents containing personal identifying information of civilians and Lamonte McIntyre's prison records. However, Plaintiffs do not oppose KCUR's request to modify the Protective Order to permit the limited disclosure of law enforcement personnel records and criminal investigation documents designated 'Confidential.'" (Doc. 717, p. 1).  Plaintiffs further stated that "To the extent it is unclear in the Protective Order, Plaintiffs only used this designation for two categories of information: (1) the identification of civilian witnesses including those who are victims of sexual assault or other crimes; and (2) Plaintiff Lamonte McIntyre's prison file."  (Doc. 717, p. 5).

On September 23, 2022, Defendants filed their Joint Response to Motions to Modify Protective Order (Doc. 718).  There, Defendants stated that during discovery, subject to the protective order at issue here (Doc. 124), they had "produced voluminous material, including personnel records of parties and non-parties, and criminal investigation records for yet-unresolved homicides."  (Doc. 718, p. 2).  Defendants further stated that they "are objecting to the blanket release of information regularly not

---

[1] Dan Margolies, Peggy Lowe, Steve Vockrodt, *Former KCKPD detective Roger Golubski arrested by FBI, charged with sexual assault and kidnapping*, KCUR 89.3, September 15, 2022, retrieved from https://www.kcur.org/news/2022-09-15/former-kckpd-detective-roger-golubski-arrested-and-taken-into-custody on October 3, 2022.

released under the Kansas Open Records Act such as: 1) personnel records relating to officers; 2) private information of witnesses in open investigations; and 3) criminal investigation records pertaining to open investigations."  (*Id*., p. 3).

## ARGUMENTS AND AUTHORITIES

As a preliminary matter, KCUR's memorandum in support of its motion to modify the protective order (Doc. 711) sought to have the Protective Order (Doc. 124) modified to permit the litigants, should they so choose, to disclose personnel files or records, criminal investigation records, and any information separately designated as "Attorneys Eyes Only."  However, in their latest filing, Plaintiff explained that items designated as "Attorneys Eyes Only" are so narrow in scope so as not to be of interest to KCUR.  (Doc. 717, p. 5).  As such, KCUR withdraws its request to modify the protective order to the extent to governs items marked "Attorneys Eyes Only," and seeks only to modify the protective to permit the limited disclosure of law enforcement personnel records and criminal investigation documents designated 'Confidential.'"

**I.      The Court has jurisdiction to address Intervenor's motions.**

**A.  KCUR has standing.**

Despite Defendants' assertions in their response (Doc. 718), KCUR has standing to request relief in this matter.

Article III standing requires a litigant to show: "(1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury can likely be redressed by a favorable decision."  *Kane County, Utah v. United States*, 928 F.3d 877,

104 Fed.R.Serv.3d 238 (10th Cir. 2019), citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

Plaintiffs' implied willingness to provide "law enforcement personnel records and criminal investigation documents designated "Confidential" (Doc. 717, p. 7) tips the scales in favor of this Court finding KCUR has standing under Article III of the U.S. Constitution.

### 1.   The protective order creates a traceable injury-in-fact to KCUR.

Parties to litigation "have a constitutionally protected right to disseminate information obtained by them through the discovery process absent a valid protective order." *Oklahoma Hospital Ass'n v. Oklahoma Publishing Co*., 748 F.2d 1421, 1424 (10th Cir. 1984); cert. denied, 473 U.S. 905 (1985); see also *Pulsecard, Inc. v. Discover Card Services, Inc*., No. 94-2304- EEO, 1995 WL 526533, at *5 (D. Kan. Aug. 31, 1995); see also *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984).

As Defendants acknowledge, "news gathering is undeniably an activity protected by the Free Press clause of First Amendment." (Doc. 718, p. 10).  Protective orders that inhibit the freedom of the parties to provide information to the media about matters of significant public concern and controversy impairs the media's First Amendment news gathering activities.  See, e.g., *Board of Education, Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (recognizing First Amendment right to "receive information and ideas" which is an "inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution").  Under such circumstances, as

here, protective orders "impede [the media's] ability to gather the news by prohibiting members of the press from obtaining discovery materials from a party to this litigation." *Exum v. U.S. Olympic Committee*, 209 F.R.D. 201, 204 (D. Co. 2002).

Moreover, "[t]he court in *Oklahoma Hospital* acknowledged that a protective order prohibiting access to documents constituted an injury in fact sufficient for Article III standing." *SanMedica Intern. v. Amazon.com Inc.*, 2015 WL 6680222, *3 (D. Utah 2015). Accordingly, district courts within the 10th Circuit have recognized that the news media "satisfie[s] the first two prongs of the standing inquiry" if it can show "an impediment to its ability to report the news that is traceable" to a protective order. *Exum v. U.S. Olympic Committee*, 209 F.R.D. at 205; see also *Young v. Glanz*, No. 13-00315-JED-JFJ, 2018 WL 1588026 (N.D. Okla. Mar. 31, 2018).

Only the protective order prevents KCUR from further reporting on matters squarely in the public interest, namely, misconduct within the Kansas City, Kansas Police Department. As such, KCUR "has satisfied the first two prongs of the standing inquiry by alleging an impediment to its ability to report the news that is traceable to the defendant's motion for protective order and proposed protective order." *Exum*, 209 F.R.D. at 205.

## 2. Modifying the protective order would redress KCUR's injuries.

When media outlets have failed to establish standing to challenge protective orders, it is often because the third prong, redressability, can be "problematic" because "the court cannot compel the parties to disseminate discovery materials to third parties." *Id*. But KCUR can clear the redressability hurdle here.

6

### a. Plaintiffs are willing disclose certain information designated as "Confidential."

In multiple filings, Plaintiffs have stated an express or implied willingness to provide certain items obtained in discovery with KCUR.  (Doc. 698, p. 2, "Plaintiffs confirm they may be willing to provide certain information if they are no longer restrained by the protective order"; Doc. 717, p. 7, "Plaintiffs do not oppose the request for modification of the Protective Order to permit the limited disclosure of law enforcement personnel records and criminal investigation documents designated 'Confidential.'").

Plaintiffs have made clear that if the protective order were modified, they would not be opposed to disclosing personnel files and criminal investigation records designated "Confidential."  Thus, KCUR's injuries are redressable on this basis alone.

### b. The personnel files and criminal investigation records designated "Confidential" are subject to potential court-ordered disclosure under the Kansas Open Records Act (KORA).

Conversely, Defendants have made clear that they would not be willing to disclose any records they do not "regularly" disclose under the Kansas Open Records Act (KORA): "1) personnel records related to officers; 2) private information of witnesses in open investigations; and 3) criminal investigation records pertaining to open investigations."  (Doc. 718, p. 3).

The protective order provides Defendants additional bases they could potentially invoke to deny any open records request for records subject to the order that would not otherwise be available.  See K.S.A. 45-221(a)(1)(" a public agency shall not be required to disclose… [records] restricted by…state statute"); K.S.A. 45-221(a)(2)("a public

agency shall not be required to disclose….[r]ecords that are privileged under the rules of evidence…").

But if the protective order were modified to allow for the potential dissemination of the personnel files and criminal investigation records designated "Confidential," KORA might not be as effective of a prophylactic against disclosure as Defendants seem to believe.  KCUR's injuries are redressable on this basis.

### i.   Personnel records

Defendants argue that they are authorized to withhold officers' personnel records because disclosing such documents would amount to a "clearly unwarranted invasion of personal privacy" under K.S.A. 45-221(a)(30).  (Doc. 718, p. 12).

"In relying upon this exception, the public agency is essentially attempting to protect personal privacy rights of individual persons."  Kan. Att'y. Gen. 2006-8.  "[I]n determining if reliance upon K.S.A. 2005 Supp. 45-221(a)(30) is proper, one must first ascertain whether the individual in question, or their next of kin, asserts some claim to privacy." *Id*.

Defendants unquestionably have a privacy interest in certain information included in the discovery disseminated to Plaintiffs such as "social security numbers, addresses, phone numbers, [and] birthdays" that was contained in personnel records.  (Doc. 718, p. 11).  Even so, state law makes clear that even if a portion of the record may be withheld, the agency must "separate or delete such material" and disclose the rest.  K.S.A. 45-221(d).

Even if Defendants were to show a personal privacy interest implicated by disclosure of personnel records disseminated to Plaintiff, "the court must then consider a second question: whether there is a legitimate public interest in disclosure of the requested information.  Kan. Att'y. Gen. 2006-8.   "Such a public interest may exist if release of the information would 'shed any light on the conduct of any Government agency or official.'"  *Id*., citing *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).  When, as here, "disclosure would shed light on governmental conduct, courts next try to balance the public interest in its release against the implicated privacy interest."  Kan. Att'y. Gen. 2006-8, citing *Department of State v. Washington Post Co*., 456 U.S. 595, FN 12, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982).

Meanwhile, at the 10th Circuit, "[c]ourts have generally treated allegations of police misconduct as worthy of public interest."  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1219 (10th Cir. 2007); see also *Dill v. City of Edmond, Okl*., 155 F. 3d 1193, 1203 (10th Cir. 1998)("Defendants simply did not demonstrate that the city's interest outweighs the Plaintiff's First Amendment interest in discussing possible police misconduct during a homicide investigation.").  "In cases where the general public has a significant interest, a litigant's private interests pale by comparison."  *Condit v. Dunne*, 225 F.R.D. 113, 118 (S.D.N.Y. 2004).  Ultimately, "[p]olice officers have no valid basis for believing that criminal conduct committed by them in their official capacity will not be publicized for all to read."  *Alvarado v. KOB-TV, LLC*, 493 F.3d at 1219, citing *Santillo v. Phila. Newspapers, Inc*., 21 Pa. D. & C. 4th 413, 419 (Pa.Com.Pl.1993).

9

The instant case involves a massive expenditure of taxpayer dollars because Plaintiff Lamonte McIntyre was wrongly incarcerated for over two decades. That settlement was leveraged, at least in part, by evidence that included allegations that one or more of Defendants employees engaged in criminal conduct. A perpetrator of that misconduct, former detective Roger Golubski, is now facing a federal indictment in connection with the facts underlying this case. The items provided to Plaintiffs in discovery would no doubt shed a great deal of light on that activity.

Any privacy interest Defendants might have in personnel records subject to KORA that have been disseminated to Plaintiffs is far outweighed by the public interest in those records. Modification of the protective order would redress KCUR's injuries with respect to the personnel records.

### ii.    Criminal investigation records

Criminal investigation records related to matters in the public interest are also potentially subject to disclosure under KORA:

> "[A] public agency shall not be required to disclose… Criminal investigation records, except as provided herein. The district court, in an action brought pursuant to K.S.A. 45-222, and amendments thereto, may order disclosure of such records, subject to such conditions as the court may impose, if the court finds that disclosure: (A) Is in the public interest; (B) would not interfere with any prospective law enforcement action, criminal investigation or prosecution; (C) would not reveal the identity of any confidential source or undercover agent; (D) would not reveal confidential investigative techniques or procedures not known to the general public; (E) would not endanger the life or physical safety of any person; and (F) would not reveal the name, address, phone number or any other information that specifically and individually identifies the victim of any sexual offense described in article 35 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or article 55 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto."

> K.S.A. 45-221(a)(20)(A) through (F).

Defendants cite *Harris Enterprises, Inc. v. Moore*, 241 Kan. 59 (1987).  In that case, involving interpretation of KORA's criminal records exception, the Kansas Supreme Court affirmed the district court's finding that public interest in records related to a triple homicide existed because the media had shown that a "pattern of disputed or disagreed upon facts and circumstances arising out of the investigation" on the part of various public officials had "thrust controversy concerning their official actions into the public spotlight and attention."  *Harris*, 241 Kan. at 66.  Nevertheless, the Court affirmed the district court's decision not to order disclosure of the requested records "because the documents contained no factual information which would promote the public interest. This determination was reached after the trial court conducted an in camera inspection of the records…. The district court in this case did not abuse its discretion."  *Id*. at 67.

But in decades since *Harris*, the legal landscape has shifted under the feet of law enforcement agencies hoping to rely on the *Harris* court's interpretation of the "public interest" component of the open records law to keep police misconduct secret.

In 2021, the *Wichita Eagle* successfully sued under KORA for videos of police misconduct.  In ordering disclosure of the videos, the district court judge, who considered *Harris* in reaching his conclusion, wrote that "when there is misconduct or even alleged misconduct, it is in the public interest to know exactly what happened and what remedial steps have been taken to address such misconduct, if any."  Exhibit 1, Memorandum Decision, *Wichita Eagle and Beacon Publishing Co., Inc., v. The City of Wichita*, Case No. 17 CV 2745 (Sedgwick County District Court 2021), p. 14.

Then, in the wake of that opinion, rather than further argue that disclosure of

criminal investigation records related to the death of 17-year-old John Albers was not in

the public interest, the city of Overland Park simply turned over the records to a media

organization that had filed suit under KORA in April 2021.[2]

Given the results in the *Wichita Eagle* and Albers cases, along with the 10th

Circuit authorities cited *supra* regarding public interest outweighing privacy concerns,

there is a clear trend toward a judicial understanding that evidence of police misconduct

is always in the public interest.  KORA provides a mechanism for disclosure of criminal

investigation records where, as here, disclosure of such records is in the public interest.

Prospective disclosure under KORA renders KCUR's injuries redressable.

Thus, KCUR has met all three elements necessary for Article III standing.

**B.  The Court has ancillary jurisdiction to resolve the issues raised here.**

Defendants rely on *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375

(1994) to argue that this Court cannot modify the protective order because it lacks

ancillary jurisdiction to modify settlement agreements entered under Fed. R. Civ. P.

41(a)(1)(A)(ii).  That reliance is misplaced.

*Kokonnen* establishes that "no controversy can be regarded as dependent or

ancillary unless it has direct relation to property or assets actually or constructively drawn

into the court's possession or control by the principal suit."  *Kokkonen v. Guardian Life

Ins. Co. of Am.*, 511 U.S. at 379.  In that case, a party filed a motion to enforce a

---

[2] Sam Zeff, Dan Margolies, *Overland Park Police Release New Documents And Video In Fatal Shooting of John Albers*, KCUR 89.3, April 29, 2021, retrieved from https://www.kcur.org/news/2021-04-29/overland-park-police-release-new-documents-and-video-in-fatal-shooting-of-john-albers on October 4, 2022.

settlement agreement under breach of contract theory.   But the Court held that because the "facts to be determined with regard to such alleged breaches of contract are quite separate from the facts to be determined in the principal suit," the district court lacked ancillary jurisdiction.  *Id*. at 381.

Here, the facts giving rise to the protective order, namely, misconduct within the Kansas City, Kansas Police Department, are inextricably linked to the underlying case. Moreover, "[a]s long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed." *United Nuclear Corp. v. Cranford Ins. Co*., 905 F.2d 1424, 1427 (10th Cir. 1990).  There can be little doubt that the issue of modifying the protective order falls within the Court's authority.

To try to support their position, Defendants argue that *Bond v. Uteras*, 585 F.3d 1061 (7th Cir. 2009) holds that ancillary jurisdiction does not "afford authority for a third-party/intervenor's attack on a protective order."  (Doc. 718, pp. 5-6).  But that case turned on intervenor's failure to establish redressability.  In fact, "[t]he only mention of the effect of a Rule 41(a)(1) stipulated dismissal is in the [*Bond*] court's conclusion that a 'sua sponte postjudgment modification of a protective order does not fall within the court's ancillary jurisdiction.'"  *Odle v. Flores*, 705 Fed.Appx. 283, 287 (2017), citing *Bond*, 585 F. 3d at 1078.  Rather, "[t]he *Bond* court was only making the point that after a stipulated dismissal the district lacked the 'inherent power' to amend the confidentiality order 'sua sponte.'"  *Id.*

There is no suggestion or indication that the Court has considered modifying the order on this basis.  Here, multiple intervenors are requesting the modification of the protective order.  *Bond* is inapplicable.

**II.     There is "good cause" to modify the protective order to permit the parties to disclose personnel records and criminal investigation records.**

Finally, in response to Defendants' arguments that KCUR lacks a First Amendment interest in the record, it has been established at least since *Oklahoma Hospital* that the media's mere "alleg[ation] that were it not for the protective orders, the parties would be free to disseminate, and [the media] would thereby be free to gather and publish, discovery documents not subject to those orders….is a sufficient allegation of injury in fact to satisfy the first requirement for standing." *Oklahoma Hospital Ass'n,* 748 F.2d at 1424 (10th Cir. 1984).  Moreover, there, the 10th Circuit further found that the media's injury is traceable to the protective order because the media alleged it "was denied access to documents covered by the protective orders." *Id.*

Here, KCUR has alleged since its motion to intervene not only that it seeks to report on matters of public interest concerning this case, but that it seeks to continue to do so.  It also has shown that it can meet the redressability element.  At this point, modification of the protective order depends on good cause.  See, e.g., *Landco Equity Partners, LLC v. City of Colorado Springs, Colo*., 259 F.R.D. 510, 512 (D. Colo. 2009).  Good cause depends on balancing the Defendants' privacy interests against the public interest in the facts underlying this case.

To that end, the Court should modify the protective order in this case to allow for the potential disclosure of the personnel and criminal investigation records Defendants

disseminated to Plaintiff during discovery.  Any harm such disclosure might cause would be outweighed by the benefit to the public under factors set forth in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) as discussed at length in the memoranda supporting the motions to modify the protective order filed by both the Star and KCUR. (See, e.g., Doc. 709, p. 13; Doc. 711, p. 7).

## CONCLUSION

For the reasons stated above, KCUR requests that the Court modify the current Protective Order by lifting any restrictions regarding personnel records and criminal investigation records designed as "Confidential."  In the alternative, the Order should be modified to allow the release of information from these categories with redactions as directed by the Court.

Respectfully submitted,

/s/Maxwell E. Kautsch
_____
Kautsch Law, L.L.C.
By Maxwell E. Kautsch, #21255
810 Pennsylvania Street, Ste. 207
Lawrence, KS  66044
(785) 840-0077
Fax (785) 842-3039
maxk@kautschlaw.com
Attorney for Intervenor KCUR 89.3 FM

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2022, I submitted the above and foregoing to the Clerk of the Court for filing through the CM/ECF System, which will provide service to all counsel of record.

/s/Maxwell E. Kautsch
_____
Maxwell E. Kautsch

15