IN THE EIGHTEENTH JUDCIAL DISTRICT
DISTRICT COURT SEDGWICK COUNTY, KANSAS
CIVIL DEPARTMENT
DIVISION 26

WICHITA EAGLE AND BEACON                  )
PUBLISHING COMPANY, INC.                  )
                                          )
          Plaintiff,                      )
                                          )
     -vs-                                 )          Case No. 17-CV-2745
                                          )
THE CITY OF WICHITA, KANSAS               )
                                          )
          Defendant.                      )
_____  )

## MEMORANDUM DECISION

This matter is before the Court on cross motions for summary judgment.  The parties announced their appearances on the record, and proceeded with oral argument.  Thereafter, the Court took the matters under advisement.  The Court is now prepared to rule.

**I.    Summary of Ruling:**

Plaintiff's motion for summary judgment is granted.  Defendant's motion for summary judgment is denied.  The uncontroverted facts establish that the Defendant acted in bad faith without a reasonable basis in law when denying Plaintiff's Kansas Open Records Act ("KORA") request.  Under the facts of this case, the KORA does not exempt the body camera recordings at issue from production.  The Court has determined that they are of sufficient public interest and must be produced with minimal necessary redactions to obscure social security numbers and dates of birth of the occupants.

1

## II.    Nature of the Case:

This case arises out of two KORA requests made by The Wichita Eagle ("Eagle") to the Wichita Police Department ("WPD") to view body camera footage recorded during two separate investigations.

WPD uses body cameras to record video records of investigations by its officers. Videos are captured and stored in digital format that is uploaded to Evidence.com. Two Body Camera Video Clerks are tasked with organizing and maintaining the video records and additionally to prepare and redact requested footage. Audio redactions are a simple process of muting the audio, but video redactions are more time consuming. It is standard for the WPD to redact juveniles, dates of birth, social security numbers, police officer personal information, victims of sexual assault, and mandatory reporters. Requests for records are submitted to the Records Bureau Video Section and ultimately reviewed by the City Attorney or someone in the Law Department before release. The city does not redact information that is released under a subpoena.

### A.  The Hit-and-Run Incident

On October 17, 2017, Tim Potter, an Eagle employee, made a request by email for body camera video from Case #16C063872 ("The Hit-and-Run Incident") to Officer Charley Davidson of the WPD Public Relations Division. Information provided to the Eagle indicated that the investigation pertained to a September 11, 2016 hit and run collision implicating off-duty WPD Officer Tiffany Dahlquist as the operator of one of the vehicles. On October 20, 2017, Potter's request was denied in an email composed by the City Law Department and signed by Captain Hatter.

Citing K.S.A. 45-254(a) which establishes that "body worn cameras are considered criminal investigation records," the City of Wichita ("City") informed Potter that the videos would

2

be withheld under K.S.A. 45-254(a)(10)(B) so as not to interfere with any prospective law enforcement action, criminal investigation, or prosecution.  However, the investigation into "The Hit-and-Run Incident" had already been closed in February of 2017.  Subsequent to the investigation, Dahlquist sued the City and various individuals alleging that the investigation of "The Hit-and-Run Incident" was improper and that as a result she had been compelled to resign her position with the WPD.

### B.  The Bank Incident

On September 15, 2017, Amy Renee Leiker, an Eagle employee, made a request by email for body camera video from Case #17C061549 ("The Bank Incident") to Officer Davidson who acknowledged receipt of the request.  The incident involved the handcuffing of an Iraqi-American man who had been accused of trying to cash a bad check and subsequently detained along with his wife and juvenile daughter.

On September 20, 2017, Ms. Leiker received a correspondence from Captain Hatter informing her that additional time was needed to process the request with an anticipated response date of September 22, 2017.  Captain Hatter also informed Ms. Leiker that KORA did not require the release of the subject videos but indicated that the records were going to be released.

On September 22, 2017, Ms. Leiker received a correspondence from Ms. Cobble of the Law Department conveying that the release of the videos would be delayed until Wednesday September 27, 2017, because of difficulties with the redaction software.  At the time, redactions were performed before sending the requester an invoice.  The redacted material was reviewed by the Law Department that requested additional redactions.

On September 28, 2017, Ms. Leiker received an invoice for $441.00 with itemizations for 14 units of "Unit Price" at $25.00 per hour, two hours of "Professional Administrative" at $28.00

3

per hour, and $35.00 for the video.  The requested footage totaled approximately three hours of viewing time unredacted.  Ms. Leiker enquired about the expense saying "[can] you tell me what you all anticipate redacting specific to this request and why that costs $350."  Throughout the day on September 29, 2017, Ms. Leiker and Ms. Krissie Lagana exchanged emails about the costs including an enquiry into the hourly wages paid to the employees involved.  On October 3, 2017, Ms. Lagana conveyed additional redactions to one of the Body Camera Video Clerks that the Law Department and others wanted done to the videos.

Early on the morning of October 6, 2017, emails were exchanged between the City Attorney Ms. Jennifer Magana, Officer Davidson, Chief Gordon Ramsay, Deputy Chief Jose Salcido, and Van Williams in the City's Public Affairs Department to schedule a meeting for 11:15 am to discuss the KORA request  regarding "The Bank Incident".  That same day at 12:31 pm, Ms. Leiker attempted to follow up with Ms. Lagana.  Later in the afternoon, she received a denial of her request stating that the records were withheld under K.S.A. 45-219(a) and K.S.A. 45-254(b) and (c).  Nineteen minutes later, Ms. Leiker responded to the denial writing in part "[it] would appear you're now denying my request solely because I've asked for additional basic information about the cost."

The City claims the change resulted from concerns over the family's privacy.  On October 11, 2017, Lyndon Vix contacted Ms. Magana asking for reconsideration of the request and taking issue with the legal grounds of the City's denial.  On October 24, 2017, the City Attorney responded and based the denial on K.S.A. 45-219(a).

The Eagle filed the instant action pursuant to KORA.  The City now claims for the first time in defense of this lawsuit that it intended to rely on K.S.A. 45-221(a)(10) and that the prior

4

failure to do so at the time the records were originally requested by the Eagle was "an oversight." Both sides have filed cross summary judgment motions.

### III.     The Uncontroverted Facts:

#### A.  The Defendant's Summary Judgment Motion:

Pursuant to K.S.A. 60-256(d) and S.Ct. Rule 141, the Court determines the controverted and uncontroverted facts to be the following:

1.      Those facts contained in Defendant's Statement of Uncontroverted Facts paragraphs 1 through 3, 7, 9 through 11, and 15 through 19 pertaining to "The Hit-and-Run Incident" are uncontroverted. Paragraphs 1 through 7, 9 through 13, 15 through 17, 19, 22 and 23, and 25 pertaining to "The Bank Incident" are uncontroverted.

2.      Those facts contained in Defendant's Statements of Uncontroverted Facts in paragraphs 4, 5, 6, and 8 pertaining to "The Hit-and-Run Incident" are controverted.

3.      With regard to the facts contained in paragraph 12 of the Defendant's Statement of Uncontroverted Facts pertaining to the "The Hit-and-Run Incident", it is uncontroverted that Wichita Police Department made redactions of the video footage of the juvenile subject to blur her face.

4.      With regard to the facts contained in paragraph 13 of the Defendant's Statement of Uncontroverted Facts pertaining to "The Hit-and-Run Incident", it is uncontroverted that the City's written denial was conveyed to the Eagle on October 20, 2017, which was within three business days of the request.

5.      With regard to the facts contained in paragraph 14 of the Defendant's Statement of Uncontroverted Facts pertaining to "The Hit-and-Run Incident", it is uncontroverted that the City's denial letter cited K.S.A. 45-254(a) and 45-221(a)(10)(B) as the reasons for the denial.

6.      With regard to the facts contained in paragraph 8 of the Defendant's Statement of Uncontroverted Facts pertaining to "The Bank Incident", it is uncontroverted that the man and his family were released after being detained for approximately three hours.

7.      With regard to the facts contained in paragraph 14 of the Defendant's Statement of Uncontroverted Facts pertaining to "The Bank Incident", it is uncontroverted that on September 15, 2017, the Eagle requested WPD body camera footage with respect to "The Bank Incident" investigation.

8.      With regard to the facts contained in paragraph 18 of the Defendant's Statement of Uncontroverted Facts pertaining to "The Bank Incident", it is uncontroverted that on October 6, 2017, the City Attorney sent a letter to the Eagle denying the KORA request entirely.  It is further uncontroverted that the denial letter stated that the WPD videos of "The Bank Incident" were considered criminal investigation records.

9.      With regard to the facts contained in paragraph 20 of the Defendant's Statement of Uncontroverted Facts pertaining to "The Bank Incident", it is uncontroverted that that the City testified that its' denial letter to the Eagle resulted from a meeting on October 6, 2017, which included the City Attorney and officials of the Wichita Police Department.  It is further uncontroverted that the City testified that after discussing and weighing the interests involved, the City decided that the public interest would not be served by disclosure of the video footage (even redacted).

10.     With regard to the facts contained in paragraph 21 of the Defendant's Statement of Uncontroverted Facts pertaining to "The Bank Incident", it is uncontroverted that the man, his wife, and their 15-year-old daughter were all innocent of any wrongdoing.

11.     With regard to the facts contained in paragraph 24 of the Defendant's Statement of Uncontroverted Facts pertaining to "The Bank Incident", it is uncontroverted that the City testified that failing to identify the specific subsection K.S.A. 45-221(a)(10) was "an oversight." It is further uncontroverted that the City testified that it intended to identify K.S.A. 45-221(a)(10)(A) as the subsection it relied upon.

### B. The Plaintiffs Summary Judgment Motion:

12.     Those facts contained in Plaintiff's Statement of Uncontroverted Facts paragraphs 1 and 2, 4 through 41, 43 through 71, 73 through 82, 84 through 86, 88 through 99, and 101 through 168 are uncontroverted.

13.     Those facts contained in Plaintiff's Statement of Uncontroverted Fact in paragraph 83 are controverted.

14.     With regard to the facts contained in paragraph 3 of the Plaintiff's Statement of Uncontroverted Facts, it is uncontroverted that the WPD first implemented body cameras in 2009, purchasing about 20 cameras at the time and that the number of cameras expanded to about 40 between 2009 and 2015. It is further uncontroverted that at the time of deposition, WPD had 429 body-worn cameras.

15.     With regard to the facts contained in paragraph 42 of the Plaintiff's Statement of Uncontroverted Facts, it is uncontroverted that the footage requested by Mr. Potter on behalf of the Eagle is a public record as defined in KORA.

16.     With regard to the facts contained in paragraph 72 of the Plaintiff's Statement of Uncontroverted Facts, it is uncontroverted that the footage requested by Ms. Leiker on behalf of the Eagle is a public record as defined in KORA.

7

17.     With regard to the facts contained in paragraph 87 of the Plaintiff's Statement of Uncontroverted Facts, the facts are uncontroverted but the WPD Chief's last name is spelled Ramsay, not Ramsey.

18.     With regard to the facts contained in paragraph 100 of the Plaintiff's Statement of Uncontroverted Facts, it is uncontroverted that the requested "raw" footage regarding "The Bank Incident" totaled approximately three hours.

19.     With regard to the facts contained in paragraph 120 of the Plaintiff's Statement of Uncontroverted Facts, it is uncontroverted that the footage requested by Mr. Potter on behalf of the Eagle is a public record as defined in KORA.

**IV.     Analysis:**

**A.   Standard of Review:**

**1.   Summary Judgment:**

Summary judgment standards are well known and long established.  Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  K.S.A. 60-256(c).  The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought.  *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1275, 38 P.3d 679 (2002).  When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact.  *Id.*

**2.   The Kansas Open Records Act:**

"KORA … declares it to be the public policy of this state that public records shall be open for inspection by any person unless otherwise provided by the act."  *Harris Enterprises, Inc. v.*

*Moore*, 241 Kan. 59, 63, 734 P.2d 1083 (1987). See also K.S.A. 45-216(a).  "Not *all* records must be disclosed under KORA; the legislature provided a narrow list of exceptions[.]"  *State v. Great Plains of Kiowa Cty., Inc.*, 308 Kan. 950, 958-59, 425 P.3d 290 (2018) (emphasis original).  As regards those records that fall into one of the exceptions, "the act does not prohibit disclosure of records contained within these exceptions, but rather makes their release discretionary with the official records custodian." *Harris Enterprises, Inc.*, 241 Kan. at 63-64.

"KORA does not allow an agency unregulated discretionary power to refuse to release information sought by the public." *State, Dep't of Social & Rehabilitation Services, etc. v. Public Employee Relations Bd. of Kansas Dep't of Human Resources*, 249 Kan. 163, 170, 815 P.2d 66 (1991). Although "certain confidential information must be deleted from otherwise disclosable public records", *Tew v. Topeka Police & Fire Civil Service Com.*, 237 Kan. 96, 105, 697 P.2d 1279 (1985). "[t]he only requirement for access to records is a request by a party [containing nothing] more than 'the requester's name and address and the information necessary to ascertain the records to which requester desires access and the requester's right of access to the records.'". *Great Plains of Kiowa Cty., Inc.*, 308 Kan. at 958 (citing: K.S.A. 2016 Supp. 45-220(b)).

"[W]hen a public agency receives a request for records, it must decide whether the request is for access to the public record and, if so, whether an exception applies." *Hunter Health Clinic v. Wichita State Univ.*, 52 Kan. App. 2d 1, 7, 362 P.3d 10 (2015). In determining whether a public agency abuses its discretion "when the action taken is arbitrary, fanciful, unreasonable, or not supported by the facts." *Denning v. Johnson County, Kan., Sheriff's Civil Serv. Bd.*, 46 Kan. App. 2d 688, 701, 266 P.3d 557 (2011). "[A]ny person whose request for public records has been denied or impeded has statutory standing to enforce the purposes of KORA by filing a cause of action in the district court of any county in which the records are located." *Hunter Health Clinic*, 52 Kan.

App. 2d at 11. "The burden of proving that an item is exempt from disclosure is on the agency not

disclosing." *Cypress Media v. City of Overland Park*, 268 Kan. 407, 416, 997 P.2d 681 (2000).

"[T]he court *shall* award attorney fees to the plaintiff *if* the court finds that the agency's *denial of*

*access* to the public record was not in good faith and without a reasonable basis in fact or law."

*Telegram Publ'g Co. v. KDOT*, 30 Kan. App. 2d 830, 831, 49 P.3d 554 (2002) (Emphasis original).

### B. The City Is Limited to Those Claims Alleged in its Denial Letters:

K.S.A. 45-218(d) states: "[i]f the request for access is denied, the custodian shall provide,

upon request, a written statement of the grounds for denial. Such statement shall cite the specific

provision of law under which access is denied[.]" Additionally, "the burden of proof shall be on

the public agency to sustain its action." K.S.A. 45-222(c).

In "The Hit-and-Run Incident", the City denied the Eagle's KORA request by letter dated

October 20, 2017, which provided the basis for denial as follows:

> This denial is made pursuant to K.S.A. 45-254 and K.S.A. 45-221. K.S.A.
> 45-254(a) provides that body-worn camera videos are considered criminal
> investigation records. As such, they are not subject to mandatory disclosure under
> K.S.A. 45-221(a)(10), *and are being withheld under K.S.A. 45-221(a)(10)(B).*
> Additionally, under K.S.A. 45-254(c) access to body worn camera video is limited
> to the list of persons described in that statute. (Emphasis added.)

In "The Bank Incident", the City denied the Eagle's KORA request by letter, dated October

6, 2017, which provided the basis for denial as follows:

> This denial is made pursuant to K.S.A. 45-219(a) which states that a public
> agency is not required to provide "copies of …video tapes…or similar…visual
> items unless such items were shown…to a public meeting of the governing body of
> the public agency." Because these videos have not been shown or otherwise
> presented to a public meeting of the governing body of the City of Wichita, they
> are not subject to mandatory disclosure.

> Additionally, this denial is based upon K.S.A. 45-254(b) and (c). This
> statute provides that body-worn camera videos from the officers at the scene of this
> incident are considered criminal investigation records. Access to such video is
> restricted to viewing only and is limited to the list of persons described in the

statute.  Accordingly, your request for copies of the body-worn camera video footage from these incidents is denied.

In the present lawsuit, the City concedes that K.S.A. 45-254(c) is inapplicable, and withdraws that as a basis for denying the Eagle's KORA Request.  For the first time, the City argues that denial of the Eagle's KORA request was proper pursuant to K.S.A. 45-221(a)(10(A), and that its failure to include that provision in both denial letters was a mistake.  According to the City, it intended to rely on that K.S.A. 45-221(a)(10)(A) during the entire process. The argument is without merit and contrary to the procedure set forth in KORA.

As noted above, K.S.A. 45-218(d) establishes the procedure applicable to the denial of an open records request:  "If the request for access is denied, the custodian shall provide, upon request, a written statement of the grounds for denial." Such statement must "cite the specific provision of law under which access is denied", and such statement "shall be furnished to the requester not later than the end of the third business day following the date the request for statement is received." K.S.A. 45-218(d).

There is no provision in KORA that allows the City to change its mind regarding the reason for denying the Eagle's KORA request.  Allowing an agency to deny releasing records on a certain set of grounds, only to assert a completely different set of grounds after suit is filed is contrary to KORA's requirement that an agency state its grounds for denial within 3 buisness days.  Permitting the City to assert new grounds for denying the KORA request for the first time to the district court circumvents the process required by K.S.A. 45-218(d).  See *Sachs v. City of Topeka*, 337 P.3d 73 (Kan. Ct. App. 2014) ("Parties are bound to their stipulations unless the tribunal they make them in front of allows the stipulations to be withdrawn.") *Meigs v. Kansas Dep't of Revenue*, 16 Kan. App. 2d 537, 545, 825 P.2d 1175 (1992) (" [A]n issue not raised at the administrative hearing may not be raised for the first time during de novo review or on appeal.").

When requested by the Eagle pursuant to K.S.A. 45-218(d), the City failed to state the grounds for denial that it now wants to argue in the present action. The City simply cannot do this. To do so would defeat the purpose of requiring a written denial stating the specific exception within 3 business days of the request. It would, for all intents and purposes, require a requestor to file suit under KORA to determine the real reason for the denial of a KORA request. This is untenable. Thus, the City is stuck with those grounds for denial asserted in its denial letters.

### C. It is in The Public Interest to Release Both Body Camera Videos:

In the event the Court's analysis in Section IV.B above is in error, the denial of the Eagle's KORA request is not justified by K.S.A. 45-221(a)(10). K.S.A. 45-221(a)(10(A) provides:

> (a)    Except to the extent that disclosure is otherwise required by law, a public agency shall not be required to disclose:
>
> . . . .
>
> (10)  Criminal investigation records, except as provided herein. The district court, in an action brought pursuant to K.S.A. § 45-222, and amendments thereto, may order disclosure of [criminal investigation records], subject to such conditions as the court may impose, if the court finds that disclosure:
>
> (A) Is in the public interest;

The City's position on this point is that in order to establish that the records at issue are subject to disclosure by virtue of the public interest, the Eagle must do more than simply show "public curiosity" about such records. The City bases its argument on *Harris Enterprises, Inc.*, 241 Kan. 59 at 66 where the Court held that the term "public interest" as used in KORA "means more than 'public curiosity.'" The Court further elaborated in that opinion that "if the information contained in the records will not promote a public interest, then the public interest, no matter how lofty, cannot be served and disclosure ought not to be required." *Id*. at 65.

12

Even though in *Harris Enterprises, Inc.*, the Kansas Supreme Court ultimately upheld the trial court's determination that the records at issue in that case were not subject to disclosure based upon the public interest exception, in making that determination, the Court stated: "Where public officials thrust controversy concerning their official actions into the public spotlight and attention, this court must conclude that a definable public interest arises to investigate that controversy and to seek a resolution of it." *Id.* at 66. The Court then provided some helpful guidance - "to be a matter involving public interest, it must be a matter which affects a right or expectancy of the community at large and must derive meaning within the legislative purpose embodied in the statute." *Id.* at 66.

Although the case dealt with the predecessor of KORA, *State ex rel. Stephan v. Harder*, 230 Kan. 573, 586-87, 641 P.2d 366 (1982) also provides further useful insight. In that case, the Court held "the public's right to know how and for what purposes public funds are spent is a matter of legitimate public concern, far outweighing any personal privacy right of those providers to whom public funds are disbursed." *Id.* at 586-87.

Turning to the facts of the case, both the body camera videos from "The Hit-and-Run Incident" and "The Bank Incident" are of public interest. Each will be addressed in turn.

"The Hit-and-Run Incident" involved a WPD officer who was suspected by her colleagues of being involved in a hit-and-run accident, with alcohol possibly being involved. This is a matter of public interest because the community at large has an expectation that police investigations will be conducted fairly and appropriately, especially when a police officer is implicated. The FBI initiated an investigation into the incident. The WPD officer was subsequently terminated from employment, and then rehired. She sued the City in federal court, a suit that was defended with public funds.

13

Having conducted an *in camera* inspection of the records sought, it is the determination of the Court that the release of the body camera videos captured during the investigation are in the public interest. Whether the WPD applies the same investigative standards to alleged wrongdoing involving one of their own officers as is applied to the public at large is more than just a "public curiosity." It goes to the core of public confidence in law enforcement, and is thus most definitely in the public's interest.

"The Bank Incident" is a matter of public interest because it became an issue of public controversy. The matter involved the detention of an Iraqi-American family after an attempt to make a bank deposit. As a result of the incident the man who was detained contacted the Eagle of his own accord and provided a picture of his family to the paper. Ultimately, the man and his family were not charged with anything, and the incident was investigated by the WPD's Professional Standards Bureau which lead to the issuance of a public apology to the family.

Whether the police department conducted itself appropriately in the investigation is a matter of public interest because the community at large has an expectation that criminal investigations will be performed properly, professionally, and without bias towards any group. When an innocent person and their family is detained, if there is to be any public confidence in law enforcement, the public is entitled to know why. Stated another way, where the police acted appropriately, there is no harm in revealing how the police go about their business, and public confidence in law enforcement is enhanced. But where there is misconduct or even alleged misconduct, it is in the public interest to know what exactly happened and what remedial steps have been taken to address such misconduct, if any.

Finally, it should be noted that the instances at issue in this case are distinguishable from the cases cited by the City in that the instances in this case both involve criminal investigations

that did not lead to prosecution. Officer Dahlquist was never charged with a crime as a result of "The Hit-and-Run Incident", and the family from "The Bank Incident" was found to be innocent within hours of the original call to police. Both records pertain to police investigatory conduct. As such, for the reasons discussed above, both the records from "The Hit-and-Run Incident" and "The Bank Incident" are in the public interest, and should be disclosed.

### D. K.S.A. § 45-219(a) Does Not Exempt the City From Producing Copies of the Body Camera Footage:

Turning to the basis asserted by the City in its denial letters, the City based its denial for records in the Bank Incident by relying on K.S.A. 45-219(a), which states: "[a] public agency shall not be required to provide copies of radio or recording tapes or discs, video tapes or films, pictures, slides, graphics, illustrations or similar audio or visual items or devices, unless such items or devices were shown or played to a public meeting of the governing body thereof[.]"

The problem with the City's reliance on K.S.A. 45-219(a) is that this is not an exemption statute. K.S.A. 45-219 in general deals with how public agencies can recoup the expense of reproduction. K.S.A. 45-219(a) does not prohibit disclosure of the body camera footage in question. *If* that statute applies, it simply says that the City does not have to reproduce the footage. The Eagle still gets to see the footage.

More to the point, however, is that what has been requested by the Eagle is digital footage -- computer data. The footage was provided to the Court by a CD Rom disc, although it could just as easily have been provided with a flash drive, or any other of multiple methods that computer data is transferred in the digital age. K.S.A. 45-219(a) is inapplicable because the records at issue do not involve "radio or recording tapes or discs, video tapes or films, pictures, slides, graphics, illustrations or similar audio or visual items or devices." It involves computer data. Just because

15

one method of transmitting that data may be by way of a "disc", the fact is that it does not have to be.

In this regard, the Eagle's argument has merit. The City's application of K.S.A. 45-219(a), as argued here, would lead to absurd results when dealing with digital body camera footage. In the City's reading of the statute, the body camera footage is subject to K.S.A. 45-219(a) if it is transferred from a computer hard drive to a CD ROM disc, but it is not subject to K.S.A. 45-219(a) if the same data is transferred by a flash drive or by email. K.S.A. 45-219(a) does not exempt the City from producing the records sought and the Eagle is not limited to a physical in person viewing of the footage requested.

### E. The Denial is not Justified by K.S.A. 45-221(a)(10)(B):

The City asserted K.S.A. 45-221(a)(10)(B) in its denial letter as a justification for denying the Eagle's KORA request in "The Hit-and-Run Incident". K.S.A. 45-221(a)(10)(B) allows for the disclosure of criminal investigation records to the extent that such disclosure will not interfere with prospective law enforcement action, criminal investigations or prosecution.

Not a great deal of analysis is necessary here because it appears that the City has abandoned this justification for denying the Eagle's KORA request. Indeed, the investigation appears to have been closed for over two years, and there was no criminal prosecution and none is anticipated.

### F. The Denial is not Justified by K.S.A. 45-254(c):

The City relied upon K.S.A. 45-254(c) in both letters denying the Eagle's KORA requests. Again, no analysis is necessary inasmuch as the City has withdrawn this basis for denial.

### G. Redactions And Fees:

#### 1. Redaction:

K.S.A. 45-221 states "except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose: … Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy."

In *Tew v. Topeka Police & Fire Civil Service Com.*, 237 Kan. 96 at 105, the Court held that "certain confidential information must be deleted from otherwise disclosable public records." "Most of the courts which have dealt with the issue have interpreted public disclosure laws to require, in the interests of disclosure, that the custodial agency delete excluded information from an otherwise disclosable document pursuant to a request for the disclosable information." *State ex rel. Stephan v. Harder*, 230 Kan. 573 at 581.

In *Data Tree, LLC v. Meek*, 279 Kan. 445, 462-63, 109 P.3d 1226 (2005), the Court held that "where disclosure of the personal or private information fails to significantly serve the principal purpose of the KORA, nondisclosure is favored if such nondisclosure complies with other requirements of the KORA." Further "public disclosure of the personal [information; social security numbers, mothers' maiden names, and dates of births,] within the documents requested constitute[s] a clearly unwarranted invasion of personal privacy." *Id.*

Turning to the facts of this case, the City argues that only material that fully redacts the faces of the minors in both records should be released. While the redaction of dates of birth and social security numbers is substantiated by both *Tew v. Topeka Police & Fire Civil Service Com.* and *Data Tree, LLC*, there is no similar authority for other redactions. The text of the statute specifically prohibits disclosing "information of a personal nature where the public disclosure

17

thereof would constitute a clearly unwarranted invasion of personal privacy." In this case, all of the captured footage was taken in public space. Consequently no expectation of privacy is implicated. Regarding the family involved in "The Bank Incident", a picture of the family has already been published, and the subjects of the investigation have already invited themselves into the public eye by contacting the Eagle.

Thus, the only appropriate redactions to the record are the dates of birth and social security numbers of the subjects. The City may not blur the faces of the minors in either record before production.

### 2. Costs Associated With Production:

K.S.A. 45-219(c)(1) states: "In the case of fees for copies of records, the fees shall not exceed the actual cost of furnishing copies, including the cost of staff time required to make the information available." In *Data Tree, LLC*, 279 Kan. 445, at 465, the court held that "[c]harging the requesting party with the attendant expense does not appear inconsistent with the purpose of the KORA." The Court reasoned that: "KORA does not specifically mention who is to bear the cost of redaction. It does, however, make clear the legislative intent that *actual costs* of furnishing copies of public records may be recovered by the agency and that the person seeking the records should bear the actual expense." *Id.* (Emphasis added.)

Turning to the facts of the case, before denying the Eagles' request to view the body camera recordings of "The Bank Incident" entirely, the City sent the Eagle an invoice for the cost of preparing the records including;

- $0.20 for "Copy Charges Black/White"
- $56.00 for "2 Hours – Professional Administrative"
- $0.00 for "Hours – Professional Staff"

- $35.00 for "AXON Video"
- $350.00 for "Redactions (minimum 50.00)
- $0.00 for "Video Viewing – per hour"

These charges do not reflect the actual cost of preparing the records.

The City testified that the $35.00 AXON video charge for producing the disk included the cost of the disk, "the label that goes on it, the sleeve the disk goes in, it includes the computer that you put the disk in that you burn the disk on, it includes the lights, the air conditioning." These charges exceed the actual expense of furnishing copies of the records. The same can be applied to the fact that the City has a minimum charge of $50.00 for *any* redaction. The City may not recoup the expense of its' normal building operating costs and office equipment operating costs. KORA allows for the recovery of actual costs of furnishing copies. These may include the actual cost of the disk (or flash drive), the actual cost of the label, and the actual cost of the sleeve. However, the City may not recoup operating costs and equipment costs that are already funded by the taxpayer.

KORA states that "fees shall not exceed the actual cost of furnishing copies, including the cost of staff time required to make the information available." In this instance, including overhead in the base charge and minimum redaction charges that may exceed the actual cost of redaction is inappropriate.

### H. Costs and Fees to the Plaintiff:

K.S.A. 45-222(e) states:

> In any action hereunder, the court shall award costs and a reasonable sum as an attorney's fee for services rendered in such action, including proceedings on appeal, to be recovered and collected as part of the costs to the plaintiff if the court finds that the agency's denial of access to the public record was not in good faith and without a reasonable basis in fact or law. The award shall be assessed against the public agency that the court determines to be responsible for the violation.

In *Southwest Anesthesia Serv., P.A. v. Southwest Medical Ctr.*, 23 Kan. App. 2d 950, 954, 937 P.2d 1257 (1997), the Court held that "[t]he award of attorney fees is a matter within the discretion of the district court." In *Willis v. Kan. Highway Patrol*, 273 Kan. 123, 133, 41 P.3d 824 (2002), the Court articulated that "[t]he agency's action must both be "not in good faith" and "without a reasonable basis in fact or law" in order to grant attorney fees."

In *Denning v. Johnson County, Kan., Sheriff's Civil Serv. Bd.*, 46 Kan. App. 2d 688, 701, 266 P.3d 557 (2011), the Court held that "an abuse of discretion occurs when the action taken is arbitrary, fanciful, unreasonable, or not supported by the facts." Moreover "[a]n agency's action is arbitrary and capricious if it is unreasonable, without foundation in fact, not supported by substantial evidence, or without adequate determining principles." *Id.*

Turning to the facts of the case, it is apparent that the City acted in bad faith and without a reasonable basis in law. The Court bases this conclusion on the following.

In its denial letter to the Eagle regarding "The Hit-and-Run Incident" the City denied the Eagle's KORA request citing K.S.A. 45-221(a)(10)(B). The City cannot identify any prospective law enforcement action upon which this denial was based. At the time the Eagle made its' KORA request to the City on October 17, 2017 and the City knew or should have known that the investigation into "The Hit-and-Run Incident" was closed by February of 2017, 8 months prior.

In its denial letter to the Eagle regarding "The Bank Incident" the City cited to K.S.A. 45-219(a) stating that a public agency is not required to provide "copies of … video tapes … or similar … visual items unless such items were shown … to a public meeting of the governing of the public agency." As noted in Section IV.D. above, the interpretation of K.S.A. 45-219(a) most charitable to the City means that the Eagle does not get copies of the body camera footage, but must view the footage in person – it does not mean that the Eagle cannot view the footage. As such, even if the

City in good faith believed that the body camera footage was included in the purview of K.S.A. 45-219(a), it could not in good faith rely upon that statute as a basis for denying the Eagle's KORA request.

In both denial letters to the Eagle regarding "The Hit-and-Run Incident" and "The Bank Incident", the City cited to K.S.A. 45-254. The City now concedes that this is not an appropriate basis to deny the Eagle's KORA requests.

Finally, the prime basis the City now relies upon to deny the Eagles KORA requests – K.S.A. 45-221(a)(10)(A) – was raised for the first time in this lawsuit, and was never even mentioned in the denial letters. The fact that the City is now asserting new statutory grounds for denial after the Eagle was forced to file suit suggests that no cogent KORA analysis was done by the City prior to denying the Eagles request for records. All indications are that the City was simply looking for an excuse under KORA to deny the Eagle's request, which is contrary to KORA's presumption that the production of records should be the rule, not the exception to the rule. See K.S.A. 45-216(a).

As has been noted in Section IV.B. above, the Eagle had to file suit in order to discover the real grounds that the City would eventually rely upon in order to deny its KORA requests. This demonstrates bad faith. The statute specifies a procedure for denying a request, specifically naming the exception under which a request is being denied so that if the requestor wishes to challenge the request and has a legal basis to do so, they will not have to proceed blindly. Failing to specify the exception that the City would eventually settle on until after legal action has begun is directly contrary to the purpose of compelling the denying party to state its' rational for denial in the first place. Moreover, attempts to recover costs not directly associated with the actual costs

of producing the requested records is an indication that the City was trying to make these KORA requests as inconvenient and difficult for the Eagle as possible.

The Court finds that the City has acted in bad faith by citing reasons for denial that do not have a reasonable basis in law.  The Eagle is entitled to seek legal fees and expenses.

**V.      Conclusion:**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted and Defendant's Motion for Summary Judgment is denied.  Counsel for the Plaintiff is directed to prepare a Journal Entry consistent with this Memorandum Decision.  The Court will schedule a fee hearing at a date and time mutually convenient to the parties and counsel.

IT IS SO ORDERED.

**JEFFREY L. GOERING**
District Court Judge, Division 26

22

## **CERTIFICATE OF SERVICE**

The Court certifies that a true and correct copy of this Memorandum Decision was served upon the following individuals by the Court's eFlex electronic filing system, and/or by depositing the same in the United States Mail, postage prepaid, on this _____ day of February, 2021 addressed to:

> Lyndon W. Vix
> lvix@fleeson.com
> FLEESON, GOOING, COULSON & KITCH, L.L.C.
> 1900 Epic Center
> 301 N. Main
> Wichita, KS 67202
> Attorney for Plaintiff

> Edward L. Keeley, #09771
> ekeeley@mcdonaldtinker.com
> McDONALD TINKER PA
> 300 W. Douglas, Ste. 500
> Wichita, KS 67202
> Attorney for Defendant

_____
JEFFREY E. GOERING