IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| LAMONTE MCINTYRE and | ) | |
| ROSE LEE MCINTYRE, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | Case No. 18-2545-KHV |
| | ) | |
| UNIFIED GOVERNMENT OF | ) | |
| WYANDOTTE COUNTY AND | ) | |
| KANSAS CITY, KANSAS, et al. | ) | |

## MEMORANDUM IN SUPPORT OF THE MIDWEST INNOCENCE PROJECT'S MOTION TO MODIFY PROTECTIVE ORDER

Movant, the Midwest Innocence Project, a nonprofit law firm (hereinafter "MIP"), submits this memorandum in support of its motion filed October 7, 2022, (Doc. 722) moving this Court to modify the protective order entered on November 8, 2019 (Doc. 124.). For the reasons stated below, the motion to modify should be granted.

## BACKGROUND AND PROCEDURAL POSTURE

As this court is aware, this case concerns the wrongful conviction of Lamonte McIntyre and the actions and culpability of the Unified Government of Wyandotte County and Kansas City, Kansas (the "UG") in keeping McIntyre wrongfully incarcerated for 23 years. After nearly a decade of dogged investigation, the unconstitutionally suppressed evidence of McIntyre's innocence was unearthed, along with the evidence of the law enforcement misconduct—including witness manipulation and coercion—that led directly to his wrongful conviction. This evidence was presented to a Wyandotte County District Court in 2017, and McIntyre was freed during his evidentiary hearing. MIP, along with the Morgan Pilate law firm, represented McIntyre in that innocence case—the facts of which attracted significant media attention and resulted in the creation of the Wyandotte County District Attorney's Office's Conviction Integrity Unit (CIU) to

1

help correct other wrongful convictions like McIntyre's. As the facts uncovered in McIntyre's case make clear—there are certainly other wrongfully convicted people in Wyandotte County.  Indeed, there are potentially a large number of them.

Like it did in Mr. McIntyre's 60-1507 case, MIP has undertaken the representation of individuals who have been wrongfully convicted in Wyandotte County as a result of police misconduct, including the coercion of false statements from witnesses and the suppression of exculpatory evidence. MIP currently represents Cedric Warren in his K.S.A. 60-1507 action currently pending in Wyandotte County District Court. And like Mr. McIntyre did in his innocence proceeding, Mr. Warren is presenting evidence of his innocence as well as evidence of several constitutional violations in his case, including *Brady* claims. *See Warren v. State*, 2019-CV-766 (Wyandotte County Dist. Ct.). MIP is also currently vetting and investigating dozens of additional cases from Wyandotte County. And like in Mr. McIntyre's case, MIP's clients and applicants have a significant interest in obtaining evidence that could substantiate their claims of innocence.

As a result of the litigation in both Lamonte McIntyre's innocence case and the present federal civil case, a great deal of information has come to light that paints a troubling picture of the KCKPD. This information has remained hidden and concealed for years, if not decades, because innocent petitioners had no means to obtain it. This information suggests that many innocent individuals may be wrongfully imprisoned. The fact that police misconduct occurred within the KCKPD and, specifically, occurred within serious felony investigations is now widely accepted.

Unlike in Mr. McIntyre's case, the investigation of the innocence cases now being reviewed or investigated by MIP  need not take decades as innocent defendants languish behind bars.  Indeed, that would be a grave injustice. MIP and its clients and applicants have a significant

interest in the information subject to the protective orders as such information may prove or lead to other information that could prove the innocence of these individuals. As the litigation in the present civil case showed, KCKPD has sometimes used flawed, improper and unconstitutional methods to "solve" their cases. These methods have led to substantial injustice—the conviction of innocent people sent to prison while the real perpetrators remain free—denying families and the community and true justice.

On September 14, 2022, this Court sustained MIP's motion to intervene. The motions to intervene of fellow intervenors McClatchy Company LLC, and KCUR 89.3 F.M. ("Media Intervenors") were previously granted on August 23, 2022. Plaintiffs had responded to each of these motions, noting that they may be willing to share certain information if the protective order is modified. (Doc. 707).

On September 2 (McClatchy) and September 7, 2022, (KCUR), Media Intervenors filed Motions to Modify the Protective Order (Doc. 708, 710), asking this Court to modify the protective order to permit litigants to disclose personnel files or records, criminal investigation records, or any information separately designated as "Attorneys Eyes Only." They did not seek to unseal any documents.  Defendants filed a response to the motions by the Media Intervenors on September 23, 2022. This motion follows[1].

At issue are documents disclosed under a protective order granted by this Court pursuant to a joint request by the parties on November 8, 2019. (Doc. 124). The protective order defines the term "Confidential Information" and allows the parties to designate information exchanged in discovery as Confidential Information if it falls within the following categories:

      (a)  Financial records of Plaintiffs and any related materials;

---

[1] MIP expects that the Defendants will raise the same or similar arguments in response to its motion and will address them in part in this memorandum.

(b) Medical or mental health records of any party or non-party;

(c) Personnel files or records of current or former employees of the Unified Government of Wyandotte County and Kansas City, Kansas or its predecessor(s); and

(d) Criminal investigation records in open investigations of the Unified Government of Wyandotte County and Kansas City, Kansas or its predecessor(s). For the purpose of this order, "open investigation" means a case that has not been prosecuted or has not been closed.

(Doc. 124, pp 2-3). The order allows information produced in the case by third-parties to be designated a "Confidential Information" and further limits dissemination of the Confidential Information to specific individuals specified within the order. (Doc. 124, pp. 4-5). The order also designates certain categories of information as "Attorney's Eyes Only," which may only be disseminated to the attorneys involved in the case and their employees and agents, but not to the parties themselves. (Doc. 124, pp. 5-6). In addition, Plaintiff also filed a number of documents under seal pursuant to this Court's May 11, 2022, Order. (Doc. 644).

MIP now moves this Court to modify the protective order and permit the parties, if they so choose, to distribute information designated as "Confidential Information" under the third and fourth categories of information relating to personnel records and investigatory files. MIP does not seek access to information under seal or designated as "Attorney's Eyes Only."

## **LEGAL STANDARD**

The power to modify a protective order remains with the court even after the conclusion of a case. *United Nuclear Corp. v. Cranford Ins. Co.,* 905 F.2d 1427 (10th Cir. 1990); *Holmes v. United Parcel Serv., Inc*., No. 04-2315-KHV-DJW, 2006 WL 1642719, at *3 (D. Kan. Feb. 16, 2006) ("It is well settled that as long as a protective order remains in effect, the court which entered the order retains the power to modify it. This is true even if the underlying suit has been

dismissed.") In determining whether to modify a protective order that was entered into jointly, courts generally apply the same test as when a protective order is contested by one of the parties. *See*, *e.g.*, *United Nuclear Corp.,* 905 F.2d at 1427; *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).

The analysis is a two-step inquiry. First, the Court must determine whether the party opposing disclosure of any of the documents in question can articulate any "particularized harm" resulting from the disclosure. *In re Roman*, 661 F.3d at 425. The party claiming harm must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Univ. of Kansas Ctr. for Rsch., Inc. v. United States*, No. CIVA 08-2565-JAR-DJW, 2010 WL 571824, at *3 (D. Kan. Feb. 12, 2010) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102, n.16 (1981)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470, 476 (9th Cir. 1998) (quoting *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3rd Cir. 1986)) (internal quotations omitted).

Even where a party can make the strict showing requirements of particularized harm, however, "the district court has broad discretion in judging whether that inquiry outweighs the benefits of any possibly modification of the protective order." *United Nuclear Corp.*, 905 F.2d at 1427; *see also S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1272 (10th Cir. 2010) ("Typically, when considering whether to modify a protective order, courts examine any tangible prejudice to the party opposing modification that outweighs the benefits of modification.") When implementing this balancing test—weighing the claimed particularized harm against the public

benefit—courts have traditionally considered the factors outlined in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).[2] Those factors include:

1) Whether disclosure will violate any privacy interests;

2) Whether the information is being sought for a legitimate purpose or for an improper purpose;

3) Whether disclosure of the information will cause a party embarrassment;

4) Whether confidentiality is being sought over information important to public health and safety;

5) Whether the sharing of information among litigants will promote fairness and efficiency;

6) Whether a party benefitting from the order of confidentiality is a public entity or official; and

7) Whether the case involves issues important to the public.

*Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (citing *Pansy*, 23 F.3d at 786); *see also Booth v. Davis*, No. CV 10-4010-KHV, 2016 WL 1170949, at *3 (D. Kan. Mar. 23, 2016) (citing *Pansy* for the proposition that interest in furthering settlement is only one factor in the court's analysis when ruling on a modification of protective order).

In addition to the reasoning discussed above, where, like here, the intervenor is a collateral litigant, a court may also consider the cause of judicial efficiency. *See United Nuclear*, 905 F.2d at 1428. The 10th Circuit has held:

---

[2] As Intervenor McClatchy notes in its Memorandum in Support of its Motion (Doc. 709), although the Tenth Circuit has not explicitly adopted the *Pansy* test, district courts within the Circuit, including this one, have followed the analysis outlined in *Pansy*. *See, e.g., Booth v. Davis*, No. 10-4010-KHV, 2016 WL 1170949, at *2-3 (D. Kan. Mar. 23, 2016); *Bayless v. United States*, No. 2:09CV00495DAK, 2015 WL 6680211, at *1 (D. Utah Nov. 2, 2015); *Ring Energy, Inc. v. Hullum*, No. 15-CV-00109-JHP-TLW, 2015 WL 4413366, at *6 (N.D. Okla. July 17, 2015); *Fourhorn v. City & County of Denver*, 261 F.R.D. 564, 568 (D. Colo. 2009); *Freedom From Religion Foundation, Inc. v. Williams*, No. CIV 05-1168 RLP/KBM, 2006 WL 8443814, at *3 (D.N.M. Aug. 10, 2006).

> [W]here an appropriate modification of a protective order
> can place private litigants in a position they would otherwise reach
> only after repetition of another's discovery, such modification can
> be denied only where it would tangibly prejudice substantial rights
> of the party opposing modification. Once such prejudice is
> demonstrated, however, the district court has broad discretion in
> judging whether that injury outweighs the benefits of any possible
> modification of the protective order.

*United Nuclear Corp.*, 905 F.2d at 1428 (quoting *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299

(7th Cir. 1980)). A "desire to make it more burdensome for Intervenors to pursue their collateral

litigation is not legitimate prejudice." *Id.* at 1428.


## ANALYSIS

**II.     Defendants Cannot Show a Particularized Harm Resulting from Modification of the Protective Order.**

MIP concurs with the Media Intervenors' argument that the protective order, by its own

terms, insufficiently states information sufficient to show any potential harm to the parties that

may be caused by modification of the protective order. The Defendants' answer to the Media

Intervenors' filings also fails to establish such harm.

In their joint response to the Media Intervenors' motions, Defendants raise two categories

of harm arising from the modification of the protective order: (1) harm caused by release of

sensitive personal information; and (2) harm related to disclosure of information in unclosed

criminal investigations. (Doc. 718). Both of these categories are exactly the "stereotyped and

conclusory statements" courts have previously found fail to establish particularized harm, and

Defendants offer no "particular and specific demonstration of fact" to prove otherwise. *See Univ.*

*of Kansas Ctr. for Rsch., Inc. v. United States*, 2010 WL 571824, at *3, (quoting *Gulf Oil Co.,* 452

U.S. at 102, n.16).

1.   Personal Information

Regarding the first category of alleged harms, Defendants failed to articulate a particularized harm that would result from the release of any of the information in question other than it contains personal information. Indeed, Defendants state that "it is impossible to predict the harm and havoc wreaked by disclosure of such confidential information." (Doc 718 at 12). It is difficult to imagine a *less* particularized statement of harm than a statement that the harm cannot be predicted.

Regardless, recognizing that information like social security numbers are generally considered private and have the potential to lead to financial harm if publicly released, release of information currently under the protective order to a collateral litigant like MIP, who is also litigating claims of innocence for others in Wyandotte County, is not the same as release to the general public. Defendants acknowledge this difference, admitting: "*litigants* seeking to modify a protective order to avoid repetitious discovery with the same party are to be denied only upon a showing of prejudice." (Doc. 718 at 9) (emphasis in original). MIP is currently investigating and litigating in Wyandotte County on behalf of other innocent clients, and modification of the protective order to include MIP would not prejudice Defendants. *See United Nuclear Corp.,* 905 F.2d at 1428 (noting that "any legitimate interest the defendants have in continued secrecy as against the public at large can be accommodated by placing Intervenors under the restrictions on use and disclosure contained in the original protective order.").

But even if such information were to be released publicly, this Court may still protect against any alleged harm by requiring redaction of any private individual information. In its response, Defendants weakly offers that "Redaction of the records is an unduly burdensome and expensive proposition," and that Rule 26(c) requires consideration of burden and expense. (Doc. 718 at 12). Such a categorical rejection does not satisfy the particularized harm requirement. *See*

*Manning v. Gen. Motors*, 247 F.R.D. 646, 654 (D. Kan. 2007) ("[T]he party objecting to the discovery as unduly burdensome 'cannot rely on some generalized objections, but must show specifically how each request is burdensome...by submitting affidavits or some detailed explanation as to the nature of the claimed burden.'" (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 300 (D. Kan. 1990)).

A modification to the protective order would not harm Defendants. Instead, the only harm suffered is the continued incarceration of wrongfully convicted people unable to access information that could lead to admissible evidence in their cases. Defendants concerns regarding personal information do not establish harm.

2.   Criminal Investigations

Defendants also cannot state a particularized harm that would result from modification of the protective order, and instead rely on the Kansas Open Records Act ("KORA") for the proposition that under KORA, records are only released if they meet the statutory framework. (Doc. 718 at 13-14) But Defendants make no attempt to explain how KORA is applicable to the instant situation. KORA only applies to records held by public agencies in the State of Kansas, not a private party, like the Plaintiffs in the case here. Nor does KORA apply to documents produced in federal court. Indeed, MIP has not made a KORA request, a process it is familiar with and regularly engages in during the course of its work, but rather has intervened in this case seeking documents under the control of a party. The documents in question are not subject to any limitation on disclosure in KORA.

Moreover, Defendants fail to state why harm would occur based upon the documents at issue here. Attached to their response to the Media Intervenors' motions, Defendants included an affidavit listing 25 cases it has designated as "Open" and covered by the protective order. (Doc.

718-1 at 3). That lists includes the name of a number of women whose deaths were never truly investigated—women to whom Defendant Golubski typically had some improper and exploitive connection.  Typically, these cases were quickly closed, physical evidence went uncollected or untested, and obvious leads were not followed. In one instance, no investigative file was opened at all and not a single investigative interview was conducted.[3] Rose Calvin, for example, was murdered in 1996,  more than two decades ago. According to her family, Defendant Roger Golubski was known to frequently pick her up, take her to a secret location and then drop her back off at the family home.[4] This went on for years even as Rose tried to dodge or avoid Golubski—all to no avail. When she was murdered, Defendant Golubski led the short-lived investigation into her death, and no one was ever arrested.  Also, Rose's brother, John Keith Calvin, is currently incarcerated for a crime he maintains he did not commit and for which the actual shooter has publicly taken responsibility. *Id*. The Calvin family and the public wonder if there is a connection between what happened to Rose and John's later wrongful conviction.

Their concern is not an idle one: Detective Golubski's sexual exploitation and assaults of Black women were no secret. *See* Doc. 624-85, Declaration of Max Seifert. ("But, as I came to learn in my time at the Bureau, all of the detectives along with the older officers and the commanders, all knew that Golubski was pursuing black females in the community and having sex with them."). And that conduct has since led to his arrest and charges in federal court.[5] But

---

[3] *See* Peggy Lowe, Steve Vockrodt, Dan Margolies, "Why haven't Kansas City, Kan., Police done more about long list of slain Black women?", KANSAS CITY STAR, https://www.kansascity.com/news/local/article250309714.html.

[4] Bill Lukitsch, "'He should pay': Activists toast to ex-KCK cop Roger Golubski's indictment", KANSAS CITY STAR, https://www.kansascity.com/news/local/article265890731.html

[5] *See* Dan Margolies, Peggy Lowe, Steve Vockrodt, "Former KCKPD detective Roger Golubski arrested by FBI, charged with sexual assault and kidnapping", KANSAS CITY STAR, https://www.kcur.org/news/2022-09-15/former-kckpd-detective-roger-golubski-arrested-and-taken-into-custody.

such misconduct was not limited to Defendant Golubski. "Sexual misconduct was widely accepted in the Department and no one thought much of it." (Doc. 624-85 at 4.) The distribution of information regarding these cold cases will not harm Defendants. And it will certainly not harm the families who still wait for justice. The only "harm" that would result from the release of these records would be an end to the Kansas City Kansas Police Department's efforts to continue to hide its misconduct.

As Defendants cannot show a particularized harm, and KORA is inapplicable to the instant motion, there is no particularized harm to prevent modification of the protective order relating to this category of information.

**III.   Even if the Court Finds that a Real Harm has Been Alleged with Sufficient Particularity, Any Harm is Outweighed by the Benefits of Disclosure.**

Were this court to find that the Defendants have demonstrated sufficient particularized harm, the Court would still need to balance that harm against the *Pansy* factors, which all weigh in favor of modification of the protective order.

**1.   Privacy Interests**

Given the nature of the information covered by the protective order, there are two categories of persons whose privacy may be argued at risk if the protective order is modified, namely, police officers, and members of the public, whether they be victim or witness. None of these potential harms weigh against disclosure.

An officer's right to privacy does not extend to the material at issue in this motion. While the Tenth Circuit has recognized the existence of an officer's right to privacy in personnel and investigative files, *Denver Policemen's Protective Ass'n v. Lichtenstein*, 660 F.2d 432, 434 (10th Cir. 1981), this right must be construed narrowly. *Mason v. Stock*, 869 F. Supp. 828, 833 (D. Kan. 1994). In determining whether information in police or government files is "of such a highly

personal or sensitive nature that it falls within the zone of confidentiality," *Flanagan v. Munger*, 890 F.2d 1557, 1570 (10th Cir.1989), the court must apply a three-part test. "[T]he court must consider, (1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." *Mason*, 869 F. Supp. at 833 (quoting *Denver Policemen's Protective Ass'n* 660 F.2d at 435). Here, the party does not have a legitimate expectation of privacy; Privacy interests of police officers in in personnel records are especially limited given their role as public servant who must be held accountable to the public. *Id.* Further, disclosure serves a compelling public interest in that it could be used to correct injustices and lead to the design of mechanisms that could prevent such future misconduct. It for these reasons that courts have found that records of misconduct do not fall into the types of activities protected by personal privacy interests. *Cowles Publ'g Co. v. State Patrol,* 748 P.2d 598, 605 (1988). Moreover, disclosure to a collateral litigant is not obtrusive, but rather prevents future duplicative discovery and litigation.

The instant case involves substantial allegations of police misconduct, allegations that have been vindicated not only by the settlement of the case, but also the recent federal indictment and arrest of Defendant Golubski for decades of alleged sexual abuse, which are in addition to the misconduct he was accused of in this action.[6] MIP, through public reporting, its own investigations, and information obtained in litigation has learned of substantial misconduct by KCKPD officers, and believes that such misconduct has led to the wrongful conviction of individuals in Wyandotte County District Court, including current MIP clients. While MIP recognizes the privacy concerns in some information such as social security numbers and addresses, as discussed above, such

---

[6] *See* Margaret Stafford and John Hanna "Ex-detective long-accused of sexually preying on Black women arrested on federal charges" USA TODAY, Sept. 16, 2022, available at https://www.usatoday.com/story/news/nation/2022/09/16/kansas-city-detective-roger-golubski-arrested/10401048002/

information can easily be redacted, or the MIP may be made subject to the dissemination and use restrictions of the protective order to protect such information.

This factor weighs in favor of modification.

## 2.  Legitimate Purpose

There is no question in this case that the intervening parties have a legitimate purpose. MIP represents individuals convicted of crimes they did not commit, just as McIntyre was. As noted, MIP is currently engaged in litigation to exonerate innocent defendants in Wyandotte County and is investigating dozens more. These cases all involve the Kansas City, Kansas Police Department and the officers and individuals involved in the wrongdoing at issue in this case. Access to the information subject to the protective order would promote both the ends of justice and judicial efficiency by avoiding duplicative discovery and litigation, furthering the purpose of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1.

Beyond the interests of MIP's clients, the public also has a legitimate interest in accessing these records. The widespread community harm Wyandotte County citizens have suffered from police misconduct will not end until there is truth and reconciliation. This requires transparency. Indeed, "[t]he public's right of access to judicial records is a fundamental element of the rule of law." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (quoting *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1123 (D.C. Cir. 2020)). There can be no justice without accountability and no accountability with transparency.

This factor weighs in favor of modification.

## 3.  Party Embarrassment

Mere embarrassment is insufficient to overcome the presumption in favor of public access to court records, and Defendants have not identified any embarrassment that would stem from

modification of the protective order. *See Avandia Marketing, Sales Practices and Product Liability Litigation*, 924 F.3d 662, 679 (3d Cir. 2019). The sheer fact that misconduct may be revealed is not sufficient reason. *See Daines v. Harrison,* 838 F. Supp. 1406 (D. Colo. 1993) (finding a desire to avoid embarrassment or damage to representation not a compelling reason to grant a confidentiality order.) Embarrassment is not a shield from the truth.

This factor weighs in favor of modification.

### 4. Public Health and Safety

There can be no graver threat to public health and safety than when the persons supposed to protect and serve the community are the very ones who seek to abuse and exploit it. This case involves an issue of grave concern, not only to MIP's clients and their families, but also to the public at large. In addition to the lawlessness of Roger Golubski, others in the department tolerated or even partook in the same type of  malfeasance and abuse. (*See* Doc. 624-85 at 4 ("Sexual misconduct was widely accepted in the Department and no one thought much of it.")) Indeed, McIntyre is not the only individual exonerated after police misconduct was uncovered: Olin "Pete" Coones, Jr., was exonerated in 2020 after a Court found his case was riddled with police and prosecutorial misconduct.[7]

The deep corruption of the Kansas City, Kansas police department is an issue of concern for the public, and an issue of public safety. As are claims of excessive force, sexual abuse, harassment, falsified evidence, and other information incorporated in the documents covered by the protective order. A community cannot be safe if it cannot trust those who are sworn to protect it.

---

[7] Luke Nozicka, "Pete Coones, exonerated in Kansas City, Kansas, murder, dies after 108 days of freedom", KANSAS CITY STAR, Feb. 22, 2021, available at https://www.kansascity.com/news/local/crime/article249417185.html

This factor weighs heavily in favor of modification.

### 5.  Fairness and Efficiency

Trial fairness in this case is no longer impacted here as this case has settled, however, as discussed above, access to information disclosed in this case by modifying the protective order does promote the interests of fairness and judicial efficiency by preventing duplicative discovery and litigation in other MIP cases. MIP is currently in court on behalf of one other innocent defendant in Wyandotte County and is actively investigating dozens of others. Fairness and efficiency in collateral litigation is promoted if the motion is granted.

This factor weighs in favor of modification.

### 6.  Public Entity or Official

When the party seeking to prevent disclosure is a public entity, this factor weighs in favor of disclosure. The public has a heightened interest in transparency from its own government than from private parties to a lawsuit. *See LEAP Systems, Inc., v. MoneyTrax, Inc.,* 638 F.3d 216, 222 (3rd Cir. 2011) ("[W]e are more likely to require disclosure when a party benefitting from the order of confidentiality is a public entity or official"). All of the defendants in this case are government entities, officials, or former officials, and the public has a substantial interest in disclosure related to those parties and their misconduct, as well as the misconduct and materials related to current government officials not party to this suit.

This factor weighs heavily in favor of modification.

### 7.  Issues Important to the Public

There can be no doubt, nor do Defendants allege, that this case does not involve issues important to the public. Indeed, the payment of a $12.5 million settlement of taxpayer funds and the State misconduct that led to the cause of action are of overwhelming interest to the public.

"Court have generally treated allegations of police misconduct as worthy of public interest." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1219 (10th Cir. 2007). As discussed above, the allegations and conduct at issue are egregious. Disclosure is in the public interest to ensure that injustices are corrected and systems changed to prevent future misconduct. Without it, the public can have no faith in its system of government.

This factor weighs heavily in favor of modification.

\* \* \*

Defendants have failed to state any particularized harm, but even if they did, a review of the *Pansy* factors weighs strongly in favor of modifying the protective order for disclosure.

**IV.    In the Alternative, the Protective Order Should be Modified to Allow Release of Redacted Information, or to Add the Midwest Innocence Project as a Party who May Receive Information Subject to the Dissemination and Use Restrictions of the Protective Order.**

"[E]ven when the factors in this two-part test weigh in favor of protecting the discovery material (i.e., where the court determines that disclosure of information may result in 'particularized harm,' and the private interest in protecting the discovery material outweighs the public interest in disclosure), a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure." *Roman Catholic Archbishop*, 661 F.3d at 425.

Should this Court find that Defendants can meet the burden of demonstrating sufficient harm from modifying the protective order, and should the Court also find that public interests do not sufficiently outweigh the harm, this Court can still modify the protective order to allow parties to disclose redacted copies of the records. MIP does not disregard legitimate privacy concerns in personal information such as social security numbers and would not oppose an order modifying

the protective order to allow dissemination of information that has been redacted to remove sensitive information that may cause particularized harm.

Further, this Court may also modify the protective order to provide for release of the information to collateral litigants like MIP, who would also be bound by the protective order. A modification of a protective order for collateral litigants "can be denied only where it would tangibly prejudice substantial rights of the party opposing modification." *United Nuclear Corp.*, 905 F.2d at 1428 (quoting *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295 at 1299. Defendants have not established that a substantial right would be prejudice, and this Court can modify the protective order to provide for such disclosure.

## CONCLUSION

For the reasons set forth above, The Midwest Innocence Project requests that the court grant its motion to modify the protective order, permitting dissemination of information under categories (c) and (d). In the alternative, the order should be modified either to allow for dissemination of redacted records or to add the Midwest Innocence Project as a party who may view confidential information, subject to the dissemination and use controls of the Protective Order.

Respectfully Submitted,

/s/Jean K. Gilles Phillips
Jean K. Gilles Phillips, #14540
Supervising Attorney
Paul E. Wilson Project for Innocence and
 Post Conviction Remedies
University of Kansas School of Law
409 Green Hall
Lawrence, KS  66045
Ph: 785-864-5571
Fax: 785-864-5054
Email: Phillips@ku.edu

*Tricia J. Rojo Bushnell\**
Tricia J. Rojo Bushnell, Missouri Bar #66818
**MIDWEST INNOCENCE PROJECT**
3619 Broadway Blvd., #2
Kansas City, MO 64111
Phone: (816) 221-2166
trojobushnell@themip.org
*Counsel for Midwest Innocence Project*
*\* Admitted  pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2022, I submitted the above and foregoing motion to the Clerk of the Court for filing through the CM/ECF System, which will provide service to all counsel of record.


*/s/ Jean Phillips*
Jean Phillips